MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice forthcoming*)
Kara M. Cormier (*pro hac vice forthcoming*)
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415.432.6000

LWD ADVISORS, INC.
Jeff Hyman (171896)
700 El Camino Real Suite 120 #1310
Menlo Park CA 94025
Telephone: 650.219.4229

Attorneys for Plaintiff
IYO, INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC., | Case No. _____ |
| Plaintiff, | **VERIFIED COMPLAINT FOR:** |
| v. | 1) **TRADEMARK INFRINGEMENT;** |
| | 2) **FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION UNDER THE LANHAM ACT;** |
| IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, | 3) **UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200;** |
| Defendants. | 4) **COMMON LAW FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION;** |
| | 5) **CONTRIBUTORY INFRINGEMENT; and** |
| | 6) **INDUCEMENT OF INFRINGEMENT** |
| | **JURY DEMANDED** |

Plaintiff IYO, Inc. ("IYO"), by its attorneys, for its Complaint against defendants IO Products, Inc. ("IO"), OpenAI, Inc., OpenAI, LLC, (collectively, "OpenAI"), Sam Altman, and Sir Jonathan Paul Ive ("Jony Ive"), alleges as follows, upon knowledge as to its own acts and otherwise upon information and belief:

## NATURE OF THE ACTION

1.      All claims asserted herein arise out of, and are based on, Defendants' willful infringement of IYO's registered and common law rights in its IYO (pronounced "EYE-OH") trademark (the "IYO Mark") or contributing to or inducing such infringement.

2.      Beginning in or around March 2018, the team behind IYO began their mission to bring natural language computing to billions of people at Google X (n/k/a X: The Moonshot Factory). Google X is a research and development facility within Google that focuses on developing breakthrough technologies to solve the world's biggest problems. During that time, the team invested approximately $25 million on the project.

3.      IYO spun out from Google X as a venture funded startup in or about August 2021. Since then, an additional $37.2 million has been invested in developing the next generation of hardware (and related software) which allows users to interact with their smartphones, computers, artificial intelligence ("AI"), and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.

4.      The culmination of IYO's time and investment is its latest product, the IYO ONE (the mark is the "IYO ONE Mark," together with the IYO Mark, the "IYO Marks"), an ear-worn device that uses specialized microphones and bone-conducted sound to control audio-based applications with nothing more than the user's voice. In short, the IYO ONE is a revolutionary new kind of computer without a screen. It can run apps just like a smartphone, with the user simply speaking to them in natural language. The apps also talk back to the user in natural language, through the world's best audio display.

5.      Excited about the impending launch of the IYO ONE, and on the strength of pre-sales, IYO is currently manufacturing an initial batch of 20,000 units of its IYO ONE and is engaged in a round of fund-raising to take the company to the next level.

6.      Yet despite IYO's rights in the IYO Mark, and despite the widespread media attention the IYO ONE has received, IYO's momentum was stopped dead by a May 21, 2025, announcement by Defendant OpenAI that it had acquired a new company – called "IO" – formed with famed designer Jony Ive, for $6.5 billion. The purpose of IO? To develop hardware (and related software) which allows users to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.  An image from Defendants' May 21, 2025, announcement is shown below (at https://openai.com/sam-and-jony/):



7.      In hindsight, Defendants' actions are no mere coincidence. Defendants have known about the existence of IYO, the IYO Marks, and the nature of IYO's technology since at least 2022. Indeed, the parties had a series of meetings with representatives of OpenAI's principal, Sam Altman, and designers from LoveFrom Inc. ("LoveFrom"), a design studio founded by Jony Ive (who were working with OpenAI), about the prospect of IYO and OpenAI working together.

8.      While OpenAI (via Sam Altman's investment fund, Apollo Projects) and LoveFrom declined to pursue a collaboration with IYO in 2022, they kept tabs on IYO's technology.

9.      For instance, the co-founder of IO, Tang Yew Tan, and another engineer (from either

LoveFrom or IO) ordered IYO's initial product and pre-ordered the IYO ONE.

10.     Then, in the Spring of 2025, IYO, OpenAI and LoveFrom had additional meetings regarding Defendants' possible participation in IYO's capital raise. During those meetings, IYO's vision, technology, and approach (including embodiments that are still in development) were shared with Defendants, and seven of Defendants' representatives were fitted with demo IYO ONE devices.

11.     Based on these meetings Defendants stated to IYO that they thought IYO ONE had promise, and outright asked IYO to share with them its intellectual property embodied in the IYO ONE.

12.     Shortly thereafter, on May 21, 2025, OpenAI announced its $6.5 billion acquisition of IO.

13.     This announcement was publicized internationally, including in the New York Times, NPR, Wall Street Journal, CNBC, and almost every major publication.[1]

14.     In other words, OpenAI, IO, Sam Altman, and Jony Ive have just announced a significant collaboration in a new venture, IO, the name of which is a homophone of Plaintiff's IYO name, and the purpose of which is to launch a product whose purpose and function is eerily similar to and competitive with IYO's product.

15.     In so doing, Defendants are blatantly and knowingly usurping IYO's goodwill and the goodwill and consumer recognition that IYO has built in its IYO Marks and its products, causing confusion in the marketplace and disrupting IYO's marketing plans, manufacturing plans, and capital raise. Due to Defendants' actions, IYO is at imminent risk of losing its corporate identity, its product identity, control over its goodwill and reputation, the value of its trademarks, and the ability to move into new markets. In fact, the sheer scale of OpenAI and its investment in IO threaten to swamp IYO's reputation in the market and its very existence.

16.     The inescapable conclusion here is that Defendants chose the name IO and the timing of their announcement with undeniable knowledge of and intent to harm IYO, swamping its marketing

---

[1] https://www.nytimes.com/2025/05/21/technology/openai-jony-ive-deal.html; https://www.npr.org/2025/05/22/nx-s1-5407548/openai-jony-ive-io-deal-ai-devices; https://www.wsj.com/tech/ai/former-apple-design-guru-jony-ive-to-take-expansive-role-at-openai-5787f7da?reflink=desktopwebshare_permalink; https://www.cnbc.com/2025/05/21/openai-buys-iphone-designer-jony-ive-device-startup-for-6point4-billion.html

1    and manufacturing efforts, all in order to misappropriate for themselves the goodwill of the IYO

2    Marks.

3        17.    After OpenAI's May 21 announcement, IYO and its counsel notified Defendants of the

4    harm IYO is suffering due to the IO name and requested that Defendants cease using the name and

5    from causing any further infringement of IYO's rights.

6        18.    Defendants declined to cease their infringement or otherwise attempt to reach a

7    resolution with IYO. And it is noteworthy that Defendants did not even try to provide a legal

8    justification for their infringing activity, despite IYO's specific and written request for such a

9    justification.

10        19.    Accordingly, to protect its valuable IYO Marks, IYO was forced to file this action for

11    trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq.*;

12    contributory trademark infringement; inducement of trademark infringement; unfair competition

13    under California Business & Prof. Code, § 17200 *et seq.*; and false designation of origin and unfair

14    competition under California common law.

15        20.    IYO seeks both equitable relief and damages.

## **THE PARTIES**

17        21.    Plaintiff IYO is a Delaware entity founded in 2021. Its principal place of business is in

18    Redwood City, California. It is registered to do business in California.

19        22.    Defendant IO Products, Inc. is a Delaware corporation registered to do business in

20    California and having its principal place of business at 535 Pacific Avenue, Suite 300, San Francisco,

21    CA 94133.

22        23.    Defendant OpenAI, Inc. is a Delaware corporation with its principal place of business

23    in San Francisco, California.

24        24.    Upon information and belief, Defendant OpenAI, LLC is a Delaware limited liability

25    company with its principal place of business in San Francisco, California.

26        25.    Upon information and belief, Defendant OpenAI, LLC is owned by Defendant OpenAI,

27    Inc.

28        26.    Defendant Sam Altman (OpenAI's CEO) is an individual residing in San Francisco,

4

California.

27.    Defendant Jony Ive is an individual residing in San Francisco, California.

28.    As discussed further below, Altman and Ive (the "Individual Defendants") personally participated in, directed, and controlled the infringing activity of OpenAI and IO Products, Inc.

## JURISDICTION AND VENUE

29.    This Court has original jurisdiction over Plaintiff's federal claims pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1331 and 1338(a) of the Judicial Code, 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the State of California pursuant to 28 U.S.C. §§ 1338(b) and 1367.

30.    This Court has personal jurisdiction over the Individual Defendants because they reside in this District and engaged in the tortious conduct described herein in this District.

31.    This Court has personal jurisdiction over each of the corporate Defendants because each Defendant has its principal place of business in California. Each Defendant also has continuous and systematic operations in and contact with California.

32.    Moreover, the Defendants have purposely directed their infringing content at citizens of this forum via their public announcement of their gigantic collaboration in this State. They have also purposefully availed themselves of the privilege of conducting activities in this forum, thereby invoking the benefits and protections of its laws. As a result, the exercise of jurisdiction over these Defendants is reasonable and comports with fair play and substantial justice.

33.    Venue is proper under 28 U.S.C. § 1391 because each Defendant, and Plaintiff, reside in this judicial district, and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## IYO AND ITS PRODUCTS

34.    IYO's most recent product – the IYO ONE – allows users to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.

35.     Images of IYO's product are shown below:

 

36.     The IYO product is designed to be an ear-worn device (though other embodiments have also been contemplated – e.g. one worn as a pendant). The device uses 16 beamforming microphones to create an "audio display," or an immersive audio environment for both speaking and listening.

37.     Eight (8) external microphones on each earpiece arranged in a circular array pattern perform a spatial capture of the surrounding environment, enabling the IYO ONE to pass sound through to the ears in a way that feels immersive and natural, as if the user were not wearing any device.

38.     Layering in an audio computing interface in "virtual auditory space" yields a form of mixed audio reality, where the user can hear what is happening around him/her and also engage effortlessly with audio apps. The IYO ONE achieves this through the use of natural language; the user does not have to learn, know, or memorize special commands, words, or gestures to cause the device to do what is asked of it. Instead, all the user needs to do is speak to the device naturally, as though the user were conversing with a person.

39.     In short, the IYO ONE is a revolutionary new kind of wearable, screenless, "audio computer." It can run apps just like a smartphone, with the user simply speaking to them in natural language. The apps also talk back to the user in natural language, through the world's best audio display.

40.     The apps can do any number of useful things for the user. These include:

•     BABL, real time translation. Using advanced real-time large language models, the BABL app takes a directional audio input from the 16 beamforming microphones on the IYO ONE, sends the target foreign voice to the cloud for a high-quality translation, and in real time streams

6

the voice back in the user's preferred listening language.

- OWL, telescopic hearing in noisy environments. Using 16 external beamforming microphones on the IYO ONE, OWL helps the user to focus on what matters by minimizing distracting noise in the periphery and augmenting voices and sounds in front of the user.

- SHERLOCK, search for anything with just your voice. Current events, the weather, world history, or the price of tea in China...anything you want to know. No more pulling out and unlocking your phone; just say what you want to know, and SHERLOCK will find it for you.

- DEEJ, music exploration with a savant a.i. disc jockey who gets to know you. DEEJ uses a natural language a.i. interface to control your Spotify account. DEEJ can play tracks, spin up playlists, and generally control the music for you just through conversation.

41.    IYO ONE's proprietary auditory user interface control employs a natural language agent called SHELL. SHELL helps make the computing experience seamless by allowing users to open and close apps and find the apps that will be most helpful for the user in any given moment, all through voice commands.

42.    IYO ONE also ensures privacy via voice pickup of the bone-conducted voice inside the user's ear canal. This allows the apps to "hear" only the user, preventing it from being interrupted by others' voices.

43.    IYO ONE can be used with, or without, the user's phone.

44.    IYO ONE is marketed for sale through IYO's website iyo.audio, and is available for pre-sale to the general public, with shipping expected in September or October 2025. The pricing for the IYO ONE is $999 for the WiFi version, $1,199 for the WiFi + LTE version, which is in the range of pricing for other mass market electronics such as smartphones and tablets. IYO is in the process of manufacturing an initial 20,000 units for 2025.

45.    IYO is at a critical juncture.  Without raising the capital it needs, IYO will not be able to fund its manufacturing efforts or the paid advertising that will be needed to market its products. This in turn will impact IYO's anticipated sales so severely that IYO is not only at risk of losing significant market share, but also at risk of losing investors, with no ability to replace them.

## IYO'S TRADEMARKS

46.     IYO was founded in 2021. Since then, it has grown to a company with 15 employees and has invested substantial time and resources to the tune of over 7 years and more than $60 million on developing a cutting edge, audio computing technology, launching products under the IYO brand.

47.     IYO has used the IYO mark continuously in commerce in the United States since at least as early as February 2, 2024, in connection with its audio-centric hardware and software. For instance, IYO's first product, the VAD PRO and the soon-to-launch IYO ONE both bear the IYO mark (the VAD PRO is shown below):



48.     Through this use, IYO has established strong common law rights in the IYO Marks for, among other things, wearable devices and related software for interacting with smartphones, computers, artificial intelligence, and the internet, without the use of screens, keyboards, mice, or other similar physical interfaces.

49.     In addition, IYO owns federal trademark Registration No. 7,409,119 issued by the United States Patent and Trademark Office ("USPTO") for its IYO mark covering the following goods:

> "Audio headphones; Earphones; Computers; Micro-computers; Computer hardware and recorded and downloadable software sold as a unit for the integration of data and information into an interactive audio delivery mechanism for multimedia applications; Downloadable operating system programs; Downloadable mobile operating system software; Computer hardware in the form of an earpiece and audio/visual display with preinstalled operating system software; Computer hardware and recorded and downloadable software system containing an auditory user interface in the form of a molded earpiece for use in listening to, accessing, transmitting and sharing information, applications and data in an audio format, amplifying and reducing sounds and noise, natural language processing, and allowing communication between users, electronic

devices and wireless devices"

in Class 9.

50.     The application that matured into Registration No. 7,409,119 on June 4, 2024, was filed on September 17, 2021, and the registration bears a first use in interstate commerce date of no later than February 2, 2024. A true and correct copy of the certificate of registration for IYO's Registration No. 7,409,119 is annexed hereto as **Exhibit A**.

51.     IYO's registration is valid, subsisting, and in full effect.

52.     IYO also owns pending U.S. Trademark Application Serial No. 98/088,268 for the mark IYO. This application was filed July 17, 2023, and covers the following services:

> "Online retail store services in the field of software programs, operating systems, computer games, audio recordings, visual works, consumer electronics, computer peripherals and accessories; Subscription-based online retail store services in the field of software programs, operating systems, computer games, audio recordings, visual works, consumer electronics, computer peripherals and accessories; Online retail store services in the field of downloadable mobile applications; Online retail store services featuring a wide variety of software programs, operating systems, computer games, audio recordings, visual works, consumer electronics, computer peripherals and accessories of others; Retail store services featuring software programs, operating systems, computer games, audio recordings, visual works, consumer electronics, computer peripherals and accessories of others; Retail store services featuring a wide variety of consumer goods of others; Retail store services featuring virtual goods for use in online virtual worlds; Online retail store services featuring headphones, earbuds, and ear tips; Online retail store services featuring software programs for headphones, earbuds, and ear tips"

in Class 35;

> "Fitting of entertainment audio equipment to the individual user, not for medical purposes, namely, headphone, earbud, and ear tip fitting services, fitting services for non-medical hearing and audio devices, fitting services for non-medical hearing and audio assistance devices, and ear mold custom fitting services"

in Class 41; and

> "headphone, earbud, and ear tip fitting services, namely, custom design, engineering, and programming for headphones, earbuds, and ear tips; fitting services for hearing and audio devices, namely, custom design, engineering, and programming for hearing and audio devices; fitting services for hearing and audio assistance devices, namely, custom design, engineering, and programming for hearing and audio assistance devices; custom ear mold fitting services, namely, custom design, engineering, and programming for ear molds"

in Class 42.

53.     The USPTO issued a Notice of Allowance for this application on March 4, 2025.

54.     In April 2024, IYO's founder gave a TED talk about the IYO ONE and demonstrated some of its features. A clip of that TED talk garnered approximately 25 million views on Instagram, an additional 5 million views on TikTok, nearly 200,000 views on YouTube, and nearly 700,000 views on TED's website.

55.     IYO promotes the IYO Marks and its products through a number of channels. For example, IYO has an active presence on the LinkedIn, Instagram, and X (formerly Twitter) platforms, all of which prominently display and promote the IYO Marks. Additionally, IYO operates a robust website at www.iyo.audio that also prominently displays the IYO Marks and where the public has access to, and views, the content, videos, and product specifications (among other things) of IYO's products.

56.     To consumers, the IYO trademark identifies IYO as the single source of products that allow users to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.

## OPENAI'S COMMANDING MARKET PRESENCE

57.     OpenAI, Inc. is an AI organization founded in December 2015 and headquartered in San Francisco, California. OpenAI's primary goal is to develop artificial general intelligence ("AGI").

58.     Wikipedia defines AGI—sometimes called human-level intelligence AI—as a type of artificial intelligence that would match or surpass human capabilities across virtually all cognitive tasks.

59.     As a leading organization in the ongoing AI boom, OpenAI is known for the GPT family of large language models, the DALL-E series of text-to-image models, and a text-to-video model named Sora.

60.     OpenAI's release of ChatGPT in November 2022 is credited with catalyzing widespread interest in generative AI and igniting the AI boom. By January 2023, ChatGPT was the fastest-growing consumer software application in history, gaining over 100 million users in two months.

61.     In June 2024, OpenAI joined forces with Apple Inc. to integrate ChatGPT features into

Apple Intelligence and the iPhone.

62.     In October 2024, OpenAI secured $6.6 billion in funding—valuing it at $157 billion—with major investors including Microsoft, Nvidia, and SoftBank.

63.     Microsoft alone has invested $13 billion in OpenAI. Microsoft also provides computing resources to OpenAI through its cloud platform, Microsoft Azure.

64.     On January 21, 2025, it was announced that OpenAI, Oracle, SoftBank, and MGX would launch The Stargate Project, a joint venture to build an AI infrastructure system in conjunction with the US government. The project takes its name from OpenAI's existing "Stargate" supercomputer project and is estimated to cost $500 billion.

65.     In April 2025, OpenAI raised $40 billion at a $300 billion post-money valuation, marking the largest private technology deal on record, and making it one of the world's most valuable private companies.

**DEFENDANTS' KNOWING CONDUCT LEADING UP TO THEIR INFRINGEMENT**

66.     Unbeknownst to IYO, IO Products, Inc. was formed as a Delaware corporation on September 21, 2023.

67.     It did not register to do business in California until April 4, 2024, after which it continued to operate largely in secret.

68.     Indeed, the May 21, 2025, press release is titled "Sam & Jony Introduce io."

69.     Until very recently, IYO had no idea that Ives, Altman, and OpenAI had formed a company to work together on hardware products intended to allow users to interact with smartphones, computers, artificial intelligence, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.

70.     But the Defendants knew about IYO and its technology and brand prior to adopting the IO name.

71.     In February 2022, IYO attempted to recruit Evans Hankey, the former Apple Design Chief, to work as Head of Design at IYO. IYO shared with Ms. Hankey its story, vision, current technology, and plans for future development. Ms. Hankey declined to join IYO. (As discussed below, IYO later learned that Ms. Hankey co-founded IO.)

72.     In March 2022, representatives from Sam Altman's personal investment fund, Apollo Projects, met with IYO to discuss a potential investment in IYO. They obtained technical information from IYO and discussed IYO's vision for the future of human/computer interaction and the use of natural language.

73.     Then, in April 2022, Ryan Cohen – a representative of Apollo Projects – visited IYO's headquarters in Redwood City, California. IYO shared its vision and story with him and provided him demonstrations of its technology.

74.     Later that month, Mr. Cohen informed IYO that it had decided not to invest in IYO.

75.     Separately, in April 2022, IYO was introduced to Jony Ive's company LoveFrom and met with Evan Sharp (the former co-founder of Pinterest) to share the IYO vision and story and to see if LoveFrom would collaborate on the future of natural language screenless computers.

76.     After that meeting, Mr. Sharp stated that LoveFrom did not want to pursue a collaboration with IYO at that time.

77.     On March 4, 2025, IYO reached out to Mr. Altman again to request a meeting to pitch its latest strategic financing round.

78.     Mr. Altman responded the same day, stating "thanks but im working on something competitive so will respectfully pass!"  He then added "(called io…)."  Mr. Altman, in a follow-up email, then quickly pointed the finger by stating that "jony ive" is "the one driving this."

79.     At the time, IYO did not appreciate that Defendants were actually working to brand a company and competing products with an infringing name. It was too inconceivable to believe.

80.     On March 17, 2025, a product design engineer named Marwan who – unbeknownst to IYO – worked for IO purchased IYO's VAD PRO product and pre-ordered an IYO ONE device.  Tang Yew Tan, the co-founder of IO, also preordered the IYO ONE.

81.     When placing those orders, Marwan Rammah used an email address at "presidiotech.com," apparently to hide his association with Defendants.

82.     When Mr. Rammah was fitted for his VAD PRO on March 19, 2025, he asked IYO's fit specialist questions for over an hour about the IYO device and its specifications.  Mr. Rammah even asked for IYO's design files.

83.     Marwan Rammah now works on an IO design team with Jony Ives, Tang Yew Tan, and Evans Hankey, the same people the May 21, 2025, press release announced were the founders (along with Scott Cannon) of IO.

84.     On March 26, 2025, IYO discussed with Mr. Altman the possibility of OpenAI acquiring IYO and launching IYO ONE as a developer kit for a new kind of computer based on natural language interaction.  Mr. Altman stated that an acquisition would come down to whether his team agreed, and that he wanted to introduce IYO to Peter Welinder, OpenAI's Vice President of Product.

85.     On March 30, 2025, Mr. Altman introduced Mr. Welinder to IYO via email and stated that we "should talk and see if it makes sense to team up!"

86.     On April 4, 2025, 47 days prior to Defendants announcing their "IO" business to the public, representatives of IYO met with Peter Welinder to discuss IYO's vision for screenless natural language human-computer interaction.

87.     There was another such meeting the next week, at which Peter Welinder stated that IYO should meet with Tang Yew Tan (one of the founders of IO) who at the time was working on one of Mr. Ive's projects.

88.     On April 15, 2025, 41 days prior to Defendants announcing their "IO" business to the public, IYO learned that Tang Yew Tan had pre-ordered an IYO ONE in May 2024, almost a year earlier.

89.     On April 17, 2025, 39 days prior to Defendants announcing their "IO" business to the public, Mr. Tan requested that IYO fit members of his team for the IYO device. IYO ended up fitting seven of Defendants' representatives to demo IYO ONE devices.

90.     On May 1, 2025, 20 days prior to Defendants announcing their "IO" business to the public, IYO met with several of Defendants' representatives, including Welinder, Mr. Tan, Ms. Hankey, and Mr. Rammah. IYO presented its products and visions for the future of human interaction.

91.     On May 5, 2025, 16 days prior to Defendants announcing their "IO" business to the public, Tang Tan indicated to IYO that its product had potential. Indeed, after meeting with IYO and experiencing the IYO ONE in person, the Defendants were sufficiently interested to request that they be allowed an opportunity to review IYO's intellectual property portfolio.

92.     Indeed, on May 15, 2025, 6 days prior to Defendants announcing their "IO" business to the public, Mr. Tan emailed IYO requesting to review IYO's intellectual property through an "IP air curtain" because "it could be interesting."  Mr. Tan added: "ps. is it possible to get our ear plugs?"

<u>**THE MAY 21, 2025 ANNOUNCEMENT**</u>

93.     On May 21, 2025, Sam Altman and Apple designer Jony Ives (LoveFrom) announced the existence of IO, its $6.5 billion acquisition of IO by OpenAI, and its decision to make this new category of computer devices that allow users to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.

94.     The deal was reported to be OpenAI's largest acquisition to date.

95.     According to Defendants' press statement, the two companies would merge to "work more intimately with the research, engineering, and product teams in San Francisco," and "Jony will assume deep design and creative responsibilities across OpenAI" as the company develops new hardware products powered by AI technology.

96.     The announcement, on OpenAI's website, further states (among other things) that: "This is an extraordinary moment. Computers are now seeing, thinking and understanding. Despite this unprecedented capability, our experience remains shaped by <u>traditional products and interfaces. . . . . It became clear that our ambition [was] to develop, engineer and manufacture a new family of products</u>" (emphasis added).

97.     In a video accompanying the press release, Sam Altman (CEO of OpenAI) opens by stating that IO "has the opportunity to completely re-imagine what it means to use a computer."

98.     The video also makes clear that IO is formed around a nucleus of employees from the LoveFrom design collective, and that IO and OpenAI are merging for the "mission" of developing a new class of products for the way people use computers and AI.

99.     The video mentions that the existing devices people use to access technology are "decades old," and that it is "common sense" to move beyond them.

100.     In the video, Altman specifically described the current method of accessing the internet or ChatGPT through the process of opening a computer and physically interacting with it through keyboard and screen as obsolete, as they are "at the limit of what that tool can do." Incredibly, these

are the same talking points that IYO had pitched to Altman not long before.

101.    The press release and video make clear that the purpose of IO is precisely the purpose that IYO made public years earlier: to develop a family of products which will allow users to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.

102.    The video also makes clear that there is a prototype of such a device.

**THE ANNOUNCEMENT IMMEDIATELY BEGINS TO IRREPARABLY HARM IYO**

103.    Immediately upon the May 21 announcement, IYO's founder began receiving an avalanche of communications to the point that IYO's founder's phone was so swamped with messages that IYO's founder reported to Defendants that "it's been a while since [I]'ve been blown up this hard by pretty much everyone, iyO investors, professional network, etc."

104.    Other technology professionals also reported to IYO the confusion they were hearing and expected based on Defendants' use of IO.

105.    This harm is ongoing as discussed below.

**DEFENDANTS' CONDUCT PLAINLY INFRINGES IYO'S RIGHTS, BUT THEY REPEATEDLY REFUSE TO CEASE IT DESPITE EVIDENCE OF CONFUSION**

106.    Defendants are not associated or affiliated with IYO and have never been authorized or otherwise licensed to use the IYO Mark in connection with any products or services.

107.    Defendants adopted the IO name with full knowledge of Plaintiff, its product and its IYO trademark.

108.    Defendants' conduct, in particular its use of the IO name, is intended to, has, and is likely to continue to confuse, mislead, and/or deceive consumers into believing that IO is affiliated with IYO and/or that IO's products originate from, or are associated with, sponsored by, or affiliated with IYO, when they are not (*e.g.*, forward confusion), or conversely, that IYO's services originate from, or are associated with, sponsored by, or affiliated with IO, when they are not (*e.g.*, reverse confusion).

109.    Defendants' conduct also contributes to, and induces infringement of the IYO Mark, in that (with full knowledge of Plaintiff, its product and its IYO trademark) they have joined with,

15

facilitated, encouraged, financed, and made possible, the aforesaid infringement.

110.    Nevertheless, and despite the repeated outreach discussed below, Defendants refused to reverse course.

111.    On May 23, 2025, two days after the May 21 announcement, IYO's founder emailed Mr. Altman to express concern that investors had contacted him about confusion between the parties' company names.

112.    On May 29, 2025, IYO's founder again told Defendants that the announcement of IO and the resulting confusion was causing problems for IYO and its investors, network, and fund-raising efforts. IYO's founder asked that Defendants cease using the IO name to stop the confusion, stating that the situation was "urgent."

113.    On May 30, 2025, Mr. Altman responded and asked IYO's founder to call him, which he did that same day. On the call, IYO's founder reiterated the confusion IO was causing and expressed the concern that IO had "stolen" IYO's name. He also asked Mr. Altman whether Defendants would agree to stop using IO. Mr. Altman not only refused, he incredibly stated that ***IO*** would sue ***IYO*** to force IYO to stop using its own name.

114.    On June 2, 2025, IYO's general counsel sent an email to Defendants outlining IYO's trademark rights and the damage their announcement was causing and again asking them to cease using the IO name.

115.    On June 3, 2025, IYO's general counsel had a phone call with OpenAI's Deputy General Counsel, Renny Hwang. IYO's general counsel reiterated the history of the parties' relationship and stressed that the announcement of IO was already causing confusing and harm to IYO.

116.    Mr. Hwang responded that he would investigate, but he has not made any further communication as of the date of this filing.

117.    On June 6, 2025, IYO's general counsel had a phone call with OpenAI's outside trademark counsel, Margaret Caruso. She confirmed that OpenAI would not change the name of its IO venture and took the implausible position – despite the evidence to the contrary and its highly publicized marketing – that OpenAI was not using the infringing mark in commerce.

**ONGOING INJURY TO IYO**

118.    Defendants' infringement is imminent and impending and Defendants' conduct has already damaged IYO. Defendants have marketed their IO products to potential customers, announced its acquisition of IO products for $6.5 billion dollars, and caused significant confusion in the marketplace, such that the market is presently confused as to who owns rights to the mark.

119.    The goodwill that IYO has amassed in the IYO Mark is put at risk by Defendants' appropriation and use of the IYO Mark. Defendants' unauthorized acts unfairly and unlawfully wrest from IYO control of its IYO Marks and its reputation, particularly as IYO has no control over the quality of Defendants' services offered under the infringing IO mark. As a result, IYO's valuable reputation is being irreparably damaged. If Defendants' conduct is not enjoined, it will continue to injure the value of IYO's IYO Mark and the ability of that mark to indicate goods and services emanating from a single source, namely, IYO.

120.    Investors have stated the concern that the public will believe that IYO is the one stealing Defendants' brand, when it is the exact opposite that is the case.

121.    And even if investors understand that Defendants are the ones in the wrong, they will still be hesitant to invest in a company that is facing inevitable confusion in the marketplace from the largest market player.

122.    IYO's capital raise had been going well before OpenAI made the May 21, 2025, announcement. But since that time, IYO has not been able to secure any additional funding or pledges for funding due to investors' expressed concerns over the infringement.

123.    Without the raise, IYO will not be able to fund its manufacturing efforts or the advertising that will be needed to market its products. This in turn will impact IYO's anticipated sales. Moreover, as discussed above, IYO is not only at risk of losing significant market share, but also at risk of losing investors, with no ability to replace them.

124.    IYO is also faced with the momentous task of correcting the confusion resulting from Defendants' conduct.

125.    In addition, IYO has been damaged by Defendants' past infringement and/or contributory infringement and/or inducement of infringement.

126.    IYO is being, and will continue to be, irreparably harmed by Defendants' willful and unlawful conduct.

127.    IYO has no adequate remedy at law to Defendants' infringing conduct.

## FIRST CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

128.    IYO hereby repeats and realleges each of the allegations set forth in this Complaint.

129.    Defendants have used the term IO in commerce in connection with the sale, offering for sale, distribution, and advertising of Defendants' goods and services.

130.    Defendants' actions are likely to cause, and have already caused, confusion, mistake, and deception as to the origin, sponsorship, or approval of the Defendants' products or commercial activities, and thus constitute infringement of the registered IYO Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

131.    Defendants had actual knowledge of the registered IYO Mark prior to their first use of the term IO.

132.    By virtue of IYO's federal registration, Defendants were on constructive notice of IYO's ownership of the IYO Mark pursuant to Section 22 of the Lanham Act, 15 U.S.C. § 1072. Moreover, Defendants knew or should have known about the registered IYO Mark because even a cursory search of US trademark filings would have shown that IYO already had rights in it.

133.    Nevertheless, Defendants have persisted in their forward and reverse infringing conduct, rendering such conduct knowing and willful.

134.    This case is exceptional, and Plaintiff is entitled to its attorneys' fees under 15 U.S.C. § 1117.

135.    As a direct and proximate result of Defendants' willful actions, Defendants have enjoyed or will enjoy resulting profits from the confusion.

136.    IYO is entitled to damages and further entitled to an accounting of infringing profits as unjust enrichment, for willfulness or for deterrence in an amount to be established upon proof at trial.

137.    Defendants' conduct is also causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable harm that cannot fully be compensated or measured in

money.

138.    As a direct and proximate result of Defendants' willful actions, conduct, and practices, IYO has been damaged and will continue to suffer irreparable harm.

139.    As such, Plaintiff has no adequate remedy at law and is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's rights.

**SECOND CLAIM FOR RELIEF**
**FALSE DESIGNATION OF ORIGIN**
**AND UNFAIR COMPETITION (15 U.S.C. § 1125(A))**

140.    IYO repeats and realleges each of the allegations set forth in this Complaint.

141.    Defendants' actions are likely to cause, and have already caused, confusion, mistake, and deception as to the affiliation, connection or association of Defendants and Plaintiff, and as to the origin, sponsorship or approval of Defendants' products, services, or commercial activities, and thus constitute false designation of origin, passing off, and unfair competition with respect to the IYO Mark, in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

142.    Defendants' use of the term IO and other actions alleged herein, constitute proscribed acts of unfair competition.

143.    The harm of such unfair competition outweighs its utility, has the effect of confusing and deceiving consumers, and trades off the goodwill of IYO.

144.    On information and belief, such unfair competition was designed specifically to, and willfully does, harm Plaintiff and its commercial prospects, and to maximize the likelihood of confusion.

145.    As a direct and proximate result of Defendants' willful actions, IYO has been damaged and will continue to suffer irreparable harm.

146.    As a direct and proximate result of Defendants' willful actions, Defendants have enjoyed or will enjoy resulting profits from the confusion.

147.    IYO is entitled to damages and further entitled to an accounting of infringing profits as unjust enrichment, for willfulness or for deterrence in an amount to be established upon proof at trial.

148.    Defendants' conduct is also causing and, unless enjoined and restrained by this Court,

will continue to cause Plaintiff irreparable harm that cannot fully be compensated or measured in money.

149.    As a direct and proximate result of Defendants' willful actions, conduct, and practices, IYO has been damaged and will continue to suffer irreparable harm.

150.    As such, Plaintiff has no adequate remedy at law and is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's rights.

### THIRD CLAIM FOR RELIEF
### UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE (§ 17200 ET SEQ.)

151.    IYO repeats and realleges each of the allegations set forth in this Complaint.

152.    Each of Defendants' acts and omissions alleged herein, including trademark infringement, and unfair competition harms Plaintiff and constitutes unlawful and unfair business acts or practices within the meaning of Section 17200 *et seq*. of the California Business and Professions Code.

153.    Defendants have engaged in unfair competition by the acts alleged herein.

154.    Defendants' acts and omissions alleged herein constitute unfair business practices because the harm of these business practices outweighs the utility, if any, of these business practices, and are unscrupulous and injurious to consumers.

155.    Defendants' acts and omissions alleged herein constitute unlawful business practices because Defendants' conduct is forbidden by multiple laws, including but not limited to 15 U.S.C. §§ 1114 and 1125(a), as well as the common laws, laws of the State of California and laws of the United States.

156.    Defendants have engaged in these activities willfully and consciously.

157.    Defendants' activities have caused and will continue to cause damage to IYO, and IYO is entitled to recovery of such damages in an amount to be determined at trial.

158.    As a direct and proximate consequence of the unfair and unlawful business practices complained of herein, Plaintiff has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing further acts of unfair competition.

**FOURTH CLAIM FOR RELIEF**
**COMMON LAW FALSE DESIGNATION**
**OF ORIGIN AND UNFAIR COMPETITION**

159.    IYO repeats and realleges each of the allegations set forth in this Complaint.

160.    Defendants are promoting, advertising, and providing products under the term IO, which is virtually identical to the IYO Mark in appearance, sound, and meaning, in violation of California's common law of false designation of origin and unfair competition.

161.    Defendants' unauthorized use of the term IO for products identical and/or closely related in type to those provided by IYO under the IYO Mark is likely to cause confusion or to cause mistake or to deceive the parties' customers or potential consumers and the public as to the source or sponsorship of parties' respective goods and services, or of the parties' relationship to one another. Consumers are likely to be misled into believing that Defendants' services are licensed, sponsored, approved or endorsed by, or otherwise associated with IYO, or that IYO's services are licensed, sponsored, approved or endorsed by, or otherwise associated with Defendants.

162.    Defendants' activities in misappropriating IYO's brand are intentional, malicious, and calculated.

163.    Defendants' activities have caused and will continue to cause damage to IYO, entitling IYO to recover damages in an amount to be determined at trial.

164.    As a direct and proximate consequence of the false designation of origin and unfair competition herein, IYO has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing such further acts.

**FIFTH CLAIM FOR RELIEF**
**CONTRIBUTORY INFRINGEMENT**

165.    IYO repeats and realleges each of the allegations set forth in this Complaint.

166.    At least Defendant IO Products, Inc. has committed direct trademark infringement.

167.    The remaining Defendants had actual or constructive knowledge of IO's directly infringing activity.

168.    The remaining Defendants' conduct also contributes to such infringement in that (with

full knowledge of Plaintiff, its product and its trademark) they have joined with, facilitated, encouraged, directed, financed, and made possible IO's direct infringement, with knowledge that use of the term IO would infringe on Plaintiff's rights.

169.    The remaining Defendants' activities have caused and will continue to cause damage to IYO, in an amount to be determined at trial.

170.    As a direct and proximate consequence of the remaining Defendants' conduct, IYO has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing such further acts.

**SIXTH CLAIM FOR RELIEF**
**INDUCEMENT OF INFRINGEMENT**

171.    IYO repeats and realleges each of the allegations set forth in this Complaint.

172.    At least Defendant IO Products, Inc. has committed direct trademark infringement.

173.    The remaining Defendants had actual or constructive knowledge of IO's directly infringing activity.

174.    The remaining Defendants' conduct also induces such infringement in that (with full knowledge of Plaintiff, its product and its trademark) they have joined with, facilitated, encouraged, directed, financed, and made possible IO's direct infringement, with knowledge that use of the term IO would infringe on Plaintiff's rights.

175.    The remaining Defendants' activities have caused and will continue to cause damage to IYO, in an amount to be determined at trial.

176.    As a direct and proximate consequence of the remaining Defendants' conduct, IYO has been irreparably harmed to an extent not yet determined and will continue to be irreparably harmed by such acts in the future unless the Court enjoins Defendants from committing such further acts.

**PRAYER FOR RELIEF**

WHEREFORE, IYO requests that this Court enter judgment in its favor on each and every claim for relief set forth above, and award it relief including, but not limited to, the following:

A.    Judgment in favor of IYO and against Defendants;

B.    An Order temporarily, preliminarily and permanently enjoining Defendants and their

22

officers, agents, employees, directors, shareholders, subsidiaries, related companies, affiliates, and all persons in active concert or participation with any of them from using the term IO or any designation or design so similar as to be likely to cause confusion, mistake, or deception in connection with Defendants' goods and services;

C. An Order requiring Defendants to account for, and pay to, IYO any and all of Defendants' profits arising from the foregoing acts, and trebling such profits for payment to the Plaintiff in accordance with 15 U.S.C. § 1117;

D. An Order requiring Defendants to pay IYO compensatory and/or actual damages in an amount to be determined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117;

E. An Order requiring Defendants to pay corrective advertising in an amount to be determined caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117;

F. An Order, where appropriate, requiring Defendants to pay an appropriate amount as punitive damages to deter future unlawful misconduct;

G. Pre-judgment interest and post-judgment interest at the legally allowable rate on all amounts allowed;

H. Restitution;

I. Statutory damages as allowed by law;

J. An Order requiring Defendants to pay IYO its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117; and

K. Such other relief as the Court may deem appropriate.

1

Dated:  June 9, 2025

Respectfully submitted,

2

3

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

4

By: */s/ Andrew D. Skale*
Andrew D. Skale (211096)

5

Laura Franco (186765)

6

Anthony J. Viola (*pro hac vice forthcoming*)
Kara M. Cormier (*pro hac vice forthcoming*)

7

8

LWD ADVISORS, INC.
Jeff Hyman (171896)

9

10

Attorneys for Plaintiff

11

IYO, INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues triable of right by a jury.

Dated:  June 9, 2025

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice forthcoming*)
Kara M. Cormier (*pro hac vice forthcoming*)
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415.432.6000

LWD ADVISORS, INC.
Jeff Hyman (171896)
700 El Camino Real Suite 120 #1310
Menlo Park CA 94025
Telephone: 650.219.4229

Attorneys for Plaintiff

IYO, INC.

1

**<u>VERIFICATION</u>**

2    I, Jeff Hyman, declare as follows:

3         1.       I am the CEO of LWD Advisors, Inc., a legal, HR, and business consulting firm that

4    serves as in-house legal counsel to plaintiff IYO, Inc.

5         2.       I have read the foregoing complaint. The factual averments in it are true to my own

6    knowledge and/or based on documents in IYO's possession that I have reviewed. I believe the factual

7    averments stated upon information and belief are true.

8         I declare under penalty of perjury under the laws of the United States of America that the

9    foregoing is true and correct.

10         Executed on June 9, 2025 in Menlo Park, California.

11    

12    _____

         Jeff Hyman

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28