1 | QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)

2 | margretcaruso@quinnemanuel.com
Sara L. Pollock (SBN 281076)

3 | sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor

4 | Redwood Shores, California 94065

5 | Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

6

7 | *Attorneys for Defendants io Products, Inc., OpenAI,*
*Inc., OpenAI, LLC, and Sam Altman*

8 | JONES DAY

9 | David Kiernan (Bar No. 215335)
dkiernan@jonesday.com

10 | 555 California Street 26th Floor
San Francisco, California 94104

11 | Telephone:     (415) 875-5745

12 | Meredith Wilkes (*pro hac vice forthcoming*)

13 | mwilkes@jonesday.com
901 Lakeside Avenue

14 | Cleveland, Ohio 44114

15 | Telephone     (216) 586-7231

16 | *Attorneys for Defendant Sir Jonathan Paul Ive*

17 | **UNITED STATES DISTRICT COURT**

18 | **NORTHERN DISTRICT OF CALIFORNIA**

19 | **SAN FRANCISCO DIVISION**

20 | IYO, INC.,                                    Case No. 3:25-cv-04861

21 |          Plaintiff,                    **DECLARATION OF EVANS HANKEY IN
                                          SUPPORT OF DEFENDANTS'**

22 |      vs.                               **OPPOSITION TO PLAINTIFF IYO,
                                          INC.'S MOTION FOR A TEMPORARY**

23 | IO  PRODUCTS,  INC.,  OPENAI,  INC.,    **RESTRAINING ORDER AND**
OPENAI, LLC, SAM ALTMAN, and SIR          **PRELIMINARY INJUNCTION**

24 | JONATHAN PAUL IVE,

25 |          Defendants.                   Judge:  Hon. Trina L. Thompson
                                          Hearing:  June 17, 2025 at 10 am

26

27

28

Case No. 3:25-cv-04861

HANKEY DECLARATION ISO OPPOSITION TO MOTION FOR TRO

**DECLARATION OF EVANS HANKEY**

I, Evans Hankey, declare:

      1.   I am a co-founder and the Chief Product Officer of Defendant io Products, Inc. ("io"). I make this declaration in support of Defendants' Opposition to Plaintiff IYO, Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction. The facts stated in this declaration are true and correct based on my personal knowledge, and if called and sworn in as a witness, I could and would testify competently to those facts.

      2.   Prior to co-founding io, I was VP of Industrial Design at Apple. I began working at Apple as a product design engineer in September 2000, and continued to work there for nearly 23 years. As VP of Industrial Design, I oversaw development of the look and feel of many Apple products, ranging from the Mac computers to AirPods headphones, and including the iPod, iPhone, and iPad. I am named as an inventor on over 400 U.S. design and utility patents and patent applications. Among others, I contributed to Apple's patents for "In-ear wireless device," "Earphone," "Method for determining a form for a headphone part using a representative model," and "Case with earphones."

      3.   In 2022, while I was still employed by Apple, my good friend and former colleague, Steve Zadesky suggested that I speak with Jason Rugolo. He said he thought I might be able to help Jason out. I had worked with Steve for many years when he was a Vice President of Engineering at Apple. As a favor to Steve, I agreed to a call with Mr. Rugolo. During the call, Mr. Rugolo said he was looking for a head of design at his company. At the time, I did not know the name of his company, and he did not tell me. He told me that the company was working on augmented audio technology for the ear with a voice input. He did not mention anything having to do with AI to me. I told him that I was not personally interested, but would give thought to who might be, and that week, I introduced him to Christopher Stringer, an industrial designer who had previously worked with me at Apple, who was interested in audio-focused products. The call lasted less than an hour. I did not understand the call to be an interview, and I never expressed any interest in working for Mr. Rugolo.

4.    My last day of work at Apple was in April of 2023.  I was ready for a break, and at the time, I did not have plans for what I would do next.  But soon after that, while on a shared family vacation with Jony Ive and his family, I began talking to his son Charlie, and eventually Jony, about the exciting developments in AI.  Over that summer, Jony and I continued to discuss AI developments, and he invited me to join a new venture he was working on.  I was not ready to commit to a full-time position, but I initially agreed to join around October as an advisor to work with Jony and his design collective at LoveFrom.  At that time, I understood that OpenAI had the right to use the io.com domain name.  By June 2024, I was working at io full time.

5.    The only time I spoke with Mr. Rugolo other than the 2022 phone call was when Mr. Rugolo came to io's offices to demo a prototype product in May 2025.  Around this time was the first time I became aware of the name "iyO."  It was my understanding that Mr. Rugolo was hoping that io would acquire his company, his platform, or some other part of his technology.  There was no reason for io to do so; what Mr. Rugolo was offering was not a good fit with what we were working on.  For example, when asked at the May 1 meeting why he chose to offer a product that required custom molding for each customer's ear, my recollection is that Mr. Rugolo answered that his product was not intended to be a general consumer product for the mass market, but was being designed for early adopters, researchers, musicians, and audio purists who are accustomed to having customized earpieces.  In my experience with consumer products, this did not seem like a scalable approach.  io has no current plans to offer a custom-molded earpiece product.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 12th day of June, 2025 at San Francisco, CA.

By: _Evans Hankey_____
    Evans Hankey