MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
ADSkale@mintz.com
Laura Franco (186765)
LFranco@mintz.com
Anthony J. Viola (*pro hac vice*)
AJViola@mintz.com
Kara M. Cormier (*pro hac vice*)
KMCormier@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415.432.6000

LWD ADVISORS, INC.
Jeff Hyman (171896)
jeff@lwdadvisors.com
700 El Camino Real Suite 120 #1310
Menlo Park CA 94025
Telephone: 650.219.4229

Attorneys for Plaintiff
IYO, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC. | Case No. 3:25-cv-4861 |
| Plaintiff, | **PLAINTIFF IYO, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| v. | |
| IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, | |
| Defendants. | Complaint Filed: June 9, 2025<br>Hearing Date: June 17, 2025<br>Place: Courtroom 9 |

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law
San Diego

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 2

A.    Subject Matter Jurisdiction Exists Over This Actual, Imminent Dispute ............... 2

B.    Plaintiff is Likely to Succeed on the Merits of Trademark Infringement ............... 6

1.    Plaintiff Has a Valid and Protectable Trademark ....................................... 6

2.    Defendants Address the Wrong Standard for Infringement ........................ 6

3.    There is a Likelihood of Confusion ........................................................... 7

a.    Defendants' Commercial Strength Will Overwhelm Plaintiff ............... 7

b.    The Parties' Goods are Related ............................................................... 8

c.    The Marks are Nearly Identical ............................................................... 8

d.    There is Already Evidence of Actual Confusion .................................. 10

e.    The Parties' Marketing Channels Overlap ........................................... 11

f.    The Consumer Care Factor Makes Confusion Likely ......................... 11

g.    Defendants Intended to Infringe ........................................................... 12

C.    Plaintiff Will Suffer Irreparable Injury Without Injunctive Relief ...................... 13

1.    Irreparable Harm is Presumed .................................................................. 13

2.    Plaintiff is Suffering Irreparable Harm .................................................... 13

3.    There Is No Delay Here ........................................................................... 14

D.    The Equities Tip in Plaintiff's Favor and An Injunction is in the Public
Interest ............................................................................................................... 15

E.    No Bond Should Be Required .......................................................................... 15

III.  CONCLUSION ..................................................................................................... 15

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law
San Diego

i

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Adidas Am., Inc. v. Skechers USA, Inc.*,
5       890 F.3d 747 (9th Cir. 2018) ................................................................. 14

6 *Beacon Mut. Ins. v. One Beacon*,
7       376 F.3d 8 (1st Cir. 2004) ..................................................................... 10

8 *Bosley Med. Ins. Inc. v. Kremer*,
       403 F.3d 672 (9th Cir. 2005) .......................................................... 1, 6, 7

9 *Calmese v. Nike, Inc.*,
10      2008 WL 11446821 (D. Ariz. Oct. 16, 2008) ........................................ 11

11 *Dreamwerks Prod. Grp., v. SKG Studio*,
       142 F.3d 1127 (9th Cir. 1998) ............................................................. 8, 9
12

13 *Friends of the Wild Swan v. Weber*,
       767 F.3d 936 (9th Cir. 2014) ................................................................. 13

14 *Groupion, LLC v. Groupon, Inc.*,
15      826 F. Supp. 2d 1156 (N.D. Cal. 2011) .................................................. 9

16 *Ironhawk Techs., Inc. v. Dropbox, Inc.*,
       2 F.4th 1150 (9th Cir. 2021) ........................................................... 12, 13
17

18 *JGX, Inc. v. Handlery*,
       2018 WL 984856 (N.D. Cal. Feb. 20, 2018) ................................ 1, 4, 5, 7

19 *JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc.*,
20      821 F. Supp. 1347 (N.D. Cal. 1992) ........................................................ 9

21 *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
       998 F. Supp. 2d 890 (C.D. Cal. 2014) ..................................................... 4
22

23 *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
       762 F.3d 867 (9th Cir. 2014) ................................................................... 5

24 *LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*,
25      2023 WL 6930330 (N.D. Cal. Oct. 19, 2023) ...................................... 3, 7

26 *MedImmune, Inc. v. Genentech, Inc.*,
       549 U.S. 118 (2007) ................................................................................. 2
27

28 *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
       795 F.3d 1124 (9th Cir. 2015) ............................................................. 2, 3

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- ii -

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

*One Indus., LLC v. Jim O'Neal Distrib., Inc.*,
    578 F.3d 1154 (9th Cir. 2009) .......................................................................... 9

*OpenAI, Inc. v. Open A.I., Inc.*,
    2024 WL 4763687 (9th Cir. Nov. 13, 2024) ................................................... 5

*Paypal, Inc. v. Paypay, Inc.*,
    2010 U.S. Dist. LEXIS 161362 (N.D. Cal. July 27, 2010) ............................. 9

*Perini Corp. v. Perini Constr., Inc.*,
    915 F.2d 121 (4th Cir. 1990) ......................................................................... 10

*Pom Wonderful Ltd. Liab. Co. v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ........................................................................ 9

*Rearden LLC v. Rearden Commerce, Inc.*,
    683 F.3d 1190 (9th Cir. 2012) ....................................................................... 10

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) ......................................................................... 14

*Signeo USA, LLC v. SOL Republic, Inc.*,
    2012 WL 2050412 (N.D. Cal. June 6, 2012) ................................................... 9

*Synoptek, LLC v. Synaptek Corp.*,
    309 F. Supp. 3d 825 (C.D. Cal. 2018) ............................................. 9, 10, 12

*TechShop, Inc. v. Rasure*,
    2020 U.S. Dist. LEXIS 40536 (N.D. Cal. Mar. 9, 2020) ............................... 9

*THEIA Techs. LLC v. THEIA Grp., Inc.*,
    2021 WL 291313 (E.D. Pa. Jan. 28, 2021) ................................................... 10

*Thomas v. Anchorage Equal Rts. Comm'n*,
    220 F.3d 1134 (9th Cir. 2000) ........................................................................ 2

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022) ......................................................................... 2

*Virgin Scent, Inc. v. Bel Air Nat. Care Corp.*,
    2019 U.S. Dist. LEXIS 113430 (C.D. Cal. May 14, 2019) ............................. 9

*Warner Bros. Entm't v. Glob. Asylum, Inc.*,
    2012 WL 6951315 (C.D. Cal. Dec. 10, 2012) ............................................... 15

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## I.    INTRODUCTION

Defendants' Opposition collapses under the weight of its own contradictions. Their executives tell the public, investors, and the press that IO is a billion-dollar venture—backed by OpenAI, branded as "io," building screenless, AI-driven hardware, with an amazing prototype, and set to launch to mass-market consumers on *io.com*. That announcement garnered international media coverage in virtually every major outlet, from The Wall Street Journal to NPR.  But to this Court, their lawyers insist none of it is real or ripe. The lawyers claim Defendants have made no use in commerce, have no product, and caused no harm—that all Defendants have is vapor. That cognitive dissonance betrays the truth: Defendants are actively building a competing product under a name indistinguishable from Plaintiff's IYO's trademark and targeting Plaintiff's market.

Defendants admit they knew about IYO, its technology, and its mark well before adopting the IO name. They admit that their "io" product will compete with IYO ONE. They admit their executives—including their CEO—had discussions with IYO, used its demo devices, and then launched a company bearing a confusingly similar name. Yet they now urge this Court to pretend these facts do not matter—arguing infringement cannot be enjoined until the harm is irreversible.

That is not the law. Nor does it reflect reality. IYO is not speculating about future harm— it is living it. Investors are walking away. Its manufacturing and advertising are endangered. Its brand is being eclipsed. The confusion is happening now. This Court should not reward Defendants for racing to market with a knowingly confusing mark. It should enjoin them.

Contrary to Defendants' argument, the law is clear: "the Lanham Act does not require any actual *sale* of goods" for a claim to be ripe.[1] Defendants' conduct has caused confusion and brought Plaintiff's fundraising to a screeching halt just when it needs those funds to manufacture its product and begin paid advertising. Unless this Court steps in, Plaintiff's brand equity will be wiped out, its reputation and goodwill ruined, and its flagship product rendered stillborn.

The cases cited in IYO's opening brief (e.g. *JGX*, *AARP*, and *Theia*), and those referenced herein, make clear that judicial intervention is appropriate and necessary. Ironically, Defendants

---

[1] *Bosley Med. Ins. Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (emphasis added).

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law
San Diego

1

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

concede as much by asserting IYO *had a cause of action* in March 2025. What they omit, however, is that the parties were actively engaged in discussions on this very issue, including through outside counsel, and that IYO sued right after Defendants went public, and their talks collapsed.

Defendants also ignore repeated admissions by their own executives that IYO and IO – and their respective products – are in direct competition. Defendants had knowledge of Plaintiff's mark *before* choosing a virtually identical mark. The products target the same audience, serve the same functions, and are marketed similarly. Remarkably, Defendants concede by omission that they engaged in no trademark due diligence and knowingly disregarded the risk of reverse confusion.

Given the facts, the law, and Defendants' unclean hands, this Court should grant IYO the relief it requests to mitigate the harm Defendants' actions are causing while the case proceeds.

## II.    ARGUMENT

### A.    Subject Matter Jurisdiction Exists Over This Actual, Imminent Dispute

The Court has subject matter jurisdiction over this dispute because it involves "an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022).

First, Defendants argue (at 15-16) that this dispute is "purely hypothetical." But Defendants refused to cease using an infringing mark in connection with advertising a product they admit is "competitive" and "called io." ECF 6-9; 6-12; 6-16; VC at ¶ 117, Rugolo Reply Decl. ¶ 11, Ex. M (video announcement). The company is called *IO Products*, Inc. VC ¶ 22. Defendants secured $6.5 billion to develop their competing product. ECF 6-6 at ¶ 24; VC ¶¶ 6, 12, 93, 118. They told the world about their functioning prototype. Rugolo Reply Decl. ¶ 11, Ex. M (video announcement). And they plan to market this competing product on their website *io.com*. ECF 6-6 at ¶ 29. OpenAI's CEO, Defendant Sam Altman, even claimed (falsely) that Defendants have trademark rights in IO, and admitted considering whether he would bring a claim for trademark infringement against IYO.[2] Rugolo Reply Decl. ¶¶ 2-3 and Ex. K.

Defendants are also wrong when they claim they did not yet advertise a product. Their

---

[2] Mr. Altman's statement that he did not mention suing IYO is disingenuous. Mr. Rugolo took copious notes within an hour of that meeting detailing Mr. Altman's statements regarding his own alleged trademark rights. Rugolo Reply Decl. ¶¶ 2-3 and Ex. K.

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

announcement (covered extensively), was "Sam & Jony introduce io." ECF 6-16. That is an announcement of a product, which Mr. Altman admitted, is "called io." ECF 6-9. If it was an announcement of a company, they would have said "IO Products, Inc." Instead, they said "io."

Thus, this is not some "abstract" or "hypothetical" "disagreement." This is actual, blatant, and unrelenting infringement that Defendants refuse to cease despite Plaintiff's repeated requests. That is all ripeness requires.

Further, this case is nothing like the cases Defendants cite at 15-16. Most of those cases do not concern trademark infringement,[3] and the two that do are inapposite. In *Name.Space*, the plaintiff, who administered certain top-level domains, alleged that ICANN's potential delegation of those domains would cause confusion. *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015). But ICANN never took nor threatened any of the feared actions, so that case was not ripe. *Id.* In *LegalForce* the district court dismissed *part* of the trademark claim as unripe because, despite plaintiff's concern that defendant would use the mark in the U.S., the defendant had not done so and submitted a declaration affirming no past or intended future use. *LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 2023 WL 6930330, at *6 (N.D. Cal. Oct. 19, 2023), *aff'd sub nom. LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122 (9th Cir. 2024). Here, in contrast, Defendants admit they are making a competing product "called io," and announced it to the world under their "io" brand.

<u>Second</u>, Defendants argue (at 16) that this dispute is not concrete or particularized, listing several questions they claim cannot be answered. Ironically, Defendants already answered these questions themselves:

| Question | Answer |
|---|---|
| What kind of product will be created? | According to Mr. Altman and Tang Yew Tan, a "competitive" product "(called io…)." ECF 6-9 (Altman); ECF 6-12 (noting that Tan was "working on something that could potentially be competitive"). |

---

[3] *See Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1175 (9th Cir. 2022) (Twitter's retaliation claim against OAG for investigation after it banned president not ripe because Twitter "fail[ed] to allege" the injury-in-fact required for a First Amendment claim to be justiciable); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (patent licensee not required to terminate license to satisfy Article III's case or controversy requirement); *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1140-41 (9th Cir. 2000) (case not ripe where landlords sought declaratory relief as to validity of law that government had *not* attempted or threatened to enforce against them).

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 3 -

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

| | |
|---|---|
| | According to Defendants, the products, available "next year," are "new kinds of computers" that allow "people to use AI to create all sorts of wonderful things." Rugolo Reply Decl. ¶ 11, Ex. M, May 21 Announcement at 1:55, 2:51, 8:45. Mr. Altman admits recently using one of the prototypes so that he could "live with it," and he thinks it is the "coolest piece of technology the world will have ever seen." *Id.* at 3:22-33. The product frees users from the decades-old way of interacting with computers; no longer needing to open a computer, type a prompt, and wait for a response to interact with AI. *Id.* at 3:55-4:14. |
| To whom would it be marketed? | According to Defendants, these products are "For everyone." *Id.* at 6:49. Indeed, Mr. Altman wants "everyone to have" them. *Id.* at 6:52. |
| What marketing channels would be used? | Defendants will use the internet to market their competing products (including on their io.com website) to "everyone." *Id.* |
| How would the io mark be used, if at all? | IO Products uses the mark in its name. Defendants announced their new products come from their company IO Products. Mr. Altman told IYO that the competing products would be "(called io...)." ECF 6-9. And Defendants told IYO they will not cease using the mark. VC at ¶ 117. |

Defendants' remaining questions, whether a house mark would be used and if the mark will be on the products, do not impact ripeness. Even assuming *arguendo* that "some of the *Sleekcraft* factors are not ripe for disposition at this time," that "does not mean that the Court cannot conduct a *Sleekcraft* analysis." *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 902 (C.D. Cal. 2014) (case justiciable where neither party had a commercially available product).

Third, Defendants argue (at 16-17) that their conduct is not "imminent." But they admit: (1) their products compete with IYO; (2) their products are "called io"; (3) their products will be released "next year"; (4) their company is called IO Products; (5) they have a functioning prototype; (6) they invested $6.5 billion in the products; (7) they own the domain *io.com*; (8) they plan to mass-market their products on *io.com* to "everyone"; (9) their announcement was titled "Sam & Jony introduce io;" and (10) they refuse to cease using the mark. These facts set this case far apart from the cases Defendants cite at 16, n.1.

Finally, Defendants' attempt to distinguish the cases in IYO's opening brief (ECF 6-2 at 23) fails. In those cases (*JGX*, *AARP*, and *Theia*), the courts found that merely advertising goods or services that were not yet available, and in some cases ***years*** from release, sufficed; especially when, as here, the defendant invested in the product and developed a working prototype. Notably,

the *JGX* court looked at two sets of facts: (1) what the defendant had done (left up signs for a restaurant and publicly stated its intent to reopen under the same name in the same location) and (2) how that conduct harmed plaintiff, who was attempting to open a restaurant with that name in a different location. *JGX, Inc. v. Handlery*, 2018 WL 984856, at *3-4 (N.D. Cal. Feb. 20, 2018).

As to the first prong, the restaurant was boarded up, vacant, and the sign with the infringing name was covered. *Id.* at *5. Nevertheless, defendants publicly announced the restaurant "isn't moving anywhere" and "will remain" "at the same location" under the same name. *Id.* at *4. Those facts, analogous to the facts here, coupled with harm to the plaintiff, rendered the dispute imminent.

Defendants completely ignore the second-prong: the harm to Plaintiff. However, plaintiff's harm in *JGX* mirrors the harm Plaintiff suffers here. In *JGX*, the plaintiff alleged it lost "licensing and franchising deals" and the inability to lease space because landlords refused to proceed until trademark ownership was resolved. *Id.* The *JGX* court described that as a loss of "collaboration," comparable to the harm Plaintiff now faces. *Id.* at *4.

As discussed in Section II.C below, Plaintiff has submitted significant evidence that it has already suffered, and will continue to suffer, grievous harm of a non-speculative nature. As that evidence shows, Plaintiff is at a critical juncture in its existence and fundraising is needed to continue its momentum through paying for manufacturing and advertising. Yet that previously successful fundraising has come to complete halt due to Defendants' conduct. As one of IYO's investors testified, the confusion that comes with Defendants announcing a competing product with the same name has a "profoundly negative effect on IYO's fundraising opportunities"; "investors will simply not risk the uncertainty and cost of a protracted dispute and will not invest." ECF 6-4 at ¶¶ 8-9. As in *JGX*, the infringement and the harm to Plaintiff are imminent.

Erroneously, Defendants argue that a trademark owner must sit idly by and suffer the full impact of threatened infringement before it can seek preventive relief. But as *McCarthy* explains, "one need not wait for the actual violation to occur if it is imminent and impending. Trademark infringement by its nature is a commercial tort created by the probability of confusion. What triggers a case of trademark infringement is not actual confusion, but the likelihood or probability of confusion." 4 McCarthy on Trademarks and Unfair Competition § 30:10.

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

By Defendants' logic, a company could announce a new AI software called ChatGP and Defendants would be powerless to enjoin it so long as the release was far enough in the future. Of course that is not the law. For example, in *La Quinta Worldwide, LLC v. Q.R.T.M., S.A. de C.V.*, the District Court found subject matter jurisdiction where defendant Quinta Real advertised its plan to open resorts and spas in the U.S., even though it had not yet done so. 2012 U.S. Dist. LEXIS 190130, at \*5-7 (D. Ariz. Mar. 29, 2012). The Ninth Circuit affirmed the trial court's holding, but reframed the issue, holding that whether Quinta Real's "expressions of intent to open a hotel" was enough to state a claim under the Lanham Act was "not a jurisdictional" matter. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 872 (9th Cir. 2014) ("the Lanham Act's jurisdictional grant" makes no "reference to a 'use in commerce' requirement"). As long as a "colorable claim" is raised, this Court has the subject matter jurisdiction to adjudicate it. *Id.* at 873.

Defendants know this better than anyone. After all, they recently obtained the *same* relief in a trademark case they recently filed with this Court. *OpenAI, Inc. v. Open A.I., Inc.*, 2024 WL 4763687 (9th Cir. Nov. 13, 2024) (affirming this Court's preliminary injunction to OpenAI barring Open A.I., Inc. from using "Open AI"). Defendants' silence on this role reversal is deafening.

**B.    Plaintiff is Likely to Succeed on the Merits of Trademark Infringement[4]**

### 1.    Plaintiff Has a Valid and Protectable Trademark

Defendants do not challenge the validity or enforceability of IYO's trademark rights and as a result, IYO's presumption of validity stands.

### 2.    Defendants Address the Wrong Standard for Infringement

Defendants argue (at 19) that they cannot be liable for trademark infringement because they have not used the IO mark in commerce. But that is not the standard. As *McCarthy* explains, a use is infringing when it is made "'in connection with the sale, offering for sale, distribution or advertising of any goods or services' in a context that is likely to cause confusion, mistake or deception." 3 McCarthy § 23:11.50 (citing 15 U.S.C. § 1114). Although § 1114 refers to "use in commerce," courts have clarified that this phrase serves only as a jurisdictional hook under the Commerce Clause—not as a substantive element of infringement. *Bosley*, 403 F.3d at 677. As

---

[4] Plaintiff addresses only certain of Defendants' merits arguments, without waiver.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
Attorneys at Law

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

*McCarthy* explains, it is "a remnant of trademark law's once-hyper-technical 'affixation' requirement." 3 McCarthy § 23:11.50. Moreover, while Section 45 defines the types of "use in commerce" needed for a "federal registration," it is ***not*** the kind of use necessary to establish infringement, nor does it "limit the scope of 'uses' that would constitute infringement." *Id.*

For decades, the Ninth Circuit has correctly adhered to this interpretation. *Id.* For example, in *Bosley*, (cited by Defendants at 19), the Ninth Circuit held "the 'use in connection with the sale of goods and services' requirement of the Lanham Act does not require any actual *sale* of goods and services." 403 F.3d at 679 (emphasis in original). The court also found it "erroneous" to focus on the "use in commerce language" when the proper question is whether the accused use was "***in connection*** with a sale of goods or services." *Id.* (emphasis added). Defendants' characterization of *Bosley* as involving a "website that did not offer goods for purchase" is misleading. In *Bosley*, the defendant started a website critical of Bosley because he was an unhappy customer. *Id.* at 674-75. The defendant was not *competing* with Bosley; he was *criticizing* them. *Id.* at 679-80. As such, the defendant's use was not "in connection with the sale of goods and services." *Id.* In contrast, Defendants admit they have a "competitive" product "called io…" ECF 6-9.

Defendants' citation to *Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co. LLC*, is similarly unavailing. 331 F. Supp. 3d 1131 (D. Idaho 2018), *aff'd*, 775 F. App'x 350 (9th Cir. 2019). That case involved two companies that operated "assets that formerly belonged to Nelson-Ricks Creamery." *Id.* at 1137. The mark at issue appeared in an historical "About Us" section of the defendant's website that "told the story of the Banquet cheese brand." *Id.* at 1140. "[T]he Mark was included to describe when the company was founded and what kind of products are offered." *Id.*

Instead, this case is akin to *JGX*, *AARP*, and *Theia*, cited on page 23 of IYO's opening brief (ECF 6-2), where the courts found that merely advertising goods or services that were not yet available for sale, and in some cases ***years*** from release, gave rise to an infringement claim.

### 3.    There is a Likelihood of Confusion

#### a.    Defendants' Commercial Strength Will Overwhelm Plaintiff

Plaintiff argued in its opening brief that Defendants' commercial strength would overwhelm the conceptual strength of its mark. Defendants expressly concede this point (at 20): "This factor

does not favor Defendants." The remainder of Defendants' arguments about the conceptual strength of the IYO Mark are nonsensical as Plaintiff never claimed its mark stands for "In Your Opinion."

### b.    The Parties' Goods are Related

As noted above, Defendants **repeatedly** admit they are developing a "competing" product called "io." Mr. Altman, who made that statement, is a very experienced, knowledgeable, and savvy participant in this market. He had prior knowledge of IYO and its product. His *immediate* reaction when Mr. Rugolo contacted him in March 2025 was to recognize that Defendants had a product that was "competitive" and "(called io…)." ECF 6-9. Similarly, Mr. Tan, a founder of Defendant IO Products, had the same reaction, admitting that the products competed. ECF 6-6 at ¶ 18. He also had prior knowledge of Plaintiff and its IYO ONE product (having pre-ordered one), and he admitted that he was "working on something that could potentially be competitive." *Id.* Defendants' Opposition not only ignores these admissions, it incredibly contains attorney argument (at 21) contrary to the factual record, that the "parties' products do not compete to any extent whatsoever." The Court should ignore this unsubstantiated attorney argument.

Indeed, a comparison of IYO's TED Talk (Rugolo Reply Decl. ¶ 10, Ex. L) to Defendants' video announcement (Rugolo Reply Decl. ¶ 11, Ex. M) renders it abundantly clear that Defendants' admissions are true. Both companies are developing products that allow users to interact with AI using natural language.

Defendants' argument (at 20-21) that Plaintiff's IYO ONE product is an in-ear device, while Defendants' product is not, is unavailing.[5] Products need not be identical to be competing or related. The question is whether the parties' customers "are likely to associate" the products with each other or believe that one is sponsored by or originates from the other. *Dreamwerks Prod. Grp., v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) (movies and sci-fi merchandise related). In addition, IYO's federal registration covers precisely the type of products that Defendants claim to be developing. *See* ECF 1-1. This factor favors IYO because the products directly compete.

### c.    The Marks are Nearly Identical

"There is perfect similarity of sound" between IYO and IO because they are "pronounced

---

[5] At the same time, Defendants falsely argue (at 9) that "there is no io product . . . to evaluate."

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

the same way." *Dreamwerks*, 142 F.3d at 1131. Defendants concede that the marks sound the same but argue (at 23) that sound is not part of the buying process because IYO markets its products online. However, a large part of IYO's online marketing occurs via its TED Talk, which is prominently featured on its website. Rugolo Reply Decl. ¶ 10, Ex. L. Thus, consumers are immediately exposed to the mark's verbal articulation when contemplating purchase. Likewise, Defendants' current marketing also includes a video, which is directly embedded in the May 21 announcement. Rugolo Reply Decl. ¶ 11, Ex. M.

Defendants' argument (at 21-22) that the parties' marks are not visually similar is implausible. IYO makes multiple commercial uses of its mark, ranging from all lowercase (ECF 30-3 ("iyo")), to the mixed-case iyO (ECF 30-2 ("iyO")), to all uppercase (VC ¶ 47 (IYO mark on product in all caps)). Moreover, IYO's federal registration is for a standard character mark, *see* ECF 1-1 (registration), meaning that its "exclusive right[s]" are "extremely broad, covering the word in all types of depictions" and "not limited to any particular rendition of the mark." *Pom Wonderful Ltd. Liab. Co. v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014). Although the marks are compared as they appear in the marketplace, the marks are more visually similar than those in the cases Defendants cite (at 22-23).[6] Plus, "[n]umerous courts" in this circuit "have found a likelihood of confusion where [ ] two marks were phonetic equivalents and had only a one or two letter difference." *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825 (C.D. Cal. 2018) ("Synoptek" and "Synaptek" are "virtually identical in appearance and only differ by one single letter" and were "phonetic equivalents").[7]

---

[6] *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154 (9th Cir. 2009) (involved logo marks); *Signeo USA, LLC v. SOL Republic, Inc.*, 2012 WL 2050412 (N.D. Cal. June 6, 2012) ("SOL REPUBLIC" and "SOUL BY LUDACRIS"); *Groupion, LLC v. Groupon, Inc.*, 826 F. Supp. 2d 1156 (N.D. Cal. 2011) (different industries and customer basis).

[7] *See also Virgin Scent, Inc. v. Bel Air Nat. Care Corp.*, 2019 U.S. Dist. LEXIS 113430, *14 (C.D. Cal. May 14, 2019) (summary judgment denied, noting that a rational jury could find "an" and "BA" similar despite sharing only one letter and difference in capitalization); *TechShop, Inc. v. Rasure*, 2020 U.S. Dist. LEXIS 40536, at *19 (N.D. Cal. Mar. 9, 2020) (TECHSHOP and THESHOP.build "nearly identical" where defendants de-emphasized ".build" in the marketplace); *JouJou Designs, Inc. v. JOJO Ligne Internationale, Inc.*, 821 F. Supp. 1347, 1354 (N.D. Cal. 1992) (JOUJOU and JOJO for women's clothing are "substantially similar both in pronunciation and usage"); *Dreamwerks*, 142 F.3d at 1131 ("Dreamwerks" and "DreamWorks" had "perfect similarity of sound" and meaning); *Paypal, Inc. v. Paypay, Inc.*, 2010 U.S. Dist. LEXIS 161362, *10 (N.D. Cal. July 27, 2010) (PayPay and PayPal similar despite a one-letter difference).

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1

### d.    There is Already Evidence of Actual Confusion

2

Defendants argue (at 23) that IYO has no evidence of actual **consumer** confusion since

3

Defendants have yet to release a product. But the Ninth Circuit has a "flexible approach to assessing

4

'likelihood of confusion'" and has long "recognized . . . that non-consumer confusion can serve as

5

a proxy for consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1215-

6

16 (9th Cir. 2012) (describing circumstances where non-consumer confusion is relevant).[8]

7

For example, in *TrafficSchool.com v. Edriver Inc.*, the Ninth Circuit decided an

8

infringement case involving the website dmv.org. 653 F.3d 820 (9th Cir. 2011). The court credited

9

confusion of non-consumers like law enforcement officials and state DMV employees because "if

10

even these parties who presumably have much more familiarity with governmental DMVs, are

11

confused about the defendants' website, then it is probable that consumers, who had less familiarity,

12

would also experience confusion." *Rearden*, 683 F.3d at 1215-16 (explaining *TrafficSchool*). In

13

*Rearden*, the court noted that prospective employees, a vendor, an investor, and sophisticated

14

parties like auditors and patent attorneys, had all expressed confusion. *Id.* (denying summary

15

judgment with respect to the actual confusion factor).

16

Other courts in this district have followed suit; *see Synoptek,* 309 F. Supp. 3d at 840

17

(confusion among "nonpurchasing members of the public," including investors, is relevant); as

18

have courts around the country. *See, e.g., THEIA Techs. LLC v. THEIA Grp., Inc.*, 2021 WL

19

291313, at *27 (E.D. Pa. Jan. 28, 2021) ("it is legally irrelevant that this instance of actual confusion

20

was not by a consumer because '[t]he likelihood of confusion with which the Lanham Act is

21

concerned is not limited to confusion of products among purchasers'"; the Lanham Act extends to

22

"the use of trademarks which are likely to cause confusion, mistake, or deception *of any kind*, not

23

merely of purchasers nor simply as to source of origin"); *Beacon Mut. Ins. v. One Beacon*, 376 F.3d

24

8, 15-16 (1st Cir. 2004) (evidence of actual confusion is "not limited to actual or potential

25

_____

26

[8] "[N]on-consumer confusion may also be relevant to the 'likelihood of confusion' inquiry in three specific and overlapping circumstances—namely where there is confusion on the part of: (1) potential consumers; (2) non-consumers whose confusion could create an inference that consumers

27

are likely to be confused; and (3) non-consumers whose confusion could influence consumers. In all three instances, the non-consumer confusion bears a relationship to the existence of confusion

28

on the part of consumers themselves." *Rearden*, 683 F.3d at 1214.

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

purchasers, but also includes others whose confusion threatens the trademark owner's commercial interest in its mark" or causes "damage to goodwill, or loss of control over reputation"); *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 128 (4th Cir. 1990) (non-purchaser confusion is relevant if it "adversely affects the plaintiff's ability to control his reputation among its laborers, lenders, investors, or other groups with whom the plaintiff interacts").

The investor confusion here (demonstrated in declarations from Plaintiff's investors) is not only relevant, but highly indicative of the confusion less-experienced consumers are bound to experience. Thus, this factor weighs in Plaintiff's favor.

### e.    The Parties' Marketing Channels Overlap

Defendants argue (at 23-24) that this factor is at best neutral where both parties' marketing channels include the internet. But "[a]n analysis of marketing channels includes advertising, distribution, and customer demographics." *Calmese v. Nike, Inc.*, 2008 WL 11446821, at *4 (D. Ariz. Oct. 16, 2008). Here, the parties are marketing competing products that solve similar problems using similar technology to consumers interested in cutting-edge AI interfaces. And both parties aim to bring this technology to the mass-market. Therefore, this factor favors Plaintiff.

### f.    The Consumer Care Factor Makes Confusion Likely

Defendants wrongly argue (at 24) that IYO only markets its products to "professional musicians, audio engineers, audiophiles, auditory neuroscientists," and "psychoacousticians." This consumer list appeared on the prior version of IYO's website in relation to IYO's ***first*** product, the VAD PRO, not its current product, the IYO ONE. Rugolo Reply Decl. ¶ 6, Ex. N.[9] IYO's stated goal on its website is "to bring natural language computing to billions of people." ECF 30-1 (prior website); Rugolo Reply Decl. ¶ 10, Ex. L (TED Talk discussing mass marketing goals).[10] The IYO ONE has always been marketed for a "general consumer audience." *Id.* While the VAD PRO was "targeting buyers who were already used to paying a premium for custom-fitted earpieces," the

---

[9] Notably, Defendants did not attach a screenshot of the website they mischaracterize. As shown in Exhibit N, IYO marketed the ***VAD PRO*** to specific consumers; there is zero reference to the IYO ONE product. *See id.*

[10] Defendants' insinuation that IYO changed its website for purposes of this litigation is false. *See* Rugolo Reply Decl. at ¶ 7. Rather, Defendants' own exhibits make clear the prior IYO website contains largely the same content as the current version.

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 11 -

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

IYO ONE has a price-point equivalent to that of a standard smart phone (of which hundreds of millions are sold every year), VC ¶ 44. Moreover, IYO's next iteration of the IYO ONE product will not require custom fitting. Rugolo Reply Decl. at ¶ 8. In any event, even if the price somehow indicated an increased level of care, that does not mean consumers will not be confused. "What is expected of [a] reasonably prudent consumer depends on the circumstances. While experts and buyers of expensive items are expected to be 'more discerning,' courts recognize that 'confusion may often be likely even in the case of expensive goods sold to discerning customers.'" *Synoptek,* 309 F. Supp. 3d at 840. Moreover, Defendants do not claim their product will be cheaper than IYO's and both parties plan to market to general consumers. Thus, this factor favors Plaintiff.

### g.    Defendants Intended to Infringe

Defendants falsely claim (at 25) that they "had no malicious [intent]" and that they "chose" the IO name before they even knew about IYO. This is demonstrably untrue. In March and April of 2022, Mr. Rugolo had a series of meetings with Mr. Altman's private investment fund, *and exchanged emails with Mr. Altman himself.* ECF 6-6 at ¶¶ 3-5; ECF 6-7. Those emails discuss IYO, are from Mr. Rugolo's IYO email account and include his IYO signature. Mr. Altman was also copied on an email from his private investment manager, who described an internal discussion about IYO, stating: "We love the vision of Iyo and are impressed with the approach . . ." *Id.* Mr. Rugolo also discussed a possible collaboration with Evan Sharp of LoveFrom, Jony Ive's company, in April 2022. ECF 6-6 at ¶¶ 3-5; ECF 6-7. After the meeting, Mr. Sharp confirmed that LoveFrom had internally discussed IYO and its products and vision. *Id.*

Defendants also ignore that Mr. Altman said that the product was "competitive" and would be "(called io…)," indicating regret and knowledge of the harm this would cause IYO. If there had been any other explanation, Mr. Altman would have said so. Instead, his declaration is silent.

Defendants also should have known of Plaintiff's trademark rights. While the IYO Mark did not *register* until June 4, 2024, the application was *filed* September 17, 2021, and *published* on February 14, 2023, *before* Defendants claim to have decided on the "io" name (March 2023) and *before* they founded IO Products, Inc. (September 2023). VC ¶¶ 50, 66.

Nor do Defendants present any evidence that they conducted any due diligence before

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 12 -

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1  adopting "io." Defendants also fail to address *Ironhawk,* which holds that in a reverse confusion

2  case, intent can be shown when a junior user "knew of the mark, should have known of the mark,

3  […] failed to conduct a reasonably adequate trademark search, or otherwise culpably disregarded

4  the risk of reverse confusion." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1168 (9th Cir.

5  2021). That is exactly the case here. Thus, this factor favors Plaintiff.

6      As all of the factors either weigh in favor of Plaintiff or are neutral, Plaintiff demonstrates

7  a strong likelihood of success. At the very least, Plaintiff raises "serious questions on the merits."

8  Given the utter lack of harm to Defendants, the balance of equities tips strongly in Plaintiff's favor,

9  warranting a TRO. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014).

10      **C.      Plaintiff Will Suffer Irreparable Injury Without Injunctive Relief**

11              **1.      Irreparable Harm is Presumed**

12      Defendants do not dispute—and therefore concede—that IYO is entitled to a ***presumption***

13  of irreparable harm if the Court finds a likelihood of confusion. Because IYO makes that showing

14  here, the presumption stands. 15 U.S.C. § 1116(a).

15              **2.      Plaintiff is Suffering Irreparable Harm**

16      Even absent the presumption, Plaintiff has already suffered, and will continue to suffer,

17  grievous harm of a non-speculative nature. For example, Plaintiff submitted evidence – nowhere

18  rebutted by Defendants – that Plaintiff was engaged in a successful fundraising campaign which

19  came to an abrupt and complete halt upon Defendants' May 21, 2025, announcement. ECF 6-6 at

20  ¶ 30. Since Defendants' announcement, no new funds, no new pledges of funds, and no new

21  investors have come forward. *Id.*; Rugolo Reply Decl. ¶ 13. In fact, the market continues to

22  comment on, and react to, the announcement of Defendants' "IO" (including at a recent investor

23  conference).  Thus, the harm is ongoing. Rugolo Reply Decl. ¶ 12; ECF 6-6 at ¶ 32.

24      Contrary to Defendants' assertion (at 28), Plaintiff's harm is not merely "economic." Its

25  injuries go far beyond money damages. Plaintiff is at a critical juncture in its existence and needs

26  to raise capital to fund manufacturing and advertising. ECF 6-6 at ¶ 32. Two of IYO's investors,

27  both of whom have extensive knowledge and experience in technology start-ups, confirm that

28  Defendants' announcement has chilled investment, stolen IYO's brand equity, impedes recruiting,

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 13 -

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

and rendered the IYO ONE "stillborn." ECF 6-4 at ¶¶ 4, 7-12; ECF 6-5 at ¶¶ 10, 13. Without funds to manufacture its IYO ONE and fulfill its pre-orders, its credibility and reputation among consumers will be forever damaged. This harm flows directly from Defendants' infringing conduct.

Courts recognize that such injuries, including loss of good will and recruitment, constitute irreparable harm. *See, e.g.*, *Adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) ("[e]vidence of loss of control over business reputation and damage to goodwill [can] constitute irreparable harm."); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."). That harm is ongoing. Defendants' announcement is live on OpenAI's website and continually being viewed. The longer Defendants' infringement goes unaddressed, the greater the harm. Plaintiff thus urgently needs relief, including removal of the offending announcement and video, to stop the continuing harm.

### 3.    There Is No Delay Here

Unabashed by the hypocrisy, Defendants argue (at 28-29) – in direct contradiction to their denial of an imminent or justiciable controversy – that IYO unreasonably delayed in seeking relief. Indeed, Defendants' delay argument is an admission that this case is ripe. Regardless, the idea that IYO delayed filing suit could not be further from the truth.

Immediately following Defendants' May 21, 2025, announcement, Plaintiff and its general counsel repeatedly reached out to Defendants demanding that they cease their infringement. *See* VC at ¶¶ 111-17. Mr. Rugolo, contacted Mr. Altman, told him of the negative reaction and confusion in the marketplace, and the damage Defendants were causing (specifically mentioning the harm to IYO's fundraising, manufacturing, and marketing), and asked for a written commitment that Defendants stop using the name IO. ECF 6-6 at ¶¶ 28-29. Mr. Rugolo and Mr. Altman had a call the next day (Friday, May 30), in which Mr. Rugolo again asked Defendants to stop using IO or any homophone of it. *Id.* at ¶¶ 25-27. The next business day (Monday, June 2) Plaintiff's counsel sent a demand letter to Defendants, which led to a series of communications between counsel the week of June 2, culminating in Defendants' definitive refusal to cease using the IO mark on Friday June 6. *Id.*, at ¶¶ 114-117. Plaintiff's complaint was filed the next business day. No delay can be

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 14 -

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

found in these circumstances. McCarthy § 31:32 (settlement discussions and investigation excuse purported delay); *Warner Bros. Entm't v. Glob. Asylum, Inc.*, 2012 WL 6951315, at *21 (C.D. Cal. Dec. 10, 2012) (four-month delay for TRO excused by investigation and settlement talks).

Defendants' assertion (at 28) that delay should be measured from March 4, 2025, when Mr. Altman privately disclosed that he was working on a competing product "called io," fails. Delay can only be measured from the time a claim accrues. No claim accrued as of March 4, 2025, because Defendants had not yet used the mark "'in connection with the sale, offering for sale, distribution or advertising of any goods or services' in a context that is likely to cause confusion, mistake or deception." 3 McCarthy § 23:11.50 (citation omitted). That did not happen until Defendants publicly advertised their competing product using the infringing mark on May 21, 2025.

**D.      The Equities Tip in Plaintiff's Favor and An Injunction is in the Public Interest**

Defendants do not dispute that where confusion is likely, there is no unfair hardship in ceasing infringing conduct. Nor do Defendants dispute that since they do not have a commercially ready product, they would suffer no harm in changing the name.

**E.      No Bond Should Be Required**

Plaintiff does not seek to enjoin Defendants from development, production, or sale of products. Rather, Plaintiff seeks a narrowly tailored injunction against use of the infringing mark. Such an injunction would not harm Defendants' business because they admit (at 16) they have no sales or commercially available product. Nor can Defendants credibly argue harm to Altman's or Ive's livelihoods or to OpenAI's business. Altman and Ive are billionaires and OpenAI raised $40 billion two months ago. *See id.* at 30; VC ¶ 65. Thus, no bond should be required.

**III.      CONCLUSION**

For the foregoing reasons, IYO respectfully requests that the Court grant its motion.

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  June 15, 2025

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*_____
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

LWD ADVISORS, INC.
Jeff Hyman (171896)

Attorneys for Plaintiff IYO, Inc.

PLAINTIFF'S REPLY MEMO IFSO MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION