MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
ADSkale@mintz.com
Laura Franco (186765)
LFranco@mintz.com
Anthony J. Viola (*pro hac vice*)
AJViola@mintz.com
Kara M. Cormier (*pro hac vice*)
KMCormier@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415.432.6000

LWD ADVISORS, INC.
Jeff Hyman (171896)
jeff@lwdadvisors.com
700 El Camino Real Suite 120 #1310
Menlo Park CA 94025
Telephone: 650.219.4229

Attorneys for Plaintiff
IYO, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC., <br><br> Plaintiff, <br><br> v. <br><br> IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, <br><br> Defendants. | Case No. 3:25-cv-4861 <br><br> **PLAINTIFF IYO, INC.'S NOTICE OF MOTION AND MOTION FOR ORDER TO SHOW CAUSE RE: CONTEMPT AND SANCTIONS** <br><br> Date:  September 9, 2025 <br> Time:  2:00 p.m. <br> Place:  Courtroom 9 <br> Judge:  Hon. Trina L. Thompson <br><br> Complaint Filed:  June 9, 2025 |

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ORDER TO SHOW CAYSE RE: CONTEMPT AND SANCTIONS

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on September 9, at 2:00 p.m., or as soon thereafter as this motion may be heard, in the courtroom of the Honorable Judge Trina L. Thompson, Courtroom 9, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff IYO, Inc. ("IYO") will and hereby does move the Court for an order to show cause: (1) why the Court should not hold defendants IO Products, Inc., OpenAI, Inc., OpenAI, LLC, Sam Altman, and Sir Jonathan Paul Ive ("Defendants") in contempt of Court for violating this Court's Order Granting Motion for Temporary Restraining Order (ECF 51) (the "TRO"); (2) directing Defendants to remove material(s) which violate the TRO, including that which they posted and/or re-posted on July 9; and (3) why the Court should not impose monetary sanctions against Defendants in an amount sufficient to deter future violations and to compensate IYO for its attorneys' fees and costs incurred in connection with this motion and any hearing on it. IYO respectfully requests the opportunity to brief the amount of its fees and costs following the hearing on this matter.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Andrew D. Skale dated July 10, 2025, and the exhibits thereto, and all papers on file in this action, and any other matters that may be presented to this Court at the hearing or otherwise.

Good cause exists to grant this motion because "[s]anctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Religious Tech. Ctr. v. Henson*, 2000 U.S. App. LEXIS 15396, at *3 (9th Cir. June 23, 2000) (affirming finding of civil contempt and remanding for calculation of amounts due). In this case, Defendants had actual knowledge of the TRO and just willfully violated it. Accordingly, there is good cause to hold them in contempt and to impose monetary sanctions against them.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants willfully violated the Court's June 20, 2025 TRO. (ECF 51). Defendants knew and understood the TRO's requirements. Nevertheless, displaying much the same temperament and mindset that gave rise to the underlying dispute, Defendants blatantly disregarded the Court's authority when, on July 9, 2025, they re-posted on their website the marketing content they previously took down to comply with this Court's TRO. Defendants' re-posted announcement is once again marketing a line of products to be released by "io Products, Inc." under the brand "io." This plainly violates the TRO.

As the Supreme Court noted long ago, "[t]he interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril." *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947).

IYO requests that the Court issue an order to show cause as to why Defendants should not be held in contempt, directed to (once again) remove material(s) that violate the TRO, and why they should not be sanctioned in an amount sufficient to deter future violations and to compensate IYO for its attorneys' fees and costs incurred in connection with this motion and any hearing on it.

## II. FACTS

On May 21, 2025, Defendants published on OpenAI's website a marketing piece announcing the upcoming merger of defendants OpenAI and IO Products, Inc. and their new line of products under the IO brand. *See* Declaration of Andrew D. Skale dated July 10, 2025 ("Skale Decl."), Ex. A (https://openai.com/sam-and-jony/ as of May 21, 2025) (also on the docket as ECF 6-16). At that time, the marketing announcement included an introduction to the parties' new IO endeavor, an introduction to their IO brand, described Defendants' goals and the intended

functionality of their future products, and indicated that IO was at work developing those products. *Id.* It went on for about 14 paragraphs, including quotes from the founders of the new venture, and was accompanied by a video. *Id.*

On June 20, 2025, this Court issued its TRO restraining Defendants from using the IYO mark, and any mark confusingly similar thereto, "including the IO mark," "in connection with the marketing or sale of related products." ( ECF 51.)

That same day, Defendants pulled the May 21 announcement from their website, replacing it with an error message. *See* Skale Decl., ¶ 3. Then a few days later, that error message was replaced with a statement that Defendants removed the webpage **because of** this Court's TRO. *Id.*, Ex. B. Indeed, Defendants admitted they "temporarily" pulled down the marketing announcement, because of the TRO and because they did not agree with the complaint (and implicitly the Court's order):

> This page is temporarily down due to a court order following a trademark complaint from iyO about our use of the name "io." We don't agree with the complaint and are reviewing our options.

*Id.*

In short, by Defendants' own conduct and statements, they **conceded** that the May 21 announcement was marketing that ran afoul of the TRO.

Nevertheless, on July 9, 2025, Defendants *re-posted* the May 21 announcement, masquerading it as a merger announcement between IO and OpenAI.[1] Skale Decl., Ex. C (https://openai.com/sam-and-jony/ as of July 9, 2025). While Defendants made a few minor changes, the content that they re-posted violates the TRO. *Id.* Indeed, the re-post is labeled "May 21, 2025" and is nearly identical to the original May 21 post. It contains the same introduction to the parties' new IO endeavor, the same introduction to their IO brand, the same description of Defendants' goals and intended functionality of their future products, and the same

---

[1] Defendants did not re-post the video.

indication that IO was at work developing those products. *Id.* It goes on for the same 14 paragraphs as the original and includes the same four quotes from the founders as the original. *Id.*; *see also* Skale Decl., Ex. D (redline comparing the original post to the edited post).

The new post begins "Update July 9, 2025. We are thrilled to share that the io Products, Inc. team has officially merged with OpenAI. . . ." *Id.* It then re-posts the May 21 announcement, even using the heading "May 21, 2025." *Id.* As before, the re-post begins by decrying "traditional products and interfaces," and states that Defendants have generated "tangible designs" for "new tools" to replace them. *Id.* It describes the "new team" (also referred to as "the io Products, Inc. team") as "focused on developing products that inspire, empower, and enable." *Id.* Defendant Ive is quoted as saying: "The values and vision of Sam and the teams at OpenAI and **io** are a rare inspiration" (emphasis added).

Defendants' actions clearly violate the TRO, in which this Court described the May 21 statement as an announcement of "IO's decision to make a new category of computer devices . . ." (ECF 51, p.3.) The re-post does exactly the same.

In its order this Court rejected Defendants' contention that "their announcement that OpenAI and IO Products would be merging and would develop in the future a new family of products is insufficient to establish an imminent or actual injury." (*Id.*, at p. 7.) The re-post states yet again that Defendants merged and will be developing a new line of products, and in doing so causes Plaintiff to suffer the same injuries all over again.

In discussing Market Channel Convergence, this Court concluded that Defendants' May 21 announcement constituted internet marketing, (*id.*, at p. 16), and restrained them from continuing to utilize that marketing. Yet, they just utilized it again. Further, in discussing Balance of the Equities, this Court described the TRO sought (and which it granted) as "enjoining the Defendants from use of the name 'IO' in connection with their new company/products." (*Id.*, at p. 19.) They just brazenly

violated that directive.

In that same section, the Court further pointed out that Defendants could avoid harm from the TRO by "alter[ing] their brand and company name to comply with the TRO." *(Id.)* Instead, they just doubled-down on using IO as their brand and company name and brazenly re-posted the May 21, 2025 announcement to the world that they are doing so.

## III. LEGAL STANDARD

This Court has both inherent and statutory authority to punish contempt and coerce compliance with its orders. *See* 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment or both, at its discretion, such contempt of its authority."); *Sepehry-Fard v. elect Portfolio Servicing, Inc.*, 2016 WL 4436312 at *7 (N.D. Cal. Aug. 23, 2016) (the court "has the inherent authority to enforce compliance with its orders through a civil contempt proceeding").

"Failure to obey the terms of a temporary restraining order or preliminary injunction constitutes contempt." *United States EEOC v. Recruit USA, Inc.*, 1990 U.S. Dist. LEXIS 18305 (citing *United States v. Powers,* 629 F.2d 619, 624 (9th Cir. 1980)). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Weiss v. Espresso Roma Corp.*, 2020 WL 5291904, at *2 (N.D. Cal. Sep. 4, 2020) (citing *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002)). "To make a prima facie showing of contempt, one must show 'only that the defendant has failed to comply with a valid court order." *Ellerd v. Cty. of L.A.*, 2006 U.S. Dist. LEXIS 117987, at *6 (C.D. Cal. Dec. 11, 2006) (quoting *United States v. Rylander*, 656 F.2d 1313, 1318 (9th Cir. 1981)). The moving party "need not prove that the defendant is able to comply." *Id.* Further, contempt "need not be willful, and there is no good faith exception to the requirement

of obedience to a court order." *Id.*[2] Here, however, Defendants willfully disobeyed the Court's TRO. Thus, the Court should sanction them accordingly.[3]

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *Religious Tech. Ctr. v. Henson*, 2000 U.S. App. LEXIS 15396, at *3 (9th Cir. June 23, 2000) (affirming finding of civil contempt and remanding for calculation of amounts due).

## IV. ARGUMENT

Defendants violated the Court's TRO by reposting their May 21 marketing announcement made in connection with the advertisement of a line of forthcoming products under the IO brand, offered by "io Products, Inc." This was not a technical violation consistent with material compliance with the TRO. Rather, Defendants made a knowing and willful decision to make their re-post in the form in which they did, as evidenced by the fact that they removed a few (but not all) stand-alone references to IO and also did not re-post the video announcement.

Defendants' cosmetic revisions to their marketing materials change nothing. The re-post conveys the same message as the original and continues infringing use of the IO mark. Moreover, by using the same "May 21, 2025" heading, Defendants are telling the public that the re-post is the exact same post they made before the TRO. Any of the millions of people who saw the original May 21 post, and then saw the July 9 announcement, would have no reason to look for the minute revisions Defendants made. As such, the July 9 announcement has the same effect as the May 21 post, announcing an upcoming IO product line in willful violation of the Court's TRO.

---

[2] *See also Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985) ("[C]ivil contempt may be established even though the failure to comply with the court order was unintentional."); *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) ("The contemptuous actions need not be willful so long as the contemnor actually failed to comply with the court's order.").

[3] Where, as here, such violation is willful, the Court, *sua sponte*, may even institute criminal proceedings pursuant to Federal Rules of Criminal Procedure Rule 42.

There is no good faith interpretation of the TRO that permits Defendants to continue marketing competing products under the "io Products, Inc." company name or to continue referencing the IO brand. Defendants thumb their noses at IYO and the Court by attempting to circumvent the Court's TRO. In their own words, they "don't agree with the complaint." Skale Decl., Ex. B. They should be held accountable for such conduct.

IYO respectfully requests that this Court find Defendants in civil contempt for violating the TRO. Specifically, IYO asks the Court: to hold that Defendants' failure to comply with the TRO constitutes civil contempt, to direct them to remove the re-post, and to impose a monetary sanction for each day they fail to fully comply with the Court's TRO. *See Yan v. Lei*, 2019 WL 7879950, at *2–3 (N.D. Cal. Nov. 12, 2019), report and recommendation adopted, No. 11-CV-01814-RS, 2020 WL 613959 (N.D. Cal. Jan. 15, 2020) (directing non-compliant party to comply with the court's order, instituting monetary sanctions for each day that the party failed to comply with the court's order, awarding reasonable attorney fees incurred in connection with the motion, and warning the non-compliant party of further sanctions and possible incarceration).

In "'determining the amount and duration of a coercive fine," the Court "must consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired.'" *Mne Trucking, Inc. v. Oj Commerce, Ltd. Liab. Co.*, 2025 U.S. Dist. LEXIS 125327, at *6 (C.D. Cal. June 27, 2025) (quoting *Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 516 (9th Cir. 1992)). Here, Defendants are willfully flouting the Court's TRO and its authority. To be effective, a coercive sanction must be significant in light of Defendants' vast wealth and resources.

For example, in *Coleman v. Newsom*, the district court awarded coercive fines against the State of California for failing to comply with orders to reduce mental health care staffing vacancies in state prisons. 131 F.4th 948, 965 (9th Cir. 2025).

The government ultimately accrued $110 million in coercive fines over a three-month period. *Id.* The fines were "based on the average monthly salary for each unfilled position that the State would need to fill to reach a ten percent vacancy rate." *Id.* The Ninth Circuit found this "basic construction" for the fine to be "reasonable" as it could be "understood as an attempt to shift the State's incentives by eliminating the savings it achieves through noncompliance." *Id.* It only remanded the case to the district court for further "factfinding and analysis" because the court had not explained why it had doubled the reasonable portion of its calculation to arrive at the amounts assessed. *Id.* The Ninth Circuit noted, however, that the court might justify its calculation as necessary "to eliminate the State's additional savings on items such as health insurance and retirement contributions." *Id.*

The fine in the *Coleman* case equated to approximately $1.22 million per day; and even if the court ultimately cuts that amount in half (to the presumptively reasonable amount found by the Ninth Circuit), that is still approximately $612,000 per day. Here, there is no dispute that Defendants invested $6.5 **billion** in their IO venture and that their combined resources far exceed that amount. As a result, a trivial sanction would not serve to coerce compliance, especially in the face of Defendants' willfulness. As such, IYO suggests a coercive sanction in the amount of at least $325,000 per day (0.005% of $6.5 billion) until Defendants are again in compliance with the TRO.

In addition, IYO is "entitled to recover [its] attorney's fees and costs incurred in bringing and prosecuting these contempt proceedings" because the "cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party and those costs would reduce any benefits gained by the prevailing party from the court's violated order." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 958 (9th Cir. 2014). As such, IYO requests the opportunity to brief the amount of its fees and costs once the hearing on this matter is concluded.

## V. CONCLUSION

For the reasons stated above, IYO respectfully requests that this Court issue an order to show cause: (1) why the Court should not hold defendants IO Products, Inc., OpenAI, Inc., OpenAI, LLC, Sam Altman, and Sir Jonathan Paul Ive ("Defendants") in contempt of Court for violating this Court's Order Granting Motion for Temporary Restraining Order (ECF 51) (the "TRO"); (2) directing Defendants to remove material(s) which violate the TRO, including that which they posted and/or re-posted on July 9; and (3) why the Court should not impose monetary sanctions against Defendants in an amount sufficient to deter future violations and to compensate IYO for its attorneys' fees and costs incurred in connection with this motion and any hearing on it. IYO also respectfully requests the opportunity to brief the amount of its fees and costs following the hearing on this matter.

Dated: July 11, 2025

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

LWD ADVISORS, INC.
Jeff Hyman (171896)

Attorneys for Plaintiff IYO, Inc.