QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

*Attorneys for Defendants io Products, Inc., OpenAI, Inc., OpenAI, LLC, and Sam Altman*

JONES DAY
David Kiernan (Bar No. 215335)
dkiernan@jonesday.com
555 California Street 26th Floor
San Francisco, California 94104
Telephone:     (415) 875-5745

Meredith Wilkes (*pro hac vice*)
mwilkes@jonesday.com
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone     (216) 586-7231

*Attorneys for Defendant Sir Jonathan Paul Ive*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IYO, INC., | Case No. 3:25-cv-04861-TLT |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT** |
| vs. | |
| IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, | Judge: Hon. Trina L. Thompson<br>Hearing: September 9, 2025 at 10 am |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................................ 1

STATEMENT OF FACTS .................................................................................................................. 2

    A.    The May 21 Announcement And The Court's Order.................................................. 2

    B.    Defendants' Response To The Order .......................................................................... 4

    C.    Subsequent Procedural History ................................................................................... 5

ARGUMENT ........................................................................................................................................ 5

I.    PLAINTIFF'S REQUEST FOR A CONTEMPT SHOULD BE DENIED ........................... 6

    A.    Plaintiff Failed To Demonstrate That Even The Original May Announcement And Video Would Have Violated The Injunction ........................... 6

    B.    Defendants' Revised Announcement Complies With The Order............................... 8

    C.    At A Minimum, Plaintiff Fails To Show That Defendants Interpreted The Order In Bad Faith ..................................................................................................... 10

II.    PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED ............................ 10

    A.    Sanctions Are Unwarranted ...................................................................................... 10

    B.    Plaintiff Has Failed To Establish That It Is Entitled To Fees And Costs ................. 13

CONCLUSION ................................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Coleman v. Newsom*,
   131 F.4th 948 (9th Cir. 2025) ............................................................................................. 12, 13

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ..................................................................................................... 5, 9

*Falstaff Brewing Corp. v. Miller Brewing Co.*,
   702 F.2d 770 (9th Cir. 1983) ................................................................................................. 11, 12

*Gen. Signal Corp. v. Donallco, Inc.*,
   787 F.2d 1376 (9th Cir. 1986) ..................................................................................................... 13

*Grooms v. Legge*,
   2009 WL 962067 (S.D. Cal. Apr. 8, 2009) ................................................................................... 9

*Halo Elecs., Inc. v. XFMRS, Inc.*,
   2012 WL 1604858 (N.D. Cal. May 7, 2012) ................................................................................ 8

*Institute of Cetacean Research v. Sea Shepherd Conservation Society*,
   774 F.3d 935 (9th Cir. 2014) ..................................................................................................... 14

*Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*,
   564 F.3d 1115 (9th Cir. 2009) ..................................................................................................... 10

*Mne Trucking, Inc. v. OJ Com., LLC*,
   2025 WL 1810289 (C.D. Cal. June 27, 2025) .............................................................................. 11

*Reno Air Racing Ass'n., Inc. v. McCord*,
   452 F.3d 1126 (9th Cir. 2006) ..................................................................................................... 10

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
   2012 WL 2344081 (N.D. Cal. June 20, 2012) .............................................................................. 12

*Vans, Inc. v. Walmart, Inc.*,
   2022 WL 17371058 (C.D. Cal. Oct. 24, 2022) ......................................................................... 9, 10

*Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*,
   689 F.2d 885 (9th Cir. 1982) ..................................................................................................... 10

*Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*,
   2010 WL 11520530 (C.D. Cal. Jan. 14, 2010) ............................................................................ 13

*Whittaker Corp. v. Execuair Corp.*,
   953 F.2d 510 (9th Cir. 1992) ................................................................................................. 11, 12

*Yan v. Lei*,
　　2019 WL 7879950 (N.D. Cal. Nov. 12, 2019) ...........................................................................11

**Other Authorities**

Fed. R. Civ. P. 65(c) ..................................................................................................................4

**INTRODUCTION**

Following this Court's issuance of a temporary restraining order (the "Order"), Defendants took quick action to ensure beyond any doubt that they complied with the letter and spirit of the Order. Although nothing in the Order specifically directed Defendants to so, in an abundance of caution, they took down the video and website announcements of the pending merger between OpenAI and io Products, Inc., which they had posted on May 21, 2025.

On July 9, 2025, the merger between io Products, Inc. and OpenAI was finalized, and Defendants announced that merger, ensuring compliance with the Order. The July announcement does not market or sell any products. As such, it does not violate the Order, which enjoins use of "the IO mark in connection with the marketing or sale of related products." Dkt. 51 at 21. Nonetheless, Plaintiff, having made no effort to raise its purported concern with Defendants before filing, moved for an order to show cause re: contempt. Demonstrating the true motivation for its filing, for which it issued a press release, Plaintiff now seeks "coercive sanctions" of "at least $325,000 per day" with no justification for this amount. There is no cause to hold Defendants in contempt, much less order sanctions.

First, Plaintiff's motion rests not on the plain text of the Order, which Defendants did not violate, but on the language Plaintiff *proposed* that would have barred Defendants from using "io" in almost any context whatsoever. The Court did not adopt Plaintiff's language, however, and instead enjoined Defendants more narrowly from using the "mark in connection with the marketing or sale of related products." Dkt. 51 at 21. That language does not prohibit Defendants' merger announcements. Indeed, the Court's express finding that Plaintiff cannot allege actual infringement at this time depends on Defendants' May announcement and video **not** constituting actionable marketing of a product.

Second, the July announcement would not violate the Order even if the original announcements somehow did. Promptly after receiving the Order, Defendants took down the May announcements to avoid any argument that they were violating the Order while they assessed its scope. Defendants did this even though the announcements did not mention a "related product," much less market one or offer it for sale. Removing the announcement caused irreparable harm to

1  Defendants due to public speculation as to whether the merger would still occur and mistaken
2  assumptions that it would not.  As a result, after the merger was completed on July 9, Defendants
3  posted a written announcement to confirm the merger.  That announcement was carefully edited to
4  avoid any suggestion that io Products, Inc. was marketing or selling products and to ensure that
5  every mention of "io" unambiguously refers to the company name, as opposed to possibly being
6  construed as the name of any product.  Thus, the July announcement complies with the Order, or, at
7  the very least, substantially complies with the Order.

8        Third, even if the Court ultimately decides that Defendants' interpretation of the Order is
9  wrong, there is no credible argument that Defendants' interpretation is unreasonable.  Nor is there
10 any credible argument that Defendants have acted in bad faith, given that they took prompt action
11 to ensure compliance with the Order.  As a result, Plaintiff has not—and cannot—show that
12 Defendants lack a reasonable, good-faith interpretation of the Order, as is necessary to hold a party
13 in contempt.

14       Finally, Plaintiff's requests for coercive sanctions as well as its attorneys' fees are unjustified
15 and excessive, and they demonstrate Plaintiff's true motivation—to extract money from Defendants
16 by any means possible.  Coercive sanctions are inappropriate where, as here, Defendants have
17 demonstrated a willingness to comply with the Court's Order.  If Defendants have misunderstood
18 the scope of the Order, they will correct that by complying with the Court's explanation of its
19 meaning.  Attorneys' fees are not warranted where, as here, Plaintiff took no steps whatsoever to
20 mitigate the need to file a motion, such as meeting and conferring with Defendants about the issue—
21 or at least raising the anticipated motion during the parties' meet and confer communications about
22 the CMC statement, including the day before Plaintiff filed the motion—as Plaintiff was required
23 to do consistent with the Standing Order for All Judges re Contents of Joint Case Management
24 Statement.

25       The Court should not hold Defendants in contempt or award sanctions or fees.

26 **STATEMENT OF FACTS**

27 **A.     The May 21 Announcement And The Court's Order**

28       On May 21, 2025, Defendants announced that io Products, Inc. and OpenAI were merging

-2-

1  and pursuing a new joint venture.  Dkt. 6-16 (Rugolo Decl., Ex. J).  The announcement on OpenAI's
2  website contained an embedded video.  The nine-plus minute video described how Altman and Ive
3  began working together, and after the three-minute mark, for less than 10 seconds, Altman discussed
4  a prototype Ive gave him.  Dkt. 35-4, (Rugolo Reply Decl., Ex. M).  Neither the video nor the
5  website contained any product announcement—neither referred to the form factor, functionality,
6  release date, or name of any product.  *Id.*; Dkt. 6-16 (Rugolo Decl., Ex. J); *see also, e.g.*, Declaration
7  of Sara Pollock ("Pollock Decl."), ¶ 7, Ex. D (CNET article entitled "What to Expect (and Not
8  Expect) From OpenAI and Jony Ive's AI-Centric 'Screenless Phone'") ("[W]e remain for now in
9  the dark as what this first piece of OpenAI hardware will look like, how it will function, and how it
10  will fit into our lives.").  And neither the website announcement nor the video advertised or offered
11  any product for sale.  *Id.*; Dkt. 35-4, (Rugolo Reply Decl., Ex. M); Dkt. 6-16 (Rugolo Decl., Ex. J);
12  *see also, e.g.*, Declaration of Hannah Wong ("Wong Decl."), ¶¶ 2, 7; Dkt. 26 (Tan Decl.), ¶ 16.
13  Nonetheless, Plaintiff sued for alleged trademark infringement.

14  On June 9, 2025, Plaintiff moved for a temporary restraining order, seeking to enjoin
15  Defendants broadly "from using **by any means whatsoever**, directly or indirectly, Plaintiff's IYO
16  mark, and any mark confusingly similar thereto, including without limitation 'IO.'"  Dkt. 6 at 2
17  (emphasis added).  During the hearing on Plaintiff's motion, Defendants' counsel raised concerns
18  regarding the breadth of Plaintiff's requested injunction.  As counsel explained, "what the plaintiff
19  has asked for is that the defendants not be able to use 'io' in any way," which would encompass
20  innocuous uses.  Dkt. 50 (June 17, 2025, Hearing Tr.) at 36:5-7.  The Court addressed this concern,
21  stating: "Let's say the Court defined it and gave it a narrower scope, that the Court may agree that
22  that's broad.  So let's say the Court does narrow the scope."  *Id.* at 36:11-13.  And it did.  Dkt. 51 at
23  21:18-19.

24  Following the hearing, on June 20, 2025, the Court issued its Order Granting Motion for
25  TRO.  The Order restrains Defendants from "using the IYO mark, and any mark confusingly similar
26  thereto, including the IO mark *in connection with the marketing or sale of related products*."
27  Dkt. 51 at 21:18-19 (emphasis added).  The Order does not—as Plaintiff now suggests (Mot. 4)—
28  enjoin all Defendants' uses "of the name 'IO' in connection with their new company/products."  For

purposes of preserving the status quo, the Court credited Plaintiff's theory of imminent infringement based on *future* events (Dkt. 51 at 8:21-25), but it rejected Plaintiff's theory that anything Defendants were doing, including display of the impending-merger announcement, actually infringed the mark, expressly finding that "Plaintiff cannot allege actual infringement" (*id.* at 8:21). Further, although the record was clear that OpenAI and io Products, Inc. were planning to merge soon (Dkt. 6-16 (Rugolo Decl., Ex. J)), the Order did not prohibit Defendants from announcing the merger being finalized.

### B. Defendants' Response To The Order

Upon receiving the Order, Defendants quickly acted to ensure that they would not possibly be in violation of the injunction. Usually, defendants have some time to consider the scope of interim injunctions because the injunctions only become effective upon the posting of a bond. Fed. R. Civ. P. 65(c) ("The court may issue . . . a temporary restraining order only if the movant gives security in an amount that the court considers proper . . . ."). Here, however, no bond was ordered, and the Order became effective immediately. Dkt. 51 at 21. Accordingly, despite the fact that the Order restricts use of the marks only "in connection with the marketing or sale of related products," Defendants removed the announcement of the pending merger (*see* Dkt. 6-16) and the accompanying video (*see* Dkt. 35-4) from the OpenAI website the day the Order issued while they evaluated the order. Wong Decl., ¶ 4. Defendants did so out of an abundance of caution and to avoid any potential argument that they were in violation of the Order, even though neither the announcement nor the video mentioned any "related product," much less marketed one or offered it for sale. *Id.* ¶ 2.

The removal of the May 21 announcement and video occasioned press inquiries and industry speculation as to whether the merger between OpenAI and io Products, Inc. would still proceed. Wong Decl. ¶ 5. To address this speculation, and after further reviewing the Order, Defendants published a revised announcement on July 9, 2025—the same day that they consummated the merger. *Id.*, ¶¶ 6-7. That announcement begins:

*Update July 9, 2025*

We're thrilled to share that the io Products, Inc. team has officially merged with OpenAI. Jony Ive and LoveFrom remain independent and have assumed deep design and creative responsibilities across OpenAI.

Skale Decl., Ex. C. Although Defendants believe that continued display of the May announcement is permissible under the terms of the Court's Order because it did not market or sell any product, they revised its text in the July announcement to ensure that no reference to "io" could be misinterpreted as the name of a product. Wong Decl. ¶ 7. To further ensure that the July announcement could not be misinterpreted as promoting a product, Defendants even removed the reference to their "ambitions to develop, engineer and manufacture a new family of products" in the revised announcement. *Id.* Defendants also did not re-post the video that had accompanied the May announcement. *Id.*

### C.    Subsequent Procedural History

On July 10, 2025, the parties filed their joint case management statement. Dkt. 65. They met and conferred several times leading up to the filing, including through multiple phone calls the evening of July 10. Pollock Decl. ¶ 2. Although the Standing Order For All Judges Of The Northern District Of California: Contents Of Joint Case Management Statement, Motions, ¶ 4, requires each party to identify "any anticipated motions" as part of the case management statement, Plaintiff did not identify its motion for order to show cause re: contempt and sanctions in the joint statement or in any of its communications with Defendants. Pollock Decl. ¶¶ 2-3. The following morning, Plaintiff filed its motion, without any prior notice to Defendants that it believed Defendants were in violation of the Court's Order, or that it intended to move to find them in contempt and seek sanctions of $325,000 per day. *Id.*

### ARGUMENT

To justify a finding of contempt, Plaintiff must prove by clear and convincing evidence "(1) that [Defendants] violated the court order, (2) beyond substantial compliance, (3) not based on a good faith and reasonable interpretation of the order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Plaintiff has not met this heavy burden.

I.     **PLAINTIFF'S REQUEST FOR A CONTEMPT SHOULD BE DENIED**

    A.     **Plaintiff Failed To Demonstrate That Even The Original May Announcement And Video Would Have Violated The Injunction**

Plaintiff's erroneous contention that the Court enjoined Defendants' announcements runs headlong into the Order's plain text. As a result, Plaintiff cannot demonstrate with clear and convincing evidence that Defendants violated the Order.

The Court found that nothing Defendants were doing amounted to actual infringement. Dkt. 51 at 8:21. This finding alone resolves the issue: because the May announcement and video were not found infringing, they were not enjoined. In ruling that Plaintiff's claim was ripe, the Court focused on the likelihood of *future* infringement—not ongoing infringement—because "Defendants have not yet released a product with the disputed mark[.]" *Id.* at 8:20-21; *see also id.* at 8:22-23 ("[T]he product *will* compete with Plaintiff's product . . . the product *will be* called by the disputed mark . . . and the product *will be* released in at least a year[.]") (emphases added). The Court concluded that Plaintiff's suit could proceed, not because Defendants' existing video and written announcements reflected ongoing infringement, but because the Court found that Defendants' prototype signaled a *future* product that could bear the "disputed mark" and compete with Plaintiff's products. *Id.* at 8:21-25. The Court's subsequent application of the *Sleekcraft* factors implicated the announcements only insofar as they referenced the fact that Defendants might one day market the forthcoming product, not as if the existing video or announcement was infringing. *Id.* at 16:5-11. Thus, the Court enjoined only certain *future* acts, not any existing content. At no point did the Court adopt Plaintiff's claim that the video or written announcement infringed. The Court rejected that position. *Id.* at 8:21.

Moreover, the single sentence setting forth the terms of the injunction prohibits Defendants from using the name "io" "in connection with the marketing or sale of related products." *Id.* at 21:18-19. Defendants' May announcement and video did not constitute marketing, much less sale, of any product. *See, e.g.*, Wong Decl., ¶ 2; Dkt. 26 (Tan Decl.), ¶ 16. The July announcement is even further away from product marketing than the May announcement because it mentions "io" only when clearly referencing the name of the company as opposed to any possible argument it

referred to a product name. Wong Decl., ¶ 7. Accordingly, the July announcement lies comfortably outside of the scope of the injunction.

Plaintiff's argument (Mot. 3) betrays the lack of textual support for its position. Plaintiff contends that Defendants conceded the Court enjoined the original announcements because Defendants temporarily removed them from the OpenAI website. *Id.* But Defendants' caution is not a concession. *See* Wong Decl. ¶¶ 2, 4-8. Although Defendants removed the announcement and video "due" to the Order—*i.e.*, but for the Order, they would have remained posted—the removal was done so that Defendants could evaluate the scope of permissible use of the "io" name" without any fear of violating the Order. *Id.*, ¶ 4. To find an implied concession in these circumstances would create perverse incentives. Rather than being allowed to safely "overcorrect" in response to an injunction, defendants would be compelled to risk contempt to establish the absolute edge of what an injunction covers to avoid making any concessions about its scope. This would be judicially inefficient and chill prompt compliance.

Plaintiff points to four passages of the Order that it claims support its position, but none do. First, Plaintiff points (Mot. 4) to the Court's statement in the background section of its Order that Defendants "announced IO's decision to make a new category of computer devices." Dkt. 51 at 3:15-16. But announcing a decision to create a new category of products does not itself constitute marketing or selling of any product. Nor could it; as reflected in the press that followed the May announcement, it was evident that the nature of any future product remained a mystery. Pollock Decl., ¶¶ 5-7, Exs. B-D.

Second, Plaintiff points (Mot. 4) to the Court's rejection of Defendants' argument that "their announcement . . . is insufficient to establish an actual or imminent injury." Dkt. 51 at 7:16-18. But Plaintiff ignores the Court's reasoning—namely, that the announcement reveals imminent infringement due to a future product, not actual infringement due to the announcement itself. *See id.* at 8:20-21 ("[B]ecause Defendants have not yet released a product with the disputed mark, IYO cannot allege actual infringement.").

Third, Plaintiff points (Mot. 4) to the Court's finding that "marketing channel convergence weighs slightly in favor of infringement because of the overlap in customer bases and internet

marketing of products," even though "[t]he parties devote[d] very little briefing to this factor." Dkt. 51 at 16:5, 9-11. But this finding was plainly future-looking based on an anticipated product release given that there is no existing "customer base" for any product developed by io Products, Inc. because there are no such products. *Id.* at 8:20-21 ("Defendants have not yet released a product with the disputed mark[.]").

Fourth, Plaintiff points (Mot. 4-5) to the Court's summary of **Plaintiff's argument** that Plaintiff seeks to enjoin Defendants from using the disputed mark "in connection with their new company/products" and that Defendants "could alter their brand and company name to comply with the TRO." Dkt. 51 at 19:23-26. This is disingenuous. The Order clearly attributes the quoted language to Plaintiff, and the Court did not adopt that language in its final order, which barred the use of "io" only "in connection with the marketing or sale of related products." *Id.* at 21:18-19. While the Court recognized that ultimately Defendants may need to change the "io" name if their venture begins selling products (*id.* at 20), the Order did not compel a name change at this time.

### B. Defendants' Revised Announcement Complies With The Order

Even if the Order could be read to reach the May announcements, which Defendants dispute, the subject of Plaintiff's motion, the July merger announcement, cannot reasonably be construed as using the disputed mark "in connection with the marketing or sale of related products." Dkt. 51 at 21:18-19; *c.f. Halo Elecs., Inc. v. XFMRS, Inc.*, 2012 WL 1604858, at *3 (N.D. Cal. May 7, 2012) (concluding that "an order of contempt is not warranted" given the "plaintiff appeared to believe in good faith that its disclosure was [not a violation of the protective order]"). The July announcement confirms that the merger between two companies was completed, and it was tailored to avoid any possible interpretation that it was intended to market or sell products using the disputed mark. Wong Decl. ¶ 7. Publicly announcing a merger is a standard industry practice, and Defendants' July announcement references the name "io" for the limited purpose of identifying the company that merged with OpenAI.

The July announcement references "io" four times. Skale Decl., Ex. C. Defendants confirmed that all four unambiguously refer to the name of a company, not to a product. Wong Decl. ¶ 7. Two of those four times use the full corporate name, "io Products, Inc." Skale Decl.,

Ex. C. After the full corporate name was used, the announcement states that "Jony founded io with Scott Cannon, Evans Hankey and Tang Tan." *Id*. This plainly refers to the company because only companies, not products, are "founded." *See* Wong Decl. ¶ 7. Finally, the announcement quotes Jony Ive as stating: "The values and vision of Sam and the teams at OpenAI and io are a rare inspiration." Skale Decl., Ex. C. Again, this reference to "io" makes sense only as reference to the company, not a product, because products do not have "values and vision." Wong Decl. ¶ 7. As a result, the July announcement complies with the Court's Order.

Further, the July announcement does not refer to any products "related" to iyO's headphone products. Skale Decl., Ex. C. The July announcement's reference to "products that inspire, empower, and enable" (*id.*), does not market any product (*see* Wong Decl. ¶ 7), and it is hard to imagine a statement of less specificity about the particular function or form a product will take. *See, e.g.*, Pollock Decl., ¶¶ 5-7, Exs. B-D. The July announcement does not even mention a prototype. Skale Decl., Ex. C. As such, it is not a mere "cosmetic revision" (Mot. 6) of the May announcements, as Plaintiff argues. Rather, it reflects Defendants' good faith efforts to comply with the Order. Wong Decl. ¶¶ 4-8. Under these circumstances, Defendants, at a minimum, substantially complied with the Order. *See, e.g.*, *Vans, Inc. v. Walmart, Inc.*, 2022 WL 17371058, at *3 (C.D. Cal. Oct. 24, 2022) (denying motion to show cause for civil contempt where "every reasonable effort has been made to comply" and, while there were a "few technical violations," "Walmart [was] still in substantial compliance with the injunction"); *In re Dual-Deck*, 10 F.3d at 695 (vacating order of contempt where there were "three technical violations," but defendant "failed to prove by clear and convincing evidence that under a good faith, reasonable interpretation of the protective order, [party] did not substantially comply with the order.").

Plaintiff's *ipse dixit* assertions that the July announcement constitutes "marketing material" for an "'io' brand" (*see, e.g.*, Mot. 6) are insufficient to carry its burden. *See Grooms v. Legge*, 2009 WL 962067, at *14 (S.D. Cal. Apr. 8, 2009) ("Plaintiffs assert they believe defendants are withholding funds" but "[t]his bald accusation does not carry plaintiffs' burden of proving a violation by 'clear and convincing evidence.'"). Plaintiff's speculation that the "people who saw the original May 21 post, and then saw the July 9 announcement, would have no reason to look for

the [supposedly] minute revisions" (Mot. 6) is irrelevant. The only material question is whether the revised announcement violates the Order. It does not.

### C. At A Minimum, Plaintiff Fails To Show That Defendants Interpreted The Order In Bad Faith

Even if Defendants have misinterpreted the Order and had *substantially* violated it, their "good faith and reasonable interpretation" of the Order precludes a finding of contempt. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006); *see also Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) ("[I]f a defendant's action 'appears to be based on a good faith and reasonable interpretation of (the court's order),' he should not be held in contempt."); *Vans*, 2022 WL 17371058 at *3 (finding no contempt where "[t]he defendants' actions 'appear[ ] to be based on a good faith and reasonable interpretation' of the Court's order"). Plaintiff cannot possibly make that showing given the Order's textual support for Defendants' position. *See supra* Section I.A; *see also Labor/Cmty. Strategy Ctr. v. Los Angeles Cty. Metro. Transp. Auth.*, 564 F.3d 1115, 1123-24 (9th Cir. 2009) (contempt motion properly denied where the defendant's obligations under the order were open to interpretation and the defendant's efforts to comply with the order rebutted an "inference that [the defendant] was acting in bad faith"). Because Defendants obviously attempted to comply based on a reasonable and good-faith interpretation of the Order, they should not be held in contempt.

## II. PLAINTIFF'S REQUEST FOR SANCTIONS SHOULD BE DENIED

Even if the Court finds contempt—and it should not—the Court need not impose coercive sanctions, and certainly not the exorbitant monetary penalty that Plaintiff requests. Likewise, an award of attorneys' fees is not appropriate, particularly given that Plaintiff failed to take any—let alone reasonable—steps to mitigate the need for motion practice, such as meeting and conferring with Defendants, or at least identifying the anticipated motion in the CMC Statement, as it was required to do. Plaintiff's requests for coercive and compensatory sanctions should be denied.

### A. Sanctions Are Unwarranted

Plaintiff's demand that the Court impose $325,000 **per day** in coercive civil sanctions is unjustified. *See* Mot. 8. Not only has Plaintiff not shown a reasonable basis for such steep fines,

but *no* amount of sanctions are necessary given Defendants' demonstrated willingness to act promptly to comply with the Court's orders.  Wong Decl. ¶¶ 7-8.

When imposing coercive sanctions for civil contempt, Courts should apply the "least coercive sanction reasonably calculated to win compliance with the Court's order." *Mne Trucking, Inc. v. OJ Com., LLC*, 2025 WL 1810289, at *2 (C.D. Cal. June 27, 2025) (cited Mot. 7); *see also Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992) (similar).  Coercive sanctions are "wholly remedial, serve[] only the purposes of the complainant, and [are] not intended as a deterrent to offenses against the public." *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983).  In formulating coercive sanctions, a court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."  *Whittaker Corp.*, 953 F.2d at 516 (citation omitted).

Here, the "least coercive sanction" necessary is clarification of the Order and the identification of any language of the July announcement that the Court finds violates its Order.  The Court should award no further sanction because Defendants have made a good faith effort to comply with the Order and will similarly comply with any modification or clarification.  Wong Decl. ¶¶ 4, 7-8.  As discussed above, Defendants took down the announcement video and revised the written announcement, and while Defendants believe they have complied with the Order, they will make further changes if the Court finds them necessary.  *Id.*  Unlike in the authority cited by Plaintiff (Mot. 7), there has been no months-long, "well documented" campaign of noncompliance with multiple Court orders or injunctions that could justify further sanctions.  *Yan v. Lei*, 2019 WL 7879950, at *2–3 (N.D. Cal. Nov. 12, 2019), *report and recommendation adopted,* 2020 WL 613959 (N.D. Cal. Jan. 15, 2020) (granting sanctions for failure to produce the specific documents the court ordered by the specific deadline the court set).

Further, Plaintiff has not established why either the "character and magnitude of the harm threatened" or the "probable effectiveness of any suggested sanction" supports its request.  *Whittaker Corp.*, 953 F.2d at 517.  As to the first factor, Plaintiff offers no argument whatsoever regarding the harm that Plaintiff (or members of the public) faces, or any legitimate risk of continued

non-compliance, which is the appropriate focus of this inquiry. Mot. 7; *cf. Whittaker Corp.*, 953 F.2d at 516 (affirming as modified an award of civil sanctions because the Court "consider[ed] the tremendous danger to airline passenger safety which defendants' actions may have posed, as well as to [plaintiff's] goodwill"). Plaintiff's lone contention—that Defendants "thumb[ed] their noses at IYO and the Court" (Mot. 7)—is false. *See generally* Wong Decl. ¶¶ 4-8. And Plaintiff improperly asks the Court to punish Defendants, placing the request outside the scope of coercive civil sanctions. *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 2012 WL 2344081, at *6 (N.D. Cal. June 20, 2012) ("punitive purposes" are "not permitted for civil sanctions"); *see also Falstaff Brewing Corp.*, 702 F.2d at 779 (finding requested sanctions were not properly categorized as civil sanctions where "Miller's renewed motion sought the sanction of contempt against Falstaff as punishment for disobedience."). As to the second element, as discussed above, monetary sanctions would not effectively induce any further compliance with the Court's order because OpenAI will promptly remove any language that the Court believes is offensive. *See SunEarth, Inc.*, 2012 WL 2344081 at *6 (denying coercive civil sanctions that were "not required to coerce compliance"); Wong Decl. ¶ 8. Therefore, neither consideration favors imposing any sanction.

Plaintiff's reliance on *Coleman v. Newsom* to attempt to justify its exorbitant sanctions calculation (Mot. 7-8) further demonstrates the impropriety of imposing sanctions here, let alone sanctions of the magnitude Plaintiff seeks. *Coleman* addressed the State's systematic failure to improve the care of state prisoners' mental health over the course of three decades by not hiring adequate personnel—not a commercial dispute concerning a merger announcement. 131 F.4th 948, 952-53 (9th Cir. 2025). And even in *Coleman*, the district court did not reach the issue of coercive sanctions until after "years of unsuccessful remedial orders" and "years of patience by the judicial system" proved unsuccessful—and it still gave the state ***four months*** from issuance of its order to avoid accruing fines altogether. *Id.* at 952-53, 963. Moreover despite decades of the State's non-compliance, the Ninth Circuit affirmed only in part because it found the amount may constitute an "excessive penalty." *Id.* at 965. Plaintiff's reliance on a case concerning the longstanding and ongoing denial of health care services to a statewide class of California inmates underscores the extreme circumstances that can justify financial sanctions. No such circumstances are present in

this commercial dispute.  Moreover, the amount of sanctions in *Coleman* was tied to a straightforward theory to compel compliance—"eliminating the savings [the state] achieved" by not complying with the injunction, *i.e.*, by failing to hire a sufficient number of mental health personnel. *Id.* at 965.  It was not based on a theory of what the State could afford to pay, its overall budget, or how much it paid for prisons.  *See id.*  In contrast, Plaintiff's figure is not based on any purported amount of cost savings or unjust enrichment, but on Plaintiff's bald assertion that "there is no dispute that Defendants invested $6.5 ***billion*** in their IO venture[.]"  Mot. 8.  Contrary to Plaintiff's suggestion, OpenAI acquired io Products, Inc. in an all-stock transaction.  *See* Pollock Decl., Ex. E. Regardless, *Coleman* in no way supports the fact or the amount of Plaintiff's sanctions demand.

Although Defendants need no coercion to comply with the Order and any further clarifications the Court may make, should the Court decide to impose coercive sanctions, these sanctions must adhere to stringent Ninth Circuit requirements, which Plaintiff omits from its brief. First, any sanction "should be designed to give Defendants one last chance to comply with the injunctions—for instance, by ordering that Defendants cease the infringing and order-violating activity within seven days in order to avoid" potential sanctions.  *Westside Shepherd Rescue of Los Angeles, Inc. v. Pollock*, 2010 WL 11520530, at *2 (C.D. Cal. Jan. 14, 2010).  Especially where, as here, Defendants have expressed their willingness to comply with the full scope of the Court's Order (Wong Decl., ¶¶ 4, 7-8), the Court should give Defendants an opportunity to cure.  Second, any coercive civil sanction can only begin to accrue after the date of the Court's contempt order, as coercive civil sanctions must be "purgeable."  *Coleman*, 131 F.4th at 962 ("[T]he ability to purge is perhaps the most definitive characteristic of coercive civil contempt.") (citation omitted).  Third, any coercive sanctions must be payable to the Court, not to Plaintiff.  *See Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) ("If the fine, or any portion of the fine, is coercive, it should be payable to the court.").

### B. Plaintiff Has Failed To Establish That It Is Entitled To Fees And Costs

Plaintiff's request for attorneys' fees should be denied in its entirety as Plaintiff has failed to meet its burden of proving entitlement to such relief under the applicable legal standard.

Before filing this motion, Plaintiff easily could have raised the alleged violations with Defendants directly to discuss its position and hear Defendants' explanation, as the parties were working closely together regarding their joint case management statement filed less than 15 hours before this motion. Pollock Decl. ¶¶ 2-3. Indeed, the Standing Order For All Judges Of The Northern District Of California: Contents Of Joint Case Management Statement, required them to do so. Yet Plaintiff said nothing of its intent to file a contempt motion during multiple telephonic communications with Defendants' counsel and never requested a meet and confer, foreclosing the opportunity for the parties to address this matter without the need for Court intervention. *Id.* Instead of attempting to conserve judicial resources, Plaintiff rushed to this Court with a motion calculated to generate media attention and pressure Defendants, rather than to obtain any appropriate relief concerning references to "io" in a merger announcement. *See* Pollock Decl., ¶ 4 Ex. A (iyO July 15, 2025 press release touting its contempt motion).

Plaintiff's reliance on *Institute of Cetacean Research v. Sea Shepherd Conservation Society* is misplaced. Mot. 8 (citing 774 F.3d 935 (9th Cir. 2014)). The case involved a defendant who deliberately aided and abetted another actor to circumvent the Court's injunction, knowing full well that the other actor's conduct was highly likely to be prohibited by the injunction. *Id.* at 958. Under those circumstances, the court found an award of attorney's fees and costs to be proper. Here, in contrast, Defendants' conduct throughout this matter has been in good faith based on their reasonable interpretation of the Court's Order. *See supra* at I.C; Wong Decl. ¶¶ 4-8. There is no intentional circumvention of the Court Order, nor is there willful conduct to flout the injunction. *Id.* An award of attorney's fees and costs is unwarranted.

## CONCLUSION

The Court should decline to hold Defendants in contempt and deny Plaintiff's motion for fees and costs.

| | | |
|---|---|---|
| Dated: July 25, 2025 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | | By: */s/ Margret M. Caruso* |
| | | Margret M. Caruso |
| | | *Attorneys for Defendants io Products, Inc., OpenAI, Inc., OpenAI, LLC, and Sam Altman* |
| Dated: July 25, 2025 | | JONES DAY |
| | | By: */s/ David Kiernan* |
| | | David Kiernan |
| | | *Attorneys for Defendant Sir Jonathan Paul Ive* |