MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
ADSkale@mintz.com
Laura Franco (186765)
LFranco@mintz.com
Anthony J. Viola (*pro hac vice*)
AJViola@mintz.com
Kara M. Cormier (*pro hac vice*)
KMCormier@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415.432.6000

LWD ADVISORS, INC.
Jeff Hyman (171896)
jeff@lwdadvisors.com
700 El Camino Real Suite 120 #1310
Menlo Park CA 94025
Telephone: 650.219.4229

Attorneys for Plaintiff
IYO, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC., <br><br> Plaintiff, <br><br> v. <br><br> IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, <br><br> Defendants. | Case No. 3:25-cv-4861 <br><br> **PLAINTIFF IYO, INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR CONTEMPT AND SANCTIONS** <br><br> Date:    September 9, 2025 <br> Time:   2:00 p.m. <br> Place:   Courtroom 9 <br> Judge:  Hon. Trina L. Thompson <br><br> Complaint Filed:  June 9, 2025 |

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **I.** | **INTRODUCTION**..................................................................................................... 1 | |
| **II.** | **ARGUMENT**............................................................................................................. 2 | |
| | **A.** | **The TRO Clearly and Unambiguously Applied to Defendants' May 21 Announcement and Video** ............................................................................ 2 |
| | **B.** | **Defendants Did Not Substantially Comply with the TRO because the July 9 Post Violates Both the TRO's Terms and Spirit** ..................................... 5 |
| | **C.** | **Defendants Did Not act Reasonably or in Good Faith Because They Failed to Seek Clarification as to Any Purported Ambiguity** ........................... 5 |
| | **D.** | **Sanctions are Warranted**............................................................................ 7 |
| | **E.** | **Fees are Warranted**.................................................................................... 8 |
| **III.** | **CONCLUSION**.......................................................................................................... 8 |

## I. INTRODUCTION

Defendants deliberately evade this Court's TRO, not from a misunderstanding but through calculated defiance. The Court already determined that Defendants' May 21 product launch, name reveal, and promotional video would likely infringe IYO's mark, confuse consumers, and irreparably damage IYO's business. The resulting TRO explicitly prohibits using the "IO" mark—or any similar mark that could cause confusion with IYO—in marketing or selling related products.

At first, Defendants complied by removing the May 21 announcement and video, clearing their feeds, and acknowledging they took down content "due to" the TRO. But weeks later, without seeking the Court's guidance or contacting IYO, Defendants brazenly reposted substantially the same content with the same name and "May 21, 2025" date. The minor tweaks that Defendants made to that post show that this was no good-faith misunderstanding of the TRO. It was a deliberate attempt to reintroduce a banned brand under the guise of "announcing a merger."  Of course, Defendants did much more than announce the merger – they did that in the first two sentences. The only reason to re-post the May 21 announcement was to market the "new tools" they were working on under the IO brand. This was in direct violation of the TRO.

Defendants now ask this Court to accept three implausible claims: (1) their reposted materials do not constitute "marketing"; (2) the TRO does not cover the exact content it addressed; and (3) their July 9 post teasing new "IO" products amounts to nothing more than an innocent update. That is, Defendants attempt to re-write both the TRO and history. These are sophisticated actors, represented by experienced counsel, who understand perfectly well what the Court prohibited. They chose to test the limits instead of seeking clarification, and in doing so reignited the confusion and competitive harm that the TRO was designed to stop.

At its core, this case aims to stop Defendants from exploiting a brand name that mimics IYO's to market competing AI-enabled hardware. The TRO directly prohibits this conduct. By intentionally violating the order, Defendants' actions - and their hollow excuses - demand contempt sanctions to preserve this Court's authority.

## II.  ARGUMENT

### A.  The TRO Clearly and Unambiguously Applied to Defendants' May 21 Announcement and Video

Defendants advance a circular argument: they claim the Court implicitly found their May 21 announcement and video non-infringing—despite removing both "due to" the TRO—and therefore neither the original nor reposted content could violate the order. This tortured logic misreads both the TRO and its underlying facts.

The Court explicitly found the May 21 announcement and video infringing. The Court's decision identified these materials as marketing that would likely cause confusion, determined IYO would likely succeed on the merits, found the *Sleekcraft* factors supported infringement, and concluded the equities justified enjoining Defendants' conduct. ECF 51 at 6-8, 9-10, 15-16, 18, 20. IYO's motion targeted only these two public statements, which the TRO clearly prohibited. Both statements marketed Defendants' upcoming products using "IO" as their brand identifier. The Pollock declaration's attached articles (ECF 79-2, 79-4, 79-5, 79-6) confirm that the public viewed the May 21 announcement as marketing - a fact that remains true for the reposted version.

Defendants misrepresent the TRO by cherry-picking a single phrase about ripeness while ignoring both the rest of that sentence and the Court's comprehensive infringement analysis. The Court's TRO opinion consistently treated the May 21 announcement and video as marketing materials that supported IYO's trademark infringement claim. While, in its ripeness discussion, the Court noted "IYO cannot allege actual infringement," it also stated (in that same sentence) this was "because Defendants have not yet released a product with the disputed mark." ECF 51 at 8. Thus, the Court was clearly referring only to infringement through product sales, not advertising or promotion. Moreover, Defendants disregard the Court's explicit rejection of their argument that the May 21 announcement and video were "insufficient to establish an actual or imminent injury." *Id.*, at 7-8. As the Court emphasized, citing *JGX*, "The law does not require the [c]ourt to wait until [d]efendants physically re-open their doors." *Id*.

After discussing ripeness, the Court turned to infringement. The Court's infringement analysis directly contradicts Defendants' position. The Court found Defendants "used the disputed

mark in connection with the sale of good or services" and *rejected* their argument about lacking an "actual good or service." *Id*. at 9. Since Defendants hadn't yet sold products, this finding unquestionably referred to their advertising through the announcement and video.

The law is clear: "[m]erely advertising using an infringing mark is itself a separate act of infringement" under the plain language of the Lanham Act.[1] 3 McCarthy on Trademarks and Unfair Competition § 25:26 (5th ed.); *BMW of North America, LLC v. Barreira*, 633 Fed. Appx. 882, 884 (9th Cir. 2015) (even where no sales are made, "an offer to sell goods with an infringing trademark establishes liability under the Lanham Act"); *Levi Strauss & Co. v. Shilon,* 121 F.3d 1309, 1312 (9th Cir.1997) ("The [Lanham Act] does not require that the defendant ... make an actual sale. An offer to sell without more will suffice to establish liability."); *Meridian Transp. Resources, LLC v. Magic Carrier Resources LLC*, 518 F. Supp. 2d 1255, 1261 (D. Or. 2007) ("use of a trademark in advertising alone can establish a cause of action for trademark infringement").

Likewise, the use of an infringing mark in a competing company name – even if not used on the products themselves – also constitutes infringement. *See* 1 McCarthy on Trademarks and Unfair Competition § 9:3 (5th ed.) ("defendant's use of plaintiff's trademark as part of defendant's corporate name can be a type of trademark infringement"). Thus, for example, in *National Customer Eng'g Inc. v. Lockheed Martin Corp.*, where the plaintiff owned MOUNTAIN for use in connection with computer data storage devices and the defendant, MountainGate Data Systems, sold computer data storage products, the Central District of California found the plaintiff was likely to succeed on a claim for trademark infringement. 1997 WL 363970 at *1 (C.D. Cal. 1997). In so holding, the court noted that "[t]he unauthorized use of a registered trademark as part of a corporate title and name may be deemed trademark infringement." *Id.* at *5 (issuing preliminary injunction

---

[1] The Lanham Act provides that:

> (1) Any person who shall, without the consent of the registrant--
>
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, **or** advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S. Code § 1114(1)(a) (emphasis added).

solely related to competing company's name choice). Similarly, in *Merscorp Holdings, Inc. v. Mers, Inc.*, the Northern District of California found that plaintiff was likely to succeed on the merits of its claim for trademark infringement and false designation of origin where a company used its trademark in the name of its corporate registration for a competing business, even though the company had not yet started to operate in commerce. 2016 WL 5109969, at *3 (N.D. Cal. Sept. 21, 2016).

The Court here properly acknowledged that if it entered injunctive relief, "Defendants may ultimately need to alter their brand **and company name**." ECF 51 at 19 (emphasis added). Contrary to Defendants' assertion (at 8), this was not simply the Court describing Plaintiff's argument; this was the Court's affirmative statement acknowledging the validity of Plaintiff's argument. *Id.*

None of this is news to Defendants. They did not stand idly by when another company called itself Open AI in an attempt to bully OpenAI out of its brand. *See, e.g. OpenAI, Inc. v. Open A.I., Inc.*, 719 F. Supp. 3d 1033, 1050 (N.D. Cal. 2024), *aff'd*, 2024 WL 4763687 (9th Cir. Nov. 13, 2024). They sued for infringement and sought preliminary relief, just as IYO has done.

In short, Defendants' assertion that the May 21 announcement and associated video are not infringing rings hollow. Their own conduct shows they knew and understood that the Court's TRO was directed at the May 21 announcement and video. The fact that they did not repost the video is telling. It also begs the question: WHY did Defendants repost the content of the May 21 announcement if all they wanted to do was announce the completion of the merger? If that was really their only intention, their July 9 post should have ended after the following (ECF 67-4)[2]:

> Update July 9, 2025
>
> We're thrilled to share that the io Products, Inc. team has officially merged with OpenAI. Jony Ive and LoveFrom remain independent and have assumed deep design and creative responsibilities across OpenAI.

And if – as they claim – the content of the May 21 announcement was not infringing, WHY did they edit the post at all? As discussed below, the answer is clear: Defendants wanted to continue

---

[2] Note however, even this solitary post still suffers from the "Who Shot J.R.?" problem by using IO in the company name to hype up its product launch.

their ongoing marketing campaign for their competing endeavor, but knew they were prohibited from doing so by the TRO.

### B. Defendants Did Not Substantially Comply with the TRO because the July 9 Post Violates Both the TRO's Terms and Spirit

As has been shown, Defendants did not stop their July 9 post after stating that the merger had closed. Instead, they went on to re-post the entire May 21 announcement, even using the misleading heading "May 21, 2025," albeit with a few minor edits. *Id.* As before, the re-post begins by decrying "traditional products and interfaces," and states that Defendants have generated "tangible designs" for "new tools" to replace them. *Id.* It describes the "new team" (also referred to as "the io Products, Inc. team") as "focused on developing products that inspire, empower, and enable." *Id.* Defendant Ive is also quoted as saying: "The values and vision of Sam and the teams at OpenAI and **io** are a rare inspiration" (emphasis added).

Contrary to Defendants' contention, this is not the mere use of a company name in a merger announcement. The merger announcement was the first two sentences. Defendants continued to use the IO brand to market their upcoming, competing products. That violates both the explicit terms and the spirit of the TRO, which enjoined Defendants from using "the IYO mark, and any mark confusingly similar thereto, including the IO mark, in connection with the marketing or sale of related products." ECF 51 at 21.

In short, the re-post states yet again that Defendants merged and will be developing a new line of products, and in doing so causes Plaintiff to suffer the same injuries all over again. This is not substantial compliance. This is an endeavor that was crafted by a skilled adversary in an effort to evade the TRO and the Court's authority. It should be acknowledged as such and punished as contempt.

### C. Defendants Did Not Act Reasonably or in Good Faith Because They Failed to Seek Clarification as to Any Purported Ambiguity

Defendants' claim of "good faith" compliance with the TRO fails. Their actions reveal their true intent: while they quickly removed the original posts, they just as quickly reposted the May 21 announcement after expressing contempt for the TRO (ECF 67-3). Their continued refusal to

remove the offending post - even after this motion - further undermines their "good faith" defense.

If Defendants truly found the TRO unclear, they had a duty to seek clarification from the Court. *McComb v. Jacksonville Paper Co.*, 69 S. Ct. 497, 500 (U.S. 1949). Instead, they unilaterally interpreted the order and "ma[d]e their own determination of what the decree meant," acting "at their peril." *Id.* This failure to seek guidance about whether their actions aligned with the TRO destroys their claim of good faith compliance. *Orantes-Hernandez v. Gonzales*, 504 F. Supp. 2d 825, 850 (C.D. Cal. 2007) (failure to seek clarification as to whether conduct is "consistent with the intent of [the] order" or "violated the spirit of the injunction" undermines "the [] assertion that it was complied with . . . in good faith"); *BBU, Inc. v. Sara Lee Corporation*, 2009 WL 10672191, at *2 (S.D. Cal. 2009) ("Defendants (a) rely on the fact that the preliminary injunction order contained an ambiguity (by omission of specific language regarding the handling of offending product packaging), and (b) claim that they acted in 'good faith,'" but "[t]he troubling aspect of Defendants' behavior" "is the failure to seek clarification from the Court before proceeding").[3]

But even assuming *arguendo* that Defendants operated in good faith (they did not), "[a]n act does not cease to be a violation of a law and of a decree merely because it may have been done innocently." *Codexis, Inc. v. EnzymeWorks, Inc.*, No. 3:16-CV-00826-WHO, 2018 WL 1536655, at *7 (N.D. Cal. Mar. 29, 2018) (quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949)). As such, Defendants should be found in contempt for their ongoing, intentional violation of the TRO.

---

[3] *See also Polo Fashions, Inc. v. Stock Buyers Intern., Inc.*, 760 F.2d 698, 700 (6th Cir. 1985) ("The defendants acted at their own risk by failing to seek the court's interpretation of the injunction if they had any good faith doubt as to its meaning or by failing to have it set aside or amended if they thought it was defective. Once the injunction was entered the defendants were bound to obey it."); *Alter Domus, LLC v. Winget*, 766 F. Supp. 3d 754, 762 (E.D. Mich. 2025) (same, also noting "It has been said that 'a defendant that 'hew[s] to the narrow letter of the injunction while simultaneously ignoring its spirit' charts such a course at its peril.'"); *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 886 (Fed. Cir. 2011) ("in certain circumstances vagueness can operate as a defense to contempt," but "where a party has bypassed opportunities to present its asserted vagueness claim on appeal or through a motion to clarify or modify the injunction, the party cannot disregard the injunction and then object to being held in contempt when the courts conclude that the injunction covered the party's conduct").

### D. Sanctions are Warranted

Defendants' promise of future compliance rings hollow given their willful violation mere weeks after initially following the TRO. Their conduct demands coercive sanctions to ensure compliance with the Court's authority. *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016). Defendants' argument (at 13) that the Ninth Circuit has "stringent" requirements for coercive sanctions, which somehow have not been met here, is incorrect. The purpose of a coercive sanction is to compel compliance. *Id.* In that regard, coercive sanctions are considered "purgeable," meaning that the "civil contemnor" "carr[ies] the keys of his prison in his own pocket." *Id.* All that Defendants must do to avoid an ongoing sanction is comply with the TRO. *Cf. id.* As Defendants themselves acknowledge (at 13), any coercive sanctions will be payable to the Court, not to Plaintiff. Thus, their attempt to portray Plaintiff as seeking a windfall is simply more knowing falsity. This motion does not seek financial gain for Plaintiff; it seeks to enforce the relief this Court has already ordered in the TRO.

Defendants' proposed "clarification" of the TRO as a sanction fails for multiple reasons. Defendants' suggestion improperly shifts their compliance burden to the Court, asking it to edit their marketing content. Moreover, Defendants offer no concrete proposal for TRO-compliant language. Their repost of the May 21 announcement appears deliberately designed to challenge the Court's authority rather than achieve compliance. Coercive sanctions must break this cycle of defiance where Defendants violate the order, demand warnings, and seek do-overs when caught.

The Court must set sanctions high enough to compel compliance from these astronomically wealthy Defendants. Anything short of substantial sanctions would amount to merely imposing a manageable daily tax that Defendants can choose to pay while continuing their violations. The sanction amount must make compliance the only rational choice. For example, in *Shell Offshore*, the Ninth Circuit described a coercive sanction that increased incrementally to $10,000 ***per hour*** that Greenpeace remained in violation of a court order. 815 F.3d at 630. That sanction amounted to $240,000 per day and was specifically designed to ensure that Greenpeace would choose to comply rather than continue to violate the Court's orders. *Id.* The Court should do the same calculation here.

### E.     Fees are Warranted

Defendants wrongly claim fees are unwarranted because IYO did not first request that Defendants comply with the TRO. They cite no authority for this position because none exists; no meet-and-confer requirement applies to contempt motions or fee awards. Such a requirement would create an exploitable loophole, allowing Defendants to repeatedly violate the TRO, gain publicity, and then belatedly comply after IYO's notification, all without facing consequences.

Moreover, Defendants never notified IYO or sought Court permission before reposting the announcement. Thus, they cannot now complain about IYO's request that this Court take appropriate action to uphold the Court' authority.

Defendants' complaint about IYO not disclosing this motion in the CMC also lacks merit. They – and only they – made the choice of how and when they would violate the TRO. IYO only discovered their contempt on the evening of July 9 and was still evaluating options when the CMC came due the next day, on July 10.

Defendants also argue (at 14) that fees are unwarranted because they purportedly operated in good faith and did not deliberately violate the TRO. But even if those facts were true (they are not), that is not the law. "[A]ttorney's fees and costs incurred in responding to the opposing side's violation of a court order," are warranted "even in the absence of willful disobedience to compensate the innocent party." *Shakey's Pizza Asia Ventures, Inc. v. PCJV USA, LLC*, No. 2:24-cv-04546-SB-AGR, 2025 U.S. Dist. LEXIS 96639, at *18 (C.D. Cal. Apr. 15, 2025) (citing *Perry v. O'Donnell*, 759 F.2d 702, 705 (9th Cir. 1985)). This is because "[a]n inflexible rule requiring the denial of fees when civil contempt is not 'willful' would prevent the party proving the contempt from being fully compensated in many cases." *Perry*, 759 F.2d at 705.

Thus, IYO respectfully requests leave to brief its fees and costs after the motion hearing.

### III.   CONCLUSION

IYO respectfully asks this Court to: (1) hold Defendants IO Products, Inc., OpenAI, Inc., OpenAI, LLC, Sam Altman, and Jony Ive in contempt for willfully violating the Temporary Restraining Order (ECF 51); (2) order Defendants to remove all TRO-violating materials, including those posted on July 9; and (3) impose monetary sanctions that will both deter future violations and

compensate IYO for its attorneys' fees and costs for this motion. Given the mounting irreparable harm IYO is suffering on a daily basis, IYO urges the Court to act swiftly, with or without a hearing, and requests leave to brief its fees and costs afterward.

Dated: July 30, 2025

Respectfully submitted,

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

LWD ADVISORS, INC.
Jeff Hyman (171896)

Attorneys for Plaintiff IYO, Inc.