MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
ADSkale@mintz.com
Laura Franco (186765)
LFranco@mintz.com
Anthony J. Viola (*pro hac vice*)
AJViola@mintz.com
Kara M. Cormier (*pro hac vice*)
KMCormier@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel.: (415) 432-6000

*Attorneys for Plaintiff IYO, INC.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC.<br><br>Plaintiff,<br><br>v.<br><br>IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE,<br><br>Defendants. | Case No. 3:25-cv-4861-TLT<br><br>**PLAINTIFF IYO, INC.'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Complaint Filed: June 9, 2025<br>Hearing Date: April 14, 2026 |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

     **PLEASE TAKE NOTICE** that on April 14, at 2:00 p.m., or as soon thereafter as this motion may be heard, in the courtroom of the Honorable Judge Trina L. Thompson, Courtroom 9, 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff IYO, Inc. ("IYO") will and hereby does move the Court for a preliminary injunction enjoining Defendants, their employees, agents, representatives, subsidiaries, affiliates, related entities, and all persons and entities in active concert or participation with any of them from using in commerce by any means whatsoever, directly or indirectly, Plaintiff's IYO mark, and any mark confusingly similar thereto, including without limitation "IO."

     Preliminary injunctive relief is warranted because Plaintiff is likely to succeed on the merits of its trademark infringement claim; is entitled to a presumption of irreparable harm that Defendants cannot rebut; faces ongoing and substantial injury absent injunctive relief; the balance of equities strongly favors Plaintiff; and the requested injunction serves the public interest by preventing consumer confusion.

     This motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Andrew D. Skale dated February 20, 2026, the exhibits thereto, the accompanying Declaration of Mark Keegan dated February 19, 2026, the exhibits thereto, and all papers on file in this action, and any other matters that may be presented to this Court at the hearing or otherwise.

Dated:  February 20, 2026

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

*Attorneys for Plaintiff IYO, Inc.*

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S NOTICE OF MOTION FOR
PRELIMINARY INJUNCTION

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3      I.      INTRODUCTION ................................................................................................ 1

4      II.     FACTS .............................................................................................................. 2

5             A.    Procedural Background: The TRO and the Ninth Circuit's Affirmance ................ 2

             B.    IYO's Survey Supports the Finding of Confusion .................................................. 3

6             C.    Defendants Stonewall Discovery ............................................................................. 4

7             D.    Defendants' Claimed Voluntary Cessation ............................................................. 5

             E.    Ongoing Irreparable Harm ....................................................................................... 6

8      III.    LEGAL STANDARDS ....................................................................................... 6

9             A.    Preliminary Injunction ............................................................................................. 6

10            B.    Likelihood of Confusion .......................................................................................... 7

             C.    Claims of Voluntary Cessation ............................................................................... 7

11     IV.     ARGUMENT ....................................................................................................... 9

12            A.    Plaintiff is Likely to Succeed on the Merits of Its Trademark Claim .................... 9

13                  1.    Plaintiff Has a Protectable Trademark. ..................................................... 10

                   2.    Defendants Used Plaintiff's Mark in Connection with Goods or
14                         Services ..................................................................................................... 10

15                  3.    Defendants' Claimed Voluntary Cessation is Immaterial.......................... 11

                   4.    There is a Likelihood of Confusion ........................................................... 11

16                         a.    Defendants' Commercial Strength Will Overwhelm Plaintiff........... 12

17                         b.    The Parties' Goods are Related............................................................ 12

18                         c.    The Marks are Nearly Identical. .......................................................... 13

19                         d.    There is Already Evidence of Actual Confusion. ................................ 13

                          e.    The Parties' Marketing Channels Overlap........................................... 14

20                         f.    The Consumer Care Factor Makes Confusion Likely. ........................ 15

21                         g.    Defendants Intended to Infringe........................................................... 15

22                         h.    Likelihood of Expansion is Neutral. .................................................... 15

             B.    Irreparable Harm Will Continue Without Injunctive Relief .................................. 16

23                  1.    Irreparable Harm is Presumed.................................................................... 16

24                  2.    Plaintiff Will Suffer Irreparable Harm Absent a Preliminary
                         Injunction................................................................................................... 16

25            C.    The Balance of Equities Tips in Plaintiff's Favor.................................................. 17

26            D.    An Injunction is in the Public Interest .................................................................... 18

             E.    No Bond Should Be Required.................................................................................. 18

27     V.      CONCLUSION ................................................................................................... 18

28

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adarand Constructors, Inc. v. Slater*,
5     528 U.S. 216 (2000) .......................................................................................... 8

6 *AK Futures Ltd. Liab. Co. v. Boyd St. Distro, Ltd. Liab. Co.*,
    35 F.4th 682 (9th Cir. 2022) ............................................................................ 16
7

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
8     2019 WL 1586776 (C.D. Cal. Apr. 12, 2019) ................................................ 8, 9

9 *All. For The Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011).............................................................................. 6
10

*Already, LLC v. Nike, Inc.*,
11     568 U.S. 85 (2013) .............................................................................................. 9

12
*Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*,
13     534 F. App'x 633 (9th Cir. 2013) ..................................................................... 17

14 *AMF, Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979)......................................................... 1, 4, 7, 12, 15
15

*Asus Comput. Int'l v. Round Rock Research, LLC*,
16     2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ................................................... 5

17
*Aurora World v. Ty, Inc.*,
18     719 F. Supp. 2d 1115 (C.D. Cal. 2009)............................................................... 7

19 *Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005)............................................................................. 11
20

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
21     174 F.3d 1036 (9th Cir. 1999)........................................................................... 13

22
*Card Tech Int'l LLLP v. Provenzano*,
23     2011 WL 13220408 (C.D. Cal. Nov. 7, 2011) ............................................ 8, 9, 11

24 *Cherokee Inc. v. Wilson Sporting Goods Co.*,
    2015 WL 3930041 (C.D. Cal. June 25, 2015) .................................................... 9
25

*Cisco Sys., Inc. v. Shenzhen Usource Tech. Co.*,
26     2020 WL 5199434 (N.D. Cal. Aug. 17, 2020)............................................... 6, 16

27
*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*,
28     11 F. Supp. 2d 1179 (C.D. Cal. 1998)......................................................... 8, 11

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- ii -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   321 F.3d 878 (9th Cir. 2003) .................................................................................... 18

*Cyclone USA v. LL&C Dealer Servs. LLC*,
   2004 WL 7325117 (C.D. Cal. Apr. 14, 2004) ..................................................... 9, 11

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
   967 F.2d 1280 (9th Cir. 1992) ...................................................................................... 7

*E. Bay Sanctuary Covenant v. Trump*,
   354 F. Supp. 3d 1094 (N.D. Cal. 2018) ....................................................................... 9

*Eclipse Assoc., Ltd. v. Data General Corp.*,
   894 F.2d 1114 (9th Cir. 1990) ...................................................................................... 7

*Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*,
   741 F. Supp. 2d 1165 (C.D. Cal. 2010) ..................................................................... 13

*Flynt Distrib. Co. v. Harvey*,
   734 F.2d 1389 (9th Cir. 1984) ...................................................................................... 7

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*,
   618 F.3d 1025 (9th Cir. 2010) .................................................................................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
   528 U.S. 167 (2000) ........................................................................................... 7, 8, 11

*Ironhawk Techs., Inc. v. Dropbox, Inc.*,
   2 F.4th 1150 (9th Cir. 2021) ................................................................ 7, 10, 12, 15, 17

*Iyo, Inc. v. Io Prods., Inc.*,
   2025 LX 561502 (9th Cir. Dec. 3, 2025) ............................................................ *passim*

*Iyo, Inc. v. IO Prods.*,
   2025 LX 530671 (N.D. Cal. June 20, 2025) ....................................................... *passim*

*Jacobsen v. Katzer*,
   2007 WL 2358628 (N.D. Cal. Aug. 17, 2007) ............................................................ 8

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .................................................................................... 18

*LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*,
   124 F.4th 1122 (9th Cir. 2024) ................................................................................... 10

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
   434 F.3d 1150 (9th Cir. 2006) ...................................................................................... 8

*Playboy Enters., Inc. v. Netscape Commc'ns Corp.*,
   354 F.3d 1020 (9th Cir. 2004) ............................................................................. 15, 16

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
   793 F.2d 1132 (9th Cir. 1986) ........................................................................ 11

*Pom Wonderful Ltd. Liab. Co. v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) ................................................................... 7, 14

*Porsche Cars N. Am., Inc. v. Spencer*,
   2000 WL 641209 (E.D. Cal. May 18, 2000) ..................................................... 8

*QS Wholesale, Inc. v. World Mktg., Inc.*,
   2014 WL 12586120 (C.D. Cal. Jan. 7, 2014) ................................................. 17

*Rearden LLC. v. Rearden Commerce, Inc.*,
   683 F.3d 1190 (9th Cir. 2012) ....................................................................... 13

*Restoration Hardware, Inc. v. Alimia Light*,
   2023 WL 3639360 (N.D. Cal. May 24, 2023) ................................................ 17

*San Diego Detox, LLC v. Detox Ctr. of San Diego LLC*,
   2024 WL 3367214 (S.D. Cal. July 9, 2024) ................................................... 14

*Sports Mktg. Monterrey Grp. LLC v. Socios Servs. United States Inc.*,
   2023 WL 2671379 (N.D. Cal. Mar. 27, 2023) ................................................ 14

*Toys "R" Us, Inc. v. Akkaoui*,
   1996 WL 772709 (N.D. Cal. Oct. 29, 1996) .................................................... 9

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ........................................................................................ 8

*VIP Products, LLC v. Jack Daniel's Properties, Inc.*,
   291 F. Supp. 3d 891 (D. Ariz. 2018) .............................................................. 14

*Virtue Glob. Holdings Ltd. v. Rearden LLC*,
   2016 WL 9045855 (N.D. Cal. June 17, 2016) ............................................... 6, 7

*Williams v. Wells Fargo Bank, N.A.*,
   2017 U.S. Dist. LEXIS 123889 (N.D. Cal. July 25, 2017) ............................... 4

*Winter v. Natural Res. Defense Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 2, 6, 16, 17

**Statutes**

15 U.S.C. § 1116(a) .............................................................................................. 6, 16

**Other Authorities**

JACOB JACOBY, AM. BAR ASS'N, TRADEMARK SURVEYS, VOLUME 1: DESIGNING,
   IMPLEMENTING, AND EVALUATING SURVEYS (2013) ............................................ 3

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

M<span>c</span>CARTHY ON TRADEMARKS AND UNFAIR COMPETITION (5th ed. 2020) ................................ 3, 10

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

Plaintiff IYO, Inc. ("IYO" or "Plaintiff") respectfully submits this Memorandum in support of its Motion for Preliminary Injunction pursuant to Fed. Rule of Civil Pro. 65, Local Rule 65-1, and the Court's inherent equitable powers.

## I.    INTRODUCTION

On June 20, 2025 this Court found that Plaintiff had demonstrated entitlement to a temporary restraining order ("TRO") on its trademark infringement claim. In so doing, this Court applied the well-known preliminary injunction ("PI") standard and *Sleekcraft* factors. Since then, the record has only grown markedly stronger in favor of entry of a PI.

For example, Defendants took an interlocutory appeal of the TRO. While TROs are not normally appealable, the Ninth Circuit accepted the appeal based on Defendants' claim that the TRO should be treated ***as*** a preliminary injunction, and rejected all of Defendants' arguments as to why that preliminary injunction had supposedly been improperly granted. The Ninth Circuit squarely rejected Defendants' main defense (ripeness), and each and every one of their attacks on the propriety of awarding Plaintiff a TRO (that was again, treated as a PI). Indeed, the Ninth Circuit's decision went further and materially strengthened Plaintiff's position on a number of the *Sleekcraft* factors.

Additionally, since the TRO, Plaintiff has commissioned an independent survey which demonstrates significant actual consumer confusion, further buttressing that aspect of Plaintiff's argument.

In contrast, Defendants have stone-walled any and all discovery, refusing to produce a single sheet of paper or a single email, necessitating motion practice to compel compliance (which has not yet been decided). Needless to say, however, Defendants' recalcitrance means that they are precluded from presenting on this motion any new or different factual information from that which they previously presented.  Accordingly, the only changes in the record since this Court's grant of the TRO – which was affirmed under the PI standard – only strengthen the case for entry of a PI.

Apparently recognizing the futility of contesting this PI motion on the merits, Defendants have shifted course and now claim to have decided not to use "IO" as part of their product's name. First, this is nothing new; it merely reflects the reality that the TRO already prevents Defendants

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law
San Diego

1

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

from doing that (a restraint which will continue once this PI is entered). Second, under well-established law, Defendants' statement of "voluntary cessation" of challenged conduct already subject to the TRO does nothing to weaken Plaintiff's case for a PI.

## II.    FACTS

Plaintiff incorporates by reference, and will not repeat, the factual statements and submissions previously made in connection with the TRO. This section addresses factual and procedural developments since the filing of the Verified Complaint (ECF 1) and this Court's TRO (ECF 6-2, 25, 35).

### A.    Procedural Background: The TRO and the Ninth Circuit's Affirmance

In the TRO, this Court found Plaintiff's infringement claims ripe, concluded that Plaintiff demonstrated likelihood of success, irreparable harm, favorable equities, and the public interest in avoiding consumer confusion, and therefore restrained Defendants from using Plaintiff's "IYO" mark and any confusingly similar mark, including "IO," "in connection with the marketing or sale of related products." *Iyo, Inc. v. IO Prods.*, No. 25-cv-04861-TLT, 2025 LX 530671, at *37-38 (N.D. Cal. June 20, 2025). The Court originally set the preliminary injunction hearing for October 7, 2024, but rescheduled it to April 14, 2026, after Defendants filed an interlocutory appeal of the TRO. (ECF 78).

On November 21, 2025 the Ninth Circuit heard Defendants' appeal, and then less than two weeks later, on December 3, 2025, the Ninth Circuit unanimously affirmed this Court's decision, treating the TRO as though it were a PI, and finding that "the district court did not err in finding that IYO had shown a likelihood of confusion at this stage of the proceedings." *Iyo, Inc. v. Io Prods., Inc.*, No. 25-4028, 2025 LX 561502 (9th Cir. Dec. 3, 2025). The panel affirmed this Court's ruling on the issue of ripeness, rejecting Defendants' non-justiciability argument by recognizing the imminence of infringement and resulting injury, and upheld this Court's conclusions on all four *Winter* factors. *Id.* at *3. Indeed, as discussed further below, the Ninth Circuit strengthened Plaintiff's position on a number of factors. It found that the TRO properly prohibited the "marketing or sale of 'related products'" and construed "related" to mean sufficiently similar to IYO's AI-based "audio computer." *Id.* at *6. The Ninth Circuit also found that IYO had a "colorable claim"

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 2 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

that the "May 21 video was itself an infringing advertisement" because it "was specifically designed to generate anticipation for IO's first product." *Id.* at *3. It also upheld IYO's entitlement to a "presumption of irreparable harm," found no clear error in the District Court's finding of irreparable harm even without the presumption, and recognized the TRO's role in preventing the erosion of Plaintiff's brand and goodwill. *Id.*

### B.    IYO's Survey Supports the Finding of Confusion

IYO retained Mark Keegan, a principal at Keegan & Donato Consulting, LLC, who has nearly 25 years of experience conducting consumer research and has personally conducted over 1,000 consumer surveys, to conduct a survey to test confusion in this matter. Declaration of Mark Keegan, dated February 19, 2026 ("Keegan Decl.") at ¶¶ 11-12. Mr. Keegan designed and executed a national consumer survey of 805 likely purchasers of high-end personal electronic devices to determine whether there is a likelihood of consumer confusion between Defendants' IO mark and IYO's registered trademark. *Id.* at ¶¶ 7, 19. The survey employed a rigorous test versus control format, following the well-established sequential lineup methodology embodied in the *Squirt* decision, to isolate confusion attributable to the trademark similarities at issue. *Id.* at ¶¶ 28, 30-32.

The survey's results far exceed the minimum threshold for the determination of likelihood of confusion, which has been cited at approximately 15 percent. See, for example, JACOB JACOBY, AM. BAR ASS'N, TRADEMARK SURVEYS, VOLUME 1: DESIGNING, IMPLEMENTING, AND EVALUATING SURVEYS 392, 911 (2013), 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 32:188 (5th ed. 2020), and other authorities cited below.

The results of the survey demonstrate a substantial likelihood of confusion: 62.3% of respondents in the test cell indicated a belief that products sold under the IO brand and products sold under the IYO mark are put out by the same company, are affiliated or connected with the same company, or that IO-branded products are sponsored or approved by IYO. *Id.* at ¶ 8. After accounting for marketplace "noise" through an external control, the survey yielded a net confusion rate of 24.0%. *Id.* at ¶¶ 8, 77. This conclusion is further supported by the internal control findings, which produced a nearly identical net confusion rate of 23.7%. *Id.* at ¶¶ 79-80.

Qualitative responses from survey participants confirm that the observed confusion is driven by the similarity between the "IO" and "IYO" marks, with respondents citing the shared letters, similar logos, and near-identical branding. *Id.* at ¶ 81 & Table 5.  Examples of some survey respondents' qualitative statements include:

- "The product A displayed 'IO' and this has 'IyO', keeping I and O, making me think they are affiliated in some way;"

- "It has the same logo except for the 'Y';"

- "because it looks like the same ad. am i missing something?;" and

- "It is blatantly obvious it says the same brand name as the previous one. IyO."

**C.    Defendants Stonewall Discovery**

On February 6, 2026, following several stipulated extensions, Defendants served their Responses and Objections to IYO's First Set of Requests for Production, refusing to produce a single document in response to any of the 92 Requests for Production. Declaration of Andrew D. Skale, dated February 20, 2026 ("Skale Decl."), Ex. A. Not only did Defendants refuse to produce documents relevant to the *Sleekcraft* factors and IYO's damages, but they even refused to produce documents that they themselves may use, rely upon, or introduce as evidence at any hearing or trial, or in support of or in opposition to any motion. *Id.*, RFP No. 80. Defendants' stonewalling has necessitated the filing of a motion to compel, which IYO intends to file imminently (at the time of this filing, the parties are drafting their portions of the joint letter required by the Court).

Needless to say, Defendants should be precluded from presenting any new or different factual information on this motion beyond what they previously submitted in opposition to IYO's motion for a temporary restraining order. Having refused to produce documents they intend to use in connection with this very motion, Defendants cannot now rely on undisclosed evidence to oppose it. It would be fundamentally unfair to permit Defendants to withhold evidence during discovery and then spring it on IYO in opposition to this motion. *Williams v. Wells Fargo Bank, N.A.*, 2017 U.S. Dist. LEXIS 123889, at *1-2 (N.D. Cal. July 25, 2017) (granting motion to exclude documents, noting that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 4 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

at a hearing, or at a trial, unless the failure was substantially justified or is harmless" (quoting Fed. R. Civ. P. 37(c))); *Asus Comput. Int'l v. Round Rock Research, LLC*, 2014 WL 1463609, at *6 (N.D. Cal. Apr. 11, 2014) (striking references to undisclosed documents and information as "appropriate and fair").

### D.    Defendants' Claimed Voluntary Cessation

As the deadline for IYO to file its motion for a preliminary injunction neared, Defendants' counsel recently disclosed that Defendants had decided to not use the "IO mark…for the name of any products, in marketing materials, or as the company name." Skale Decl., Ex. B (2/3/2026 email summarizing call from defense counsel).

In response, IYO's counsel suggested that the parties could avoid unnecessary motion practice if Defendants stipulated to the PI, without an admission of liability and with IYO's agreement not to "use the fact that Defendants stipulated to the PI as evidence or an admission regarding likelihood of confusion or any other fact." *Id.* Defendants ***refused*** to stipulate to the PI and instead proposed a stipulation that found the PI moot and dissolved the TRO upon the mere representation that: "Defendants have decided not to use the name 'io' (or 'IYO,' or any capitalization of either) in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled hardware products." *Id.*

But Defendants' proposed stipulation provided no meaningful assurance that the alleged infringement would not recur. Thus, IYO's counsel again proposed that Defendants stipulate to entry of a preliminary injunction. Skale Decl., Exhibit C. Defendants again refused to agree to be bound by an order requiring them to cease using IYO's marks, despite their purported "decision" not to do so. *Id.* Instead, on February 5, Defendants proposed postponing the PI motion until 2027, leaving the TRO in place. ECF 105-1 at ¶ 4. However, it was apparent that Defendants were simply attempting to avoid the stigma of entry against them of a PI to which IYO believes it is entitled. And, by that time, IYO had already expended significant sums preparing for the upcoming motion. Moreover, IYO knew that postponing the PI would worsen, not lessen, market uncertainty and the harm it was facing, since Defendants' proposal delayed for another year the merits of the PI motion.

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

1   Thus, IYO refused that prejudicial offer. In response, Defendants moved for leave to postpone the

2   PI. ECF 105.

3        **E.**     **Ongoing Irreparable Harm**

4        Despite the TRO, IYO has been unable to obtain "a single new investor" since Defendants'

5   conduct began, despite "persistent and extensive efforts" to do so. ECF 107-1, Declaration of Jason

6   Rugolo in Opposition to Defendants' Motion to Postpone the PI, dated February 13, 2026 ("Rugolo

7   Decl."), ¶ 3. As a result, IYO's "funding has dried up" and its "brand equity has been usurped,"

8   which "have materially disrupted" IYO's trajectory as a thriving company. *Id.* at ¶¶ 4-5.

9   **III.**    **LEGAL STANDARDS**

10       **A.**     **Preliminary Injunction**

11       A plaintiff seeking a preliminary injunction must establish "(1) that they are likely to

12  succeed on the merits; (2) that they are likely to suffer irreparable harm in the absence of

13  preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in

14  the public interest." *Iyo*, 2025 LX 530671, at *9-10 (N.D. Cal.) (citing *Winter v. Natural Res.*

15  *Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

16       Absent a showing of success on the merits, a preliminary injunction may still issue "if there

17  are 'serious questions going to the merits' if 'a hardship balance [also] tips sharply towards the

18  [movant],' and 'so long as the [movant] also shows that there is a likelihood of irreparable injury

19  and that the injunction is in the public interest.'" *Id.* (quoting *All. For The Wild Rockies v. Cottrell*,

20  632 F.3d 1127, 1135 (9th Cir. 2011)).

21       Preliminary injunctions are "routinely granted" in trademark infringement cases due to the

22  "well-settled" and "universally recognized" principle that "trademark infringement causes

23  irreparable injury and necessitates immediate injunctive relief." *Cisco Sys., Inc. v. Shenzhen*

24  *Usource Tech. Co.*, 2020 WL 5199434, at *6 (N.D. Cal. Aug. 17, 2020). The Trademark

25  Modernization Act effectively codified this principle by applying a presumption of irreparable harm

26  upon a showing of likely confusion. 15 U.S.C. § 1116(a).

27       "Due to the exigent nature of a preliminary injunction, a court may consider hearsay and

28  other evidence that would otherwise be inadmissible at trial." *Virtue Glob. Holdings Ltd. v. Rearden*

*LLC*, 2016 WL 9045855, at \*4 (N.D. Cal. June 17, 2016) (citing *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) ("The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial.")).

As already established in the TRO, and as the Ninth Circuit affirmed, Plaintiff satisfies these standards.

### B.    Likelihood of Confusion

To determine whether confusion from an allegedly infringing mark is likely, the Ninth Circuit considers eight *Sleekcraft* factors: (a) strength of the mark; (b) similarity of the marks; (c) proximity or relatedness of the goods; (d) evidence of actual confusion; (e) marketing channels used; (f) types of goods and degree of care likely to be exercised by the consumer; (g) defendant's intent to select the mark; and (h) likelihood of expansion of product lines. *Iyo*, 2025 LX 561502, at \*18-19 (9th Cir.) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-39 (9th Cir. 1979)). The same factors apply in reverse confusion cases with some modifications. *See Ironhawk*, 2 F.4th at 1161-68. The Court need not address each factor at the preliminary injunction stage, nor must Plaintiff prevail on all factors. *Aurora World v. Ty, Inc.*, 719 F. Supp. 2d 1115, 1156 (C.D. Cal. 2009). The list of factors is "neither exhaustive nor exclusive." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) (citation omitted). "[T]he factors are intended to guide the court in assessing the basic question of likelihood of confusion." *Id.* (citing *Eclipse Assoc., Ltd. v. Data General Corp.*, 894 F.2d 1114, 1118 (9th Cir. 1990)). Courts consider the factors together to determine whether a likelihood of confusion exists under the totality of the circumstances and vary the weight given to each factor based on the facts of the case. *Pom Wonderful Ltd. Liab. Co. v. Hubbard*, 775 F.3d 1118, 1125 (9th Cir. 2014).

### C.    Claims of Voluntary Cessation

It is "well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation and citation omitted). The Supreme Court has long been unwilling to conclude that a defendant's change in

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 7 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

conduct moots a request for relief because "[t]he defendant is free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *see also Laidlaw*, 528 U.S. at 189.

Consistent with Supreme Court precedent, the Ninth Circuit holds that voluntary cessation moots injunctive relief "only if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000)). The Ninth Circuit has explicitly rejected the idea that a defendant's mere representation that it will cease its wrongdoing is sufficient to establish mootness, noting that if such assurances were sufficient, "any defendant could moot a preliminary injunction appeal by simply representing to the court that it will cease its wrongdoing." *Id.* at 1154.

A defendant therefore "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw*, 528 U.S. at 190 (citation omitted). This burden is "heavy" and requires proof that "there is no reasonable expectation that the wrong will be repeated." *W.T. Grant Co.*, 345 U.S. at 633 (citation omitted); *see also Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at *17 (C.D. Cal. Apr. 12, 2019) (noting defendant's "heavy burden" to show "the challenged conduct cannot reasonably be expected to start up again" (quoting *Laidlaw*, 528 U.S. at 189)); *Card Tech Int'l LLLP v. Provenzano*, 2011 WL 13220408, at *4 (C.D. Cal. Nov. 7, 2011) (same).

Courts are particularly skeptical of purported cessation when it occurs only after litigation ensues or in anticipation of formal intervention. *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179, 1183 (C.D. Cal. 1998); *see also Align Tech.*, 2019 WL 1586776, at *17 (defendant had not met its "heavy burden" where it "ceased engaging in the challenged conduct only after it was sued"); *Porsche Cars N. Am., Inc. v. Spencer*, 2000 WL 641209, at *6 n.16 (E.D. Cal. May 18, 2000) (defendant's voluntary cessation was insufficient to moot trademark claim where it had not proven "that there [was] no possibility that he [would] again" resume); *see also Jacobsen v. Katzer*, 2007 WL 2358628, at *5 (N.D. Cal. Aug. 17, 2007) (refusing to find that defendant's voluntary cessation rendered preliminary injunction motion moot even though

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 8 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

1  reoffending was "extremely unlikely"), *vacated on other grounds*, 535 F.3d 1373, 1377 n.1 (Fed.

2  Cir. 2008) (holding matter was not moot).

3      A defendant's claim of cessation cannot moot a request for injunctive relief unless it is

4  "irrefutably demonstrated and total" – a standard that defendants rarely meet. *Cyclone USA v.*

5  *LL&C Dealer Servs. LLC*, 2004 WL 7325117, at *7 (C.D. Cal. Apr. 14, 2004) (internal quotation

6  and citation omitted); *see also Toys "R" Us, Inc. v. Akkaoui*, 1996 WL 772709, at *3 (N.D. Cal.

7  Oct. 29, 1996) (same); *Card Tech*, 2011 WL 13220408, at *4 (same). Courts refuse to find mootness

8  where cessation appears strategic or temporary because, as one court explained, allowing

9  defendants to moot cases by stopping once sued would permit a defendant to "engage in unlawful

10  conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating

11  this cycle until he achieves all his unlawful ends." *Cherokee Inc. v. Wilson Sporting Goods Co.*,

12  2015 WL 3930041, at *4 (C.D. Cal. June 25, 2015) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S.

13  85, 91 (2013)); *see also Align Tech.*, 2019 WL 1586776, at *17 (finding defendant had not met its

14  "heavy burden" where it ceased conduct "only after it was sued").

15  ## IV.   ARGUMENT[1]

16      Plaintiff's motion for a preliminary injunction should be granted for the same reasons that

17  the TRO was granted and affirmed. Indeed, Ninth Circuit decisions are law of the case as to issues

18  of law and binding precedent unless and until the record changes. *E. Bay Sanctuary Covenant v.*

19  *Trump*, 354 F. Supp. 3d 1094, 1106 (N.D. Cal. 2018). Here, none of the facts supporting this relief

20  have changed, except that Plaintiff has continued to suffer the same harm and more, and a survey

21  confirms the likelihood of confusion.

22      ### A.   Plaintiff is Likely to Succeed on the Merits of Its Trademark Claim[2]

23      To prevail on its claim for trademark infringement, IYO must establish "(1) the plaintiff has

24  a protectible ownership interest in the mark, or for some claims, a registered mark; (2) the defendant

---

[1] As a threshold matter, this dispute is ripe for adjudication. Both this Court and the Ninth Circuit have already rejected Defendants' contention that Plaintiff's claims are premature, holding that "IO's alleged infringement is sufficiently imminent" and "concrete to satisfy Article III." *Iyo*, 2025 LX 561502, at *3 (9th Cir.); *see also Iyo*, 2025 LX 530671, at *15-16 (N.D. Cal.).

[2] Plaintiff is also likely to succeed on its other claims alleged in the Verified Complaint. But to simplify the issues and expedited relief, this Motion is limited to trademark infringement.

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 9 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

used the mark 'in connection with' goods or services; and (3) that use is likely to cause confusion." *Iyo*, 2025 LX 530671, at *16 (N.D. Cal.) (quoting *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125 (9th Cir. 2024)).

While the Verified Complaint alleges both forward and reverse confusion, this Motion addresses reverse confusion, which occurs when "'consumers dealing with the senior mark holder believe that they are doing business with the junior one,' because the junior user is more well-known." *Iyo*, 2025 LX 561502, at *3 (9th Cir.) (quoting *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159-60 (9th Cir. 2021)). Such confusion is exacerbated when "the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused." *Ironhawk*, 2 F.4th at 1160 (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:10 (5th ed. 2020)). While "[a]ffiliation with a popular well-known brand may seem beneficial, [] reverse confusion carries" significant adverse "consequences" for the senior user because it places "the senior company's goodwill in the hands of the junior user" and can "foreclose the senior user from expanding into related fields." *Id.* "[T]he result of reverse confusion is that the senior user loses the value of [its] trademark—its product identity, corporate identity, [and] control over its goodwill and reputation." *Id.*

"[T]he doctrine of reverse confusion is designed to prevent the calamitous situation where a larger, more powerful company usurps the business identity of a smaller senior user." *Id.* (cleaned up, citation omitted). That "calamitous situation" is precisely the harm this Court has already recognized, and the Ninth Circuit has affirmed, as warranting injunctive relief.

### 1. Plaintiff Has a Protectable Trademark.

As this Court previously found, Plaintiff's uncontested and valid federal registration of its IYO trademark (Reg. No. 7,409,119) establishes a "protectible ownership interest in the mark." *Iyo*, 2025 LX 530671, at *16 (N.D. Cal.). Plaintiff is also the senior mark holder and user given that it filed its application for the IYO Mark on September 17, 2021, and began using the mark in commerce in February 2024, over a year before Defendants announced IO Products, Inc. *Id.* at *32.

### 2. Defendants Used Plaintiff's Mark in Connection with Goods or Services

Plaintiff must also show that Defendants used the disputed trademark "in connection with

- 10 -

sale of goods or services," which requires only that "Defendants offer 'competing [goods or] services to the public.'" *Id.* at *17-18 (quoting *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005)). As the Ninth Circuit explained, "[u]sing a confusing mark 'in connection with . . . advertising . . . goods" is [] actionable under the Lanham Act" and because "Defendants' May 21, 2025 video announcement was specifically designed to generate anticipation for IO's first product," IYO "has a 'colorable claim' that the May 21 video was itself an infringing advertisement." *Iyo*, 2025 LX 561502, at *3 (9th Cir.); *see also Iyo*, 2025 LX 530671, at *18 (N.D. Cal.) (finding requirement satisfied because "Defendants have working prototype, the product will compete with Plaintiff's product, and the product will be called by the disputed mark.").

### 3.    Defendants' Claimed Voluntary Cessation is Immaterial

As noted above, the fact that Defendants have now "asserted" their intent to voluntarily cease use of the mark does not moot this motion. Defendants' refusal to stipulate to entry of the very injunction they claim is unnecessary undermines any argument that their cessation is "irrefutably demonstrated and total." *Cyclone*, 2004 WL 7325117, at *7. If Defendants sincerely intended never to resume their infringing conduct, they would have no reason to refuse a stipulated injunction—particularly one that IYO offered to shield from use as evidence of liability. Skale Decl., Ex. C. Defendants' unwillingness to be bound through trial by an order of this Court strongly suggests they wish to remain "free to return to [their] old ways" when they introduce their product. *Laidlaw*, 528 U.S. at 189.

Further, "[i]f the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [Plaintiff] substantial protection of its trademark." *Cyclone*, 2004 WL 7325117, at *7 (quoting *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135-36 (9th Cir. 1986)); *see also Card Tech*, 2011 WL 13220408, at *4-5. This reasoning reflects the fundamental principle that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *Columbia Pictures*, 11 F. Supp. 2d at 1183.

### 4.    There is a Likelihood of Confusion

Both this Court and the Ninth Circuit have already found that IYO is likely to succeed in showing a likelihood of confusion. *Iyo*, 2025 LX 530671, at *18 (N.D. Cal.) ("After review of each

- 11 -

1  of the *Sleekcraft* factors, the Court finds that Plaintiff has established a likelihood of success. In

2  totality, at this stage, the factors weigh in favor of infringement."); *Iyo*, 2025 LX 561502, at *3 (9th

3  Cir.) ("[T]he district court did not err in finding that IYO had shown a likelihood of confusion at

4  this stage of the proceedings."). None of the facts supporting those findings have changed except

5  for Plaintiff's ongoing harm and the existence of a survey showing confusion. As such, and as

6  discussed below, all of the *Sleekcraft* factors either weigh in favor of a likelihood of confusion or

7  are neutral.

8          **a.**      **Defendants' Commercial Strength Will Overwhelm Plaintiff.**

9  In reverse confusion cases, courts assess "whether consumers doing business with the senior

10  user might mistakenly believe that they are dealing with the junior user," which requires

11  "evaluat[ing] the conceptual strength of [the plaintiff's] mark and compar[ing] it to the commercial

12  strength of [the defendant's] mark." *Ironhawk*, 2 F.4th at 1162.

13  Here, this Court found that Plaintiff's IYO mark is a "conceptually strong mark because it

14  is arbitrary or fanciful and the USPTO issued a registration without requiring proof of secondary

15  meaning." *Iyo*, 2025 LX 530671, at *21 (N.D. Cal.). By comparison, Defendants have a

16  "commercially strong mark" that has overtaken Plaintiff's senior mark and caused actual confusion

17  among investors, with prominent national news outlets publicizing OpenAI's $6.5 billion

18  acquisition of IO. *Id.* at *22. The Ninth Circuit agreed, finding that "'IYO' is conceptually strong

19  and 'IO' is commercially strong, as evidenced by the extensive coverage of IO's launch in national

20  media outlets." *Iyo*, 2025 LX 561502, at *4-5 (9th Cir.). Given that Defendants' mark has already

21  "swamp[ed] the reputation" of Plaintiff's IYO Mark "with a much larger advertising campaign,"

22  this factor weighs in favor of Plaintiff. *Ironhawk*, 2 F.4th at 1163.

23          **b.**      **The Parties' Goods are Related.**

24  Both this Court and the Ninth Circuit have already held that the parties' goods are related.

25  *Iyo*, 2025 LX 530671, at *22-24 (N.D. Cal.) ("Plaintiff is likely to succe[ed] in showing that the

26  products are related and proximate in the market."); *see also Iyo*, 2025 LX 561502, at *4 (9th Cir.)

27  ("The companies' goods are also related, as both companies describe their products as replacing

28  traditional computers and providing a more natural way to interact with artificial intelligence (AI)."

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 12 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

(internal citation omitted)). Defendants also repeatedly admitted that they were in competition. *See* ECF 6-9 (Ex. C to Rugolo Decl. ISO TRO Mot.; Sam Altman emailed IYO, "thanks but im working on something competitive so will respectfully pass!" that will be "(called io…)"); ECF 6-12 (Ex. F to Rugolo Decl. ISO TRO Mot.; Peter Welinder emailed IYO that Mr. Tan "doesn't want to meet if he has to sign an NDA, since he's working on something that could potentially be competitive"). The facts supporting these findings have not changed.

### c.    The Marks are Nearly Identical.

This Court has already held that "the appearance and sound in the parties' marks weighs in favor of infringement" because they are phonetic equivalents. *Iyo*, 2025 LX 530671, at *28 (N.D. Cal.). The Ninth Circuit echoed this conclusion, finding that "[t]he marks 'IO' and 'IYO' only differ by one letter and are pronounced identically." *Iyo*, 2025 LX 561502, at *4 (9th Cir.). Consequently, this factor weighs in favor of Plaintiff. *Id.*

### d.    There is Already Evidence of Actual Confusion.

While evidence of actual consumer confusion lends strong support to finding a likelihood of confusion, "[t]he failure to *prove* instances of actual confusion is *not* dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1050 (9th Cir. 1999) (citations omitted). Given "the difficulty in garnering such evidence . . . [s]urvey evidence may establish actual confusion." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1035 (9th Cir. 2010) (citations omitted). Non-consumer confusion can also "serve as an adequate proxy or substitute for evidence of actual confusion." *Iyo*, 2025 LX 530671, at *30 (N.D. Cal.) (quoting *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012)).

Here, Plaintiff offers both a survey and strong proxy evidence of actual confusion. First, as already established at the TRO, Plaintiff's investors and professional network immediately notified IYO of the effect of confusion from Defendants' May 21 "introduction" of IO; that confusion "serve[s] as a proxy for actual consumer confusion" and "weighs slightly in favor of infringement." *Iyo*, 2025 LX 530671, at *30-31 (N.D. Cal.); *Iyo*, 2025 LX 561502, at *5 (9th Cir.) (finding this

1    factor "slightly favors IYO, because the reaction of IYO's investors to IO's launch can serve as a

2    'proxy' for consumer confusion" (citation omitted)).

3         Second, Plaintiff's expert, Mark Keegan, conducted a survey of 805 respondents, which

4    yielded 62.3% total confusion and 24% net confusion when measured against the control group.

5    Keegan Decl., ¶¶ 8, 77. This measurement is further supported by the findings from the survey's

6    internal control, which produced a nearly identical net confusion rate of 23.7%. *Id.* ¶¶ 79-80. Courts

7    routinely consider such levels of confusion in surveys as strong support for a likelihood of

8    confusion finding. *See, e.g.*, *Fiji Water Co., LLC v. Fiji Mineral Water USA, LLC*, 741 F. Supp. 2d

9    1165, 1179 (C.D. Cal. 2010) (finding "solid support" for actual confusion based on survey showing

10   24.3% net confusion); *Sports Mktg. Monterrey Grp. LLC v. Socios Servs. United States Inc.*, 2023

11   WL 2671379, at *18-19 (N.D. Cal. Mar. 27, 2023) (finding plaintiff's *Squirt* survey showing 24.7%

12   confusion favored actual confusion); *San Diego Detox, LLC v. Detox Ctr. of San Diego LLC*, 2024

13   WL 3367214, at *26 (S.D. Cal. July 9, 2024) (finding likelihood of confusion factor favored

14   plaintiff where *Squirt* survey showed "a net confusion rate between 14.4 and 32.4 percent"); *VIP*

15   *Products, LLC v. Jack Daniel's Properties, Inc.*, 291 F. Supp. 3d 891, 908 (D. Ariz. 2018) (finding

16   actual confusion at bench trial because "survey results [showing] that 29% of potential purchasers

17   were likely confused is nearly double the threshold to show infringement").

18       In addition, the qualitative responses from many survey participants confirm that the

19   observed confusion is driven by the similarity between the marks, with respondents citing the

20   shared letters, similar logos, and near-identical branding. Keegan Decl. ¶ 81 & Table 5.

21       Accordingly, this factor weighs strongly in Plaintiff's favor.

22                    **e.    The Parties' Marketing Channels Overlap.**

23       This factor asks "whether the parties' customer bases overlap and how the parties advertise

24   and market their products." *Pom Wonderful*, 775 F.3d at 1130. Here, both parties market their

25   products to the general public through the internet, thereby tipping this factor in Plaintiff's favor.

26   *See Iyo*, 2025 LX 530671, at *28 (N.D. Cal.) (finding this factor "weighs slightly in favor of

27   infringement"); Iyo, 2025 LX 561502, at *5 (9th Cir.) (giving this factor "little weight" because

28   internet marketing is ubiquitous).

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 14 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

1

### f.        The Consumer Care Factor Makes Confusion Likely.

The consumer care factor considers "the sophistication of the customers," including whether a "'reasonably prudent consumer' would take the time to distinguish between the two production lines." *Ironhawk*, 2 F.4th at 1167 (citation omitted). "Low consumer care . . . increases the likelihood of confusion." *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004).

This Court previously concluded that on the record as it stood, "this factor weighs in favor of infringement" because both parties market their products to the general public and IYO's products are offered at a price comparable to other mass market electronics. *Iyo*, 2025 LX 530671, at *25 (N.D. Cal.). The Ninth Circuit found this factor neutral when balancing cost and sophistication. Iyo, 2025 LX 561502, at *5 (9th Cir.). Nothing has changed in the facts underlying these assessments and thus, this factor either weighs in favor of infringement or is at worst neutral.

### g.        Defendants Intended to Infringe.

This Court already found that "Defendant's intent weighs in favor of infringement," *Iyo*, 2025 LX 530671, at *32 (N.D. Cal.), and the Ninth Circuit effectively affirmed this finding in concluding that "[t]he other *Sleekcraft* factors [] support the district court's conclusion as they either favor IYO or are neutral," Iyo, 2025 LX 561502, at *5 (9th Cir.).

Here, as this Court recognized, Defendants "were well aware of the IYO mark" at the time of the May 21 announcement and had learned of IYO's brand and technology through multiple meetings and a demonstration of Plaintiff's products. *Iyo*, 2025 LX 530671, at *31-32 (N.D. Cal.). Altman even admitted to IYO's CEO roughly two months before the May 21 announcement that his product would compete with Plaintiff's products and be "called io." *Id.* Apollo Projects and Altman also communicated with Plaintiff as early as March and April 2022, over a year before Defendants allegedly chose the IO name in mid-2023. *Id.* Moreover, Plaintiff filed its application for the IYO mark on September 17, 2021, which was published on February 14, 2023, predating when Defendants selected the IO name. *Id.*

### h.        Likelihood of Expansion is Neutral.

As this Court previously concluded, the final *Sleekcraft* factor – which assesses the

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

likelihood of expansion of product lines – is neutral when goods "are already related" or the parties offer similar products, likelihood of expansion is unnecessary. *See Playboy*, 354 F.3d at 1029; *Iyo*, 2025 LX 530671, at *32 (N.D. Cal.) (finding this factor "neutral").

*    *    *

Thus, all factors point to a strong likelihood of success on the merits, or at the very least raise "serious questions going to the merits." *Id.* at *10 (citation omitted). Since the balance of equities also tips strongly in Plaintiff's favor and Plaintiff satisfies the other *Winter* elements (as shown below), a preliminary injunction is warranted. *Id.*

### B.    Irreparable Harm Will Continue Without Injunctive Relief

#### 1.    Irreparable Harm is Presumed

This Court previously found that "[b]ecause IYO has shown a likelihood of success on the merits, it is entitled to a presumption of irreparable harm" that Defendants failed to rebut. *Iyo*, 2025 LX 530671, at *33 (N.D. Cal.). The Ninth Circuit agreed that a "plaintiff is 'entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits' for infringement of a registered mark 'in the case of a motion for a preliminary injunction or temporary restraining order.'" *Iyo*, 2025 LX 561502, at *5-6 (9th Cir.). And it found no clear error in the Court's irreparable harm analysis.

As was true during the TRO briefing, irreparable harm is presumed because Plaintiff has shown a likelihood of success in proving infringement. *AK Futures Ltd. Liab. Co. v. Boyd St. Distro, Ltd. Liab. Co.*, 35 F.4th 682, 694 (9th Cir. 2022) (citing 15 U.S.C. § 1116(a)); *see also Cisco Sys.*, 2020 WL 5199434, at *6 ("Preliminary injunctions are routinely granted in cases involving trademark infringement.").

#### 2.    Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction

At the TRO stage, beyond the statutory presumption of irreparable harm, this Court found that Plaintiff adequately showed irreparable harm based on its stalled fundraising campaign following Defendants' May 21 announcement, which paralyzed Plaintiff's ability to secure capital, manufacture the IYO ONE, and fulfill its pre-orders. *Iyo*, 2025 LX 530671, at *33 (N.D. Cal.); *see also Iyo*, 2025 LX 561502, at *5-6 (9th Cir.) (finding no clear error in this Court's irreparable harm

1    analysis). This Court further credited Plaintiff's "loss of credibility and reputation" and inability to

2    recruit new talent as collateral harms of Defendants' infringement. *Iyo*, 2025 LX 530671, at *34

3    (N.D. Cal.). Those findings remain equally compelling today.

4        Moreover, although the TRO has temporarily halted Defendants' infringing conduct, it does

5    not eliminate the underlying threat of Defendants "swamp[ing Plaintiff's] reputation with a much

6    larger advertising campaign" and usurping Plaintiff's business identity. *Ironhawk*, 2 F.4th at 1163.

7    Without a preliminary injunction, Defendants will be free to resume their infringement, exposing

8    Plaintiff to the very harm this Court previously found to be irreparable. This ability leads to

9    "[l]ingering uncertainties" in the market "sufficient to establish lingering harm that cannot easily

10   be compensated with monetary damages." *See QS Wholesale, Inc. v. World Mktg., Inc.*, 2014 WL

11   12586120, at *12 (C.D. Cal. Jan. 7, 2014) (awarding permanent injunction despite infringer's

12   promise to cease sales of goods bearing infringing mark).

13       **C.    The Balance of Equities Tips in Plaintiff's Favor**

14       In evaluating equities, "courts must balance the competing claims of injury and consider

15   the effect of granting or withholding the requested relief." *Winter*, 555 U.S. at 29. Here, the balance

16   of equities continues to favor Plaintiff.

17       This Court has already recognized that "little equitable consideration" is given to a

18   defendant when its only asserted hardship is lost profits. *Iyo*, 2025 LX 530671, at *34 (N.D. Cal.)

19   (quoting *Restoration Hardware, Inc. v. Alimia Light*, 2023 WL 3639360, at *2 (N.D. Cal. May 24,

20   2023)). Further, the "limited" scope of Plaintiff's requested relief—like the current TRO—would

21   only enjoin Defendants from using the IO mark or anything confusingly similar in connection with

22   the marketing or sale of related products," leaving Defendants free to pursue competing products

23   under a different brand. *Iyo*, 2025 LX 530671, at *34 (N.D. Cal.); *Iyo*, 2025 LX 561502, at *7 (9th

24   Cir.). As this Court observed, doing so would "result[] in very little harm" to Defendants. *Iyo*, 2025

25   LX 530671, at *35 (N.D. Cal.).

26       Defendants have now operated for eight months under the TRO, confirming that prolonged

27   injunctive relief imposes no undue hardship, while denying such relief would significantly

28   prejudice Plaintiff's competitiveness in the AI market. The balance of equities therefore weighs

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 17 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

1  decisively in favor of granting a preliminary injunction.

2          **D.**    **An Injunction is in the Public Interest**

3      As this Court has already found, "[a]n injunction" "serves the public interest" here because

4  it "prevents consumer confusion." *Iyo*, 2025 LX 530671, at \*35 (N.D. Cal.) (citing *Am. Rena Int'l*

5  *Corp. v. Sis-Joyce Int'l Co.*, 534 F. App'x 633, 636 (9th Cir. 2013)). That has not changed.

6          **E.**    **No Bond Should Be Required**

7      Fed. R. Civ. P. 65(c) vests district courts with "considerable discretion" to determine the

8  amount of the bond required, if any, for injunctive relief. *Id.* at \*36 (quoting *Connecticut Gen. Life*

9  *Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003)). A bond may be set at

10  zero where "there is no evidence the party will suffer damages from the injunction," *Connecticut*

11  *Gen. Life Ins. Co.*, 321 F.3d at 882, and a court may dispense with a bond entirely where "there is

12  no realistic likelihood of harm to the defendant from enjoining [its] conduct." *Johnson v. Couturier*,

13  572 F.3d 1067, 1086 (9th Cir. 2009).

14      Applying these principles at the TRO stage, this Court declined to require a bond, given

15  Plaintiff's likelihood of success on the merits and Defendants' insufficient showing of a proper

16  bond amount. *Iyo*, 2025 LX 530671, at \*37 (N.D. Cal.). Nothing has changed since that ruling.

17  Plaintiff seeks the same limited relief of prohibiting Defendants' use of the infringing "IO" mark

18  and Defendants have operated without any showing of cognizable harm for eight months under the

19  TRO. Instead, Defendants are now claiming that they are not going to use the mark. Under these

20  circumstances, and consistent with this Court's prior order, there is no realistic likelihood that

21  Defendants will suffer harm from the entry of a preliminary injunction. *Johnson*, 572 F.3d at 1086.

22  Thus, no bond should be required.

23  **V.**    **CONCLUSION**

24      For the foregoing reasons, Plaintiff respectfully requests that the Court grant its motion for

25  a preliminary injunction prohibiting Defendants, their employees, agents, representatives,

26  subsidiaries, affiliates, related entities, and all persons and entities in active concert or participation

27

28

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 18 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

1   with any of them[3] from using in commerce by any means whatsoever, directly or indirectly,

2   Plaintiff's IYO mark, and any mark confusingly similar thereto, including without limitation "IO."

3   Dated:  February 20, 2026                    Respectfully submitted,

4                                                MINTZ LEVIN COHN FERRIS
                                                 GLOVSKY AND POPEO, P.C.
5

6                                                By: */s/ Andrew D. Skale*
                                                 Andrew D. Skale (211096)
7                                                Laura Franco (186765)
                                                 Anthony J. Viola (*pro hac vice*)
8                                                Kara M. Cormier (*pro hac vice*)

9                                                *Attorneys for Plaintiff IYO, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   _____
     [3] News reports indicate that OpenAI recently converted into a for-profit corporation, and
26   Defendants' counsel had stated that IO Products, Inc. has (since its acquisition by OpenAI) been
     somehow absorbed into the corporate structure of OpenAI.  However, despite repeated requests,
27   Defendants' counsel has refused to explain what entity or entities are operating the IO Products
     business and/or are the proper parties for purposes of this case. And Defendants have refused to
28   respond to IYO's RFPs on that subject, all of which militates in favor of a broad PI.  Skale Decl.,
     at ¶ 2.

Mintz, Levin, Cohn,
Ferris, Glovsky and
Popeo, P.C.
Attorneys at Law

- 19 -

PLAINTIFF'S MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION