

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

|  |  |
|---|---|
| IYO, Inc., | ) |
|  | ) |
| **Plaintiff,** | ) |
|  | ) |
| v. | ) **Case No: 3:25-cv-04861** |
|  | ) |
| IO Products, Inc., et al., | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |
|  | ) |

**Declaration of Mark Keegan**

**Keegan & Donato Consulting, LLC**
**February 19, 2026**

**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## TABLE OF CONTENTS

Summary of Assignment and Opinions ......................................................................... 1

Firm Overview ............................................................................................................... 4

Methodology .................................................................................................................. 6

    Study Integrity ........................................................................................................... 6

    Study Objective ......................................................................................................... 7

    Study Population ........................................................................................................ 7

    Study Design ............................................................................................................. 9

        Methodology ........................................................................................................ 9

        Stimuli .............................................................................................................. 12

    Data Collection ....................................................................................................... 19

    Bias Management .................................................................................................... 21

    Accuracy of Estimate ............................................................................................. 24

    Questionnaire ......................................................................................................... 25

Sample Characteristics ............................................................................................... 26

Results & Analysis ...................................................................................................... 27

Conclusions ................................................................................................................ 34

**Exhibits**

Exhibit 1—About Keegan & Donato Consulting, LLC

Exhibit 2—Documents Considered

Exhibit 3—Questionnaire (Screen Shots)

Exhibit 4—Questionnaire (Editor Export)

Exhibit 5—Tabulated Data

Exhibit 6—Untabulated Data

Exhibit 7—Disposition of Contacts

**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

I, Mark Keegan, declare as follows:

## Summary of Assignment and Opinions

1. Keegan & Donato Consulting, LLC ("Keegan & Donato Consulting") is engaged by Plaintiff
   IYO, Inc. ("IYO" or "Plaintiff") in the above-captioned matter.

2. Since early 2018, the IYO team has worked in the field of natural language computing on
   projects related to bringing artificial intelligence ("AI") to the consumer market.[1] IYO's efforts
   have resulted in products that allow users to "interact with their smartphones, computers,
   artificial intelligence, and the internet without the use of screens, keyboards, mice, or other
   similar physical interfaces,"[2] including its latest generation product known as the "IYO ONE."
   The IYO ONE is an "ear-worn device that uses specialized microphones and bone-conducted
   sound to control audio-based applications with nothing more than the user's voice."[3] To date,
   IYO has invested approximately $62 million into the development of its products.[4] IYO owns
   and maintains a portfolio of U.S. trademark registrations (collectively, the "IYO Mark")
   covering its products and services.[5]

3. A representative example of the IYO Mark as it is used in commerce is shown in Figure 1
   below.

---

[1] Verified Complaint, ¶ 2.

[2] Ibid, ¶ 3.

[3] Ibid, ¶ 4.

[4] Ibid, ¶¶ 2-3.

[5] U.S. Trademark Registration No. 7,409,119; U.S. Trademark Application Serial No. 98/088,268 (pending);
See also Verified Complaint, ¶¶ 46-56.

*Figure 1. Representative use of the IYO Mark[6]*



4.  Defendants IO Products, Inc., et al. (collectively, "IO" or "Defendants") are a competing entity[7] formed as a joint venture between Open AI CEO Sam Altman and designer Jony Ive.[8] IO's objective is to bring to market products that allow consumers to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or other similar physical interfaces.[9] With significant resources at their disposal, Defendants have made a major investment—valued at $6.5 billion—in the development of their IO-branded products.[10]

5.  Plaintiff IYO has alleged that the Defendants' use of the IO brand in connection with AI products infringes upon IYO's registered trademark rights[11] and that, as a result, consumers are

---

[6] https://www.iyo.ai/products/iyo-one.

[7] "IO's product…will compete with IYO's product." *IYO, Inc. v. IO Products, Inc., et al.*, No. 25-4028 (9th Cir. 12/3/2025) (mem.), p. 3; "While IO has not announced any details about its products yet, correspondence from IO described it as 'competitive' with IYO." Ibid, pp. 4-5.

[8] https://openai.com/sam-and-jony.

[9] Verified Complaint, ¶ 6. See also, "Sam & Jony Introduce IO," https://www.youtube.com/watch?v=rDNyFN_eMec.

[10] Verified Complaint, ¶¶ 6, 12.

[11] Ibid, ¶¶ 106-117.

likely to be confused between IO and IYO as used in the context of AI products. Specifically, Plaintiff has alleged that Defendants' use of the IO mark "is intended to, has, and is likely to continue to confuse, mislead, and/or deceive consumers into believing that IO is affiliated with IYO and/or that IO's products originate from, or are associated with, sponsored by, or affiliated with IYO, when they are not (e.g., forward confusion), or conversely, that IYO's services originate from, or are associated with, sponsored by, or affiliated with IO, when they are not (e.g., reverse confusion).[12]

6.  I was asked to review the circumstances of the current matter, in particular with respect to the Plaintiff's allegations of a likelihood of consumer confusion. Upon completing this review, I determined that a consumer study would be informative regarding those allegations of confusion, specifically with regard to reverse confusion, considering the dominant market position of the Defendants.[13]

7.  Thus, in accordance with the Plaintiff's allegations, I designed and executed a reverse confusion study to determine the extent to which, if at all, there is a likelihood of confusion among relevant consumers between the Defendants and the Plaintiff based on the Defendants' alleged infringement of the IYO Mark. My national study consisted of 805 likely purchasers of the Parties' products—i.e., current and prospective purchasers of high-end personal electronic devices ("relevant consumers").

8.  The study I conducted in this case found that a majority of respondents—62.3 percent—indicated a belief that products sold under the Defendants' IO brand and products sold under the Plaintiff's IYO Mark are put out by the same company; that IO-branded products are affiliated, connected, or associated with the Plaintiff; or that IO-branded products are sponsored or approved by the Plaintiff. Accounting for the study's external control yields a net[14] of 24.0

---

[12] Verified Complaint, ¶ 108.

[13] "IYO alleges a theory of 'reverse confusion,' where 'consumers dealing with the senior mark holder believe that they are doing business with the junior one,' because the junior user is more well-known. Here, the district court did not err in finding that IYO had shown a likelihood of confusion at this stage of the proceedings." [Citation omitted.] *IYO, Inc. v. IO Products, Inc., et al.*, No. 25-4028 (9th Cir. 12/3/2025) (mem.), pp. 3-4.

[14] Net of the control findings of confusion, discussed below.

percent confusion among relevant consumers. Thus, the study findings exceed the threshold that is typically viewed as evidence of a likelihood of confusion among relevant consumers.[15]

9. Because this study employed appropriate and rigorous controls which account for extraneous variables (discussed below), the observed consumer confusion between the Parties is directly attributable to the contested trademark issues concerning likelihood of confusion and infringement being litigated in this matter.

10. The methodology, results, and conclusions of this study are presented in detail in the sections that follow.

## Firm Overview

11. I am a principal at Keegan & Donato Consulting, a consulting firm serving litigators and their clients. Our areas of expertise include consumer survey research, marketing analysis, intellectual property, forensic economic analysis, and related disciplines. Our firm designs and executes methodologically sound consumer survey research studies, conducts objective evaluation of existing survey research, and collaborates on a wide range of marketing and complex commercial litigation issues. We are also regularly engaged by clients for non-litigation consulting assignments related to marketing research and strategy.

12. I have nearly 25 years of experience conducting consumer research. Over the course of my career, I have personally conducted over 1,000 consumer surveys, reaching more than 250,000 consumers. Many of these surveys have been admitted into evidence in federal courts, state courts, at arbitrations, and presented to the Trademark Trial and Appeal Board, the National Advertising Division of the Council of Better Business Bureaus, and the United States International Trade Commission. I have also often served as a rebuttal expert witness. In the last four years, I have been regularly deposed and testified at trial in conjunction with my involvement in litigation matters. My survey evidence and testimony have been relied upon by tribunals in reaching their decisions.

13. I am a graduate of the University of Georgia's Principles of Market Research Program. This comprehensive course of study, developed in concert with the Market Research Institute

---

[15] A minimum threshold for the determination of likelihood of confusion has been cited at approximately 15 percent. See for example, Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, pp. 392, 911. See also McCarthy, J.T. (2020). *McCarthy on Trademarks and Unfair Competition, 5th Ed.*, §32:188.

International (MRII), is a post-graduate program for marketing industry professionals covering all aspects of the market research process. Coursework is based on the MRII's Market Research Core Body of Knowledge (MRCBOK), a compilation of the underlying principles and essential skills that comprise the market research process. Certification is conferred only upon participants who demonstrate mastery of concepts presented in 284 detailed module studies across 13 core areas of market research, as determined via rigorous proctored examinations. The University of Georgia's Principles of Market Research Program is endorsed by all major market research and insights industry associations, including ESOMAR and the Insights Association.

14. I am a member of the American Marketing Association (AMA), the preeminent professional association for marketing practitioners and scholars. From the AMA, I have earned the designation of Professional Certified Marketer (PCM). The AMA confers the PCM certification upon individuals who have demonstrated a mastery of comprehensive and core marketing knowledge and principles. PCM certification requires rigorous testing, ongoing professional development, and a commitment to upholding the highest standards in the marketing field. The AMA only accepts into the PCM certification program applicants with demonstrated professional experience in the field of marketing.

15. My educational background includes a Juris Doctorate degree from Brooklyn Law School and a Bachelor of Arts degree in History from Pace University. I have completed coursework in the Master of Business Administration program at the Lubin School of Business at Pace University and in Harvard University's Corporate Finance Certificate program. I have also served as a Registered Representative, National Association of Securities Dealers (Series 7, expired).

16. Keegan & Donato Consulting is a member of ESOMAR, the leading global association for market, social, and opinion research, the American Association for Public Opinion Research (AAPOR), a professional organization of more than 2,000 public opinion and survey research professionals in the United States and from around the world, the International Trademark Association (INTA), and the Association for Consumer Research (ACR). I have published in an ESOMAR compendium on the benefits of methodologically sound marketing research. I have taught CLE-accredited courses on survey research for litigation at the Florida Bar's Annual IP Symposium and have addressed the Pennsylvania Bar Association's Intellectual Property Law group with a presentation on the building blocks of survey research for litigation, consumer research best practices, and current trends in the industry. In February 2024, I served as a

panelist at the Art & Fashion Law Conference hosted by the Intellectual Property Law Section of the Federal Bar Association, where I presented on branding, marketing, and intellectual property issues salient to the fashion industry. I have guest lectured on survey design and intellectual property issues at Cardozo School of Law in New York and UC Irvine School of Law in California.

17. Additional information about my credentials is provided at Exhibit 1 to this report. Exhibit 1 also lists the matters in which I have provided testimony over the last four years. A listing of the documents I considered in formulating my opinions appears as Exhibit 2.

18. Keegan & Donato Consulting is being compensated $67,500 for the preparation and execution of the research and analysis presented in this report. Keegan & Donato Consulting's compensation is not dependent on the outcome of this case.

## Methodology

### Study Integrity

19. I designed and executed this national study of 805 relevant consumers in accordance with accepted standards of survey research. For example, this survey follows the guiding principles for survey research for the purpose of litigation as outlined by Shari Diamond in the *Reference Guide on Survey Research*,[16] including but not limited to:

- · Appropriate universe selection and sampling frame;

- · Rigorous and valid survey design that is probative of the relevant issues in the case;

- · Inclusion of representative, qualified respondents;

- · Use of procedures to minimize potential biases in data collection;

- · Use of objective, non-leading questions;

- · Use of procedures to reduce guessing among respondents; and

- · Full analysis and reporting of survey data.

---

[16] Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, pp. 359-423.

20. This research was also guided by the provisions of the Lanham Act[17] and recognized treatises in the area of trademark research.[18]

**Study Objective**

21. The objective of the study that I designed and conducted in this case was to determine the extent to which, if at all, there is a likelihood of confusion among relevant consumers between products sold under the Defendants' IO brand and products sold under the Plaintiff's IYO Mark. The remaining sections of this report describe the methodology, findings, and conclusions of my study.

**Study Population**

22. Surveys are conducted by collecting data from a sample, or subset, of the population of interest, i.e., the larger group to which the study results may be projected. The Plaintiff claims first marketplace use of the name IYO with respect to AI consumer electronics products[19] and is thus considered the "senior user."[20] As the second comer to the market, the Defendant is considered the "junior user."

23. In the current matter, wherein the Defendants (junior user) have a broader market reach than the Plaintiff (senior user), the appropriate means of testing for likelihood of confusion is a study addressing reverse confusion. As noted by trademark commentator J. Thomas McCarthy, "[R]everse confusion occurs when the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user."[21] Typically, in a reverse confusion study, the appropriate population from which to sample is likely purchasers of products or services

---

[17] 15 USC §1125.

[18] See, for example, McCarthy, J.T. (2020). *McCarthy on Trademarks and Unfair Competition, 5th Ed.,* §32:158-196; Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association; *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition* (2022). Diamond, S.S. and Swann, J.B., eds., American Bar Association.

[19] Verified Complaint, ¶¶ 2-3, 46-56.

[20] The "senior" user in this context refers to the party that is the earlier entrant in the marketplace with asserted trademark rights, i.e., the Plaintiff. Correspondingly, "junior" user refers to the party that is a later entrant to the marketplace—in this case, the Defendants.

[21] McCarthy, J.T. (2020). *McCarthy on Trademarks and Unfair Competition, 5th Ed.*, §23:10.

bearing the senior user's mark.[22] However, because both Parties in the current matter operate within the same larger market (i.e., AI consumer electronics products) and serve the same customers,[23] the appropriate survey universe is the Parties' common target of likely purchasers of AI consumer electronics products.[24]

24. As such, respondents qualified to participate in the study if they indicated that they had used a laptop computer, desktop computer, tablet, and/or smartphone in the last year; *and* indicated that for one or more of the above products, they either purchased the product themselves, purchased in coordination with others, or influenced the purchase. Respondents who satisfied these criteria qualified to participate in the study.

25. Potential respondents who had not used and/or participated in the purchase decision for one of the qualifying types of products were asked an additional series of questions to determine whether they expected to do so within the next three months. Respondents who expected to use and participate in the purchase decision for one of the qualifying types of products qualified to participate in the survey. Respondents who did not qualify on past or future use/purchasing behavior for at least one of the qualifying types of products were not permitted to participate in the study.

26. Consistent with typical marketing research practice, only respondents aged 18 and older residing in the U.S. were permitted to participate in the study.

27. Respondents who met the study population definition were identified through the use of questions that screened study participants on the above criteria (see questionnaire at Exhibit 3). Respondents who did not meet the qualification criteria outlined above were not permitted to participate in the study.

---

[22] "In a 'reverse confusion' case, the relevant group to be surveyed is the *senior* user's customer base." [Emphasis in original.] McCarthy, J.T. (2020). *McCarthy on Trademarks and Unfair Competition, 5th Ed.*, §32:159.

[23] "[B]oth companies market their products to the general public." *IYO, Inc. v. IO Products, Inc., et al.*, No. 25-4028 (9th Cir. 12/3/2025) (mem.), p. 5.

[24] Barber, William G. (2012). "The Universe," in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design*, Diamond, S.S. and Swann, J.B., eds., American Bar Association, p. 29.

**Study Design**

28. This study employed a rigorous design using a test vs. control format, incorporating both internal and external controls. The test vs. control study design is used to determine the impact of a variable of interest above and beyond the baseline level of impact of extraneous variables in the marketplace.[25]

    *Methodology*

29. In this case, Plaintiff has alleged reverse confusion among relevant consumers related to the Defendants' allegedly infringing use of IO in furtherance of its development of AI consumer electronics products. Trademark commentator Jacob Jacoby explains reverse confusion as follows:

> Reverse confusion describes circumstances where a relatively well-known second comer enters the marketplace with goods or services whose marks(s) or trade dress are alleged by a lesser known first comer to be confusingly similar to its own mark(s) or trade dress. Under these circumstances, the first comer argues that the second comer's use of its mark is likely to lead those who come into contact with the first comer's mark to mistakenly believe that the second comer either is the source of the first comer's goods, or has authorized the first comer to sell its goods, or that there is some kind of business connection or affiliation between the two parties.[26]

30. Thus, I designed a study to test for reverse confusion among consumers within the relevant market. The specific survey design employed in this study is a standard variation of the *Squirt*[27] survey, known as a sequential (or two-room[28]) lineup study.[29] Taking its name from the case in

---

[25] "By adding one or more appropriate control groups, the survey expert can test directly the influence of the stimulus." Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 398.

[26] Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, pp. 290-291.

[27] *SquirtCo v. Seven-Up Co.*, 628 F.2d 1086, 1089 n.4, 1091 (8th Cir. 1980).

[28] In this context, "room" does not necessarily refer to two physical rooms, but a methodological design wherein one study stimulus is displayed to respondents (commonly, and in this study, in the online environment; first "room") and is then removed from view before respondents are exposed to additional study stimuli (second "room").

[29] Swann, J.B. (2022). "Likelihood-of-Confusion Surveys." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. and Swann, J.B., eds., American Bar Association, p. 66.

which it was first used,[30] the *Squirt* format places respondents into a marketplace scenario by exposing a unique group of survey respondents—i.e. the Test Cell—to stimuli showing the contested marks (often, and in this case, through sequential presentation), and measuring the extent to which consumers believe the products or services using the Defendants' and Plaintiff's marks originate from the same or affiliated companies, thereby gauging consumer confusion.

31. A separate, unique group of survey respondents—the Control Cell—is exposed to an alternative and/or modified control stimulus which shares as many characteristics as possible with the test stimulus but for any contested allegedly infringing elements (i.e., the "external control").[31] As in the test cell, measurements are taken to determine the extent to which respondents believe the products or services using the external control mark and the Plaintiff's mark originate from the same or affiliated companies.

32. The findings between the Test and Control Cells are compared to determine whether and to what extent the Test Cell confusion exceeds the Control Cell confusion (i.e., "noise," discussed below), thus resulting in a "net" likelihood of confusion measurement. When conducting this net calculation, a threshold for the determination of likelihood of confusion has been cited at approximately 15 percent.[32]

33. "Internal" controls (discussed below) can also be employed to provide additional support and context to the main confusion results and to help to accurately replicate the marketplace experience.

34. In this study, all Test Cell respondents were first exposed to an image depicting use of the Defendants' contested IO brand with a description of the anticipated category of goods for which it will be used. After viewing an array of images of website landing pages of several competing AI consumer electronics products (including IYO, discussed below), respondents were presented with a variety of questions to determine whether they mistakenly believe IYO to

---

[30] *Squirtco v. Seven-Up Co.*, 628 F.2d 1086, 1089 n.4, 1091 (8th Cir. 1980).

[31] Jacoby, J. (2002). "Experimental Design and the Selection of Controls in Trademark and Deceptive Advertising Surveys." *The Trademark Reporter,* Vol. 92, No. 4, p. 918.

[32] "It is important not to lose sight of the fact that the essential consideration is not the magnitude of the [findings], but whether, when the control percentage is subtracted from the test percentage, the 'net' exceeds 15 percent." See Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 911.

be the same company as, associated with, or sponsored by IO (discussed in detail in Questionnaire section below).

35. Respondents in the Control Cell were administered the same survey questions as Test Cell respondents; however, Control Cell respondents did not view the Defendants' IO brand, but rather a fabricated brand which served as the study's control stimulus. A control stimulus is designed to measure the baseline level of consumer confusion within the marketplace that is *not* associated with trademark confusion. Such baseline confusion is sometimes referred to by marketing researchers as "noise." In this study, the noise level represents the extent to which consumers mistakenly believe that the non-infringing control brand is from the same company or is somehow affiliated with or sponsored by the Plaintiff for reasons other than trademark similarity.

36. In this study, I modified the Defendants' contested "IO" brand to "UE" to serve as the control. The fabricated UE brand serves as an ideal control in this matter because it retains as many characteristics as possible with the test brand (e.g., two-letter format, both vowels, same category of goods description) without itself being infringing.[33] The test and control stimuli are shown in the "Stimuli" Section below and are available at Exhibit 3.

37. The control used in this study—UE—properly shared a variety of characteristics with the contested IO brand but is not considered infringing upon the Plaintiff's claimed trademark rights. Thus, the control product isolates the trademark components that are at issue in this case and acts as an appropriate control measure.

38. Two third-party, AI consumer electronics products—Meta AI glasses[34] and Humane AI pin[35]— were also shown to respondents as internal controls. Internal controls, which are shown to respondents in addition to the primary stimuli of interest, are another means of assessing noise within the product category. The internal controls were presented with the Plaintiff's page as part of an array to convey to the respondent that a range of AI consumer electronics products may be available within the relevant market. The internal controls are all wearable AI

---

[33] "In designing a survey-experiment, the expert should select a stimulus for the control group that shares as many characteristics with the experimental stimulus as possible, with the key exception of the characteristic whose influence is being assessed." See Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 399.

[34] https://www.meta.com/ai-glasses.

[35] https://web.archive.org/web/20250327122741/https://humane.com.

electronics products, but neither use branding that could be considered infringing upon the Plaintiff's IYO Mark. The survey stimuli as viewed by respondents are shown in the "Stimuli" section below and are available at Exhibit 3.

39. A *Squirt* survey is the most appropriate survey format in this case. As noted by commentator Jerre Swann, the stimuli in a *Squirt* survey "should be directly competing or complementary goods/services with identical or substantially overlapping consumers—i.e., the stimuli *proximately* tested in the format should appear or be encountered by consumers in physical or temporal *proximity* in the marketplace"[36] [emphasis in original]. Here, both parties have made announcements to their potential customers regarding the same type of product, namely screenless computing devices that allow natural interaction with AI.[37] The *Squirt* survey format simulates marketplace use of the Parties' brands and therefore represents a reasonable approximation of the market environment for these brands. If confusion were to occur as the Plaintiff has alleged, it would occur in the type of exposure environment that this survey simulates.

### Stimuli

40. Figure 2 below shows the test stimulus and external control stimulus that were used in the study. Because the Defendants have not yet brought a product to market, the test stimulus shows only the Defendants' brand name—i.e., IO—and a description of the anticipated category of goods. The external control stimulus is identical with the exception of the brand name—UE.

---

[36] Swann, J.B. (2012). "Likelihood of Confusion," in *Trademark and Deceptive Advertising Surveys,* Diamond, S.S. and Swann, J.B., eds. American Bar Association, p. 54.

[37] See Footnote 7. See also, *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) (goods are related when they are complementary, sold to the same class of purchasers, or similar in use and function); *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1163 (9th Cir. 2021) (Plaintiff "need not establish that the parties are direct competitors to satisfy the proximity or relatedness factor.").

Keegan & Donato Consulting, LLC                                                      Page 13

*Figure 2. Test and External Control Stimuli (reduced scale)*



41. The Plaintiff's IYO mark as used in the survey is shown in Figure 3 below. This stimulus was displayed to all respondents and presented the Plaintiff's IYO mark as it is used in the marketplace.

[THIS SPACE INTENTIONALLY BLANK]

*Figure 3. Plaintiff's Product[38] (reduced scale)*



---

[38] https://www.iyo.ai.

42. Two third-party, non-infringing AI consumer electronics products that function (or functioned) as competitors in the market were shown to respondents as internal controls.[39] Internal controls provide respondents with marketplace context, showing that a range of products (*not* just the Plaintiff and Defendants) may operate within the relevant market. The internal control products (Meta AI glasses and Humane AI pin) were selected as ideal controls because they share many characteristics with the broader market of AI consumer electronics products (including the products being developed by the Parties) without themselves infringing on the Plaintiff's IYO Mark. The internal controls are shown in Figures 4 and 5 below.

[THIS SPACE INTENTIONALLY BLANK]

---

[39] For a discussion of internal controls of the type employed in this study, see Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 249: "Questions are not the only survey elements that can serve a within-group or internal control function. Think of trademark surveys that involve product arrays where the test stimulus is shown within the array along with noninfringing control products or packages." See also, Rappeport, M. (2012). "Design Issues for Controls." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design*. Diamond, S.S. and Swann, J.B., eds., American Bar Association, pp. 236-237.

Keegan & Donato Consulting, LLC                                    Page 16

*Figure 4. Internal control stimulus - Meta AI glasses[40] (reduced scale)*



*Figure 5. Internal control stimuli - Humane AI pin[41] (reduced scale)*



43. The Internal control products are similar in type to the Parties' products but do not make use of the IO branding that underlies the Plaintiff's claims of infringement. The internal and external control exposures used in my study are shown in Figure 6 below (the full product stimuli as used in the study are available at Exhibit 3).

---

[40] https://www.meta.com/ai-glasses.

[41] https://web.archive.org/web/20250327122741/https://humane.com.

*Figure 6. Study design - Internal and External Control exposures*



44. The internal controls also serve as distracter stimuli. As noted by Jacoby, distracter stimuli are "stimuli used either for diluting the respondents' attention with the expectation that this will lessen the chances they will be able to discern (or prematurely discern) the test stimulus that is the focus of the investigation, [and/or] for generating a level of distraction more comparable to the marketplace experience."[42] Thus, the use of distracter stimuli helps to ensure a realistic

---

[42] Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 500.

simulation of a potential marketplace within the survey environment and serves to reduce biases in data collection.

**Data Collection**

45. This survey was completed through online interviewing via the Internet. Online interviewing is the dominant data collection method used in marketing research today.[43] Data collection for this study took place in January 2026.

46. The sample for this project was provided by the Prodege consumer panel.[44] Prodege is a leading provider of online sample for research projects in the U.S. and across the globe. Prodege maintains an actively managed online panel of millions of consumers. Prodege employs and enforces a range of policies and procedures to ensure "panel health"—i.e., that the panel is representative (i.e., balanced to the U.S. Census) and that respondents provide honest and accurate answers to questions. Additional panel health protocols include double-opt in registration, digital fingerprinting, respondent verification, device verification, CAPTCHA software, mobile verification, and third-party validation, among others.[45]

47. The Prodege consumer panel sample frame is large and diverse with minimal risk of coverage and sample bias. Comprehensive intake interviewing facilitates accurate pre-targeting on a broad range of demographic and psychographic variables in accordance with the particular sampling criteria for any given study.

48. Prodege is an industry leader in providing respondents for marketing research at all levels, from Fortune 500 marketing departments to specialty consulting projects, including marketing research for litigation. I have personally used Prodege as a sample provider for many consumer research studies. I am familiar with the panel health procedures employed by Prodege and am satisfied that it provides high quality, representative respondents. The Prodege consumer panel constituted the sampling frame of my study.

---

[43] *Global Market Research 2025: An ESOMAR Industry Report,* pp. 38, 105-109, 176-177.

[44] https://www.prodege.com.

[45] *Prodege 2023 Panel Book,* p. 4. Available at: https://www.prodege.com/newsroom.

49. Per my instructions, Prodege implemented a national deployment using a balanced start (i.e., geographically representative outgo), click balancing,[46] and natural demographic fallout.[47] This resulted in a nationally representative sample of relevant consumers that is projectable to the broader population of purchasers within the relevant market (see Sample Characteristics section below).

50. Respondents accessed the survey via an electronic invitation sent by Prodege. The survey URL was embedded with a unique respondent ID that ensured that each respondent could only complete the survey one time. As is customary in marketing research, including consumer surveys for litigation, respondents who qualified and completed the survey received a monetary reward or rewards points—i.e., incentive—from Prodege. Receipt of the incentive was not dependent on any specific answers or opinions provided by the respondent.

51. The survey was programmed using an industry-leading online survey product platform utilizing custom code integration. All survey programming was performed by Keegan & Donato Consulting. The survey platform supports the programming and execution of advanced survey designs, custom coding, complex skip logic, and advanced rotation and randomization of questions, answer options, and stimuli, which facilitates neutral, non-leading presentation of the survey's questions and answer options to respondents. All such options were implemented wherever appropriate.

52. In accordance with standard marketing research practice, I collected a small number of responses and then paused fielding of the survey to review the data and ensure proper survey administration through the online software platform. This step fulfills the function of a soft

---

[46] Click balancing is the process of ensuring that individuals who click on the survey link (not to be confused with those who qualify for and complete the survey) are representative of the target population. More specifically, click balancing is "a form of sample matching that partially corrects for selection and nonresponse bias by insisting that those beginning the screening process match some predefined demographic characteristics (generally census representation) while not making firm assumptions about the demographics of the post-screened sample. This method, implemented by panel providers, involves real-time monitoring of the attributes of respondents who are actually clicking on the invitation to begin the study." See Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association, p. 310.

[47] The screener portion of the survey's questionnaire confirmed that the study sample consisted of users of high-end personal electronic devices with input in the purchase decision. Potential respondents who did not meet this requirement were terminated, resulting in natural fallout. As such, the demographic characteristics of the survey sample are reflective of the natural composition of participants within this market.

launch (also known as a pilot or pre-test).[48] The soft launch confirmed that the survey instrument was functioning properly and that respondents showed no signs of having difficulty understanding or completing the questionnaire. Accordingly, I proceeded to re-launch data fielding and complete data collection.[49]

**Bias Management**

53. The survey employed various measures to ensure data integrity and minimize biases in data collection.[50] All efforts were made to present the survey questions in an objective, unbiased, and non-leading format. Respondents were instructed not to guess and were presented with a "don't know" or equivalent answer option wherever appropriate throughout the survey to minimize guessing.

54. The respondents' web browser's "back" button was disabled during the survey. This ensures that the survey collected respondents' present, unbiased opinions regarding the trademarks being compared because respondents were unable to change previous answers based on information gained later in the survey.

55. It is common in consumer survey research, both for litigation and more broadly, for the researcher to employ various types of randomization of questions and answer options across respondents. Randomization is an important tool that researchers use to minimize the potential for order bias (i.e., order effects) to impact the study's results. Order bias refers to a respondent's tendency to select the first answer in a given list of answer options regardless of the question content[51] or answer the first question in a series of questions differently than later questions.[52] In this study, randomization was employed wherever possible to minimize the potential for order bias.

---

[48] Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, pp. 388-389.

[49] The pre-test data is incorporated into the final data. All study data is provided at Exhibit 6.

[50] "Attention, honesty, and quality checks should appear throughout the survey to ensure respondent integrity and data quality." See Hair, Jr., J.F., et al. (2024). *Essentials of Marketing Research, 6th Ed.,* McGraw Hill, pp. 225-226.

[51] Visser, P. S., Krosnick, J. A., & Lavrakas, P. J. (2000). Survey research. In H. T. Reis & C. M. Judd (Eds.), *Handbook of Research Methods in Social and Personality Psychology*. Cambridge University Press, p. 240.

[52] See Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 396: "To control for order effects, the order of the questions and the order of the response choices in a survey should be rotated, so that, for

56. Masking items were used throughout the survey. Masking items are used in surveys to obscure the intended purpose of a question from the respondent, thereby reducing biases in the data.[53] A variety of answer option masking items were included throughout the questionnaire wherever appropriate to prevent the sample from being tainted.[54]

57. Distractor questions were also employed to minimize biases in data collection. Distractor questions are designed to elicit objective responses by obscuring the subject matter of the survey from the respondent and generating a pause comparable to an actual marketplace experience.[55] In designing these questions, it is "important to make sure the distractor [question] does not prime any feature or concept relevant to the study."[56] My study included two distractor questions: (1) "If you know, approximately how often do you shop for personal electronics?"; and (2) "When you shop for electronics, who do you typically shop for?" Both distractor questions probed respondents on behaviors unrelated to the trademark issues of interest.

58. The final data was examined to ensure data integrity. First, I reviewed the open-ended survey data for low-quality responses, which are not reflective of actual consumer opinions and therefore introduce biases into the data.[57] Based on this criterion, a total of 55 respondents were removed from the sample.

---

example, one-third of the respondents have Product A listed first, one-third of the respondents have Product B listed first, and one-third of the respondents have Product C listed first. If the three different orders are distributed randomly among respondents, no response alternative will have an inflated chance of being selected because of its position, and the average of the three will provide a reasonable estimate of response level."

[53] Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, pp. 708-709; Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association, p. 304.

[54] For example, in this case, masking takes the form of filler answer options that conceal the item of interest. Masking was employed for all questions in the screener and main questionnaire where applicable.

[55] Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association, p. 304; Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 708.

[56] Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association, p. 312.

[57] "Survey experts should review [open-ended] responses and generally exclude from the sample any respondents who repeatedly provide purely gibberish responses, such as 'asdf,' 'qwerty,' or actual words that

59. I also examined the data to identify "speeders," who are respondents who complete the survey too quickly. Speeders may introduce respondent-related error into the survey data. Respondents were flagged if they completed the survey in less than one-third of the median completion time across all respondents in the sample.[58] Nine respondents were removed from the sample based on this criterion.

60. An attention filter question asked respondents to type the word "green" into a text box to ensure that participants were devoting sufficient attention to the survey task at hand. Respondents who failed to complete this exercise successfully were to be flagged for removal from the data set. Conducting this exercise revealed that no respondents in the study sample failed to complete the attention filter correctly. As such, no respondents were removed from the sample based on the attention filter.

61. Finally, the online survey software platform employs various fraud detection measures to reduce the potential for bots and other automated respondents from participating in the study.[59] These measures include a CAPTCHA question, which all respondents were required to complete at the outset of the survey, as well as tracking to detect potential duplicate and/or fraudulent responses. A total of 15 respondents were removed from the sample based on the fraud detection measures.

62. All responses removed from the data set for data integrity reasons are provided at Exhibit 6.

63. The study was conducted under "double blind" conditions—neither the panel provider nor the survey participants knew the purpose of the study or the sponsoring party. Double blind

---

have nothing to do with the question asked ('good' and 'good survey'). This particular check is non-negotiable; it measures attention regarding the most important questions in the survey. If the participant's attention has drifted here, then their answers on the critical questions are likely to be meaningless." See Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association, pp. 302-303.

[58] Less than one-third of the median completion time is the industry standard for identifying speeders for removal. See, for example, Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in *Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition*. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association, pp. 305-306.

[59] https://www.qualtrics.com/support/survey-platform/survey-module/survey-checker/fraud-detection.

research is designed to prevent external or circumstantial bias from impacting the survey process and results and is the gold standard for consumer surveys.[60]

**Accuracy of Estimate**

64. Consumer surveys typically, as in this case, are designed such that the results are reliable at the 95 percent confidence level.[61] This study consisted of 805 respondents split into Test and Control Cells averaging 402 unique members who qualified for and completed the questionnaire. Samples of this size are associated with a maximum margin of error of ±4.9 percentage points at 95 percent confidence.[62] The full disposition of contacts is provided at Exhibit 7.

65. This survey was conducted using an opt-in non-probability sample,[63] as is standard for trademark surveys used in litigation.[64] Confidence intervals, while technically not applicable to non-probability samples,[65] commonly are calculated by survey experts for non-probability samples[66]—including for trademark surveys[67]—because the confidence interval provides context for interpreting the study's results. I was asked to provide such context for this study.

---

[60] Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, pp. 410-411. See also Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, pp. 819-820.

[61] "Traditionally, scientists adopt the 95% level of confidence, which means that if 100 samples of the same size were drawn, the confidence interval expected for at least 95 of the samples would be expected to include the true population value." See Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 381.

[62] Statistical calculation performed at https://www.surveysystem.com/sscalc.htm.

[63] Diamond, S. (2011). "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 382.

[64] "In the vast majority of instances, and regardless of whether conducted by practitioners or scholarly academicians, social science research relies on nonprobability sampling, not probability sampling." See Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 370, citing Jacoby, J. & Handlin, A.H. (1991). "Non-Probability Designs for Litigation Surveys," *The Trademark Reporter*, Vol. 81, pp. 169-179.

[65] Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 391.

[66] "Technically speaking, the use of confidence intervals applies only to probability samples. That said, practitioners frequently rely on confidence intervals when evaluating findings from well-conducted non-probability [samples] as well." See Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 892 at footnote 45.

[67] Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, p. 892.

**Questionnaire**

66. In consumer surveys, data are collected by means of a questionnaire. In this case, the questionnaire was divided into two parts: a screener portion and the main questionnaire. The full questionnaire is available as Exhibit 3.

67. The screener portion of the questionnaire qualified respondents based on the participation requirements outlined in the "Study Design" section above. Respondents who did not meet the criteria for participation in the survey were terminated.

68. After an instruction page, the main portion of the questionnaire first exposed respondents to either a) the Defendants' contested IO brand (Test Cell); or b) the fabricated UE control brand (Control Cell). In both cells, the brands were presented with the following description of the relevant category of goods: "A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you." Respondents were permitted to view their assigned stimulus for as long as they wished; this stimulus was then removed from view and a question confirming that the respondent could see the image was administered. The first distractor question followed.

69. Next, respondents were presented with an array of AI consumer electronics products. The array included the Plaintiff's product featuring the IYO Mark, as well as two internal control/distractor products that may function as competitors in the same market. The position of the images in the array was randomized for all respondents. The study array was then removed from view and the second distractor question was administered.

70. On the next page, the Defendants' brand (Test Cell) or the fabricated control brand (Control Cell) was again displayed with the instruction, "Please consider again PRODUCT A, the product you saw earlier in this survey, which the manufacturer describes as: "A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you." This was intended to properly orient respondents prior to administration of the likelihood of confusion questions to ensure that the Defendants' brand (i.e., IO) is the reference product to which they were comparing the array brands (including the Plaintiff's IYO brand). All study stimuli as displayed in the questionnaire are available at Exhibit 3.

71. After completing the stimuli exposure portion of the survey, the main questionnaire administered the key study measures gauging respondents' perceptions of likelihood of confusion. Likelihood of confusion was assessed across three component measures: (1) whether the products/brands are put out by the same company; (2) whether the products/brands are affiliated, connected, or associated; or (3) whether the Defendants sponsored or approved the Plaintiff's products/brand.

72. An additional series of questions was administered after the key likelihood of confusion questions to gauge respondents' usage of AI. First respondents were asked to indicate which types of technology they had used in the last three months. For those who indicated that they had used an "AI (artificial intelligence) app, website, or device," a follow-up question asked them to indicate the way(s) that they had used AI in the last three months.

73. The main questionnaire concluded with the attention filter question and several standard demographic questions regarding education level, gender, and household income. The full questionnaire is provided at Exhibit 3.

## Sample Characteristics

74. The sample for this study is nationally representative, providing a robust, projectable overview of the opinions of relevant consumers. Demographic characteristics for the study participants are shown in Table 1 below.

*Table 1. Sample characteristics - demographics[68]*

|  | Test Cell (n=416) % | Control Cell (n=389) % |
|---|---|---|
| *(Base: All respondents)* |  |  |
| ***Age*** |  |  |
| 18 - 30 | 17.3 | 19.8 |
| 31 - 40 | 18.0 | 13.4 |
| 41 - 50 | 14.4 | 18.5 |
| 51 - 60 | 17.1 | 18.5 |
| 61 - 70 | 17.1 | 16.2 |
| 71 or older | 16.1 | 13.6 |

---

[68] Percentages may not add to 100 due to rounding.

| *Education* | | |
|---|---|---|
| Less than high school | 1.9 | 1.8 |
| High school graduate | 19.2 | 18.3 |
| Technical school or training | 2.6 | 4.1 |
| Some college | 18.0 | 15.9 |
| 2-year college degree | 11.1 | 10.5 |
| 4-year college degree | 33.4 | 29.0 |
| Master's / Professional degree | 12.3 | 18.0 |
| Doctorate or equivalent | 1.2 | 2.1 |
| Prefer not to answer | 0.2 | 0.3 |
| *Household income* | | |
| Under $35,000 | 19.5 | 12.9 |
| $35,000 - $49,999 | 16.1 | 18.0 |
| $50,000 - $74,999 | 19.7 | 15.9 |
| $75,000 - $99,999 | 17.1 | 17.2 |
| $100,000 - $124,999 | 7.9 | 10.5 |
| $125,000 - $149,999 | 9.6 | 9.8 |
| $150,000 or more | 9.9 | 14.4 |
| Prefer not to answer | 0.2 | 1.3 |
| *Gender* | | |
| Male | 45.4 | 46.0 |
| Female | 54.6 | 54.0 |
| Non-binary or other | 0.0 | 0.0 |
| Prefer not to answer | 0.0 | 0.0 |
| *Region* | | |
| South | 38.2 | 39.8 |
| Northeast | 22.8 | 21.1 |
| Midwest | 16.1 | 14.7 |
| West | 22.8 | 24.4 |

## Results & Analysis

75.  In the Test Cell (Defendants' IO brand vs. Plaintiff's IO Mark), a total of 62.3 percent of study respondents indicated a belief that the Defendants' and the Plaintiff's products are from the same company; that the Defendants' products are affiliated, connected, or associated with the Plaintiff; or that the Defendants' products are sponsored or approved by the Plaintiff. In the Control Cell, (Control UE band vs. Plaintiff's IO Mark), 38.3 percent of respondents answered in the same way: i.e., they indicated a belief that the external controls and the Plaintiff's products are from the same company; that the external controls are affiliated, connected, or

Keegan & Donato Consulting, LLC                                   Page 28

associated with the Plaintiff; or that the external controls are sponsored or approved by the Plaintiff. A summary of the study results is presented in Table 2 below.[69]

*Table 2. Study findings - likelihood of confusion measurement*

| | Test Cell (IO) | | | Control Cell (UE) | | |
|---|---|---|---|---|---|---|
| (Base: All Respondents) | IYO (n=416) % | Humane (IC) (n=416) % | Meta (IC) (n=416) % | IYO (n=389) % | Humane (IC) (n=389) % | Meta (IC) (n=389) % |
| Same company | 46.6 | 30.8 | 25.7 | 28.0 | 30.1 | 23.7 |
| Affiliated, connected, or associated | 12.5 | 9.9 | 8.9 | 8.0 | 6.2 | 7.2 |
| Sponsored or approved | 3.1 | 2.2 | 3.1 | 2.3 | 2.1 | 4.4 |
| **Total: same/affiliated/ sponsored** | **62.3** | **42.8** | **37.7** | **38.3** | **38.3** | **35.2** |
| Not same/affiliated/ sponsored | 18.0 | 32.2 | 38.2 | 30.8 | 30.1 | 37.3 |
| Don't know / No opinion | 19.7 | 25.0 | 24.0 | 30.8 | 31.6 | 27.5 |

76. It is standard practice in a survey design of this type to deduct or "net" the control findings from the test findings,[70] as the control findings establish the level of noise within the marketplace (i.e., consumer confusion *not* attributable to trademark confusion). As shown in Table 3 below, deducting the total confusion finding for the external control stimulus (i.e., UE, 38.3 percent) from that of the test stimulus (i.e., IO, 62.3 percent) accounts for marketplace noise, thereby yielding a net likelihood of confusion measurement of 24.0 percent. This net confusion finding, which isolates consumer confusion attributable to potential similarities between the compared trademarks, exceeds the threshold that is typically viewed as evidence of a likelihood of confusion among relevant consumers.[71]

*Table 3. Net likelihood of confusion calculation - external control*

| Test Confusion | | External Control Confusion | | Net Confusion |
|---|---|---|---|---|
| 62.3% | – | 38.3% | = | **24.0%** |

[69] Percentages may not add to 100 due to rounding.

[70] Jacoby, J. (2013). *Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys*, American Bar Association, pp. 910-911.

[71] Ibid.

77. As a secondary means of evaluating likelihood of confusion, the Test Cell IO finding can be compared to the internal control findings. The internal control results also support a finding of likelihood of confusion between the Defendants' IO brand and the Plaintiff's IYO Mark. Together, the internal control findings shown at Table 2 above establish average marketplace noise at the level of 38.5 percent,[72] which comports with the noise measurement established using the External Control (i.e., 38.3 percent). Again, it is necessary to net the internal control findings from the test findings to arrive at the relevant net measure of consumer confusion, as shown in Table 4 below.

*Table 4. Net likelihood of confusion calculation - internal (third-party) controls*

| Test Confusion | | Internal Control Confusion | | Net Confusion |
|---|---|---|---|---|
| 62.3% | – | 38.5% | = | **23.7%** |

78. Table 4 shows that deducting the average internal control confusion measurement (average of the third-party controls, 38.5 percent) from that of the test stimulus (Defendants' IO brand, 62.3 percent) yields net confusion of 23.7 percent for the internal controls. Again, this net confusion finding isolates consumer confusion attributable to potential similarities between the compared trademarks and exceeds the threshold that is typically viewed as evidence of a likelihood of confusion among relevant consumers.

79. The internal control findings (23.7 percent likelihood of confusion) are nearly identical to the external findings (24.0 percent likelihood of confusion). As such, the internal control findings both support the main likelihood of confusion finding that appears at Table 2 above and confirm that there is a likelihood of confusion among relevant consumers resulting from the alleged similarity between IO and IYO. Moreover, the consistency of the internal control findings (ranging from 35.2 percent to 42.8 percent) is evidence of the internal validity of the control choices and confirms their appropriateness with regard to the study design.

80. A review of the open-ended responses[73] provided by study participants offers supporting evidence that the consumer confusion observed between the Defendants and the Plaintiff is

---

[72] This average is reflective of the mean of all four internal control measurements.

[73] "Often, an examination of the respondents' verbatim responses to the 'why' question are the most illuminating and probative part of a survey, for they provide a window into consumer thought processes in a

materially driven by the contested trademark issues being litigated in this matter—namely, the alleged similarity of the Defendants' IO brand to the Plaintiff's IYO Mark.[74] Examples of such responses are shown in Table 5 below.

*Table 5. Exemplar open-ends - "Same company" - IO vs. IYO*

| Respondent ID | "What makes you say that?" (Verbatim Response) |
|---|---|
| R_56bacWE9dQP9o4h | Because it's got the same two letters as what was shown before |
| R_5HnI6O38sF97QP7 | Because the FIRST product shown was "io," which is similar in name to the product shown above. |
| R_7LWkFUr3LgfsZhL | I say that the product shown is put out by the same company as Product A because of the io. |
| R_7qqIUzpkkq3I2cz | I think its got the iO thing from the beginning. its a derivation, but i think thats purposeful. |
| R_1rBYCIRZxIhZb3i | It has the same logo except for the "Y". |
| R_3ExnQln3xVick7L | It has the same usages of letters involved as product A |
| R_3xEooIYRQk6D3qh | It is blatantly obvious it says the same brand name as the previous one. IyO |
| R_70UJFvypoAeu9aP | Its the same logo |
| R_3fa93yS6UZgyncn | name and branding |
| R_6ayJLK090w9MCwd | Product a is io and the name of this product is, different spelling of the same word io. |
| R_58JSM0ksdq21ahP | Product A was shown as "io". It's possible that this is a specific product from that brand. |
| R_1TsGjQRorOIHlZl | same letters in logo |
| R_1ZNDxVH2LI0kKNq | Same product brand title |
| R_38G4wmkW0G6j8IG | Seems to have the same logo. |
| R_5tz0UPQROFmSCa7 | Similar name |
| R_5v1cN4nwpMK3f9g | similiar name could be possibly connected |
| R_5MmuQQfzrxSX2E1 | tgey have the same name |

---

way that mere statistical data cannot." See McCarthy, J.T. (2020). *McCarthy on Trademarks and Unfair Competition, 5th Ed.*, §32:175.

[74] See Exhibit 5 for a full listing of open-ended responses.

| | |
|---|---|
| R_1q8HWsiU4wCn3Vg | the brand is the same as product A brand |
| R_6IobJWjvob9AJIP | The branding |
| R_7HeiA2dxeSBxDyN | The brands are the same |
| R_3I7f6Pzlew94kXK | The common name IyO |
| R_1aJ3fUcUkhq6aTQ | The I is only separated by the O by a y |
| R_39iKHXpNPFDy5ZT | the io in the name |
| R_5t54ZwuUn56ALne | The logo design seems very similar. |
| R_3hgUB2856hdSjtf | the logo looks similar |
| R_348Kj8aKGUI1y1d | The logos are the same |
| R_5knBBW7WIzPHN12 | The name iy0 |
| R_5r03BP9QN95EGJm | The names of the products are too similar. |
| R_5yGwIt0lf6tXcg9 | The names of the two products that are displayed are identical, and This leads me to believe that the same company is behind both products. |
| R_5dKbkSiYOQkrE86 | The naming convention is very similar so for me, I would associate the two. |
| R_5HIGRCaXBLJVq9R | The only reason I think it is would be because the logos are very similar. |
| R_6PjIr1opysRT7PI | The product A displayed "IO" and this has "IyO", keeping I and O, making me think they are affiliated in some way |
| R_6pJWILDILACMkwV | The statement from product A And the intials are about the aame |
| R_1Jq36r5IogBLCKv | The use of io in product names |
| R_3efwJOIU2uLYv18 | they bear the same name |
| R_6M6I0Si6WWOnQtt | They both have a similar brand name |
| R_5hmnSdpS4q8Nz9v | They have similar names of IO and iYO. It is also an AI product which that company produces |
| R_5H0FWHTbNy0gZm8 | They have some of the same letters |
| R_33sEQ3ZyBXdrAnJ | This product has a similar name to the other product. |
| R_7rrzhEQcNaK1m73 | tite brand name is similar. so i assume they are the same company |

| R_7EIW20Aj9mpi1hK | Well Product A had the letters IO. The only thing missing was the y and the font of the words look similar. |
|---|---|
| R_5kIGWpOc1GziPPv | yes it is the same company that shows the same logo |

81. Following the administration of the likelihood of confusion questions, the survey instrument also asked respondents additional questions to gauge their usage of AI. These questions were intended to provide information regarding the incidence of AI usage among the survey sample.[75] As shown in Table 6 below, nearly the entire study sample—95.0 percent of respondents—indicated that they had used AI or had used technology that incorporates AI (i.e., an AI app and/or an Internet search engine) in the last three months.[76] Thus, this finding shows that AI usage is nearly ubiquitous across study respondents.[77]

[THIS SPACE INTENTIONALLY BLANK]

---

[75] Because AI usage was not a requirement for participation in the study, these questions were administered at the end of the questionnaire (following the likelihood of confusion questions) to avoid any potential conditioning or biasing of the survey participants.

[76] The other types of technologies listed in Table 6 also make use of AI (either with or without the user's knowledge). It is therefore likely that the proportion of AI users in the sample is even greater than 95.0 percent.

[77] A review of the survey data shows no material differences in how AI technology users answered the key study measurements compared to non-users (i.e., the results held between the two groups), rendering discussion of the respective sub-sample findings unnecessary.

*Table 6. Technologies used in the last three months[78]*

| (Base: All Respondents) | (n=805) % |
|---|---|
| **AI users (net) (AI app, website, or device and/or Internet search engine)** | **95.0** |
| Internet search engine (e.g., Google, Bing) | 91.7 |
| Smartphone / tablet | 90.2 |
| Music streaming service (e.g., Apple Music, Spotify) | 62.2 |
| AI (artificial intelligence) app, website, or device | 51.7 |
| Internet chat bot / automated customer service | 39.6 |
| Smart appliance (e.g., TV, washer, refrigerator) | 38.1 |
| Wearable fitness tracker | 33.5 |
| Cloud computing / storage software | 30.8 |
| None of these | 0.2 |
| Don't know / No opinion | 0.4 |

82. Among those who indicated that they had used an AI app, website, or device within the last three months (n=416), usage across a wide range of AI applications was reported, as shown in Table 7 below.

*Table 7. Types of AI technologies used in the last three months[79]*

| (Base: Reported using AI technology in last three months) | (n=416) % |
|---|---|
| Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) | 81.3 |
| Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) | 77.9 |
| Chat bot / virtual customer assistance | 52.6 |
| On-device voice assistant (e.g., Apple Siri) | 43.0 |
| Voice-controlled home assistant (e.g., Google Alexa) | 42.8 |
| Predictive text / writing assistant | 35.6 |
| Photo / video editing | 32.0 |
| Meeting transcriptions / summaries | 14.9 |
| None of these | 0.2 |
| Don't know / No opinion | 0.0 |

---

[78] Multi-select multiple choice question (percentages do not add to 100 percent).

[79] Ibid.

83. As evidenced by the survey findings presented above, a material proportion of relevant consumers who viewed the Defendants' IO brand and the Plaintiff's IYO Mark selected responses that exhibited a likelihood of confusion between the Parties. This consumer confusion is attributable to the perceived similarity between the Defendants' allegedly infringing IO brand and the Plaintiff's IYO Mark. Because this study design employed rigorous controls which held extraneous variables constant, the net confusion exhibited between the Parties is directly attributable to the contested trademark issues of likelihood of confusion and infringement being litigated in this case.

## Conclusions

84. The results of this study of 805 respondents show that the primary net confusion measure—24.0 percent—exceeds the threshold that is typically viewed as evidence of a likelihood of confusion among relevant consumers.

85. Because the survey design employed appropriate and rigorous controls which account for extraneous variables, the net likelihood of confusion measurements reported herein are directly attributable to the contested trademark allegations of likelihood of confusion and infringement at issue in this matter.

86. The survey conducted in this case was designed and executed in accordance with accepted standards of survey research. All findings and conclusions are presented with a reasonable degree of certainty.

87. Keegan & Donato Consulting, LLC reserves the right to supplement and revise this report and the opinions expressed herein based on the availability of new information.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of February, 2026, at Rye, New York.

Mark Keegan

**Exhibit 1—About Keegan & Donato Consulting, LLC**

KEEGAN_EXHIBITS_1



31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## Mark T. Keegan, Esq.

**Partner, Keegan & Donato Consulting, LLC**

**Education**

§ Principles of Market Research Program, University of Georgia (graduated 2021)

- Post-graduate program for industry professionals covering all aspects of the market research process

- Coursework based on the Market Research Core Body of Knowledge (MRCBOK), a compilation of the underlying principles and essential skills that comprise the market research process developed by Market Research Institute International (MRII)

- Certification conferred upon participants who demonstrate mastery of concepts presented in 284 detailed module studies across 13 core areas of market research

- Endorsed by all major market research and insights industry associations, including ESOMAR and the Insights Association

§ Professional Certified Marketer (PCM), American Marketing Association (2015 – present)

- AMA certification for individuals who have demonstrated a mastery of comprehensive and core marketing knowledge and principles

- Designation conferred only upon successful completion of rigorous testing spanning full range of marketing principles and concepts

- Ongoing professional development and education credits required on annual basis

- PCM recipients must have demonstrated professional experience in the field of marketing

§ Juris Doctor, Brooklyn Law School (graduated 1995)

§ Bachelor of Arts, History, Pace University (graduated 1990)

§ MBA Coursework, Pace University, Lubin School of Business (1990 – 1991)

§ Corporate Finance Program, Harvard University (coursework)

**Professional Memberships**

§   Admitted to the Bar in the states of New York and Connecticut

§   Member, ESOMAR (World Association of Opinion and Marketing Research Professionals)

§   Member, International Trademark Association (INTA)

§   Member, American Marketing Association (AMA)

§   Member, American Association for Public Opinion Research (AAPOR)

§   Member, Association for Consumer Research (ACR)

§   Registered Representative, National Association of Securities Dealers (Series 7, expired)

**Current Employment**

§   Keegan & Donato Consulting, LLC, Litigation Consultant, Founding Partner (7/2011 – present)

**Consumer Research Experience**

§   Designed and executed over 1,000 consumer research studies reaching more than 250,000 respondents for corporate and litigation clients over the course of two-decade career

§   Focus on trademark and marketing research with principal areas of study including consumer confusion, trade dress, dilution, secondary meaning, genericness, false advertising, consumer perception, consumer understanding, and other consumer research issues

§   Represented a mix of both plaintiffs and defendants in litigation matters spanning a broad range of products, services, and industries

§   Submitted survey research expert reports in relevant venues including federal courts, state courts, at arbitration, to the National Advertising Division of the Council of Better Business Bureaus, and to the Trademark Trial and Appeal Board

§   Founder and owner of two successful marketing and consumer research consulting firms

§   Regularly testify to consumer behavior research, findings, and related issues at trials, depositions, hearings, and other proceedings

§   Qualified to testify as an expert in the field of marketing and consumer survey
    research at federal court trials:

- *ImprimisRx, LLC. v. OSRX, Inc. and Ocular Science, Inc.*, United States
  District Court, Southern District of California, the Honorable Cynthia
  Bashant presiding

- *Van Leeuwen Ice Cream, LLC v. Rebel Creamery, LLC*, United States
  District Court (Eastern District of New York), the Honorable Eric R.
  Komitee presiding

- *Top Brand LLC, et al. v. Cozy Comfort Company LLC, et al.*, United
  States District Court (District of Arizona), the Honorable Steven P. Logan
  presiding

- *S10 Entertainment & Media, LLC v. Samsung Electronics Co., LTD*, U.S.
  District Court (Central District of California), the Honorable Christina A.
  Snyder presiding

- *Stitch, LTD v. TikTok, Inc., et al.* U.S. District Court (Southern District of
  California), the Honorable Stanley Blumenfeld, Jr. presiding

- *BillFloat Inc., d/b/a SmartBiz Loans v. Collins Cash Inc., d/b/a Smart
  Business Funding, et al.*, U.S. District Court (Northern District of
  California), the Honorable Edward M. Chen presiding

- *Bodum U.S.A., Inc. v. A Top New Casting, Inc.*, U.S. District Court,
  Northern District of Illinois, the Honorable Matthew F. Kennelly presiding

- *Coty Inc., et al. v. Excell Brands LLC*, U.S. District Court (Southern
  District of New York), the Honorable Jesse M. Furman presiding

- *Christopher Lewert v. Boiron, Inc.*, U.S. District Court (Central District of
  California), the Honorable André Birotte, Jr. presiding

- *BuzzBallz, LLC v. Jem Beverage Co.*, U.S. District Court (Central District
  of California), the Honorable William D. Keller presiding

§   Qualified as a survey expert by numerous federal court judges (pre-trial)

§   Develop and execute consumer research studies using industry-accepted
    methodologies, cutting-edge technologies, and industry-leading consumer panel
    partners

**Marketing and Other Relevant Experience**

§   Served as a marketing consultant to private clients and have advised on a wide range
of issues including product development and rollout, advertising, consumer feedback
and intelligence, the product life-cycle, and other issues concerning marketing and
marketing research

§   Formulated winning brand positioning strategies as a branding expert for some of the
best-known consumer brands and services including General Electric (GE), Nike,
Pepsi, Subaru, AOL, Excite, NBC, and others

§   Analyzed and evaluated comprehensive marketing campaigns for a broad range of
corporate clients to determine their impact on consumers

§   Evaluated all components of integrated marketing communications including
advertising, public relations, packaging, sales promotions, and point of sale materials,
among others

§   Developed testimony on marketing messages and their intended influence on
consumer understanding and behavior

**Previous Employment**

§   Keegan & Company LLC, Founding Partner (9/2001 – 12/2015)

Designed and executed consumer research studies, conducted complex litigation
consulting, and developed marketing and economic analyses for clients across a range
of industries

§   Information Markets Corp, Program Manager (2000 – 2001)

Managed enterprise-wide marketing and product development. Developed use cases
and conducted consumer market research. Coordinated with multiple partners
including AOL, Excite, and NBC.

§   Affiliation Networks, Inc., Project Manager (1999 – 2000)

Produced online advertising solutions for Fortune 500 clients. Coordinated creative
team of account managers, designers, programmers and copywriters.

§   UpTick Technologies, Marketing Consultant (1999)

Managed the creation of innovative marketing products for large brokerage software
provider

KEEGAN_EXHIBITS_5

§   Cosmos Internet Solutions, Marketing Consultant (1998 – 1999)

Developed marketing strategy for business ISP and hosting provider as well as Web site marketing and development for clients

§   FactSet Research Systems, Product Development (1996 – 1998)

Formulated product and communications strategies for leading integrated financial and economic database provider

§   Warren Keegan Associates, Inc., Marketing Consultant (1992 – 1996)

Marketing consultant to clients across a range of industries. Edited and contributed content to marketing textbooks and other academic marketing publications.

§   BMW of North America, Inc., Graduate Appointment (1991)

Reviewed, analyzed, and cataloged broad-based market research on consumer preferences and attitudes in the automobile industry

**Lectures, Presentations & Publications (Past 10 Years)**

§   *A Practitioner's Guide to False Advertising Surveys*, Guest Lecturer, Cardozo Law School (Course: Advertising Law; Instructor: Olivera Medenica, Esq.), April 2025.

§   *False Advertising: Field Observations*, Guest Lecturer, University of California, Irvine School of Law (Course: False Advertising Law; Instructor: Adam Sechooler, Esq.), January 2025.

§   *Legal Ethics for Counsel in the Fashion Industry*, Panelist, hosted by Federal Bar Association, Intellectual Property Law Section, February 2024. CLE-accredited presentation.

§   *Advertising Law & Survey Evidence: Tales from the Road*, Guest Lecturer, Cardozo Law School (Course: Advertising Law; Instructor: Olivera Medenica, Esq.), Spring 2023.

§   *Squirt vs. Eveready: Battle of the Titans*, 9th Annual Intellectual Property Law Symposium, hosted by The Florida Bar Continuing Legal Education Committee and Business Law Section, April 2018. CLE-accredited presentation.

§   *Panel Power: Online Panel Sampling for Litigation Surveys*, 8th Annual Intellectual Property Law Symposium, hosted by The Florida Bar Continuing Legal Education Committee and Business Law Section, March 2017. CLE-accredited presentation.

§   *Evaluating a Brand's Equity in a Nascent Market*, ESOMAR World Research, The EUREKA's Project: Success Stories of Market Research, 2016.

§  *Consumer Survey Research for Litigation: With Great Data Comes Great Power*, Presentation before the Pennsylvania Bar Association, Intellectual Property Law Group, December 2014.

**Continuing Education**

§  *Targeted Designs to Address Survey Nonresponse* (International Statistical Institute Webinar 56). Presenter: Peter Lynn, Professor of Survey Methodology, University of Essex, UK, 9/24/2025.

§  *Avoiding Consumer Survey Pitfalls at the TTAB*. Presenter: J. Michael Keyes, Consumer Survey Expert, IP Litigation Partner, Dorsey & Whitney LLP, 10/16/2024.

§  *Integrity in Action: Exploring Marketing Ethics*. Moderator: Bennie F. Johnson, CEO, American Marketing Association, 9/28/2023.

§  *Questionnaire Design Best Practices 2: The Art of Question Composition*. Presenter: Jordan A. Levitin, Founding Board Member/Vice Chair, Certified Analytics and Insights Professionals of Canada, 3/22/2023.

§  *Survey-Based Techniques for Optimizing Prices and Products: Overview and Best Practices*. Presenter: Bryan Orme, President, Sawtooth Software, 1/18/2023.

§  *Eureka! The Science and Art of Insight*. Presenter: Andrew Grenville, Chief Research Officer, Maru, 12/8/2022.

§  *Online Sample Fraud: Causes, Costs & Cures*. Moderator: Melanie Courtright, Chief Executive Officer, Insights Association, 2/11/2022.

§  *Quantifying Unjust Enrichment*. Presenter: Shawn Fox, Founding Partner, Fox Forensic Accounting, 10/6/2021.

§  *Questionnaire Design Best Practices*. Presenter: Jeffrey Henning, Chief Research Officer, Researchscape, 5/19/2021.

§  *Making Online Samples More Representative*. Presenter: Andrew Mercer, Senior Research Methodologist, Pew Research Center, 3/17/2021.

§  *Intelligence 360: Solicited + Unsolicited Customer Opinion*, Presenter: Michalis A. Michael, Chief Executive Officer, Digital MR, 2/17/2021.

§  *The Future of Online Polling After 2020*. Moderator: Kathy Frankovic, ESOMAR Professional Standards Committee, 12/16/2020.

§  *The Opportunity for UX Research*. Presenter: Michaela Mora, President, Relevant Insights, 12/8/2020.

KEEGAN_EXHIBITS_7

§   *BigSurv20: Big Data Meets Survey Science*, Online Conference, November/December 2020.

§   *International Trademark Association (INTA), 141st Annual Meeting (2019)*, Attendee, May 2019.

KEEGAN_EXHIBITS_8



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## Mark Keegan Testimony List

### Depositions (Last Four Years)

| Case Caption | Court/Venue | Client |
|---|---|---|
| Therabody, Inc. v. Hyper Ice, Inc. | United States District Court, Central District of California, Southern Division | Defendant |
| General Conference Corporation of Seventh-day Adventists v. The Davidian Seventh-Day Adventist Association | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Plaintiff (Petitioner) |
| Credo Technology Group, Ltd. v. Credo.AI Corp. | United States District Court, Northern District of California | Defendant |
| Kelly Toy Holdings, LLC; Jazwares, LLC, et al., v. Zuru, LLC | United States District Court, Central District of California | Plaintiffs |
| Urban Intelligence, Inc. v. Spring Scaffolding, LLC | United States District Court, Eastern District of New York | Plaintiff |
| NECA LLC and Kidrobot, LLC v. Jazwares, LLC and Kelly Toys Holdings, LLC | United States District Court, District of New Jersey | Defendants |
| International Star Registry of Illinois, Ltd. v. RGifts Limited and Matei Supply Corp. | United States District Court, Northern District of Illinois | Defendants |
| PSI Marine, Inc. v. Seahorse Docking, LLC | United States District Court, District of Connecticut | Plaintiff |
| Inkit, Inc. v. airSlate, Inc. | United States District Court, District of Delaware | Defendant |
| Hyundai Motor Company and Hyundai Motor America, Inc. v. Hyundai Technology Group, Inc., et al. | United States District Court, Northern District of California | Defendants |
| Arik Cohen, et al. v. Copart, Inc. | United States District Court, Central District of California | Defendant |
| Linda Sunderland, et al. v. Pharmacare U.S., Inc., et al. | United States District Court, Southern District of California | Defendants |
| Dialect, LLC v. Amazon.com and Amazon Web Services, Inc. | United States District Court, Eastern District of Virginia, Alexandria Division | Plaintiff |



31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

| Case Caption | Court/Venue | Client |
|---|---|---|
| Diamond Resorts U.S. Collection Development, LLC, et al., v. Wesley Financial Group, LLC, et al. | United States District Court, Eastern District of Tennessee, Knoxville Division | Defendants |
| CAP Barbell, Inc. v. Hulkfit Products, Inc., BalanceFrom, LLC, et al. | United States District Court, Southern District of Texas, Houston Division | Plaintiff |
| Smoot Construction Company of Washington, D.C., Inc. v. The Smoot Corporation, et al. | United States District Court, Southern District of Ohio, Eastern Division | Defendants/ Counterclaimants |
| Doctor's Financial Network, Inc. v. DrDisabilityQuotes.com LLC | United States District Court, District of New Jersey | Defendant |
| Nike, Inc. v. By Kiy, LLC, et al. | United States District Court, Southern District of New York | Defendants |
| General Cigar Company, Inc. v. Empresa Cubana Del Tabaco, D.B.A. Cubatabaco | United States District Court, Eastern District of Virginia, Alexandria Division | Defendant |
| Montiqueno Corbett, et al. v. Pharmacare U.S., Inc. | United States District Court, Southern District of California | Defendant |
| Sazerac Brands, LLC v. Buffalo City Distillery, LLC | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Defendant (Registrant) |
| ImprimisRx, LLC v. OSRX, Inc. and Ocular Science, Inc. | United States District Court, Southern District of California | Plaintiff |
| Tequila Los Abuelos S.A De C.V. (Fortaleza) v. Podlaska Wytwórnia Wódek "Polmos" S.A. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Plaintiff (Opposer) |
| Aman Group, S.à.r.l. v. Aman Spirits LLC, et al. | United States District Court, Central District of California, Western Division | Plaintiff |
| Steven Robert Prescott, et al. v. Reckitt Benckiser LLC | United States District Court, Northern District of California | Defendant |
| S10 Entertainment & Media, LLC v. Samsung Electronics Co., LTD, et al. | United States District Court, Central District of California | Plaintiff |
| Nestlé USA, Inc., et al. v. Ultra Distribuciones Mundiales S.A. de C.V., et al. | United States District Court, Western District of Texas, San Antonio Division | Defendants |
| Stitch, LTD v. TikTok, Inc., et al. | United States District Court, Central District of California | Plaintiff |



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

| Case Caption | Court/Venue | Client |
|---|---|---|
| Van Leeuwen Ice Cream, LLC v. Rebel Creamery LLC | United States District Court, Eastern District of New York | Plaintiff |
| DarkOwl, LLC v. ArkOwl LLC and ArkOwl Corporation | United States District Court, District of Colorado | Defendant |
| Chasom Brown, et al. v. Google LLC | United States District Court, Northern District of California | Plaintiffs |
| BillFloat Inc., d/b/a SmartBiz Loans v. Collins Cash Inc., d/b/a Smart Business Funding, et at. | United States District Court, Northern District of California | Defendants |
| Kenco Bucket Trucks LLC v. Versabucket LLC, et al. | District Court, Harris County, Texas, 113th Judicial District | Defendants |
| EBIN New York, Inc. v. SIC Enterprise, Inc., et al. | United States District Court, Eastern District of New York | Plaintiff |
| Kudos, Inc. v. Kudoboard, LLC, et al. | United States District Court, Northern District of California | Plaintiff |
| Master Inspector Certification Board, Inc. v. Examination Board of Professional Home Inspectors, Inc. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Plaintiff (Petitioner) |
| Solid 21 Inc. v. Richemont North America, Inc. et al. | United States District Court, Southern District of New York | Defendants |
| Watching Time, LLC v. International Watchman, Inc. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Plaintiff (Petitioner) |
| Diamond Resorts U.S. Collection Development, LLC, et al. v. Newton Group Transfers, LLC, et al. | United States District Court, Southern District of Florida, West Palm Beach Division | Defendants |
| Fair Isaac Corporation v. Fido Alliance, Inc. | United States Patent and Trademark Office, Trademark Trial and Appeal Board | Defendant (Applicant) |
| Solid 21, Inc. v. Breitling U.S.A. Inc., et al. | United States District Court, District of Connecticut | Defendants |
| Juul Labs, Inc. v. Eonsmoke, LLC d/b/a 4X PODS, et al. | United States District Court, District of New Jersey | Defendants |
| Restoration Hardware, Inc., et al., v. Bungalow Home, LLC | United States District Court, Southern District of Ohio, Western Division | Plaintiffs |



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

| Case Caption | Court/Venue | Client |
|---|---|---|
| United States of America ex. rel., Yoash Gohil v. Sanofi U.S. Services Inc., et al. | United States District Court, Eastern District of Pennsylvania | Defendants |
| Alo, LLC v. Acadia Malibu, Inc., d/b/a Alo House Recovery Centers, et al. | United States District Court, Central District of California | Plaintiff |
| Farjad Fani, et al. v. Shartsis Friese LLP, et al. | JAMS Arbitration, JAMS Reference No. 1100104777 | Claimants |
| Solid 21, Inc. v. Ulysse Nardin USA Inc., et al. | United States District Court, Southern District of Florida | Defendants |
| The Shoppes at River Station, LLC v. College Park Retail Investors, LLC | Superior Court of Fulton County, State of Georgia | Plaintiff |
| Spartan Chemical Company, Inc. v. Ecolab, Inc. | United States District Court, Northern District of Ohio, Western Division | Plaintiff |

Trials & Hearings (Lifetime)

| Case Caption | Court/Venue | Client | Type |
|---|---|---|---|
| ImprimisRx, LLC v. OSRX Inc. and Ocular Science, Inc. | United States District Court, Southern District of California | Plaintiff | Trial |
| Van Leeuwen Ice Cream, LLC v. Rebel Creamery, LLC | United States District Court, Eastern District of New York | Plaintiff | Trial |
| Top Brand LLC, et al. v. Cozy Comfort Company LLC, et al. | United States District Court, District of Arizona | Defendant/ Counterclaimant | Trial |
| DarkOwl, LLC v. ArkOwl LLC and ArkOwl Corporation | United States District Court, District of Colorado | Defendant | Hearing |
| S10 Entertainment & Media, LLC v. Samsung Electronics Co., LTD | United States District Court, Central District of California | Plaintiff | Trial |
| Stitch, LTD v. TikTok, Inc., et al. | United States District Court, Central District of California | Plaintiff | Trial |
| BillFloat Inc., d/b/a SmartBiz Loans v. Collins Cash Inc., d/b/a Smart Business Funding, et al. | United States District Court, Northern District of California | Defendants | Trial |
| Identity Intelligence Group, LLC v. Rocket Mortgage, LLC | United States District Court, District of Arizona | Plaintiff | Hearing |



**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

| Case Caption | Court/Venue | Client | Type |
|---|---|---|---|
| Amarussein Investments Luxembourg S.a.r.L. v. Signet Jewelers Brands Limited and Sterling Jewelers, Inc. | American Arbitration Association, New York, New York | Respondents | Hearing |
| Bodum U.S.A., Inc. v. A Top New Casting, Inc. | United States District Court, Northern District of Illinois, Eastern Division | Defendant | Trial |
| Coty Inc., et al. v. Excell Brands, LLC | United States District Court, Southern District of New York | Defendant | Trial |
| Christopher Lewert, et al., v. Boiron, Inc., et al. | United States District Court, Central District of California | Plaintiffs | Trial |
| BuzzBallz, LLC v. BuzzBox Beverages, Inc., et al. | United States District Court, Central District of California | Plaintiff | Trial |

Trial Consulting (No Testimony)

| Case Caption | Court/Venue | Client |
|---|---|---|
| Anibal Rodriguez, et al. v. Google, LLC | United States District Court, Northern District of California | Plaintiffs |
| Inkit, Inc. v. airSlate, Inc. | United States District Court, District of Delaware | Defendant |
| Allergan USA, Inc. v. Imprimis Pharmaceuticals, Inc. | United States District Court, Central District of California, Southern Division | Defendant |

**KEEGAN & DONATO**
CONSULTING, LLC

31 Purchase Street, Ste. 3-4
Rye, New York 10580
914.967.9421
www.keegandonato.com

## Mark Keegan – Professional Experience

Mark Keegan brings a wide breadth of experience to Keegan & Donato Consulting, having spent decades formulating case strategies in complex litigation. As a founding partner of Keegan & Donato Consulting, Mr. Keegan has actively consulted on a variety of litigation issues ranging from consumer research for Lanham Act claims to complex marketing strategy and analysis, to intellectual property research and analysis.

Mr. Keegan has over 24 years of experience conducting consumer survey research. Over the course of his career, he has personally conducted over 1,000 consumer surveys reaching more than 250,000 consumers. Many of these surveys have been admitted into evidence in federal courts, state courts, at arbitration, to the Trademark Trial and Appeal Board (TTAB), the National Advertising Division of the Council of Better Business Bureaus, and the United States International Trade Commission. He also has extensive experience as a rebuttal witness.

Mr. Keegan maintains a number of professional certifications and memberships that are directly related to his work as an expert in marketing and consumer research. He is a graduate of the University of Georgia's Principles of Market Research Program, a professional certification program for marketing industry professionals covering all aspects of the survey research process. He is also a Professional Certified Marketer (PCM), an American Marketing Association certification conferred upon individuals who have demonstrated a mastery of comprehensive and core marketing knowledge and principles. Mr. Keegan is an active member of numerous professional organizations including ESOMAR (World Association of Opinion and Marketing Research Professionals), the International Trademark Association (INTA), the American Marketing Association (AMA), and others.

Mr. Keegan has published within his field, has taught CLE-accredited courses on survey research for litigation, and has appeared as a guest lecturer and panelist in both classroom and conference settings. Prior to his work with Keegan & Donato Consulting, Mr. Keegan assisted a diverse range of both large and small companies as a marketing strategist and operations manager.

Education:

J.D., Brooklyn Law School (1995)

B.A., Pace University (1990)

Professional Certifications:

Professional Certificate, Principles of Market Research Program, University of Georgia (2021)

Professional Certified Marketer (PCM), American Marketing Association (2015-present)

**Exhibit 2—Documents Considered**

KEEGAN_EXHIBITS_15



KEEGAN & DONATO
CONSULTING, LLC

**Documents Considered - Robert-Leslie Publishing, LLC v. Macmillian Publishing Group, LLC, et al.**

Court Documents
Declaration of Sam Altman in Support of Defendants' Opposition to Plaintiff IYO, Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction
Declaration of Tang Yew Tan in Support of Defendants' Opposition to Plaintiff IYO, Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction
Defendants' Opposition to Plaintiff IYO Inc.'s Motion for a Temporary Restraining Order and Preliminary Injunction
Memorandum - Appeal from the United States District Court for the Northern District of California
Order Granting Motion for Temporary Restraining Order
Plaintiff IYO, Inc.'s Memo of Points and Authorities in Support of its Motion for a Temporary Restraining Order and Preliminary Injunction
Plaintiff IYO, Inc.'s Reply Memorandum of Points and Authorities in Further Support of its Motion for a Temporary Restraining Order and Preliminary Injunction
Verified Complaint

Legal
15 USC §1125
AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir. 1979)
Ironhawk Techs., Inc. v. Dropbox, Inc., 2 F.4th 1150, 1163 (9th Cir. 2021)
SquirtCo v. Seven-Up Co., 628 F.2d 1086, 1089 n.4, 1091 (8th Cir. 1980)
U.S. Trademark Application Serial No. 98/088,268 (pending)
U.S. Trademark Registration No. 7,409,119

References
Barber, William G. (2012). "The Universe," in Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Diamond, S.S. and Swann, J.B., eds., American Bar Association
Diamond, S. (2011). "Reference Guide on Survey Research," in Reference Manual on Scientific Evidence. Federal Judicial Center/National Academy of Sciences
Global Market Research 2025: An ESOMAR Industry Report
Hair, Jr., J.F., et al. (2024). Essentials of Marketing Research, 6th Ed., McGraw Hill
Jacoby, J. (2002). "Experimental Design and the Selection of Controls in Trademark and Deceptive Advertising Surveys." The Trademark Reporter, Vol. 92, No. 4
Jacoby, J. (2013). Trademark Surveys, Volume 1: Designing, Implementing, and Evaluating Surveys, American Bar Association
Kugler, M.B. and Henn, Jr., R.C., (2022). "Internet Surveys in Trademark Cases." in Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition. Diamond, S.S. & Swann, J.B. (eds.), American Bar Association
McCarthy, J.T. (2020). McCarthy on Trademarks and Unfair Competition, 5th Ed.
Rappeport, M. (2012). "Design Issues for Controls." in Trademark and Deceptive Advertising Surveys: Law, Science, and Design. Diamond, S.S. and Swann, J.B., eds., American Bar Association
Swann, J.B. (2022). "Likelihood-of-Confusion Surveys." in Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition. Diamond, S.S. and Swann, J.B., eds., American Bar Association
Trademark and Deceptive Advertising Surveys: Law, Science, and Design, Second Edition (2022). Diamond, S.S. and Swann, J.B., eds., American Bar Association
Visser, P. S., Krosnick, J. A., & Lavrakas, P. J. (2000). "Survey Research," in H. T. Reis & C. M. Judd (Eds.), Handbook of Research Methods in Social and Personality Psychology. Cambridge University Press    KEEGAN_EXHIBITS_16



**KEEGAN & DONATO**
CONSULTING, LLC

**Documents Considered - Robert-Leslie Publishing, LLC v. Macmillian Publishing Group, LLC, et al.**

Public Sources
https://openai.com
https://web.archive.org/web/20250327122741/https://humane.com
https://www.iyo.ai
https://www.meta.com/ai-glasses
https://www.prodege.com
https://www.qualtrics.com/support/survey-platform/survey-module/survey-checker/fraud-detection
https://www.surveysystem.com/sscalc.htm
https://www.webpronews.com/sam-altman-jony-ive-lose-io-trademark-appeal-must-rebrand-ai-venture
https://www.youtube.com/watch?v=rDNyFN_eMec
Prodege 2023 Panel Book (available at: https://www.prodege.com/newsroom)

**Exhibit 3—Questionnaire (Screen Shots)**

KEEGAN_EXHIBITS_18

Thank you for agreeing to participate in this anonymous survey. The survey will take just a few minutes of your time.

Please begin by completing the CAPTCHA below.

I'm not a robot

reCAPTCHA
Privacy - Terms

Next >>

Protected by reCAPTCHA: Privacy & Terms

KEEGAN_EXHIBITS_19

This survey is for research purposes only. Your responses will be held confidential and we are not trying to sell you anything.

Before we begin, please read the following instructions:

• This survey makes use of images. If you are currently using a device that does not have image capabilities, please stop now and resume this survey when you have access to a compatible device.

• If you typically wear eyeglasses when reading information or looking at pictures or videos on your electronic device, please put them on now and wear them through the remainder of this survey.

• If you don't know the answer, don't recall, or don't have an opinion on any of the questions that follow, please feel free to select that answer when provided. We do not want you to guess at any of your answers.

• Please do not look up answers to any of the survey questions on the Internet or consult with any other persons regarding your survey answers.

• Your browser's back button will be disabled during the survey. Please use the "Next" button within the survey to advance through the questionnaire.

Do you understand and agree to follow the instructions provided above?

| I do not understand and/or do not agree |
|---|

| I understand and agree |
|---|

| Don't know |
|---|

Next >>

KEEGAN_EXHIBITS_20

Which of the following age brackets contains your age on your last birthday?

Under 18

18 - 30

31 - 40

41 - 50

51 - 60

61 - 70

71 or older

Next >>

KEEGAN_EXHIBITS_21



In which U.S. state or territory do you currently reside?

Please select from the following options:

- Please select from the following options:
- Alabama
- Alaska
- Arizona
- Arkansas
- California
- Colorado
- Connecticut
- Delaware
- District of Columbia
- Florida
- Georgia
- Hawaii
- Idaho
- Illinois
- Indiana
- Iowa
- Kansas

Next >>

KEEGAN_EXHIBITS_22

Which of the following types of products, if any, have you personally used in the last year? Please select all that apply.

| | |
|---|---|
| Gaming console | Bluetooth speaker / headphones |
| Smart watch / fitness tracker | Desktop computer |
| Laptop computer | Tablet |
| Smartphone | None of these |

Next >>

KEEGAN_EXHIBITS_23

Which of the following types of products, if any, do you expect to personally use in the next three months? Please select all that apply.

| | |
|---|---|
| Gaming console | Bluetooth speaker / headphones |
| Smart watch / fitness tracker | Desktop computer |
| Laptop computer | Tablet |
| Smartphone | None of these |

Next >>

KEEGAN_EXHIBITS_24

The product(s) that you expect to personally use in the next three months appear below. Thinking of the product you are most likely to use in each category, please indicate your level of involvement in purchasing those products.

| | Purchased by myself | Purchased in coordination with others | Influenced purchase | No involvement in purchase | Don't know / Don't recall |
|---|---|---|---|---|---|
| Gaming console | ○ | ○ | ○ | ○ | ○ |
| Smart watch / fitness tracker | ○ | ○ | ○ | ○ | ○ |
| Laptop computer | ○ | ○ | ○ | ○ | ○ |
| Smartphone | ○ | ○ | ○ | ○ | ○ |
| Bluetooth speaker / headphones | ○ | ○ | ○ | ○ | ○ |
| Desktop computer | ○ | ○ | ○ | ○ | ○ |
| Tablet | ○ | ○ | ○ | ○ | ○ |

Next >>

KEEGAN_EXHIBITS_25

For the remainder of this survey, if you do not know or do not have an opinion about any of the questions, please select the "don't know / no opinion" answer option. Please do not guess at any of your answers and please do not use the Internet or any other sources to inform your answers.

Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_26

On the next page we will introduce you to a product. Please consider the product information as you would if you encountered it while shopping and are considering purchasing it.

Please take as much time as you would like to consider the product information; you will be asked your opinions when you are finished.

Click the "Next" button below to continue.

Next >>

Imagine you encounter a product while shopping. The manufacturer describes this product as follows:

> *"A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you."*

For the remainder of this survey, this product will be referred to as "PRODUCT A." The product will be offered under the name shown below:

### PRODUCT A



Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_28

Imagine you encounter a product while shopping. The manufacturer describes this product as follows:

*"A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you."*

For the remainder of this survey, this product will be referred to as "PRODUCT A." The product will be offered under the name shown below:

### PRODUCT A



Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_29

Were you able to see **PRODUCT A** clearly, or not?

I was able to see PRODUCT A clearly

I was not able to see PRODUCT A clearly

Don't know

Next >>

If you know, approximately how often do you shop for personal electronics?

5 or more times per year

3 - 4 times per year

1 - 2 times per year

Less than once per year

Don't know / Don't recall

Next >>

Shown below, in random order, are additional products. Please consider the products as you would if you encountered them while shopping and are considering purchasing them. Take as much time as you would like to look at the products. You may click on the images for an enlarged view.



## AI glasses blend form and function, helping you stay connected and present—in style







Discover colorful, stylish AI glasses with longer battery life.

**Learn more**

Performance AI glasses designed to propel you further.

**Learn more**

## Stay connected more easily than ever

Discreet open-ear speakers let you take calls that only you'll hear, and send and receive messages across a variety of apps—all hands-free.

**∞ Meta**

**About us**

About Meta
Careers
Media gallery

Brand resources
For investors
Newsroom

 



iyO    Pre-order

IYO INTRODUCES

# iyO One

The world's first ear-worn agentic computer.

## Be heads up and hands free

We could all benefit from a little less screen time.

**Pre Order Now**

KEEGAN EXHIBITS 33



OVERVIEW
iyO One

The iyO One is a revolutionary new kind of computer without a screen. It can run apps just like your smartphone. The key difference is you talk to it through a natural language interface.



iyO

2606 spring street
Redwood city, ca 94063
hello@iyo.audio



PRODUCTS
iyO One
iyO yO
iyO Wand
iyO App
VAD Pro
iyO Caps

DEVELOPERS
Agent Studio
Pro Music Creator
Audio Computer
Dev kit

LEGAL
Terms of Service
Limited Warranty Policy
Privacy Policy
Returns & Exchanges Policy

Our mission is to bring **natural language computing** to billions of people.



SHOP NOW





KEEGAN_EXHIBITS_34



Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_35

When you shop for electronics, who do you typically shop for? Please select all that apply.

Yourself

Another family member

Employee(s) or other business use

Your child or children

Other

Don't know / Don't recall

Next >>

KEEGAN_EXHIBITS_36

Please consider again **PRODUCT A**, the product you saw earlier in this survey, which the manufacturer describes as:

*"A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you."*

### PRODUCT A



Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_37

Control Cell Only

Please consider again **PRODUCT A**, the product you saw earlier in this survey, which the manufacturer describes as:

*"A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you."*

**PRODUCT A**



Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_38

We are now going to ask you some questions about the products you reviewed earlier in the survey. Click the "Next" button below to continue.

Next >>

KEEGAN_EXHIBITS_39

Please consider this product and answer the questions below the image:



AEGEAN_EXHIBITS_40



Thinking of the first product that you saw earlier in this survey, **PRODUCT A**, do you believe:

The product shown above <u>is not</u> put out by the same company as **PRODUCT A**, the first product you saw

The product shown above <u>is</u> put out by the same company as **PRODUCT A,** the first product you saw

Don't know / No opinion

Click here to view **PRODUCT A**

If you know, what makes you say that the product shown above <u>is</u> put out by the same company as **PRODUCT A**? Please be as specific as possible.

Don't know / No opinion

KEEGAN_EXHIBITS_41

Next >>

Please consider this product and answer the questions below the image:



# AI glasses blend form and function, helping you stay connected and present—in style







Thinking of the first product that you saw earlier in this survey, **PRODUCT A**, do you believe:

The product shown above <u>is not</u> put out by the same company as **PRODUCT A**, the first product you saw

The product shown above <u>is</u> put out by the same company as **PRODUCT A**, the first product you saw

Don't know / No opinion

Click here to view **PRODUCT A**

Do you believe that the product shown above:

<u>Is not</u> affiliated, connected, or associated with the company that puts out **PRODUCT A**, the first product you saw

<u>Is</u> affiliated, connected, or associated with the company that puts out **PRODUCT A**, the first product you saw

Don't know / No opinion

If you know, what makes you say that the product shown above <u>is</u> affiliated, connected, or associated with the company that puts out **PRODUCT A**? Please be as specific as possible.

KEEGAN_EXHIBITS_43

Don't know / No opinion

Next >>

KEEGAN_EXHIBITS_44

Please consider this product and answer the questions below the image:



Thinking of the first product that you saw earlier in this survey, **PRODUCT A**, do you believe:

The product shown above is not put out by the same company as **PRODUCT A**, the first product you saw

The product shown above is put out by the same company as **PRODUCT A**, the first product you saw

Don't know / No opinion

Click here to view **PRODUCT A**

Do you believe that the product shown above:

Is not affiliated, connected, or associated with the company that puts out **PRODUCT A**, the first product you saw

Is affiliated, connected, or associated with the company that puts out **PRODUCT A**, the first product you saw

Don't know / No opinion

Do you believe that the product shown above:

Is not sponsored or approved by the company that puts out **PRODUCT A**, the first product you saw

Is sponsored or approved by the company that puts out **PRODUCT A**, the first product you saw

Don't know / No opinion

If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out **PRODUCT A**? Please be as specific as possible.

[text box]

KEEGAN_EXHIBITS_46

Don't know / No opinion

Next >>

KEEGAN_EXHIBITS_47

Which, if any, of the following types of technology have you used in the last three months? Please select all that apply.

| | |
|---|---|
| Internet search engine (e.g., Google, Bing) | Smartphone / tablet |
| Wearable fitness tracker | Smart appliance (e.g., TV, washer, refrigerator) |
| AI (artificial intelligence) app, website, or device | Internet chat bot / automated customer service |
| Music streaming service (e.g., Apple Music, Spotify) | None of these |
| Cloud computing / storage software | Don't know / No opinion |

Next >>

KEEGAN_EXHIBITS_48

In which of the following ways have you used AI (artificial intelligence) in the last three months? Please select all that apply.

| | |
|---|---|
| Chat bot / virtual customer assistance | Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) |
| Predictive text / writing assistant | Photo / video editing |
| Meeting transcriptions / summaries | On-device voice assistant (e.g., Apple Siri) |
| Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) | None of these |
| Voice-controlled home assistant (e.g., Google Alexa) | Don't know / No opinion |

Next >>

KEEGAN_EXHIBITS_49

Please type the word "green" in the box below.

Next >>

KEEGAN_EXHIBITS_50

Now, a few more questions for classification purposes only. Which of the following best describes your educational background?

Doctorate or equivalent

Master's / Professional degree

4-year college degree

2-year college degree

Some college

Technical school or training

High school graduate

Less than high school

Prefer not to answer

Next >>

KEEGAN_EXHIBITS_51

What is your gender?

Female

Male

Non-binary or other

Prefer not to answer

Next >>

KEEGAN_EXHIBITS_52

Which of the following includes your household's approximate annual income in 2025?

$150,000 or more

$125,000 - $149,999

$100,000 - $124,999

$75,000 - $99,999

$50,000 - $74,999

$35,000 - $49,999

Under $35,000

Prefer not to answer

Next >>

KEEGAN_EXHIBITS_53

We thank you for your time spent taking this survey.
Your response has been recorded.

KEEGAN_EXHIBITS_54

**Exhibit 4—Questionnaire (Editor Export)**

KEEGAN_EXHIBITS_55

**Start of Block: CAPTCHA**

Q1 Thank you for agreeing to participate in this anonymous survey. The survey will take just a few minutes of your time.    Please begin by completing the CAPTCHA below.

**End of Block: CAPTCHA**

**Start of Block: Intro**



Q2 This survey is for research purposes only. Your responses will be held confidential and we are not trying to sell you anything.    Before we begin, please read the following instructions:

• This survey makes use of images. If you are currently using a device that does not have image capabilities, please stop now and resume this survey when you have access to a compatible device.

• If you typically wear eyeglasses when reading information or looking at pictures or videos on your electronic device, please put them on now and wear them through the remainder of this survey.

• If you don't know the answer, don't recall, or don't have an opinion on any of the questions that follow, please feel free to select that answer when provided. We do not want you to guess at any of your answers.

• Please do not look up answers to any of the survey questions on the Internet or consult with any other persons regarding your survey answers.

• Your browser's back button will be disabled during the survey. Please use the "Next" button within the survey to advance through the questionnaire.

   Do you understand and agree to follow the instructions provided above?

   ○ I understand and agree  (1)

   ○ I do not understand and/or do not agree  (2)

   ○ Don't know  (3)

**End of Block: Intro**

**Start of Block: Age**



Q3 Which of the following age brackets contains your age on your last birthday?

○ Under 18  (1)

○ 18 - 30  (2)

○ 31 - 40  (3)

○ 41 - 50  (4)

○ 51 - 60  (5)

○ 61 - 70  (6)

○ 71 or older  (7)

End of Block: Age

Start of Block: State



Q4 In which U.S. state or territory do you currently reside?

▼ Please select from the following options: (1) ... Don't know (57)

End of Block: State

Start of Block: Past



KEEGAN_EXHIBITS_57

Q5 Which of the following types of products, if any, have you personally used in the last year? Please select all that apply.

☐      Laptop computer  (1)

☐      Bluetooth speaker / headphones  (2)

☐      Desktop computer  (3)

☐      Tablet  (4)

☐      Smartphone  (5)

☐      Smart watch / fitness tracker  (6)

☐      Gaming console  (7)

☐      ⊗ None of these  (8)

----

Page Break

Display this question:

If Products - past = Laptop computer

Or Products - past = Desktop computer

Or Products - past = Tablet

Or Products - past = Smartphone

Carry Forward Selected Choices from "Which of the following types of products, if any, have you personally used in the last year? Please select all that apply."



Q6 The product(s) that you have personally used in the last year appear below. Thinking of the last product you used in each category, please indicate your level of involvement in purchasing the product(s) that you used.

| | Purchased by myself (1) | Purchased in coordination with others (2) | Influenced purchase (3) | No involvement in purchase (4) | Don't know / Don't recall (5) |
|---|---|---|---|---|---|
| Laptop computer (x1) | ○ | ○ | ○ | ○ | ○ |
| Bluetooth speaker / headphones (x2) | ○ | ○ | ○ | ○ | ○ |
| Desktop computer (x3) | ○ | ○ | ○ | ○ | ○ |
| Tablet (x4) | ○ | ○ | ○ | ○ | ○ |
| Smartphone (x5) | ○ | ○ | ○ | ○ | ○ |
| Smart watch / fitness tracker (x6) | ○ | ○ | ○ | ○ | ○ |
| Gaming console (x7) | ○ | ○ | ○ | ○ | ○ |
| ⊗ None of these (x8) | ○ | ○ | ○ | ○ | ○ |

End of Block: Past

**Start of Block: Future**

*Display this question:*

*If Products - past != Laptop computer*

*And Products - past != Desktop computer*

*And Products - past != Tablet*

*And Products - past != Smartphone*

*Or If*

*Decision maker matrix - past != Purchased in coordination with others*

*And And Decision maker matrix - past Laptop computer - Purchased by myself Is Not Selected*

*And And Decision maker matrix - past Laptop computer - Purchased in coordination with others Is Not Selected*

*And And Decision maker matrix - past Laptop computer - Influenced purchase Is Not Selected*

*And And Decision maker matrix - past Desktop computer - Purchased by myself Is Not Selected*

*And And Decision maker matrix - past Desktop computer - Purchased in coordination with others Is Not Selected*

*And And Decision maker matrix - past Desktop computer - Influenced purchase Is Not Selected*

*And And Decision maker matrix - past Tablet - Purchased by myself Is Not Selected*

*And And Decision maker matrix - past Tablet - Purchased in coordination with others Is Not Selected*

*And And Decision maker matrix - past Tablet - Influenced purchase Is Not Selected*

*And And Decision maker matrix - past Smartphone - Purchased by myself Is Not Selected*

*And And Decision maker matrix - past Smartphone - Purchased in coordination with others Is Not Selected*

*And And Decision maker matrix - past Smartphone - Influenced purchase Is Not Selected*

*Carry Forward All Choices - Displayed & Hidden from "Which of the following types of products, if any, have you personally used in the last year? Please select all that apply."*

X→

Q7 Which of the following types of products, if any, do you expect to personally use in the next three months? Please select all that apply.

☐ Laptop computer  (1)

☐ Bluetooth speaker / headphones  (2)

☐ Desktop computer  (3)

☐ Tablet  (4)

☐ Smartphone  (5)

☐ Smart watch / fitness tracker  (6)

☐ Gaming console  (7)

☐ ⊗ None of these  (8)

Page Break

Display this question:

If If Products - future Laptop computer Is Displayed

Carry Forward Selected Choices from "Which of the following types of products, if any, do you expect to personally use in the next three months? Please select all that apply."

Carry Forward All Answers - Displayed & Hidden from "The product(s) that you have personally used in the last year appear below. Thinking of the last product you used in each category, please indicate your level of involvement in purchasing the product(s) that you used."

X→

Q8 The product(s) that you expect to personally use in the next three months appear below. Thinking of the product you are most likely to use in each category, please indicate your level of involvement in purchasing those products.

| | Purchased by myself (1) | Purchased in coordination with others (2) | Influenced purchase (3) | No involvement in purchase (4) | Don't know / Don't recall (5) |
|---|---|---|---|---|---|
| Laptop computer (xx1) | ○ | ○ | ○ | ○ | ○ |
| Bluetooth speaker / headphones (xx2) | ○ | ○ | ○ | ○ | ○ |
| Desktop computer (xx3) | ○ | ○ | ○ | ○ | ○ |
| Tablet (xx4) | ○ | ○ | ○ | ○ | ○ |
| Smartphone (xx5) | ○ | ○ | ○ | ○ | ○ |
| Smart watch / fitness tracker (xx6) | ○ | ○ | ○ | ○ | ○ |
| Gaming console (xx7) | ○ | ○ | ○ | ○ | ○ |
|  None of these (xx8) | ○ | ○ | ○ | ○ | ○ |

End of Block: Future

Start of Block: Instruction

Q9 For the remainder of this survey, if you do not know or do not have an opinion about any of the questions, please select the "don't know / no opinion" answer option. Please do not guess at any of your answers and please do not use the Internet or any other sources to inform your answers.    Click the "Next" button below to continue.

End of Block: Instruction

Start of Block: First Stimulus

Q10
On the next page we will introduce you to a product. Please consider the product information as you would if you encountered it while shopping and are considering purchasing it.
 Please take as much time as you would like to consider the product information; you will be asked your opinions when you are finished.
Click the "Next" button below to continue.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Page Break ─────────────────────────────────────────

Q11 Imagine you encounter a product while shopping. The manufacturer describes this product as follows:

***"A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you."***

For the remainder of this survey, this product will be referred to as "PRODUCT A." The product will be offered under the name shown below:

**PRODUCT A**
${e://Field/PRODUCT%20A}

Click the "Next" button below to continue.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Page Break ─────────────────────────────────────────

KEEGAN_EXHIBITS_64



**Q12** Were you able to see **PRODUCT A** clearly, or not?

○ I was able to see PRODUCT A clearly  (1)

○ I was not able to see PRODUCT A clearly  (2)

○ Don't know  (3)

**End of Block: First Stimulus**

**Start of Block: Distractor 1**

**Q13** If you know, approximately how often do you shop for personal electronics?

○ Less than once per year  (1)

○ 1 - 2 times per year  (2)

○ 3 - 4 times per year  (3)

○ 5 or more times per year  (4)

○ Don't know / Don't recall  (5)

**End of Block: Distractor 1**

**Start of Block: Product Review**



Q14

Shown below, in random order, are additional products. Please consider the products as you would if you encountered them while shopping and are considering purchasing them. Take as much time as you would like to look at the products. You may click on the images for an enlarged view.

○ ${e://Field/stim2}  (1)

○ ${e://Field/stim3}  (2)

○ ${e://Field/stim4}  (3)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q15 Click the "Next" button below to continue.

End of Block: Product Review

Start of Block: Distractor 2

Q16 When you shop for electronics, who do you typically shop for? Please select all that apply.

☐  Yourself  (1)

☐  Your child or children  (2)

☐  Another family member  (3)

☐  Employee(s) or other business use  (4)

☐  Other  (5)

☐  ⊗ Don't know / Don't recall  (6)

End of Block: Distractor 2

Start of Block: Review A

Q17 Please consider again **PRODUCT A**, the product you saw earlier in this survey, which the manufacturer describes as:

***"A family of electronic devices that will allow you to use AI (artificial intelligence) in new ways, from the way you express your requests to how responses to those requests are received by you."***

**PRODUCT A**
${e://Field/PRODUCT%20A}

Click the "Next" button below to continue.

_End of Block: Review A_

_Start of Block: LOC_

_Display this question:_

    _If Loop all: Same , The product shown above <u>is</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw Is Not Displayed_

Q18 We are now going to ask you some questions about the products you reviewed earlier in the survey. Click the "Next" button below to continue.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Page Break ————————————————————————————————



Q19
Please consider this product and answer the questions below the image:
${lm://Field/1}
Thinking of the first product that you saw earlier in this survey, **PRODUCT A**, do you believe:

○ The product shown above <u>is</u> put out by the same company as **PRODUCT A**, the first product you saw  (1)

○ The product shown above <u>is not</u> put out by the same company as **PRODUCT A**, the first product you saw  (2)

○ Don't know / No opinion  (3)

---

> *Display this question:*
>
> *If  Loop 1: ${e://Field/stim1}, stim1, TestC...  Current Loop*



Q20

Click here to view **PRODUCT A**

---

> *Display this question:*
>
> *If  Loop 2: ${e://Field/stim2}, stim2, Build  Current Loop*



Q21

Click here to view **PRODUCT A**

---

> *Display this question:*
>
> *If  Loop 3: ${e://Field/stim3}, stim3, Credi...  Current Loop*



Q22

Click here to view **PRODUCT A**

*Display this question:*

*If Loop current: Same , The product shown above <u>is</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw Is Displayed*

*And Loop current: Same = The product shown above <u>is</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw*

Q23

If you know, what makes you say that the product shown above is put out by the same company as **PRODUCT A**? Please be as specific as possible.

_____

_____

_____

_____

_____

*Display this question:*

*If If Same Open-End Text Response Is Displayed*

Q24

☐    Don't know / No opinion  (1)

*Display this question:*

*If Loop current: Same , The product shown above <u>is not</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw Is Displayed*

*And If*

*Loop current: Same = The product shown above <u>is not</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw*

*Or Loop current: Same = Don't know / No opinion*

KEEGAN_EXHIBITS_69

Q25 Do you believe that the product shown above:

○ <u>Is</u> affiliated, connected, or associated with the company that puts out **PRODUCT A**, the first product you saw  (1)

○ <u>Is not</u> affiliated, connected, or associated with the company that puts out **PRODUCT A**, the first product you saw  (2)

○ Don't know / No opinion  (3)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Display this question:*

> *If Loop current: Affiliated, connected, or associated , <u>Is</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw Is Displayed*
>
> *And Loop current: Affiliated, connected, or associated = <u>Is</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw*

Q26 If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out **PRODUCT A**? Please be as specific as possible.

_____

_____

_____

_____

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*Display this question:*

> *If If Affiliated, connected, or associated Open-End Text Response Is Displayed*

[✴] [X→]

Q27

☐ Don't know / No opinion  (1)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

KEEGAN_EXHIBITS_70

*Display this question:*

*If Loop current: Affiliated, connected, or associated , <u>Is</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw Is Displayed*

*And If*

*Loop current: Affiliated, connected, or associated = <u>Is not</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw*

*Or Loop current: Affiliated, connected, or associated = Don't know / No opinion*

Q28 Do you believe that the product shown above:

○ <u>Is</u> sponsored or approved by the company that puts out **PRODUCT A**, the first product you saw  (1)

○ <u>Is not</u> sponsored or approved by the company that puts out **PRODUCT A**, the first product you saw  (2)

○ Don't know / No opinion  (3)

*Display this question:*

*If Loop current: Sponsored or approved , <u>Is</u> sponsored or approved by the company that puts out <b>PRODUCT A</b>, the first product you saw Is Displayed*

*And Loop current: Sponsored or approved = <u>Is</u> sponsored or approved by the company that puts out <b>PRODUCT A</b>, the first product you saw*

Q29 If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out **PRODUCT A**? Please be as specific as possible.

_____

_____

_____

_____

_____

KEEGAN_EXHIBITS_71

Display this question:
    If If Sponsored or approved Open-End Text Response Is Displayed

[ * ] [ X→ ]

Q30

☐    Don't know / No opinion  (1)

**End of Block: LOC**

**Start of Block: AI Usage**

[ ⤬ ] [ X→ ]

Q31 Which, if any, of the following types of technology have you used in the last three months? Please select all that apply.

☐    AI (artificial intelligence) app, website, or device  (1)

☐    Smart appliance (e.g., TV, washer, refrigerator)  (2)

☐    Internet search engine (e.g., Google, Bing)  (3)

☐    Internet chat bot / automated customer service  (4)

☐    Cloud computing / storage software  (5)

☐    Wearable fitness tracker  (6)

☐    Smartphone / tablet  (7)

☐    Music streaming service (e.g., Apple Music, Spotify)  (8)

☐    ⊗ None of these  (9)

☐    ⊗ Don't know / No opinion  (10)

Page Break

Display this question:

If Tech types used = AI (artificial intelligence) app, website, or device

Q32 In which of the following ways have you used AI (artificial intelligence) in the last three months? Please select all that apply.

☐      Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini)  (1)

☐      Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search)  (2)

☐      Voice-controlled home assistant (e.g., Google Alexa)  (3)

☐      Meeting transcriptions / summaries  (4)

☐      Predictive text / writing assistant  (5)

☐      Chat bot / virtual customer assistance  (6)

☐      Photo / video editing  (7)

☐      On-device voice assistant (e.g., Apple Siri)  (8)

☐      ⊗ None of these  (9)

☐      ⊗ Don't know / No opinion  (10)

End of Block: AI Usage

Start of Block: Data integrity - Green

Q33    Please type the word "green" in the box below.

_____

End of Block: Data integrity - Green

KEEGAN_EXHIBITS_73

**Start of Block: Demographics**



Q34 Now, a few more questions for classification purposes only. Which of the following best describes your educational background?

○ Less than high school  (1)

○ High school graduate  (2)

○ Technical school or training  (3)

○ Some college  (4)

○ 2-year college degree  (5)

○ 4-year college degree  (6)

○ Master's / Professional degree  (7)

○ Doctorate or equivalent  (8)

○ Prefer not to answer  (9)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Page Break ─────────────────────────────────────────────

Q35 What is your gender?

○ Male  (1)

○ Female  (2)

○ Non-binary or other  (3)

○ Prefer not to answer  (4)

Page Break



Q36 Which of the following includes your household's approximate annual income in 2025?

○ Under $35,000  (1)

○ $35,000 - $49,999  (2)

○ $50,000 - $74,999  (3)

○ $75,000 - $99,999  (4)

○ $100,000 - $124,999  (5)

○ $125,000 - $149,999  (6)

○ $150,000 or more  (7)

○ Prefer not to answer  (8)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Q37 Click to write the question text
Browser  (1)
Version  (2)
Operating System  (3)
Screen Resolution  (4)
Flash Version  (5)
Java Support  (6)
User Agent  (7)

**End of Block: Demographics**

KEEGAN_EXHIBITS_76

**Exhibit 5—Tabulated Data**

KEEGAN_EXHIBITS_77

Tabulated Data - Test Cell

KEEGAN_EXHIBITS_78

Q1 - CAPTCHA

Q2 - ...Do you understand and agree to follow the instructions provided above?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | I understand and agree | 100.0% | 416 |
| 2 | I do not understand and/or do not agree | 0.0% | 0 |
| 3 | Don't know | 0.0% | 0 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_79

## Q3 - Which of the following age brackets contains your age on your last birthday?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Under 18 | 0.0% | 0 |
| 2 | 18 - 30 | 17.3% | 72 |
| 3 | 31 - 40 | 18.0% | 75 |
| 4 | 41 - 50 | 14.4% | 60 |
| 5 | 51 - 60 | 17.1% | 71 |
| 6 | 61 - 70 | 17.1% | 71 |
| 7 | 71 or older | 16.1% | 67 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_80

## Q4 - In which U.S. state or territory do you currently reside?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Please select from the following options: | 0.0% | 0 |
| 2 | Alabama | 1.4% | 6 |
| 3 | Alaska | 0.0% | 0 |
| 4 | Arizona | 2.9% | 12 |
| 5 | Arkansas | 1.0% | 4 |

KEEGAN_EXHIBITS_81

| 6 | | California | 9.9% | 41 |
|---|---|---|---|---|
| 7 | | Colorado | 3.1% | 13 |
| 8 | | Connecticut | 0.7% | 3 |
| 9 | | Delaware | 0.5% | 2 |
| 10 | | District of Columbia | 0.0% | 0 |
| 11 | | Florida | 8.9% | 37 |
| 12 | | Georgia | 3.1% | 13 |
| 13 | | Hawaii | 0.0% | 0 |
| 14 | | Idaho | 0.0% | 0 |
| 15 | | Illinois | 5.0% | 21 |
| 16 | | Indiana | 2.9% | 12 |
| 17 | | Iowa | 0.5% | 2 |
| 18 | | Kansas | 0.7% | 3 |
| 19 | | Kentucky | 1.0% | 4 |
| 20 | | Louisiana | 1.2% | 5 |
| 21 | | Maine | 0.5% | 2 |
| 22 | | Maryland | 2.4% | 10 |
| 23 | | Massachusetts | 2.2% | 9 |
| 24 | | Michigan | 4.1% | 17 |
| 25 | | Minnesota | 0.2% | 1 |
| 26 | | Mississippi | 0.5% | 2 |
| 27 | | Missouri | 2.4% | 10 |
| 28 | | Montana | 0.5% | 2 |
| 29 | | Nebraska | 1.2% | 5 |
| 30 | | Nevada | 1.7% | 7 |
| 31 | | New Hampshire | 0.5% | 2 |
| 32 | | New Jersey | 1.7% | 7 |
| 33 | | New Mexico | 0.2% | 1 |
| 34 | | New York | 6.0% | 25 |
| 35 | | North Carolina | 2.6% | 11 |

KEEGAN_EXHIBITS_82

| | | | |
|---|---|---|---|
| 36 | North Dakota | 0.2% | 1 |
| 37 | Ohio | 3.8% | 16 |
| 38 | Oklahoma | 0.7% | 3 |
| 39 | Oregon | 1.4% | 6 |
| 40 | Pennsylvania | 4.1% | 17 |
| 41 | Puerto Rico | 0.0% | 0 |
| 42 | Rhode Island | 0.7% | 3 |
| 43 | South Carolina | 1.9% | 8 |
| 44 | South Dakota | 0.5% | 2 |
| 45 | Tennessee | 2.4% | 10 |
| 46 | Texas | 7.9% | 33 |
| 47 | Utah | 1.0% | 4 |
| 48 | Vermont | 0.2% | 1 |
| 49 | Virginia | 1.4% | 6 |
| 50 | Washington | 1.9% | 8 |
| 51 | West Virginia | 1.0% | 4 |
| 52 | Wisconsin | 1.0% | 4 |
| 53 | Wyoming | 0.2% | 1 |
| 54 | Other | 0.0% | 0 |
| 55 | None of these | 0.0% | 0 |
| 56 | I do not live in the U.S. | 0.0% | 0 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_83

Q5 - Which of the following types of products, if any, have you personally used in the last year? Please select all that apply.



| # | | Answer | % | Count |
|---|---|---|---|---|
| 1 | | Laptop computer | 77.9% | 324 |
| 2 | | Bluetooth speaker / headphones | 57.2% | 238 |
| 3 | | Desktop computer | 50.0% | 208 |
| 4 | | Tablet | 57.5% | 239 |
| 5 | | Smartphone | 95.4% | 397 |
| 6 | | Smart watch / fitness tracker | 42.5% | 177 |
| 7 | | Gaming console | 43.5% | 181 |
| 8 | | None of these | 0.5% | 2 |
| | | Total | 100% | 416 |

KEEGAN_EXHIBITS_84

Q6 - The product(s) that you have personally used in the last year appear below. Thinking of the last product you used in each category, please indicate your level of involvement in purchasing the product(s) that you used.

| # | Question | Purchased by myself | | Purchased in coordination with others | | Influenced purchase | | No involvement in purchase | | Don't know / Don't recall | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Laptop computer | 79.9% | 259 | 12.0% | 39 | 2.2% | 7 | 5.2% | 17 | 0.6% | 2 | 324 |
| 2 | Bluetooth speaker / headphones | 83.9% | 198 | 7.2% | 17 | 4.7% | 11 | 4.2% | 10 | 0.0% | 0 | 236 |
| 3 | Desktop computer | 72.1% | 150 | 11.5% | 24 | 5.8% | 12 | 10.6% | 22 | 0.0% | 0 | 208 |
| 4 | Tablet | 76.2% | 182 | 9.2% | 22 | 5.4% | 13 | 9.2% | 22 | 0.0% | 0 | 239 |
| 5 | Smartphone | 85.6% | 340 | 8.6% | 34 | 1.8% | 7 | 3.8% | 15 | 0.3% | 1 | 397 |
| 6 | Smart watch / fitness tracker | 87.4% | 153 | 6.3% | 11 | 2.9% | 5 | 3.4% | 6 | 0.0% | 0 | 175 |
| 7 | Gaming console | 79.0% | 143 | 12.2% | 22 | 3.9% | 7 | 3.9% | 7 | 1.1% | 2 | 181 |
| 8 | None of these | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0 |

KEEGAN_EXHIBITS_85

Q7 - Which of the following types of products, if any, do you expect to personally use in the next three months? Please select all that apply.



| # | | Answer | % | Count |
|---|---|---|---|---|
| 1 | | Laptop computer | 10.0% | 2 |
| 2 | | Bluetooth speaker / headphones | 10.0% | 2 |
| 3 | | Desktop computer | 5.0% | 1 |
| 4 | | Tablet | 15.0% | 3 |
| 5 | | Smartphone | 30.0% | 6 |
| 6 | | Smart watch / fitness tracker | 5.0% | 1 |
| 7 | | Gaming console | 25.0% | 5 |
| 8 | | None of these | 0.0% | 0 |
| | | Total | 100% | 20 |

KEEGAN_EXHIBITS_86

Q8 - The product(s) that you expect to personally use in the next three months appear below. Thinking of the product you are most likely to use in each category, please indicate your level of involvement in purchasing those products.

| # | Question | Purchased by myself | | Purchased in coordination with others | | Influenced purchase | | No involvement in purchase | | Don't know / Don't recall | | Total |
|---|----------|---------------------|---|--------------------------------------|---|---------------------|---|----------------------------|---|---------------------------|---|-------|
| 1 | Laptop computer | 100.0% | 2 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 2 |
| 2 | Bluetooth speaker / headphones | 100.0% | 2 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 2 |
| 3 | Desktop computer | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 100.0% | 1 | 0.0% | 0 | 1 |
| 4 | Tablet | 100.0% | 3 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 3 |
| 5 | Smartphone | 83.3% | 5 | 16.7% | 1 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 6 |
| 6 | Smart watch / fitness tracker | 100.0% | 1 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 1 |
| 7 | Gaming console | 100.0% | 5 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 5 |
| 8 | None of these | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0 |

Q12 - Were you able to see PRODUCT A clearly, or not?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | I was able to see PRODUCT A clearly | 100.0% | 416 |
| 2 | I was not able to see PRODUCT A clearly | 0.0% | 0 |
| 3 | Don't know | 0.0% | 0 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_88

## Q13 - If you know, approximately how often do you shop for personal electronics?



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Less than once per year | 32.0% | 133 |
| 2 | 1 - 2 times per year | 33.4% | 139 |
| 3 | 3 - 4 times per year | 20.2% | 84 |
| 4 | 5 or more times per year | 13.5% | 56 |
| 5 | Don't know / Don't recall | 1.0% | 4 |
|   | Total | 100% | 416 |

Q16 - When you shop for electronics, who do you typically shop for? Please select all that apply.



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Yourself | 96.4% | 401 |
| 2 | Your child or children | 28.1% | 117 |
| 3 | Another family member | 34.1% | 142 |
| 4 | Employee(s) or other business use | 4.3% | 18 |
| 5 | Other | 1.2% | 5 |
| 6 | Don't know / Don't recall | 0.2% | 1 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_90

1_Q19 - IYO - Thinking of the first product that you saw earlier in this survey, PRODUCT A, do you believe:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw | 46.6% | 194 |
| 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw | 30.5% | 127 |
| 3 | Don't know / No opinion | 22.8% | 95 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_91

1_Q23 - IYO - If you know, what makes you say that the product shown above is put out by the same company as PRODUCT A? Please be as specific as possible.

${e://Field/stim2} - Same Open-End

| |
|---|
| yes it is the same company that shows the same logo |
| tite brand name is similar. so i assume they are the same company |
| they have alot o simble features |
| they bear the same name |
| these are all products of the same family |
| thehasve products that are alike |
| the logo looks similar |
| the io in the name |
| the brand is the same as product A brand |
| the  oy icon |
| tgey have the same name |
| similiar name could be possibly connected |
| seems like it would be |
| seems like a similarly designed product |
| same letters in logo |
| name and branding |
| its very unique |
| its hightech and just like a phone like the other project |
| it looks like a similiar item that would fit together perfectly |
| it is new as product A indicated |
| it has the same name on the top |
| io is in the ad and it is AI associated |
| both products are using the same technology |
| because it looks like the same ad. am i missing something? |
| because I saw an image of it before |
| Well they have similar names so I thought it would be from that family. At least phonetically they sound similar. I |

KEEGAN_EXHIBITS_92

never have heard of this IYO company but it feels like something that could release with a new innovative company instead of some big named retailer.

Well Product A had the letters IO. The only thing missing was the y and the font of the words look similar.

This product has a similar name to the other product.

This is definitely a new way of getting information without a screen which is similar to the description of product A

They seem  like they could be from products a because the description was pretty general

They pretty much have the same design

They have some of the same letters

They have similar names of IO and iYO. It is also an AI product which that company produces

They do the same thing  .

They both have a similar brand name

They both are labeled as "i something"

They are compatible.

The use of io in product names

The things the products do are very similar.

The text and pictures look the same as the other one

The statement from product A And the intials are about the aame

The product name didn't have another company name.  They ad looked like the same company produced it.

The product description is very similar

The product A displayed "IO" and this has "IyO", keeping I and O, making me think they are affiliated in some way

The only reason I think it is would be because the logos are very similar.

The naming convention is very similar so for me, I would associate the two.

The names of the two products that are displayed are identical, and This leads me to believe that the same company is behind both products.

The names of the products are too similar.

The name iy0

The name itself is in the advertisement

The logos are the same

The logo on the first page

The logo matches this time.

The logo design seems very similar.

The features are similar

KEEGAN_EXHIBITS_93

The display looks the best

The description of using you voice matches up

The common name IyO

The capitalized IO.

The brands are the same

The branding

The I is only separated by the O by a y

Similar name

Seems to have the same logo.

Says io at top

Same product brand title

Same name maybe??

Same logo, design, and packaging style.

Same font

Same design

Same definition of the wearables.

SEEMS LIKE A LOGICAL PROGRESSION FOR THEM TO HAVE A VARIETY OF WEARABLES SINCE DIFFERENT PEOPLE PREFER DIFFERENT THINGS IN TERMS OF ACCESSING AI.

Product a is io and the name of this product is, different spelling of the same word io.

Product A was shown as "io". It's possible that this is a specific product from that brand.

Part of the IO family of products.

Nothing comes to mind at the current time of writing this statement

Not only do the logos resemble each other, but the Product A's emphasis on "AI-influenced digital enhancement of human connection" means that this "mini-AI device worn on your eye that operates within 'natural language interface'" seemingly represents the hypothetical device that Product A provides.

Multiple ways to help you in daily task that mainly run by AI

Meta is Twitter and vice versa

Looks same as above

Look the same

Likely because the brand logo and product description are similar

JUST ONE MORE ADAVANCEMENT OF META

Iyo one

KEEGAN_EXHIBITS_94

Iyo

Its the same logo

It's got the same look,technology and design

It's both new and do the same as the first product

It works just like product A works

It was together with other "boards" and seemed to me to have common connective threads.

It was one of the options.

It sounds the same.

It seems to be on the same idea as product A

It seems like they have the same attributes.

It seems like they are all part of the same family of products and tech devices

It seems like it would be more beneficial for what I would use it for

It seems all the same having to deal with a.i

It says it in the logo

It says iYo

It offers similar hands free bluetooth capabilty services

It may be mate

It looks the same. Same features

It lists the company as iyo.

It is the product that can work as a computer without a screen and works in your own language

It is not part of META

It is blatantly obvious it says the same brand name as the previous one. IyO

It is an electronic product linked to the other one

It is a device that incorporates AI

It has the same usages of letters involved as product A

It has the same logo except for the "Y".

It has the same design choices

It has the same IO in its name. It is something new and different and would use AI for everything.

It has the logo of Product A

It has it in the text

KEEGAN_EXHIBITS_95

It has a similar logo but the name is slightly different

It has a different brand name.

It appears to be the same type of advertising

Image

IYO

I'm not really sure.

I thought that I saw the same info on both screens!

I think they all are by the same company

I think logo is very similar

I think its got the iO thing from the beginning. its a derivation, but i think thats purposeful.

I see the same type of adverts isn't it all looks the same and I assume if it's using artificial intelligence it's using the same type of company to power their smart tools/devices

I say that the product shown is put out by the same company as Product A because of the io.

I saw the item in the description of Product A.

I recognize the io logo and features I would expect with a tech product

I read the description of company

I don't know if the product is put out by the same company

I am just guessing and don't really know.

Both of these products feature hands free AI, promoting workflow and better hands free usage .

Bose

Because they both make use of ai llm and are obviously made by some ai company.

Because the FIRST product shown was "io," which is similar in name to the product shown above.

Because of the advance technology.

Because it's got the same two letters as what was shown before

Because it looks like the same ad and has the same info

Because it is AI

Because it has the same label as the product a

Because it has a similar product design compared to the other one

Because it has IO and also seems to be what is described.

Because it hands free and voice activated

Because IO is in the name of the product.

KEEGAN_EXHIBITS_96

Another product doing the same AI functions

AI

Because of the initials on the brand

KEEGAN_EXHIBITS_97

## 1_Q24 - IYO - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 47 |
| | Total | 100% | 47 |

KEEGAN_EXHIBITS_98

1_Q25 - IYO - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 23.4% | 52 |
| 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 40.1% | 89 |
| 3 | Don't know / No opinion | 36.5% | 81 |
| | Total | 100% | 222 |

1_Q26 - IYO - If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim2} - Affiliated, connected, or associated Open-End

they seem to be the same family of meta products

The overall 'look and feel' of the marketing materials for both products is consistent, which usually indicates a business connection or partnership.

The name is similar

Same as what I said before this is exactly the kind of product that Meta might want to put out.

Similar name

They really seem different

The brands are similar, but one has a "Y" in it.

They have very similar functions and a good product to use.

I am sure the list of developers are the same on both.

Seems like an advancement from other AI companies

Again, it seems to fit in the family of Product A

The ad

It looks like it

The ONLY thing that makes me think it MIGHT be affiliated is because Product A uses "io" as a logo, and this one uses "iyO". Because the only difference is the "y" in the middle it makes me think they might be connect.

BASICALLY SAME SAME NAME

I do not know but assume based on the products involved and what they are providing

it looks it

The colors and logo are quite similar.

It's very innovative and a very creative logo

Letters look similar  Color looks the same

The fonts are somewhat similar to each other I'm thinking that's what would make me say that.

the iyo is similar to Product A

Same company makes item

It is from the same company

KEEGAN_EXHIBITS_100

Same logo

The logo looks similar and is hands free like the other product.

It seems to fit the description that was given with product a

This company I wouldn't say is from the same company but are affiliated according to the products

The design of the advertisement seems very similar.

They seem to be the same type of product

it''s relatable

It looks like it comes from the same brand

It says Iyo rather than IO and the text color is very similar

KEEGAN_EXHIBITS_101

1_Q27 - IYO - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 19 |
| | Total | 100% | 19 |

KEEGAN_EXHIBITS_102

## 1_Q28 - IYO - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 7.6% | 13 |
| 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 44.1% | 75 |
| 3 | Don't know / No opinion | 48.2% | 82 |
| | Total | 100% | 170 |

KEEGAN_EXHIBITS_103

1_Q29 - IYO - If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim2} - Sponsored or approved Open-End

They have the same design

I heard it's a really good product and I'm considered buying it OK

This is like a spin off of the first brand that came about just with upgrades

I think it might be sponsored because of how the technology is being ised

They have a different logo and name.

KEEGAN_EXHIBITS_104

1_Q30 - IYO - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 8 |
| | Total | 100% | 8 |

KEEGAN_EXHIBITS_105

2_Q19 - Humane - Please consider this product and answer the questions below the image:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw | 30.8% | 128 |
| 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw | 41.8% | 174 |
| 3 | Don't know / No opinion | 27.4% | 114 |
| | Total | 100% | 416 |

2_Q23 - Humane - If you know, what makes you say that the product shown above is put out by the same company as PRODUCT A? Please be as specific as possible.

${e://Field/stim3} - Same Open-End

| |
|---|
| Looks same feature of ai |
| They are compatible with meta products |
| Hu.ma.ne |
| Cause it's described the same function they have |
| It seems to fit the initial description we were given |
| All these ads look exactly the same |
| The branding on this screen, specifically the hu.ma.ne logo in the top left corner, uses the same unique iconography and lowercase font style as Product A. |
| It feels very similar |
| Same logo, design, and packaging style. |
| Yes I think this is the product put out by the same company |
| Product A was marketed in the same way as this product, making me believe is the same thing. |
| They seem to have the same attributes as in the description |
| It has the same font |
| It is an AI product and seems like it would be put out by the same company. |
| The product remains hands free |
| same shape |
| It seems like a product that would be developed by Meta |
| It's AI generated as was advertised as product A |
| It seems to be part of a family of devices that do what product A claims |
| The first product shown was a basic company which said it makes several AI products. |
| The similarities in the graphics and the product |
| They do the same thing. |
| They both contain the smallest electronic |
| Twitter and Meta are the from same company |
| I read about it in the first description of Product A. |

KEEGAN_EXHIBITS_107

It looks like it

Similar claims

It's the same font

The ad is the same

They are different brands

It works with the ai glasses

Looks like the same symbol

I feel that I saw the same info on the other screen showing it's the same company!

Aipin

Looks like Apple

It's meta

The features mentioned in product a is similar

another part of the family

The size of the piece and woman

The logo and wording is similar

SIMILAR NAME WITH VARIATION FOR MODEL

I think theyre affiliated because both descriptions sound very similar in functionality

again it's te same ad

Shares a lot of the same themes

it looks the same

It would also combine a wearable electronic

It says something about a.i

Extremely similar

Same type of item

Same lettering, same style, same font, same feel, and they are all sort of looking the same which makes it feel like one entity just a different name but they all virtually do the same exact thing.

The colors and logo were similar.

Sounds the same

Same reasoning...it looks and feels connected to the other offerings.

The picture looks the same and they are both called ai pin.

The graphics are very similar

Because it is AI pin

Because the company name is on both ads

They have the same tag lines.

I believe the ai pin by io is product a.  A wearble pin device

It is offering what product A talked about

It seems like the products shown looks exactly the same as the first set of products shown

Similar ads

It has the same product picture and description

They specialize in Ai related products

the product is different

Its a great product i love how easy is to use

The name of the product is in the text

Same logo

look alike

Seemed to use the same words - Ambient computing for the real world

This is definitely a hands free new way of receiving information which is the description of product A

Seems like very similar concepts

I say this because it shows the same logo

The brand name was shown for both and they are the same.

the branding and colours are very similar makes me think it is the same product

It is a device that incorporates AI

this is very appealing

The tagline sounds the same

the products are similar so it makes me think there connected.

Its made by the same company

it show the logo of io which is same

The names is kinda similar

I really think it is by the same company

again, looks to be hands free and has similar features

It's the style of the product

KEEGAN_EXHIBITS_109

## 2_Q24 - Humane - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 43 |
|   | Total | 100% | 43 |

KEEGAN_EXHIBITS_110

2_Q25 - Humane - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 14.2% | 41 |
| 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 53.1% | 153 |
| 3 | Don't know / No opinion | 32.6% | 94 |
| | Total | 100% | 288 |

KEEGAN_EXHIBITS_111

2_Q26 - Humane - If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim3} - Affiliated, connected, or associated Open-End

| |
|---|
| different type |
| Even though the logo shown in Product A does not match up with the one shown on the product, the fact that the product is still within the "AI-based assistance device" umbrella does make me feel like there is some sort of connection, even if tangentially so. |
| It has twh same program |
| They are talked about in the same ad so they are related |
| Seems like a similarly designed ad |
| its the same deal |
| They seem to have the same type of branding used |
| The logos look similar but I did not that the company name was different from the first product. |
| It seems to correlate with the same compnay |
| they sell the same product |
| Made by the same company Meta |
| Humane IO says it is a "family" of products, so this could one of them along with glasses and ear computer. |
| They both have something to deal with AI |
| Its another one with AI service which is like a phone that is AI initiated or generated and controlled by AI |
| This is made by Humane, but the font is similar to io |
| The features and how it operates sound the same. |
| The question is do I believe it's product A and whole I don't know for sure that is what I believe. |
| It seems to fit the description give for product a |
| Both use similar AI functionality and both ads "sound" alike in the way the product is introduced and described |
| Because you can connect to the Internet and when you ask a question, AI comes up all the |
| Just gut feeling. |

2_Q27 - Humane - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 20 |
| | Total | 100% | 20 |

KEEGAN_EXHIBITS_113

## 2_Q28 - Humane - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 3.6% | 9 |
| 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 54.3% | 134 |
| 3 | Don't know / No opinion | 42.1% | 104 |
| | Total | 100% | 247 |

KEEGAN_EXHIBITS_114

2_Q29 - Humane - If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim3} - Sponsored or approved Open-End

It's not part of META

I have no idea. But would love to know about this more.

META IS SPREADING INTO NEW WORLD OF TECHNOLOGY

It looks similar to each other

Because of the product name

The TM and site references were not the same.

it's understandable

KEEGAN_EXHIBITS_115

## 2_Q30 - Humane - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 2 |
| | Total | 100% | 2 |

3_Q19 - Meta - Please consider this product and answer the questions below the image:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw | 25.7% | 107 |
| 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw | 52.6% | 219 |
| 3 | Don't know / No opinion | 21.6% | 90 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_117

3_Q23 - Meta - If you know, what makes you say that the product shown above is put out by the same company as PRODUCT A? Please be as specific as possible.

${e://Field/stim4} - Same Open-End

the logo of Meta looks similar.

Looks same features

They are compatible.

I don't know, I just guessed because it sounded like it was.

Operate the same

They are META products.

Meta is in Oakley glasses.

Same logo, design, and packaging style.

Product A was putting a lot of focus on Hands free Ai products, as does this poster

Because they seem to have the same functionality

Nothing comes to mind at the current time of writing this statement

The explanation of the product and the product have similar attributes.

It says do in thecimage

This product demonstrates innovativeness and aligns with what product A stands for.

They seem integrated.

The things that this product does and that it is hands free makes it obvious.

I think it might be but saw Meta which threw me

The pictures are the same as I think I remember.

I feel like Meta is the leader in AI advanced technology

Product A was advertised as 16 different AI projects

Meta is the brand which is an AI company.

The sunglasses option is similar to the previous adds

the look of the ad

I can tell from the logo

META IS GETTING VERY TECH, JUST SEEMS FITTING

theyre all called IO

I saw the same item in Product A.

the style of design seems similar

It looks to be the same.

Has the sane theme/vibe and colors and or message

I remember the ad

It supports ai

yes

It offers the same type of capabilities, but a completely different item

it has it at the top of the previous screen

seems to be part of a family

They are both put out by meta

This product is smart glasses

It was advertised under the same company. It's more like a collaboration

meta  makes all those products

the io icon

The company name meta appears at the bottom of this advertisement, and meta was also featured as the company responsible for the manufacture of Iyo brand name products in the first advertisement.

The same looking meta AI company that helps produce other smart devices

No other brand given

I know it is a leader in AI and probably has a large amount of products that compliment the other.

Because it seems like it is something they would make

Because of the brand

These are made by meta, the other was made by io

Extremely similar

the product authentication

META IS AGGRESSIVELY PUTTING OUT A.I. PRODUCTS. BELIEVE THAT THEY WOULD PUT OUT EYEGLASSES AS WELL AS A PIN FOR SOMEONE WHO DOESN'T WANT TO WEAR EYEGLASSES.

All the products shown are put out by product A

They are both owned and advertised by the same company meta

It was evident to me based upon the content.

It's by Meta

Just guessing as they are all high tech/new tech

KEEGAN_EXHIBITS_119

Because product A is electric devices and the AI glasses fall into that category

Meta a.i

Cool

It seems like a product put out by meta in all of the examples

It's just my opinion and feeling about that

it says io

I'm confused by the question

Seems to use glasses like the other product

I believe based on the description of a new way to ask and receive information is similar to this product, therefore leaving me to believe it is put out by the same company.

Again, very similar

I say this because it shows the same company

The same technology and design

the colours and the brand name are identical

They look exactly the same and also looks like the same brand ad

it shows the same company

I just feel like if you show me product A and than show me another product that it's the same

it's handfree

KEEGAN_EXHIBITS_120

## 3_Q24 - Meta - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 34 |
|  | Total | 100% | 34 |

KEEGAN_EXHIBITS_121

3_Q25 - Meta - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 12.0% | 37 |
| 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 57.0% | 176 |
| 3 | Don't know / No opinion | 31.1% | 96 |
| | Total | 100% | 309 |

3_Q26 - Meta - If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim4} - Affiliated, connected, or associated Open-End

I think it's a co-branded product of two companies.

I think there's a chance that the first product is connected with Meta because it seems like the kind of product that Meta would put out.

It has the same design

Since it is an AI company I feel like it is probably connected with these brands to put out these smart glasses

The products seem simalar

connectivity products are similar for the purpose made

they perform the same duty

Meta

The details are great

I think theyre affiliated because they both seen to be able to ise Ai in the same way

Technology is similar

looks it

It is made by the same company

Because META owns the world because Trump pretty much owns Meta and it has become one large private equity that controls and manufactures every device that is currently tracking every human illegally. I am not being funny here either. I mean this with full honest intention.

It's very unique and a great product

it has the name on the brand

It has a different brand name but sounds like it is affiliated and they will work together.

More creative ways

It works on the same idea  no screen but it works with your voice

I remember seeing the Raybans in both of the

there are different brands shown in the ad and they are visibly different form one another

The meta style is better then all the products

Because Rayburn glasses, you can get the Internet and here again you get into AI

That is the way I think it is

KEEGAN_EXHIBITS_123

3_Q27 - Meta - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 13 |
| | Total | 100% | 13 |

KEEGAN_EXHIBITS_124

3_Q28 - Meta - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 4.8% | 13 |
| 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 58.5% | 159 |
| 3 | Don't know / No opinion | 36.8% | 100 |
| | Total | 100% | 272 |

KEEGAN_EXHIBITS_125

3_Q29 - Meta - If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim4} - Sponsored or approved Open-End

| |
|---|
| It is from the same brand |
| Seems again to be related but not completely the same |
| These type of products don't get released unless tested by professionals |
| All AI glasses are made by mete |
| I see the logo |
| Meta |
| They seem to relate to the same issues although for different service or results. One is for the ear and the other is for the eyes. Both use AI as the controller of the events or service provide |
| Same concept. |

3_Q30 - Meta - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 5 |
| | Total | 100% | 5 |

Q31 - Which, if any, of the following types of technology have you used in the last three months? Please select all that apply.



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | AI (artificial intelligence) app, website, or device | 50.5% | 210 |
| 2 | Smart appliance (e.g., TV, washer, refrigerator) | 39.2% | 163 |
| 3 | Internet search engine (e.g., Google, Bing) | 91.1% | 379 |
| 4 | Internet chat bot / automated customer service | 38.0% | 158 |

| | | | | |
|---|---|---|---|---|
| 5 | | Cloud computing / storage software | 31.7% | 132 |
| 6 | | Wearable fitness tracker | 34.6% | 144 |
| 7 | | Smartphone / tablet | 91.6% | 381 |
| 8 | | Music streaming service (e.g., Apple Music, Spotify) | 61.8% | 257 |
| 9 | | None of these | 0.2% | 1 |
| 10 | | Don't know / No opinion | 0.2% | 1 |
| | | Total | 100% | 416 |

KEEGAN_EXHIBITS_129

Q32 - In which of the following ways have you used AI (artificial intelligence) in the last three months? Please select all that apply.



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) | 80.0% | 168 |
| 2 | Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) | 79.5% | 167 |
| 6 | Chat bot / virtual customer assistance | 55.7% | 117 |
| 3 | Voice-controlled home assistant (e.g., Google Alexa) | 43.3% | 91 |

KEEGAN_EXHIBITS_130

| 8 | On-device voice assistant (e.g., Apple Siri) | 39.0% | 82 |
| 5 | Predictive text / writing assistant | 36.2% | 76 |
| 7 | Photo / video editing | 32.9% | 69 |
| 4 | Meeting transcriptions / summaries | 13.3% | 28 |
| 10 | Don't know / No opinion | 0.0% | 0 |
| 9 | None of these | 0.0% | 0 |
| | Total | 100% | 210 |

KEEGAN_EXHIBITS_131

## Q34 - Which of the following best describes your educational background?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Less than high school | 1.9% | 8 |
| 2 | High school graduate | 19.2% | 80 |
| 3 | Technical school or training | 2.6% | 11 |
| 4 | Some college | 18.0% | 75 |
| 5 | 2-year college degree | 11.1% | 46 |
| 6 | 4-year college degree | 33.4% | 139 |
| 7 | Master's / Professional degree | 12.3% | 51 |

KEEGAN_EXHIBITS_132

| 8 | | Doctorate or equivalent | 1.2% | 5 |
| 9 | | Prefer not to answer | 0.2% | 1 |
| | | Total | 100% | 416 |

KEEGAN_EXHIBITS_133

## Q35 - What is your gender?



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Male | 45.4% | 189 |
| 2 | Female | 54.6% | 227 |
| 3 | Non-binary or other | 0.0% | 0 |
| 4 | Prefer not to answer | 0.0% | 0 |
| | Total | 100% | 416 |

KEEGAN_EXHIBITS_134

Q36 - Which of the following includes your household's approximate annual income in 2025?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Under $35,000 | 19.5% | 81 |
| 2 | $35,000 - $49,999 | 16.1% | 67 |
| 3 | $50,000 - $74,999 | 19.7% | 82 |
| 4 | $75,000 - $99,999 | 17.1% | 71 |
| 5 | $100,000 - $124,999 | 7.9% | 33 |
| 6 | $125,000 - $149,999 | 9.6% | 40 |
| 7 | $150,000 or more | 9.9% | 41 |
| 8 | Prefer not to answer | 0.2% | 1 |
| | Total | 100% | 416 |

# Tabulated Data - Control Cell

KEEGAN_EXHIBITS_136

Q1 - CAPTCHA

Q2 - ...Do you understand and agree to follow the instructions provided above?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | I understand and agree | 100.0% | 389 |
| 2 | I do not understand and/or do not agree | 0.0% | 0 |
| 3 | Don't know | 0.0% | 0 |
| | Total | 100% | 389 |

KEEGAN_EXHIBITS_137

## Q3 - Which of the following age brackets contains your age on your last birthday?



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Under 18 | 0.0% | 0 |
| 2 | 18 - 30 | 19.8% | 77 |
| 3 | 31 - 40 | 13.4% | 52 |
| 4 | 41 - 50 | 18.5% | 72 |
| 5 | 51 - 60 | 18.5% | 72 |
| 6 | 61 - 70 | 16.2% | 63 |
| 7 | 71 or older | 13.6% | 53 |
|   | Total | 100% | 389 |

KEEGAN_EXHIBITS_138

Q4 - In which U.S. state or territory do you currently reside?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Please select from the following options: | 0.0% | 0 |
| 2 | Alabama | 1.3% | 5 |
| 3 | Alaska | 0.0% | 0 |
| 4 | Arizona | 2.6% | 10 |
| 5 | Arkansas | 0.3% | 1 |

| 6 | | California | 11.1% | 43 |
|---|---|---|---|---|
| 7 | | Colorado | 2.3% | 9 |
| 8 | | Connecticut | 1.0% | 4 |
| 9 | | Delaware | 1.3% | 5 |
| 10 | | District of Columbia | 0.3% | 1 |
| 11 | | Florida | 6.9% | 27 |
| 12 | | Georgia | 3.9% | 15 |
| 13 | | Hawaii | 0.0% | 0 |
| 14 | | Idaho | 1.0% | 4 |
| 15 | | Illinois | 2.1% | 8 |
| 16 | | Indiana | 2.3% | 9 |
| 17 | | Iowa | 0.8% | 3 |
| 18 | | Kansas | 1.0% | 4 |
| 19 | | Kentucky | 2.3% | 9 |
| 20 | | Louisiana | 1.3% | 5 |
| 21 | | Maine | 0.0% | 0 |
| 22 | | Maryland | 0.8% | 3 |
| 23 | | Massachusetts | 1.3% | 5 |
| 24 | | Michigan | 3.3% | 13 |
| 25 | | Minnesota | 0.8% | 3 |
| 26 | | Mississippi | 0.5% | 2 |
| 27 | | Missouri | 1.8% | 7 |
| 28 | | Montana | 0.3% | 1 |
| 29 | | Nebraska | 0.8% | 3 |
| 30 | | Nevada | 1.8% | 7 |
| 31 | | New Hampshire | 0.5% | 2 |
| 32 | | New Jersey | 3.6% | 14 |
| 33 | | New Mexico | 0.5% | 2 |
| 34 | | New York | 4.4% | 17 |
| 35 | | North Carolina | 4.6% | 18 |

KEEGAN_EXHIBITS_140

| 36 | | North Dakota | 0.0% | 0 |
|----|--|--------------|------|---|
| 37 | | Ohio | 4.1% | 16 |
| 38 | | Oklahoma | 0.0% | 0 |
| 39 | | Oregon | 1.0% | 4 |
| 40 | | Pennsylvania | 4.9% | 19 |
| 41 | | Puerto Rico | 0.0% | 0 |
| 42 | | Rhode Island | 0.5% | 2 |
| 43 | | South Carolina | 1.5% | 6 |
| 44 | | South Dakota | 0.0% | 0 |
| 45 | | Tennessee | 2.3% | 9 |
| 46 | | Texas | 8.7% | 34 |
| 47 | | Utah | 1.3% | 5 |
| 48 | | Vermont | 0.3% | 1 |
| 49 | | Virginia | 2.6% | 10 |
| 50 | | Washington | 2.6% | 10 |
| 51 | | West Virginia | 0.8% | 3 |
| 52 | | Wisconsin | 2.8% | 11 |
| 53 | | Wyoming | 0.0% | 0 |
| 54 | | Other | 0.0% | 0 |
| 55 | | None of these | 0.0% | 0 |
| 56 | | I do not live in the U.S. | 0.0% | 0 |
| | | Total | 100% | 389 |

KEEGAN_EXHIBITS_141

Q5 - Which of the following types of products, if any, have you personally used in the last year? Please select all that apply.



| # | | Answer | % | Count |
|---|---|---|---|---|
| 1 | | Laptop computer | 74.3% | 289 |
| 2 | | Bluetooth speaker / headphones | 52.7% | 205 |
| 3 | | Desktop computer | 54.0% | 210 |
| 4 | | Tablet | 55.5% | 216 |
| 5 | | Smartphone | 92.8% | 361 |
| 6 | | Smart watch / fitness tracker | 41.1% | 160 |
| 7 | | Gaming console | 42.2% | 164 |
| 8 | | None of these | 0.0% | 0 |
| | | Total | 100% | 389 |

Q6 - The product(s) that you have personally used in the last year appear below. Thinking of the last product you used in each category, please indicate your level of involvement in purchasing the product(s) that you used.

| # | Question | Purchased by myself | | Purchased in coordination with others | | Influenced purchase | | No involvement in purchase | | Don't know / Don't recall | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Laptop computer | 78.9% | 228 | 11.1% | 32 | 5.2% | 15 | 4.5% | 13 | 0.3% | 1 | 289 |
| 2 | Bluetooth speaker / headphones | 85.2% | 173 | 7.9% | 16 | 3.9% | 8 | 2.0% | 4 | 1.0% | 2 | 203 |
| 3 | Desktop computer | 74.3% | 156 | 10.5% | 22 | 4.8% | 10 | 9.5% | 20 | 1.0% | 2 | 210 |
| 4 | Tablet | 79.2% | 171 | 11.6% | 25 | 4.2% | 9 | 5.1% | 11 | 0.0% | 0 | 216 |
| 5 | Smartphone | 83.1% | 300 | 11.1% | 40 | 3.0% | 11 | 2.8% | 10 | 0.0% | 0 | 361 |
| 6 | Smart watch / fitness tracker | 86.8% | 138 | 8.2% | 13 | 1.9% | 3 | 3.1% | 5 | 0.0% | 0 | 159 |
| 7 | Gaming console | 81.0% | 132 | 12.9% | 21 | 2.5% | 4 | 3.7% | 6 | 0.0% | 0 | 163 |
| 8 | None of these | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0 |

KEEGAN_EXHIBITS_143

Q7 - Which of the following types of products, if any, do you expect to personally use in the next three months? Please select all that apply.



| # | | Answer | % | Count |
|---|---|---|---|---|
| 1 | | Laptop computer | 25.0% | 3 |
| 2 | | Bluetooth speaker / headphones | 16.7% | 2 |
| 3 | | Desktop computer | 0.0% | 0 |
| 4 | | Tablet | 0.0% | 0 |
| 5 | | Smartphone | 33.3% | 4 |
| 6 | | Smart watch / fitness tracker | 16.7% | 2 |
| 7 | | Gaming console | 8.3% | 1 |
| 8 | | None of these | 0.0% | 0 |
| | | Total | 100% | 12 |

KEEGAN_EXHIBITS_144

Q8 - The product(s) that you expect to personally use in the next three months appear below. Thinking of the product you are most likely to use in each category, please indicate your level of involvement in purchasing those products.

| # | Question | Purchased by myself | | Purchased in coordination with others | | Influenced purchase | | No involvement in purchase | | Don't know / Don't recall | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Laptop computer | 66.7% | 2 | 33.3% | 1 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 3 |
| 2 | Bluetooth speaker / headphones | 100.0% | 2 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 2 |
| 3 | Desktop computer | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0 |
| 4 | Tablet | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0 |
| 5 | Smartphone | 75.0% | 3 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 25.0% | 1 | 4 |
| 6 | Smart watch / fitness tracker | 100.0% | 2 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 2 |
| 7 | Gaming console | 100.0% | 1 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 1 |
| 8 | None of these | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0 |

KEEGAN_EXHIBITS_145

Q12 - Were you able to see PRODUCT A clearly, or not?



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | I was able to see PRODUCT A clearly | 100.0% | 389 |
| 2 | I was not able to see PRODUCT A clearly | 0.0% | 0 |
| 3 | Don't know | 0.0% | 0 |
| | Total | 100% | 389 |

## Q13 - If you know, approximately how often do you shop for personal electronics?



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Less than once per year | 29.0% | 113 |
| 2 | 1 - 2 times per year | 40.4% | 157 |
| 3 | 3 - 4 times per year | 19.0% | 74 |
| 4 | 5 or more times per year | 9.3% | 36 |
| 5 | Don't know / Don't recall | 2.3% | 9 |
| | Total | 100% | 389 |

Q16 - When you shop for electronics, who do you typically shop for? Please select all that apply.



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Yourself | 94.9% | 369 |
| 2 | Your child or children | 26.2% | 102 |
| 3 | Another family member | 31.4% | 122 |
| 4 | Employee(s) or other business use | 3.9% | 15 |
| 5 | Other | 1.5% | 6 |
| 6 | Don't know / Don't recall | 0.3% | 1 |
| | Total | 100% | 389 |

1_Q19 - IYO - Thinking of the first product that you saw earlier in this survey, PRODUCT A, do you believe:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw | 28.0% | 109 |
| 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw | 42.9% | 167 |
| 3 | Don't know / No opinion | 29.0% | 113 |
| | Total | 100% | 389 |

1_Q23 - IYO - If you know, what makes you say that the product shown above is put out by the same company as PRODUCT A? Please be as specific as possible.

${e://Field/stim2} - Same Open-End

| |
|---|
| was in the same ad |
| the brand name |
| the ads look similar |
| so relevant and sharp |
| seemed similar |
| same brand look |
| maybe part of the suite of products |
| iyo is close in letters to what was shown in A. |
| its unique concept |
| it's just another AI product that fits together |
| it has the same type of advertising style |
| i dont know to be honest |
| connected device |
| both are headphones |
| UE is not there |
| This products have attributes that are alike. |
| This product also has a similar description to product A. |
| They both use Ai |
| They both have AI |
| They are a little different |
| There is a variation on the name, both products similar |
| The technology and language |
| The same type of advertising. |
| The name IYO was in both |
| The logo |
| The font looks the same as the other two. |

KEEGAN_EXHIBITS_150

The design and focus match PRODUCT A

Similar brand style

Same product

Same pic and name in ad.

Same logo for brand

Same font and similar name

Same exact advertisement as the previous advertisement.

No opinion

Most of the things make to say that

Meta

Looks like same logo

Looks like a good product

Limits screen time. Helps you change your social media viewing patterns

Iyo One branding and AI wearable design clearly match.

It's an AI product similar to the last product

Its Mrts and I seen it on the screen with all the other SI related products being introduced by meta.

It's not a known manufacturer

It's an AI product that use use hands free.

It uses a natural language interface and Product A allows you to tailor the tone of responses.

It seems run by AI just the same

It seems like it

It seemed very similar as far as the essentials that the products were about

It says it

It looks to be one company based on the features

It looks like the same font as what I saw on the previous slide.

It just doesn't show anything that makes it seem like it is from the same company.

It is very similar

It is so driven and personal in nature

It is possible that both products could be made by the same company because they both are computer based and both use AI

It is described with the exact same words

It is an Ai product and Product A also has a collection of Ai products. So, it only sounds right that the above product iyO one would be apart of the collection of Ai products.

It has the same features

It has a similar theme/message.

It had the same pictures

If Product A is a iyO One product, then it appears to be the same company that I first saw.

I think they are the same company because I think this product above matches the description of the product A

I think it's the same company because they are under the same brand

I think I saw the brand

I think I remember seeing this product previously

I seen this ad before

I saw it before.

I saw it advertised on the page

I remember seeing it

I don't have enough information to say for sure because I can't see the product shown above or know what PRODUCT A is, but people usually determine this by matching specific details such as the brand name, logo, packaging design, manufacturer address, trademark symbols, or identical wording in the fine print that clearly identifies the same company.

I believe they both have the same street address.

I believe it is the same brand name

I also think this product is part of the family of PRODUCT A.  Product A includes a family of AI products.

Feels like the way it is talked about is similar

Both products are identical on work performance

Because this is something completely new that doesn't have a screen but can do all the stuff your phone can

Because they use the same type of coloring and format

Because my brother has the same device

AI model to talk you through

KEEGAN_EXHIBITS_152

## 1_Q24 - IYO - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 30 |
| | Total | 100% | 30 |

KEEGAN_EXHIBITS_153

## 1_Q25 - IYO - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 11.1% | 31 |
| 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 47.5% | 133 |
| 3 | Don't know / No opinion | 41.4% | 116 |
| | Total | 100% | 280 |

KEEGAN_EXHIBITS_154

1_Q26 - IYO - If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim2} - Affiliated, connected, or associated Open-End

Similar types of products.

Again, they look like they could be used together

I know Meta tends to promote the development of AI products, so it wouldn't be a surprise of this product and its manufacturing company, iyO, were supported by Meta.

It would make sense that Product A company would affiliate with various makers for their product.

IT SEEMS RIGHT

It's more innovative

I got to be the same company but the same functionality of the AI that controls the product so that's what makes me think it's the same or associated with the company au I believe.

It has similar characteristics

Not sure, I am just assuming.

The branding, shared logos, similar product naming, and consistent design style clearly link it to Product A's manufacturer.

Same brands

It produces headphones like other companies.

It's the same style product

Sounds like it might be in that family of products

RODUCT A

it shows collaboration

You are able to communicate with voice and have the device utilize AI functions.

Shows characteristics of description

They are both new AI products with different functionality

It seems a like they're aligned in some way

1_Q27 - IYO - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 11 |
| | Total | 100% | 11 |

KEEGAN_EXHIBITS_156

1_Q28 - IYO - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 3.6% | 9 |
| 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 48.2% | 120 |
| 3 | Don't know / No opinion | 48.2% | 120 |
| | Total | 100% | 249 |

KEEGAN_EXHIBITS_157

1_Q29 - IYO - If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim2} - Sponsored or approved Open-End

| |
|---|
| The product would make a good match with the product A |
| Different products but similar items |
| Even though the product does not match with the previous ones in terms of company or brand. I think these are all related in some way. |
| I also saw that product the first time around |
| I am not entirely sure |
| they have the same benefits and features |
| Design is similar |

KEEGAN_EXHIBITS_158

1_Q30 - IYO - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 2 |
| | Total | 100% | 2 |

2_Q19 - Humane - Please consider this product and answer the questions below the image:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw | 30.1% | 117 |
| 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw | 40.1% | 156 |
| 3 | Don't know / No opinion | 29.8% | 116 |
| | Total | 100% | 389 |

2_Q23 - Humane - If you know, what makes you say that the product shown above is put out by the same company as PRODUCT A? Please be as specific as possible.

${e://Field/stim3} - Same Open-End

| |
|---|
| product a advertises as an al-in-one ai tool. this is prewtty much an all-in-one ai tool |
| They have the same color font and background |
| It is highly remarkable |
| I think the design makes me say that |
| The fact it' has heavily involvement with AI |
| It reads similarly to the description for product A. |
| same theme and qualities |
| The logos use similar fonts |
| This is the kind of product that I invision when reading about Product A |
| Both use Ai |
| They're both AI. |
| Thy look like they could work together |
| The description and image give a similar feel though not quite exact. |
| It is the logo |
| It's the pin in both ads, the product is made by the top. |
| Similar to the glasses, it uses AI and the product A write up said it's a grouping of things that use AI |
| The particular AI assistant that is included |
| It seems like the same style ad |
| Both products appear to have the same AI capabilities. It seems the would be products from the same company. |
| The font differences and the company name displayed are different. |
| It is written as if they are referring to something they are bringing to market. |
| The product  matches with the concept. |
| It showing in the ad |
| It looks similar |
| The logo |
| No specific reason other than suspicion that the products are put out by the same company |

Its with AI and both have extraordinary features

Humane

Its looks and acts very similar

It also said it does what product A claims to do

I believe that product a is by the same company

It's fine meta I'm pretty sure

Most of the things make to say that

It matches the description from product a

The slogan is matching

The advertisement was seen previously

looks to have the same features

Like I said before it has the same type of advertising.

I think it says so at the bottom.

Because it is an Ai pin. The Ai product called Hu.ma.ne Ai pin would have to be apart of the collection of what Product A offers.

It clearly stated it in both descriptions

It seems similar

looks the same

it focuses on AI

It's also run by AI just like Product A

I believe it is put out by same company as Ray Ban

The branding, shared logos, similar product naming, and consistent design style clearly link it to Product A's manufacturer.

I just think they look the same and it's the same that's just what I think.

I seen it

its likable

Similar branding and business focused approach as PRODUCT A

Just a hunch

because its more unique concept and better

The company logos are very similar as well as the kind of electronic being highlighted.

They look super similar.

Wonderful technology. Easy to use and highly portable

KEEGAN_EXHIBITS_162

It looks similar

The same name of ai

It looks the same and has all the features as product A. I believe they are the same.

I seen this ad before

Not by same brand

It was an AI Pin as well and looks exactly the same

Because it says in description

Was just a giant ua....what is that a zoomed in pic?

Same exact description

I see the same logo

The description fits the product very well

not sure just going off the lettering

It is of the same variety

The language and name

I really dont know but it could be

They  have the same font.

I think this product is part of the "family" of AI from PRODUCT A.  Product A said it is a family of AI products.

The product in the advertisement is the same as the one in the previous advertisement.

The font appears to be the same in both.

The AI Pin description almost sounds similar to UE innovative way of family AI.

I remember seeing it from the ad from before

RODUCT A

they have the same branding

It allows the same type of AI integration and functions.

It says humane on both ads

I see the same logos at the bottom of the screen.

Because it says it is. I can read

it look similar

shows a line up of products to connect with the outside

i remember seeing it first

KEEGAN_EXHIBITS_163

another series of AI products that seem to go together

The half moon logo in the top left corner was in both.

It seems like it aligns

It is a device that uses AI.

This has AI technology to make life easier with features like making phone calls, sending messages or taking pictures.

Again it's a hands free product that does what the other devices do.

It's not a know manufacturer

Because the description and the products above seem somewhat similar to me but I could be wrong

KEEGAN_EXHIBITS_164

## 2_Q24 - Humane - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 23 |
| | Total | 100% | 23 |

KEEGAN_EXHIBITS_165

## 2_Q25 - Humane - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 8.8% | 24 |
| 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 50.4% | 137 |
| 3 | Don't know / No opinion | 40.8% | 111 |
| | Total | 100% | 272 |

KEEGAN_EXHIBITS_166

2_Q26 - Humane - If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim3} - Affiliated, connected, or associated Open-End

| |
|---|
| The use and promotion of AI. |
| Product A , with it's multi-functional AI uses, would affiliate with other makers for their product. |
| Ads seem similiar.  Ads seem like they were made by same team. |
| Uses AI in new ways |
| Not aure |
| It's the same pic in ad. |
| nothing that comes to mind |
| Same product |
| I believe this because they are both using AI in their products. |
| Because of the headphones other companies have them as well. |
| i dont know to be honest |
| Has some affiliation with the AI modrl |
| similar style ads |
| Just sounds like it might be in the family of products |
| It uses AI as does  product  A |
| They are both new AI products |

KEEGAN_EXHIBITS_167

2_Q27 - Humane - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 8 |
| | Total | 100% | 8 |

KEEGAN_EXHIBITS_168

## 2_Q28 - Humane - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 3.2% | 8 |
| 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 47.2% | 117 |
| 3 | Don't know / No opinion | 49.6% | 123 |
| | Total | 100% | 248 |

KEEGAN_EXHIBITS_169

2_Q29 - Humane - If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim3} - Sponsored or approved Open-End

I think it's about the same. I don't know about.

I don't have enough information to know this for sure because I can't see the product shown above or any details about PRODUCT A, but people usually conclude sponsorship or approval based on explicit statements like "official," "licensed," or "approved by," the presence of the original company's logo used with permission, legal trademark notices, co-branding on the packaging, or disclosures in the fine print indicating a formal partnership or licensing agreement.

Because they are all together

KEEGAN_EXHIBITS_170

## 2_Q30 - Humane - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 5 |
| | Total | 100% | 5 |

3_Q19 - Meta - Please consider this product and answer the questions below the image:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw | 23.7% | 92 |
| 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw | 48.6% | 189 |
| 3 | Don't know / No opinion | 27.8% | 108 |
| | Total | 100% | 389 |

KEEGAN_EXHIBITS_172

3_Q23 - Meta - If you know, what makes you say that the product shown above is put out by the same company as PRODUCT A? Please be as specific as possible.

${e://Field/stim4} - Same Open-End

| |
|---|
| they have a meta look to them |
| It has a similar theme/message. |
| Unsure |
| They're both AI. |
| Seeing that Meta displayed this ad, I would highly suspect that PRODUCT A is from that company as well. |
| It seems to fit with the product line and use of AI |
| They both are the same product. It's obvious to me. |
| Feels like the same company visually |
| Meta |
| Product a is a family of products that use AI so this seems like it fits |
| It uses a lot of the same descriptors as Product A |
| I can see Meta putting out a family of products. |
| A very familiar branding and titling |
| It shown on the ad |
| It had a similar marketing campaign. The visuals were also the same looking font. |
| I have seen it before |
| Both products sound like something Meta would do and they generally are the leader in putting new products like these to the marketplace |
| Meta |
| The same brand is showing in both ads.  Also, both have the same format. |
| It does what product A claimed it seems |
| don't know |
| becuase it is all meta products |
| The font shown |
| Ray-Bans branding, smart glasses form factor, and AI features align with Meta's products. |
| Most of the things make to say that |

KEEGAN_EXHIBITS_173

they seem like similar products

It had the same ad pictures

It is also matching with the slogan

I believe that Product A has a collection of Ai products that they have put out. These Meta Ai glasses have to be apart of their collection. It makes lots of sense.

Just my opinion

It's the same product

looks and sounds the same

focus on AI

Not sure

They all three link together for this new device

the first product also is rayban x meta colleboration

Meta. If I'm not mistaken Prodict A hjad a Meta logo or tag. This product clearly does

The glasses

Same product shown

it was part of the ad for the first product

just didn't seem like the similar company

The branding and focus on enterprise data match PRODUCT A

because its more innovative

Easy to use glasses. Highly intuitive

It seems ditting

Meta brand was in the first one as well

similarity

I don't know this for certain because I don't have details about the product shown above or PRODUCT A, but people typically make this determination by identifying the same company name, identical logos or trademarks, matching manufacturer or distributor information, the same brand website or customer service contact, or legally required fine-print text that names the same corporate owner.

I seen this ad before

Different brands

Has same brand logo

Some product for Smart glasses and it's in the same bracket.

This ad shows a variety of new concepts in wearables.  This one is by meta and feel the others in the ad are also.

It shows Metas name and Rayban

KEEGAN_EXHIBITS_174

It just reminded me of it

i dont know to be honest with you

Nothin is the most popular

It has the same logo

The same letters

Because it is meta

the ads look similar

UE is the same for both

I think it could be the same company because both seem to be offering products that blend AI function with everyday life, like wearing glasses.

It is a person ai device so it would fit the category

AI suite of products as far as I can tell

At the bottom of the product listing it said meta

Same style of products

They are both by Meta

Meta

It looked to be the same set up and font style

Artificial intelligence

It integrated and operates similar with AI.

I saw it was from the same brand.

connected device

because the first description was about AI products

looks like the same

They are the same brand as stated in the ad campaign

Its a product that helps with viewing video from your point of view.

It's a hands free device.

Because these are a family of products that have ai and let you use AI in new ways

Because from the viewing experience they seem similar

## 3_Q24 - Meta - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 11 |
| | Total | 100% | 11 |

KEEGAN_EXHIBITS_176

3_Q25 - Meta - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 9.4% | 28 |
| 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw | 54.2% | 161 |
| 3 | Don't know / No opinion | 36.4% | 108 |
| | Total | 100% | 297 |

KEEGAN_EXHIBITS_177

3_Q26 - Meta - If you know, what makes you say that the product shown above is affiliated, connected, or associated with the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim4} - Affiliated, connected, or associated Open-End

AI Glasses

They have the same features available with AI

said meta ai in both ads

It seems like some of the elements are made by the same brand and I think they are one in the same.

I see the Meta symbol at the bottom

The branding, shared logos, similar product naming, and consistent design style clearly link it to Product A's manufacturer.

The previous product was a product of ai suite and this product is an ai glass so there can be some association between the brands

It doesn't say a name, just 2 letters

Uncertain

All of the products are similar in AI features.

They are both useful for some of the same reasons.

samer type of product

I'm not sure it's just a hynch

Maybe it shares a company with them

Because it uses AI technology

the use of AL in both products leads me to believe that they intertwine with each other

3_Q27 - Meta - Don't know / No opinion



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Don't know / No opinion | 100.0% | 12 |
| | Total | 100% | 12 |

KEEGAN_EXHIBITS_179

3_Q28 - Meta - Do you believe that the product shown above:



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 6.3% | 17 |
| 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw | 53.9% | 145 |
| 3 | Don't know / No opinion | 39.8% | 107 |
| | Total | 100% | 269 |

3_Q29 - Meta - If you know, what makes you say that the product shown above is sponsored or approved by the company that puts out PRODUCT A? Please be as specific as possible.

${e://Field/stim4} - Sponsored or approved Open-End

It sounds like a product Meta would sponsor or approve.

No opinion

It has the Meta stamp on this one.

I think I remember seeing this product description

i thinks they sponsored

They could be working together.

AI is by meta

Sounds like it might be in that family of products

Meta technology

it carries the logo

There a different brand in all

It seems like they could be aligned

KEEGAN_EXHIBITS_181

3_Q30 - Meta - Don't know / No opinion



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Don't know / No opinion | 100.0% | 5 |
| | Total | 100% | 5 |

KEEGAN_EXHIBITS_182

Q31 - Which, if any, of the following types of technology have you used in the last three months? Please select all that apply.



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | AI (artificial intelligence) app, website, or device | 53.0% | 206 |
| 2 | Smart appliance (e.g., TV, washer, refrigerator) | 37.0% | 144 |
| 3 | Internet search engine (e.g., Google, Bing) | 92.3% | 359 |
| 4 | Internet chat bot / automated customer service | 41.4% | 161 |

| 5 | | Cloud computing / storage software | 29.8% | 116 |
|---|---|---|---|---|
| 6 | | Wearable fitness tracker | 32.4% | 126 |
| 7 | | Smartphone / tablet | 88.7% | 345 |
| 8 | | Music streaming service (e.g., Apple Music, Spotify) | 62.7% | 244 |
| 9 | | None of these | 0.3% | 1 |
| 10 | | Don't know / No opinion | 0.5% | 2 |
| | | Total | 100% | 389 |

KEEGAN_EXHIBITS_184

Q32 - In which of the following ways have you used AI (artificial intelligence) in the last three months? Please select all that apply.



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) | 82.5% | 170 |
| 2 | Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) | 76.2% | 157 |
| 6 | Chat bot / virtual customer assistance | 49.5% | 102 |
| 8 | On-device voice assistant (e.g., Apple Siri) | 47.1% | 97 |

| 3 | Voice-controlled home assistant (e.g., Google Alexa) | 42.2% | 87 |
| 5 | Predictive text / writing assistant | 35.0% | 72 |
| 7 | Photo / video editing | 31.1% | 64 |
| 4 | Meeting transcriptions / summaries | 16.5% | 34 |
| 9 | None of these | 0.5% | 1 |
| 10 | Don't know / No opinion | 0.0% | 0 |
| | Total | 100% | 206 |

KEEGAN_EXHIBITS_186

## Q34 - Which of the following best describes your educational background?



| # | Answer | % | Count |
|---|--------|---|-------|
| 1 | Less than high school | 1.8% | 7 |
| 2 | High school graduate | 18.3% | 71 |
| 3 | Technical school or training | 4.1% | 16 |
| 4 | Some college | 15.9% | 62 |
| 5 | 2-year college degree | 10.5% | 41 |
| 6 | 4-year college degree | 29.0% | 113 |
| 7 | Master's / Professional degree | 18.0% | 70 |

KEEGAN_EXHIBITS_187

| 8 | Doctorate or equivalent | 2.1% | 8 |
| 9 | Prefer not to answer | 0.3% | 1 |
| | Total | 100% | 389 |

KEEGAN_EXHIBITS_188

Q35 - What is your gender?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Male | 46.0% | 179 |
| 2 | Female | 54.0% | 210 |
| 3 | Non-binary or other | 0.0% | 0 |
| 4 | Prefer not to answer | 0.0% | 0 |
| | Total | 100% | 389 |

Q36 - Which of the following includes your household's approximate annual income in 2025?



| # | Answer | % | Count |
|---|---|---|---|
| 1 | Under $35,000 | 12.9% | 50 |
| 2 | $35,000 - $49,999 | 18.0% | 70 |
| 3 | $50,000 - $74,999 | 15.9% | 62 |
| 4 | $75,000 - $99,999 | 17.2% | 67 |
| 5 | $100,000 - $124,999 | 10.5% | 41 |
| 6 | $125,000 - $149,999 | 9.8% | 38 |
| 7 | $150,000 or more | 14.4% | 56 |
| 8 | Prefer not to answer | 1.3% | 5 |
| | Total | 100% | 389 |

KEEGAN_EXHIBITS_190

## Exhibit 6—Untabulated Data

**Data map provided below; data file produced electronically.**

KEEGAN_EXHIBITS_191

Variables

| Name | Position | Label | Measurement Level |
|---|---|---|---|
| StartDate | 1 | Start Date | Scale |
| EndDate | 2 | End Date | Scale |
| Status | 3 | Response Type | Scale |
| Progress | 4 | Progress | Scale |
| Duration__in_seconds_ | 5 | Duration (in seconds) | Scale |
| Finished | 6 | Finished | Scale |
| RecordedDate | 7 | Recorded Date | Scale |
| ResponseId | 8 | Response ID | Nominal |
| DistributionChannel | 9 | Distribution Channel | Nominal |
| UserLanguage | 10 | User Language | Nominal |
| Q_RecaptchaScore | 11 | Q_RecaptchaScore | Scale |
| Q_RelevantIDDuplicate | 12 | Q_RelevantIDDuplicate | Nominal |
| Q_RelevantIDDuplicateScore | 13 | Q_RelevantIDDuplicateScore | Scale |
| Q_RelevantIDFraudScore | 14 | Q_RelevantIDFraudScore | Scale |
| Q_RelevantIDLastStartDate | 15 | Q_RelevantIDLastStartDate | Scale |
| Q_DuplicateRespondent | 16 | Q_DuplicateRespondent | Nominal |
| Q2 | 17 | Beginning instruction | Scale |
| Q2_DO_1 | 18 | Beginning instruction - Display Order I understand and agree | Scale |
| Q2_DO_2 | 19 | Beginning instruction - Display Order I do not understand and/or do not agree | Scale |
| Q2_DO_3 | 20 | Beginning instruction - Display Order Don't know | Scale |
| Q3 | 21 | Age | Scale |
| Q4 | 22 | State | Scale |
| Q5_1 | 23 | Products - past Laptop computer | Scale |
| Q5_2 | 24 | Products - past Bluetooth speaker / headphones | Scale |
| Q5_3 | 25 | Products - past Desktop computer | Scale |
| Q5_4 | 26 | Products - past Tablet | Scale |
| Q5_5 | 27 | Products - past Smartphone | Scale |
| Q5_6 | 28 | Products - past Smart watch / fitness tracker | Scale |
| Q5_7 | 29 | Products - past Gaming console | Scale |
| Q5_8 | 30 | Products - past None of these | Scale |
| Q5_DO_1 | 31 | Products - past - Display Order Laptop computer | Scale |
| Q5_DO_2 | 32 | Products - past - Display Order Bluetooth speaker / headphones | Scale |
| Q5_DO_3 | 33 | Products - past - Display Order Desktop computer | Scale |
| Q5_DO_4 | 34 | Products - past - Display Order Tablet | Scale |
| Q5_DO_5 | 35 | Products - past - Display Order Smartphone | Scale |
| Q5_DO_6 | 36 | Products - past - Display Order Smart watch / fitness tracker | Scale |

KEEGAN_EXHIBITS_192

| | | |
|---|---|---|
| Q5_DO_7 | 37 Products - past - Display Order Gaming console | Scale |
| Q5_DO_8 | 38 Products - past - Display Order None of these | Scale |
| Q6_1 | 39 Decision maker matrix - past - Laptop computer | Scale |
| Q6_2 | 40 Decision maker matrix - past - Bluetooth speaker / headphones | Scale |
| Q6_3 | 41 Decision maker matrix - past - Desktop computer | Scale |
| Q6_4 | 42 Decision maker matrix - past - Tablet | Scale |
| Q6_5 | 43 Decision maker matrix - past - Smartphone | Scale |
| Q6_6 | 44 Decision maker matrix - past - Smart watch / fitness tracker | Scale |
| Q6_7 | 45 Decision maker matrix - past - Gaming console | Scale |
| Q6_8 | 46 Decision maker matrix - past - None of these | Scale |
| Q6_DO_1 | 47 Decision maker matrix - past - Display Order Laptop computer | Scale |
| Q6_DO_2 | 48 Decision maker matrix - past - Display Order Bluetooth speaker / headphones | Scale |
| Q6_DO_3 | 49 Decision maker matrix - past - Display Order Desktop computer | Scale |
| Q6_DO_4 | 50 Decision maker matrix - past - Display Order Tablet | Scale |
| Q6_DO_5 | 51 Decision maker matrix - past - Display Order Smartphone | Scale |
| Q6_DO_6 | 52 Decision maker matrix - past - Display Order Smart watch / fitness tracker | Scale |
| Q6_DO_7 | 53 Decision maker matrix - past - Display Order Gaming console | Scale |
| Q6_DO_8 | 54 Decision maker matrix - past - Display Order None of these | Scale |
| Q6_ADO_1 | 55 Decision maker matrix - past - Answer Display Order Purchased by myself | Scale |
| Q6_ADO_2 | 56 Decision maker matrix - past - Answer Display Order Purchased in coordination with others | Scale |
| Q6_ADO_3 | 57 Decision maker matrix - past - Answer Display Order Influenced purchase | Scale |
| Q6_ADO_4 | 58 Decision maker matrix - past - Answer Display Order No involvement in purchase | Scale |
| Q6_ADO_5 | 59 Decision maker matrix - | Scale |

KEEGAN_EXHIBITS_193

| | | | |
|---|---|---|---|
| | | past - Answer Display Order Don't know / Don't recall | |
| Q7_1 | 60 | Products - future Laptop computer | Scale |
| Q7_2 | 61 | Products - future Bluetooth speaker / headphones | Scale |
| Q7_3 | 62 | Products - future Desktop computer | Scale |
| Q7_4 | 63 | Products - future Tablet | Scale |
| Q7_5 | 64 | Products - future Smartphone | Scale |
| Q7_6 | 65 | Products - future Smart watch / fitness tracker | Scale |
| Q7_7 | 66 | Products - future Gaming console | Scale |
| Q7_8 | 67 | Products - future None of these | Scale |
| Q8_1 | 68 | Decision maker matrix - future - Laptop computer | Scale |
| Q8_2 | 69 | Decision maker matrix - future - Bluetooth speaker / headphones | Scale |
| Q8_3 | 70 | Decision maker matrix - future - Desktop computer | Scale |
| Q8_4 | 71 | Decision maker matrix - future - Tablet | Scale |
| Q8_5 | 72 | Decision maker matrix - future - Smartphone | Scale |
| Q8_6 | 73 | Decision maker matrix - future - Smart watch / fitness tracker | Scale |
| Q8_7 | 74 | Decision maker matrix - future - Gaming console | Scale |
| Q8_8 | 75 | Decision maker matrix - future - None of these | Scale |
| Q12 | 76 | See stimulus clearly | Scale |
| Q12_DO_1 | 77 | See stimulus clearly - Display Order I was able to see PRODUCT A clearly | Scale |
| Q12_DO_2 | 78 | See stimulus clearly - Display Order I was not able to see PRODUCT A clearly | Scale |
| Q12_DO_3 | 79 | See stimulus clearly - Display Order Don't know | Scale |
| Q13 | 80 | Distractor 1 | Scale |
| Q13_DO_1 | 81 | Distractor 1 - Display Order Less than once per year | Scale |
| Q13_DO_2 | 82 | Distractor 1 - Display Order 1 - 2 times per year | Scale |
| Q13_DO_3 | 83 | Distractor 1 - Display Order 3 - 4 times per year | Scale |
| Q13_DO_4 | 84 | Distractor 1 - Display Order 5 or more times per year | Scale |
| Q13_DO_5 | 85 | Distractor 1 - Display Order Don't know / Don't recall | Scale |
| Q14 | 86 | Array displayed | Scale |

KEEGAN_EXHIBITS_194

| | | | |
|---|---|---|---|
| Q14_DO_1 | 87 | Array displayed - Display Order ${e://Field/stim2} | Scale |
| Q14_DO_2 | 88 | Array displayed - Display Order ${e://Field/stim3} | Scale |
| Q14_DO_3 | 89 | Array displayed - Display Order ${e://Field/stim4} | Scale |
| Q16_1 | 90 | Distractor 2 Yourself | Scale |
| Q16_2 | 91 | Distractor 2 Your child or children | Scale |
| Q16_3 | 92 | Distractor 2 Another family member | Scale |
| Q16_4 | 93 | Distractor 2 Employee(s) or other business use | Scale |
| Q16_5 | 94 | Distractor 2 Other | Scale |
| Q16_6 | 95 | Distractor 2 Don't know / Don't recall | Scale |
| Q16_DO_1 | 96 | Distractor 2 - Display Order Yourself | Scale |
| Q16_DO_2 | 97 | Distractor 2 - Display Order Your child or children | Scale |
| Q16_DO_3 | 98 | Distractor 2 - Display Order Another family member | Scale |
| Q16_DO_4 | 99 | Distractor 2 - Display Order Employee(s) or other business use | Scale |
| Q16_DO_5 | 100 | Distractor 2 - Display Order Other | Scale |
| Q16_DO_6 | 101 | Distractor 2 - Display Order Don't know / Don't recall | Scale |
| A1_Q19 | 102 | ${e://Field/stim2} - Same | Scale |
| A1_Q19_DO_1 | 103 | Same - Display Order The product shown above <u>is</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw | Scale |
| A1_Q19_DO_2 | 104 | Same - Display Order The product shown above <u>is not</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw | Scale |
| A1_Q19_DO_3 | 105 | Same - Display Order Don't know / No opinion | Scale |
| A1_Q23 | 106 | ${e://Field/stim2} - Same Open-End | Nominal |
| A1_Q24_1 | 107 | ${e://Field/stim2} - Same Open-End DK Don't know / No opinion | Scale |
| A1_Q25 | 108 | ${e://Field/stim2} - Affiliated, connected, or associated | Scale |
| A1_Q25_DO_1 | 109 | Affiliated, connected, or associated - Display Order <u>Is</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |

KEEGAN_EXHIBITS_195

| | | | |
|---|---|---|---|
| A1_Q25_DO_2 | 110 | Affiliated, connected, or associated - Display Order <u>Is not</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A1_Q25_DO_3 | 111 | Affiliated, connected, or associated - Display Order Don't know / No opinion | Scale |
| A1_Q26 | 112 | ${e://Field/stim2} - Affiliated, connected, or associated Open-End | Nominal |
| A1_Q27_1 | 113 | ${e://Field/stim2} - Affiliated, connected, or associated Open-End DK Don't know / No opinion | Scale |
| A1_Q28 | 114 | ${e://Field/stim2} - Sponsored or approved | Scale |
| A1_Q28_DO_1 | 115 | Sponsored or approved - Display Order <u>Is</u> sponsored or approved by the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A1_Q28_DO_2 | 116 | Sponsored or approved - Display Order <u>Is not</u> sponsored or approved by the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A1_Q28_DO_3 | 117 | Sponsored or approved - Display Order Don't know / No opinion | Scale |
| A1_Q29 | 118 | ${e://Field/stim2} - Sponsored or approved Open-End | Nominal |
| A1_Q30_1 | 119 | ${e://Field/stim2} - Sponsored or approved Open-End DK Don't know / No opinion | Scale |
| A2_Q19 | 120 | ${e://Field/stim3} - Same | Scale |
| A2_Q19_DO_1 | 121 | Same - Display Order The product shown above <u>is</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw | Scale |
| A2_Q19_DO_2 | 122 | Same - Display Order The product shown above <u>is not</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw | Scale |
| A2_Q19_DO_3 | 123 | Same - Display Order Don't know / No opinion | Scale |
| A2_Q23 | 124 | ${e://Field/stim3} - Same Open-End | Nominal |
| A2_Q24_1 | 125 | ${e://Field/stim3} - Same Open-End DK Don't know / No opinion | Scale |
| A2_Q25 | 126 | ${e://Field/stim3} - | Scale |

KEEGAN_EXHIBITS_196

| | | | |
|---|---|---|---|
| | | Affiliated, connected, or associated | |
| A2_Q25_DO_1 | 127 | Affiliated, connected, or associated - Display Order <u>Is</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A2_Q25_DO_2 | 128 | Affiliated, connected, or associated - Display Order <u>Is not</u> affiliated, connected, or associated with the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A2_Q25_DO_3 | 129 | Affiliated, connected, or associated - Display Order Don't know / No opinion | Scale |
| A2_Q26 | 130 | ${e://Field/stim3} - Affiliated, connected, or associated Open-End | Nominal |
| A2_Q27_1 | 131 | ${e://Field/stim3} - Affiliated, connected, or associated Open-End DK Don't know / No opinion | Scale |
| A2_Q28 | 132 | ${e://Field/stim3} - Sponsored or approved | Scale |
| A2_Q28_DO_1 | 133 | Sponsored or approved - Display Order <u>Is</u> sponsored or approved by the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A2_Q28_DO_2 | 134 | Sponsored or approved - Display Order <u>Is not</u> sponsored or approved by the company that puts out <b>PRODUCT A</b>, the first product you saw | Scale |
| A2_Q28_DO_3 | 135 | Sponsored or approved - Display Order Don't know / No opinion | Scale |
| A2_Q29 | 136 | ${e://Field/stim3} - Sponsored or approved Open-End | Nominal |
| A2_Q30_1 | 137 | ${e://Field/stim3} - Sponsored or approved Open-End DK Don't know / No opinion | Scale |
| A3_Q19 | 138 | ${e://Field/stim4} - Same | Scale |
| A3_Q19_DO_1 | 139 | Same - Display Order The product shown above <u>is</u> put out by the same company as <b>PRODUCT A</b>, the first product you saw | Scale |
| A3_Q19_DO_2 | 140 | Same - Display Order The product shown above <u>is not</u> put out by the same company as <b>PRODUCT A</b>, the first product | Scale |

KEEGAN_EXHIBITS_197

| | | | |
|---|---|---|---|
| | | you saw | |
| A3_Q19_DO_3 | 141 | Same - Display Order Don't know / No opinion | Scale |
| A3_Q23 | 142 | ${e://Field/stim4} - Same Open-End | Nominal |
| A3_Q24_1 | 143 | ${e://Field/stim4} - Same Open-End DK Don't know / No opinion | Scale |
| A3_Q25 | 144 | ${e://Field/stim4} - Affiliated, connected, or associated | Scale |
| A3_Q25_DO_1 | 145 | Affiliated, connected, or associated - Display Order \<u>Is\</u> affiliated, connected, or associated with the company that puts out \<b>PRODUCT A\</b>, the first product you saw | Scale |
| A3_Q25_DO_2 | 146 | Affiliated, connected, or associated - Display Order \<u>Is not\</u> affiliated, connected, or associated with the company that puts out \<b>PRODUCT A\</b>, the first product you saw | Scale |
| A3_Q25_DO_3 | 147 | Affiliated, connected, or associated - Display Order Don't know / No opinion | Scale |
| A3_Q26 | 148 | ${e://Field/stim4} - Affiliated, connected, or associated Open-End | Nominal |
| A3_Q27_1 | 149 | ${e://Field/stim4} - Affiliated, connected, or associated Open-End DK Don't know / No opinion | Scale |
| A3_Q28 | 150 | ${e://Field/stim4} - Sponsored or approved | Scale |
| A3_Q28_DO_1 | 151 | Sponsored or approved - Display Order \<u>Is\</u> sponsored or approved by the company that puts out \<b>PRODUCT A\</b>, the first product you saw | Scale |
| A3_Q28_DO_2 | 152 | Sponsored or approved - Display Order \<u>Is not\</u> sponsored or approved by the company that puts out \<b>PRODUCT A\</b>, the first product you saw | Scale |
| A3_Q28_DO_3 | 153 | Sponsored or approved - Display Order Don't know / No opinion | Scale |
| A3_Q29 | 154 | ${e://Field/stim4} - Sponsored or approved Open-End | Nominal |
| A3_Q30_1 | 155 | ${e://Field/stim4} - Sponsored or approved Open-End DK Don't know / No opinion | Scale |
| Q31_1 | 156 | Tech types used AI (artificial intelligence) app, website, or device | Scale |

| Q31_2 | 157 | Tech types used Smart appliance (e.g., TV, washer, refrigerator) | Scale |
| Q31_3 | 158 | Tech types used Internet search engine (e.g., Google, Bing) | Scale |
| Q31_4 | 159 | Tech types used Internet chat bot / automated customer service | Scale |
| Q31_5 | 160 | Tech types used Cloud computing / storage software | Scale |
| Q31_6 | 161 | Tech types used Wearable fitness tracker | Scale |
| Q31_7 | 162 | Tech types used Smartphone / tablet | Scale |
| Q31_8 | 163 | Tech types used Music streaming service (e.g., Apple Music, Spotify) | Scale |
| Q31_9 | 164 | Tech types used None of these | Scale |
| Q31_10 | 165 | Tech types used Don't know / No opinion | Scale |
| Q31_DO_1 | 166 | Tech types used - Display Order AI (artificial intelligence) app, website, or device | Scale |
| Q31_DO_2 | 167 | Tech types used - Display Order Smart appliance (e.g., TV, washer, refrigerator) | Scale |
| Q31_DO_3 | 168 | Tech types used - Display Order Internet search engine (e.g., Google, Bing) | Scale |
| Q31_DO_4 | 169 | Tech types used - Display Order Internet chat bot / automated customer service | Scale |
| Q31_DO_5 | 170 | Tech types used - Display Order Cloud computing / storage software | Scale |
| Q31_DO_6 | 171 | Tech types used - Display Order Wearable fitness tracker | Scale |
| Q31_DO_7 | 172 | Tech types used - Display Order Smartphone / tablet | Scale |
| Q31_DO_8 | 173 | Tech types used - Display Order Music streaming service (e.g., Apple Music, Spotify) | Scale |
| Q31_DO_9 | 174 | Tech types used - Display Order None of these | Scale |
| Q31_DO_10 | 175 | Tech types used - Display Order Don't know / No opinion | Scale |
| Q32_1 | 176 | AI types used Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) | Scale |
| Q32_2 | 177 | AI types used Search engines with AI summaries (e.g., Google AI Overview, | Scale |

KEEGAN_EXHIBITS_199

| | | | |
|---|---|---|---|
| | | Bing Copilot Search) | |
| Q32_3 | 178 | AI types used Voice-controlled home assistant (e.g., Google Alexa) | Scale |
| Q32_4 | 179 | AI types used Meeting transcriptions / summaries | Scale |
| Q32_5 | 180 | AI types used Predictive text / writing assistant | Scale |
| Q32_6 | 181 | AI types used Chat bot / virtual customer assistance | Scale |
| Q32_7 | 182 | AI types used Photo / video editing | Scale |
| Q32_8 | 183 | AI types used On-device voice assistant (e.g., Apple Siri) | Scale |
| Q32_9 | 184 | AI types used None of these | Scale |
| Q32_10 | 185 | AI types used Don't know / No opinion | Scale |
| Q32_DO_1 | 186 | AI types used - Display Order Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) | Scale |
| Q32_DO_2 | 187 | AI types used - Display Order Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) | Scale |
| Q32_DO_3 | 188 | AI types used - Display Order Voice-controlled home assistant (e.g., Google Alexa) | Scale |
| Q32_DO_4 | 189 | AI types used - Display Order Meeting transcriptions / summaries | Scale |
| Q32_DO_5 | 190 | AI types used - Display Order Predictive text / writing assistant | Scale |
| Q32_DO_6 | 191 | AI types used - Display Order Chat bot / virtual customer assistance | Scale |
| Q32_DO_7 | 192 | AI types used - Display Order Photo / video editing | Scale |
| Q32_DO_8 | 193 | AI types used - Display Order On-device voice assistant (e.g., Apple Siri) | Scale |
| Q32_DO_9 | 194 | AI types used - Display Order None of these | Scale |
| Q32_DO_10 | 195 | AI types used - Display Order Don't know / No opinion | Scale |
| Q33 | 196 | Green | Nominal |
| Q34 | 197 | Education | Scale |
| Q34_DO_1 | 198 | Education - Display Order Less than high school | Scale |
| Q34_DO_2 | 199 | Education - Display Order High school graduate | Scale |
| Q34_DO_3 | 200 | Education - Display Order Technical school or | Scale |

KEEGAN_EXHIBITS_200

| | | | |
|---|---|---|---|
| | | training | |
| Q34_DO_4 | 201 | Education - Display Order Some college | Scale |
| Q34_DO_5 | 202 | Education - Display Order 2-year college degree | Scale |
| Q34_DO_6 | 203 | Education - Display Order 4-year college degree | Scale |
| Q34_DO_7 | 204 | Education - Display Order Master's / Professional degree | Scale |
| Q34_DO_8 | 205 | Education - Display Order Doctorate or equivalent | Scale |
| Q34_DO_9 | 206 | Education - Display Order Prefer not to answer | Scale |
| Q35 | 207 | Gender | Scale |
| Q35_DO_1 | 208 | Gender - Display Order Male | Scale |
| Q35_DO_2 | 209 | Gender - Display Order Female | Scale |
| Q35_DO_3 | 210 | Gender - Display Order Non-binary or other | Scale |
| Q35_DO_4 | 211 | Gender - Display Order Prefer not to answer | Scale |
| Q36 | 212 | Income | Scale |
| Q36_DO_1 | 213 | Income - Display Order Under $35,000 | Scale |
| Q36_DO_2 | 214 | Income - Display Order $35,000 - $49,999 | Scale |
| Q36_DO_3 | 215 | Income - Display Order $50,000 - $74,999 | Scale |
| Q36_DO_4 | 216 | Income - Display Order $75,000 - $99,999 | Scale |
| Q36_DO_5 | 217 | Income - Display Order $100,000 - $124,999 | Scale |
| Q36_DO_6 | 218 | Income - Display Order $125,000 - $149,999 | Scale |
| Q36_DO_7 | 219 | Income - Display Order $150,000 or more | Scale |
| Q36_DO_8 | 220 | Income - Display Order Prefer not to answer | Scale |
| Q37_Browser | 221 | Click to write the question text - Browser | Nominal |
| Q37_Version | 222 | Click to write the question text - Version | Nominal |
| Q37_Operating_System | 223 | Click to write the question text - Operating System | Nominal |
| Q37_Resolution | 224 | Click to write the question text - Resolution | Nominal |
| SC0 | 225 | Score | Scale |
| transaction_id | 226 | transaction_id | Nominal |
| Q_TotalDuration | 227 | Q_TotalDuration | Nominal |
| ResponseID.0 | 228 | ResponseID | Nominal |
| scrub | 229 | scrub | Nominal |
| LoopOrder | 230 | LoopOrder | Nominal |
| ClickedProductA | 231 | ClickedProductA | Nominal |
| ClickedLoop1 | 232 | ClickedLoop1 | Nominal |
| ClickedLoop2 | 233 | ClickedLoop2 | Nominal |
| ClickedLoop3 | 234 | ClickedLoop3 | Nominal |
| ClickedLoop4 | 235 | ClickedLoop4 | Nominal |
| ClickedProductA2 | 236 | ClickedProductA2 | Nominal |
| ClickedStim1Array | 237 | ClickedStim1Array | Nominal |

KEEGAN_EXHIBITS_201

| | | | |
|---|---|---|---|
| ClickedStim2Array | 238 | ClickedStim2Array | Nominal |
| ClickedStim3Array | 239 | ClickedStim3Array | Nominal |
| ClickedStim4Array | 240 | ClickedStim4Array | Nominal |
| ClickedStim1LOC | 241 | ClickedStim1LOC | Nominal |
| ClickedStim2LOC | 242 | ClickedStim2LOC | Nominal |
| ClickedStim3LOC | 243 | ClickedStim3LOC | Nominal |
| ClickedStim4LOC | 244 | ClickedStim4LOC | Nominal |
| cell | 245 | cell | Nominal |
| PRODUCT_A | 246 | PRODUCT A | Nominal |
| PRODUCTAurl | 247 | PRODUCTAurl | Nominal |
| img | 248 | img | Nominal |
| stim2_LB | 249 | stim2 LB | Nominal |
| stim2 | 250 | stim2 | Nominal |
| stim2_img | 251 | stim2_img | Nominal |
| stim3_LB | 252 | stim3 LB | Nominal |
| stim3 | 253 | stim3 | Nominal |
| stim3_img | 254 | stim3_img | Nominal |
| stim4_LB | 255 | stim4 LB | Nominal |
| stim4 | 256 | stim4 | Nominal |
| stim4_img | 257 | stim4_img | Nominal |
| gc | 258 | gc | Nominal |
| FL_425_DO_FL_426 | 259 | FL_425 - Block Randomizer - Display Order FL_426 | Scale |
| FL_425_DO_FL_427 | 260 | FL_425 - Block Randomizer - Display Order FL_427 | Scale |

KEEGAN_EXHIBITS_202

Value Labels

| Variable Value | | Label |
|---|---|---|
| Response Type | 0 | IP Address |
| | 1 | Survey Preview |
| | 2 | Survey Test |
| | 4 | Imported |
| | 8 | Spam |
| | 9 | Survey Preview Spam |
| | 12 | Imported Spam |
| | 16 | Offline |
| | 17 | Offline Survey Preview |
| | 32 | EX |
| | 40 | EX Spam |
| | 48 | EX Offline |
| | 132 | Reimported Imported |
| | 256 | Synthetic |
| Finished | 0 | False |
| | 1 | True |
| Beginning instruction | 1 | I understand and agree |
| | 2 | I do not understand and/or do not agree |
| | 3 | Don't know |
| Age | 1 | Under 18 |
| | 2 | 18 - 30 |
| | 3 | 31 - 40 |
| | 4 | 41 - 50 |
| | 5 | 51 - 60 |
| | 6 | 61 - 70 |
| | 7 | 71 or older |
| State | 1 | Please select from the following options: |
| | 2 | Alabama |
| | 3 | Alaska |
| | 4 | Arizona |
| | 5 | Arkansas |
| | 6 | California |
| | 7 | Colorado |
| | 8 | Connecticut |
| | 9 | Delaware |
| | 10 | District of Columbia |
| | 11 | Florida |
| | 12 | Georgia |
| | 13 | Hawaii |
| | 14 | Idaho |
| | 15 | Illinois |
| | 16 | Indiana |
| | 17 | Iowa |
| | 18 | Kansas |
| | 19 | Kentucky |
| | 20 | Louisiana |
| | 21 | Maine |
| | 22 | Maryland |
| | 23 | Massachusetts |
| | 24 | Michigan |
| | 25 | Minnesota |
| | 26 | Mississippi |
| | 27 | Missouri |
| | 28 | Montana |
| | 29 | Nebraska |
| | 30 | Nevada |

KEEGAN_EXHIBITS_203

|  | | |
|---|---|---|
|  | 31 | New Hampshire |
|  | 32 | New Jersey |
|  | 33 | New Mexico |
|  | 34 | New York |
|  | 35 | North Carolina |
|  | 36 | North Dakota |
|  | 37 | Ohio |
|  | 38 | Oklahoma |
|  | 39 | Oregon |
|  | 40 | Pennsylvania |
|  | 41 | Puerto Rico |
|  | 42 | Rhode Island |
|  | 43 | South Carolina |
|  | 44 | South Dakota |
|  | 45 | Tennessee |
|  | 46 | Texas |
|  | 47 | Utah |
|  | 48 | Vermont |
|  | 49 | Virginia |
|  | 50 | Washington |
|  | 51 | West Virginia |
|  | 52 | Wisconsin |
|  | 53 | Wyoming |
|  | 54 | Other |
|  | 55 | None of these |
|  | 56 | I do not live in the U.S. |
| Products - past Laptop computer | 1 | Laptop computer |
| Products - past Bluetooth speaker / headphones | 1 | Bluetooth speaker / headphones |
| Products - past Desktop computer | 1 | Desktop computer |
| Products - past Tablet | 1 | Tablet |
| Products - past Smartphone | 1 | Smartphone |
| Products - past Smart watch / fitness tracker | 1 | Smart watch / fitness tracker |
| Products - past Gaming console | 1 | Gaming console |
| Products - past None of these | 1 | None of these |
| Decision maker matrix - past - Laptop computer | 1 | Purchased by myself |
|  | 2 | Purchased in coordination with others |
|  | 3 | Influenced purchase |
|  | 4 | No involvement in purchase |
|  | 5 | Don't know / Don't recall |
| Decision maker matrix - past - Bluetooth speaker / headphones | 1 | Purchased by myself |
|  | 2 | Purchased in coordination with others |
|  | 3 | Influenced purchase |
|  | 4 | No involvement in purchase |
|  | 5 | Don't know / Don't recall |
| Decision maker matrix - past - Desktop computer | 1 | Purchased by myself |
|  | 2 | Purchased in coordination with others |
|  | 3 | Influenced purchase |
|  | 4 | No involvement in purchase |
|  | 5 | Don't know / Don't recall |
| Decision maker matrix - past - Tablet | 1 | Purchased by myself |
|  | 2 | Purchased in coordination with others |
|  | 3 | Influenced purchase |
|  | 4 | No involvement in purchase |
|  | 5 | Don't know / Don't recall |
| Decision maker matrix - past - Smartphone | 1 | Purchased by myself |
|  | 2 | Purchased in coordination with others |
|  | 3 | Influenced purchase |
|  | 4 | No involvement in purchase |
|  | 5 | Don't know / Don't recall |
| Decision maker matrix - past - | 1 | Purchased by myself |

KEEGAN_EXHIBITS_204

```
Smart watch / fitness tracker    2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - past -   1   Purchased by myself
Gaming console                   2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - past -   1   Purchased by myself
None of these                    2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Products - future Laptop         1   Laptop computer
computer
Products - future Bluetooth      1   Bluetooth speaker / headphones
speaker / headphones
Products - future Desktop        1   Desktop computer
computer
Products - future Tablet         1   Tablet
Products - future Smartphone     1   Smartphone
Products - future Smart watch /  1   Smart watch / fitness tracker
fitness tracker
Products - future Gaming console 1   Gaming console
Products - future None of these  1   None of these
Decision maker matrix - future - 1   Purchased by myself
Laptop computer                  2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
Bluetooth speaker / headphones   2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
Desktop computer                 2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
Tablet                           2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
Smartphone                       2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
Smart watch / fitness tracker    2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
Gaming console                   2   Purchased in coordination with others
                                 3   Influenced purchase
                                 4   No involvement in purchase
                                 5   Don't know / Don't recall
Decision maker matrix - future - 1   Purchased by myself
```

KEEGAN_EXHIBITS_205

| | | |
|---|---|---|
| None of these | 2 | Purchased in coordination with others |
| | 3 | Influenced purchase |
| | 4 | No involvement in purchase |
| | 5 | Don't know / Don't recall |
| See stimulus clearly | 1 | I was able to see PRODUCT A clearly |
| | 2 | I was not able to see PRODUCT A clearly |
| | 3 | Don't know |
| Distractor 1 | 1 | Less than once per year |
| | 2 | 1 - 2 times per year |
| | 3 | 3 - 4 times per year |
| | 4 | 5 or more times per year |
| | 5 | Don't know / Don't recall |
| Array displayed | 1 | ${e://Field/stim2} |
| | 2 | ${e://Field/stim3} |
| | 3 | ${e://Field/stim4} |
| Distractor 2 Yourself | 1 | Yourself |
| Distractor 2 Your child or children | 1 | Your child or children |
| Distractor 2 Another family member | 1 | Another family member |
| Distractor 2 Employee(s) or other business use | 1 | Employee(s) or other business use |
| Distractor 2 Other | 1 | Other |
| Distractor 2 Don't know / Don't recall | 1 | Don't know / Don't recall |
| ${e://Field/stim2} - Same | 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw |
| | 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim2} - Same Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim2} - Affiliated, connected, or associated | 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw |
| | 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim2} - Affiliated, connected, or associated Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim2} - Sponsored or approved | 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw |
| | 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim2} - Sponsored or approved Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim3} - Same | 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw |
| | 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim3} - Same Open- | 1 | Don't know / No opinion |

KEEGAN_EXHIBITS_206

| | | |
|---|---|---|
| End DK Don't know / No opinion | | |
| ${e://Field/stim3} - Affiliated, connected, or associated | 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw |
| | 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim3} - Affiliated, connected, or associated Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim3} - Sponsored or approved | 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw |
| | 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim3} - Sponsored or approved Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim4} - Same | 1 | The product shown above is put out by the same company as PRODUCT A, the first product you saw |
| | 2 | The product shown above is not put out by the same company as PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim4} - Same Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim4} - Affiliated, connected, or associated | 1 | Is affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw |
| | 2 | Is not affiliated, connected, or associated with the company that puts out PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim4} - Affiliated, connected, or associated Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| ${e://Field/stim4} - Sponsored or approved | 1 | Is sponsored or approved by the company that puts out PRODUCT A, the first product you saw |
| | 2 | Is not sponsored or approved by the company that puts out PRODUCT A, the first product you saw |
| | 3 | Don't know / No opinion |
| ${e://Field/stim4} - Sponsored or approved Open-End DK Don't know / No opinion | 1 | Don't know / No opinion |
| Tech types used AI (artificial intelligence) app, website, or device | 1 | AI (artificial intelligence) app, website, or device |
| Tech types used Smart appliance (e.g., TV, washer, refrigerator) | 1 | Smart appliance (e.g., TV, washer, refrigerator) |
| Tech types used Internet search engine (e.g., Google, Bing) | 1 | Internet search engine (e.g., Google, Bing) |
| Tech types used Internet chat bot / automated customer service | 1 | Internet chat bot / automated customer service |
| Tech types used Cloud computing / storage software | 1 | Cloud computing / storage software |
| Tech types used Wearable fitness | 1 | Wearable fitness tracker |

KEEGAN_EXHIBITS_207

| | | |
|---|---|---|
| tracker | | |
| Tech types used Smartphone / tablet | 1 | Smartphone / tablet |
| Tech types used Music streaming service (e.g., Apple Music, Spotify) | 1 | Music streaming service (e.g., Apple Music, Spotify) |
| Tech types used None of these | 1 | None of these |
| Tech types used Don't know / No opinion | 1 | Don't know / No opinion |
| AI types used Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) | 1 | Smartphone / tablet app and/or website (e.g., ChatGPT, Google Gemini) |
| AI types used Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) | 1 | Search engines with AI summaries (e.g., Google AI Overview, Bing Copilot Search) |
| AI types used Voice-controlled home assistant (e.g., Google Alexa) | 1 | Voice-controlled home assistant (e.g., Google Alexa) |
| AI types used Meeting transcriptions / summaries | 1 | Meeting transcriptions / summaries |
| AI types used Predictive text / writing assistant | 1 | Predictive text / writing assistant |
| AI types used Chat bot / virtual customer assistance | 1 | Chat bot / virtual customer assistance |
| AI types used Photo / video editing | 1 | Photo / video editing |
| AI types used On-device voice assistant (e.g., Apple Siri) | 1 | On-device voice assistant (e.g., Apple Siri) |
| AI types used None of these | 1 | None of these |
| AI types used Don't know / No opinion | 1 | Don't know / No opinion |
| Education | 1 | Less than high school |
| | 2 | High school graduate |
| | 3 | Technical school or training |
| | 4 | Some college |
| | 5 | 2-year college degree |
| | 6 | 4-year college degree |
| | 7 | Master's / Professional degree |
| | 8 | Doctorate or equivalent |
| | 9 | Prefer not to answer |
| Gender | 1 | Male |
| | 2 | Female |
| | 3 | Non-binary or other |
| | 4 | Prefer not to answer |
| Income | 1 | Under $35,000 |
| | 2 | $35,000 - $49,999 |
| | 3 | $50,000 - $74,999 |
| | 4 | $75,000 - $99,999 |
| | 5 | $100,000 - $124,999 |
| | 6 | $125,000 - $149,999 |
| | 7 | $150,000 or more |
| | 8 | Prefer not to answer |

KEEGAN_EXHIBITS_208

**Exhibit 7—Disposition of Contacts**

KEEGAN_EXHIBITS_209



**KEEGAN & DONATO**
CONSULTING, LLC

## Disposition of Contacts - IYO, Inc. v. IO Products, Inc., et al.

|  | n | % |
|---|---|---|
| Responded to invitation | 1,684 | 100.0% |
|  |  |  |
| Did not finish | 525 | 31.2% |
| Rejected - failed - instruction acknowledgement question | 31 | 1.8% |
| Rejected - failed - age question (under 18) | 1 | 0.1% |
| Rejected - failed - not a U.S. resident / did not select a state | 0 | 0.0% |
| Rejected - failed - no purchase of qualifying device | 35 | 2.1% |
| Rejected - failed - could not see stimulus | 208 | 12.4% |
| Rejected - failed - low quality response | 55 | 3.3% |
| Rejected - failed - speeders | 9 | 0.5% |
| Rejected - failed - data quality/attention filter question ("Green") | 0 | 0.0% |
| Rejected - failed - fraud detection measures | 15 | 0.9% |
| Rejected - over quota | 0 | 0.0% |
| Total qualified respondents | 805 | 47.8% |