QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

*Attorneys for Defendants io Products, Inc.,
OpenAI, Inc., OpenAI, LLC, and Sam Altman*

JONES DAY
David Kiernan (Bar No. 215335)
dkiernan@jonesday.com
555 California Street 26th Floor
San Francisco, California 94104
Telephone:     (415) 875-5745

Meredith Wilkes (admitted *pro hac vice*)
mwilkes@jonesday.com
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone     (216) 586-7231

*Attorneys for Defendant Sir Jonathan Paul Ive*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IYO, INC. <br><br> Plaintiff, <br><br> v. <br><br> IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, <br><br> Defendants. | Case No. 3:25-cv-4861-TLT <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

Page

INTRODUCTION.................................................................................................................1

FACTUAL BACKGROUND ...............................................................................................2

    A.    Plaintiff's Unsuccessful Efforts to Launch An AI Product..................................2

    B.    Defendants' Merger Announcement ....................................................................3

    C.    Plaintiff Seeks a Temporary Restraining Order .................................................3

    D.    The Court Grants a Narrow TRO ........................................................................4

    E.    Plaintiff's CEO Admits Plaintiff Is Not Making "a Mass Market Device" ..............4

    F.    Defendants Decide Not to Use the "io" Name ....................................................5

    G.    Plaintiff Declines Stipulated Extension of the TRO ...........................................5

    H.    Plaintiff Produces No Documents in Discovery .................................................6

LEGAL STANDARD ..........................................................................................................7

ARGUMENT .......................................................................................................................7

I.     PLAINTIFF'S REQUEST IS MOOT .......................................................................7

II.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.........................................10

    A.    Likelihood of Success on the Merits ..................................................................10

        1.    The Marks Are Not Similar.....................................................................10

        2.    Degree of Consumer Care Weighs Heavily in Favor of Defendants ...........11

        3.    Relatedness of the Goods Favors Defendants ............................................12

        4.    No Overlap in Marketing Channels Favors Finding Confusion ..................13

        5.    There is No Evidence of Actual Confusion.................................................14

        6.    The Strength of the Marks is Neutral ........................................................20

        7.    There Was No Intent to Infringe ...............................................................20

        8.    Plaintiff Admits that No Expansion Plans Help its Position.........................22

        9.    Overall Balancing.....................................................................................22

    B.    Plaintiff Cannot Show Irreparable Harm..............................................................22

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

C.     The Balance of Equities and Public Interest Counsel Strongly Against Relief ....................................................................................................................24

III.     PLAINTIFF'S PROPOSED ORDER IS UNDULY BROAD ............................................25

CONCLUSION ..................................................................................................................25

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**Page**

## Cases

*Adarand Constructors, Inc. v. Slater*,
    528 U.S. 216 (2000) ...................................................................................................... 8

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
    2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) .......................................................... 8

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ......................................................................................................... 8

*Am. Footwear Corp. v. Gen. Footwear Co.*,
    609 F.2d 655 (2d Cir. 1979) ...................................................................................... 17

*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979) ...................................................................................... 21

*Apple Inc. v. Samsung Elecs. Co.*,
    735 F.3d 1352 (Fed. Cir. 2013) .................................................................................... 9

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
    613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) ........................ 14

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) ...................................................................................... 26

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
    923 F. Supp. 2d 1245 (S.D. Cal. 2013) ...................................................................... 17

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) .................................................................................... 21

*Card Tech Int'l LLLP v. Provenzano*,
    2011 WL 13220408 (C.D. Cal. Nov. 7, 2011) ............................................................ 8

*Cherokee Inc. v. Wilson Sporting Goods Co.*,
    2015 WL 3930041 (C.D. Cal. June 25, 2015) ............................................................. 8

*Columbia Pictures Indus., Inc. v. Miramax Films Corp.*,
    11 F. Supp. 2d 1179 (C.D. Cal. 1998) .......................................................................... 9

*Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*,
    2014 WL 5361548 (N.D. Cal. Oct. 20, 2014) ............................................................ 24

*Cyclone USA v. LL&C Dealer Servs. LLC*,
    2004 WL 7325117 (C.D. Cal. Apr. 14, 2004) .............................................................. 8

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

*Daubert v. Merrell Dow Pharms. Inc.*,
  509 U.S. 579 (1993) ....................................................................................................... 14

*DISH Network Corp. v. F.C.C.*,
  653 F.3d 771 (9th Cir. 2011)........................................................................................... 22

*Enea Embedded Tech., Inc. v. Eneas Corp.*,
  2009 WL 648891 (D. Ariz. Mar. 11, 2009) ..................................................................... 25

*Entrepreneur Media, Inc. v. Smith*,
  279 F.3d 1135 (9th Cir. 2002)..................................................................................... 13, 22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ......................................................................................................... 8

*Glow Indus., Inc. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002)............................................................................. 20

*Grasshopper Gardens, Inc. v. PMA Mech. LLC*,
  2025 WL 2711066 (N.D.N.Y. Sept. 23, 2025) ................................................................ 17

*Growler Station, Inc. v. Foundry Growler Station, LLC*,
  2018 WL 6164301 (C.D. Cal. July 19, 2018) .................................................................. 10

*Guichard v. Universal City Studios, LLLP*,
  2007 WL 1750216 (N.D. Cal. June 15, 2007),
  *aff'd,* 261 F. App'x 15 (9th Cir. 2007) .......................................................................... 24

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
  736 F.3d 1239 (9th Cir. 2013).......................................................................................... 24

*Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*,
  2021 WL 2185699 (N.D. Ga. May 28, 2021) .................................................................. 17

*iCall, Inc. v. Tribair, Inc.*,
  2012 WL 5878389 (N.D. Cal. Nov. 21, 2012)..............................................................23-24

*Innospan Corp. v. Intuit Inc.*,
  2011 WL 2669465 (N.D. Cal. July 7, 2011) .................................................................... 24

*Jacobsen v. Katzer*,
  2007 WL 2358628 (N.D. Cal. Aug. 17, 2007),
  *vacated in part*, 535 F.3d 1373 (Fed. Cir. 2008)............................................................. 9

*JGX, Inc. v. Handlery*,
  2018 WL 984856 (N.D. Cal. Feb. 20, 2018)..................................................................... 9

*Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*,
  2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ................................................................... 15

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

*Kournikova v. Gen. Media Commc'ns Inc.*,
    278 F. Supp. 2d 1111 (C.D. Cal. 2003)......................................................................... 18

*Kudos Inc. v. Kudoboard LLC*,
    2021 WL 5415258 (N.D. Cal. Nov. 20, 2021).................................................... 18, 19

*La Quinta Worldwide, LLC v. Q.R.T.M, S.A. de C.V.*,
    2011 WL 13233546 (D. Ariz. Feb. 16, 2011) ......................................................... 15

*Langer v. Music City Hotel LP*,
    2021 WL 5919825 (N.D. Cal. Dec. 15, 2021) .......................................................... 9

*LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*,
    2023 WL 6930330 (N.D. Cal. Oct. 19, 2023), *aff'd sub nom., LegalForce*
    *RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122 (9th Cir. 2024) ............................ 9

*Lerner & Rowe PC v. Brown Engstrand & Shely LLC*,
    119 F.4th 711 (9th Cir. 2024).................................................................................... 14

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
    434 F.3d 1150 (9th Cir. 2006)...................................................................................... 8

*M2 Software, Inc. v. Madacy Ent.*,
    421 F.3d 1073 (9th Cir. 2005)................................................................................... 14

*Mach. Head v. Dewey Glob. Holdings Inc.*,
    2001 WL 1747180 (N.D. Cal. Dec. 13, 2001) ........................................................ 22

*Malletier v. Dooney & Bourke, Inc.*,
    525 F.Supp.2d 558 (S.D.N.Y. 2007)........................................................................ 15

*Motorola Inc. v. Qualcomm Inc.*,
    1997 WL 838877 (S.D. Cal. Apr. 24, 1997),
    *aff'd*, 135 F.3d 776 (Fed. Cir. 1998) ......................................................................... 7

*Multiple Energy Techs., LLC v. Hologenix, LLC*,
    2019 WL 2619649 (C.D. Cal. June 3, 2019)............................................................ 14

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
    638 F.3d 1137 (9th Cir. 2011).................................................................... 11, 13, 18

*OneIndustries, LLC v. Jim O'Neal Distributing*,
    578 F.3d 1154 (9th Cir. 2009).................................................................................... 11

*Pollution Denim & Co. v. Pollution Clothing Co.*,
    547 F. Supp. 2d 1132 (C.D. Cal. 2007)...................................................................... 7

*Porsche Cars N. Am., Inc. v. Spencer*,
    2000 WL 641209 (E.D. Cal. May 18, 2000).............................................................. 9

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

*Rearden LLC v. Rearden Com., Inc.*,
   683 F.3d 1190 (9th Cir. 2012)..................................................................................................20

*Reinsdorf v. Skechers U.S.A.*,
   922 F. Supp. 2d 866 (C.D. Cal. 2013)......................................................................................18

*Sarieddine v. Connected Int'l Inc.*,
   2025 WL 1513777 (9th Cir. May 28, 2025) .............................................................................24

*Sierra Forest Legacy v. Rey*,
   577 F.3d 1015 (9th Cir. 2009)....................................................................................................7

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ....................................................................................................12

*Teetex LLC v. Zeetex, LLC*,
   2022 WL 1203097 (N.D. Cal. Apr. 22, 2022) ..........................................................................19

*THOIP v. Walt Disney Co.*,
   690 F. Supp. 2d 218 (S.D.N.Y. 2010) ......................................................................................17

*THOIP v. Walt Disney Co.*,
   788 F. Supp. 2d 168 (S.D.N.Y. 2011).......................................................................................17

*Timeless Prod. FZ LLC v. Vieconnect*,
   2025 WL 1696560 (N.D. Cal. June 17, 2025) ..........................................................................10

*Toys "R" Us, Inc. v. Akkaoui*,
   1996 WL 772709 (N.D. Cal. Oct. 29, 1996)...............................................................................8

*U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*,
   775 F.3d 128 (2d Cir. 2014) .......................................................................................................7

*United States v. W. T. Grant Co.*,
   345 U.S. 629 (1953) ....................................................................................................................9

*Valador, Inc. v. HTC Corp.*,
   242 F. Supp. 3d 448 (E.D. Va. 2017), *aff'd*, 707 F. App'x 138 (4th Cir. 2017)............... 16, 19

*Volkswagenwerk Aktiengesellschaft v. Church*,
   411 F.2d 350 (9th Cir.) *supplemented*, 413 F.2d 1126 (9th Cir. 1969)....................................9

*Wahoo Int'l, Inc. v. Phix Dr., Inc.*,
   2014 WL 2106482 (S.D. Cal. May 20, 2014) ...........................................................................24

*Water Pik, Inc. v. Med-Sys., Inc.*,
   726 F.3d 1136 (10th Cir. 2013)..................................................................................................16

*Weight Watchers Int'l, Inc. v. Stouffer Corp.*,
   744 F.Supp. 1259 (S.D.N.Y. 1990)...........................................................................................19

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

*WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*,
  2020 WL 83845 (N.D. Cal. Jan. 7, 2020) ..................................................................... 8

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................ 7, 10, 25

*Y.Y.G.M. SA v. Redbubble, Inc.*,
  2020 WL 3984528 (C.D. Cal. July 10, 2020) ........................................................ 10

*Yuga Labs, Inc. v. Ripps*,
  144 F.4th 1137 (9th Cir. 2025)............................................................................ 14, 19

*Zazu Designs v. L'Oreal, S.A.*,
  979 F.2d 499 (7th Cir. 1992).............................................................................. 21

*Zora Labs, Inc. v. Deloitte Consulting, LLP*,
  2025 WL 2104953 (S.D.N.Y. July 28, 2025) ........................................................ 13, 22

## Statutes

15 U.S.C. § 1116 ................................................................................................... 22

## Other Authorities

Federal Rule of Evidence 401 ................................................................................ 15

Local Rules 7-2(d) and 7-5.................................................................................... 10

4 McCarthy on Trademarks and Unfair Competition § 30:47 (5th ed.)........................................ 10

Shari Diamond, "Reference Guide on Survey Research," *Reference Manual on Scientific Evidence* 359, 383 (Fed. Judicial Ctr. 2011) ........................................... 18

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

**INTRODUCTION**

Plaintiff has not met its burden of showing it is entitled to a preliminary injunction. Nor can it. Not only did Plaintiff fail to submit a single fact witness declaration with its motion, but at least three significant developments that occurred after this Court's temporary restraining order compel denial of the relief Plaintiff seeks.

*First,* Defendants are not going to use "io" in connection with any hardware offerings. Because Defendants have never offered or sold any products using "io," there is no live controversy between the parties, and therefore no subject matter jurisdiction over this dispute. But even if the Court denies Defendants' pending motion to dismiss, Defendants' declaration of nonuse moots the foundation for Plaintiff's motion because it eliminates any plausible risk of future marketplace confusion or irreparable harm. Without any actual or threatened use of the challenged mark, there is nothing left to analyze that could warrant a preliminary injunction, and nothing at all that would support Plaintiff's assertions of irreparable harm. Indeed, unlike Plaintiff's TRO application, Plaintiff submitted not a single declaration in connection with this motion even claiming that Defendants are currently engaged in any activity that is harming it—or that they have done so at any time following the issuance of the TRO.

*Second,* although Plaintiff represented to this Court in connection with the TRO application that the iyO One was designed for "general audiences," Plaintiff's CEO later admitted that the iyO One is ***not*** a mass-market device, but targeted to a niche market of "audiophiles," "tech early adopters," and "AI enthusiasts." This admission directly contradicts his prior representations, which were material to this Court's and the Ninth Circuit's analysis of the *Sleekcraft* factors and assessment of Plaintiff's asserted harm. Stripped of those statements, Plaintiff's evidentiary showing falls far short of its TRO evidence nine months ago—even if Defendants were proceeding with using an "io" mark, which they are not.

*Third,* none of the events Plaintiff represented last June to the Court were imminent, or would be remedied by temporary injunctive relief, have occurred. Plaintiff's iyO One product remains "Pre-Order" only; the most recent promised shipping date of "Late 2025" came and went without fulfillment. Plaintiff has gone dark on social media for nearly six months—its last posts

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

having drawn nothing but unanswered customer complaints and inquiries about unshipped orders. Plaintiff's attempt to blame Defendants for this apparent shuttering of its business cannot be squared with the facts: Defendants have complied with the temporary restraining order since its issuance last June, and it has been public knowledge for over a month that Defendants will not use an "io" mark for AI-enabled hardware. The reality is straightforward: the alleged trademark infringement by the "io" name is not the cause of Plaintiff's prolonged business struggles, and any injunctive relief this Court might issue would be ineffective at remedying them.

Plaintiff's motion for a preliminary injunction should be denied in its entirety.

## FACTUAL BACKGROUND

### A. Plaintiff's Unsuccessful Efforts to Launch An AI Product

According to Plaintiff, iyO began its "mission" in 2018. ECF 1 ¶ 2. It was not until April 2024 that Plaintiff announced the iyO One, promising all models would ship by "winter 2024." ECF 1 ¶ 54; ECF 26 ¶ 5. It missed that deadline. ECF 26 ¶ 5; ECF 26-2 at 3. When Plaintiff attempted a product demonstration in May 2025, its own CEO called it "embarrassing" and acknowledged multiple "demo fails." ECF 26-5 at 4-5. The next month, Plaintiff told the Court that the ship date for the iyO One would be September or October 2025—although its website still promised August. ECF 1 ¶ 44; ECF 30 ¶ 3; ECF 30-3. Plaintiff missed those deadlines, too. In October 2025, it quietly revised its website to promise shipment in "Late 2025"—a date that has now also passed. Pollock Decl., Ex. I.

It is now three months into 2026, and Plaintiff's website continues to offer the iyO One for "Pre-Order" with a ship date of "Late 2025"—an obvious impossibility that Plaintiff has not bothered to correct. Pollock Decl., Ex. J. Plaintiff has provided no indication that it has fulfilled a single preorder, and no evidence in the record suggests when—or whether—it ever will.

Plaintiff's Instagram and Twitter accounts, which were posting regularly in the months after the TRO, went silent in approximately mid-October 2025. Pollock Decl. ¶¶ 14-15, Exs. M, N. Apart from a podcast appearance (*see infra* Factual Background § E) and a self-serving press release the company issued after the Ninth Circuit's affirmance of the restraining order, Defendants are aware of no public statement that Plaintiff has made since October.

**B.    Defendants' Merger Announcement**

On May 21, 2025, Defendants announced OpenAI's merger with io Products, Inc.  ECF 6-16.  As part of that announcement, Defendants published a statement on a public webpage that generally described io Products, Inc.'s previously-unannounced vision of creating artificial intelligence-based devices no longer "shaped by traditional products and interfaces."  *Id.*

The announcement was accompanied by a nine-minute video featuring Defendants Altman and Ive discussing their collaboration over coffee in a San Francisco restaurant.  ECF 35-4.  Neither the announcement nor the video depicted or described any specific product—although Altman said that he thought a prototype he had used was "the coolest piece of technology that the world will have ever seen."  *Id.*  The announcement and video made no mention of what any future products would be called and did not state whether the "io" name would be used following the merger or in any future marketing.  The announcements did not even describe the general form factor of any future product, leading to widespread public speculation about what the product would be.  *See* Pollock Decl. Ex. V.

**C.    Plaintiff Seeks a Temporary Restraining Order**

On June 9, 2025, Plaintiff filed its Complaint.  ECF 1.  Later that day, Plaintiff moved for a temporary restraining order.  ECF 6.  Citing to its verified Complaint, Plaintiff argued that it was soon to launch an AI-enabled audio product called the iyO One and that Defendants' May 21, 2025 announcement was bound to cause confusion.  ECF 6-2 at 9.  Plaintiff argued that the merger announcement "make[s] clear" that Defendants plan "to develop a family of products which will allow users to interact with their smartphones, computers, AI, and the internet without the use of screens, keyboards, mice, or similar physical interfaces . . . us[ing] the IO brand name."  *Id.*

This Court set an opposition deadline of June 12, 2025, three days after the lawsuit was filed, and Defendants timely filed their opposition to Plaintiff's motion.  ECF 10, 25.  The opposition, which was filed before the merger was even complete, did not dispute that Defendants might decide to use the name "io" in some way in connection with the products they would launch.  ECF 25.  It had not yet been determined.  Pollock Decl., Ex. A (hereinafter, "Welinder Decl.") ¶ 2.

On June 15, 2025, Plaintiffs filed a reply.  The reply was accompanied by a new declaration

from Plaintiff's CEO, Jason Rugolo. ECF 35-1. Rugolo declared under penalty of perjury that the "IYO ONE is on track for commercial release and shipment in September/October 2025" and that and iyO One was intended for "*a general consumer audience*"—not just audiophiles or another niche audience. *Id.* ¶¶ 5, 9 (emphasis added).

**D.       The Court Grants a Narrow TRO**

On June 20, 2025, the Court granted Plaintiff's request for a temporary restraining order. ECF 51. The Court's order repeatedly, in eight different paragraphs, recognized the "limited record" in front of it. *Id.* at 1 n.1, 14, 16, 17, 18, 19, 20, 21. The Court's TRO decision recognized that "because Defendants have not yet released a product with the disputed mark, IYO cannot allege actual infringement." ECF 51 at 8. But based on Plaintiff's allegations that "Defendants have [a] working prototype, ECF 1, ¶ 102, the product will compete with Plaintiff's product, *id.* ¶ 78, the product will be called by the disputed mark, *id.*," and the Court's determination that "the product will be released in at least a year," the Court found that Plaintiff had adequately established an "imminent injury for the purpose of ripeness" and issued a narrow TRO "to keep things status quo until things are fully briefed and the Court is fully informed." *Id.* at 6, 8, 21; ECF 50 (6/17/25 Tr.) at 37:16-20. The Court explicitly credited Plaintiff's ship date and much of its reply evidence, as well as its assertion that the iyO One was "marketed to the general public." ECF 51 at 8, 14, 18.

The TRO did not specifically order Defendants to remove their May 21, 2025 announcement and video, and the Court later confirmed it did not require them to do so. ECF 91 at 6. Nonetheless, Defendants removed the May 21 announcement following the issuance of the TRO and have not reposted the video, or the full text of the announcement. *See* Pollock Decl., Ex. D ¶¶ 4, 7, Ex. W.

Defendants appealed the Court's temporary restraining order to the Ninth Circuit. On December 3, 2025, citing the same evidence as this Court had, the Ninth Circuit affirmed in a non-precedential, unpublished decision. ECF 96 at 3, 5-6.

**E.       Plaintiff's CEO Admits Plaintiff Is Not Making "a Mass Market Device"**

In or around November 2025, shortly after the Ninth Circuit heard oral argument, Plaintiff's CEO, Jason Rugolo, appeared on the "Moonshot Podcast" to discuss his company and allegedly forthcoming products. Pollock Decl. ¶ 6, Ex. E. At the 56-minute mark of his appearance, Rugolo

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

discussed the target audience for the iyO One:

> And the device is [one] we're actually really excited about.  This is a first of a kind – you know, this is for tech early adopters, for audiophiles, for AI enthusiasts.  It's expensive.  ***You know, we're not trying to make a mass market device yet***.

Rugolo's admission establishes that the iyO One is not intended for a "broad, general consumer audience," as Rugolo had previously declared.  ECF 35-1 ¶¶5, 6.  This contradicts Plaintiff's prior statements that this Court explicitly relied upon in granting a temporary restraining order and the Ninth Circuit relied upon in affirming it.  *See* ECF 96 at 5 (finding that "[t]he degree of consumer care factor is neutral, because IYO's product is somewhat expensive, ***yet both companies market their products to the general public***") (emphasis added).

Notwithstanding Rugolo's candid, out-of-court admission about the true nature of the audience for the still-not-released iyO One, Plaintiff thereafter denied a request for admission that that "the iyO ONE is not a mass market device" and affirmatively represented that it is "***directed toward the mass-market***."  Pollock Decl., Ex. F at 10 (Response to RFA 31), Ex. G at 6 (Response to Rog. 2) (emphasis added).  Plaintiff's Motion continues to argue that the iyO One is intended for the "general public," even though it fails to cite any factual support for this.  Mot. 14-15.

### F.  Defendants Decide Not to Use the "io" Name

Following the completion of the July 2025 merger of OpenAI with Defendant io Products, Inc., Defendants conducted a review of product-naming strategy and how future consumer hardware offerings will fit within the broader OpenAI brand.  Welinder Decl. ¶ 2.  As a result of that review, in early February 2026 Defendants decided not to use the name "io" (or "IYO," or any capitalization of either) in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled hardware products.  *Id.*  Defendants do not plan to ship hardware—under any name—before February of 2027.  *Id* ¶ 3.

### G.  Plaintiff Declines Stipulated Extension of the TRO

On February 2, 2026, counsel for Defendants notified counsel for Plaintiff of OpenAI's decision regarding not using the "io" name for the hardware product and offered to provide a client declaration to this effect.  ECF 105-1 ¶ 3.  On February 9, 2026, Defendants publicly filed a

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

declaration from Peter Welinder, a Vice President and General Manager for OpenAI, stating that "Defendants have decided not to use the name 'io' (or 'IYO,' or any capitalization of either) in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled products." ECF 105-2 ¶ 2. Following the filing of this declaration, several major media outlets reported that Defendants would not use the "io" name for their devices. Pollock Decl., Ex. O.

In light of their decision, Defendants advised Plaintiff that a preliminary injunction was unnecessary. Pollock Decl. ¶ 28. Plaintiff disagreed, insisting on a stipulated preliminary injunction on the stated ground that Plaintiff required the protection of a court order. *Id.* Defendants responded that there was no factual basis for a preliminary injunction, which requires a showing of imminent irreparable harm as well as a likelihood of success on the merits—both of which Defendants' abandonment of the "io" name for hardware foreclosed. *Id.* Nonetheless, in a good-faith effort to resolve the dispute without further motion practice, Defendants proposed continuing the preliminary injunction hearing to January 2027 and extending the temporary restraining order, which was predicated on preserving the status quo. *Id.* That proposal would have given Plaintiff precisely the protection it claimed to need, but Plaintiff rejected it. *Id.*

**H.    Plaintiff Produces No Documents in Discovery**

On February 6, 2026, following several mutually agreed extensions, the parties served responses to discovery that had been first served on December 19, 2025. Pollock Decl., Exs. F-H. Defendants provided substantive responses to the bulk of Plaintiff's requests that confirmed no responsive documents existed regarding any device that would be sold or advertised as an "io" branded product. ECF 110-2. Plaintiff generally agreed to produce some documents in response to Defendants' requests, many of which sought to test statements made by Plaintiff in its temporary restraining order papers, such as its assertions that it had been successful in attracting investors leading up to Defendant's May 21 Announcement. *E.g.*, Pollock Decl., Ex. H at 6-7 (Response to RFP 4, 5, 7, 8), Ex. G at 9 (Response to Rog. 6). Nevertheless, as of March 13, 2026—eighty-four days after the requests were served and thirty-five days after Plaintiff agreed to produce documents—Plaintiff has still produced no documents. Pollock Decl. ¶ 9. Nor has Plaintiff submitted a single additional document in support of any of factual representations it made—not a

single document or declaration identifying investment history, not a single document or declaration reflecting any actual confusion, not a single document or declaration about its future product shipment plans, not a single document or declaration representing it has ever shipped a functioning iyO One device to a customer.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). It is only appropriate "upon a clear showing that the plaintiff is entitled to such relief," which occurs when it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20, 22; *see Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). Even where a temporary restraining order has been granted in a case, "the burden remains on the plaintiff to show that [it is] entitled to a preliminary injunction." *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 140 (2d Cir. 2014). Courts have not hesitated to deny requests for a preliminary injunction following a temporary restraining order when a Plaintiff fails to carry their burden under one or more of the *Winter* factors. *See, e.g.*, *Pollution Denim & Co. v. Pollution Clothing Co.*, 547 F. Supp. 2d 1132, 1144 (C.D. Cal. 2007) (denying preliminary injunction in trademark case and dissolving previously granted temporary restraining order); *Motorola Inc. v. Qualcomm Inc.*, 1997 WL 838877, at *19 (S.D. Cal. Apr. 24, 1997), *aff'd*, 135 F.3d 776 (Fed. Cir. 1998) (similar, in trade dress case).

## ARGUMENT

### I.      PLAINTIFF'S REQUEST IS MOOT

The TRO briefing and appeal proceeded on the assumption that Defendants were planning to use the mark "io" in the marketing or sale of their products. Defendants have now determined that their forthcoming hardware products will definitively not be called by the challenged mark. Welinder Decl. ¶ 2. Defendants' decision not to use the name "io" (or iyO, or any capitalization of those names), in connection with their forthcoming products, moots Plaintiff's claim of trademark infringement, imminent injury, and jurisdiction. *E.g., WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, 2020 WL 83845, at *3-4 (N.D. Cal. Jan. 7, 2020) ("When the complaint was

filed, Defendant did intend to open an office in San Francisco and had placed [the] logo [] on the building," but dismissing trademark complaint as moot after defendant "abandoned any plans" to open a location using the disputed mark and removed all references from its website); *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 95 (2013) ("Given the covenant's broad language, and given that Already has asserted no concrete plans to engage in conduct not covered by the covenant, we can conclude the case is moot because the challenged conduct cannot reasonably be expected to recur."); *see generally* ECF 112 (motion to dismiss for lack of subject matter jurisdiction).

Plaintiff argues the "voluntary cessation" doctrine sustains its motion. Mot. 11. But on this record, the voluntary cessation doctrine has no relevance. As reflected by the word "cessation," this doctrine applies only when a defendant has already ***started actively engaging*** in significant infringing conduct and then ceases it—not when a defendant has never used the alleged infringing mark to advertise or sell goods, which is the case here.[1] As this Court recognized, "because

[1] The fact that Defendants have never used the "io" mark in connection with the advertisement or sale of goods renders each of Plaintiff's cited cases (Mot. 7-9) inapposite. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 176 (2000) (not moot where defendant had "discharge[d] various pollutants into the waterway" in violation of statute); *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (not moot where defendants had not provided a "valid certification" confirming their years'-long race-based policy had ceased); *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (not moot where defendant was accused of three distinct violations of the law, but denying injunctive relief due to voluntary termination of conduct); *LGS Architects, Inc. v. Concordia Homes of Nev.*, 434 F.3d 1150, 1152-54 (9th Cir. 2006) (not moot where defendant used infringing plans to build 68 houses as it was not clear that defendant would "permanently refrain from future infringement"); *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at *17 (N.D. Cal. Apr. 12, 2019) (not moot where defendant had sold $450,000 of the allegedly infringing product and "[t]here is no reason to think [the defendant] will not start up the same behavior again absent an injunction"); *Cherokee Inc. v. Wilson Sporting Goods Co.*, 2015 WL 3930041, at *4 (C.D. Cal. June 25, 2015) (not moot where defendant "used this mark in connection with volleyballs, apparel and footwear, and athletic bags" and "never states unequivocally that Defendant will not 'pick up where [they] left off'"); *Card Tech Int'l LLLP v. Provenzano*, 2011 WL 13220408, at *4 (C.D. Cal. Nov. 7, 2011) (not moot where defendant's conduct was only "partially consistent with avoiding infringement"); *Jacobsen v. Katzer*, 2007 WL 2358628, at *5 (N.D. Cal. Aug. 17, 2007), *vacated in part*, 535 F.3d 1373 (Fed. Cir. 2008) (not moot where defendant sought to enforce patents, collect patent royalties, and threatened litigation despite knowing patents were invalid and unenforceable, but denying injunctive relief where defendant had voluntarily ceased such conduct); *Cyclone USA v. LL&C Dealer Servs. LLC*, 2004 WL 7325117, at *6 (C.D. Cal. Apr. 14, 2004) (not moot where defendant had used the plaintiff's test data, testimonials, name, and even photos of the plaintiff's products in the defendant's infomercials, websites, and packaging); *Porsche Cars N. Am., Inc. v. Spencer*, 2000 WL 641209, at *6 n.16 (E.D. Cal. May 18, 2000) (not moot where defendant registered and offered for sale infringing domain name and it had "not been proven that there is no possibility that he will again attempt to traffic in or utilize the subject domain name," which it still owned); *Columbia Pictures Indus., Inc. v. Miramax Films Corp.*, 11 F. Supp. 2d 1179, 1183 (C.D. Cal. 1998) (not moot because,

Defendants have not yet released a product with the disputed mark, IYO cannot allege actual infringement." ECF 51 at 8 (citing *LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 2023 WL 6930330, at *7 (N.D. Cal. Oct. 19, 2023), *aff'd sub nom.*, 124 F.4th 1122 (9th Cir. 2024) and *JGX, Inc. v. Handlery*, 2018 WL 984856, at *3 (N.D. Cal. Feb. 20, 2018)). Instead, the Court found a ripe dispute based on the potential for an "imminent injury." *Id.* But Defendants' announcement that it will not use the disputed mark in connection with any forthcoming product (Welinder Decl. ¶ 2) eliminates the factual predicate for that finding of imminence, and thus moots this dispute.

Even assuming *arguendo* that the voluntary cessation doctrine is somehow applicable, the facts here are inconsistent with any possibility of Defendants' conduct recurring. *See Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir.), *supplemented*, 413 F.2d 1126 (9th Cir. 1969) (affirming denial of injunction when "[t]here is little or no evidence in the record casting doubt on [defendant's] good faith abandonment of this infringement"); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1374 (Fed. Cir. 2013) (similar, applying Ninth Circuit law). Defendants have not re-posted their May 21, 2025 announcement even in the months after the Court clarified that it was not prohibited, and Defendants have represented under penalty of perjury that they will not use the "io" name in connection with such products. Welinder Decl. ¶ 2; *see, e.g.*, *Langer v. Music City Hotel LP*, 2021 WL 5919825, at *8 (N.D. Cal. Dec. 15, 2021) (finding voluntary cessation inapplicable where Defendants had "little incentive to remove [the corrective changes made to their website] and every incentive to maintain the [updated information] to prevent further legal liability"). News articles have publicly reported that Defendants no longer intend to use the "io" name for their hardware products. Pollock Decl., Ex. O. Defendants even offered to stipulate to a nearly year-long extension of the temporary restraining order, then unilaterally moved for the Court to enter this extension, undercutting any speculative notion (Mot. 5-6, 11) that Defendants do not intend to act in accordance with their stated intent. ECF 105.

---

"although the theatrical run … is near an end . . . ancillary markets for the film still exist—pay-per-view, cable, television, hotel, or home video markets."); *Toys "R" Us, Inc. v. Akkaoui*, 1996 WL 772709, at *3 (N.D. Cal. Oct. 29, 1996) (not moot where "Defendants have not completely removed all references to 'Adults R Us'" and had not "established that they will never dilute Plaintiffs' trademarks in the future").

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

## II. PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

Even if the Court reaches the merits of Plaintiff's request, Plaintiff has not made a "clear showing" establishing all four elements required to obtain the "extraordinary remedy" of a preliminary injunction. *Winter*, 555 U.S. at 20, 22 (vacating injunction).

### A. Likelihood of Success on the Merits

Plaintiff argues it is likely to succeed on its trademark infringement claim based on an analysis of the *Sleekcraft* factors that largely incorporates by reference the argument Plaintiff made for the TRO. But Plaintiff's stale TRO evidence and arguments have been dramatically undercut by subsequent developments, and its current motion is bereft of factual support regarding the current state of the affairs. Local Rules 7-2(d) and 7-5 require that motions be "accompanied by" declarations, but the "evidence" Plaintiff submitted with its motion consists entirely of (i) an attorney declaration attaching counsel's correspondence and Defendants' RFP responses and (ii) an expert declaration concerning a survey that is fundamentally irrelevant and so riddled with methodological errors that it is entitled to no weight. *Timeless Prod. FZ LLC v. Vieconnect*, 2025 WL 1696560, at *3 (N.D. Cal. June 17, 2025); Section 5, *infra*. Plaintiff's showing is severely deficient to carry its burden on any factor, including likelihood of success on its claims that Defendants' use of "io" is likely to cause confusion, the *sine qua non* for prevailing on all of its claims. Compl. ¶¶ 130, 141, 152, 161, 168, 174; *see Growler Station, Inc. v. Foundry Growler Station, LLC*, 2018 WL 6164301, at *10 (C.D. Cal. July 19, 2018) (UCL claim is "substantially congruent" to trademark infringement claim); *Y.Y.G.M. SA v. Redbubble, Inc.*, 2020 WL 3984528, at *7 (C.D. Cal. July 10, 2020) ("In order to support a finding of vicarious infringement, there must be a finding of direct infringement by the allegedly controlled party.").

#### 1. "The Marks" Are Not Similar

Plaintiff argues that the Court should compare the "iyO" and "io" "marks" (Mot. 13), but that does not reflect any reality present before this Court. The similarity of marks "must be considered as they are encountered in the marketplace." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011); *see OneIndustries, LLC v. Jim O'Neal Distributing*, 578 F.3d 1154, 1162-63 (9th Cir. 2009). Here, there is no marketplace context in

which to consider any use of "io," as Plaintiff's own expert confirms. *Infra* § II.A.5 . Defendants are not using "io" as a mark in connection with selling or advertising any products, have never done so, and have confirmed that they will not. ECF 51 at 8; Welinder Decl. ¶ 2. As Plaintiff's CEO publicly posted, Defendants are free to choose any other name, and the similarity of marks factor therefore cannot favor Plaintiff as a matter of law. Pollock Decl., Ex. P (screenshots from the X feed of Jason Rugolo). Because the sole "mark" Plaintiff has challenged ("io") (*see e.g.*, Compl. ¶¶ 108, 129, 142, 160, 168, 174) is not, has not, and will not be used in the marketplace in connection with selling any products, the similarity factor weighs strongly against any finding of a likelihood of confusion.

2.      Degree of Consumer Care Weighs Heavily in Favor of Defendants

The Ninth Circuit found that this factor was neutral, with the high, $999 starting price of the iyO One offset by Rugolo's representation that the iyO One was intended for the general public. ECF 96 at 5. That representation was false. On November 25, 2025, Plaintiff admitted that it is "***not trying to make a mass market device yet***." Pollock Decl. ¶ 6, Ex. E at 56:50. Instead, its target customers are "audiophiles," "tech early adopters," and "AI enthusiasts"—a sophisticated and discerning consumer base. *Id.* With nothing left to offset the iyO One's steep price point and the undisputed sophistication of its target consumers, both considerations now weigh heavily in Defendants' favor.

The niche group of consumers which the iyO One targets is also evident from the product's mandatory custom-fitting process—a complicated, multi-step ordeal that is entirely inconsistent with the product being intended for the mass-market. *See* Pollock Decl., Ex. K (describing how custom fitting is required for the iyO One). Plaintiff's custom fitting guidelines for its VAD PRO product—which Plaintiff admits use the same process as the iyO One (Pollock Decl., Ex. F at 5 (Response to RFA 9))—illuminate the steps that a prospective buyer must take: an audiologist contacts the customer via email to schedule an in-person fitting appointment; Plaintiff mails an "Ear Impression Kit" that the customer must bring to the appointment; Plaintiff recommends that the customer clean their ears beforehand by purchasing a wax removal kit or booking a ***separate ear-cleaning appointment***—or both; and the customer attends an in-person appointment so that the

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

audiologist can create an ear impression by injecting goo into his or her ear—a "physically uncomfortable" process that takes approximately 15 minutes. Pollock Decl., Ex. B at ¶ 10, Ex. Q at 1-2, Ex. X.

In the reverse confusion context, the relevant consumers are those who "deal[] with the senior mark holder." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005). "[W]here the buyer has expertise in the field or when the goods are expensive, the buyer can be expected to exercise greater care in the purchase." *Aliign Activation Wear, LLC v. lululemon athletica Canada Inc.,* 2021 WL 3117239, at *9 (C.D. Cal. June 7, 2021), *aff'd*, 2022 WL 3210698 (9th Cir. Aug. 9, 2022) (finding that "no reasonable juror" could find that buyers of $78-98 "high-end" yoga pants were not careful). The consumers at issue here clear that bar by a wide margin. They are audiophiles, AI enthusiasts, and early adopters who must be conceptually willing to spend a minimum of $999, submit to a custom fitting, and ideally clear their schedule for a separate ear-cleaning appointment beforehand. Pollock Decl., Exs. E, J, Q. The purchase process and price demand a deliberate and careful customer. This factor weighs heavily in Defendants' favor.

### 3.   Relatedness of the Goods Favors Defendants

Neither Plaintiff nor Defendant has shipped an artificial intelligence-enabled hardware product—under any mark. Defendants' product, which will not use the challenged mark, will not ship until February 2027 at the earliest. Welinder Decl. ¶ 3. At the TRO stage, Plaintiff represented that its product would ship in September or October 2025 (ECF 35-1 ¶ 9): it has still not shipped, and Plaintiff offers no evidence when it will. It is speculative to suggest there will ever be direct competition between the iyO One and Defendants' future products before resolution of this action.

Even assuming the iyO One will someday ship, Rugolo's admissions that the iyO One is not a mass market device show that the parties' products are not related. The proximity of the goods factor considers primarily whether the goods are "(1) complementary; (2) ***sold to the same class of purchasers***; and (3) similar in use and function." *Network Automation, Inc.*, 638 F.3d at 1150 (emphasis added). Further, this factor becomes "less important if . . . consumers exercise a high degree of care, because rather than being misled, the consumer would merely be confronted with choices among similar products." *Id*.

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

Here, Plaintiff's iyO One is a $1,000+, custom-fit pair of in-ear headphones that is intended for audiophiles, tech early adopters, and AI enthusiasts.  Pollock Decl. ¶ 6, Exs. E, J.  Defendants' first hardware product will not be an in-ear device, they have not announced any functionality,  and it is not intended for the niche audience Plaintiff is targeting.   ECF 6-16 (May 21, 2025 announcement); Pollock Decl., Ex. B ¶ 16.  The parties' products serve different functions and target different consumer populations—and as discussed above, consumers are likely to exercise an exceptionally high degree of care before any purchase.  Should the parties' goods ever reach the market simultaneously, there is no meaningful basis to find them related.

Plaintiff abstracts the nature of the parties' intended products to a very high level, arguing that both are AI-enabled hardware, but this superficial overlap cannot tip the balance back toward Plaintiff. *Zora Labs, Inc. v. Deloitte Consulting, LLP*, 2025 WL 2104953, at *3 (S.D.N.Y. July 28, 2025) (rejecting similarity factor when "only connection between the two products is that they both utilize software and AI"); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1147 (9th Cir. 2002) ("the fact that both parties' goods relate generally to entrepreneurs or entrepreneurship … can carry relatively little weight.").  This relatedness of the goods factor favors Defendants, or at very least, is neutral.

### 4.   No Overlap in Marketing Channels Favors Finding Confusion

Plaintiff argues that the marketing factor "tip[s]…in Plaintiff's favor" because "both parties market their products to the **general public** through the internet."  Mot. 14.  By Plaintiff's own admission, it is explicitly "**not trying to make a mass market device**," and Plaintiff has produced no evidence that would support its assertion that the product is marketed to general audiences.  Pollock Decl. ¶ 6, Ex. E.  But even accepting that now-demonstrably-false statement as true, the Ninth Circuit found on the prior record that the marketing channel factor carries "little to no weight" given the ubiquity of internet marketing.  *See*  ECF 96 at 5 (citing *Lerner & Rowe PC v. Brown Engstrand & Shely LLC*, 119 F.4th 711, 725–26 (9th Cir. 2024)).

In any event, the marketing channel factor weighs against confusion where both parties sell online but through distinct websites.  *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1171 (9th Cir. 2025) (marketing channel factor "heavily favors" defendants when sales occur on a different website than

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

plaintiff's). Since the TRO, Plaintiff has admitted that the iyO One is available for pre-order only on Plaintiff's own websites, "iyo.audio" and "iyo.ai." Pollock Decl., Ex. F at 8 (Response to RFA 20). Defendants' unreleased products are not currently offered for sale, and when they are, they will not be sold through Plaintiff's websites. Thus, this factor now "heavily favors" Defendants. *Yuga Labs*, 144 F.4th at 1171.

> 5.    There is No Evidence of Actual Confusion

As the Court recognized at the TRO stage, "there is no evidence of actual consumer confusion." ECF 51 at 17. Plaintiff argues that this factor should favor Plaintiff, resting largely on the Keegan survey. Mot. 13-14. As described below, and in the accompanying declaration of marketing professor Scott Swain, the Keegan survey is fundamentally irrelevant and so riddled with methodological errors that it is entitled to no weight. And Plaintiff still has no other evidence of actual consumer confusion.

> (a)    The Court Should Exclude the Keegan Declaration as Irrelevant and Unreliable

The Court is responsible for ensuring that expert evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). Accordingly, the admissibility of trademark surveys, including whether "the survey was conducted in accordance with generally accepted survey principles," is a "question that must be resolved by a judge." *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005) (affirming exclusion of trademark confusion survey) (quotations omitted). Further, courts exclude expert opinions that are "irrelevant to any issue … in [the] case." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 613 F. Supp. 3d 1308, 1323 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021). At the preliminary injunction stage, even if the Court does not exclude a survey, it may afford it little or no weight. *See, e.g., Multiple Energy Techs., LLC v. Hologenix, LLC*, 2019 WL 2619649, at *2–3 (C.D. Cal. June 3, 2019) (survey of improper consumer universe was "not persuasive" and therefore "failed to show a likelihood of success on the merits").

***Keegan's opinion is fundamentally irrelevant because no "io-branded products" exist.***
Keegan's opinion purports to assess confusion between IYO products and "IO-branded products"

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

(Keegan Decl. ¶ 8), but "IO-branded products" do not exist, have never existed, and never will exist. Welinder Decl.¶ 2.  Accordingly, Keegan's survey provides "[no] value with respect to the issue of actual confusion," because it fails to "measure consumer confusion when confronted with [the party's] trademark" as it is used in the marketplace.  *La Quinta Worldwide, LLC v. Q.R.T.M, S.A. de C.V.,* 2011 WL 13233546, at *4 (D. Ariz. Feb. 16, 2011) (excluding plaintiff's confusion survey as irrelevant because it did not expose respondents to defendant's trademark as it is presented in the marketplace); Swain Decl. ¶ 15.  Because Keegan's survey attempts to predict confusion based on a factual scenario that will never exist, neither it nor his opinions are relevant.  Fed. R. Evid. 401.

*__Keegan's opinions are also irrelevant and unreliable because they rest on a survey that used a fabricated test stimulus that does not replicate marketplace conditions.__*  Keegan did not use any real-world stimuli showing Defendants' actual use of "io"; instead, he fabricated one.  Keegan Decl. ¶ 40.  This violates the fundamental principle that a test stimulus must replicate marketplace conditions—a flaw so significant that it independently compels exclusion.  *See, e.g.,* Swain Decl. ¶¶ 53-61; *Malletier v. Dooney & Bourke, Inc.*, 525 F.Supp.2d 558, 591 (S.D.N.Y. 2007) ("A survey that uses a stimulus that makes no attempt to replicate how the marks are viewed by consumers in real life may be excluded on that ground alone"); *Gucci Am., Inc. v. Guess?, Inc.,* 831 F. Supp. 2d 723, 744-45 (S.D.N.Y. 2011) (excluding survey that "failed substantially to reflect actual marketplace conditions," a "single—but extremely important—survey flaw"); *Kargo Global, Inc. v. Advance Magazine Publishers, Inc.*, 2007 WL 2258688, at *10 (S.D.N.Y. Aug. 6, 2007) ("A survey that uses stimuli that differ from what a consumer is actually likely to see in the marketplace does not accurately test for actual consumer confusion and thus lacks probative value").

Not only did Keegan make up his survey stimulus, but he made no attempt to approximate a realistic purchasing environment for Defendants' products.  He did not include any house marks such as the OpenAI name or swirl logo or any reference to the ChatGPT AI technology that it will presumably interact with.  He did not depict any product or packaging for the supposed "product." Instead, he presented a single black box with the white letters "io" and instructed respondents to "imagine you encounter a product while shopping," and represented the manufacturer described it as follows:  "A family of electronic devices that will allow you to use AI (artificial intelligence) in

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

new ways, from the way you express your requests to how responses to those requests are received by you." Keegan Decl. ¶¶ 40, 68. This is facially inappropriate. In no purchasing environment— brick-and-mortar or online—would a potential purchaser see a mark as abstract and as devoid of context as this. Swain Decl. ¶¶ 53-56.

The impropriety of this stimulus is further demonstrated by Keegan's choice for the IYO and "internal control" stimuli—all of which show products, house marks, and logos. *See* Keegan Decl. pp. 68-74. Comparing the black-boxed letters "io" against these detailed, realistic-appearing product websites is so removed from any real-world scenario that even the fictional "ue" control generated a showing of more than 35% confusion against the iyO webpage, the Meta webpage, *and* the Humane webpage. *Id.* ¶ 76. This level of "systemic noise" undermines any possible reliability of the survey. *See* Swain Decl. ¶¶ 84-85, 87, 90. Further, even the "room 2" stimuli shown after the black-boxed "io" letters depart from the marketplace reality. *Id.* ¶ 91-95. The Humane website did not exist at the time of the survey; Keegan had to use Wayback Machine images to generate it. *Id.* ¶ 93. Keegan's disregard for actual marketplace conditions and artificial stimuli render his survey irrelevant and unreliable. *Id.* ¶¶ 53-61, 76-95.

For a survey to "be reliable and helpful," it must "replicate[] market conditions for the simple reason that trademark infringement occurs if the defendant's *actual practice* is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *Valador, Inc. v. HTC Corp.*, 242 F. Supp. 3d 448, 462 (E.D. Va. 2017), *aff'd*, 707 F. App'x 138 (4th Cir. 2017) (internal citation omitted). Because Keegan did not measure how consumers are likely to understand the defendant's actual marks when they are exposed to them in the actual marketplace his survey falls far outside the bounds of accepted principles and is inherently unreliable. Swain Decl. ¶¶ 53, 106; *Water Pik, Inc. v. Med-Sys., Inc.,* 726 F.3d 1136, 1146-47 (10th Cir. 2013) (affirming disregard of survey that presented challenged "mark differently from the way that it actually appears on packaging, and [failed] to include the [defendant's] house mark next to the … product mark"); *Valador*, 242 F. Supp. 3d at 462-63 (excluding survey that "did not show the marks as they appear in commerce"); *Am. Footwear Corp. v. Gen. Footwear Co.*, 609 F.2d 655, 660 n.4 (2d Cir. 1979) (district court properly rejected a survey that failed to replicate "actual marketing

conditions").

Keegan's survey suffers from a further, independent defect: his use of the *Squirt* sequential-lineup format assumes that the tested stimuli would "appear or be encountered by consumers in physical or temporal *proximity* in the marketplace."  Keegan Decl. ¶ 39 (emphasis in original).  But a sequential lineup is an improper format where a plaintiff has not first established that the disputed products are sold in a side-by-side environment.  *See, e.g.*, *Hi-Tech Pharms. Inc. v. Dynamic Sports Nutrition, LLC*, 2021 WL 2185699, at *19 (N.D. Ga. May 28, 2021) (excluding *Squirt* survey whose format "over-estimate[s] confusion by forcing consumers to consider the marks in close proximity in a way they would not in the marketplace") (citation omitted); *Grasshopper Gardens, Inc. v. PMA Mech. LLC*, 2025 WL 2711066, at *9 (N.D.N.Y. Sept. 23, 2025) (similar); *THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 236-37 (S.D.N.Y. 2010) (sequential survey improper absent showing that "consumers would have proximately encountered the specific [products] tested"); Swain Decl. ¶¶ 76-90.  Keegan's declaration offers no such evidence—nor could it, given that Defendants have never sold an "IO-branded" product and that Plaintiff solely (pre)sells its products through its own website—a distribution channel it will never share with Defendants.  *See id.* ¶¶ 76-78.

Restricting the permissible use of *Squirt* surveys to instances in which the parties' products could be seen in close proximity in the marketplace is necessary given the highly suggestive nature of *Squirt* survey, which effectively suggests respondents should look for the most likely connected stimuli rather than assess the stimuli on their own to determine if there is a mistaken belief about source, affiliation, or sponsorship.  *See THOIP v. Walt Disney Co.*, 788 F. Supp. 2d 168, 183 (S.D.N.Y. 2011) (*Squirt* survey caused allegedly infringing product to "st[and] out like a bearded man in a lineup with four clean-shaved men" and improperly influenced respondents); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013) (excluding *Squirt* survey whose lineup "improperly suggested…the 'correct' answer" thereby failing to test confusion but merely testing "the ability of participants to pick the most obvious match"); *see also* Swain Decl. ¶¶ 80-90.

**_Keegan's opinions are irrelevant and unreliable because he used an improper survey universe._**  "[T]he sine *qua non* of trademark infringement is consumer confusion."  *Network*

*Automation*, 638 F.3d at 1142.  Accordingly, the proper universe for a trademark confusion survey is likely consumers—i.e., "persons who are potential purchasers of the goods or services at issue." Shari Diamond, "Reference Guide on Survey Research," in *Reference Manual on Scientific Evidence* 359, 383 (Fed. Judicial Ctr. 2011); Swain Decl. ¶ 63.  Selection of an improper universe—whether overinclusive or underinclusive—is grounds for exclusion.  *See, e.g., Kudos Inc. v. Kudoboard LLC*, 2021 WL 5415258, at *12 (N.D. Cal. Nov. 20, 2021) (excluding Keegan's survey on the independent basis of an improper universe); *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878-79 (C.D. Cal. 2013) (excluding survey that provided no basis for selected survey population); *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) (excluding survey that was "fundamentally flawed" due to improper universe and design).

Keegan purports to have surveyed "current and prospective purchasers of high-end personal electronic devices" (Keegan Decl. ¶ 7), but his survey script reveals this included all adults who had "used a laptop computer, desktop computer, tablet, and/or smartphone in the last year" and had some level of involvement in the purchase decision for those products, or who expected to do so in the next three months.  *Id.* ¶ 24.  By this definition, Keegan's universe encompassed virtually every adult in the United States.  Swain Decl. ¶ 62.  That is not the relevant consumer universe for Plaintiff's iyO One (the sole iyO stimuli used in the survey).  *See* Pollock Decl., Ex. Z.

Plaintiff's advertised products are targeted to a far more narrow sliver of the universe than those Keegan screened for.  Plaintiff alleges its iyO One product is a specialized, proprietary AI ear-worn device that allows users to interact with artificial intelligence and the internet without screens, keyboards, or traditional interfaces.  Complaint ¶¶ 3-4.  In the words of iyO's CEO and founder, the iyO One "is a first of a kind [product], … for tech early adopters, for audiophiles, for AI enthusiasts.  It's expensive."  Pollock Decl., Ex. E. (Nov. 25, 2025 Rugolo statement at 56:47-55); Ex. J ($999 for least expensive version, not including fitting fee).  It is not intended as "a mass market device." *Id.* at 56:56-59.  It is not a laptop, a desktop computer, a tablet, or a smartphone.  The fact that a consumer owns a smartphone does not mean she is a likely purchaser of a novel, thousand-dollar, screenless AI ear-worn device, any more than owning a car makes someone a likely purchaser of a private jet because both serve as "personal transportation."

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

Keegan's results are inflated by the inclusion of vast numbers of respondents who would never encounter, consider, or purchase Plaintiff's highly-specialized, expensive product and therefore are unlikely to exercise the same level of attention that someone actually in the market for such a device is likely to use.  Swain Decl. ¶ 72; *see Teetex LLC v. Zeetex, LLC*, 2022 WL 1203097, at *4 (N.D. Cal. Apr. 22, 2022) ("When products are marketed primarily to sophisticated or expert buyers, it is expected that those customers would exercise a high degree of care, and be less confused, in making their purchasing decisions"); *Yuga Labs, Inc.*, 144 F.4th at 1172 ("we expect consumers searching for expensive products online to be even more sophisticated").  Confusion findings drawn from an incorrect population are not probative of whether actual likely purchasers of AI ear-worn devices would be confused because "[r]espondents who are not potential consumers may well be less likely to be aware of and to make relevant distinctions ... than those who are potential consumers."  *Valador*, 242 F. Supp. 3d at 460 (quoting *Weight Watchers Int'l, Inc. v. Stouffer Corp.*, 744 F.Supp. 1259, 1272 (S.D.N.Y. 1990)).

Keegan's participant demographic data reveals the breadth of this problem: less than *half* of the respondents had used an AI app, website, or device (such as ChatGPT or Gemini) in the three months before the survey, and more than 35% of his test respondents reported household income under $50,000 per year—hardly the likely purchaser profile for a novel AI consumer device costing a thousand dollars.  *See* Swain Decl. ¶¶ 67-69, 71; Keegan Decl. ¶ 74.  In fact, when Keegan's raw data sample is limited to higher-income, more frequent electronics shoppers, although that is still not a properly-qualified universe, the net confusion figure drops from 24.0% to 14.4%, while the control confusion rate *rises* from 38.3% to 46.9%—meaning nearly half of these respondents reported "confusion" after seeing a stimulus sharing *no* letters with "iyO"—confirming the noise is in the survey instrument itself.  Swain Decl. ¶¶ 63-65, 73.  The court in *Kudos* excluded Keegan's testimony for similarly failing to use the proper universe of likely purchasers of the products at issue 2021 WL 5415258, at *2, 12.  As in *Kudos*, Keegan's failure to measure confusion among the appropriate likely purchasers render his confusion findings unreliable, and this Court should likewise exclude or disregard the Keegan Declaration in its entirety and any arguments based on its contents.

***The qualitative responses from the Keegan survey are irrelevant***.  Plaintiff also highlights certain qualitative responses from the Keegan survey, including comments about how the parties purportedly have the "same ad," a "similar logo," or "near-identical branding."  Mot. 4, 14.  But as described above, any perceived logo- or branding-based similarity is an artifact of the survey's flawed design, not evidence of real-world confusion in the marketplace. Swain Decl. ¶¶ 53-61.

(b)    Plaintiff's Other Actual Confusion Evidence is Unconvincing

Plaintiff argues that the two investor declarations it relied on for the TRO serve as a "proxy" for confusion, but both this Court and the Ninth Circuit gave Plaintiff's investor declarations only "slight[]" weight.  ECF 51 at 17; ECF 96 at 5.  Moreover, neither declaration addresses the current facts or Defendants' decision not to use the "io" name.  Rather, both investors' declarations from last June tied their fears about confusion specifically to Defendants' May 21, 2025 announcement— which was taken down after the TRO issued and has not been reposted since.  *See* ECF 6-4 (Rangel Decl.) ¶¶ 6-7, ECF 6-5 (Catmull Decl.) ¶ 9.  These declarations therefore provide no value as a "a proxy for consumer confusion." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1215 (9th Cir. 2012).  This factor favors Defendants.

6.    The Strength of the Marks is Neutral

The Ninth Circuit found that the strength of the mark factor is properly analyzed in reference to the "conceptual strength" of Plaintiff's market and the "commercial strength" of Defendants' mark.  ECF 96 at 5.  Here, assuming arguendo that Plaintiff's mark is conceptually strong, this is counterbalanced by the commercial weakness of Defendants' unknown mark, which has not even been revealed to the public. *See, e.g.*, *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 992 (C.D. Cal. 2002) (finding factor favored Defendant in a reverse confusion case where commercial strength was offset by conceptual weakness).  This factor is at best neutral, and it does not alter the likelihood of confusion inquiry.

7.    There Was No Intent to Infringe

This Court previously found that the intent factor favored Plaintiff based on the "limited record" before it at the TRO stage.  ECF 51 at 18.  That finding cannot persist, because Defendants no longer have any plans to use the "io" mark.  Welinder Decl. ¶ 2.  A defendant's decision to adopt

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

a different mark negates any inference of prior intent. *E.g., AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979) (Defendant's "good faith cannot be questioned" when it changed logos after receiving an infringement notification).

Further, the record does not support Plaintiff's assertion that Defendants ever harbored an intent to infringe. Mot. 15. At the time Defendants selected the name, Plaintiff had not established any trademark rights and had not released or advertised a hardware product. While parties can apply for registrations on an "intent to use" basis (as Plaintiff did), no enforceable trademark rights exist until a party has used the mark in commerce. *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999) ("[A]n intent to use a mark creates no rights a competitor is bound to respect.") (citation omitted); *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 504 (7th Cir. 1992) ("Intent to use a mark, like a naked registration, establishes no rights at all."); Pollock Decl., Ex. R (publication of IYO mark following Notice of Allowance noting "basis 1(b), filed itu"—i.e. intent to use —and "Currently ITU"). Thus, it was not until the first use in commerce date, which Plaintiff claimed was February 2, 2024—well after Defendants had selected the "io" name—that Plaintiff could have had an enforceable trademark. *See* ECF 1-1 (claiming a first use in commerce of February 2, 2024); Pollock Decl., Ex. C, ¶ 2.

Further, the goods and services Plaintiff claimed in its IYO application (and registration) did not reference "artificial intelligence," but describe instead the claimed functionality of Plaintiff's unasserted VAD PRO product, such as "auditory user interface." *Compare* ECF 1-1 *with* Ex. S (VAD PRO webpage describing a "Virtual Auditory Display"). The application also has a reference to "natural language processing," consistent with Plaintiff's focus at the time the application was filed in 2021 on "speech segregation," or literally processing language audio inputs to amplify particular voices. Pollock Decl. ¶ 26, Ex. Y.

Simply put, Defendants could not have intended to infringe trademark rights that did not *exist* in the summer of 2023 when they decided to use "io" as the name for their new venture— which, as of July 2025 merged with OpenAI. Pollock Decl., Ex. C; Welinder Decl. ¶ 2. In all events, no evidence suggests that Defendants adopted a mark with the intent of deceiving the public. *Entrepreneur Media*, 279 F.3d at 1148 (the intent factor is relevant to confusion because "[w]hen

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived") (citation omitted); *see also Mach. Head v. Dewey Glob. Holdings Inc.*, 2001 WL 1747180, at \*13 (N.D. Cal. Dec. 13, 2001) ("Because this is a reverse confusion case, there is no allegation that [the junior user] was seeking to capitalize on the goodwill of [the senior user].").  On the current record, this factor weighs against confusion.

### 8. Plaintiff Admits that No Expansion Plans Help its Position

Plaintiff concedes that this factor is neutral, implicitly admitting it has no plans to "bridg[e] the gap" on any factor.  *Zora Labs, Inc.*, 2025 WL 2104953 at \*3.  Accordingly, this factor does not increase the risk of confusion.

### 9. Overall Balancing

In light of Defendants' name change and Plaintiff's candid admissions that they are pursuing a specialized hardware product intended for a specialized audience, ***none*** of the *Sleekcraft* factors favor Plaintiff.  Rather, several factors heavily favor Defendants, while the remainder are, at most, neutral.  Under these circumstances, Plaintiff cannot show a likelihood of success on the merits, which is fatal to its request for a preliminary injunction.  *See DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776-77 (9th Cir. 2011) (court "need not consider" the remaining three injunction elements where plaintiff failed to demonstrate a likelihood of success).

### B. Plaintiff Cannot Show Irreparable Harm

Plaintiff spends barely a page of its motion on irreparable harm, and much of that is about the presumption of irreparable harm.  But the presumption applies only if Plaintiff can show a likelihood of confusion, which it cannot.  *See* 15 U.S.C. § 1116.  The presumption is also rebuttable, and the burden of persuasion remains with Plaintiff after Defendants satisfy their burden of production.  4 McCarthy on Trademarks and Unfair Competition § 30:47 (5th ed.).  Defendants readily meet that burden of production, and Plaintiff's arguments are unpersuasive.

***Investor apprehension***.  Plaintiff argues it faces a "stalled fundraising campaign" arising "following Defendants' May 21 announcement."  Mot. 16.  This theory originally rested on declarations from two of Plaintiff's investors—neither of whom had personally reduced their

-22-                                Case No. 3:25-cv-4861-TLT

investment because of the announcement, or heard from anyone who had, but who feared that other investors would. *See* ECF 6-2 at 11-12 (citing ECF 6-4 (Rangel Decl.) ¶ 8 and ECF 6-5 (Catmull Decl.) ¶ 13). Mr. Catmull for example, speculated that investors who saw the announcement will "know that there are two companies with identical-sounding names, offering similar products, and will be disinclined to invest in IYO given the inevitable market confusion." ECF 6-5 ¶ 13.

Even if valid, these concerns were mooted following Defendants' removal of the May 21, 2025 merger announcement, and are now completely irrelevant following Defendants' decision not to use "io" as a mark for its hardware. No investor has been exposed to the allegedly offending merger announcement for nearly nine months. Meanwhile, Defendants' decision not to use the "io" name has been widely covered in the press. Pollock Decl., Ex. O. There is no basis to infer that any investor still believes that Defendants plan to flood the market with an "io" branded product— and Plaintiff has not submitted any evidence otherwise, including from its original declarants.

Plaintiff's failure since the TRO to develop the documentary record on its claimed investor loss is also telling. Plaintiff has had months to identify and submit documents specifically demonstrating the reasons it has been unable to garner investments. But it has produced no documents about investments, its financial position, or "investor or potential investor feedback," even though it agreed to do so in discovery. Pollock Decl., Ex. H at 6-10 (Responses to RFPs 5, 7, 9, and 10). It submitted no documentary evidence in connection with this motion about its fundraising since the TRO or leading up to the May 2025 announcement. And the earlier-filed three paragraph declaration from Rugolo (ECF 107-1) that Plaintiff cites cannot be credited given its conclusory nature, unsupported by any documentary evidence—and the misrepresentations in his prior declarations. *See iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389, at *14 (N.D. Cal. Nov. 21, 2012) (denying preliminary injunction where plaintiff "simply offered the conclusory declaration of its CEO in support" and "admitted that it did not have any concrete evidence of lost business or goodwill"); *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (reversing preliminary injunction where plaintiff's motion was "cursory and conclusory, rather than being grounded in any evidence or showing offered" and was "grounded in platitudes rather than evidence"); *see also Innospan Corp. v. Intuit Inc.*, 2011 WL 2669465, at *6 (N.D. Cal. July 7, 2011)

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

(sanctioning Plaintiff who procured false affidavit for trademark TRO by precluding future use of the declarant as a witness).

***Loss of goodwill***.  Plaintiff's conclusory assertions of reputational harm and lost goodwill (Mot. 17) are insufficient to establish irreparable harm as a matter of law.  *See, e.g.*, *Sarieddine v. Connected Int'l Inc.*, 2025 WL 1513777, at *3 (9th Cir. May 28, 2025) ("given the scant evidence of irreparable harm in the record—only a declaration from Sarieddine about his reputation and goodwill and a single instance of customer confusion—the district court did not abuse its discretion in concluding that Sarieddine had failed to show irreparable harm"); *Cutting Edge Sols., LLC v. Sustainable Low Maint. Grass, LLC*, 2014 WL 5361548, at *5 (N.D. Cal. Oct. 20, 2014) ("[B]road or vague claims that the plaintiff may experience a loss of good will and customer confusion due to the defendants' actions are insufficient to establish a likelihood of irreparable harm.") (internal citation omitted); *Wahoo Int'l, Inc. v. Phix Dr., Inc.*, 2014 WL 2106482, at *4 (S.D. Cal. May 20, 2014) (factor "weighs against injunctive relief" when plaintiff provides only a "conclusory statement that Plaintiff will suffer irreparable harm to its reputation and good will").

If Plaintiff is suffering reputational harm, a far more likely cause is its failure to release the product it has been "pre-selling" for nearly two years and not responding to inquiries.  *See* Pollock Decl., Ex. L; *supra* Factual Background § A.  It is pure speculation to attribute Plaintiff's reputational difficulties to anything else.  *See, e.g.*, *Guichard v. Universal City Studios, LLLP*, 2007 WL 1750216, at *8 (N.D. Cal. June 15, 2007), *aff'd,* 261 F. App'x 15 (9th Cir. 2007) (finding no irreparable harm because "[t]he irreparable injuries cited … are speculative because Plaintiff has not yet commenced production of his film.").

**C.     The Balance of Equities and Public Interest Counsel Strongly Against Relief**

Plaintiff's arguments on the equities and public interest requirements are both premised on it having satisfied the first two *Winter* requirements. Mot. 17-18.  As described above, that premise is mistaken.  As with the first two requirements, Plaintiff fails to carry its burden on these as well.

Plaintiff's argument that the injunction will not burden Defendants ignores the prior record in this matter.  Plaintiff previously moved to hold Defendants in contempt for violation of the TRO and issued a press release about their motion.  ECF 67, ECF 79-3.  Although this Court denied

Plaintiff's motion, Defendants were forced to expend considerable resources in their defense. Further, Plaintiff's arguments are undercut by its false assertion that the iyO One was intended for a "general consumer audience." ECF 35-1 ¶ 5. No precept of equity, nor any principle of public interest, favors rewarding a litigant that has fabricated evidence, misled two courts, and attempted to conceal all evidence of its violations. *Supra* Factual Background §§ C-E, H. And it is not in the public interest to encourage the filing of motions for preliminary injunction that are not supported by evidence and are inconsistent with reality.

## III.    PLAINTIFF'S PROPOSED ORDER IS UNDULY BROAD

If the Court is nevertheless inclined to grant an injunction, the Court should significantly narrow Plaintiff's proposed order. Plaintiff offers no argument that the TRO was too narrow in scope; nonetheless, it proposes a drastically broader injunction that would prevent Defendants from using the "IYO" or "IO" names "in commerce by any means whatsoever." ECF 110-5 at 4. Plaintiff's request is patently overbroad, and it extends far beyond the scope of the trademark rights claimed in its trademark application. ECF 1-1. As one of many examples, the ".io" domain extension is one of the most common top-level domains amongst technology companies, and it is used by Defendants in connection with their ChatGPT product. Pollock Decl., Exs. T, U; *see* chatgpt.io. Moreover, "io" is common slang for the term "input/output," and isolated references to the term in common parlance present no realistic possibility of confusion. Further, "io Products, Inc." was historically a company name. Defendants should not be barred from referring to it as such in every context. *Enea Embedded Tech., Inc. v. Eneas Corp.*, 2009 WL 648891, at *4-7 (D. Ariz. Mar. 11, 2009) (dismissing lawsuit based on allegation that Defendants had registered an infringing business name, because "trademark infringement law prevents only unauthorized use of a trademark in connection with a commercial transaction") (citing *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005)). No injunction should issue that exceeds the scope of the TRO, which enjoined Defendants from using the IYO or IO marks "in connection with the marketing or sale of related products."

## CONCLUSION

Plaintiff's request for a preliminary injunction should be denied.

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

DATED:  March 13, 2026            QUINN EMANUEL URQUHART
                                  & SULLIVAN, LLP


                                  By_____/s/ Margret M. Caruso_____
                                      Margret M. Caruso
                                      *Attorneys for Defendants io Products, Inc.,*
                                      *OpenAI, Inc., OpenAI, LLC, and Sam Altman*


DATED:  March 13, 2026            JONES DAY


                                  By_____/s/ Meredith M. Wilkes_____
                                      Meredith M. Wilkes
                                      *Attorneys for Defendant Sir Jonathan Paul Ive*

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

**ATTESTATION**

I, Margret M. Caruso, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(i)(3), I hereby attest that Meredith M. Wilkes has concurred in the filing of the above document.


By _____*/s/ Margret M. Caruso*_____
    Margret M. Caruso

DEFENDANTS' OPPOSITION TO PLAINTIFF IYO, INC.'S MOTION FOR A PRELIMINARY INJUNCTION