MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
ADSkale@mintz.com
Micha Danzig (177923)
mdanzig@mintz.com
Laura Franco (186765)
LFranco@mintz.com
Anthony J. Viola (*pro hac vice*)
AJViola@mintz.com
Kara M. Cormier (*pro hac vice*)
KMCormier@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel.: (415) 432-6000

*Attorneys for Plaintiff IYO, INC.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC.<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, OPENAI OPCO, LLC, SAM ALTMAN, SIR JONATHAN PAUL IVE, and TANG YEW TAN,<br><br>　　　　　Defendants. | Case No. 3:25-cv-4861-TLT<br><br>**PLAINTIFF IYO, INC.'S REPLY MEMORANDUM ISO MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Complaint Filed: June 9, 2025<br>Hearing Date: April 14, 2026 |

PLAINTIFF'S REPLY MEMO ISO MOTION FOR
PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 3

    A.    Plaintiff is Likely to Succeed on the Merits of Its Trademark Claim ..................... 3

        1.    Defendants Used the Disputed Mark in an Infringing Advertisement and their Claimed "Voluntary Cessation" Does Not Moot this Case ......... 3

        2.    There is a Likelihood of Confusion ............................................................. 5

            a.    Defendants' Commercial Strength Will Overwhelm Plaintiff. .............. 5

            b.    The Parties' Goods are Related. ........................................................... 6

            c.    The Marks are Nearly Identical. .......................................................... 6

            d.    There is Already Evidence of Actual Confusion. ................................. 6

            e.    The Consumer Care Factor Makes Confusion Likely. ....................... 11

            f.    The Parties' Marketing Channels Overlap. ........................................ 11

            g.    Defendants Intended to Infringe. ........................................................ 11

    B.    Irreparable Harm Will Continue Without Injunctive Relief ................................. 12

        1.    Irreparable Harm is Presumed. ................................................................... 12

        2.    Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction .................................................................................................. 12

    C.    The Balance of Equities and Public Interest Favor Plaintiff................................. 14

    D.    No Bond Should Be Required and The Proposed Order is Not Overbroad........... 15

III.  CONCLUSION ................................................................................................ 15

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Records, Inc. v. Napster, Inc.*,
2000 WL 1170106 (N.D. Cal. Aug. 10, 2000) ........................................................................ 7

*Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*,
2019 WL 1586776 (N.D. Cal. Apr. 12, 2019) ............................................................ 5, 6, 12

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
613 F. Supp. 3d 1308 (S.D. Cal. 2020) ................................................................................. 7

*Billfloat Inc. v. Collins Cash Inc.*,
105 F.4th 1269 (9th Cir. 2024) ......................................................................................... 7, 8

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
923 F. Supp. 2d 1245 (S.D. Cal. 2013) ................................................................................. 8

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) .............................................................................................. 6

*Cyclone USA v. LL&C Dealer Servs. LLC*,
2004 WL 7325117 (C.D. Cal. Apr. 14, 2004) ............................................................. *passim*

*Deckers Outdoor Corp. v. Last Brand, Inc.*,
2025 U.S. Dist. LEXIS 195920, at *5 (N.D. Cal. Oct. 2, 2025) ........................................... 8

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
618 F.3d 1025 (9th Cir. 2010) .............................................................................................. 7

*Friends of the Earth, Inc. v. Laidlaw Environmental Services*,
528 U.S. 167 (2000) ......................................................................................................... 1, 3

*Iyo, Inc. v. Io Prods., Inc.*,
2025 WL 3471705 (9th Cir. Dec. 3, 2025) ................................................................. *passim*

*Iyo, Inc. v. Io Prods., Inc.*,
2025 WL 3501003 (N.D. Cal. June 20, 2025) ................................................... 10, 11, 12, 13

*Kournikova v. Gen. Media Commc'ns Inc.*,
278 F. Supp. 2d 1111 (C.D. Cal. 2003) ................................................................................. 8

*Kudos Inc. v. Kudoboard LLC*,
2021 WL 5415258 (N.D. Cal. Nov. 20, 2021) ....................................................................... 7

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) ................................................................................................ 3

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

*Langer v. Music City Hotel LP*,
  2021 WL 5919825 (N.D. Cal. Dec. 15, 2021) ......................................................................... 5

*LifeScan, Inc. v. Shasta Techs., LLC*,
  2013 WL 12201564 (N.D. Cal. May 21, 2013) ....................................................................... 7

*M2 Software, Inc. v. Madacy Ent.*,
  421 F.3d 1073 (9th Cir. 2005) ............................................................................................... 7

*Multiple Energy Techs., LLC v. Hologenix, LLC*,
  2019 WL 2619649 (C.D. Cal. June 3, 2019) .......................................................................... 8

*QS Wholesale, Inc. v. World Mktg., Inc.*,
  2014 WL 12586120 (C.D. Cal. Jan. 7, 2014) ....................................................................... 14

*Reinsdorf v. Skechers U.S.A.*,
  922 F. Supp. 2d 866 (C.D. Cal. 2013)................................................................................... 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001)................................................................................................. 7

*Tari Labs, LLC v. Lightning Labs, Inc.*,
  2023 WL 2480739 (N.D. Cal. Mar. 13, 2023) ....................................................................... 8

*Yuga Labs, Inc. v. Ripps*,
  144 F.4th 1137 (9th Cir. 2025)............................................................................................. 11

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- iii -

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

## I.    INTRODUCTION

At Defendants' insistence, the Ninth Circuit analyzed the TRO *as a preliminary injunction* ("PI"), and affirmed on the merits. Defendants concede that decision is binding as to every issue it decided. And it completely undermines their opposition here. So they attempt to avoid it by raising three purported "new developments:" their claimed voluntary cessation; selective and misleading podcast quotations; and an attempt to use the very harm they inflicted as a shield. But none change the holding of the Ninth Circuit and none warrant withholding preliminary injunctive relief.

First, Defendants' alleged "voluntary cessation" is simply them complying with the existing TRO—it is not the "irrefutably demonstrated and total" abandonment that moots injunctive relief. *Cyclone USA v. LL&C Dealer Servs. LLC*, 2004 WL 7325117, at *7 (C.D. Cal. Apr. 14, 2004). Tellingly, Defendants' meager promise fails in many respects. It only covers "hardware"—it does not extend to software, confusingly similar marks, or their use of "io" as a trade name. Defendants apparently still plan to release a competing product and retain every instrumentality to resume infringement. They also still have the corporate name "io Products, Inc.", the "io.com" domain, name, and their IO trademark applications (which remain pending and have not been withdrawn). And they refused to stipulate to a PI, which confirms their wish to remain "free to return to [their] old ways." *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 189 (2000). The voluntary-cessation doctrine squarely applies here and Defendants' mootness argument fails.

Second, Defendants engage in gross distortion when they contend that Jason Rugolo admitted the IYO One is not a mass market device, in supposed contravention of his declaration stating it was intended for a "general consumer audience" (ECF 35-1 ¶ 5). The podcast on which Defendants rely was recorded on February 6, 2025 – not November 2025, as Defendants suggest.[1] Rugolo Reply Decl. at ¶2. At that time, IYO was "not trying to make a mass market device *yet*." Rugolo Reply Decl. at ¶3 and Ex. D (podcast transcript) (emphasis added). The "yet" is significant

---

[1] Having refused to produce a single document in discovery—including documents they intend to rely upon for this very motion—Defendants cannot now rely on undisclosed evidence, and thus the Court should disregard Pollock Exhibits E, I-U, and W-Z. *See* Objections, filed contemporaneously. By contrast, IYO agreed to produce documents, has produced public documents, and will produce confidential documents once the parties resolve disputes over the model protective order (from which Defendants seek to materially deviate).

because it conveys a temporal and logistical limitation, not a conceptual one. In other words, at that time IYO was ramping up an initial manufacturing run of only 20,000 units. ECF 119 (Verified FAC, "VFAC") at ¶71. Naturally (as with any new product in this space), Mr. Rugolo suspected the first run would be purchased by "tech early adopters, [] audiophiles, [and] AI enthusiasts." Rugolo Reply Decl. at ¶3 and Ex. D. But (i) that is still large swathes of the general public (especially "AI enthusiasts"), and (2) that does not convert this consumer product into a niche one. Nothing in the podcast undermines Rugolo's sworn testimony that the IYO One is intended for a general consumer audience. Indeed, while Defendants selectively excerpt one statement from the hour-long podcast, the remainder of the podcast lists multiple explanations of how everyday users can and should use the IYO One in ordinary, consumer settings. *Id.* at ¶4. Such use cases include: hearing a dinner companion in a noisy restaurant, using banking apps, filtering city noise while jogging, listening to high-quality consumer audio, protecting hearing in urban environments, and enabling real-time translation while traveling. *Id*. & Ex. D at 22:40–23:00, 34:00–35:00, 37:56–41:35, 49:00–49:16, 1:00:55–1:01:42.

In that same podcast, Rugolo also emphasized that "***This is something for everybody.***" *Id.* at 43:38 (emphasis added). He described IYO ONE as "a consumer" product meant to improve daily life for ordinary users. *Id.* at 43:00. In other words, the podcast contains nothing "new" or inconsistent. IYO's initial manufacturing run and early-adopter positioning were steppingstones to a mass-market product, just as Rugolo attested, just as IYO's website has always stated, and just as described in the Ted Talk. *Id.* at ¶¶3-4; ECF 30-2 at 10 (IYO Website stating: "Our mission is to bring natural language computing to billions of people."); ECF 30-6 at 9-10 (transcript of Ted Talk: demonstrating real time translation and sound isolation); *id.* at 10 (Ted Talk: "imagination is the only limit to what you can do here").

Third, Defendants exploit the very harm they caused by claiming IYO has been unable to release its products even with the TRO. But Defendants' infringement disrupted IYO's financing, delayed its manufacturing plans, and has – as a result - impaired its ability to launch on schedule. Having inflicted that injury, Defendants also argue that IYO should be denied relief because the damage is purportedly done. But the harm is ongoing and will not be relieved without a PI given

the lingering market uncertainty Defendants have created. The Court's equitable power exists precisely to prevent defendants from destabilizing IYO through unlawful conduct and then invoking the resulting harm as a shield against relief.

## II.    ARGUMENT

### A.    Plaintiff is Likely to Succeed on the Merits of Its Trademark Claim[2]

#### 1.    Defendants Used the Disputed Mark in an Infringing Advertisement and their Claimed "Voluntary Cessation" Does Not Moot this Case

Defendants' mootness argument, premised on their purported promise not to use the IO mark, fails. As a preliminary matter, this Court has jurisdiction. Federal district courts "have original jurisdiction" over actions arising under the Lanham Act. 15 U.S.C. § 1121(a); *see also* 28 U.S.C. § 1331. This provision "confers broad jurisdictional powers upon the courts of the United States," extending to any suit pleading "a colorable claim" under the Act. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 872-73 (9th Cir. 2014) ("use in commerce" is not a jurisdictional prerequisite). The Ninth Circuit already settled this question in this case, holding that IYO "has a 'colorable claim' that the May 21 video was itself an infringing advertisement" because it "was specifically designed to generate anticipation for IO's first product." *Iyo, Inc. v. Io Prods., Inc.*, 2025 WL 3471705, at *1 (9th Cir. Dec. 3, 2025). That ruling is law of the case, and is dispositive. Having no answer, Defendants simply pretend it does not exist.

Defendants' post-hoc promise to stop using the IO mark "in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled hardware products" (ECF 123-1 at ¶ 2) does not moot IYO's request for a PI. Defendants bear a "formidable" burden, *Laidlaw*, 528 U.S. at 190, of showing that their cessation is "irrefutably demonstrated and total," *Cyclone*, 2004 WL 7325117, at *7. They have not even come close to meeting that burden.

Defendants still plan to launch a competing product, under an undisclosed name, in the same market—leaving open the very risk of confusion that trademark law exists to prevent. Further, Defendants have ***not*** promised to avoid confusingly similar marks and have cabined their promise to "artificial intelligence-enable ***hardware*** products" only. Defendants misleadingly omit the word

---

[2] Defendants do not address and therefore concede that IYO has a protectable mark.

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

"hardware" when quoting Welinder (at 6) to make their promise seem broader than it is. But really, Defendants' promise is very narrow and does not preclude their use of the IO mark for software (which is covered by IYO's trademark registration) or as part of a tradename (which can also constitute trademark infringement). Tellingly, they refused to stipulate to a PI and refused to be bound by an order extending through trial. They further retain every asset, instrument, and piece of infrastructure that enabled the challenged conduct in the first place, including the corporate name io Products, Inc., the io.com domain, the prototype, the personnel, and the capacity to resume infringing activity at will. They also do not deny that they filed 8 trademark applications for the IO mark under the name "Weynorth Limited," *none* of which have been abandoned or withdrawn. *See* Skale Reply Decl., Ex. E at RFP Nos. 93-97 (Defendants' R&O's to Second Set of RFPs); Exs. F-M (Trademark Applications for IO mark). When asked to produce documents about that entity and those applications, Defendants refused based on claimed mootness and boilerplate objections; but not because they had no relation to Weynorth. Indeed, those trademark applications seek protection for the same IO mark that Defendants used in their May 21 announcement:



If Defendants truly never intended to resume use of the IO mark, these would have been withdrawn.

Defendants' contention that the voluntary cessation doctrine is inapplicable because they never "started" using the mark is also false. As the Ninth Circuit correctly recognized, advertising alone gives rise to a claim under the Lanham Act. *See* 15 U.S.C. § 1114(1)(a). The Ninth Circuit held that IYO has a colorable claim that Defendants *did* use the mark in commerce via their May 21 advertisement. Defendants' assertion that the doctrine does not reach them is therefore foreclosed, and their attempt to distinguish the cases IYO cited (at 7–9) on this basis fails for the same reason. Defendants publicly launched the IO brand through a high-profile announcement, triggered immediate market confusion, and only later—after a TRO issued and was affirmed— claimed they would not proceed under that name. That is textbook voluntary cessation.

Defendants' cases confirm they have not met their burden. In *Already*, *LLC v. Nike, Inc.*, the Supreme Court found mootness only after Nike signed a broad, unconditional, and irrevocable

covenant not to sue that "prohibit[ed] Nike from making any claim or any demand" against the plaintiff based on any existing or future designs, including "colorable imitations." 568 U.S. 85, 93 (2013). Nike also dismissed its own claims with prejudice, effecting a complete surrender of enforcement rights. *Id.* at 91–93. In *WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, the court found mootness only after the defendant completely abandoned its plans to enter the U.S. (with the disputed mark or otherwise), removed all uses of the mark, and abandoned its planned office space. 2020 WL 83845, at *3–4 (N.D. Cal. Jan. 7, 2020). The court there found no indication the defendant retained any realistic ability or incentive to resume the challenged conduct. *Id.*

Nothing comparable exists here. Defendants' only evidence of non-resumption is that news outlets reported on their purported decision. That does not come close to proving that cessation is "irrefutably demonstrated and total." *Cyclone*, 2004 WL 7325117, at *7. None of the cases Defendants cite (at 9) hold otherwise. In *Volkswagenwerk v. Church*, the defendant had already changed the only mark in dispute, making a permanent injunction unnecessary. 411 F.2d 350, 352 (9th Cir.), *supplemented*, 413 F.2d 1126 (9th Cir. 1969). In *Apple v. Samsung*, "the undisputed evidence" showed Samsung had "stopped selling the products found to dilute Apple's trade dress." 735 F.3d 1352, 1375 (Fed. Cir. 2013).[3] Here, Defendants have not abandoned any of the modalities of infringement. They retain the domain, corporate identity, freedom to release a competing product under a confusingly similar name, freedom to use the IO mark other than on hardware, and continue to press applications for the IO mark. They refuse to agree to an injunction, refuse to commit to cessation through trial, and refuse to tell IYO or this Court what the new name would be.

In short, Defendants' strategic, hardware-limited promise of nonuse—made only after being enjoined—neither divests this Court of jurisdiction nor warrants denial of the PI.

### 2.    There is a Likelihood of Confusion

#### a.    Defendants' Commercial Strength Will Overwhelm Plaintiff.

Defendants attempt (at 20) to recharacterize this factor as neutral–despite the Ninth Circuit's affirmance to the contrary–based on their self-serving claim of cessation. But when the voluntary

---

[3] *Langer v. Music City Hotel LP*, 2021 WL 5919825, at *7 (N.D. Cal. Dec. 15, 2021) is also inapposite. It involved a claimed ADA violation—not trademark infringement—and the defendants there showed the alleged violation had been completely and irrevocably eradicated.

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. ATTORNEYS AT LAW

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

cessation doctrine applies (as it does here), this factor must be analyzed as if Defendants may resume their infringing conduct. *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, 2019 WL 1586776, at \*16–17 (N.D. Cal. Apr. 12, 2019). Because Defendants remain free—absent a PI—to re-enter the market under IO or a confusingly similar mark, this factor continues to favor IYO.

### b.      The Parties' Goods are Related.

Defendants ignore binding determinations from both this Court and the Ninth Circuit that the parties' goods are related. They likewise disregard their repeated admissions of competition, from both Sam Altman and Tang Tan. Plaintiff challenged Defendants to explain these admissions but neither Altman nor Tan has ever disavowed them. Instead, Defendants rehash the same argument that this Court previously rejected: that the form factor of Defendants' anticipated product is unknown (despite refusing to produce that very information in discovery). But the fact of the matter is that nothing about what the parties' products are or do has changed since the Ninth Circuit's affirmance. The parties offer admittedly competing goods that serve the very same purpose for the same sorts of consumers. Thus, this factor continues to favor IYO.[4]

### c.      The Marks are Nearly Identical.

Defendants do not dispute that the IO and IYO marks are nearly identical. Their only response (at 10–11) is that they have not and will not use the mark. The first point is wrong—as the Ninth Circuit has already confirmed—and the second does not moot the need for preliminary injunctive relief for the reasons discussed above. *See also Align*, 2019 WL 1586776, at \*8 (comparing registered mark to infringing mark despite claim of cessation).

### d.      There is Already Evidence of Actual Confusion.

Defendants do not dispute that the law does not require IYO "to prove instances of actual confusion" because the "difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." *Brookfield Communs., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036,

---

[4] Defendants' citations do not warrant a different conclusion. *Zora Labs, Inc. v. Deloitte Consulting, LLP*, involved an NFT marketplace versus a business-to-business AI workflow tool. 2025 WL 2104953, at \*3 (S.D.N.Y. July 28, 2025). The court in *Entrepreneur Media v. Smith*, only discounted the relatedness of the parties' goods to avoid over-protecting a descriptive mark ("Entrepreneur"). 279 F.3d 1135, 1147–48 (9th Cir. 2002). Here, IYO is arbitrary and strong, eliminating any justification for discounting relatedness.

1050 (9th Cir. 1999). Here, Plaintiff offered a survey and proxy evidence from its investors.

***The survey is admissible and shows confusion***. Defendants devote substantial space to attacking Keegan's survey, but their main critique—that the survey used a "fabricated" stimulus divorced from marketplace reality—is demonstrably false. The white "io" lettering on a black background shown to survey respondents was pulled ***directly*** from Defendants' own May 21, 2025 video advertisement, introducing the "io" brand to the public. *See* ECF 119 at ¶ 202. That video prominently featured the standalone "io" wordmark rendered in white against a black background, without accompanying product imagery, packaging, or house marks. Keegan did not speculate about how Defendants might present the mark; he used Defendants' actual presentation that triggered Plaintiff's claims and investor confusion. ECF 111 at ¶ 34. (Notably, as shown above, the mark taken from the video is the same as the mark in the Weynorth trademark registrations.)

Defendants also ignore Ninth Circuit law. In this Circuit, it is reversible error to exclude surveys over stimulus design, universe selection, and survey format–such factors all go to weight, not admissibility. *Billfloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275–76 (9th Cir. 2024) (explaining "challenges to methodology and design are precisely the kind of claimed deficiencies that go to the weight of the evidence, not its admissibility"); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (reversing district court's exclusion of survey that "compared the products side-by-side, failed to replicate real world conditions, failed to properly screen participants, and was 'highly suggestive'" because "[w]e have long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant'"). Instead, Defendants (at 14-20) rely on cases that are either highly distinguishable, from outside this Circuit, or wrongly based on standards from outside this Circuit. *See A & M Records, Inc. v. Napster, Inc.,* 2000 WL 1170106, at *9 (N.D. Cal. Aug. 10, 2000) (rejecting attempt to rely on "cases outside the Ninth Circuit for the proposition that methodological flaws in surveys render them inadmissible").[5]

---

[5] Defendants' citations are inapposite. *See M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1087 (9th Cir. 2005) (excluding survey not conducted by an expert or "in accordance with generally accepted survey principles" such as Eveready or Squirt); *Kudos Inc. v. Kudoboard LLC*, 2021 WL 5415258, at *12 (N.D. Cal. Nov. 20, 2021) (improperly excluding survey based on Second Circuit case law, which differs from that in this Circuit); *Aya Healthcare Servs., Inc. v. AMN Healthcare,*

Moreover, at the PI stage, courts more readily consider surveys, even with alleged deficiencies. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 840 (9th Cir. 2001) (affirming PI, noting that the district court properly admitted survey with purported methodological deficiencies); *LifeScan, Inc. v. Shasta Techs., LLC*, 2013 WL 12201564, at *9 (N.D. Cal. May 21, 2013) (admitting expert opinion because "the standard for the admissibility of evidence presented for the purpose of a motion for a preliminary injunction is not high").

Regardless, none of Defendants' critiques warrant giving Keegan's survey less weight. For example, Defendants attack Keegan's use of the *Squirt* survey format. But "the 'Squirt' survey format, [is] an accepted survey methodology in cases where likelihood of confusion between lesser-known marks is at issue." *Billfloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1275-76 (9th Cir. 2024) (affirming admission of Keegan's *Squirt* survey). As Keegan explained, the *Squirt* format simulated the marketplace because both parties "made announcements to their potential customers regarding the same type of product, namely screenless computing devices that allow natural interaction with AI." ECF 111 at ¶39. It is also appropriate here because the parties' goods are "directly competing . . . with identical or substantially overlapping consumers." *Id.*; *Deckers Outdoor Corp. v. Last Brand, Inc.*, 2025 U.S. Dist. LEXIS 195920, at *5 (N.D. Cal. Oct. 2, 2025) (*Squirt* survey appropriate when consumers encounter "products in close proximity online"). Moreover, while Defendants submitted an expert declaration critiquing Keegan's report, they "did not submit . . . a survey that demonstrated no confusion among consumers." *Tari Labs, LLC v. Lightning Labs, Inc.*, 2023 WL 2480739, at *9 (N.D. Cal. Mar. 13, 2023). The lack of a counter-survey favors a finding that Keegan's "survey may show the possibility of actual confusion," despite (unfounded) criticisms over format/design. *Id.*

*Inc.*, 613 F. Supp. 3d 1308 (S.D. Cal. 2020), *aff'd*, 9 F.4th 1102 (9th Cir. 2021) (involving neither trademark infringement nor exclusion of a trademark survey); *Multiple Energy Techs., LLC v. Hologenix, LLC*, 2019 WL 2619649, at *3 (C.D. Cal. June 3, 2019) (survey measured confusion from false advertising, not trademark infringement, and improperly tested end users despite confusion being limited to manufacturers); *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, 923 F. Supp. 2d 1245, 1257 (S.D. Cal. 2013) (excluding survey in reliance on out-of-circuit case law); *Reinsdorf v. Skechers U.S.A.*, 922 F. Supp. 2d 866, 878 (C.D. Cal. 2013) (copyright, not trademark, survey was "not conducted according to accepted scientific principles"); *Kournikova v. Gen. Media Commc'ns Inc.*, 278 F. Supp. 2d 1111, 1125 (C.D. Cal. 2003) (survey tested general public even though fewer than 10% of sample population purchased magazine at issue).

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

- 8 -

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

Defendants further argue that the survey is irrelevant, claiming no "io-branded products" exist and similarly, no house marks, images or packaging were shown. But Defendants' announcement did not include product depictions, packaging, or detailed branding context, nor did it present the "io" mark alongside OpenAI house marks in a manner that would dispel confusion. The relevant question is not whether Defendants might someday add additional context, but whether the use Defendants themselves made of the mark was likely to cause confusion. That is what Keegan tested. The survey therefore mirrored Defendants' actual use, the marketplace conditions they created, and how consumers actually encountered the mark at issue: as a stark, standalone identifier.

Defendants' contention that the survey universe was "overinclusive," and that demographic slicing somehow proves it, likewise misses the mark. The survey properly tested confusion among consumers of high-end personal electronic devices—the very consumer base IYO targets. As discussed above, the February 2025 podcast does not undermine that the IYO One is marketed to the general public. Because the survey measured the precise confusion Defendants injected into the marketplace through their actual brand announcement, it supports a finding that confusion is likely.

Defendants' contention that the 38.3% control rate in the Keegan survey reflects excessive "systemic noise" misconstrues the purpose and methodology of survey controls in trademark research. The control group exists to measure baseline noise—the rate at which respondents indicate confusion for reasons other than the similarity of the trademarks—so that it can be subtracted from the test results to yield a reliable net confusion figure. *See* ECF 111 at ¶¶31–32, 35–36. Keegan's survey properly performed this function, yielding a net confusion rate of 24.0%— well above the 15% threshold that courts and survey experts recognize as probative of likely confusion. *Id.* at ¶¶8, 32, 76. The proper inquiry is not whether the control rate is high or low in isolation, but whether the test group's confusion substantially exceeds that of the control group, which it indisputably does here. *Id.* at ¶¶32, 76. Moreover, the internal controls—responses to the Meta AI Glasses and Humane AI Pin stimuli—corroborate the external control findings, with confusion rates hovering between 35% and 43% across both test and control cells for products that have no trademark similarity to "io" or "iyO." *Id.* at ¶¶38, 77, 79, Table 2. This consistency across

multiple independent controls confirms that the baseline reflects real marketplace conditions for this emerging product category, not a design flaw. *Id.* at ¶79.

Also, Defendants' attack on the Humane AI Pin internal control as "fabricated" because it is no longer on the market is irrelevant. The use of a fabricated control stimulus is widely endorsed in the survey literature, especially where the control is unfamiliar or not commercially available.[6]

Dr. Swain's alternative theory—that respondents are merely "category matching" rather than experiencing true trademark confusion—ignores the open-ended responses in which test-group participants specifically cited name and letter similarity as the basis for their confusion (approximately 32% of confused test-group respondents), a pattern that disappears in the control group where the stimulus "ue" shares no letters with "iyO." The 24-point differential between the "io" and "ue" conditions cannot be explained by category matching alone; it is attributable to the confusing similarity of the marks, which is precisely what the survey was designed to measure.

***Investor Confusion Persists as a Proxy for Actual Confusion***. Defendants' effort to minimize investor confusion as irrelevant or stale misses the mark. Defendants admit that the Court expressly credited evidence that IYO's investors reacted with confusion to Defendants' May 21 announcement and held that such confusion "serve[d] as a proxy for actual consumer confusion." *Iyo, Inc. v. Io Prods., Inc.*, 2025 WL 3501003, at *11 (N.D. Cal. June 20, 2025). They also admit that the Ninth Circuit affirmed that finding, holding that this factor "slightly favors IYO." *Iyo*, 2025 WL 3471705, at *2 (9th Cir.). That ruling is binding because the factual record remains unchanged. Defendants' non-binding decision not to use the IO mark on hardware (but not software or otherwise) does nothing to assuage investor concerns. That is why IYO ***still*** has not been able to acquire a single new investor. *See* VFAC, ECF 119 at ¶ 227. In short, this factor continues to weigh in favor of IYO. *See Cyclone*, 2004 WL 7325117, at *7 (granting PI despite defendant's claim that

---

[6] *See, e.g.*, Jacob Jacoby, Experimental Design and the Selection of Controls in Trademark and Deceptive Advertising Surveys, 92 Trademark Rep. 890, 918-22 (2002) (when no "natural control" is available, an expert "strives to generate a reasonable 'derived control'"); Jacob Jacoby, Trademark Surveys: Designing, Implementing, and Evaluating Surveys § 7.31.2, "Natural versus Devised Controls", at 507–12 (Vol. I, ABA Section of Intellectual Property Law); Diamond, S. S., "Control Foundations: Rationales and Approaches," in Trademark and Deceptive Advertising Surveys, Second Edition, American Bar Association, p. 252 (2022) ("Control products may exist that have the needed characteristics for the survey, or they may have to be created to have them.").

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. ATTORNEYS AT LAW

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

it had "ceased the complained of activities, and [] committed to not resuming them" since PI would "have little impact on LL&C, while ensuring that the status quo is maintained").

### e.    The Consumer Care Factor Makes Confusion Likely.

Defendants ask (at 11–12) that this Court reverse itself and hold contrary to the Ninth Circuit on the consumer care factor based solely on their false claim that Rugolo "admitted" that the IYO One is not intended for a general consumer audience. As discussed above, that is a gross distortion of Rugolo's actual February 6, 2025 interview. Because the IYO One is intended for a general consumer audience, this factor continues to favor IYO.

### f.    The Parties' Marketing Channels Overlap.

Defendants argue (at 13–14) that the marketing channel factor favors them because the parties sell through different websites. But that is the same contention they raised at the TRO and on appeal–and which both this Court and the Ninth Circuit rejected. The Ninth Circuit expressly found that both parties market their products to the general public through the internet, giving this factor little weight (in favor of IYO) only because internet marketing is ubiquitous–not because it favored Defendants. *Iyo*, 2025 WL 3471705, at *2 (9th Cir.); *Iyo*, 2025 WL 3501003, at *10 (N.D. Cal.) (finding factor "weighs slightly in [Plaintiff's] favor"). Defendants' reliance on *Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1171 (9th Cir. 2025)–in which the parties sold NFTs through distinct online marketplaces–is unavailing. Defendants briefed that case in the Ninth Circuit (ECF 27.1 at 23), which rejected their argument. Finally, Defendants' attempt to again mischaracterize Rugolo's podcast remarks should be rejected, for reasons already discussed. As the podcast makes clear, the IYO ONE is "for everybody." Rugolo Decl.*,* Ex. D at 43:38.

### g.    Defendants Intended to Infringe.

Defendants admit (at 20) that the Court already concluded that "Defendant's intent weighs in favor of infringement." *Iyo*, 2025 WL 3501003, at *11 (N.D. Cal.)–a finding the Ninth Circuit did not disturb. That determination rested on extensive evidence of Defendants' prior actual knowledge of IYO and its products. Defendants' attempt to relitigate that settled finding based on their purported voluntary cessation—after being enjoined by a TRO—should be rejected. The sole case Defendants cite is inapposite. In *AMF v. Sleekcraft*, the defendant was unaware of the

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 11 -

plaintiff's mark and promptly adopted a different logo upon learning of the infringement. 599 F.2d 341, 354 (9th Cir. 1979). The facts here are starkly different. Defendants had actual knowledge of IYO, its products and its brand before announcing IO to the public and even admitted repeatedly to IYO that they were working on something competitive. Defendants' claimed voluntary cessation in the face of judicial intervention does not erase their prior bad faith or negate the risk of future infringement. *Align*, 2019 WL 1586776, at *9 (evaluating intent at the time "the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark" despite claims of voluntary cessation). As nothing about Defendants' knowledge or conduct has changed since the Ninth Circuit's affirmance, this factor continues to weigh decisively in IYO's favor.

Thus, just as during the TRO, IYO continues to have a strong likelihood of success.

### B.      Irreparable Harm Will Continue Without Injunctive Relief

Defendants' irreparable harm arguments fail because IYO: (1) is entitled to a statutory presumption of irreparable harm, which Defendants have not rebutted; and (2) has demonstrated concrete, ongoing harm through unrebutted investor declarations and the VFAC (filed March 13).

### 1.      Irreparable Harm is Presumed

Defendants' position on irreparable harm is a thinly veiled rehashing of arguments that both this Court and the Ninth Circuit have already considered and rejected. Under the Trademark Modernization Act, a trademark plaintiff is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a). This Court previously found that "[b]ecause IYO has shown a likelihood of success on the merits, it is entitled to a presumption of irreparable harm" that Defendants failed to rebut. *Iyo*, 2025 WL 3501003, at *11 (N.D. Cal.). The Ninth Circuit affirmed. *Iyo*, 2025 WL 3471705, at *2 (9th Cir.). IYO continues to satisfy the likelihood of success standard and thus, is entitled to the presumption.

### 2.      Plaintiff Will Suffer Irreparable Harm Absent a Preliminary Injunction

IYO's showing of irreparable harm supports the presumption, which remains unrebutted.

***There is No Misrepresentation in Rugolo's Declarations.*** Defendants' central claim—that IYO's CEO Jason Rugolo "misrepresented" the target audience for the iyO One—is, as discussed above, a gross distortion. Rugolo's interview on February 6, 2025 makes clear that the IYO One is

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

"a consumer" product "for everybody," with numerous examples of how the everyday consumer might use the product. Rugolo Reply Decl. at ¶4 and Ex. D. Given that the first planned manufacturing run was for only 20,000 units, IYO anticipated that those units would be purchased by early adopters, audiophiles, and AI enthusiasts–a large segment of the general public. And while an initial manufacturing run of 20,000 units wasn't mass market "yet," the interview is clearly consistent with Rugolo's declarations that the IYO is intended for a general consumer audience.[7]

*Defendants' Cases are Inapposite and Predated the Trademark Modernization Act.* Defendants have not cited a single case in which a party was found entitled to a presumption of irreparable harm that a defendant successfully rebutted. Instead, they cite a series of cases—*iCall*, *Herb Reed*, *Sarieddine*, *Cutting Edge Solutions*, and *Wahoo International*—that predate the Trademark Modernization Act. Thus, in none of Defendants' cases was the plaintiff entitled to that Act's statutory presumption of irreparable harm. Moreover, they are readily distinguishable. For example, unlike the plaintiffs in *iCall* and *Herb Reed*, who offered only cursory, conclusory declarations, IYO has submitted concrete evidence of harm, including multiple investor declarations establishing that its fundraising campaign froze after Defendants' May 21 advertisement, preventing IYO from securing new investors, manufacturing the iyO ONE, or fulfilling its pre-orders. *Iyo*, 2025 WL 3501003, at *11–12 (N.D. Cal.). As set forth in the VFAC, filed on March 13, 2026, that fact remains true to this day. *See* ECF 119 at ¶ 227. This is the kind of "concrete evidence of lost business or goodwill" the court found absent in *iCall*. 2012 WL 5878389, at *14 (N.D. Cal. Nov. 21, 2012). This Court and the Ninth Circuit credited that evidence in finding irreparable harm—and nothing has changed. Moreover, unlike the plaintiffs in *Sarieddine*, *Cutting Edge*, and *Wahoo*, who each waited approximately 18 months before seeking relief, IYO did not delay. It sought a TRO the same day it filed suit, just 19 days after Defendants' May 21 advertisement, demonstrating the urgency of its situation.

*The Harm IYO Identified Persists and is Not "Moot."* Defendants assert (at 23) that the unrebutted investor confusion declarations were "mooted" by their removal of the May 21 video

---

[7] Comparison to *Innospan Corp. v. Intuit Inc.*, is completely inapt here. 2011 WL 2669465, at *3–5 (N.D. Cal. July 7, 2011). *Innospan* involved egregious misconduct of witness tampering and knowing misrepresentations. There is no such conduct here.

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

and their claimed decision not to use the "io" name. Not true. Defendants' "decision" is not "irrefutably" irreversible and is, as discussed above, narrowly limited to hardware. It thus does not protect all of IYO's registered trademark rights (*e.g.* software). Nor does it "moot" investor confusion or concerns over confusion. Indeed, such confusion and concerns are instead fueled by Defendants' refusal to stipulate to a PI-especially since Defendants continue to actively pursue trademark registrations, while maintaining the infrastructure that would allow them to resume infringement at will, including the corporate name io Products, Inc., the io.com domain, the prototype, and personnel. The foregoing is illustrated by the fact that IYO has still not been able to acquire a single new investor even after Defendants' purported "cessation" decision. *See* VFAC, ECF 119 at ¶ 227. Unless Defendants' cessation is enforced through a PI, it can do nothing to assuage investor concerns. The "lingering uncertaint[y]" in the market is itself "sufficient to establish lingering harm that cannot easily be compensated with monetary damages." *QS Wholesale, Inc. v. World Mktg., Inc.*, 2014 WL 12586120, at \*12 (C.D. Cal. Jan. 7, 2014). Defendants' subterfuge of seeking to extend the TRO until December but delay the PI hearing exacerbates this harm, rather than ameliorating it.

In sum, Defendants' irreparable harm arguments do nothing more than repackage arguments this Court and the Ninth Circuit already rejected. IYO is entitled to the statutory presumption of irreparable harm and has independently demonstrated concrete, ongoing harm through its investor declarations, its stalled fundraising, and its damaged reputation. That harm persists to this day as attested to in the VFAC. A PI is necessary to protect IYO from continuing injury.

### C.    The Balance of Equities and Public Interest Favor Plaintiff

Defendants' equities arguments (at 24–25) amount to complaints about the consequences of their own conduct. They protest that IYO's contempt motion forced them to "expend considerable resources," but the fact that a party must defend against litigation it provoked by its own infringement is not cognizable hardship. "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [Plaintiff] substantial protection of its trademark." *Cyclone*, 2004 WL 7325117, at \*7 (omitting internal quotations) (quoting *Polo Fashions v. Dick Bruhn*, 793 F.2d 1132, 1135–1136 (9th Cir. 1986)).

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 14 -

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION

Further, Defendants' assertion that equities cannot favor IYO because its CEO purportedly submitted a "false" declaration stating the IYO One was intended for a "general consumer audience" (ECF 35-1 ¶ 5) is itself false, as discussed above.

### D.       No Bond Should Be Required and The Proposed Order is Not Overbroad

Defendants do not address bond and thus concede it is not necessary. Defendants contend (at 25) that IYO's proposed order is overbroad because it enjoins use of IO "in commerce by any means whatsoever." But the phrase "in commerce" is a well-established statutory limitation that restricts the injunction to use of the mark as a trademark in connection with commercial activity and does not reach the non-trademark contexts Defendants hypothesize. Accordingly, Defendants' concern that the order would sweep in the ".io" top-level domain, casual references to "input/output," or accurate historical uses of the corporate name "io Products, Inc." is unfounded as no reasonable reading of the proposed order would prohibit them.

The "direct or indirect" language is necessitated by Defendants' refusal to disclose what entities operate the IO Products business. IYO cannot be expected to identify every potential avenue of infringement when Defendants have deliberately concealed that information. The proposed order appropriately ensures that Defendants cannot circumvent the PI through alternative channels or affiliated entities while imposing no burden on legitimate, non-trademark uses of the letters "io."

Finally, Defendants' attempt to cabin the order to hardware is untenable, as it does not protect IYO's rights in software and related services and permits Defendants to continue using an infringing trade name or brand so long as it was not affixed to the hardware.

## III.    CONCLUSION

The Court should grant Plaintiff a PI prohibiting Defendants, their employees, agents, representatives, subsidiaries, affiliates, related entities, and all persons and entities in active concert or participation with any of them from using in commerce by any means whatsoever, directly or indirectly, Plaintiff's IYO mark, and any mark confusingly similar thereto, including "IO."

Dated:  March 27, 2026

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*_____
Andrew D. Skale (211096)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

*Attorneys for Plaintiff IYO, Inc.*

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 16 -

PLAINTIFF'S REPLY MEMO ISO MOTION FOR PRELIMINARY INJUNCTION