QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

*Attorneys for Defendants io Products, Inc.,*
*OpenAI, Inc., OpenAI, LLC, and Sam Altman*

JONES DAY
David Kiernan (Bar No. 215335)
dkiernan@jonesday.com
555 California Street 26th Floor
San Francisco, California 94104
Telephone:    (415) 875-5745

Meredith Wilkes (admitted *pro hac vice*)
mwilkes@jonesday.com
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:    (216) 586-7231

*Attorneys for Defendant Sir Jonathan Paul Ive*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IYO, INC.<br><br>    Plaintiff,<br><br>  v.<br><br>IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE,<br><br>    Defendants. | Case No. 3:25-cv-4861-TLT<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE THE AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)** |

Case No. 3:25-cv-4861-TLT

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO
DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 28, 2026 at 2:00 p.m., or as soon thereafter as this motion may be heard, in the courtroom of the Honorable Judge Trina L. Thompson, Courtroom 9, 450 Golden Gate Avenue, San Francisco, California 94102, Defendants io Products, Inc., OpenAI, Inc., OpenAI, LLC, Sam Altman, and Sir Jonathan Paul Ive will and hereby do move the Court for an order striking Plaintiff iyO's amended complaint (ECF No. 119), or in the alternative, dismissing it with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Striking the amended complaint is appropriate because it was filed after the Court's scheduled deadline for the amendment of pleadings without leave to do so. In the alternative, dismissal is appropriate because: (1) there is no justiciable controversy regarding iyO's trademark-based claims and this Court therefore lacks subject matter jurisdiction over them; (2) iyO's newly added claims fail to state a claim on which relief should be granted; and (3) the Court should abstain from hearing iyO's trade secret claims under the *Colorado River* abstention doctrine because of the existence of substantially parallel state court proceedings.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the accompanying Declaration of Margret M. Caruso dated March 27, 2026, the exhibits thereto, and all papers on file in this action, and any other matters that may be presented to this Court at the hearing or otherwise.

Case No. 3:25-cv-4861-TLT

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

DATED:   March 27, 2026                QUINN EMANUEL URQUHART
                                        & SULLIVAN, LLP


                                        By      /s/ Margret M. Caruso
                                           Margret M. Caruso
                                           *Attorneys for Defendants io Products, Inc.,
                                           OpenAI, Inc., OpenAI, LLC, and Sam Altman*


DATED:   March 27, 2026                JONES DAY


                                        By      /s/ Meredith M. Wilkes
                                           Meredith M. Wilkes
                                           *Attorneys for Defendant Sir Jonathan Paul Ive*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................11

PROCEDURAL AND FACTUAL BACKGROUND .....................................................11

    A.    iyO Files Complaint Alleging Trademark Infringement ...........................11

    B.    Ripeness Was Based On Factual Finding Of Imminence ...........................12

    C.    The Court Clarifies The Merger Announcement Is Not Infringing .........12

    D.    The Ninth Circuit Affirms The TRO .........................................................13

    E.    Defendants Decide Not To Use The "io" Name .......................................13

    F.    The Deadline to Amend Expires After iyO's Failed Motion To Extend ................14

    G.    iyO Belatedly Amends, Scarcely Altering its Prior Allegations But Alleging Three New Counts ..........................................................................14

LEGAL STANDARD ......................................................................................................15

    A.    Rule 12(b)(1) .............................................................................................15

    B.    Rule 12(b)(6) .............................................................................................16

ARGUMENT ...................................................................................................................16

I.    IYO'S FAC SHOULD BE STRUCK AS UNTIMELY .......................................16

II.    EVEN IF NOT STRUCK, THE FAC SHOULD BE DISMISSED ....................18

    A.    iyO's Trademark Infringement Counts (Counts 1, 2, 4) Do Not Present a Live Case or Controversy .....................................................................18

    B.    iyO's UCL Claim (Count 3) and Vicarious Liability Claims (Counts 5 and 6) Must Be Dismissed with its Trademark Claims ...................................21

    C.    iyO's Tortious Interference Count (Count 7) Fails to State a Claim .......21

        1.    iyO does not plead knowledge of specific relationships ...........22

        2.    iyO alleges no acts that were "designed to disrupt" expectancies ..............23

    D.    iyO's Trade Secrets Counts (Counts 8 and 9) Fail to State a Claim ........25

        1.    iyO does not allege ownership of any actual trade secret ..........25

        2.    iyO does not adequately plead misappropriation by Defendants ................28

            (a)    iyO does not plead knowledge ........................................29

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

(b)    iyO does not plead use by defendants ...........................................30

III.    THE COURT SHOULD ABSTAIN FROM EXERCISING ITS JURISDICTION OVER IYO'S TRADE SECRET CLAIMS DUE TO OVERLAPPING STATE COURT LITIGATION ...............................................................................32

A.    The claims involve the same subject matter............................................33

B.    Nearly every *Colorado River* factor favors abstention. ..........................33

CONCLUSION ..................................................................................................35

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

# TABLE OF AUTHORITIES

## Cases

*1-800 Remodel, Inc. v. Bodor*,
 2019 WL 856399 (C.D. Cal. Jan. 28, 2019)................................................................25

*Alert Enter., Inc. v. Rana*,
 2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) .........................................................18

*Already, LLC v. Nike, Inc.*,
 568 U.S. 85 (2013) ..............................................................................................5, 9, 10

*Alvarez v. Smith*,
 558 U.S. 87 (2009) ..........................................................................................................5

*Americopters, LLC v. FAA*,
 441 F.3d 726 (9th Cir. 2006)........................................................................................6

*AMF Inc. v. Sleekcraft Boats*,
 599 F.2d 341 (9th Cir. 1979).......................................................................................11

*Andersen v. Stability AI Ltd.*,
 700 F. Supp. 3d 853 (N.D. Cal. 2023) ....................................................................11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .......................................................................................................6

*Austin v. ABC Legal*,
 2022 WL 847307 (N.D. Cal. Mar. 22, 2022) ..........................................................6

*Ballester v. Boucek*,
 2024 WL 2218989 (S.D. Cal. May 14, 2024)..........................................................6

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
 2018 WL 2298500 (N.D. Cal. May 21, 2018) ......................................................18

*Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*,
 467 F. App'x 738 (9th Cir. 2012)...............................................................................12

*CleanFish, LLC v. Sims*,
 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020).................................................15, 20

*Colorado River Water Conservation District v. United States*,
 424 U.S. 800 (1976) .....................................................................................................23

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
 11 Cal. 4th 376 (1995).............................................................................................13, 15

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
 528 U.S. 167 (2000) ......................................................................................................... 9

*GMH Cap. Partners v. Fitts*,
 2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) ............................................................... 21

*Goodin v. Vendley*,
 356 F. Supp. 3d 935 (N.D. Cal. 2018) ......................................................................... 23

*Growler Station, Inc. v. Foundry Growler Station, LLC*,
 2018 WL 6164301 (C.D. Cal. July 19, 2018) ............................................................. 11

*Hua v. Ass'n of Apartment Owners of Waikiki Banyan*,
 2025 WL 473502 (D. Haw. Feb. 12, 2025) .................................................................. 25

*Song fi Inc. v. Google, Inc.*,
 108 F. Supp. 3d 876 (N.D. Cal. 2015) ......................................................................... 14

*Infectolab Americas LLC v. ArminLabs GmbH*,
 2021 WL 292182 (N.D. Cal. Jan. 28, 2021) .......................................................... 12, 13

*JGX, Inc. v. Handlery*,
 2018 WL 984856 (N.D. Cal. Feb. 20, 2018)................................................................... 2

*Khoja v. Orexigen Therapeutics, Inc.*,
 899 F.3d 988 (9th Cir. 2018).......................................................................................... 17

*Korea Supply Co. v. Lockheed Martin Corp.*,
 29 Cal.4th 1134 (2003)....................................................................................... 12, 13, 15

*Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*,
 998 F. Supp. 2d 890 (C.D. Cal. 2014)............................................................................. 2

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
 762 F.3d 867 (9th Cir. 2014)............................................................................................ 3

*Lamont v. Krane*,
 2019 WL 2113903 (N.D. Cal. May 14, 2019) ............................................................. 20

*Langer v. Music City Hotel LP*,
 2021 WL 5919825 (N.D. Cal. Dec. 15, 2021) ............................................................. 10

*LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*,
 2023 WL 6930330 (N.D. Cal. Oct. 19, 2023), *aff'd*, 124 F.4th 1122 (9th Cir.
 2024)........................................................................................................................... 2, 10

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
 434 F.3d 1150 (9th Cir. 2006)........................................................................................... 9

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO
DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)..................................................................................... 14

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
  2019 WL 6655274 (C.D. Cal. Sept. 23, 2019).................................................. 21, 22

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) ........................................................... 19, 20

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003)..................................................................................... 11

*Mendocino Ry. v. Ainsworth*,
  113 F.4th 1181 (9th Cir. 2024).................................................................................. 24

*Mendocino Ry. v. Huckelbridge*,
  146 S. Ct. 88, 223 L. Ed. 2d 7 (2025) ...................................................................... 24

*Moon v. Bd. of Trustees of PAMCAH-UA Loc. 675 Pension Fund*,
  319 F. Supp. 3d 1193 (N.D. Cal. 2018) ...................................................................... 7

*Nakash v. Marciano*,
  882 F.2d 1411 (9th Cir. 1989)................................................................................... 23

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
  2013 WL 2151478 (C.D. Cal. Mar. 4, 2013), *aff'd,* 795 F.3d 1124 (9th Cir.
  2015).......................................................................................................... 5, 6, 9, 10

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
  734 F. Supp. 3d 922 (N.D. Cal. 2024) ..................................................................... 16

*Navigation Holdings, LLC v. Molavi*,
  445 F. Supp. 3d 69 (N.D. Cal. 2020) ....................................................................... 19

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
  638 F.3d 1137 (9th Cir. 2011).................................................................................... 11

*Nevada Fleet LLC v. FedEx Corp.*,
  2024 WL 199626 (E.D. Cal. Jan. 18, 2024).............................................................. 12

*Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*,
  2017 WL 1174739 (S.D. Cal. Mar. 29, 2017)............................................................. 5

*P2i Ltd. v. Favored Tech USA Corp.*,
  2024 WL 4294652 (N.D. Cal. Sept. 24, 2024)..................................................... 17, 18

*Pivonka v. Allstate Ins. Co.*,
  2019 WL 3067106 (E.D. Cal. July 12, 2019) .............................................................. 6

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
   149 F.4th 1081 (9th Cir. 2025).............................................................................................. 15

*Ramirez v. Cnty. of San Bernardino*,
   806 F.3d 1002 (9th Cir. 2015)............................................................................................ 7, 8

*Saaremets v. Whirlpool Corp.*,
   2010 WL 11571214 (E.D. Cal. Mar. 19, 2010) ...................................................................... 14

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*,
   2024 WL 1786290 (N.D. Cal. Apr. 15, 2024) ........................................................................ 14

*Space Data Corp. v. X*,
   2017 WL 5013363 (N.D. Cal. Feb. 16, 2017).......................................................................... 15

*Synopsys, Inc. v. ATopTech, Inc.*,
   2013 WL 5770542 (N.D. Cal. Oct. 24, 2013).......................................................................... 16

*Teradata Corp. v. SAP SE*,
   2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) .................................................................. 17, 18

*Trindade v. Reach Media Grp., LLC*,
   2013 WL 3977034 (N.D. Cal. July 31, 2013).................................................................. 12, 13

*Trustwell v. RLH Assets, LLC*,
   2025 WL 2697107 (D. Or. Sept. 22, 2025)............................................................................. 16

*United States v. Mezzanatto*,
   513 U.S. 196 (1995) .......................................................................................................... 7, 8

*United States v. Rebbe*,
   314 F.3d 402 (9th Cir. 2002)............................................................................................. 7, 8

*United States v. Webb*,
   219 F.3d 1127 (9th Cir. 2000)................................................................................................ 3

*Vendavo, Inc. v. Price f(x) AG*,
   2018 WL 1456697 (N.D. Cal. Mar. 23, 2018) ................................................. 15, 16, 17, 18

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
   2024 WL 1260573 (N.D. Cal. Mar. 25, 2024) ...................................................... 14, 15, 17

*Watkins v. MGA Ent., Inc.*,
   574 F. Supp. 3d 747 (N.D. Cal. 2021) .................................................................................... 6

*WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*,
   2020 WL 83845 (N.D. Cal. Jan. 7, 2020) ......................................................................... 9, 10

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

*Winchester Mystery House, LLC v. Glob. Asylum, Inc.*,
    210 Cal. App. 4th 579 (2012)............................................................................................. 13

*Wolfe v. Strankman*,
    392 F.3d 358 (9th Cir. 2004)............................................................................................. 6

*x.AI Corp. v. OpenAI, Inc.*,
    2026 WL 506302 (N.D. Cal. Feb. 24, 2026)..................................................................... 19

*Xsolla (USA), Inc. v. Aghanim Inc.*,
    2024 WL 4139615 (C.D. Cal. Sept. 10, 2024).................................................................. 21

*Y.Y.G.M. SA v. Redbubble, Inc.*,
    2020 WL 3984528 (C.D. Cal. July 10, 2020) ................................................................... 11

## **Statutes**

15 U.S.C. §§ 1114, 1125 ........................................................................................................ 8

Cal Civ. Code § 474 ............................................................................................................... 23

## **Other Authorities**

Fed. R. Civ. P. 11 ................................................................................................................... 23

Fed. R. Civ. P. 12(b)(1) .................................................................................................... 5, 6, 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 6

Fed. R. Civ. P. 15(a)(1) .................................................................................................... 6, 7, 8

Fed. R. Civ. P. 15(a)(2) ............................................................................................................ 7

Case No. 3:25-cv-4861-TLT
DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

**INTRODUCTION**

This case has run its course. iyO obtained what it told the Court it wanted: for Defendants not to use "io" as a name for AI hardware. Since Defendants committed not to do this, iyO's actions reveal what it really wanted all along: litigation leverage to demand a windfall settlement. After its trademark claims fizzled, iyO moved to extend the deadline to amend its complaint. When that failed, it desperately filed an untimely amended complaint alleging meritless trade secret and intentional interference claims. Those claims are inadequately pled—and duplicative of parallel state court litigation, which is currently stayed pursuant to California's anti-SLAPP statute, and in which iyO's request for injunctive relief was denied.

The Court should strike or dismiss iyO's amended complaint. The original claims are moot: Defendants have declared under penalty of perjury that they will not use the "io" name—or any capitalization of it—in connection with any hardware product. There is nothing left to enjoin and no infringement that will ever occur. And the new claims should not have been filed at all—the Court set a March 6 deadline to amend and denied iyO's motion to extend that deadline. Yet iyO filed its amended complaint a week late anyway. Even if the Court reaches the merits, the new claims fail: the intentional interference claim rests on generalized allegations of knowledge that courts routinely reject, and iyO's trade secret claims identify no protectable secret with the particularity the law requires and allege no cognizable act of misappropriation by the Defendants. No plaintiff should be allowed to proceed to discovery on such thin and implausible allegations. Finally, even if any of these claims survived dismissal, this Court should abstain in favor of the parallel California state court proceedings in which iyO has asserted the same trade secret claims, and decline to exercise supplemental jurisdiction over the new state law claims.

Defendants respectfully request that the Court strike the amended complaint as untimely and dismiss the original one, or, in the alternative, dismiss all counts with prejudice.

**PROCEDURAL AND FACTUAL BACKGROUND**

**A.    iyO Files Complaint Alleging Trademark Infringement**

On June 9, 2025, Plaintiff iyO sued Defendants for trademark infringement based on OpenAI's announcement that it had acquired "a new venture, IO, the name of which is a homophone

of Plaintiff's IYO name, and the purpose of which is to launch a product … competitive with IYO's product," that would "re-imagine what it means to use a computer."  Compl. ¶¶ 6, 14, 97-102.  iyO alleged it faces harm from Defendants' "imminent and impending" infringement that would accrue when Defendants launched offerings in connection with the io name.  *Id*. ¶¶ 118-21.

**B.    Ripeness Was Based On Factual Finding Of Imminence**

The same day that it filed its complaint, iyO moved for a temporary restraining order ("TRO").  ECF 6.  Defendants opposed the motion, arguing that the claims were not ripe because Defendants had not actually sold or advertised any product and the release of their first hardware product was "at least a year away."  ECF 25 at 9.  During the TRO hearing, when defense counsel noted that a TRO would indicate that "the defendants have engaged in some kind of wrongdoing when, in fact, this whole issue is premature," the Court responded that it was "mindful of that, and this is an opportunity to educate the public that a temporary restraining order is just an order to keep things status quo until things are fully briefed and the Court is fully informed."  6/17/25 Tr. at 37:3-20.  On June 20, 2025, following the hearing, the Court issued a TRO.  ECF 51.

The Court's TRO decision recognized that "because Defendants have not yet released a product with the disputed mark, ***IYO cannot allege actual infringement***."  ECF 51 at 8 (citing *LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 2023 WL 6930330, at \*7 (N.D. Cal. Oct. 19, 2023), *aff'd*, 124 F.4th 1122 (9th Cir. 2024) and *JGX, Inc. v. Handlery*, 2018 WL 984856, at \*3 (N.D. Cal. Feb. 20, 2018)) (emphasis added).  Nonetheless, the Court found a ripe dispute, reasoning that iyO's allegations "are sufficient to establish an ***imminent*** injury for the purposes of ripeness." *Id.* (citing *JGX, Inc.*, 2018 WL 984856, at \*4, and *Kythera Biopharmaceuticals, Inc. v. Lithera, Inc.*, 998 F. Supp. 2d 890, 902 (C.D. Cal. 2014)) (emphasis added).  The Court's ripeness holding rested on iyO's allegations that (1) "Defendants have [a] working prototype"; (2) "the product will compete with Plaintiff's product"; (3) "***the product will be called by the disputed mark***"; and (4) "the product will be released in at least a year."  *Id.* (citing Compl. ¶¶ 78, 102 and ECF 26 (Tan Decl.) ¶16) (emphasis added).

**C.    The Court Clarifies The Merger Announcement Is Not Infringing**

On July 9, 2025, OpenAI finalized its acquisition of io Products, Inc.  That day, it posted a

revised merger announcement that did not refer to any specific product or include a video. *See* ECF 67-5. Two days later, on July 11, 2025, while Defendants' appeal was pending, iyO moved to hold Defendants in civil contempt and impose sanctions, alleging that the July 9, 2025 announcement violated the TRO. ECF 67.

On September 18, 2025, the Court denied iyO's motion. ECF 91. The Court clarified that the TRO did not enjoin the revised July 9, 2025 announcement, which it found "Does Not … Use the Disputed Mark in Connection with the Marketing or Sale of Related Products." *Id.* at 7. The Court explained that Defendants' original May 21, 2025 announcement had not been prohibited by the TRO, and that "Plaintiff's interpretation of the TRO as encompassing the May 21, 2025 announcement misinterprets the 'specific and definite' TRO issued by the Court." *Id.* at 6; *see also id.* at 2 (defining May 21, 2025 announcement to include the accompanying video). The Court expressly rejected iyO's argument "that the May 21, 2025 announcement constituted infringement." *Id.* at 6.

### D. The Ninth Circuit Affirms The TRO

On June 26, 2025, Defendants appealed the TRO. ECF 53. On December 3, 2025, the Ninth Circuit affirmed. ECF 96. The Ninth Circuit agreed that the case was ripe "because IO's alleged infringement is sufficiently ***imminent***." *Id.* at 3 (emphasis added) (citing *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 871-74 (9th Cir. 2014)). It reasoned, "IO's product, as the district court found, (1) already has a working prototype, (2) will compete with IYO's product, (3) ***will be marketed in connection with the disputed mark***, and (4) will be released in at least a year." *Id.* (emphasis added). The Ninth Circuit did not indicate it was reversing any of this Court's jurisdictional factual findings, which it could have done only under a clear error standard of review. *Id.*; *see United States v. Webb*, 219 F.3d 1127, 1129 (9th Cir. 2000).

### E. Defendants Decide Not To Use The "io" Name

Following OpenAI's acquisition of io Products, Inc., Defendants conducted a review of product-naming strategy and how future consumer hardware offerings will fit within the broader OpenAI brand. Caruso Decl., Ex. A (Welinder Decl. ISO Admin Motion, ECF 105-2) ¶ 2 (hereinafter "Welinder Decl."). As a result of that review, Defendants decided not to use the name

"io" (or "IYO," or any capitalization of either) in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled hardware products. *Id.* Defendants have also gained further clarity regarding their product release timeline and now expect OpenAI's first hardware device will not ship before the end of February 2027. *Id.* ¶ 3.

On January 26, 2026, Defendants informed iyO of this update on their product release timeline. Ex. B[1] (Pollock Decl. ISO Admin Motion, ECF 105-1) ¶ 2. On February 2, 2026, counsel for Defendants notified iyO's counsel of OpenAI's decision regarding not using the "io" name for the hardware product and offered to provide a client declaration to this effect. *Id.* ¶ 3. On February 9, 2026, Defendants publicly filed a declaration from Peter Welinder, a Vice President and General Manager for OpenAI, stating that "Defendants have decided not to use the name 'io' (or 'IYO,' or any capitalization of either) in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled products." Welinder Decl. ¶ 2. The press quickly picked up on and publicized OpenAI's decision. *See, e.g.,* Ex. C.

**F.      The Deadline to Amend Expires After iyO's Failed Motion To Extend**

On February 20, 2026, pursuant to this Court's Scheduling Order (ECF 78), Defendants moved to dismiss the complaint. ECF 112. Defendants argued that none of the claims presented a ripe dispute in light of Defendants' decision not to use the "io" name. The Scheduling Order set March 6, 2026 as iyO's deadline to amend. ECF 78 at 2. On February 27, 2026, iyO moved to extend this deadline. ECF 114. The Court denied iyO's motion. ECF 118.

**G.      iyO Belatedly Amends, Scarcely Altering its Prior Allegations But Alleging Three New Counts**

On March 13, 2026, one week after the deadline to amend had expired, iyO filed its putative "Verified Complaint," which is its first *amended* complaint ("FAC"). ECF 119. iyO did not seek the Court's leave before amending, and the FAC does not substantively revise any of the six counts that Defendants had previously moved to dismiss. Rather, the FAC adds three entirely new counts:

---

[1] All references to Exhibits herein are to Exhibits to the March 27, 2026 Declaration of Margret Caruso.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

intentional interference with prospective economic advantage (count 7) and misappropriation of trade secrets (counts 8 and 9).  Later on March 13, iyO filed a statement contending Defendants' original motion to dismiss was moot.  ECF 120.

iyO's trade secret misappropriation claims mirror claims that it filed in a parallel state law action in July 2025.  Ex. D.  Both actions allege that Dan Sargent, one of iyO's former employees, revealed its trade secrets during a job interview with Tang Tan.  FAC ¶¶ 1, 328; *compare* Ex. D ¶ 20.  During the ten months that the *Sargent* action has been pending, the California state court has denied iyO's motion for a temporary restraining order and preliminary injunction, considered Sargent's anti-SLAPP motion, and reviewed the submitted declarations of Tan, Sargent, and the third person present at the job interview, Patch Kessler—all of whom declared facts reflecting that no misappropriation of trade secrets had occurred.  Caruso Decl. ¶¶  6-10, Exs. E-I. The case is currently stayed pending resolution of the anti-SLAPP appeal.  *Id*. ¶ 10, Ex. I.

## LEGAL STANDARD

### A.      Rule 12(b)(1)

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'"  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013).  The Supreme Court has "repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages" of the litigation."  *Id.* at 90-91 (quoting *Alvarez v. Smith*, 558 U.S. 87, 92 (2009)).  A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III standing—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC*, 568 U.S. at 91, 95 ("the case is moot because the challenged conduct cannot reasonably be expected to recur.").  "In seeking to invoke this Court's jurisdiction, Plaintiff bears the burden of proving that jurisdiction exists."  *name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 2151478, at *4 (C.D. Cal. Mar. 4, 2013), *aff'd,* 795 F.3d 1124 (9th Cir. 2015).

A complaint "that lacks Article III standing must be dismissed for lack of subject matter jurisdiction. … Because standing is essential for a federal court to have subject matter jurisdiction, the issue of standing is properly raised in a Rule 12(b)(1) motion to dismiss."  *Obesity Rsch. Inst.,*

*LLC v. Fiber Rsch. Int'l, LLC*, 2017 WL 1174739, at \*2 (S.D. Cal. Mar. 29, 2017) (citations omitted).  When moving under Rule 12(b)(1), a party may assert a factual challenge, "present[ing] evidence that disputes allegations that, by themselves, would otherwise be sufficient to invoke jurisdiction." *name.space*, 2013 WL 2151478, at \*4 (citing *Wolfe v. Strankman,* 392 F.3d 358, 362 (9th Cir. 2004)).  The court "is not confined by the facts contained in the four corners of the complaint—it may consider facts and need ***not*** assume the truthfulness of the complaint." *Americopters, LLC v. FAA,* 441 F.3d 726, 732 n.4 (9th Cir. 2006) (emphasis original).

### B.    Rule 12(b)(6)

A complaint that fails to state a claim upon which relief can be granted must be dismissed. Fed. R. Civ. P. 12(b)(6).  To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice. *Watkins v. MGA Ent., Inc.*, 574 F. Supp. 3d 747, 753 (N.D. Cal. 2021) (citing *Iqbal*, 556 U.S. at 678).  The Court can dismiss a claim "based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory." *Id.* (citation omitted).

## ARGUMENT

### I.    IYO'S FAC SHOULD BE STRUCK AS UNTIMELY

This Court's July 24, 2025 Case Management Scheduling Order set March 6, 2026 as the "Last Day to Amend Pleading." ECF 78 at 2.  iyO did not file the FAC until March 13, 2026—a week after that deadline. ECF 119.  Plainly, the FAC was untimely.  Courts routinely strike amended pleadings that are not filed by the applicable deadlines.  *See, e.g.*, *Ballester v. Boucek,* 2024 WL 2218989, at \*7 (S.D. Cal. May 14, 2024); *Austin v. ABC Legal*, 2022 WL 847307, at \*1 (N.D. Cal. Mar. 22, 2022); *Pivonka v. Allstate Ins. Co.*, 2019 WL 3067106, at \*1 (E.D. Cal. July 12, 2019).

iyO argues that its amendment was nevertheless timely under Federal Rule of Civil Procedure 15(a)(1) because it was filed within 21 days of Defendants' motion to dismiss.  ECF 120 at 2.  But iyO waived any 21-day right to amend long before it attempted to invoke it.

Procedural rights of this kind are "presumptively waivable." *U.S. v. Mezzanatto*, 513 U.S. 196, 201 (1995) (collecting cases and holding a criminal defendant could waive Federal Rule of Criminal Procedure/Federal Rule of Evidence preventing admission at trial of statements made during the course of plea bargaining, despite no explicit waiver provision); *see also Shutte v. Thompson*, 15 Wall. 151, 159 (1873) ("A party may waive any provision, either of a contract or of a statute, intended for his benefit"); *U.S. v. Rebbe*, 314 F.3d 402, 406 (9th Cir. 2002) ("The Federal Rules are presumptively waiveable, absent some affirmative indication of Congress's intent to preclude such a waiver."); *Moon v. Bd. of Trustees of PAMCAH-UA Loc. 675 Pension Fund*, 319 F. Supp. 3d 1193, 1196 (N.D. Cal. 2018) (dismissing claim after finding that a waiver applied).

iyO repeatedly acknowledged and agreed to the March 6, 2026 deadline to amend. When the Court issued its Tentative Case Management and Scheduling Order proposing that deadline, iyO's counsel signed and filed a response that expressly "***agree[d] to the deadlines provided in the Court's Tentative Case Schedule***," including this March 6 deadline. ECF 77 at 2 (emphasis added). In the same filing, iyO joined Defendants' request to set the motion to dismiss filing date at February 20—just 14 days before the amendment deadline—demonstrating that iyO understood and accepted the interplay between that deadline and any future motion to dismiss. *Id.*

iyO continued to acknowledge the March 6 deadline even after Defendants filed their motion to dismiss. It cited the deadline in correspondence to justify a request for a same-day meet and confer, ECF 116-2 at 2-3, and it moved to extend the deadline—explicitly requesting "an order extending the deadline to seek leave to amend the pleadings or add parties ***from March 6, 2026***"—***not*** from 21 days after the filing of the motion to dismiss—to sixty days after the Court's ruling on the motion to dismiss. ECF 114 at 1. The Court denied that motion, finding that iyO had not demonstrated good cause. ECF 118 at 1. iyO's repeated recognition of and acquiescence to the deadline constitutes a clear and unmistakable waiver.

iyO's one cited case (ECF 120), *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002 (9th Cir. 2015), does not establish otherwise. It held that a plaintiff does not forfeit its right to amend as a matter of course under Rule 15(a)(1) by first amending under Rule 15(a)(2). *Id.* at 1006. The *Ramirez* court based this holding on a plain reading of the statute, which "does not prescribe any

particular sequence for the exercise of its provisions" but rather "plainly provides . . . alternative . . . methods" of amendment, meaning a "plaintiff may amend in whatever order he sees fit." *Id.* at 1007. *Ramirez* nowhere holds that Rule 15(a)(1) cannot be knowingly and voluntarily waived. Indeed, to find the presumption of waivability was rebutted, *Ramirez* would have needed to conclude that there was an "affirmative indication of Congress's intent to preclude such a waiver," such as "an express waiver clause . . . intended to occupy the field and to preclude waiver under other, unstated circumstances." *Rebbe*, 314 F.3d at 406; *Mezzanatto*, 513 U.S. at 201. *Ramirez* never undertakes this analysis. Nor does it purport to overturn bedrock U.S. Supreme Court precedent concerning presumptive waiver. Nor could it.

Because iyO's sequence of "knowing[] and voluntary" conduct clearly constitutes a waiver, *Mezzanatto*, 513 U.S. at 201, the FAC should be stricken in its entirety as untimely and the original complaint dismissed for lack of jurisdiction, as set forth below in Section II.A & B.

## II.     EVEN IF NOT STRUCK, THE FAC SHOULD BE DISMISSED

The FAC does nothing to fix the critical jurisdictional issues with iyO's original claims, and the new claims are insufficiently pled and should be dismissed on multiple grounds.

### A.     iyO's Trademark Infringement Counts (Counts 1, 2, 4) Do Not Present a Live Case or Controversy

Trademark infringement claims require a plaintiff to prove that the defendant has used the challenged term "in connection with the sale, offering for sale, distribution, or advertising of any goods or services" in a way that causes confusion. 15 U.S.C. §§ 1114, 1125. Because Defendants have not done so, and will not do so, there is no live dispute.

This Court previously found iyO's allegations sufficient to establish "an imminent injury" for the purpose of ripeness of iyO's motion for a temporary restraining order based on iyO's allegations that "Defendants have [a] working prototype, ECF 1, ¶ 102 [FAC ¶ 146], the product will compete with Plaintiff's product, *id.* ¶ 78 [FAC ¶ 174], ***the product will be called by the disputed mark***, *id.*, and the product will be released in at least a year." ECF 51 at 8 (emphasis added). Although it was not accurate that Defendants stated the product would "be called by the disputed mark," that premise, as alleged by iyO, was the hook upon which jurisdiction rested. *Id.*;

*accord* ECF 96 at 3.

Since then, material developments have established that the alleged injury cannot be "imminent"—and will never occur—because Defendants have determined that their forthcoming hardware products will definitely *not* be called by the disputed mark.  Welinder Decl. ¶ 2. Defendants' decision not to use the name "io" or any capitalization of that name, in connection with their forthcoming products, whether as a product name, a company name, or otherwise (*id.*), moots the Court's prior finding of "imminent injury" for purposes of ripeness.  All risk of imminent injury has been eliminated and, along with it, jurisdiction.  *E.g., WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, 2020 WL 83845, at *3-4 (N.D. Cal. Jan. 7, 2020) ("When the complaint was filed, Defendant *did* intend to open an office in San Francisco and *had* placed [the] logo [] on the building," but dismissing trademark complaint as moot after defendant "abandoned any plans" to open a location using the disputed mark and removed all references from its website); *see also Already, LLC*, 568 U.S. at 95 ("Given the covenant's broad language, and given that Already has asserted no concrete plans to engage in conduct not covered by the covenant, we can conclude the case is moot because the challenged conduct cannot reasonably be expected to recur.").

iyO presumably will argue the Court need not accept Defendants' representations, but in ruling on a Rule 12(b)(1) motion, the complaint's allegations do not suffice, and here they are contradicted by Defendants' declarations.  *WeWork Companies Inc.*, 2020 WL 83845, at *2. Further, because no actual infringement ever took place in the first instance, *see* ECF 51 at 8, and now it definitively never will, this dispute is unlike the voluntary cessation cases iyO cited in opposition to Defendant's administrative motion to modify the case management dates.  ECF 107 at 4 (citing *LGS Architects, Inc. v. Concordia Homes of Nev.,* 434 F.3d 1150, 1153 (9th Cir. 2006) (voluntary cessation will only result in mootness "if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to **recur**") (emphasis added); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (same)).

There is no risk of any prohibited conduct **re**curring, because no infringing activity ever occurred.  Thus, the facts of this case have become even further removed from possible infringement than those rejected in *name.space, Inc.*, 795 F.3d 1124 (affirming dismissal of trademark claim as

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

unripe). A dispute is ripe only "when it can be decided without considering contingent future events that may or may not occur as anticipated, or indeed may not occur at all." *Id*. at 1132 (internal citations and quotation marks omitted). Because iyO's claim rests on "contingent future events that … may not occur at all," *id.,* there is no live controversy to adjudicate.

Even if the Court were to apply heightened burdens associated with the voluntary cessation doctrine, Defendants satisfy them. "The standard is not *if* trademark infringement *might* occur between the parties in the future, but if there is a present risk of it occurring or if the Defendant could easily return to the allegedly wrongful behavior." *WeWork Companies Inc.*, 2020 WL 83845, at *4 (emphasis original). There is no legitimate risk that the Defendants will announce and/or launch future artificial intelligence hardware products that will be marketed with the "io" name— i.e., the allegedly wrongful behavior targeted in iyO's Complaint. *See, e.g.*, Compl. ¶¶ 6, 14, 93-105; FAC ¶¶ 15, 25, 28, 192-205. Defendants have not re-posted their non-infringing May 21, 2025 announcement even in the months after the Court clarified that it was not prohibited, and Defendants have represented under penalty of perjury that they will not use the "io" name in connection with such products. Welinder Decl. ¶ 2; *see, e.g.*, *Langer v. Music City Hotel LP*, 2021 WL 5919825, at *8 (N.D. Cal. Dec. 15, 2021) (finding voluntary cessation inapplicable where Defendants had "little incentive to remove [the changes made to their website] and every incentive to maintain the [updated information] to prevent further legal liability"); *see also LegalForce RAPC Worldwide, P.C.*, 2023 WL 6930330, at *7-8, *aff'd sub nom.* 124 F.4th 1122 (granting with prejudice motion to dismiss complaint even where defendants had plans to bring their products to market, when there was no evidence the plans involved use of the allegedly infringing name).

The facts here are at least as definitive regarding future conduct as those the Supreme Court found sufficient to establish mootness in *Already, LLC.* 568 U.S. at 95. As the record makes clear, iyO's concerns regarding future use of the name "io" are merely "conjectural or hypothetical speculation" and "do[] not give rise to the sort of concrete and actual injury necessary to establish Article III standing." *Already, LLC*, 568 U.S. at 97; *see also WeWork Companies Inc.*, 2020 WL 83845, at *4. Indeed, in these circumstances, it would be a complete waste of judicial effort to analyze the *Sleekcraft* factors that courts use to assess the likelihood-of-confusion element of

trademark infringement.  Without any use of the challenged mark, there can be no "similarity of the marks," with no product that will be marketed or sold using the challenged mark, there is no relevant assessment to be made of "proximity of the goods," "degree of care likely to be exercised by the purchaser," marketplace "context," "marketing channels," or "likelihood of expansion of the product lines."  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1143 n.2 (9th Cir. 2011) (citing *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 810 n.19 (9th Cir. 2003)).  iyO's infringement claims based on a disputed name that has not been, and will not be, used to sell or advertise goods should be dismissed.

> **B.    iyO's UCL Claim (Count 3) and Vicarious Liability Claims (Counts 5 and 6)**
>
> **Must Be Dismissed with its Trademark Claims**

Dismissal of the trademark claims requires dismissal of several of iyO's other counts as well. The UCL claim (Count 3) rests on the same allegations as the trademark claim (*see* Compl. ¶¶ 151-158; FAC ¶¶ 257-264), and it must be dismissed for the same reasons.  *See Growler Station, Inc. v. Foundry Growler Station, LLC*, 2018 WL 6164301, at *10 (C.D. Cal. July 19, 2018) (dismissing "substantially congruent" UCL claim where plaintiff had failed to plead trademark infringement). iyO's vicarious liability claims (Counts 5 and 6) necessarily depend on a viable direct infringement claim—which does not now exist.  *See Y.Y.G.M. SA v. Redbubble, Inc.*, 2020 WL 3984528, at *7 (C.D. Cal. July 10, 2020); *Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 869 (N.D. Cal. 2023). These claims too must therefore be dismissed.

> **C.    iyO's Tortious Interference Count (Count 7) Fails to State a Claim**

The FAC adds an entirely new claim for intentional interference with prospective economic advantage.  This claim requires showing (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.  *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1153 (2003).  The plaintiff must show that the defendant's conduct was "wrongful by

some legal measure other than the fact of interference itself." *Id.* iyO's claim fails on at least two independent grounds: iyO did not allege that Defendants (1) knew of any specific economic relationship, or (2) took any wrongful action designed to disrupt one.

### 1. iyO does not plead knowledge of specific relationships

To satisfy the "knowledge" element, a plaintiff must allege more than a defendant's "generalized knowledge" of the plaintiff's business relationships. *Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at *17 (N.D. Cal. July 31, 2013). This knowledge requirement "serves to restrict the class of plaintiffs that can state a claim for this tort," and demands allegations of knowledge of *specific* relationships—not merely awareness that a plaintiff does business with a general category of nonparties. *See Korea Supply Co.*, 29 Cal.4th at 1164.

Conclusory allegations that a defendant is aware of the plaintiff's general expectancies with a class of entities—such as customers, advertisers, or brokers—are "not entitled to the presumption of truth" and do not satisfy the knowledge element. *Capitol W. Appraisals LLC v. Countrywide Fin. Corp.*, 467 F. App'x 738, 740 (9th Cir. 2012) (affirming dismissal where "[t]he SAC merely states that [defendant] had knowledge of economic relationships between [plaintiff] and mortgage brokers and lenders without any further specific allegations."); *see also Infectolab Americas LLC v. ArminLabs GmbH*, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021) (rejecting that knowledge could be inferred from defendants' "prior dealings with Infectolab" and plaintiff's "status as a competitor in the industry"); *Trindade*, 2013 WL 3977034, at *17 ("generalized knowledge" of "multiple contractual relations through his knowledge of RMG's reputation" did not satisfy the knowledge element); *Nevada Fleet LLC v. FedEx Corp.*, 2024 WL 199626, at *6 (E.D. Cal. Jan. 18, 2024) (rejecting as insufficient the allegation that defendant knew plaintiff "had established good relationships with customers across the country").

The FAC's core allegation—that Defendants knew of iyO's prospective economic relationships with unspecified "investors," "manufacturing partners," and "potential customers," FAC ¶ 284, is precisely the kind of generalized pleading that is insufficient. *E.g., Trindade*, 2013 WL 3977034, at *17. It does not establish knowledge of any specific expectancy, let alone its terms.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

iyO's vague allegations about Defendants' knowledge of iyO's "ongoing capital raise" and its "manufacturing plans," FAC ¶ 286, do not cure this deficiency. Knowledge that a plaintiff is engaged in a fundraising process or has manufacturing ambitions says nothing about whether the defendant knew of any specific investor or manufacturer relationship. *See Winchester Mystery House, LLC v. Glob. Asylum, Inc.*, 210 Cal. App. 4th 579, 597 (2012) (knowledge element not satisfied by disclosure that "did not identify the production company, describe the terms, or indicate that the contract related to the use of any trademarks."); *Trindade*, 2013 WL 3977034, at *17 ("RMG again fails to allege that Lenahan had knowledge of any specific relationships, rather than just a generalized knowledge that RMG was in the business of contracting with other publishers.").

iyO's allegations about the parties' prior dealings similarly fall short. Nowhere does iyO allege that any prior interaction involved discussion of a specific contractual expectancy or its terms. This is fatal: courts have squarely held that a history of prior dealings, without more, does not give rise to a credible inference that a defendant knew of the plaintiff's particular business relationships. *See Infectolab Americas LLC*, 2021 WL 292182, at *4.

Taken alone or together, none of iyO's allegations possess the "requisite specificity" to satisfy the knowledge element. *See Trindade*, 2013 WL 3977034, at *16. This deficiency alone requires dismissal of iyO's intentional interference claim.

### 2.     iyO alleges no acts that were "designed to disrupt" expectancies

The third element of a claim for interference requires a plaintiff to identify "intentional acts on the part of the defendant designed to disrupt the relationship." *Korea Supply Co.*, 29 Cal.4th at 1153. Those acts must be "wrongful by some measure beyond the fact of the interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995). This is because prospective economic relationships "subsist in a zone where the rewards and risks of competition are dominant," and the law must "maximize[] areas of competition free of legal penalties." *Id.* at 392. iyO's alleged wrongful acts, set forth in paragraphs 289 through 294 of the FAC, fail to clear this bar for four independent reasons.

*First,* having failed to plead knowledge of any specific economic relationship, iyO necessarily failed to allege any act that was *designed* to disrupt such a relationship. *Infectolab*

*Americas LLC*, 2021 WL 292182, at *5. A defendant cannot intentionally target a relationship it does not know exists. *Id.*

*Second*, three of the allegedly wrongful acts simply repackage iyO's counts for trademark infringement and unfair competition. FAC ¶ 289. As discussed above, iyO has not established a justiciable controversy on those claims. An intentional interference theory that rests on the same deficient conduct cannot survive independently. *See Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 887-88 (N.D. Cal. 2015) (dismissing tortious interference claims where plaintiffs "have not stated a claim on any of their other legal theories").

*Third*, Defendant Tan's alleged "fraud and deceit," premised on Tan's purported failure to disclose certain information, FAC ¶ 290, fails for multiple reasons. As a threshold matter, iyO fails to identify what "constitutional, statutory, regulatory, [or] common law standard proscribes . . . conceal[ment]." *Vox Network Sols., Inc. v. Gage Techs., Inc.*, 2024 WL 1260573, at *10 (N.D. Cal. Mar. 25, 2024). To the extent iyO intends to invoke some variant of common law fraud, any fraud allegations based on concealment only qualify as wrongful when there is a "relationship between the plaintiff and defendant in which a duty to disclose can arise." *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336-37 (1997). The FAC does not allege the existence of any relationship that would give rise to a duty of disclosure, nor does it allege iyO intended to enter into any sort of transaction with Tan individually. *See In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2024 WL 1786290, at *7 (N.D. Cal. Apr. 15, 2024) (granting motion to dismiss where "[n]o plaintiff here pleads they were transacting or were otherwise engaged with Zuckerberg personally"). It also identifies no relationship with any Defendant that would create an obligation for it to provide information on its potentially competitive activities. But even if iyO had alleged facts establishing a duty to disclose, its own allegations undermine its conclusion of concealment. iyO **alleged** that Defendants told it that they were working on a venture "called io," that involved "something competitive," and that Tan was directly involved. FAC ¶¶ 174, 185. In the face of these specific allegations, iyO's assertions that Tan failed to disclose he was "secretly preparing to announce a competing venture," FAC ¶ 294, are not plausible. *See Saaremets v. Whirlpool Corp.*, 2010 WL

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

11571214, at *5 (E.D. Cal. Mar. 19, 2010) (granting motion to dismiss where "plaintiff's own representations" in complaint contradicted and defeated claim).

Furthermore, even if iyO had somehow pled a duty to disclose **and** a material misrepresentation, it failed to allege any reliance, *i.e.*, how this "fraud" or "deceit" caused it injury. *Compare Vox Network Sols., Inc.*, 2024 WL 1260573, at *9 (dismissing fraudulent concealment and tortious interference claim where "Vox does not allege how it would have acted differently if it had known of" the concealed facts). It certainly does not allege how this deceit led to "actual disruption of [a business] relationship." *Korea Supply Co.*, 29 Cal.4th at 1153. iyO's insufficiently developed fraud-based theory cannot resuscitate its otherwise-deficient interference claim.

Stripped of its deficient theories, iyO's interference claim is nothing more than unhappiness that Defendants announced a competing venture and engaged in ordinary competitive conduct. That is not actionable and compels dismissal. *Della Penna*, 11 Cal. 4th at 392–93.

**D.    iyO's Trade Secrets Counts (Counts 8 and 9) Fail to State a Claim**

The eighth and ninth causes of action regarding the misappropriation of trade secrets against Defendants Tan, io Products, Inc. and OpenAI fail to state a plausible claim. The claims fail for two independent reasons: (1) iyO does not adequately allege ownership of any protectable trade secret, and (2) iyO does not adequately allege any act of misappropriation by Defendants.

1.    <u>iyO does not allege ownership of any actual trade secret</u>

To state a trade secret claim, a plaintiff must first allege that it "owned a trade secret." *Space Data Corp. v. X*, 2017 WL 5013363, at *1 (N.D. Cal. Feb. 16, 2017). While plaintiff "need not spell out the details of the trade secret" at the pleading stage, it must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (citation omitted). "On a motion to dismiss, the burden is on the plaintiff to identify protectable trade secrets and show that they exist." *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *9 (N.D. Cal. Aug. 14, 2020) (quotations and citation omitted); *see also Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1088 (9th Cir. 2025) (holding

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

that, even based on "the conventional procedures under the Federal Rules of Civil Procedure," a trade secret plaintiff must "identify a trade secret with sufficient particularity" and not "simply rely upon catchall phrases or identify categories of trade secrets" (quotations and citations omitted)).

Courts routinely dismiss complaints that identify trade secrets only in broad, categorical terms that do not identify the alleged trade secrets with sufficient particularity to put the defendants on notice of what they allegedly misappropriated. *Vendavo, Inc.*, 2018 WL 1456697, at \*4 (dismissing complaint that set out trade secrets in "broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets Vendavo has a basis to believe actually were misappropriated here"); *Trustwell v. RLH Assets, LLC*, 2025 WL 2697107, at \*5 (D. Or. Sept. 22, 2025) (similar); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at \*6 (N.D. Cal. Oct. 24, 2013) (dismissing trade secret claim because descriptions, including "proprietary input and output formats, scripts, and technical product documentation," were "too sweeping and vague"); *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (dismissing trade secret claim because "catchall categories of the kinds of trade secrets that might be at issue," such as "vendor and partner information, proprietary formulas, business processes, pricing strategies, pricing data, marketing methods, other data, computer and software processes and systems," did not "clearly refer to tangible trade secret material as required").

The FAC falls squarely within this line of cases. Its trade secret identification reads in full:

> (1) CAD drawings for IYO's proprietary audio computing devices; (2) unreleased design features; (3) manufacturing scaling strategies; (4) proprietary product development schedules; (5) custom-fit ear technology and manufacturing processes; (6) circuitry designs; and (7) other confidential design, engineering, and manufacturing information developed over approximately eight years of research and development.

FAC ¶ 305. These high-level categories fail to separate protectable trade secrets from matters of general knowledge in the field, and none provides Defendants with adequate notice of what they allegedly misappropriated.

For example, the seventh "secret" encompasses unspecified "design, engineering, and manufacturing information developed over approximately eight years of research and

development"—essentially claiming every piece of technical information iyO has ever generated as a trade secret. This sweeping catch-all is precisely the kind of pleading that courts have rejected as insufficient to put defendants on notice of what they allegedly took. *See Nat'l Specialty Pharmacy*, 734 F. Supp. 3d at 929 (dismissing claim over "catchall categories of the kinds of trade secrets that might be at issue"); *Vox Network Sols., Inc.*, 2024 WL 1260573, at *3 (dismissing claim over "Vox's valuable and confidential pricing, marketing, and business strategies cultivated from investments in research development; special practices, methods, and collateral built over years of experience").

The second "secret," "unreleased design features," is similarly vast. The ***entire iyO One product*** has never been released—iyO admits it "has not been able to fund its manufacturing efforts" (FAC ¶ 74)—so iyO's description facially encompasses every "design feature" of this (and all devices other than the Vad Pro). On its face, this identification encompasses information that is public: iyO ***alleges*** that it "demonstrated some of [the iyO One's] features," including in a TED talk that "garnered" over 30 million views. FAC ¶ 84; *see also* FAC ¶ 65 (publicly discussing features of the iyO One). Indeed, that video and iyO's website, both of which are incorporated by reference, display CAD (or "computer aided") drawings and renderings of the iyO's unreleased products. Caruso Decl., ¶¶ 11, 12, Exs. J, K; *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Conclusory allegations about "unreleased" (but not necessarily undisclosed) features do not "permit [Defendants] to ascertain at least the boundaries within which the secret lies." *Vendavo, Inc.*, 2018 WL 1456697, at *4.

For the same reasons, the first alleged "secret"—"CAD drawings for IYO's proprietary audio computing devices" is also insufficiently pled. iyO does not even identify which device these drawings depict, what information in those drawings is confidential, or why they qualify for trade secret protection. *See Teradata Corp. v. SAP SE*, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) (dismissing claim where "there are no allegations suggesting what the proprietary information . . . was, or how or why it is proprietary besides simply being labeled a trade secret by [plaintiff]"). In addition to the website and Ted talk drawings (Caruso Decl., ¶¶ 11, 12, Exs. J, K), the FAC itself likely includes CAD images given that iyO has not commercially released the products it discusses. *See, e.g.*, FAC ¶¶ 56, 62, 63. iyO's allegations thus fail to distinguish these trade secret "drawings"

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

from matters of general knowledge.  *See, e.g.*, *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at \*4 (N.D. Cal. Sept. 24, 2024) (dismissing trade dress claim alleging theft of "sweeping categories of trade secrets" that are "too high-level" and "too general").

Courts routinely dismiss complaints that identify the asserted trade secrets even more specifically than iyO has.  For example, an alleged trade secret of "the design and optimization of Teradata's [massively parallel processing] systems and the execution of analytical queries in such system"—a considerably more specific identification than anything iyO alleges here—was insufficient.  2018 WL 6528009, at \*4 (N.D. Cal. Dec. 12, 2018).  So, too, were "design review templates," "fluidics design files," and "source code files," *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at \*3 (N.D. Cal. May 21, 2018), and "'negative knowhow' learned through the course of research and development, and other information related to the development of its price-optimization software, including ideas and plans for product enhancements."  *Vendavo*, 2018 WL 1456697, at \*3. *See also P2i Ltd.*, 2024 WL 4294652, at \*4 (dismissing insufficiently described trade secret claim related to (1) "business strategies regarding the prioritization and sequencing of research and development projects"; (2) "the identity and quality controls imposed on suppliers of reactants and equipment used in P2i's processes"; (3) "confidential information pertaining to the specific chemical identity of reaction precursors"; and (4) several "proprietary operating parameters").  The FAC does not allege any details that would justify a departure from the dismissal results of those cases.

### 2.    iyO does not adequately plead misappropriation by Defendants

Independently, iyO's trade secret claims fail because it has not alleged any act of misappropriation by Defendants.

The bulk of the FAC's trade secret discussion concerns alleged wrongdoing by third-party Dan Sargent, one of iyO's former employees who is not a defendant in this action—but is the named defendant in pending state court litigation.  iyO's allegations about Sargent do not state a claim against these Defendants.  For example, the FAC alleges Sargent downloaded fewer than three dozen files to his work computer while still employed by iyO, FAC ¶¶ 12, 105–114, and asserts "upon information and belief" that he "had a program on his phone" allowing him to display CAD

files during a job interview, *id.* ¶ 128. But even a plausibly pled claim against Sargent would not state a claim against **Defendants,** who never employed him and cannot be imputed with his knowledge. *See, e.g.*, *Alert Enter., Inc. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023) (vicarious liability attaches to a trade secret claim against individual wrongdoer if there were "an allegation the future employer subsequently used the trade secrets or the wrongdoer used the trade secrets once he actually became employed" by Defendants).

To state a claim against these Defendants, iyO must instead allege that Defendants themselves misappropriated iyO's trade secrets. The theory in the FAC appears to sound in "indirect misappropriation," or that Defendants "obtained the trade secrets . . . indirectly from" Sargent rather than directly from iyO. *x.AI Corp. v. OpenAI, Inc.*, 2026 WL 506302, at *5 (N.D. Cal. Feb. 24, 2026); *see* FAC ¶ 310(a) ("Acquiring IYO's trade secrets from Sargent …"), ¶ 310(b) ("Using IYO's trade secrets … derived from a person, Sargent"). But to plead this theory, iyO must allege both that Defendants (1)(a) "knew or had reason to know before the use or disclosure that the information was a trade secret and ... that the disclosing party had acquired it through improper means or was breaching a duty of confidentiality by disclosing it"; or (b) that the information "was a trade secret and that the disclosure was a mistake" and (2) "used or disclosed the trade secret without plaintiff's authorization." *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012). The FAC fails to allege facts sufficient to make either element plausible.

(a)    <u>iyO does not plead knowledge</u>

To successfully plead the knowledge element in an indirect misappropriation claim, iyO must "plead[] facts to substantiate the defendant's knowledge." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 79 (N.D. Cal. 2020). iyO's only factual allegations on this point are that Defendant Tan "understood the sensitive and proprietary nature of CAD drawings and other design documentation," and "knew or should have known that Sargent was prohibited from disclosing confidential information." FAC ¶¶ 46-47. iyO's attempt to impute knowledge to Tan based on an entire file format is unavailing—particularly given its prior disclosure of CAD drawings in Rugolo's TED Talk (*see* Caruso Decl. ¶ 11, Ex. J). *See x.AI Corp.*, 2026 WL 506302, at *6 (holding allegation that plaintiff's confidential "source code" was shared by third party was

-29-    Case No. 3:25-cv-4861-TLT

insufficient to establish defendants' knowledge). That iyO prominently featured CAD drawings in public presentations and documents illustrates the implausibility of iyO's implied suggestion that every CAD drawing is necessarily confidential. *Supra* § D.1.

Other facts iyO alleges also undercut any inference that Tan knew or should have known that Sargent's alleged disclosures were confidential. Tan met with Sargent at a public restaurant – not a setting that would signal an exchange of sensitive proprietary information. FAC ¶ 115. The meeting occurred after Rugolo's widely-viewed TED talk in which he "talk[ed] about the IYO ONE and demonstrated some of its features." FAC ¶ 84. And Tan himself had already preordered an iyO One device from iyO's website. FAC ¶ 103. Against that backdrop, there is no plausible basis to conclude that Tan knew or had reason to know that anything Sargent shared crossed the line from publicly demonstrated product information into trade secret territory.

The facts in *Lamont v. Krane*, 2019 WL 2113903 (N.D. Cal. May 14, 2019) are instructive. Lamont had alleged that his CPA had a meeting with Krane in which his CPA "gave Mr. Krane Plaintiff's business plan," which was marked as confidential, without asking for an adequate non-disclosure agreement. *Id.* at *1. Instead of asserting a claim against his CPA who gave the plan, however, Lamont asserted it against Krane, who had received it. *Id.* at *4. The court found that Lamont did not state a misappropriation claim: whatever grievance he had about how his CPA handled the business plan, that "assertion still does not support a showing that [Krane] obtained any trade secrets through improper means such as inducing [the CPA] to breach any confidentiality agreement." *Id.*

The same logic applies here. Just as the *Lamont* defendant could reasonably have surmised that the CPA was authorized to share the business plan, Tan could readily have assumed that Sargent was permitted to share some design information about a product that iyO had publicly demonstrated and offered for presale on its website. iyO misappropriation allegations must "'tend[] to exclude' the innocent . . . explanation," otherwise, "trade secret claims can be misused for anti-competitive purposes." *CleanFish, LLC*, 2020 WL 4732192, at *7 n.3. Plaintiff's conclusory allegations about the inherently proprietary nature of all CAD drawings do not come close to meeting that standard.

(b)    iyO does not plead use by defendants

-30-    Case No. 3:25-cv-4861-TLT

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

iyO's trade secret claims independently fail because it did not plead that Defendants actually *used* any trade secret. *MedioStream, Inc.*, 869 F. Supp. 2d at 1114. iyO's entire use theory rests on a single allegation: that Defendants developed a "working prototype" on a *timeline* that iyO characterizes as "implausible" if not "impossible." FAC ¶ 149. But "the mere fact that a competitor markets a product faster than it took another competitor to develop their product, does not plausibly allege that the competitor's product must have been created with trade secrets." *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *9 (C.D. Cal. Sept. 23, 2019); *see also Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 4139615, at *10 (C.D. Cal. Sept. 10, 2024) (dismissing claim that alleged defendant offered "eerily identical" services "in record time" as insufficient to support a plausible inference of misappropriation); *GMH Cap. Partners v. Fitts*, 2025 WL 950674, at *10 (S.D.N.Y. Mar. 28, 2025) (dismissing claim as "conclusory and unsupported by facts" alleging that speed of defendant's bid was "impossible" but for use of plaintiff's alleged trade secret). The series of faulty inferences on which iyO's development timeline allegation rests undermine its plausibility.

***The FAC itself explains Defendants' capabilities.*** iyO's own allegations describe Defendants as "a leading organization in the ongoing AI boom," FAC ¶ 89, responsible for "the fastest-growing consumer software application in history" *id.* ¶ 90, and "one of the world's most valuable private companies" with a valuation of approximately $840 billion. *Id.* ¶¶ 95, 302. iyO alleges that Tan "worked at Apple for over 24 years", "served as Vice President of Product Design for Apple's iPhone and Apple Watch Product Lines," has "extensive experience with proprietary hardware design," and "is named as an inventor on more than 400 patents." *Id.* ¶¶ 44-45. iyO cannot simultaneously invoke Defendants' extraordinary abilities, resources, and expertise to explain their market dominance while arguing that those same resources and expertise could not account for a fast development timeline.

***The purported 11-month timeline is not well-founded.*** iyO derives Defendants' alleged start date from a statement that they were in the "early stages of ideation" in June 2024—but that statement was made by Sargent, not by any Defendant. FAC ¶ 132; *see also M/A-COM Tech. Sols.*, 2019 WL 6655274, at *9 (allegations of a fast development timeline were "further weakened" by the fact that they were based on "Plaintiffs' customers' comments"). iyO's allegation that

Defendants "did not even have a 3D printer as of July 2024" fares even worse—it appears to rest entirely on a text message reflecting that a *third-party* "checked out" a 3D printer recommended by Sargent.  FAC ¶ 137.  But it is not even clear whether this non-Defendant "checked out" this printer in a business or personal capacity.  Even if his actions could be imputed to any of the Defendants, the fact that Defendants sought to buy *a* 3D printer does not suggest that they did not already have one.

*The timeline comparison is inapt.*  As a benchmark, iyO compares Defendants' alleged 11-month timeline against its own 8-year development timeline—but these do not measure the same thing.  Defendants' timeline is for a "working prototype"; iyO's is for a "manufacturable, working audio computing product[]."  FAC ¶ 147.  These are plainly different milestones.  Indeed, iyO alleged it had functional prototypes well before eight years.  *See* FAC ¶ 84 (describing 2024 TED talk which "demonstrated some of [the IYO ONE's] features"); *id.* ¶ 123 (alleging that the device Sargent disclosed in 2024 must have been a "live, functional prototype").  Further, it ignores the know-how Defendants brought to the task based on their prior experience.  *E.g.,* FAC ¶¶ 44-45.

iyO's strained chain of inferences thus falls far short of plausibly alleging even an unusually rapid development timeline—which would not standing alone support an inference of trade secret use in any event.  *M/A-COM Tech. Sols.,* 2019 WL 6655274, at *9.  Accordingly, iyO's trade secret claims must be dismissed.

## III.    THE COURT SHOULD ABSTAIN FROM EXERCISING ITS JURISDICTION OVER IYO'S TRADE SECRET CLAIMS DUE TO OVERLAPPING STATE COURT LITIGATION

Even if iyO could theoretically amend its intentional interference or trade secret claims consistent with Rule 11, the Court should abstain from hearing any further actions on these claims pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in favor of the parallel state court proceedings.  Last year, iyO sued Dan Sargent and "DOE" defendants in California state court, asserting a claim for trade secret theft.  Ex. D.  Rather than litigate these same claims in a piecemeal fashion in separate forums and risk inconsistent verdicts, this Court

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

should decline to exercise its jurisdiction over iyO's trade secret counts and should dismiss or stay these claims until the state court proceedings are resolved.

### A.      The claims involve the same subject matter

*Colorado River* abstention applies where there are "substantially similar claims" pending in state court—a standard met when the actions "arise out [of] the same alleged conduct and seek to vindicate the same rights." *Goodin v. Vendley*, 356 F. Supp. 3d 935, 944 (N.D. Cal. 2018). "[E]xact parallelism" is not required; only substantial similarity. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989) (finding actions substantially similar even though "[t]he state action focus[ed] on the Nakash[es'] wrongdoing while their complaint allege[d] wrongdoing by the Marcianos").

The claims here are nearly identical. The parallel state court complaint asserts a CUTSA claim. Ex. D (Count II). It references Defendants Tan, io Products, Inc., and/or OpenAI in fourteen separate paragraphs, and it names "DOE" Defendants under California Code of Civil Procedure section 474 who allegedly "wrongfully received, used, and/or further disclosed" iyO's trade secrets. *Id.* ¶¶ 3, 13, 14, 15, 16, 20, 22, 23, 31, 33, 34, 35, 38, 45, 47. That is precisely what iyO attempts to accuse Defendants of doing here. In that action, iyO served a deposition subpoena on Tan. Ex. L.

When iyO identified the state court litigation as a "potentially related case," it represented that the case involved "different claims" and that "none of the Defendants in this case are currently parties." Dkt. 69. But with the FAC, the claims are now functionally identical in the operative facts.

### B.      Nearly every *Colorado River* factor favors abstention.

With substantial similarity established, courts balance eight factors to determine whether to abstain. *Goodin*, 356 F. Supp. 3d at 945. The balance weighs decisively in favor of abstention.

*Factors 1 and 2* (assumption of jurisdiction over a res and relative inconvenience of the forums) are neutral because no property is at issue and both forums are convenient. *Id.* at 945 n.5.

*Factor 3* (avoiding piecemeal litigation) strongly favors abstention. Allowing both proceedings to advance creates the near-certainty that whichever court rules first will have preclusive effect on the claims and issues pending before the other. *Id.* at 945. That calculus is particularly weighty given the asymmetry here: while iyO would likely be bound by adverse rulings

in the state court action, it is currently stayed.  Caruso Decl. ¶ 10, Ex. I.  iyO should not be allowed to evade the results of the first-filed action just because it does not like how it is going.  Nor should it be able to gin up inevitable litigation regarding the scope of any issue preclusion applied in this proceeding.  These preclusion issues give rise to the piecemeal litigation that abstention is designed to prevent.  *Mendocino Ry. v. Ainsworth*, 113 F.4th 1181, 1189 (9th Cir. 2024), *cert. denied sub nom. Mendocino Ry. v. Huckelbridge*, 146 S. Ct. 88, 223 L. Ed. 2d 7 (2025) ("the potential for piecemeal litigation supports dismissal" where there is "almost guaranteed duplication of judicial effort on [issues raised in the state and federal cases] and [where there is a] possibility of contradictory outcomes").

*Factor 4* (order in which the forums obtained jurisdiction) favors abstention.  iyO sued Sargent and the DOE defendants in state court in July 2025 (Ex. D), months before filing the FAC.

*Factor 5* (whether state or federal law provides the rule of decision) favors abstention because iyO's CUTSA claim arises squarely under California state law.

*Factor 6* (adequacy of the state forum to protect the parties' rights) favors abstention because the state court can fully protect all parties' rights.  Counts seven and eight of the FAC arise under California law, can easily be brought in California state court, and are all claims over which the Court would have to choose to exercise supplemental jurisdiction as no other ground for federal jurisdiction exists.  While Count nine of the FAC is a federal claim, state courts have concurrent jurisdiction over claims brought pursuant to the DTSA.  *1-800 Remodel, Inc. v. Bodor*, 2019 WL 856399, at *2 n.3 (C.D. Cal. Jan. 28, 2019).

*Factor 7* (avoiding forum shopping) is a critical concern.  iyO did not assert the new claims in its original pleading.  Instead, it chose to file a separate litigation against Sargent and "Does" in state court.  It was only after losing its TRO, after every person who attended the restaurant interview at issue submitted a declaration that no trade secrets had been transmitted, and after an anti-SLAPP appeal stayed the state court action that iyO chose to bring its same misappropriation claims in this case.  Caruso Decl. ¶¶ 5-9, Exs. D-I.  iyO's decision to proceed in federal court under these circumstances appears designed to circumvent California's anti-SLAPP statute and the California court's skepticism about its case—paradigmatic forum shopping that abstention is well-suited to

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)

address. *See Mendocino Ry.*, 113 F.4th at 1190 (affirming abstention where the plaintiff "pursued suit in a new forum after facing setbacks in the original proceeding"); *Hua v. Ass'n of Apartment Owners of Waikiki Banyan*, 2025 WL 473502, at *7 (D. Haw. Feb. 12, 2025) (similar).

*Factor 8* (whether state proceedings will resolve all issues before the federal court) also supports abstention. Once iyO's trademark infringement-based claims are dismissed, the issues in this proceeding will likely be resolved by the state court litigation, which will decide whether Sargent and/or the Doe defendants committed trade secret theft. Moreover, even if there is a chance that additional issues will remain, this factor is less significant when, as here, there is "clear-cut evidence of forum shopping." *Hua*, 2025 WL 473502, at *7 (internal citation omitted).

Six of the eight factors favor abstention, and none weigh against it. This Court should abstain and either dismiss or stay this action in deference to the parallel state court proceeding.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court strike iyO's FAC, or alternatively, dismiss the FAC with prejudice and/or abstain from hearing the trade secret claim and decline to exercise jurisdiction over the state law claims.

DATED:  March 27, 2026            QUINN EMANUEL URQUHART
                                  & SULLIVAN, LLP


                                  By_____/s/ Margret M. Caruso_____
                                       Margret M. Caruso
                                       *Attorneys for Defendants io Products, Inc.,*
                                       *OpenAI, Inc., OpenAI, LLC, and Sam Altman*


DATED:  March 27, 2026            JONES DAY


                                  By_____/s/ Meredith M. Wilkes_____
                                       Meredith M. Wilkes
                                       *Attorneys for Defendant Sir Jonathan Paul Ive*

## **ATTESTATION**

I, Margret M. Caruso, am the ECF user whose ID and password are being used to file the above document.  In compliance with Local Rule 5-1(i)(3), I hereby attest that Meredith M. Wilkes has concurred in the filing of the above document.


By     */s/ Margret M. Caruso*
    Margret M. Caruso

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STRIKE, OR, IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND FED. R. CIV. P. 12(b)(6)