MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
Micha Danzig (177923)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel.: (415) 432-6000

*Attorneys for Plaintiff IYO Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC.<br><br>Plaintiff,<br><br>v.<br><br>IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, OPENAI OPCO, LLC, SAM ALTMAN, SIR JONATHAN PAUL IVE, and TANG YEW TAN,<br><br>Defendants. | Case No. 3:25-cv-4861-TLT<br><br>**PLAINTIFF IYO INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS**<br><br>FAC Filed: March 13, 2026<br>Hearing Date: July 28, 2026 |

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

## TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................. 1

II. LEGAL STANDARD ......................................................................................... 3

    A. Rule 12(b)(6), Not Rule 12(b)(1), Governs Defendants' Motion to Dismiss .......... 3

    B. Exhibits J and K Were Not Incorporated By Reference Into the FAC ................... 4

    C. The Court Should Reject Defendants' Request for Judicial Notice ........................ 5

III. COUNTERSTATEMENT OF FACTS .............................................................. 6

IV. ARGUMENT ..................................................................................................... 7

    A. The FAC is the Operative Pleading and IYO did Not Waive its Right to Amend ............................................................................................................... 7

    B. The Court Plainly Has Jurisdiction Over Trademark Claims 1-2, and 4 ................ 9

    C. Counts 3, 5, and 6 are Supported by the Trademark Claims ................................. 11

    D. IYO Has Plausibly Alleged its Tortious Interference Claim (Count 7) ................. 11

        i. Defendants' Attack on Count 7 is Procedurally Flawed ............................ 11

        ii. The FAC Adequately Pleads Knowledge of Relationships ....................... 12

        iii. The FAC Adequately Pleads Wrongful Conduct Designed to Disrupt ...................................................................................................... 13

    E. IYO Has Plausibly Alleged its Trade Secret Claims (Counts 8-9) ....................... 15

        i. Defendants' Trade Secret Arguments are Procedurally Improper ............. 15

        ii. The FAC Adequately Alleges IYO's Trade Secrets ................................. 16

        iii. The FAC Adequately Alleges Misappropriation ..................................... 19

    F. The *Colorado* Abstention Doctrine is Inapplicable Here ................................... 22

        i. The Claims and Parties are Not "Substantially Similar" .......................... 22

        ii. None of the *Colorado River* Factors Favor Abstention ........................... 24

V. CONCLUSION ................................................................................................. 25

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

i

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Alert Enterprises, Inc. v. Rana*,
    2023 WL 2541353 (N.D. Cal. Mar. 16, 2023) ........................................................................ 19

*Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.*,
    2015 WL 12910908 (C.D. Cal. Dec. 14, 2015) ....................................................................... 12

*Austin v. ABC Legal*,
    2022 WL 847307 (N.D. Cal. Mar. 22, 2022) ............................................................................ 7

*Ballester v. Boucek*,
    2024 WL 2218989 (S.D. Cal. May 14, 2024) ............................................................................ 7

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    2018 WL 2298500 (N.D. Cal. May 21, 2018) ......................................................................... 18

*Beluca Ventures LLC v. Einride Aktiebolag*,
    660 F. Supp. 3d 898 (N.D. Cal. 2023) ............................................................................... *passim*

*Bus. Sols., LLC v. Ganatra*,
    2019 WL 926351 (C.D. Cal. Jan. 7, 2019) ....................................................................... 23, 24

*Capitol West Appraisals LLC v. Countrywide Financial Corp.*,
    467 F. App'x 738 (9th Cir. 2012) ............................................................................................ 13

*CelLink Corp. v. Manaflex LLC*,
    2025 WL 1993517 (N.D. Cal. July 17, 2025) ............................................................... 19, 20, 22

*Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*,
    2021 WL 1405477 (N.D. Cal. Apr. 14, 2021) ........................................................................ 11

*CleanFish, LLC v. Sims*,
    2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ........................................................................ 18

*Coldwell Solar, Inc. v. ACIP Energy Ltd. Liab. Co.*,
    2021 WL 3857981 (E.D. Cal. Aug. 26, 2021) ........................................................................ 24

*Creative Writer Software, LLC v. Schechter*,
    2024 WL 1098759 (C.D. Cal. Feb. 8, 2024) ..................................................................... 16, 17

*Cyclone USA v. LL&C Dealer Servs. LLC*,
    2004 WL 7325117 (C.D. Cal. Apr. 14, 2004) ..................................................................... 2, 10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ............................................................................................................. 9, 10

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- ii -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

*Garfield Beach CVS LLC v. Mollison Pharmacy*,
2017 WL 3605452 (S.D. Cal. Aug. 22, 2017) ........................................................................ 16

*GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*,
2016 WL 11756835 (C.D. Cal. Oct. 19, 2016) ....................................................................... 14

*Gerritsen v. Warner Bros. Ent. Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .................................................................................... 5

*Gibson Brands, Inc. v. Viacom Int'l, Inc.*,
640 F. App'x 677 (9th Cir. 2016) ....................................................................................... 3, 9

*GMH Capital Partners v. Fitts*,
2025 WL 950674 (S.D.N.Y. Mar. 28, 2025) .......................................................................... 21

*Goodin v. Vendley*,
356 F. Supp. 3d 935 (N.D. Cal. 2018) .................................................................................... 23

*Holder v. Holder*,
305 F.3d 854 (9th Cir. 2002) .................................................................................................. 22

*Hua v. Ass'n of Apartment Owners of Waikiki Banyan*,
2025 WL 473502 (D. Haw. Feb. 12, 2025) ........................................................................... 25

*Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*,
2012 WL 2572065 (N.D. Cal. July 2, 2012) .......................................................................... 12

*Infectolab Americas LLC v. ArminLabs GmbH*,
2021 WL 292182 (N.D. Cal. Jan. 28, 2021) .......................................................................... 13

*Iyo, Inc. v. Io Prods., Inc.*,
2025 WL 3471705 (9th Cir. Dec. 3, 2025) ..................................................................... 1, 6, 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................ 4, 5, 15

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) ..................................................................................... 1, 2, 3, 9

*Lashify, Inc. v. Urb. Dollz LLC*,
2023 WL 12086717 (C.D. Cal. Sept. 26, 2023) .................................................................... 14

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ............................................................................................. 5, 11

*LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*,
2023 WL 6930330 (N.D. Cal. Oct. 19, 2023) ............................................................ 3, 4, 6, 10

*LGS Architects, Inc. v. Concordia Homes of Nev.*,
434 F.3d 1150 (9th Cir. 2006) ................................................................................................ 10

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- iii -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   2019 WL 6655274 (C.D. Cal. Sept. 23, 2019)......................................................................... 21

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ................................................................................... 21

*Moon v. Bd. of Trs. of PAMCAH-UA Loc. 675 Pension Fund*,
   319 F. Supp. 3d 1193 (N.D. Cal. 2018) ..................................................................................... 8

*Nakash v. Marciano*,
   882 F.2d 1411 (9th Cir. 1989)................................................................................................. 23

*Nat'l Specialty Pharm., LLC v. Padhye*,
   734 F. Supp. 3d 922 (N.D. Cal. 2024) .................................................................................... 18

*Nevada Fleet LLC v. FedEx Corp.*,
   2024 WL 199626 (E.D. Cal. Jan. 18, 2024)............................................................................ 13

*Oracle Am., Inc. v. Cedarcrestone, Inc.*,
   2013 WL 3243885 (N.D. Cal. June 26, 2013) ........................................................................ 12

*P2i Ltd. v. Favored Tech USA Corp.*,
   2024 WL 4294652 (N.D. Cal. Sept. 24, 2024) ....................................................................... 18

*Pivonka v. Allstate Ins. Co.*,
   2019 WL 3067106 (E.D. Cal. July 12, 2019) ........................................................................... 7

*Porsche Cars N. Am., Inc. v. Spencer*,
   2000 WL 641209 (E.D. Cal. May 18, 2000)............................................................................ 10

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
   149 F.4th 1081 (9th Cir. 2025)......................................................................................... *passim*

*Ramirez v. Cnty. of San Bernardino*,
   806 F.3d 1002 (9th Cir. 2015) ............................................................................................. 7, 8

*Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*,
   2007 WL 1394427 (N.D. Cal. May 10, 2017) ........................................................................ 14

*S. Nat. Res. v. Nations Energy Sols.*,
   2021 WL 4072664 (S.D. Cal. May 6, 2021)............................................................................ 23

*Sanas.Ai Inc. v. Krisp Techs., Inc.*,
   2026 WL 892017 (N.D. Cal. Apr. 1, 2026) ............................................................................ 16

*Seneca Ins. Co. v. Strange Land, Inc.*,
   862 F.3d 835 (9th Cir. 2017)....................................................................................... 22, 24, 25

*Shutte v. Thompson*,
   82 U.S. 151 (1872) ..................................................................................................................... 8

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- iv -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

*Siva Enters. v. Ott*,
2018 WL 6844714 (C.D. Cal. Nov. 5, 2018)......................................................................... 25

*StonCor Group, Inc. v. Campton*,
2006 WL 314336 (W.D. Wash. Feb. 7, 2006) ....................................................................... 15

*Synopsys, Inc. v. ATopTech, Inc.*,
No. 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) ................................................................ 18

*Teradata Corp. v. SAP SE*,
2018 WL 6528009 (N.D. Cal. Dec. 12, 2018) ...................................................................... 18

*Trindade v. Reach Media Grp., LLC*,
2013 WL 3977034 (N.D. Cal. July 31, 2013) ...................................................................... 13

*United States v. Mezzanatto*,
513 U.S. 196 (1995) ................................................................................................................ 8

*United States v. Rebbe*,
314 F.3d 402 (9th Cir. 2002) .................................................................................................. 8

*United States v. State Water Res. Control Bd.*,
988 F.3d 1194 (9th Cir. 2021).................................................................................. 22, 23, 24

*United States v. W. T. Grant Co.*,
345 U.S. 629 (1953) .............................................................................................................. 10

*Vox Network Solutions, Inc. v. Gage Techs., Inc.*,
2024 WL 1260573 (N.D. Cal. Mar. 25, 2024) ..................................................................... 18

*WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*,
2020 WL 83845 (N.D. Cal. Jan. 7, 2020) ............................................................................ 10

*Wilson Util. Constr. Co. v. Am. Zurich Ins. Co.*,
2026 WL 465943 (C.D. Cal. Jan. 9, 2026) .......................................................................... 22

*Xsolla (USA), Inc. v. Aghanim Inc.*,
2024 WL 4131419 (C.D. Cal. Sept. 10, 2024)..................................................................... 21

**State Cases**

*San Jose Constr., Inc. v. S.B.C.C., Inc.*,
155 Cal. App. 4th 1528 (2007)............................................................................................. 14

*Winchester Mystery House, LLC v. Global Asylum, Inc.*,
210 Cal. App. 4th 579 (2012)............................................................................................... 13

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- v -

## I.    INTRODUCTION

Defendants' Motion to Strike or Dismiss asks this Court to do four things it cannot do: (1) disregard binding Ninth Circuit precedent holding that IYO has stated a colorable Lanham Act claim based on Defendants' May 21, 2025 advertisement; (2) dismiss because Defendants dispute the well-pleaded facts relying on self-serving declarations and other disputed extra-pleading materials; (3) find that IYO *implicitly* waived its absolute right to amend under Rule 15(a)(1)(B) by seeking to extend its separate and distinct right to seek *leave* to amend; and (4) dismiss well-pleaded tortious interference and trade secret claims by demanding evidentiary proof at the pleading stage and asking the Court to credit Defendants' competing factual narrative over IYO's detailed allegations. The motion fails on all fronts.

Less than four months ago, the Ninth Circuit squarely held that IYO has a "colorable claim" that Defendants' May 21, 2025, announcement "was itself an infringing advertisement" under the Lanham Act. *Iyo, Inc. v. Io Prods., Inc.*, No. 25-4028, 2025 WL 3471705, at *1 (9th Cir. Dec. 3, 2025). Under settled Ninth Circuit law, that holding is dispositive of subject-matter jurisdiction: so long as a plaintiff pleads a colorable federal trademark claim, jurisdiction exists as a matter of law. *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 872–73 (9th Cir. 2014). Defendants do not—and cannot—grapple with that precedent.

They therefore lead with a procedural "strike" argument, claiming IYO's First Amended Complaint ("FAC," ECF 119) was untimely because the Court's schedule identified March 6 as the "Last Day to Amend Pleading." That argument misstates the governing rule and ignores what has already occurred in this case. IYO timely filed the FAC on March 13, 2026 as of right under Federal Rule of Civil Procedure 15(a)(1)(B), which affords a plaintiff an absolute right to amend, without leave, within 21 days after service of a Rule 12 motion—separate from and independent of any deadline that would apply only to a motion ***seeking leave*** to amend. And the Court has already treated IYO's Rule 15 amendment exactly as the Rules require: after IYO filed its Statement of Mootness, the Court entered an order denying Defendants' prior motion to dismiss as moot in light of the FAC (ECF 119) and dropped the dismissal hearing from calendar. The Court should reject Defendants' attempt to recast a properly filed Rule 15(a)(1)(B) amendment—already recognized

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

1

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

by the Court as operative—as an improper pleading subject to being stricken.

Unable to prevail on their strike theory, Defendants attempt an end-run by recasting their challenge as one for mootness under Rule 12(b)(1), relying on self-serving declarations asserting that they have now "decided" not to use the name "io" for future hardware. That maneuver is legally improper and factually insufficient. Under established Ninth Circuit precedent, Rule 12(b)(6), not Rule 12(b)(1), governs Defendants' challenge to the sufficiency of the allegations concerning their use in commerce. *La Quinta*, 762 F.3d at 872–73. The law is clear that a defendant cannot extinguish Article III jurisdiction—or evade liability for completed infringing conduct—through unilateral, nonbinding promises made after suit is filed.

Moreover, the voluntary-cessation doctrine places a formidable burden on the party asserting mootness, requiring it to show that the challenged conduct is "irrefutably demonstrated and total" such that it cannot reasonably be expected to recur. *Cyclone USA v. LL&C Dealer Servs. LLC*, 2004 WL 7325117, at *7 (C.D. Cal. Apr. 14, 2004) (citation omitted). Defendants have not come close to meeting that standard, particularly where the Ninth Circuit has already determined that IYO plausibly alleged actual infringement, not merely speculative future harm. Defendants still plan to release a competing product under an undisclosed name (that could be confusingly similar), they retain all modalities of infringement, they have not withdrawn their trademark applications, they still own the web domain and company name, and their promise was limited to hardware, despite IYO's registration also covering software.

Finally, Defendants' reliance on judicial notice and "incorporation by reference" underscores the weakness of their position. Throughout the motion, Defendants ask the Court to credit disputed factual narratives drawn from state-court declarations, selectively curated website screenshots, and a TED talk video—not merely to notice their existence, but to adopt Defendants' self-serving interpretations of what they purportedly show. That is not the role of judicial notice, nor is it permissible on a motion to dismiss. At this stage, the Court must accept IYO's well-pleaded allegations as true and may not resolve contested questions of secrecy, knowledge, use, or intent on an untested paper record assembled by Defendants.

Defendants' attacks on IYO's newly added claims are equally meritless. The FAC plausibly

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 2 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

alleges tortious interference with prospective economic advantage based on detailed allegations that Defendants had direct, firsthand knowledge of IYO's investor, manufacturing, and customer relationships – gained through repeated meetings in 2022 and Spring 2025 – and then launched a confusingly similar brand at a moment calculated to derail those relationships. FAC ¶¶ 20–25, 165–91, 284–300. The FAC likewise states cognizable trade secret claims under both CUTSA and the DTSA by identifying specific categories of trade secrets, the specific individual who extracted them, the precise mechanism and timeline of extraction, the specific recipient (Tan), and the resulting use—allegations that far exceed any particularity required at the pleading stage. FAC ¶¶ 105–119, 149–57, 305–29. Nor is *Colorado River* abstention—applicable only in exceptional circumstances—available here. The state court action is against a different defendant not named in this case, does not include any of the Defendants in this case, does not assert trademark or DTSA claims, and is currently stayed—making it impossible for the state court proceedings to resolve this case (which is a requirement of discretionary abstention).

In short, Defendants' motion rests on a fundamental misapplication of the procedural rules governing amendment, an improper attempt to inject extrinsic evidence into a Rule 12 proceeding, a disregard of binding Ninth Circuit authority, and a demand that the Court resolve contested factual questions at the pleading stage. The Court should deny the motion to strike and the motion to dismiss in their entirety.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6), Not Rule 12(b)(1), Governs Defendants' Motion to Dismiss

Under established Ninth Circuit precedent, the Lanham Act's substantive elements, including its "use in commerce" requirement, are merits questions to be assessed under Rule 12(b)(6), not jurisdictional prerequisites to be assessed under Rule 12(b)(1). *La Quinta*, 762 F.3d at 872–74; *Gibson Brands, Inc. v. Viacom Int'l, Inc.*, 640 F. App'x 677, 678 (9th Cir. 2016) (reversing Rule 12(b)(1) dismissal and instructing district court to "determine whether [plaintiff's] complaint has stated a claim . . . under Rule 12(b)(6)"). This Court recently acknowledged that Rule 12(b)(1) is "the wrong standard" to address whether a pleading sufficiently alleges use in commerce. *LegalForce RAPC Worldwide, P.C. v. LegalForce, Inc.*, 2023 WL 6930330, at *8 (N.D.

Cal. Oct. 19, 2023), *aff'd sub nom. LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122 (9th Cir. 2024). Defendants cite, but blithely ignore, both *LegalForce* and *LaQuinta*, urging this Court to apply Rule 12(b)(1) to their claimed voluntary cessation argument. Defendants' feigned ignorance is strategic: whereas under Rule 12(b)(1), the Court can consider extrinsic evidence (*e.g.* the Welinder Declaration), under Rule 12(b)(6), the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to" IYO. *LegalForce*, 2023 WL 6930330, at *3 (citation omitted). A pleading "overcome[s] a Rule 12(b)(6) motion to dismiss" so long as its "factual allegations . . . suggest that the claim has at least a plausible chance of success." *Id.* (citations omitted). When assessing the sufficiency of a complaint under Rule 12(b)(6), the Court may not consider materials outside of the pleading unless they are incorporated by reference or are the proper subject of judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). The Court should reject Defendants' effort to transform their disputed merits argument into a jurisdictional one.

### B.  Exhibits J and K Were Not Incorporated By Reference Into the FAC

Defendants argue that Exhibits J (the TED Talk video) and K (screenshots from IYO's website) are incorporated by reference merely because the FAC mentions them. That is not the law. Incorporation by reference is only proper where the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (citation omitted). "The mere mention of the existence of a document is insufficient to incorporate" its contents. *Id.* (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). Defendants may not use incorporation to "insert their own version of events into the complaint" by importing materials that "merely create[] a defense to the well-pled allegations." *Id.*

Here, the FAC does not rely on the contents of the TED Talk or the website to establish any element of any claim. It references those materials only for background—*e.g.*, to allege Defendants' awareness of IYO and to describe its public marketing activities—not as the "basis" of any cause of action. Defendants' purpose confirms the point: they seek to use Exhibits J and K to dispute the FAC's allegations—arguing, for example, that IYO's trade secrets were publicly disclosed. That is both incorrect and precisely what *Khoja* forbids: incorporation is not "a tool for defendants to

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 4 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

short-circuit the resolution of a well-pleaded claim" by forcing disputed evidence into the complaint. *Id.* at 1003. And even where incorporation is otherwise permitted, it is "improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a wellpleaded [sic] complaint." *Id.* at 1003, 1014. Accordingly, the Court should find that Exhibits J and K were not incorporated by reference and are not part of the FAC.

### C. The Court Should Reject Defendants' Request for Judicial Notice

The Court should also reject Defendants' request for judicial notice of Exhibits D-K because it improperly seeks to inject disputed evidence into the case at the pleading stage. Judicial notice under FRE 201 is limited to facts "not subject to reasonable dispute." FRE 201(b); *Khoja*, 899 F.3d at 999. It does not permit Defendants to "present their own version of the facts at the pleading stage," or allow the Court to accept as true disputed assertions from extrinsic materials. *Khoja*, 899 F.3d at 999–1003 ("[T]he unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims."); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (while court may "take judicial notice of *undisputed* matters of public record," it is improper to take "judicial notice of *disputed* facts . . . in public records").

Here, Defendants rely on self-serving state-court declarations and related materials to factually dispute that "misappropriation occurred" and the plausibility of IYO's trade-secret allegations. Those are merits arguments about disputed facts. While the Court may notice the <u>existence</u> of filings or procedural events, it may <u>not</u> take judicial notice of the <u>truth</u> of disputed factual assertions contained in them. *Khoja*, 899 F.3d at 999–1003; *Lee*, 250 F.3d at 690.

The problem is especially acute with respect to Defendants' reliance on website screenshots and the TED Talk. Defendants do not ask the Court merely to notice that these materials exist; they ask the Court to conclude (contrary to the FAC) that IYO's alleged trade secrets were publicly disclosed (false), that the disclosures destroyed secrecy (also false), and that Defendants could not have known that IYO's information was confidential (also false). Those are quintessential merits questions that turn on context, completeness, and competing inferences, and they cannot be resolved via judicial notice. *Khoja*, 899 F.3d at 999–1003, 1014; *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1031–33 (C.D. Cal. 2015).

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 5 -
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

Instead, on a motion to dismiss, the Court must accept the FAC's well-pleaded allegations as true and draw all reasonable inferences in IYO's favor. *LegalForce*, 2023 WL 6930330, at *3 (citing *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)).

## III.    COUNTERSTATEMENT OF FACTS

Given the Court's familiarity with the facts, IYO only corrects certain mischaracterizations in Defendants' brief.

First, Defendants falsely characterize the original complaint (at 12) as alleging that IYO faced only *impending* (i.e., future) harm "that would accrue when Defendants launched offerings in connection with the io name." Not true. The complaint very clearly alleged that Defendants' "May 21 announcement" constituted an advertisement and had ***already*** harmed IYO. ECF 1 at ¶¶ 17, 115. It explained how IYO reached out to Defendants to discuss that harm and to get them to stop using the infringing mark. *Id.* It explains how the advertisement "immediately [began] to irreparably harm IYO" and it reiterates that IYO had already been damaged. *Id.* at ¶¶ 103–05, 126, 137–38, 145, 149, 158, 164, 170, and 176.

Second, Defendants assert (at 13) that this Court "expressly rejected" that the May 21, 2025 announcement was infringing. That is incorrect. First, that is not what the Court said. Second, more importantly, Defendants omit the Ninth Circuit's holding that IYO has a "colorable claim" that Defendants' May 21, 2025 video "was itself an infringing advertisement" under the Lanham Act. *Iyo*, 2025 WL 3471705, at *1 (9th Cir.). This binding precedent is directly on point and dispositive as to Defendants' jurisdictional argument.

Third, Defendants inject various "facts," such as the Welinder Declaration (ECF 105-2) and other purported promises from their counsel about Defendants' "decision" not to use IO. In doing so, Defendants misquote Welinder by omitting his limitation to "hardware," apparently to make their promise seem broader than it actually is. *See* ECF 128 at 14:12. Regardless, the Court may not consider these purported facts on this motion to dismiss. And even if it could, the purported promises do not undermine this Court's jurisdiction for the reasons discussed below.

Fourth, Defendants falsely claim that IYO filed the FAC late. Not true. IYO timely filed the FAC ***as of right*** under FRCP 15(a)(1)(B) on March 13, 2026, 21 days after Defendants filed their

motion to dismiss. As discussed below, IYO did not need leave to make that filing, and the March 6 deadline to move for leave was inapplicable. On March 26, this Court agreed the FAC is the operative pleading (ECF 119) by mooting Defendants' then-pending motion to dismiss (ECF 112) and pulling the hearing off the calendar. ECF 124. Defendants' motion omits these facts. ECF 128.

Fifth, Defendants mischaracterize the FAC as mirroring claims from a litigation in state court against a different defendant. None of the Defendants here are defendants in that action. And that action does not include a federal DTSA claim, trademark claims, or a claim for intentional interference with prospective economic advantage. Moreover, none of the purported "facts" from adversarial declarations in that action can be considered in connection with this motion to dismiss.

## IV.    ARGUMENT

### A.    The FAC is the Operative Pleading and IYO did Not Waive its Right to Amend

Defendants' contention (at 16-18) that IYO "knowingly and intentionally waived" its Rule 15(a)(1)(B) right to amend is wrong as a matter of law, unsupported by the record, and inconsistent with the Court's own ruling that the FAC mooted Defendants' motion to dismiss.

Under Federal Rule of Civil Procedure 15(a)(1)(B), a plaintiff may amend its pleading as a matter of right within 21 days of service of a Rule 12(b) motion. In the Ninth Circuit, this is an "absolute right to amend" that operates "as of right" and does not depend on leave of court. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1007 (9th Cir. 2015) (citations omitted). Nothing in Rule 15 conditions this right on compliance with a Rule 16 scheduling order, and nothing in Rule 16 authorizes a court to extinguish this right. To the contrary, the Ninth Circuit has emphasized that Rule 15(a)(1)'s amendment as-of-course mechanism operates independently of the leave-of-court regime and Rule 16's good-cause standard. *See Ramirez*, 806 F.3d at 1007–08.

Notably, Defendants **cite no case** holding that a scheduling order extinguishes a party's absolute right to amend under Rule 15(a)(1)(B). Nor can they cite a single case in which a party was found to have waived the right to amend under that rule. Instead, Defendants rely on cases in which the party **missed** the Rule 15(a)(1)(B) deadline[1] or that dealt with the enforceability of

---

[1] *Ballester v. Boucek*, 2024 WL 2218989, at *6 (S.D. Cal. May 14, 2024) (amended pleading not timely under Rule 15(a)(1)(B)); *Austin v. ABC Legal*, 2022 WL 847307, at *2 (N.D. Cal. Mar. 22, 2022) (same); *Pivonka v. Allstate Ins. Co.*, 2019 WL 3067106, at *2 (E.D. Cal. July 12, 2019) (same

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

knowing, voluntary waivers in completely inapplicable contexts.[2]

Even if Rule 15(a)(1)(B) were waivable (a proposition Defendants do not establish), Defendants' cases show that waiver requires clear, intentional, and unequivocal relinquishment of a known right. *See, e.g.*, *Mezzanatto*, 513 U.S. at 201; *Rebbe*, 314 F.3d at 406. There is no such relinquishment here. IYO never stated—expressly or implicitly—that it was abandoning its Rule 15(a)(1)(B) rights. Defendants point to IYO's agreement to the scheduling order. But agreeing to a deadline to seek *leave* to amend (under Rule 16) is not the same thing as waiving the separate, rule-based right to amend without leave (under Rule 15). The two mechanisms are distinct by design. *Ramirez*, 806 F.3d at 1007–08. And IYO's motion to extend the leave-to-amend deadline did not disclaim or surrender (or even mention) its statutory right to amend as of course following a Rule 12 motion. ECF 114.

Defendants' argument rests on the notion that IYO was required to "object" to the March 6 deadline or else forfeit its separate right under Rule 15(a)(1)(B). But waiver cannot be manufactured by silence where the Rule itself creates a self-executing right. Indeed, nothing in Rule 15 requires a plaintiff to announce in advance that it may later exercise its right. Further, the Court already ruled that Defendants' motion to dismiss was moot. ECF 124. That ruling necessarily rests on the conclusion that the FAC was properly filed and operative. *Ramirez*, 806 F.3d at 1008 ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent.").

In short, there was no waiver and no violation of any rule or order. But even if the Court entertained Defendants' waiver theory (it should not), the appropriate remedy would not be the extraordinary sanction of striking the FAC. "[P]ublic policy . . . strongly favors disposition of actions on the merits" and Defendants identify no prejudice from the timing of the amendment,

where "21-day deadline had long since expired").

[2] *United States v. Mezzanatto*, 513 U.S. 196, 210–211 (1995) (plea-statement rules are waivable where "respondent conferred with his lawyer" and knowingly and voluntarily agreed to waive); *United States v. Rebbe*, 314 F.3d 402, 407 (9th Cir. 2002) (same where both "[defendant] and his attorney signed the Waiver"); *Shutte v. Thompson*, 82 U.S. 151, 159 (1872) (party can waive rules governing before whom a deposition can be taken); *Moon v. Bd. of Trs. of PAMCAH-UA Loc. 675 Pension Fund*, 319 F. Supp. 3d 1193, 1197 (N.D. Cal. 2018) (pension waived right to recover mistaken payments when it elected "after much deliberation" and "in spite of" its rights, not to require reimbursement).

particularly where it was filed squarely within the Rule 15(a)(1)(B) window. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc*., 149 F.4th 1081, 1091 (9th Cir. 2025) (citations omitted).

**B.    The Court Plainly Has Jurisdiction Over Trademark Claims 1-2, and 4**

Defendants argue (at 18-21) that the Court lacks jurisdiction over this matter because (i) they purportedly have not used the disputed IO mark in commerce, and (ii) claim they no longer intend to. Their first argument is contrary to binding Ninth Circuit precedent; the second is precluded by it and undermined by Defendants' own trademark filings. The Ninth Circuit expressly held that IYO has a "colorable claim" that Defendants' May 21, 2025 video "was itself an infringing advertisement" under the Lanham Act. *Iyo*, 2025 WL 3471705, at *1 (9th Cir.). As such, IYO has stated a claim that Defendants ***actually used*** the IO mark in commerce, and that this case is ripe and justiciable. *See id.*; 15 U.S.C. § 1114(1)(a) (advertising alone may give rise to a Lanham Act claim). That holding is law of the case. It is also dispositive of jurisdiction because when a plaintiff pleads a colorable Lanham Act claim, subject-matter jurisdiction exists as a matter of law. *La Quinta*, 762 F.3d at 872–74. It is also dispositive as to the motion to dismiss the trademark claims because ***the Ninth Circuit already found them plausible***.

Defendants attempt to avoid this binding precedent by reframing their argument as a Rule 12(b)(1) challenge based on mootness and voluntary cessation. But the Ninth Circuit has squarely rejected that approach, holding that whether Defendants' conduct satisfies the elements of infringement or whether belated promises suffice to defeat liability are merits questions, not jurisdictional ones. *Id.*; *see also Gibson Brands*, 640 F. App'x at 679 (same, remanding for determination under 12(b)(6)). Thus, when properly assessed as a Rule 12(b)(6) motion, the Court may not even consider Defendants' extraneous claims of cessation.

Regardless, Defendants' purported cessation does not come close to meeting the threshold for a finding of mootness. It is "well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted). A defendant's voluntary cessation only moots a case "if it is *absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *LGS Architects, Inc. v.*

*Concordia Homes of Nev.*, 434 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Adarand Constructors v. Slater*, 528 U.S. 216, 222 (2000)). Courts are particularly skeptical of cessation when it occurs only after litigation ensues. *Porsche Cars N. Am., Inc. v. Spencer*, 2000 WL 641209, at *6 n.16 (E.D. Cal. May 18, 2000) (defendant's voluntary cessation insufficient to moot trademark claim where it had not proven "that there [was] no possibility that he [would] again" resume).

Defendants bear a "formidable" and "heavy" burden of showing that "there is no reasonable expectation that the wrong will be repeated." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (citation omitted); *Laidlaw*, 528 U.S. at 190. Defendants cannot meet that burden simply by asserting that they have "ceased the complained of activities, and [] committed to not resuming them." *Cyclone*, 2004 WL 7325117, at *7. Indeed, in *Cyclone*, the court denied dismissal even though the defendant had done far more than our Defendants: it had ceased distributing the relevant products, was no longer using the challenged advertisements, revised its website and packaging, had revised its "informercial" "to remove the name, likeness, image and signature of Jay Kim, as well as the [disputed] name . . . and remove[d] any references to disputed test results." *Id.* at *6–7.

Dismissal is likewise improper here.[3] Defendants still plan to release a competitive product under an undisclosed name that could still be confusingly similar. Further their promise is restricted to hardware, while IYO's registration covers software too. Moreover, Defendants refused to stipulate to an order precluding use of the mark through trial, and have not relinquished the assets, infrastructure, or corporate identity that enabled the challenged conduct. They also retain the name

---

[3] Defendants' reliance on *Already, LLC v. Nike, Inc.* and *WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, is misplaced. Both cases underscore why this action is justiciable. In *Already*, the Supreme Court found mootness only after Nike signed a broad, unconditional, and irrevocable covenant not to sue that "prohibit[ed] Nike from making any claim or any demand" against the plaintiff based on any existing or future designs, including "colorable imitations." 568 U.S. 85, 93 (2013). Nike also dismissed its own claims with prejudice, effecting a complete surrender of enforcement rights. *Id.* at 91–93. In *WeWork*, the court found mootness only after the defendant completely abandoned its plans to enter the U.S. (with the disputed mark or otherwise), removed all uses of the mark, and abandoned its planned office space. 2020 WL 83845, at *3–4 (N.D. Cal. Jan. 7, 2020). The court there found no indication the defendant retained any realistic ability or incentive to resume the challenged conduct. *Id. Langer v. Music City Hotel LP* is also inapplicable as it dealt with violations of the Americans with Disabilities Act, not trademark infringement. 2021 WL 5919825 (N.D. Cal. Dec. 15, 2021). *LegalForce* is also completely inapplicable because it did not address the voluntary cessation doctrine; the defendant there had never advertised a product using the disputed mark in the US and never stated any intent to do so; its disputed conduct occurred wholly outside the US and was beyond the reach of the Lanham Act. 2023 WL 6930330, at *7–8. That is not the case here.

*Io Products, Inc.*, the *io.com* domain, the prototype, and the personnel to resume infringing activity. They also admit they filed 8 trademark applications for the IO mark, which they have not abandoned or withdrawn. *See* ECF No. 134 (admitting to filing trademark applications). They even filed a request for an extension of time to file a statement of use as to one of those applications two weeks ago, specifically to avoid abandonment, swearing under penalty of perjury that they presently maintained a bona fide intent to use the mark in commerce. *See* ECF 138-1;[4] 15 U.S.C. § 1051(d)(1), (4).

In sum, Defendants' motion to dismiss the trademark claims (1, 2 and 4) should be denied.

### C.   Counts 3, 5, and 6 are Supported by the Trademark Claims

The only basis upon which Defendants seek dismissal of Counts 3 (UCL), 5, and 6 (vicarious liability) is the purported mootness of the trademark claims. But since the trademark claims are not moot, there is no basis for the Court to dismiss these claims.

### D.   IYO Has Plausibly Alleged its Tortious Interference Claim (Count 7)

The FAC plausibly pleads tortious interference with prospective economic advantage. Defendants attack only two elements of the claim: knowledge of specific relationships and conduct designed to disrupt those relationships. Both attacks fail, as does Defendants' attempt to curry inferences in its favor, contrary to the FAC.

#### i.   Defendants' Attack on Count 7 is Procedurally Flawed

Defendants move under Rule 12(b)(6), but improperly (and repeatedly) ask the Court to reject IYO's well-pleaded allegations and draw inferences in their favor. Defendants' arguments only work if the Court assumes—contrary to the FAC—that Defendants' adoption of the IO name was ordinary competition, that Defendants' timing was coincidental, and that Defendants were unaware of IYO's investors, manufacturer, and go-to-market efforts. But the FAC alleges the opposite. Defendants had repeated, direct interactions with IYO concerning its technology, commercialization plans, and fundraising with known investors. FAC ¶¶ 20–30, 165–91, 284–94.

---

[4] IYO requests the Court take judicial notice of this fact. *Certainteed Gypsum, Inc. v. Pac. Coast Bldg. Prods., Inc.*, 2021 WL 1405477, at *4 (N.D. Cal. Apr. 14, 2021) ("Materials in the online files of the USPTO and other matters of public record are proper subjects of judicial notice.") (citation omitted); *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) (court may "take judicial notice of *undisputed* matters of public record").

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

- 11 -

They then launched a confusingly similar brand at a moment calculated to derail those relationships. *Id.* Whether Defendants' conduct was justified competition or wrongful interference, and whether the resulting disruption was foreseeable or intended, are quintessential fact questions unsuitable for resolution via a motion to dismiss.

### ii.    The FAC Adequately Pleads Knowledge of Relationships

At the pleading stage, a plaintiff need not identify every prospective relationship by name, so long as the complaint plausibly alleges a class of specific, identifiable relationships of which the defendant was aware. *Oracle Am., Inc. v. Cedarcrestone, Inc.*, 2013 WL 3243885, at *1 (N.D. Cal. June 26, 2013) (finding claim sufficient where defendant "was aware of [plaintiff's] economic relationships with current and prospective purchasers and licensees"); *Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.*, 2015 WL 12910908, at *5 (C.D. Cal. Dec. 14, 2015) (same where complaint alleged defendant knew about relationships with unidentified customers from prior dealings)*; see also Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC,* 2012 WL 2572065, at *6 (N.D. Cal. July 2, 2012) (allegations that competitor knew of seller's existing and prospective relationships with distributors and retailers were sufficient).

The FAC meets this standard. IYO alleges that, at the time of Defendants' misconduct, IYO was (i) manufacturing an initial production run of IYO ONE devices, (ii) taking presale orders from consumers (including Defendants themselves), (iii) engaged in an active capital raise with existing and prospective investors (including Defendants), and (iv) developing and maintaining relationships with manufacturing and strategic partners necessary to bring its products to market. FAC ¶¶ 5, 23–27, 165–91, 284–87. These are not speculative or abstract expectancies; they are concrete, ongoing commercial relationships with a clear expectation of future economic benefit.

The FAC further alleges that Defendants had actual knowledge of these relationships from their repeated meetings with IYO in 2022 and again in Spring 2025 regarding potential collaboration and investment. FAC ¶¶ 20–25; 165–91, 284–87. During those meetings IYO shared its product roadmap, commercialization plans, manufacturing plans, and fundraising efforts, and also fitted multiple Defendants with the demo IYO ONE devices they had preordered. *Id.* The FAC alleges not only that Defendants knew that IYO had prospective customers, investors, and

manufacturing partners, but also knew who these relationships were with and why they were critical to IYO's imminent market entry. *Id.* ¶¶ 284–87. As the FAC explains, several of these meetings were to discuss Defendants' investment in a financing round, *id.*, which Defendants knew was led by IYO's manufacturer (who Defendants knew from their work with the iPhone).

The cases that Defendants cite (at 22-23) do not alter this conclusion because they all involved pleadings that contained no allegations as to how the defendants acquired knowledge of the specified relationships.[5] Here, as discussed above, the FAC alleges multiple meetings, demos, and fundraising discussions in which IYO shared its technology, commercialization plans, manufacturing trajectory, and capital-raise efforts (including who was involved with those efforts) directly with Defendants, giving them actual knowledge of IYO's relationships with investors, manufacturing partners, and customers. FAC ¶¶ 20–25; 165-91, 284-87.

### iii.    The FAC Adequately Pleads Wrongful Conduct Designed to Disrupt

Defendants also argue that IYO failed to allege independently wrongful conduct "designed to disrupt" the specified relationships. Not true. The FAC contains detailed allegations concerning Defendants' trademark infringement and unfair competition—each of which independently satisfies the "wrongful act" requirement as a matter of law for purposes of tortious interference. *Lashify, Inc. v. Urb. Dollz LLC*, 2023 WL 12086717, at \*7 (C.D. Cal. Sept. 26, 2023) ("trademark infringement and violation of the UCL constitute independently wrongful acts"; upholding claim); *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 11756835, at \*14 (C.D.

---

[5] *Capitol West Appraisals LLC v. Countrywide Financial Corp.*, 467 F. App'x 738, 739–40 (9th Cir. 2012) (complaint alleged relationship with unnamed "mortgage brokers and lenders" "without any further specific allegations" as to how defendants learned of them); *Trindade v. Reach Media Grp., LLC*, 2013 WL 3977034, at \*17 (N.D. Cal. July 31, 2013) (complaint alleged that defendant had knowledge that plaintiff was in the business of contracting with other publishers solely from its "reputation" and contained no facts supporting how such knowledge was actually acquired); *Infectolab Americas LLC v. ArminLabs GmbH*, 2021 WL 292182, at \*4 (N.D. Cal. Jan. 28, 2021) (complaint need not reveal "identity or name" of relationship, but must plead facts supporting how defendant acquired knowledge of relationship; pleading that opponent is "competitor in the [same] industry" is insufficient to show how knowledge of relationship was acquired); *Nevada Fleet LLC v. FedEx Corp.*, 2024 WL 199626, at \*6 (E.D. Cal. Jan. 18, 2024) (no facts alleged to support knowledge of specified relationships; mere knowledge of the plaintiff's generalized "relationships with customers across the country" insufficient to show how knowledge of relationships at issue was acquired); *Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579, 595–96 (2012) (affirming grant of summary judgment because pleading contained no factual allegations supporting how defendants did or could have learned of the specified relationships).

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

Cal. Oct. 19, 2016) (same, denying summary judgment); *Reid-Ashman Mfg, Inc. v. Swanson Semiconductor Serv., L.L.C.*, 2007 WL 1394427, at \*12 (N.D. Cal. May 10, 2017) (same, upholding claim)). Defendants' citation to cases where such claims were not sufficiently alleged is unavailing.

The FAC also alleges that Defendants targeted their conduct at these known relationships: Defendants' May 21, 2025 announcement was timed and structured to swamp IYO's market presence, derail investor confidence, and destabilize manufacturing and partner relationships essential to IYO's survival. FAC ¶¶ 26–28, 74, 288, 295–300. At the pleading stage, allegations that defendants knew their conduct was substantially certain to disrupt the plaintiff's expectancies are sufficient; specific intent to disrupt those expectancies is not required. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1154 (2003); *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 155 Cal. App. 4th 1528, 1544 (2007) (same). In addition, "timing alone may be sufficient to prove causation. . . . [T]he real issue is whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide." Jud. Council of Cal. Civ. Jury Instrs. CACI No. 2202 (2022) (quoting *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1267 (2010)). Here, the FAC alleges that Defendants' strategically timed announcement coincided with the disruption of IYO's investor and manufacturing relationships. These allegations plausibly allege a causal connection that is to be resolved by the factfinder.

Finally, Defendants' attack on the fraud and deceit allegations in ¶¶ 290–94 of the FAC fails. As a threshold matter, the FAC does not allege a standalone fraud claim (nor must it). The FAC alleges that Tan's course of deceptive conduct—expressing interest in IYO's technology, soliciting access to its IP portfolio, and fitting seven representatives for demo devices, all while concealing that he had co-founded a directly competing company under a confusingly similar name and that the public announcement was days away—constitutes independently wrongful conduct for purposes of the tortious interference claim. FAC ¶¶ 290–94. Defendants' contention that IYO's allegations of concealment are implausible also fails because the FAC alleges Defendants disclosed they were working on something called "io" involving "something competitive" (FAC ¶¶ 174, 185). In addition, Tan made vague, partial disclosures that concealed critical facts, such as that Tan had

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

already co-founded a competing company, that it had been incorporated since September 2023 (FAC ¶ 160), that io Products had a working prototype, and that a $6.5 billion acquisition was imminent. Whether partial disclosures are sufficient to negate fraud or concealment is a fact-intensive inquiry not suitable for resolution on a motion to dismiss.

### E.   IYO Has Plausibly Alleged its Trade Secret Claims (Counts 8-9)

#### i.   Defendants' Trade Secret Arguments are Procedurally Improper

Defendants' attack on IYO's trade secret claims improperly asks the Court to credit Defendants' preferred factual narrative—drawn from selectively chosen materials outside the pleadings—over the FAC's well-pleaded allegations. As discussed above, courts may not use incorporation or judicial notice "to resolve factual disputes against the plaintiff's well-pled allegations" or to credit a defendant's competing narrative at the pleading stage. *Khoja*, 899 F.3d at 1014–15. These are fact-intensive inquiries that cannot be resolved on a motion to dismiss. *See, e.g.*, *Quintara*, 149 F.4th at 1087–89 (trade secret identification and misappropriation are questions of fact to be resolved at summary judgment or trial); *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 910–11 (N.D. Cal. 2023) (rejecting defendant's attempt to litigate secrecy, public availability, and misuse of alleged trade secrets on a motion to dismiss because those are disputed factual questions).

Defendants have also refused to produce a single document bearing on the very issues they ask the Court to decide, including documents concerning their product development, and the materials they received from IYO's former engineer. *See* ECF 113 (pending motion to compel). Defendants should not be permitted to force a premature adjudication by placing a curated factual record before the Court, while simultaneously denying IYO access to the discovery to test Defendants' assertions. *See StonCor Group, Inc. v. Campton*, 2006 WL 314336, at *5 (W.D. Wash. Feb. 7, 2006) (refusing to dismiss trade secret claims and rejecting reliance on extra-pleading materials where parties were "entitled to further discovery on the trade secrets claim"); *Garfield Beach CVS LLC v. Mollison Pharmacy*, 2017 WL 3605452, at *2–3 (S.D. Cal. Aug. 22, 2017) (refusing to convert dismissal motion to summary judgment where defendants relied on declarations disputing trade secret use and discovery had yet to occur); *Quintara*, 149 F.4th at

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 15 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

1088–89 (trade secret identification and misappropriation issues should not be prematurely resolved).

At the pleading stage, IYO need only plausibly allege the existence of protectable trade secrets and misappropriation—not disprove Defendants' factual defenses. *See Creative Writer Software, LLC v. Schechter*, 2024 WL 1098759, at \*2–5 (C.D. Cal. Feb. 8, 2024) (refusing to dismiss since complaint need not "spell out the details" of plaintiff's trade secrets). The FAC easily meets this standard.

### ii.       The FAC Adequately Alleges IYO's Trade Secrets

Defendants' motion rests on the premise that IYO is required to prove its trade secrets now. That is not the law. To survive a motion to dismiss, a plaintiff need only plausibly allege the existence of trade secrets and describe them with sufficient particularity to put Defendants on notice of their boundaries. *Quintara*, 149 F.4th at 1087–89. "Whether a trade secret is identified with 'sufficient particularity' is a question of fact" reserved "for summary judgment or trial." *Id.* at 1085, 1087. Accordingly, IYO is not required "to identify with particularity its alleged trade secrets from the start," because the disclosure evolves through an "iterative" discovery process. *Id.* at 1085, 1088; *Sanas.Ai Inc. v. Krisp Techs., Inc.*, 2026 WL 892017, at \*2 (N.D. Cal. Apr. 1, 2026) (state procedural rule governing specificity of trade secret identifications, "does not control a federal trade-secret claim" "even if CUTSA claims are pled" (citing *Quintara*, 149 F.4th at 1089)).

Consistent with *Quintara*, courts in this District reject motions to dismiss that demand evidentiary precision at the pleading stage. For example, in *Beluca Ventures LLC v. Einride Aktiebolag*, the court explained that the "basic test" is whether the plaintiff has alleged "something beyond general knowledge" and provided "enough specificity to put the defendant on notice regarding the nature of the trade secret." 660 F. Supp. 3d at 909. Applying that standard, the court denied dismissal where the alleged trade secrets were identified through confidential reports and strategic materials, holding that disputes over secrecy, public availability, and competitive use were "not appropriate to address at this stage." *Id.* at 911.

Here, IYO alleges specific categories of trade secret information—including (1) CAD drawings for its products; (2) unreleased design features; (3) manufacturing scaling strategies; (4)

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

proprietary product development schedules; (5) custom-fit ear technology and manufacturing processes; (6) circuitry designs; (7) negative know-how; and (8) other confidential design, engineering, and manufacturing information developed over approximately eight years of research and development—developed internally, subject to access controls, and disclosed only under duties of confidentiality. FAC ¶¶ 305, 308, 322. It also identifies the specific individual who extracted the trade secrets, the mechanism of extraction (downloading 33 files totaling 79.6 MB from IYO's Google Drive, exporting 17 CAD files to cross-platform Parasolid format, giving them obscured gibberish names like "ergetght.x_t," and accessing dormant IP folders for the first time), the files accessed, the time frame (June 3–6 and July 25–29, 2024), the recipient of the secrets (Tang Yew Tan), and the circumstances under which trade secrets were disclosed (*e.g.*, the June 6, 2024 dinner at Cotogna in San Francisco). FAC ¶¶ 106–119, 135–140, 144.  These allegations are sufficient for Defendants to "ascertain at least the boundaries within which the secret lies." *Beluca*, 660 F. Supp. 3d at 907 (citation omitted).

Defendants' claim that IYO's trade secrets were publicly disclosed also fails. IYO is not claiming that its trade secrets include any information on its website or in the TED Talk. And courts routinely reject attempts to resolve disputes over public disclosure at the pleading stage. *Beluca*, 660 F. Supp. 3d at 911 (rejecting defendant's argument that alleged trade secrets were publicly available and not secret; holding that disputes over secrecy, public disclosure, and whether information was protectable are factual questions "not appropriate to address at [the pleading] stage"); *Creative Writer*, 2024 WL 1098759, at *4–5 (denying dismissal where defendants argued alleged trade secrets were publicly known; "[a] potent distinction exists between a trade secret which *will be* disclosed if and when the product in which it is embodied is placed on sale, and a 'trade secret' embodied in a product which has been placed on sale" (citation omitted)).

The cases Defendants cite (at 25-28) are readily distinguishable because each involved plaintiffs who described their trade secrets in vague, categorical terms without connecting those broad categories to any specific act of misappropriation. Indeed, in each of those cases, the plaintiffs failed to allege who took the trade secrets, what specific information was taken, when and how it

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

was taken, or how it was used.[6]

Here, as discussed above, the FAC identifies specific categories of engineering and design trade secrets—CAD drawings, circuitry designs, manufacturing scaling strategies, custom-fit ear technology, and negative know-how—all tied to a single product line developed over eight years at a cost exceeding $60 million. FAC ¶¶ 19, 148, 305, 322. Then, unlike every case Defendants cite, the FAC connects those trade secrets to a detailed factual narrative of misappropriation. FAC ¶¶ 106–119, 135–140. The FAC further alleges how those trade secrets were used: io Products—which was in the "early stages of ideation" in June 2024 and lacked even a 3D printer—announced a working prototype approximately ten months later, compressing what took IYO eight years into less than one. FAC ¶¶ 147–149, 157. These are precisely the kind of specific, concrete allegations of the "who, what, when, where, and how" that were absent in every case Defendants cite and that satisfy the *Quintara* pleading standard.

In this motion, Defendants continually ask the Court to resolve factual disputes—about secrecy, public disclosure, and independent development—that the Ninth Circuit has squarely held are not appropriate for resolution on a motion to dismiss. *See Quintara*, 149 F.4th at 1087–89. Because the FAC plausibly alleges protectable trade secrets with sufficient particularity, dismissal

---

[6] *See, e.g.*, *Vox Network Solutions, Inc. v. Gage Techs., Inc.*, 2024 WL 1260573, at *4 (N.D. Cal. Mar. 25, 2024) ("Vox does not allege . . . what information the Individual Defendants allegedly shared with Gage, or even point to any allegations that the Individual Defendants accessed or downloaded any documents containing trade secrets."); *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, 2018 WL 2298500, at *3 (N.D. Cal. May 21, 2018) (finding "no allegation that any of the defendants acquired, disclosed, or used any such information"); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018) (complaint failed to "sufficiently delineate timelines of the alleged acts of misappropriation"); *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) (finding it "impossible" for the court "to determine where trade secret protection begins and ends" because plaintiff's "vague references to an enormous array of potential sources do not suffice"); *Teradata Corp. v. SAP SE*, 2018 WL 6528009, at *4 (N.D. Cal. Dec. 12, 2018) ("[T]here are no allegations suggesting what the proprietary information regarding optimization was, or how or why it is proprietary besides simply being labeled a trade secret."); *CleanFish, LLC v. Sims*, 2020 WL 4732192, at *4 (N.D. Cal. Aug. 14, 2020) (finding purported trade secrets "indistinguishable from matters of general knowledge within the parties' industry" and the "including but not limited to" language made it "impossible to ascertain any boundaries within which the secret lies"); *P2i Ltd. v. Favored Tech USA Corp.*, 2024 WL 4294652, at *4 (N.D. Cal. Sept. 24, 2024) (dismissing after three attempts to amend because allegations still provided only "too general an overview" and "many of these categories" were publicly available in P2i's own patents); *Nat'l Specialty Pharm., LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (finding descriptions of "vendor and partner information, proprietary formulas, business processes, pricing strategies" merely "'catchall' categories of the *kinds* of trade secrets that might be at issue" and allegations were "too vague to state a claim").

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. ATTORNEYS AT LAW

- 18 -

should be denied. To the extent the Court disagrees, IYO requests leave to amend.

### iii.    The FAC Adequately Alleges Misappropriation

Defendants' misappropriation arguments fail for the same reason: they ask the Court to resolve contested factual issues and credit Defendants' explanations over IYO's well-pleaded allegations. At the pleading stage, IYO need only allege facts giving rise to a plausible inference that Defendants acquired, disclosed, or used its trade secrets through improper means. The FAC does that. Specifically, the FAC alleges that Tan obtained IYO's trade secrets by improper means, from a then-current employee of IYO, who Tan knew was under a duty not to disclose IYO's trade secret information. *See* 18 U.S.C. § 1839(5) (misappropriation includes acquisition of a trade secret by a person who knows or has reason to know it was acquired by improper means, as well as disclosure or use of a trade secret without consent).[7]

Direct evidence of such misappropriation is not required at the pleading stage; circumstantial allegations and reasonable inferences suffice. *CelLink Corp. v. Manaflex LLC*, 2025 WL 1993517, at *8 (N.D. Cal. July 17, 2025) (holding that allegations of access to confidential information followed by use of similar technology "make the inference of misappropriation plausible," and collecting cases recognizing that circumstantial evidence of access plus similarity is sufficient at the Rule 12 stage (citation omitted)). Indeed, as the Ninth Circuit has cautioned, trade secret plaintiffs are not required to plead facts that can only be confirmed through discovery. *Quintara*, 149 F.4th at 1088–89. That principle applies with full force here, where Defendants possess the evidence concerning how their technology was developed and what data they used, and have stonewalled all discovery.

Courts in this District routinely deny dismissal where plaintiffs allege access to trade secrets followed by the rapid development of competing technology. *CelLink*, 2025 WL 1993517, at *8 (access plus later release of similar product is enough; collecting cases); *Beluca*, 660 F. Supp. 3d at 910–11 (allegation defendant received confidential materials subject to duties of confidentiality and used them to advance a competing business strategy are sufficient to plead misappropriation).

---

[7] This is not a case of vicarious or derivative liability and thus, Defendants' reliance on *Alert Enterprises, Inc. v. Rana*, 2023 WL 2541353, at *3 (N.D. Cal. Mar. 16, 2023) is unavailing.

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

The FAC alleges precisely this type of access-plus-use scenario. IYO alleges that Defendants received IYO's confidential technical information from IYO's former engineer and that Defendants thereafter incorporated that information into their competing technology. FAC ¶¶ 6–7, 15, 46–49, 105–119, 149–157, 310–311, 328–329. Defendants' insistence that they could not have known the information was confidential, or that they independently developed their technology, is beside the point at this stage. As courts have repeatedly held, "[t]hese are disputed questions of fact that are not appropriate to address at this stage." *Beluca*, 660 F. Supp. 3d at 911. Indeed, allowing defendants to defeat misappropriation claims on the pleadings by asserting independent development would improperly convert Rule 12 into a summary-judgment mechanism—particularly where, as here, Defendants have refused to produce discovery on those issues.

Defendants' reliance on *Lamont v. Krane*, and *x.AI Corp. v. OpenAI, Inc.*, is misplaced. In *Lamont*, the plaintiff's own CPA voluntarily shared a business plan with the defendant—a scenario in which it was reasonable for the recipient to assume the disclosure was authorized. 2019 WL 2113903 at *4 (N.D. Cal. May 14, 2019). The FAC does not support a similar assumption. Here, Sargent downloaded 33 files shortly before the meeting, exported 17 CAD files to a cross-platform format that IYO did not use, gave files gibberish names to disguise their contents, and then met Tan at a dinner where he shared physical prototypes and confidential design information for approximately two hours. FAC ¶¶ 105–119, 128–129. These are not the hallmarks of an authorized disclosure—they are textbook indicia of surreptitious misappropriation that any reasonable person, let alone a 24-year Apple veteran and Vice President of Product Design, like Tan (FAC ¶ 44), would recognize as improper. Defendants' suggestion that Tan could have innocently assumed Sargent was authorized to share because IYO had publicly demonstrated its product in a TED talk is contrary to the FAC and conflates public marketing with disclosure of the product's confidential designs, schematics, circuitry, and manufacturing processes—none of which were revealed in the TED talk or on IYO's website. *x.AI* is similarly distinguishable because there the plaintiff did not allege the detailed factual narrative of extraction, obfuscation, and transfer that the FAC here provides. 2026 WL 506302 at *6 (N.D. Cal. Feb. 24, 2026). Finally, the fact that the meeting occurred at a restaurant does not negate knowledge—if anything, Sargent's choice of a public venue

to share physical prototypes and confidential files (rather than a formal business setting under NDA) should have heightened, not diminished, Tan's awareness that the disclosure was unauthorized. In any event, these are quintessential factual issues inappropriate for resolution here. *Quintara*, 149 F.4th at 1088–89.

The cases Defendants cite (at 31) for the proposition that fast product development is not enough to plausibly allege misappropriation are unavailing because each involved speculative, inference-driven pleading that lacked contemporaneous knowledge, concrete acts of disclosure or use, or a temporal nexus between access and exploitation.[8] Here, by contrast, the FAC affirmatively pleads contemporaneous knowledge and intent: Tan "understood the sensitive and proprietary nature of CAD drawings" and "knew or should have known" Sargent was prohibited from disclosing IYO's confidential information (FAC ¶¶ 46–47), yet nonetheless "personally orchestrated the extraction of IYO's trade secrets" while Sargent was still employed by IYO (FAC ¶ 49), and used that information "without [IYO's] express or implied consent" to accelerate development (FAC ¶¶ 310–311, 328–329). Unlike the multi-year gaps between access and exploitation present in *M/A-COM*, *Xsolla*, and *GMH*, the FAC alleges a tight temporal nexus: Sargent downloaded trade secret files in the days just before meeting with Tan on June 6, 2024, and io Products—which was in the "early stages of ideation" and lacked even a 3D printer at that time—announced a working prototype only 10-11 months later (FAC ¶¶ 6–7, 105–119, 149–157).

Taking the FAC's allegations as true—as the Court must—IYO has plausibly alleged that Defendants acquired, disclosed, and used IYO's trade secrets through improper means. Defendants' contrary narrative, which attempts to minimize the significance of Defendants' rapid development

---

[8] *See MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1114 (N.D. Cal. 2012) (dismissing where plaintiff failed to allege defendant knew at time it began acquiring technology that the third party's disclosure was improper, in part because the parties' licensing relationship "for years" plausibly obscured notice); *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *10 (C.D. Cal. Sept. 23, 2019) (dismissing misappropriation theory that failed to assert "how the misappropriation occurred, when it occurred and what was misappropriated"); *Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 4131419, at *9–10 (C.D. Cal. Sept. 10, 2024) (dismissing complaint where allegations were based "on information and belief" and similar features alone, without concrete acts of acquisition or disclosure); *GMH Capital Partners v. Fitts*, 2025 WL 950674, at *9–11 (S.D.N.Y. Mar. 28, 2025) (dismissing "purely speculative" argument where timeline left multi-year windows for lawful independent development and complaint lacked specific allegations of when, how, or by whom trade secrets were actually acquired or used).

by pointing to their resources and expertise, raises factual defenses to be tested through discovery, not grounds for dismissal. *CelLink*, 2025 WL 1993517, at *8; *Beluca*, 660 F. Supp. 3d at 911. To the extent the Court disagrees, IYO requests leave to amend.

### F.    The *Colorado* Abstention Doctrine is Inapplicable Here

Defendants' assertion (at 32-35) that the Court should dismiss or stay this case under the *Colorado River* doctrine should be rejected. "[T]he *Colorado River* doctrine is a narrow exception to 'the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). It applies only in "exceptional circumstances," *id.*, and is inapplicable when "the state court proceedings will not resolve the entire case before the federal court." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1204 (9th Cir. 2021). Any doubt about its applicability must be resolved against application given the "strong presumption" against abstention. *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017).

Here, Defendants cannot meet their threshold burden of showing that the claims and parties are substantially similar; but even if they could, none of the factors favor abstention.

### i.    The Claims and Parties are Not "Substantially Similar"

The *Colorado River* doctrine does not apply if the state action is not "sufficiently similar to the federal proceedings to provide relief for ***all*** of the parties' claims." *State Water*, 988 F.3d at 1204 (emphasis added) (citation omitted). Proceedings are only "sufficiently similar" when "substantially the same parties are contemporaneously litigating substantially the same issues." *Wilson Util. Constr. Co. v. Am. Zurich Ins. Co.*, 2026 WL 465943, at *3 (C.D. Cal. Jan. 9, 2026).

That prerequisite is absent here. The state action names Dan Sargent, a former IYO employee, and ten unnamed DOE defendants; this case involves an entirely different group of defendants. As such, the state court cannot possibly provide "relief for all of the parties' claims." *State Water*, 988 F.3d at 1204 (citation omitted). Defendants' attempt to bridge the party disparity by guessing that they are the unnamed Doe defendants fails. The unnamed Doe defendants are procedural placeholders under CCP § 447. They have not been identified, served, or otherwise brought into the litigation and as such, they are not "contemporaneously litigating" anything as

*Colorado River* requires. Being mentioned in the complaint is not the same thing as being a party subject to judgment. Only IYO can substitute named defendants for Does; Defendants cannot unilaterally declare themselves to be the Does to manufacture the "substantially similar parties" prerequisite. Their decision to fund Sargent's defense—while certainly suspicious—does not change this analysis because it does not make them parties to the state action. The cases Defendants cite are inapposite: both *Goodin* and *Nakash* involved identically named parties, not speculative overlap with unnamed Does.[9] *See Bus. Sols., LLC v. Ganatra*, 2019 WL 926351, at *4–5 (C.D. Cal. Jan. 7, 2019) (piecemeal-litigation factor weighed against abstention where federal defendants were not party to state action).

Nor do the two actions involve substantially the same issues. This case asserts trademark infringement claims that are entirely absent from the state action, along with tortious interference and federal DTSA claims not present in the state suit. *State Water*, 988 F.3d at 1204, 1206 ("There is a strong presumption that the presence of an additional claim in the federal suit means that *Colorado River* is inapplicable."). Defendants' myopic focus on the trade secret claims ignores that partial stays under *Colorado River* "are permissible only in very limited circumstances, namely when there is strong evidence of forum shopping." *Id.* at 1209. Defendants neither make nor acknowledge that heightened requirement. *Id.* at 1208 (rejecting abstention even though state court "might also adjudicate some of the [federal court] claims"); *S. Nat. Res. v. Nations Energy Sols.*, 2021 WL 4072664, at *4 (S.D. Cal. May 6, 2021) ("[T]his case involves claims that the [] state proceeding does not entail: the misappropriation of trade secrets and the independent claims against the Bergstrom defendants. And according to the Ninth Circuit, '[t]here is a strong presumption that the presence of an additional claim in the federal suit means that *Colorado River* is inapplicable.'" (quoting *State Water*, 988 F.3d at 1206)).

Because "the state court proceedings will not resolve the entire case before the federal

---

[9] *Goodin v. Vendley*, 356 F. Supp. 3d 935, 944 (N.D. Cal. 2018) (involving identical parties and misconduct, leading even plaintiffs to concede that "the factual basis for these claims is identical"); *Nakash v. Marciano*, 882 F.2d 1411, 1416-17 (9th Cir. 1989) (involving federal "spin-off" of state proceeding with same parties challenging same dispute with "the only difference [being] the absence of all of the corporate entities owned and operated by the parties").

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

court," *Colorado River* does not apply. *State Water*, 988 F.3d at 1204.

### ii.    None of the *Colorado River* Factors Favor Abstention

Even if *Colorado River* somehow applied (it does not), all factors weigh against abstention.[10] Defendants erroneously analyze these factors solely through the lens of the trade secret claims (Counts 7–9), completely ignoring the trademark claims (Counts 1–5). But *Colorado River* turns on whether the state proceeding can "resolve the ***entire*** case before the federal court." *State Water*, 988 F.3d at 1204 (emphasis added). As such, Defendants' analysis should be rejected.

Regardless, none of the factors favor abstention. ***Factors 1–3***—property location, convenience, and avoiding piecemeal litigation—do not support abstention because no property is at issue, both forums are convenient, and there is little risk of piecemeal litigation given the sharp differences in parties and issues between the two cases. *See Ganatra*, 2019 WL 926351, at \*4–5 (C.D. Cal. Jan. 7, 2019) (factor weighed against abstention where federal defendants were not party to state action). Defendants' sole authority, *Mendocino Ry. v. Ainsworth*, is readily distinguishable as both cases there faced the same dispositive legal question, creating "almost guaranteed duplication of judicial effort" and a risk of contradictory outcomes. 113 F.4th 1181, 1189 (9th Cir. 2024). Here, however, the federal claims and legal questions raised are not present in the state case, eliminating any risk of contradictory rulings on the same issue.

***Factor 4*** (which forum obtained jurisdiction first) also weighs strongly against abstention because this case was filed first and this Court has already issued a TRO affirmed on appeal by the Ninth Circuit, and a preliminary-injunction hearing is imminent. Meanwhile, the later-filed state action is stayed pending appeal and has not reached the merits. *See Seneca*, 862 F.3d at 843 ("[i]n determining the order in which the state and federal courts obtained jurisdiction, district courts" do not just "compare filing dates, but [also] analyze the progress made in each case 'in a pragmatic, flexible manner with a view to the realities of the case at hand'").

***Factors 5 and 6*** (whether state or federal law applies and adequacy of state forum to protect rights) weigh against abstention because this case includes multiple federal claims alongside routine state-law claims. *See Coldwell Solar, Inc. v. ACIP Energy Ltd. Liab. Co.*, 2021 WL 3857981, at \*7

---

[10] Neutral factors favor IYO given the presumption against abstention. *Seneca*, 862 F.3d at 842.

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

(E.D. Cal. Aug. 26, 2021) (finding rule of decision factor weighed against stay given that CUTSA and tortious interference claims "are not complex"); *see also Siva Enters. v. Ott*, 2018 WL 6844714, at *6 (C.D. Cal. Nov. 5, 2018) (finding adequacy of state forum factor weighed against abstention due to newly asserted federal claims).

*Factor 7* (forum shopping) likewise favors IYO because IYO filed the FAC in response to a motion to dismiss "to bring previously unasserted claims in federal court" against different defendants. *Seneca*, 862 F.3d at 846 (citation omitted) (finding no forum shopping despite plaintiff amending complaint "repeatedly in response to . . . motions to dismiss" as record lacked evidence of "manipulat[ing] the litigation or behav[ing] vexatiously to wind up in the forum of its choosing"). The cases that Defendants cite for this factor are unavailing because they reflect obvious gamesmanship where a party sought to relitigate issues in federal court that the state court had already expressly rejected.[11] The facts here are nothing like those cases. Here, IYO timely amended in response to a motion to dismiss, raised no similar issues, named completely different defendants, and did not file the FAC in response to any state ruling.

Finally, *Factor 8* (whether state case will resolve all issues in federal case) independently bars abstention. The state court cannot resolve claims not before it, including the DTSA, tortious interference, and trademark-related claims asserted here, against Defendants who are not parties to the state action. Nor can it resolve the CUTSA claim asserted against unrelated parties. Defendants' argument also erroneously relies on dismissal of the trademark claims – which cannot be dismissed as moot, as discussed above. Their argument also fails to explain how trade-secret claims against Sargent could dispose of the distinct claims asserted in this action against different defendants.

In sum, all factors weigh against or completely bar the application of the *Colorado River* doctrine and the Court should not dismiss or stay this action.

## V.    CONCLUSION

The Court should deny Defendants' motion to strike or dismiss, in its entirety.

---

[11] *Mendocino*, 113 F.4th at 1190 (plaintiff filed federal suit only after seeking to disqualify state judge after adverse ruling, attempting to remove case to federal court, and reasserting argument rejected on demurrer); *Hua v. Ass'n of Apartment Owners of Waikiki Banyan*, 2025 WL 473502, at *6–7 (D. Haw. Feb. 12, 2025) (plaintiff filed federal action in which no federal claims were asserted shortly after adverse state-court ruling on issues already pending on state appeal).

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 25 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS

Dated:  April 10, 2026

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: *Andrew D. Skale*_____
Andrew D. Skale (211096)
Micha Danzig (177923)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

*Attorneys for Plaintiff IYO Inc.*

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 26 -

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISMISS