QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

*Attorneys for Defendants io Products, Inc.,
OpenAI, Inc., OpenAI, LLC, and Sam Altman*

JONES DAY
David Kiernan (Bar No. 215335)
dkiernan@jonesday.com
555 California Street 26th Floor
San Francisco, California 94104
Telephone:     (415) 875-5745

Meredith Wilkes (admitted *pro hac vice*)
mwilkes@jonesday.com
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone     (216) 586-7231

*Attorneys for Defendant Sir Jonathan Paul Ive*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IYO, INC.<br><br>    Plaintiff,<br><br>  v.<br><br>IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE,<br><br>    Defendants. | Case No. 3:25-cv-4861-TLT<br><br>**DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING (ECF NO. 136)** |

Pursuant to the Court's Order (ECF 136), Defendants io Products, Inc., OpenAI, Inc., OpenAI, LLC, Sam Altman, and Sir Jonathan Paul Ive hereby provide the following response to the Court's Questions for Hearing.

**I.      Response To Point 2: "The Court recognizes the Defendants' cessation of use of the mark raised in the Opposition. ECF 121."**

Defendants appreciate the Court's recognition that they have no intent to use "io" as a mark, but point out that "cessation" is not the correct term for Defendants' position because Defendants have not agreed to "cease use of the 'io' mark"; they never used "io" in connection with the sale, offering for sale, distribution, or advertising of any goods in the first place.  *See* Opp. 7-9.  As this Court recognized, "because Defendants have not yet released a product with the disputed mark, IYO cannot allege actual infringement."  ECF 51 at 8.

**a.      Response to Point 2(a): "Arguably, if the Court grants the motion, explain the necessary harm Defendants would suffer."**

Defendants note that the *Winter* element of irreparable harm applies only to harm to Plaintiff, and Plaintiff bears the burden to show it is satisfied.  Plaintiff cannot establish its burden by showing Defendant will not be harmed by an injunction.  However, for purposes of assessing the balance of hardships if the Court grants the motion, Defendants would face the following hardships:

*1. The injunction would hinder Defendants' ability to compete in the marketplace by forbidding them from using the term "io" in its non-trademark sense or otherwise engaging in classic fair uses of the term.*  As described in prior submissions, the term "io" is widely used in the technology industry to refer to input and output.  These uses include references in definitions of computer terms (ECF 30-7 at 3) and uses as a domain extension (*see* ECF 123-20; ECF 30-7 at 49-65).  Indeed, ".io" is one of the ten most popular domain extensions of 2026 and is "popular with software, gaming, and tech startups for its modern digital appeal."  ECF 123-20 at 4.  Due to this common association, it is widely used in technology software and hardware involving input and output aspects.  ECF 123-3 at 2; *see* ECF 30-7 at 3, 7, 25, 32, 49, 59.  Indeed, this ubiquity contributed to OpenAI's decision to not use the name for its hardware products given what a

DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING

crowded field it would have to try to distinguish itself in. *See* ECF 123-1 ¶ 2; ECF 126-5 at 51-52; 126-6 at 56-57.

Although Defendants do not seek to carve out any ability to use "io" as part of a name of any product, or family of products, they should be allowed to use the term "io" to describe the functionality of any such products if they deem it necessary to do so. The Lanham Act specifically allows terms, even those identical or substantially similar to those of registered trademarks, to be used consistent with their understood meanings to describe goods and services. *See, e.g.*, 15 U.S.C. § 1115(b)(4); *KP Permanent Make-Up v. Lasting Impression I, Inc.*, 543 U.S. 111, 122-123 (2004); *see also U.S.P.T.O. v. Booking.com B. V.*, 591 U.S. 549, 562-63 (2020) (because "trademark law hems in the scope of [descriptive] marks … federal registration of 'Booking.com' would not prevent competitors from using the word 'booking' to describe their own services"). If iyO's proposed order were entered, it would facially prohibit such fair uses, including Defendants' ability to purchase a ".io" domain extension for their eventual new brand. *See* Opp. 25. This would be inequitable. As Defendants showed in the Opposition—and Plaintiff did not dispute on Reply—there is no plausible scenario in which Defendants' mere use of a ".io" domain extension would result in consumer confusion or investor concern, and even though Defendants use the domain chatgpt.io, Plaintiff has never challenged it. *Id*.

Defendants do not intend to go out of their way to use "io" even in its descriptive sense, much less as a mark, but it would impose an unnecessary, and unlawful, hardship if Defendants were forbidden, for example, from referring to devices' "i/o capabilities" or announcing a new collaboration at Google's long-running "I/O" conference (*see* ECF 30-7). It would be impractical to catalog all such permissible uses in advance. Accordingly, any injunctive relief not limited to use as a trademark is likely to impose a hardship by burdening Defendants' ability to legitimately use "io" or "I/O" in a fair descriptive sense.

Even beyond immediate hardships to Defendants, an injunction of the scope Plaintiff seeks could chill third parties' legitimate use of the term "io," both descriptively and as a product or business name. "[T]he public's right to use language and imagery for descriptive purposes is not defeated by the claims of a trademark owner to exclusivity." *Car-Freshner Corp. v. S.C. Johnson*

DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING

*& Son, Inc.*, 70 F.3d 267, 268 (2d Cir. 1995); *see also Booking.com BV v. US Patent & Trademark Office*, 915 F. 3d 171, 176 (4th Cir. 2017), *aff'd*, 591 U.S. 549 (2020) ("protecting the linguistic commons by preventing exclusive use of terms that represent their common meaning" is one of the "twin objectives" of trademark law).  This is no idle concern:  As the initial office actions refusing registration of "io" on likelihood of confusion grounds (not due to Plaintiff's mark) show, third parties have used "io" even as a trademark—in a similar space to the one in which Defendants operate.  *See, e.g.*, ECF 126-6 at 57 (listing seven registrations); *id*. at 66-76 (showing examples of third-party use); *see also* ECF 30 ¶ 7; ECF 30-7 (showing that existing companies market headphones under the names "Dali IO" and "IOGear").

     *2. The injunction would prevent Defendants from engaging in legitimate comparative advertising.*  The nominative fair use doctrine of trademark law allows parties to use the registered trademarks of others, even of competitors, to refer to those trademarked goods.  *See, e.g., New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 308 (9th Cir. 1992).  This enables, among other things, comparative advertising, which "is a source of important information to consumers and assists them in making rational purchase decisions." *Sony Comput. Entm't Am., Inc. v. Bleem*, LLC, 214 F.3d 1022, 1027 (9th Cir. 2000) (quoting 16 C.F.R. § 14.15(c) (1980)).  By its terms, the injunction Plaintiff seeks would prohibit Defendants from using the "iyO" term to describe *Plaintiff's* product for purposes of truthful comparative advertising.

     To be sure, at this time, the need for such comparative advertising seems unlikely, particularly considering that Plaintiff's product may never be released, and even if it were to be, would be in a different product category than Defendants' initial hardware offerings, is "expensive," requires an "uncomfortable" custom fitting, and otherwise appears dissimilar.  *See* Opp. 11-13.  But assuming the Court finds the parties' goods are competitive, this conclusion would necessarily suggest that the parties may want to pursue comparative advertising.  An injunction that bars Defendants from doing so, while allowing Plaintiff to do so, would both create a hardship upon Defendants and be against the public's interest in obtaining valuable commercial information by restricting lawful competitive advertising.

***3. The injunction would harm Defendants' reputation.***   A preliminary injunction is necessarily predicated on a finding that Plaintiff has a substantial chance of prevailing in establishing that Defendants infringed its trademark and that Plaintiff is likely to suffer immediate, irreparable injury without the Court's order.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 21 (2008).  Accordingly, an injunction would definitionally label Defendants as infringers and send the message that the Court does not believe Defendants' statements, made under penalty of perjury, that they have no intent to use "io" as a trademark.  *See* ECF 123-1.  The reputational harm from being labeled an "infringer" and untrustworthy without the benefit of full discovery and a trial on the merits is a cognizable hardship.  *See CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1080 (N.D. Cal. 1998).  And is not merely hypothetical given Plaintiff's weaponization of this litigation for publicity purposes.  ECF 79-3.

***4. An injunction would distort the voluntary cessation doctrine and the contours of trademark law.***  Were the Court to credit iyO's argument on voluntary cessation—that Defendants have done less than defendants in other voluntary cessation cases (Reply 4-5)—this would set an untenable precedent.  As Defendants have consistently maintained, the voluntary cessation doctrine should not apply here at all, because Defendants never have sold or advertised any product under the "io" mark; there was no infringing conduct to cease.  But even if iyO were correct that the merger announcement constituted infringement, the alleged "infringing" activity amounted to nothing more than a single statement and video posted for less than one month—one that identified no specific product, proposed no commercial transaction, and gave no indication of how any future product would be sold or marketed.  There were no allegedly infringing products, packaging, or printed marketing pamphlets to destroy.  Accepting iyO's argument would lead to an anomalous result: parties who posted a single website post could not defeat injunctive relief as long as they retained the ability to post content on a website, while parties who extensively manufactured and sold infringing goods and caused actual marketplace confusion could defeat injunctive relief simply by destroying their remaining inventory.  That outcome defies logic and equitable principles.

Defendants have done everything reasonably in their power to demonstrate that they will not use the name "io" in commerce.  Their May 21, 2025 announcement has been removed for months.

DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING

They have unequivocally and publicly declared—under penalty of perjury—that they will not use "io" as a name for any artificial intelligence hardware.  They offered to stipulate to an extension of the TRO.  And, as discussed below, they have wholly abandoned the "io" trademark applications, regardless of whether they covered artificial intelligence hardware or not.  No more can reasonably be asked of them.

**5. *An injunction would continue to expose Defendants to baseless contempt motions.*** Despite Defendants' active, good-faith efforts to comply with—and indeed exceed—the TRO's requirements, iyO filed a baseless contempt motion, without any prior meet and confer.  ECF 67, 91, 79-2 ¶¶ 2-3.  The Court denied the contempt motion in its entirety on multiple independent grounds, finding that Defendants' interpretation of the TRO was correct and that even under iyO's interpretation, Defendants had achieved substantial compliance.  ECF 91 at 5-10.  Nevertheless, defending against the contempt motion and preparing for the associated hearing required Defendants to incur substantial attorneys' fees and costs.  Because the Court did not require a bond, Defendants cannot recoup these amounts even if a trier of fact ultimately determines that no confusion was likely. *Consumer Fin. Prot. Bureau v. Howard*, 2017 WL 10378954, at *3 (C.D. Cal. Oct. 13, 2017) ("[B]lackletter federal law provides that '[a] party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond.'").  As such, the fees and costs required to prevail on the motion are irreparable.  A new injunction would extend Defendants' exposure to further baseless, but costly and distracting, contempt motions.

**II.     Response To Point II (a): "The Court reviewed the response to the discovery request and based on the objection, the Court views that there is a reasonable argument and possibility that Defendant is going to use the mark. ECF 126 at 8; Exhibits F–M. If the Court's view is improper, explain why."**

There is no reasonable argument or possibility that Defendants are going to use "io" as a mark.  Defendants appreciate the opportunity to clarify the record regarding the trademark applications that iyO raised for the first time on reply (Exhibits F – M of the March 27, 2026 Skale Declaration), despite having obvious knowledge of them earlier, as evidenced by the discovery it served on February 18, 2026. *See* ECF 126-4 at 5-9.  The applications have all now been abandoned

DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING

and do not contradict, rebut, or otherwise call into question the truthfulness of Defendants' statements, made under penalty of perjury, that they have no intent to use "io" as a trademark. *See* Caruso Decl., Exs. A-H.

**Background.**  All eight of the applications Plaintiff raised were filed on an "intent to use" basis. *See* ECF 126-5 at 4; ECF 126-6 at 4; ECF 126-7 at 4, ECF 126-8 at 3, ECF 126-9 at 3, ECF 126-10 at 3, ECF 126-11 at 3, ECF 126-12 at 3.  As Defendants explained in their Opposition, in connection with explaining the timeline of iyO's acquisition of rights, the filing of an intent-to-use application does not confer immediate trademark rights.  Opp. 21 (citing *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1052 (9th Cir. 1999)) ("[A]n intent to use a mark creates no rights a competitor is bound to respect.") (internal citation omitted).  Those only arise upon ***actual*** use in commerce.

In November 2023, more than a year and a half before this lawsuit began, io Products, Inc. filed two trademark registration applications concerning this name: one for a standard character word mark and one for a stylized word mark.  ECF 126-5 at 2; ECF 126-6 at 2.  For competitive reasons, these trademark applications were filed through an affiliate.  At the time, io Products, Inc. was considering a wide range of potential products. *See, e.g.*, ECF 26 ¶ 4.  The registrations therefore covered a broad range of goods, including many products with no connection to AI hardware whatsoever, such as "[m]usical instruments…," "[f]inancial, monetary and banking services," and "[g]ames and playthings, namely, boardgames; [a]rcade-type electronic video games… ."  ECF 126-8 at 3; ECF 126-11 at 2.

Between November 2023 and February 2026—when Defendants decided not to use the "io" name—the initial two applications were divided into a total of eight applications, each covering only a subset of this initial, broad set of goods (as occasionally amended or modified during prosecution). *See* ECF 126-5 at 72, *id.* at 10; ECF 126-6 at 78; *id.* at 10.  The original applications, assigned Serial No. 98275753 (stylized) and No. 98276003 (standard character), retained the category most relevant to this litigation: "[c]omputers; computer hardware; handheld computers . . . downloadable computer software that provides a user interface for interacting with artificial intelligence models

. . .”  ECF 126-5 at 2-3; ECF 126-6 at 2-3.[1]  *Compare* ECF 96 at 6 (construing the TRO to cover “products that are sufficiently similar to IYO’s AI-based ‘audio computer,’” and noting “[t]he TRO would not encompass . . . unrelated products”).  Two other applications, assigned Serial Nos. 98977421 (stylized) and 98977426 (standard character), generally described design services that could relate to artificial intelligence and/or hardware products.  ECF 126-10 at 2-3; ECF 126-12 at 2-3.  The four remaining applications covered goods and services with no necessary connection to artificial intelligence or relevant hardware, let alone both.  The applications assigned Serial Nos. 98975630 (stylized) and 98975624 (standard character) each described six categories of goods: “[m]ultifunctional electronic wellness devices, namely, health, fitness, exercise, and wellness sensors . . . ,” “[p]recious metals and their alloys; jewellery,” “[m]usical instruments,” “[p]aper and cardboard . . . printed publications . . .  in the fields of science, technology, artificial intelligence, history, news and entertainment,” “[g]ames and playthings, namely, boardgames; [a]rcade-type electronic video games; decorations for Christmas trees; electronic hand-held game units . . .,” and “[l]egal services . . .  [o]nline social networking services provided via downloadable mobile applications and a website; [d]ating services; online social networking services.”  ECF 126-7 at 2-3; ECF 126-8 at 2-3.  The applications assigned Serial Nos. 98977419 (stylized) and 98977424 (standard character) each described three categories: “[f]inancial, monetary and banking services,” “[r]epair, [m]aintenance, and installation of computer hardware . . . ,” and “[e]ducational and entertainment services . . . .”  ECF 126-11 at 2-3; ECF 126-9 at 2-3 (similar).

**Current Status.**  None of these applications matured into an actual registration.  Defendants never filed a statement of use in commerce for any application and, following the abandonment of all eight applications (Exs. A-H), are no longer able to.

Separate and apart from this litigation, nearly all the trademark registration applications were stalled at or around the time of Defendants’ decision not to use the “io” mark in late January 2026.  The four most relevant—the ‘753, ‘003, ‘421 and ‘426 applications—were suspended by the

---

[1]  These category listings are, in some cases, over 1,000 words long.  Defendants have attempted to provide representative examples illuminating these categories, but the quotations are not exhaustive.

DEFENDANTS’ RESPONSE TO THE COURT’S QUESTIONS FOR HEARING

USPTO in early February 2026, with the PTO stating it will not take any further action on these applications until at least August 2026.  ECF 126-5 at 6-7; ECF 126-6 at 6-7; ECF 126-10 at 5-6; ECF 126-12 at 5-6.  This suspension came after a non-final office action in 2025 that rejected these marks in view of seven other existing "io" registrations—but not Plaintiff's "iyO" registration.  ECF 126-5 at 51-52; ECF 126-6 at 56-57.  While the USPTO explicitly permitted Defendants to file a response to this suspension, Defendants took no action (*see, e.g.*, ECF 126-5 at 7), and the applications remained suspended until their abandonment.  This inactivity is entirely consistent with Defendants' intent to move away from the "io" name for their artificial intelligence hardware products.  *See* ECF 123-1 ¶ 2.

Of the remaining applications, before their abandonment, the '624 was also formally suspended.  ECF 126-7 at 6-7.  And the '419 and '424, were under office review.  ECF 126-9 at 3; ECF 126-11 at 3.  Though these applications did not pertain to use of "io" in connection with any good or service alleged or argued to be at issue in the lawsuit, Defendants had taken no recent action to prosecute these registrations.  *See* ECF 126-7 at 27 (last filing by Defendants on December 22, 2025); ECF 126-9 at 28 (October 14, 2025); ECF 126-11 at 29 (same).  They have also now all been abandoned as well.  Caruso Decl., Exs. A-H.

***The '630 application.***  With little legitimate argument that any of the foregoing seven applications reflect any ongoing intent to use "io" in commerce, iyO focuses on one final application, the '630 application.  ECF 138.  The '630 application concerns musical instruments, legal services, handheld video game devices, fitness trackers, and printed material—not any functionality Plaintiff has alleged, or argued, it offers or that would be likely to cause confusion with its offerings.  Regardless, Defendants have since abandoned the '630 application, confirming that they do not intend to use the mark.  Caruso Decl., Ex. D.

***Conclusion***.  Even if Defendants had not abandoned the applications, the mere filing of an intent-to-use application is insufficient to show that imminent use of a mark is likely; indeed, it is insufficient even to establish a case or controversy.  *E.g., Rexel, Inc. v. Rexel Int'l Trading Corp*., 540 F.Supp.2d 1154, 1161 (C.D. Cal. 2008) ("Defendant's activities with respect to the marks 'REXCELL, BEXEL, LEXCELL and LEXEL' [which included filing intent-to-use applications for

REXCELL] fall short of constituting the 'use in commerce' that is required for Plaintiffs to prevail on their infringement claims and/or establish the existence of an actual 'case or controversy' under Article III."). This remains true even where a defendant refuses to abandon its application to register a trademark. For example, in *United American Industries, Inc. v. Cumberland Packing Corp.*, the plaintiff argued "defendant 'has taken steps to begin marketing the infringing product,' as evidenced by (1) its statements that 'it was interested in acquiring the rights to the Sweet & Slender mark,' … that it 'was ready to launch a new artificial sweetener and/or sugar substitute and wanted to use the designation Sweet'n Slender as the trademark for the new product,' …; (2) its application to register Sweet'n Slender with the USPTO, … ; and (3) its refusal to withdraw its application for registration of the Sweet'n Slender mark, … ." 2007 WL 38279, at *3 (D. Ariz. Jan. 5, 2007). As the court concluded, "[w]ithout more, these expressions of intention are insufficient to constitute 'use in commerce' as required by the Lanham Act." *Id.* (dismissing trademark infringement claims).

That Defendants formally abandoned all "io" applications—including those bearing no connection to this dispute—quickly upon Plaintiff first raising any concern about the applications further underscores Defendants' commitment not to use "io" as a trademark in the future and provides yet another factual basis to deny the preliminary injunction motion. See *BIO Mgmt. Nw. Inc. v. Am. Bio Servs.*, 2022 WL 1666946, at *3 (W.D. Wash. May 3, 2022), *report and recommendation adopted*, 2022 WL 1658634 (May 25, 2022) (injunctive relief motion mooted where, inter alia, defendants formally abandoned the challenged trademark application and ceased all use of the challenged mark).

DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING

DATED:   April 13, 2026                QUINN EMANUEL URQUHART
                                       & SULLIVAN, LLP


                                       By_____/s/ Margret M. Caruso_____
                                          Margret M. Caruso
                                          *Attorneys for Defendants io Products, Inc.,*
                                          *OpenAI, Inc., OpenAI, LLC, and Sam Altman*


DATED:   April 13, 2026                JONES DAY


                                       By_____/s/ Meredith M. Wilkes_____
                                          Meredith M. Wilkes (*pro hac vice*)
                                          *Attorneys for Defendant Sir Jonathan Paul Ive*

DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS FOR HEARING

**ATTESTATION**

I, Margret M. Caruso, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(i)(3), I hereby attest that Meredith M. Wilkes has concurred in the filing of the above document.


By     */s/ Margret M. Caruso*
      Margret M. Caruso