QUINN EMANUEL URQUHART & SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (Bar No. 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Defendants*
*io Products, Inc., OpenAI, Inc., OpenAI, LLC, and Sam Altman*

JONES DAY
David Kiernan (Bar No. 215335)
dkiernan@jonesday.com
555 California Street 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5745
Meredith Wilkes (admitted *pro hac vice*)
mwilkes@jonesday.com
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone      (216) 586-7231

*Attorneys for Defendant*
*Sir Jonathan Paul Ive*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IYO, INC, | Case No. 3:25-cv-4861-TLT |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE THE AMENDED COMPLAINT, OR IN THE ALTERNATIVE, MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1) AND FED. R. CIV. P. 12(b)(6)** |
| vs. | |
| IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, SAM ALTMAN, and SIR JONATHAN PAUL IVE, | |
| Defendants. | |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................6

ARGUMENT ........................................................................................................................6

I.    THE MOTION TO STRIKE THE FAC SHOULD BE GRANTED ...................................6

II.   THE MOTION TO DISMISS SHOULD BE GRANTED ..............................................7

    A.    iyO Identifies No Valid Reason The Court Should Not Consider the
        Exhibits ...................................................................................................7

    B.    The Trademark-Based Claims Should Be Dismissed ...............................................8

        1.    iyO Identifies No Live Case or Controversy Over the Trademark
            Claims ...............................................................................................9

        2.    iyO Ignores The Inapplicability Of The Voluntary Cessation
            Doctrine .............................................................................................10

        3.    The FAC Does Not Support iyO's Past Damages Theory .........................12

    C.    The Intentional Interference Claim Cannot Survive ................................................13

        1.    iyO Identifies No Allegations That Plausibly Establish Knowledge
            of Specific Relationships ....................................................................13

        2.    iyO Identifies No Independently Wrongful Act Designed to Disrupt
            a Specific Expectancy ........................................................................14

    D.    iyO's Opposition Confirms Its Trade Secret Claims Should Be Dismissed ............15

        1.    iyO's Cited Authority Does Not Support Its Identification Of Trade
            Secrets ..............................................................................................16

        2.    iyO Does Not Dispute Its Failure To Plead Direct Misappropriation
            And It Fails to Identify Any Allegations Sufficient To Support An
            Indirect Claim ...................................................................................17

III.  THE COURT SHOULD INVOKE THE *COLORADO RIVER* DOCTRINE ......................19

IV.   CONCLUSION ....................................................................................................20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Already v. Nike, Inc.*,
    568 U.S. 85 (2013) ........................................................................................ 8, 9, 10

*Applied Medical Distribution Corp. v. Ah Sung International, Inc.*,
    2015 WL 12910908 (C.D. Cal. Dec. 14, 2015) ...................................................... 14

*Askins v. U.S. Department of Homeland Security*,
    899 F.3d 1035 (9th Cir. 2018)................................................................................ 9

*Beluca Ventures LLC v. Einride Aktiebolag*,
    660 F. Supp. 3d 898 (N.D. Cal. 2023) .............................................................. 15, 16

*BIO Management Northwest Inc. v. American Bio Services*,
    2022 WL 1666946 (W.D. Wash. May 3, 2022)...................................................... 11

*Campbell v. Wood*,
    18 F.3d 662 (9th Cir. 1994)..................................................................................... 6

*Cellars v. Pacific Coast Packaging, Inc.*,
    189 F.R.D. 575 (N.D. Cal. 1999) ......................................................................... 14

*CelLink Corp. v. Manaflex LLC*,
    2025 WL 1069893 (N.D. Cal. Apr. 9, 2025) .................................................... 17, 18

*CelLink Corp. v. Manaflex LLC*,
    2025 WL 1993517 (N.D. Cal. July 17, 2025)................................................... 15, 16

*Creative Writer Software, LLC v. Schechter*,
    2024 WL 1098759 (C.D. Cal. Feb. 8, 2024)......................................................... 16

*Center for Biological Diversity v. Salazar*,
    706 F.3d 1085 (9th Cir. 2013).............................................................................. 9

*Ernest v. Runnels*,
    2007 WL 3146947 (N.D. Cal. Oct. 25, 2007), *aff'd,* 388 F. App'x 719 (9th Cir.
    2010)....................................................................................................................... 7

*GMH Capital Partners v. Fitts*,
    2025 WL 950674, at *3 (S.D.N.Y. Mar. 28, 2025)............................................... 18

*Google LLC v. Point Financial, Inc.*,
    2026 WL 579462 (N.D. Cal. Mar. 2, 2026) .................................................... 16, 17

*Hedrick v. County of Ventura*,
    2014 WL 12967548 (C.D. Cal. Nov. 10, 2014)................................................... 18

REPLY ISO DEFENDANTS' MOTION TO STRIKE OR DISMISS

*Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*,
   2012 WL 2572065 (N.D. Cal. July 2, 2012) ................................................................ 14

*Infectolab Americas LLC v. ArminLabs GmbH*,
   2021 WL 292182 (N.D. Cal. Jan. 28, 2021) ............................................................... 13

*Lamont v. Krane*,
   2019 WL 2113903 (N.D. Cal. May 14, 2019) ............................................................ 18

*LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*,
   124 F.4th 1122 (9th Cir. 2024)..................................................................................... 12

*M/A-COM Technology Solutions, Inc. v. Litrinium, Inc.*,
   2019 WL 6655274 (C.D. Cal. Sept. 23, 2019)............................................................. 18

*Oracle America, Inc. v. Cedarcrestone, Inc.*,
   2013 WL 3243885 (N.D. Cal. June 26, 2013) ............................................................. 14

*Overhill Farms, Inc. v. Lopez*,
   190 Cal. App. 4th 1248 (2010)................................................................................ 14, 15

*Quintara BioSciences, Inc. v. Ruifeng Biztech, Inc.*,
   149 F. 4th 1081 (9th Cir. 2025).................................................................................... 16

*Reckstin Family Trust v. C3 AI, Inc.*,
   2026 WL 694486 (N.D. Cal. Mar. 12, 2026) ................................................................. 8

*Schneider v. California Dep't of Corr.*,
   151 F.3d 1194 (9th Cir. 1998)...................................................................................... 13

*Security & Exchange Commission v. Alexander*,
   115 F. Supp. 3d 1071 (N.D. Cal. 2015) ...................................................................... 20

*Swipe & Bite, Inc. v. Chow*,
   147 F. Supp. 3d 924 (N.D. Cal. 2015) ........................................................................ 13

*Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*,
   445 F. Supp. 3d 139 (N.D. Cal. 2020) .......................................................................... 8

*Tranik Enterprises, Inc. v. Fulda*,
   2017 WL 11150925 (C.D. Cal. Mar. 7, 2017) ............................................................. 12

*United States v. Mezzanato*,
   513 U.S. 196 (1995) ....................................................................................................... 7

*United States v. State Water Resources Control Board*,
   988 F.3d 1194 (9th Cir. 2021)...................................................................................... 20

*Vox Network Solutions, Inc. v. Gage Technologies, Inc.*,
   2024 WL 1260573 (N.D. Cal. Mar. 25, 2024) ............................................................ 15

*WeWork Companies Inc. v. WePlus (Shanghai) Technology Co.*,
   2020 WL 83845 (N.D. Cal. Jan. 7, 2020) ................................................................. 9, 10, 11, 12

*Williamson v. Reinalt-Thomas Corp.*,
   2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ....................................................................... 18

*Winchester Mystery House, LLC v. Global Asylum, Inc.*,
   210 Cal. App. 4th 579 (2012).............................................................................................. 13

x.*AI Corp. v. OpenAI, Inc.*,
   2026 WL 506302 (N.D. Cal. Feb. 24, 2026)........................................................................ 19

*x.AI Corp. v. OpenAI, Inc.*,
   2026 WL 661938 (N.D. Cal. Mar. 9, 2026) .......................................................................... 19

*Yagman v. Galipo*,
   2013 WL 1287409 (C.D. Cal. Mar. 25, 2013) ................................................................. 13, 14

<u>**Statutes**</u>

Lanham Act §§ 32, 43(a), 15 U.S.C. §§ 1114, 1125(a) ............................................................. 9, 12

<u>**Other Authorities**</u>

Fed. R. Civ. P. 9(b)..................................................................................................................... 14

Fed. R. Civ. P.15(a)(1)(A)......................................................................................................... 6, 7

REPLY ISO DEFENDANTS' MOTION TO STRIKE OR DISMISS

**INTRODUCTION**

iyO's Opposition does not rescue any of its claims, which are moot or deficiently pleaded. First, it identifies no reason not to grant the Motion to Strike. iyO concedes that it agreed to an amendment deadline, repeatedly acknowledged it, moved (unsuccessfully) to have it extended, and then unilaterally disregarded it to try to extend this action after mootness became obvious. iyO offers neither authority that the right to amend was unwaivable nor explanation for why its knowing and voluntary acceptance of the Court-ordered deadline should not be enforced.

Second, the Opposition identifies no reason not to grant the Motion to Dismiss. iyO failed to offer any viable argument that the trademark claims are not moot: the "imminence" that formed the basis for this Court's jurisdiction has been conclusively refuted by Defendants' unqualified commitment not to use "io" as a trademark in connection with any AI-hardware (the sole subject of the trademark infringement claims)—or for any other products. And iyO failed to identify any allegations in the FAC that address the deficiencies the Motion identified, including an absence of plausible allegations of knowledge of any specific economic relationship for iyO's intentional interference claim, that Defendants harbored a design to disrupt one, that iyO has a protectable trade secret, or that Defendants obtained and used it. iyO does not cite a single case that supports the viability of the FAC's critically deficient claims.

iyO had nine months to plead its claims. It has not timely or adequately done so, and further amendment would be futile. The Motion should be granted with prejudice, or at minimum, the Court should abstain from further proceedings under the *Colorado River* doctrine.

**ARGUMENT**

**I.    THE MOTION TO STRIKE THE FAC SHOULD BE GRANTED**

iyO's Opposition cites no authority for its assertion that it could not waive its right to amend under Rule 15(a)(1)(A), nor any factual basis to support that it did not waive it. *See* Opp. 7. As the Motion showed, like virtually every procedural right, the right to amend is subject to waiver. Mot. 17. iyO's position that Rule 15(a)(1)(A) is unwaivable—even as "fundamental," "Constitutional" rights are waivable—is wholly unsupported. *Campbell v. Wood*, 18 F.3d 662, 671 (9th Cir. 1994).

iyO's insistence that it did not explicitly state it was waiving Rule 15(a)(1)(A) (Opp. 8) does

not resolve the issue. An express waiver is not required—only a "knowing[] and voluntar[y]" one. *United States v. Mezzanato*, 513 U.S. 196, 201 (1995); *see also Ernest v. Runnels*, 2007 WL 3146947, at *9 (N.D. Cal. Oct. 25, 2007), *aff'd,* 388 F. App'x 719 (9th Cir. 2010) (waiver of criminal defendant's Constitutional jury trial right "need not be express" to be knowing and voluntary). iyO does not argue its actions in accepting the Court-ordered deadline—or the concession it made in moving to extend that deadline—were not knowing or voluntary, nor can iyO or its sophisticated counsel plausibly claim their actions were coerced. iyO's argument that the scheduling order did not address Rule 15(a)(1)(A) fares no better. The scheduling order stated "Last Day to Amend Pleading"—without qualification—and it specifically reflected that Defendants' response to the Amended Complaint would be a motion to dismiss. ECF 78 at 2. Under iyO's theory, the Court set an amendment deadline a week shorter than the three-week window iyO claims it already had by right—without any reason to do so. That is implausible. And it is inconsistent with iyO's subsequent acknowledgments that its deadline to amend was March 6. ECF 114; ECF 116-2.

iyO's argument that Defendants have not suffered prejudice from its untimely amendment (Opp. 8-9) is incorrect. The parties negotiated a scheduling order that contemplated Defendants' motion to dismiss being heard on the same day as iyO's motion for preliminary injunction. *See* ECF 78 at 2. Had iyO amended its Complaint by March 6, that schedule remained achievable. But iyO's unilateral week-long extension prevented any reasonable chance of this occurring. Because the Court's next available hearing date is on July 28, iyO's circumvention of the deadline prolonged this action by *more than three months*.

Finally, iyO is incorrect that granting the Motion To Strike would prevent resolution on the merits (Opp. 8) because iyO can pursue its trade secret and interference claims (to the extent it is able to state them) in the pending state court trade secret action. The motion should be granted.

## II.    THE MOTION TO DISMISS SHOULD BE GRANTED

### A.    iyO Identifies No Valid Reason The Court Should Not Consider the Exhibits

iyO's lead argument in opposing the Motion to Dismiss is ***not*** that its claims are well pled. It is that the Court should not consider the documents that give context to its futile claims. iyO is incorrect, and its objections have no bearing on the Court's ability to grant Defendants' motion.

**Exhibits A–C (Mootness).** iyO argues the Court is not permitted to consider documents other than the complaint to assess mootness. Opp. 3-4. This is absurd. Mootness is ***almost always*** assessed based on facts outside the complaint because it involves changed circumstances after the complaint is filed. *E.g., Already v. Nike, Inc.*, 568 U.S. 85, 95 (2013) (analyzing covenant not to sue in affirming mootness). iyO cites no authority contravening this principle.

**Exhibits J and K (Advertising Documents).** iyO ignores that these are publicly available webpages whose accuracy iyO cannot, and does not, question—an independent basis for the Court to judicially notice them. RJN 1, 3-5; *see Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed."). iyO also does not deny it cited each in multiple paragraphs of the FAC. *See* RJN at 4-5. Instead, it urges the Court to disregard iyO's own public-facing documents on the grounds the FAC's allegations about them were mere "background." Opp. 4. This is illogical. These allegations are the ***only two*** examples of iyO's advertising of artificial intelligence products in the FAC (¶¶ 84-85); without them, iyO cannot plead the elements of its trademark claims.

iyO's remaining argument, that these documents introduce a "factual[] dispute" (Opp. 5) is unfounded. These are its own documents, introduced to show what iyO has publicly made available, not the truth of its statements; there is no dispute as to their contents. *See Reckstin Fam. Tr. v. C3 AI, Inc.*, 2026 WL 694486, at *4 (N.D. Cal. Mar. 12, 2026) (judicially noticing documents without "resolv[ing] any factual dispute between the parties as to the substantive truth or falsity of their contents"). And even if the Court excluded these exhibits, iyO makes similar disclosures within the four corners of the FAC. *See* Mot. 27; FAC ¶¶ 56, 62-63, 65.

**Exhibits D–I and L (State Court Proceedings)**. Judicial notice is not required for Defendants' exhibits submitted in support of the *Colorado River* abstention arguments. *See* RJN at 1-2. These exhibits were offered only to document the development of the parallel State Court proceeding—not for the truth of any facts asserted therein. Mot. 14-15, 32-35.

### B.    The Trademark-Based Claims Should Be Dismissed

iyO's Opposition fails to rebut the grounds for dismissal of its trademark claims. iyO leans almost entirely on the Ninth Circuit's statement that the TRO was based on a "colorable claim,"

mischaracterizing it as binding "law of the case." Opp. 9. But that statement is dicta, made on a different record, and TRO-stage findings are neither dispositive nor preclusive on the merits.[1] Stripped of that crutch, iyO has no answer on mootness. It ignores the threshold problem that the voluntary-cessation doctrine presupposes the defendant "engage[d] in unlawful conduct [and] stop[ped] when sued." *Already,* 568 U.S. at 727. And it fails to confront that its alleged harm of investor flight does not state a cognizable theory of damages under the Lanham Act.

1.    <u>iyO Identifies No Live Case or Controversy Over the Trademark Claims</u>

iyO's trademark claims present no live case or controversy. This case is materially indistinguishable from *WeWork Companies Inc. v. WePlus (Shanghai) Technology Co.*, 2020 WL 83845 (N.D. Cal. Jan. 7, 2020), which dismissed trademark claims as moot. There, the defendant announced plans and took initial steps to open a coworking space in San Francisco using a similar mark. *Id.* at *1. Like iyO, the *WeWork* plaintiff premised its claims on the defendant's ***announced intent*** to enter the market with a similar brand—not on any completed act of infringement. *Id.* After

---

[1] ***First,*** the factual predicate underlying the Ninth Circuit's order no longer exists. When the Ninth Circuit addressed this case, it relied on this Court's finding that Defendants had announced their intention to use "io" as a trademark for a forthcoming consumer product. That premise is no longer operative. Defendants have unequivocally committed not to use the "io" name. ECF 145-2 – 145-9. A law-of-the-case determination rooted in circumstances that have materially changed does not bind this Court. *See Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (the doctrine does not apply where the evidence at the later stage of the case "is substantially different," or "other changed circumstances exist"). Whatever provisional assessment the court made on the prior record, this Court must evaluate the case as it stands today. A non-binding statement, made on a superseded record, about a non-dispositive issue cannot sustain iyO's claims. ***Second,*** the Ninth Circuit's order arose in the context of a TRO appeal—a preliminary proceeding decided on an abbreviated record, not a merits determination of whether the complaint currently states a viable claim. "[O]ur decisions at the preliminary injunction phase do not constitute the law of the case" because such decisions "must often be made hastily and on less than a full record." *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1090 (9th Cir. 2013) (cleaned up). ***Third,*** even if the Ninth Circuit's statement could be treated as law of the case, it would not salvage the FAC. A preliminary finding about the *evidentiary record* presented at the TRO stage does not create well-pleaded allegations in a complaint that do not otherwise exist. The Ninth Circuit's observation that the May 21 announcement *could* constitute use in commerce says nothing about whether the FAC, standing alone, pleads a plausible damages claim from that announcement. ***Fourth,*** the statement is dicta. Immediately after that language, the Ninth Circuit made clear that its actual affirmance of the order's ripeness finding rested on different ground: "[a]t a minimum, however, the case is ripe because IO's alleged infringement is sufficiently imminent." ECF 96 at 3. Language that precedes a court's stated "minimum" basis for its holding is, by definition, unnecessary to the decision and carries no preclusive effect.

REPLY ISO DEFENDANTS' MOTION TO STRIKE OR DISMISS

suit was filed, the defendant abandoned those plans, removed references to the mark from its website and physical location, and declared that it had no **current** plans to open a U.S. location. *Id.* at *2. The court found the case moot: "there is no current risk that consumers will confuse the marks and thus no trademark infringement." *Id.* at *5.

Defendants' statement under penalty of perjury in this action is even more unequivocal: it will not use "io" as a trademark in connection with the challenged products. *See* ECF 123-01 ("Welinder Decl.") ¶ 2. As this Court recognized at the outset, "because Defendants have not yet released a product with the disputed mark, IYO cannot allege actual infringement." ECF 51 at 8. That remains true today—and it is now certain that it will remain true in the future, because Defendants have declared under penalty of perjury that they will not use "io" as a trademark in connection with the naming, advertising, marketing, or sale of any AI-enabled hardware products (Welinder Decl. ¶ 2), and have abandoned all pending applications to register the "io" mark— including for use with computers, financial products, musical instruments, and other categories not at issue here. ECF 145-2 – 145-9.

2.    iyO Ignores The Inapplicability Of The Voluntary Cessation Doctrine

iyO's primary argument against mootness is that the voluntary cessation doctrine imposes a "formidable burden." Opp. 9–11. But iyO's reliance on that doctrine is misplaced: voluntary cessation presupposes that the defendant *engaged in* wrongful conduct and then *stopped*. *Cf. Already,* 568 U.S. at 95. Here, there was no wrongful conduct to cease. Defendants never used "io" in connection with the sale, offering for sale, distribution, or advertising of any goods. The fundamental predicate for jurisdiction—the imminent launch of a product under a confusingly similar mark—has been eliminated. As *WeWork* held, the proper inquiry is "not *if* trademark infringement *might* occur between the parties in the future, but if there is a present risk of it occurring or if the Defendant could easily return to the allegedly wrongful behavior." *Id.* at *4 (emphasis in original). Defendants could not "easily return" to conduct they never began.

The unrebutted record confirms that Defendants not only will not release any products or engage in any advertising using the "io" trademark, but that Defendants (1) offered to stipulate to an extension of the TRO, which iyO rejected (ECF 123 ¶ 28); (2) submitted a public, unequivocal

declaration under penalty of perjury that they will not use the "io" name for hardware products ***now or at any point in the future*** (Welinder Decl.); (3) did not repost the May 21, 2025 video announcement even after this Court clarified that the TRO did not prohibit it (ECF 91 at 6); (4) formally abandoned all eight pending trademark registration applications for the "io" mark (ECF 145-2 – 145-9), and (5) offered to stipulate that it will never use "io" as a trademark for any products (ECF 149 at 10). The extensive media coverage of the decision not to use the "io" name further eliminates any prospect of reversal. ECF 123-15. Taken together, these facts go well beyond what courts have required to establish mootness, including the circumstances found sufficient in *WeWork*.

iyO's argument that Defendants' extension-of-time filing on a registration application constitutes evidence that Defendants maintained a "bona fide intent to use the mark in commerce" (Opp. 11) is now moot. On April 9, 2026, before the Opposition was even filed, Defendants formally abandoned all eight "io" trademark registration applications. ECF 145-2 – 145-9. That Defendants did so promptly upon iyO first raising any concern about the applications further underscores Defendants' commitment not to use "io" as a trademark in the future. *See BIO Mgmt. Nw. Inc. v. Am. Bio Servs.*, 2022 WL 1666946, at *3 (W.D. Wash. May 3, 2022), *report and recommendation adopted*, 2022 WL 1658634 (May 25, 2022) (injunctive relief motion mooted where, *inter alia*, defendants formally abandoned the challenged application and ceased all use of the challenged mark). But unlike in *BIO Management*, in which the underlying damages claim was not mooted given the defendant's prior use of the challenged mark on marketing materials, uniforms, and a van for approximately eight months, as discussed, Defendants have no similar history of infringement.

iyO attempts to salvage its claims by pointing to assets Defendants retain, such as personnel, the company name "io Products, Inc.," the io.com domain, and a prototype (which, unlike infringing inventory in other cases, is not alleged to have the "io" name or be commercially sellable). Opp. 10–11. This contradicts iyO's original request before this Court in connection with its TRO motion: "Plaintiff does not seek to enjoin Defendants from development, production, or sale of products [but] a narrowly tailored injunction against use of the infringing mark." ECF 35 at 15. More importantly, no authority holds that to moot a case a defendant must go out of business, fire all of its employees, or sell assets that were never used to infringe. Indeed, *WeWork* rejected a similar

argument, holding that a plaintiff "cannot recast the complaint into a general grievance" and that it was "too speculative to say that [defendant] may try and target the U.S. market later." 2020 WL 83845, at *4. iyO's similarly speculative objections fare no better.

Finally, iyO's argument that Defendants' commitment is limited to "hardware" while iyO's registration also covers software (Opp. 2, 10) ignores the allegations of the FAC, which is predicated on the threat of Defendants offering hardware under the "io" name. *See, e.g.*, FAC ¶ 15. The Welinder Declaration addresses the precise category of products alleged to be infringing, and does not allow for the possibility of using "io" as a trademark for software offered in connection with AI-enabled hardware. *Id.* ¶ 2; Mot. 13-14. In all events, Defendants will not use "io" as a trademark for any products. ECF 149.

### 3.    The FAC Does Not Support iyO's Past Damages Theory

To avoid dismissal, iyO argues that a claim for past damages survives even if its imminent-use theory is moot. But the FAC does not plausibly plead trademark damages based on the announcement. As in *WeWork*, the complaint offers nothing beyond conclusions that iyO has experienced damages from past infringement. 2020 WL 83845, at *5. iyO's Opposition does not even cite the FAC to support this argument. Opp. 9. Nor could it. The FAC does not plausibly allege that any consumer (or any investor) was actually confused by Defendants' short-lived merger announcement, let alone in a way that caused iyO cognizable harm. Its closest attempts are allegations about what "professionals . . . were hearing and expected" and bare assertions that the announcement "was causing" confusion—neither of which constitutes a plausible factual allegation that there was confusion among its actual or likely consumers. *See, e.g.*, FAC ¶¶ 203-205, 213-216; *Tranik Enters., Inc. v. Fulda*, 2017 WL 11150925, at *3 (C.D. Cal. Mar. 7, 2017) (damages must be "as the result of consumer confusion resulting from the Defendants' [allegedly infringing acts]").

To the extent the FAC alleges that any actual harm occurred, it alleges disrupted fundraising. *See, e.g.*, FAC ¶¶ 227-228. But lack of investor confidence, whatever the reason, is not actionable under the Lanham Act and does not establish entitlement to damages. *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124 F.4th 1122, 1125-26 (9th Cir. 2024) (sale of equity is not a "good" or "service" under the statute). iyO cannot repackage investor-related harms as a damages claim.

Having failed to show any live controversy about use of the "io" trademark, iyO's trademark infringement counts should be dismissed.

### C.    The Intentional Interference Claim Cannot Survive

1.    <u>iyO Identifies No Allegations That Plausibly Establish Knowledge of Specific Relationships</u>

iyO implicitly concedes that its intentional interference claim cannot be based on general expectancies with broad classes (*see* Mot. 22-23), arguing that it has properly limited each "class." Opp. 12. It has not. iyO does not identify any allegation of an instance of disclosure or relationship between the parties that involved iyO's economic relationships, but rather a series of meetings with Defendants at which "IYO's vision, technology, and approach . . . were shared." Opp. 12 (citing FAC ¶¶ 23, 286-87). These allegations of "prior [business] dealings" are insufficient to state a claim. *Infectolab Americas LLC v. ArminLabs GmbH*, 2021 WL 292182, at *4 (N.D. Cal. Jan. 28, 2021) (rejecting inference of knowledge from defendant's "prior dealings with Infectolab" and its "status as a competitor in the industry"). Beyond the bare assertion that Defendants "knew of IYO's economic relationships," FAC ¶ 286—a conclusory allegation not entitled to be assumed true (*e.g., Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015))—the FAC does not plausibly allege that Defendants gained knowledge of any specific relationship, or even a specific class of relationships, at the meetings, let alone in enough detail to support a plausible inference of intentional interference. This falls far short of the pleading requirements. *Yagman v. Galipo*, 2013 WL 1287409, at *5 (C.D. Cal. Mar. 25, 2013) (dismissing contractual interference claim that "fails to set forth the terms of the agreement, explain exactly which terms were breached, or allege plausible facts indicating that Galipo's actions were intentionally designed to cause that breach"); *Winchester Mystery House, LLC v. Glob. Asylum, Inc.*, 210 Cal. App. 4th 579, 597 (2012) (similar).

Recognizing this deficiency, iyO attempts to inject facts not pled in the FAC, such as that Defendants "knew who these relationships were with and why they were critical to IYO's imminent market entry," and that Defendants "knew [iyO's funding round] was led by IYO's manufacturer." Opp. 13. But new allegations raised for the first time in opposition cannot defeat a motion to dismiss. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Even if they could,

iyO does not contend that Defendants knew anything about the contours of these relationships sufficient to support a plausible inference of interference. *Yagman*, 2013 WL 1287409, at *5.

iyO's cited cases (Opp. 12) do not support its position. Two of the three involved disputes that arose after the termination of ***joint ventures*** involving obligations to specific, identified customers—a far cry from what iyO alleges. *See Applied Med. Distribution Corp. v. Ah Sung Int'l, Inc.,* 2015 WL 12910908, at *1 (C.D. Cal. Dec. 14, 2015) (defendant was plaintiff's distributor for 14 years and had obligations to transfer specific customers); *Oracle Am., Inc. v. Cedarcrestone, Inc.*, 2013 WL 3243885, at *1 (N.D. Cal. June 26, 2013) (defendant allegedly used its membership in the "Oracle PartnerNetwork" to impersonate Oracle to solicit its customers). And in the third, the only issue disputed was whether the heightened pleading standard of Rule 9(b) applied to an intentional interference claim, which Defendants never argued. *Humboldt Wholesale, Inc. v. Humboldt Nation Distribution, LLC*, 2012 WL 2572065, at *6 (N.D. Cal. July 2, 2012). No case supports that iyO's allegations satisfy the "knowledge" element.

> 2.   iyO Identifies No Independently Wrongful Act Designed to Disrupt a Specific Expectancy

The only allegations the Opposition identifies to show an independently wrongful act designed to disrupt a prospective economic relationship are conclusory assertions that Defendants strategically timed their merger announcement to harm Plaintiff. Opp. 13-14, *citing* FAC ¶¶ 28, 288. But these allegations highlight the FAC's deficiency rather than curing it. As the Motion showed (Mot. 23-24), without sufficient knowledge of the existence or terms of a specific expectancy at the time of the announcement, Defendants could not have harbored a "design" to disrupt those expectancies. *E.g., Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 580-81 (N.D. Cal. 1999) (dismissing claim where alleged knowledge was gained at a different time as the wrongful act). Thus, for iyO to plausibly allege Defendants knew of substantially certain disruption—as the Opposition concedes is required (Opp. 14)—iyO needed to plead facts establishing Defendants' concrete knowledge of expectancies that existed ***at the moment of the merger announcement***: for example, specific would-be customers poised to preorder the iyO One on May 20, 2025 who were deterred by the announcement. It did not; and its citation to *Overhill Farms, Inc. v. Lopez*, 190 Cal.

App. 4th 1248, 1267 (2010), which concerned the fourth element of an interference claim ("actual disruption"), not the third, is inapposite. It is also implausible that Defendants would schedule announcing a $6.5 billion merger (FAC ¶ 39) for the purpose of interfering with the non-contractual expectancies of a company that had never shipped a single competitive product.

iyO's Opposition also fails to identify allegations of any act that was independently wrongful other than its deficient trademark infringement counts. *See* Mot 23-24. iyO's Opposition concedes that its "concealment" allegations do not amount to a standalone statutory, common law, or other cognizable violation. Opp. 14. That concession is fatal. The independently wrongful act alleged must also be "unlawful" to be actionable—*i.e.*, "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Vox Network Sols., Inc. v. Gage Techs., Inc.*, 2024 WL 1260573, at *10 (N.D. Cal. Mar. 25, 2024) (citation omitted). Lacking such an independent wrongful act, iyO's intentional interference claim must be dismissed.

**D.    iyO's Opposition Confirms Its Trade Secret Claims Should Be Dismissed**

iyO's Opposition underscores the deficiencies of its trade secret claims. iyO fails to distinguish any of the authority that dooms its trade secret claims, and instead relies on two factually inapposite cases. Neither bears any resemblance to iyO's superficial allegations of trade secrets or improper use. In *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898 (N.D. Cal. 2023) (Opp. 15-17, 19-22), which involved a direct misappropriation claim, the defendants' alleged trade secret was a ***specific document***, which the plaintiff then ***further defined*** by describing specifically what was in that document that was a trade secret. *Id.* at 908-09. The misappropriation allegations were also concrete: the complaint identified specific emails where the defendants forwarded the document containing trade secrets to third parties and suggested that they copy them. *Id.* at 910.

In *CelLink Corp. v. Manaflex LLC*, 2025 WL 1993517 (N.D. Cal. July 17, 2025) (Opp. 19, 20, 22) (hereinafter *"CelLink II"*), the trade secrets were identified with such precision that they were ***redacted from the complaint itself***. *Id.* at *7-8. The misappropriation allegations identified a specific, "proprietary process" that was largely redacted because it was "unknown in the flexible circuit industry" except by plaintiff—but which defendants were allegedly using after they had observed it during a factory tour that they indisputably knew involved the disclosure of secrets. *Id.*

at *8. The generalities iyO alleges do not approach the specificity of *CelLink II*.

1.    iyO's Cited Authority Does Not Support Its Identification Of Trade Secrets

Unable to identify any allegations that identify its supposed trade secrets with the requisite degree of particularity, iyO simply argues it need not do so. But *Quintara BioSciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F. 4th 1081 (9th Cir. 2025) (Opp. 16-17) does not permit the type of vague and imprecise pleading that iyO argues is acceptable. *Quintara* required that pleadings contain "sufficient particularity" and not "simply rely upon catchall phrases or identify categories of trade secrets." *Id.* at 1088; *accord Google LLC v. Point Fin., Inc.*, 2026 WL 579462, at *3 (N.D. Cal. Mar. 2, 2026) (applying *Quintara* and finding complaint inadequate that identified trade secrets in "broad, categorical terms"). Yet catchall phrases and nondescript categories is all that iyO has alleged. *See* Mot. 26-27.

iyO contends that it has identified "specific categories of trade secret information" (Opp. 16), but it cites no authority supporting its argument that such "categories" are sufficient at the pleading stage. They are not. *Google LLC*, 2026 WL 579462, at *3. As iyO recognizes (Opp. 17), *Beluca* makes clear that the reader must be able to "separate [the asserted secrets] from matters of general knowledge" and "ascertain at least the boundaries within which the secret lies." 660 F. Supp. 3d at 907. iyO's identification of "(1) CAD drawings for IYO's proprietary audio computing devices; (2) unreleased design features; (3) manufacturing scaling strategies; (4) proprietary product development schedules; (5) custom-fit ear technology and manufacturing processes; (6) circuitry designs; and (7) other confidential design, engineering, and manufacturing information developed over approximately eight years of research and development" (FAC ¶ 305) leaves Defendants without meaningful guidance as to what information iyO contends is secret. Nor does iyO, as it must, "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *Google LLC*, 2026 WL 579462, at *3. iyO's reliance on *Creative Writer Software, LLC v. Schechter*, 2024 WL 1098759 (C.D. Cal. Feb. 8, 2024) (Opp. 17) does not help it. Unlike in that case, iyO has not alleged its trade secret consists of a secret combination of public information. *Id.* at *5. iyO's "[g]eneral allegations identifying the 'purported trade secrets in broad, categorical terms

that are merely descriptive of the types of information that generally may qualify as protectible trade secrets'" are "insufficient to state a claim." *Google LLC*, 2026 WL 579462 at *3.

iyO's attempt to distinguish the on-point authority Defendants cited (Mot. 25-28) falls flat. For example, iyO fails to explain (Opp. 18) how the court's finding in *National Specialty Pharmacy, LLC v. Padhye* that descriptions of "vendor and partner information, proprietary formulas, business processes, pricing strategies" are merely "'catchall' categories of the *kinds* of trade secrets that might be at issue" and are "too vague to state a claim" is any different from iyO's description of its purported trade secrets. 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024). Similarly, it does not address why the Court should reach a different result than in *Synopsys, Inc. v. ATopTech, Inc.*, in which the court found it was "impossible" "to determine where trade secret protection begins and ends" when the plaintiff alleged (similar to iyO) that its trade secrets were "proprietary input and output formats, scripts, and technical product documentation." 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013).

2.      <u>iyO Does Not Dispute Its Failure To Plead Direct Misappropriation And It Fails to Identify Any Allegations Sufficient To Support An Indirect Claim</u>

iyO does not dispute that it pleads only an indirect misappropriation claim. *Compare* Mot. 29 *with* Opp. 19-22. Yet it fails to show that it sufficiently pleaded such a claim, which requires factual allegations of both knowledge and use. Mot. 29.

***Knowledge***. iyO's Opposition identifies no factual allegations of Defendants' alleged knowledge that "'tend[] to exclude' the innocent . . . explanation." *CleanFish, LLC*, 2020 WL 4732192, at *7 & n.3. Instead, the Opposition points to allegations about the activities of Sargent, a non-defendant. Opp. 20 (discussing Sargent's alleged downloading, export of, and renaming of files). But iyO does not identify allegations that any defendant knew of Sargent's alleged downloads of, exports of, or renaming of files, much less what CAD software iyO typically used or that they were aware of iyO's file naming conventions. iyO's resort to purely conclusory allegations—including that Tan "personally orchestrated the extraction of iyO's trade secrets ***by arranging a meeting*** with Dan Sargent" (FAC ¶ 49, emphasis added)—cannot substitute for the factual support the pleading standard requires. *CelLink Corp. v. Manaflex LLC*, 2025 WL 1069893, at *5 (N.D. Cal. Apr. 9, 2025) (hereinafter, "*CelLink I*") (allegations that defendants "have knowingly and willfully

taken CelLink's manufacturing and processing trade secrets" was too conclusory to state a claim).

*Use.* Without a single citation to authority, iyO asserts that a fast development timeline alone is sufficient to establish use of its trade secrets. Opp. 21. It is not. As the Motion showed, "the mere fact that a competitor markets a product faster than it took another competitor to develop [its] product, does not plausibly allege that the competitor's product must have been created with trade secrets." Mot. 31 (collecting cases). iyO purports to distinguish this authority on the basis that its proffered timeline is shorter, but its timeline is for a **prototype**, not a finished product—and in *GMH Cap. Partners v. Fitts* (Mot. 31), the timeline was two weeks. 2025 WL 950674, at *3 (S.D.N.Y. Mar. 28, 2025). Moreover, while iyO attempts to chalk up the numerous deficiencies in its timeline that were identified in the Motion to "factual defenses," (Opp. 22), courts are required to consider when a plaintiff repeatedly pleads conclusions that its own factual allegations rebut. *Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012) (dismissing complaint which pled facts that "undercut the plausibility of [the] allegations"); *Hedrick v. Cnty. of Ventura*, 2014 WL 12967548, at *3 (C.D. Cal. Nov. 10, 2014) (dismissing count where "one of the few relevant factual allegations undercuts [plaintiff's] general and conclusory claims"). Defendants' reliance on this precedent in light of iyO's internally contradictory allegations (Mot. 31-32) does not ask the Court to improperly resolve factual disputes; it asks the Court to follow the law.

iyO argues that "access-plus-use," or alternatively "access plus similarity," can be sufficient. Opp. 19-20. But the FAC contains no allegations of technical similarity between Defendants' prototype and any of iyO's products, and as described above, iyO does not plausibly allege use. Moreover, iyO's own cases do not support that "access-plus-use" or even "access plus similarity" is categorically sufficient. Indeed, *CelLink I*, a prior order in the *CelLink* case, rejected this position. *See* 2025 WL 1069893, at *5 (dismissing claim that alleged both "recei[pt]" and "us[e]" but, like iyO's, was based on "conclusory statements and unreasonable inferences").

iyO's attempts to distinguish Defendants' precedent fare no better. iyO argues that *Lamont v. Krane*, 2019 WL 2113903 (N.D. Cal. May 14, 2019), is inapt because "it was reasonable for the recipient to assume the disclosure [in *Lamont*] was authorized." Opp. 20. Unfortunately for the viability of iyO's claim, the FAC is not only consistent with this supposed-distinguishing

-18-

reasonability inference, it **pleads** it: it alleges that Sargent "claimed that [what] he shared [was] approved to be . . . used publicly." FAC ¶ 125. As for x.*AI Corp. v. OpenAI, Inc.*, 2026 WL 506302 (N.D. Cal. Feb. 24, 2026), iyO's bald assertion that the FAC presents a richer narrative (Opp. 20) is belied by the facts. *x.AI* involved an almost exactly parallel account: allegedly surreptitious download activity occurring around the time of an interview presentation allegedly containing trade secrets—plus additional allegations of improper activities by eight other individuals. 2026 WL 506302, at *1-3. The *x.AI* court found these allegations insufficient to establish the corporate defendants' knowledge. *Id.* iyO fails to identify any more compelling allegations from the FAC.

iyO's request for a relaxed pleading standard because this case is early in discovery (Opp. 15) is unavailing. Trade secret claims do not enjoy an exemption from pleading rules or allow a plaintiff to make conclusory allegations and then discover the necessary facts later. Just last month, this Court squarely rejected the same argument in a trade secret case: the plaintiff "was 'required to have completed [its] investigation [of its claims] *before* filing suit, *not after.*'" *x.AI Corp. v. OpenAI, Inc.*, 2026 WL 661938, at *1 (N.D. Cal. Mar. 9, 2026) (citation omitted). iyO, like every other plaintiff, is not entitled to discovery to attempt to satisfy its pleading burden. Having failed to satisfy its burden, iyO's claims should be dismissed.

## III. THE COURT SHOULD INVOKE THE *COLORADO RIVER* DOCTRINE

iyO's opposition to *Colorado River* abstention rests on two arguments: that its federal trademark claims preclude abstention, and that Defendants have not been formally added to the state court action. Neither has merit.

On the first point, iyO's trademark claims are no longer justiciable. iyO cites no authority for the proposition that a moot federal claim weighs against abstention. Further, iyO points to no overlap between the facts and alleged damages regarding the May 2025 announcement and any of its other claims that would favor those additional claims remaining as part of a trademark dispute.

On the second, iyO's formalism does not withstand scrutiny. iyO does not deny that the state court Doe defendants are accused of the same conduct attributed to Defendants here. *See* Mot. 33; Opp. 23. ***Nor does its Opposition represent—or even suggest—that iyO does not intend to substitute the federal defendants for the state action Does.*** Opp. 22-23. Reduced to its essence,

iyO's position is that by using California's procedural "Doe" device to temporarily conceal the identities of state court defendants (which it has identified in all but name), it can manufacture a basis for parallel federal litigation. Entertaining such an argument would reward exactly the type of gamesmanship *Colorado River* abstention seeks to prevent. *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1206 (9th Cir. 2021).

iyO's arguments on the individual *Colorado River* factors fare no better:

***Factor 3.*** iyO argues there is no overlap between the proceedings, but at minimum, a finding in state court that Sargent did not misappropriate iyO's trade secrets would preclude iyO's trade secret claims here. *Sec. & Exch. Comm'n v. Alexander*, 115 F. Supp. 3d 1071, 1082 (N.D. Cal. 2015) (preclusion applies when "the party against whom issue preclusion is asserted was a party . . . to the prior action.") (cleaned up). iyO's denial of this reality only underscores the gamesmanship at work.

***Factor 4.*** iyO argues that this federal proceeding is further along—just pages after complaining it has been "den[ied] access to [all] discovery" in this case. Opp. 15. The state court action, which has seen significant merits proceedings on the trade secret claim, including a TRO and an anti-SLAPP motion, is indisputably more advanced. Mot. 14-15; ECF 130-5 – 130-9.

***Factors 5 and 6.*** iyO argues that the presence of its DTSA claim is dispositive. It is not. The DTSA claim offers no material allegations beyond those incorporated or duplicated from its CUTSA claim. *See* FAC ¶¶ 321-336. A federal hook that contributes nothing substantive does not defeat abstention, especially because it could be filed in state court. *See* Mot. 34.

***Factors 7 and 8.*** iyO does not substantively respond to the record of state court setbacks from before iyO filed the FAC. *See* Mot. 34-35. Instead, it simply asserts—in attorney argument— that it is not engaging in gamesmanship. Opp. 25. If that were true, iyO could commit on the record that it will not add the federal Defendants to the state court action. It has not.

iyO asks this Court to hear duplicative claims that exist only because iyO has concealed the true defendants in the Sargent action. Ninth Circuit precedent does not support that result. The Court should abstain from exercising jurisdiction over Counts 7 through 9.

**IV.    CONCLUSION**

The Court should strike the FAC or dismiss the FAC in its entirety.

DATED:  April 17, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _____ */s/ Margret M. Caruso* _____
    Margret M. Caruso

Attorneys for Defendants
*Attorneys for Defendants io Products, Inc., OpenAI, Inc., OpenAI, LLC, and Sam Altman*

DATED:  April 17, 2026

JONES DAY


By _____ */s/ Meredith M. Wilkes* _____
    Meredith M. Wilkes

Meredith M. Wilkes
*Attorneys for Defendant Sir Jonathan Paul Ive*

REPLY ISO DEFENDANTS' MOTION TO STRIKE OR DISMISS

**ATTESTATION**

I, Margret M. Caruso, am the ECF user whose ID and password are being used to file the above document. In compliance with Local Rule 5-1(i)(3), I hereby attest that Meredith M. Wilkes has concurred in the filing of the above document.


                                        By      */s/ Margret M. Caruso*
                                                Margret M. Caruso

REPLY ISO DEFENDANTS' MOTION TO STRIKE OR DISMISS