UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IYO, INC.,

    Plaintiff,

  v.

IO PRODUCTS, INC., et al.,

    Defendants.

Case No.  25-cv-04861-TLT

**ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Re: Dkt. No. 110

## I.  INTRODUCTION

Before the Court is Plaintiff IYO, Inc. ("IYO")'s Motion for a Preliminary Injunction against Defendants IO Products, Inc., OpenAI, Inc., OpenAI LLC, Sam Altman, and Jonathan Paul Ive, ten months after granting a temporary restraining order ("TRO") on a trademark infringement claim, which was affirmed by the Ninth Circuit.  ECF 51, 110; *IYO, Inc. v. IO Prods.*, No. 25-cv-04861-TLT, 2025 WL 3501003 (N.D. Cal. June 20, 2025), aff'd, No. 25-4028, 2025 WL 3471705 (9th Cir. Dec. 3, 2025).

In the present Motion, IYO additionally supports its proposition with survey results from a survey expert, the impediment posed by Defendants' responses during discovery, Defendants' alleged voluntary cessation, and its continuing harm.  ECF 110.

After reviewing the parties' briefs, hearings, and the relevant legal authority, and for the reasons below, the Court **GRANTS** the motion for a preliminary injunction.

## II.  PROCEDURAL HISTORY

On June 9, 2025, Plaintiff filed a complaint against Defendants alleging: (1) trademark infringement under 15 U.S.C. § 1114, (2) false design and unfair competition under 15 U.S.C. § 1125(a), (3) violation of the California Unfair Competition Law ("UCL"), (4) common law false designation of origin and unfair competition, (5) contributory infringement, and (6) inducement of

infringement. ECF 1, ¶¶ 128–76. On the same day, Plaintiff filed a motion for TRO based on its trademark infringement claim. ECF 6.

The Court granted the motion for a TRO on June 20, 2025. ECF 51. Defendants subsequently appealed the TRO on June 26, 2025. ECF 53. On December 3, 2025, the Ninth Circuit affirmed the Court's order, and the mandate was issued on December 29, 2025. ECF 96, 97.

On July 11, 2025, Plaintiff filed a motion to hold Defendants in contempt and for sanctions related to the TRO. ECF 67. Following a hearing on September 9, 2025, the Court denied the motion. ECF 89, 91.

On February 20, 2026, Plaintiff filed the present Motion for Preliminary Injunction. ECF 110. On March 13, 2026, Plaintiff filed an Amended Complaint, adding OpenAI OpCo, LLC and Tang Yew Tan as defendants. ECF 119. The Motion for Preliminary Injunction was fully briefed on March 27, 2026. ECF 121, 126.

This Order relates to Plaintiff's Motion for Preliminary Injunction. ECF 110

## III.    BACKGROUND AFTER GRANTING THE TRO

The core of this dispute involves Defendants' use of the "IO" branding mark for artificial intelligence-enabled hardware in relation to Plaintiff's mark.

In support of the present Motion for Preliminary Injunction, IYO provides a consumer survey conducted by expert Mark Keegan, which found that respondents answered 62.3 percent total confusion and 24 percent net confusion compared to the control group and further explained the confusion is driven by shared letters, similar logos, and near-identical branding between "IO" and "IYO". ECF 110 at 21; ECF 111. IYO alleges that these results far exceed the standard 15 percent threshold for determining a likelihood of confusion. *Id*. at 10.

IYO further addresses the impediment posed by Defendants' conduct during discovery. On February 6, 2026, the parties served responses to discovery that had been first served on December 19, 2025. *Id*. at 11. IYO alleges that while Defendants served responses and objections to IYO's first set of requests for production, Defendants refused to produce any documents in response to 92 separate requests. *Id*. Defendants claim that they provided substantive responses

United States District Court
Northern District of California

to the bulk of Plaintiff's requests that confirmed no responsive documents existed regarding any device that would be sold or advertised as an "io" branded product.  ECF 121 at 14.  Conversely, Defendants allege that IYO has failed to produce documents requested after IYO agreed to produce.  *Id*. at 14–15.

After completing the merger of Defendant OpenAI Inc. with Defendant IO Products, Inc. in July 2025, Defendants decided in early February 2026 not to use the name "IO" for products, marketing, or company branding.  ECF 121 at 13–14.  Defendants proposed a stipulation to dissolve the TRO based on their decision, or alternatively, postponed the preliminary injunction motion until 2027.  *Id* at 14; ECF 110 at 12.  Plaintiffs rejected it because the proposal provided no meaningful assurance that the infringement would not recur, and by delaying the motion, the existing TRO continues to suffer irreparable harm for IYO, including an inability to obtain new investors, the depletion of its funding, and the usurpation of its brand equity.  ECF 121 at 14; ECF 110 at 12–13.

Separately, while the timing is disputed, with IYO claiming it occurred in February and Defendants in November 2025, IYO's CEO, Jason Rugolo, appeared on the podcast to discuss his company and allegedly forthcoming products.  ECF 121 at 12; ECF 126 at 5.  Defendants claim that during the podcast, the CEO admitted that its products do not target "general consumer audience",  in contrast to IYO's prior statement, which was the basis of the analysis of the degree of consumer care factor in granting TRO.  ECF 121 at 13.  IYO counters that this is selectively excerpted rather than the podcast as a whole, intending to target general consumers.  ECF 126 at 5–6.

## IV.    LEGAL STANDARD

### A.  Preliminary Injunction

The legal standard for issuing a preliminary injunction is "substantially identical" to the standard for a TRO.  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

A party seeking a preliminary injunction must meet one of two variants of the same standard.  The traditional *Winter* standard requires the movant to show that (1) it "is likely to

United States District Court
Northern District of California

succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Under the "sliding scale" variant of the same standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

### V.        DISCUSSION

#### i.        Defendants' claimed voluntary decision to cease the use of their branding mark does not moot this Motion.

IYO contends that Defendants' voluntary decision to cease the use of the branding mark "IO" before this Motion does not moot the Motion.  ECF 110 at 18.  Defendants claim that, because they removed their announcement to use the mark, news articles subsequently reported the removal of the announcement, and they decided not to use the mark after the merger, their effort renders this Motion moot.  ECF 121 at 17.  Alternatively, they claim that the voluntary cessation doctrine should not apply to their conduct because they have not used the mark to actively engage in advertising or selling goods.  *Id*. at 16.

"A case becomes moot—and therefore no longer a 'case' or 'controversy' for purposes of Article III—'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  The voluntary cessation of a challenged practice "will moot a case only if the [party asserting mootness] can show that the practice cannot reasonably be expected to recur." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)).  The defendant claiming the voluntary cessation "moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to

4

recur." *Id*. at 190.

Here, the Court finds that the voluntary cessation doctrine applies to the discontinuation of the branding mark, and there is a reasonable possibility that Defendants' use of the mark will recur. *See Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201, 1215 (9th Cir. 2021). While Defendants present their communication and publications as evidence not to use the mark, Defendants failed to meet their burden by being essentially non-responsive to IYO's second set of RFP.

IYO found eight trademark applications for the marks under the entity Weynorth Limited ("WL"), that are almost similar to the IYO's mark and to the mark demonstrated in the May 21 announcement. ECF 126 at 8; Exhibits F–M. The applications indicated the use of computer hardware, overlapping with IYO's intended use and its mark. IYO's second set of RFP includes documents or communications with the entity or the WL trademark applications. ECF 126, Exhibit E at RFP Nos. 93–97. Defendants raised numerous objections without giving any indication of the affiliation with the entity. *Id*.

On the day of the hearing, Defendants stated, for the first time, that the WL trademark applications had been abandoned on April 10, 2026, four days before the hearing. ECF 146. Because this violates the Civil Local Rule 7-3(d), "Supplementary Material," which provides that "Once a reply is filed, no additional memoranda, papers, or letters may be filed without prior Court approval," the Court declines to consider this new argument for this motion.

Accordingly, the Court finds that Defendants have failed to meet their burden to moot the Motion.

**ii.    The Court maintains that Plaintiff is likely to succeed on the merits of its Trademark Claim.**

**a.    Plaintiff has protectable ownership in the mark.**

"Registration of a mark is prima facie evidence of the validity of the mark, the registrant's ownership of the mark, and the registrant's exclusive right to use the mark in connection with the goods specified in the registration." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing 15 U.S.C. § 1115(a)).

Where the proof of registration for the federally registered trademark is uncontested, the

element requiring proof of a valid, protectable trademark is met. *Id.* Plaintiff has established the "protectible ownership interest in the mark" requirement for its IYO trademark (Reg. No. 7,409,119). *See* ECF 1-1, Ex. A.

### b. The *Sleekcraft* factors weigh in favor of Plaintiff.

Parties rely exclusively on the "reverse confusion" theory. *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1159–60 (9th Cir. 2021). "[R]everse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one," because the junior user is more well-known. *Id.* This case turns on whether Defendant's use of Plaintiff's mark is likely to cause consumer confusion.

The likelihood of "consumer confusion" is governed by the eight *Sleekcraft* factors: "(1) strength of the protected mark; (2) proximity and relatedness of the goods; (3) type of goods and the degree of consumer care; (4) similarity of the protected mark and the allegedly infringing mark; (5) marketing channel convergence; (6) evidence of actual consumer confusion; (7) defendant's intent in selecting the allegedly infringing mark; and (8) likelihood of product expansion." *Pom Wonderful*, 775 F.3d at 1125 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979). In the internet context, "[w]e must be acutely aware of excessive rigidity when applying the law . . . ; [as] emerging technologies require a flexible approach." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999).

This Court turns to each factor in turn; however, because the legal standard for a preliminary injunction is substantially identical to that of a TRO, the Court's prior findings of fact and law remain the baseline for this analysis. The Court will only reconsider its prior findings if the parties present new evidence or legal arguments that require a different outcome.

### 1. Strength of the Mark

A mark's strength is 'evaluated in . . . conceptual strength and commercial strength.'" *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1106 (9th Cir. 2016) (citation omitted).

Regarding the conceptual strength, this sub-factor analysis remains intact, as Defendants do not challenge the conceptual strength in the previous order. ECF 51 at 12; ECF 121 at 28.

Thus, it remains that "'IYO' is conceptually strong." *IYO*, 2025 WL 3471705, at \*2; *IYO*, 2025 WL 3501003, at \*7 (holding that Plaintiff's IYO mark "is a conceptually strong mark because it is arbitrary or fanciful and the USPTO issued a registration without requiring proof of secondary meaning").

For the commercial strength, Defendants argue the Plaintiff's conceptual strength is counterbalanced by the commercial weakness of Defendants' unknown mark, a product not revealed to the public. ECF 121 at 28.

Although Defendants claim they have not publicly disclosed their mark, the Court remains unconvinced. Defendants allegedly refused to stop using the "IO" mark despite IYO's founder's urgent requests, even though they had a history of knowing one another, and only stopped using it after being sued. ECF 1 ¶ 112. "There is no reason to think [they] will not [renew] [] the same behavior again absent an injunction." *Align Tech., Inc. v. Strauss Diamond Instruments, Inc.*, No. 18-cv-06663-TSH, 2019 WL 1586776, at \*17 (N.D. Cal. Apr. 12, 2019); *see Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir. 1986) ("The defendants refused to stop violating those rights until [plaintiff] brought suit in federal district court . . . . If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark."). Thus, the commercial strength is not counterbalanced.

Accordingly, based on the unchanged record, this factor remains in favor of the Plaintiff. *See IYO*, 2025 WL 3471705, at \*2 (citing *Ironhawk*, 2 F.4th at 1162) (holding that in comparison between the "conceptual strength of the senior user's mark and the commercial strength of the junior user's mark, [] 'IO' is commercially strong, as evidenced by the extensive coverage of IO's launch in national media outlets").

### 2. Proximity and Relatedness of Goods

Defendants contend that "Plaintiff abstracts the nature of the parties' intended products to a high level" as their products are AI-enabled hardware, and "this superficial overlap cannot tip the balance in Plaintiff's favor." ECF 121 at 21. Defendants claim that because their "first hardware product will not be an in-ear device" and "they have not announced any functionality," the product "is not intended for the niche audience Plaintiff is targeting." *Id*.

Here, this factor remains in favor of the Plaintiff.  Defendants did not present new evidence to support their claim beyond what the Court had already considered.  *See IYO*, 2025 WL 3471705, at *2 ("The companies' goods are also related, as both companies describe their products as replacing traditional computers and providing a more natural way to interact with artificial intelligence.")

Accordingly, the Court maintains this factor in favor of Plaintiff.

### 3.  Types of Goods and Degree of Consumer Care

Defendants argue that, because of Plaintiff's admission during the podcast interview that the IYO was intended for a niche group of consumers, in addition to the high price of Plaintiff's product, this factor tilts in their favor.  ECF 121 at 19.  Defendants contend that Rugolo's statement in the podcast interview shifts the intended consumer from "a 'broad, general consumer audience'" to a niche group that is sophisticated and discerning consumers: "'audiophiles,' 'tech early adopters,' and 'AI enthusiasts."  ECF 121 at 13 (citing ECF 35-1 ¶¶ 5, 6); ECF 121 at 19.

While Plaintiff admits that IYO was "not trying to make a mass market device yet," ECF 126 at 5 (citing ECF 126-2 ¶ 3 and ECF 126-3 at 23), Plaintiff counters that Defendants' claim of Rugolo admission is a gross distortion of Rugolo's actual podcast interview.  ECF 110 at 22; ECF 126 at 15.  Specifically, Plaintiff argues that Defendants mischaracterized Rugolo's podcast remarks because "IYO ONE is 'for everybody.'"  ECF 126 at 15; (citing ECF 126-2 ¶ 3).

While the Court views that the statements were taken out of context from the entire episode in that podcast, Defendants provided product descriptions to show that the consumers clearly targeted by IYO are a specialized group who are "audiophiles, tech early adoptors, and AI enthusiasts," willing to spend $999 and undergo a custom-fitting process, and book an ear-cleaning appointment.  ECF 121 at 19–20; ECF 123, Exhibits F, K, J, Q, X.

Although the Court is not convinced by the Defendants' reliance on the podcast, their new evidence about the IYO's product description might support their case.  *See IYO.*, No. 25-4028, 2025 WL 3471705, at *2 (citing *Ironhawk*, 2 F.4th at 1167) (This "factor considers 'the sophistication of the customers,' including whether a 'reasonably prudent customer would take the time to distinguish between the two product lines.'").

United States District Court
Northern District of California

Accordingly, the Court finds this factor is neutral.

### 4. Similarity of the Marks

Plaintiff argues that this factor weighs in their favor because the appearance and sound in "IO" and "IYO" are phonetic equivalents. ECF 110 at 20. Defendants counter, arguing that because Defendants are not using "IO" as a mark in connection with selling or advertising any products, this factor weighs heavily in their favor. ECF 121 at 18–19.

Here, the similarity of the marks remains in favor of the Plaintiff. As explained below, the Court did not find a rational connection with certainty that Defendants will not use their branding mark in the marketplace in connection with selling any products, absent an injunction. *Infra* Section V.ii.7.

Since the record remains unchanged, the Ninth Circuit's holding still stands: "the marks "IO" and "IYO" only differ by one letter and are pronounced identically." *IYO*, 2025 WL 3471705, at *2 (citing *Dreamwerks Prod. Grp.*, *Inc. v. SKG Studio*, 142 F.3d 1127, 1131 (9th Cir. 1998) (emphasizing the "perfect similarity of sound" between "Dreamworks" and "Dreamwerks")).

Accordingly, this factor remains in favor of infringement.

### 5. Marketing Channel Convergence

Defendants argue, relying on *Yuga Labs, Inc.*, that this factor weighs in their favor as there "are no products being sold currently," and when they do, they will sell their products on their own website, not on Plaintiff's site. ECF 121 at 21–22; 144 F.4th 1137 (9th Cir. 2025). Plaintiff counters that Defendants' reliance on *Yuga* is misplaced. ECF 126.

Here, the Court finds that Defendants' reliance on *Yuga Labs, Inc.* is misplaced. Unlike *Yuga Labs, Inc.* where consumers purchase "unique" and "inherently sophisticated" digital art in online marketplaces that are "specifically curated" for creating, storing, displaying and trading, 144 F.4th at 1149, 1153 n.4, 1158, 1172, Plaintiff's website, planning to sell its tangible goods, is rather one of 'ubiquitous' marketing channels that carries 'little to no weight' to analyze this factor. *See IYO*, 2025 WL 3471705, at *2.

Accordingly, the Court maintains this factor slightly in favor of infringement.

### 6. Evidence of Actual Confusion

Plaintiff argues that the survey conducted by its expert, Mark Keegan, constitutes evidence of the actual confusion factor. ECF 110 at 20. Defendants counter that Keegan's survey is fundamentally irrelevant and so riddled with methodological errors, and therefore, Plaintiff still has no evidence of actual consumer confusion. ECF 121 at 22; ECF 122. Defendants argue Keegan's survey failed to include "the OpenAI name or swirl logo or any reference to the ChatGPT AI technology that it will presumably interact," which did not replicate market conditions in the actual use of "io". ECF 121 at 23. Defendants also argue that Keegan's demographic data is an overbroad and unrepresentative of the IYO's universe, particularly that "more than 35% of his test respondents reported household income under $50,000 per year—hardly the likely purchaser profile for a novel AI consumer device costing a thousand dollars." ECF 121 at 27; *see* Swain Decl. ¶¶ 71; Keegan Decl. ¶ 74.

"[S]urveys in trademark cases are to be admitted as long as they are conducted according to accepted principles." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir. 1992). To be "probative and meaningful," regarding the appropriate universe of consumers, surveys "must rely upon responses by potential consumers of the products in question." *Kudos Inc. v. Kudoboard LLC*, No. 20-cv-01876-SI, 2021 WL 5415258, at *12 (N.D. Cal. Nov. 20, 2021) (citation omitted). "[C]hallenges to methodology and design are precisely the kind of claimed deficiencies that go to the weight of the evidence, not its admissibility." *BillFloat Inc. v. Collins Cash Inc.*, 105 F.4th 1269, 1276 (9th Cir. 2024).

Here, the Court finds Defendants' argument unpersuasive. Plaintiff submitted a consumer survey to demonstrate examples of potential confusion in the marketplace generally. ECF 111. While Defendants "did not submit an opposing report showing, for example, a survey that demonstrated no [actual] confusion among [potential] consumers" but instead, Defendants critiqued Keegan's survey without adding factual evidence to the record of actual confusion. *Tari Labs, LLC v. Lightning Labs, Inc.*, No. 3:22-cv-07789-WHO, 2023 WL 2480739, at *9 (N.D. Cal. Mar. 13, 2023) (finding that at the preliminary injunction stage, "the survey may show the possibility of actual confusion, but [the court] cannot say at this time that it affirmatively shows

actual confusion."); *see* ECF 126; ECF 121.

While the Court notes Defendants' argument, potential consumer universe may create methodological error, given the cost of the product and the "test respondents [on a lower] income," ECF 121 at 27, it does not negate the evidence provided because "the standard for the admissibility of evidence presented" at the "preliminary injunction is not high" and the Court may give "inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *LifeScan, Inc. v. Shasta Techs., LLC*, No. 12-cv-06360-JST, 2013 WL 12201564, at *9 (N.D. Cal. May 21, 2013), modified, No. 12-cv-06360-JST, 2013 WL 3200629 (N.D. Cal. June 24, 2013), and aff'd, 551 F. App'x 935 (9th Cir. 2014) (citation omitted); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 1737951, at *10 (N.D. Cal. Apr. 8, 2015) ("Motorola argues the September 2011 Survey is irrelevant and unreliable because [] its 122 person sample size "is not big enough to be statistically significant. [] Each of these challenges goes to weight, not admissibility."). Consequently, the Court does not need to address the accuracy of the methodology at this stage.

Accordingly, in accordance with the previous Order, the Court maintains that this factor slightly weighs in favor of infringement as the factual record remains unchanged.

### 7. Defendants' intent in selecting the Mark

Plaintiff argues that this factor continues to weigh heavily in IYO's favor because Defendants "were well aware of the IYO mark" at the time of the May 21 announcement and had learned of IYO's brand and technology through multiple meetings and a demonstration of Plaintiff's products. ECF 110 at 22; ECF 126 at 15–16; *see IYO*, 2025 WL 3501003, at *11 (N.D. Cal.). Defendants counter that this factor now favors them because they "no longer have any plans to use the "io" mark," have "adopt[ed] a different mark" and support their position solely with Peter Welinder's declaration, Vice President and General Manager of Defendant OpenAI. ECF 121 at 28; ECF 105-2 at ¶ 2.

The Court remains unconvinced by Defendants. Welinder's declaration states:

"In July 2025, OpenAI completed its acquisition of io Products, Inc. As part of the post-acquisition integration process, Defendants conducted a review of their product-

11

naming strategy and how any future consumer hardware offering that was planned by Defendant io Products, Inc. would fit within the broader OpenAI brand. As a result of that review, Defendants have decided not to use the name "io" (or "IYO," or any capitalization of either) in connection with the naming, advertising, marketing, or sale of any artificial intelligence-enabled hardware product." *Id*.

The Court finds that, based on facts found, Welinder's declaration is insufficient to establish a rational connection with certainty that Defendants do not plan to use the mark in the future. *See Friends of the Earth, Inc.*, 528 U.S. at 190 ("[D]efendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." (citation omitted)).

Accordingly, based on the current and limited record, the Court maintains its previous finding, weighing in favor of Plaintiff. *See* ECF 51 at 17–18.

### 8. Likelihood of Product Expansion

Plaintiff argues that this factor is neutral because the likelihood of expansion is unnecessary when goods "are already related" or the parties offer similar products. ECF 110 at 22–23. Defendants do not argue that Plaintiff's concession that this factor is neutral. ECF 121 at 30.

Accordingly, the Court finds that the factor is neutral.

### 9. Overall, the likelihood of confusion tips in favor of Plaintiff

"[O]nly a subset of the *Sleekcraft* factors are needed to reach a conclusion as to whether there is a likelihood of confusion." *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000)).

The current evidence on the record is substantially similar to that considered in the prior order. Other than two neutral factors—(3) types of goods and degree of consumer care and (8) likelihood of product expansion, the rest of the factors tip in favor of Plaintiff.

Accordingly, the Court finds that the *Sleekcraft* factors weigh in favor of Plaintiff.

### iii. Fact discovery is ongoing and therefore, irreparable harm should be presumed to continue without injunctive relief.

Defendants argue that because Plaintiff has not produced "documents about investments, its financial position, or investor or potential investor feedback" in response to their RFPs,

Plaintiff suffers no irreparable harm, and even if so, it arises from other factors.   ECF 121 at 31; ECF 123, Exhibit H at 6–10.

The Court is not persuaded.  Fact discovery is still in progress and is scheduled to close on December 4, 2026.  ECF 78.  And Plaintiff responded, *inter alia*, "Plaintiff will produce non-privileged documents in its possession, custody, or control sufficient to show why prospective investors did not invest in IYO Products, Inc. in 2025."  Purely based on this response, the Court is not in a position to negate the fact that Plaintiff continues to suffer irreparable harm.

Moreover, the Court finds that because Plaintiff has a likelihood of success on the merits, Plaintiff shall be entitled to a rebuttable presumption of irreparable harm in the motion for a preliminary injunction.  *Supra* V.ii.; 15 U.S.C. § 1116(a).

### iv.    The balance of equities and public interest tips in Plaintiff's favor

Defendants protest that IYO's contempt motion forced them to "expend considerable resources."  ECF 121 at 32–33.  However, a party's obligation to defend against litigation caused by its own infringement is not cognizable hardship.  *See Go Daddy Operating Co., LLC v. Ghaznavi*, No. 17-cv-06545-PJH, 2018 WL 1091257, at *13 (N.D. Cal. Feb. 28, 2018) ("Defendants cannot claim any hardship from an injunction that would prevent them from using [Plaintiff]'s trademarks, especially considering they have no current right to do so."). "If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [Plaintiff] substantial protection of its trademark." *Cyclone USA v. LL&C Dealer Servs. LLC*, No. CV-03-992 WMB (JWJX), 2004 WL 7325117, at *7 (C.D. Cal. Apr. 14, 2004) (omitting internal quotations) (quoting *Polo Fashions*, 793 F.2d at 1135–36).

In the prior order, the Court stated, "[i]f the injunction is granted, Defendants may ultimately need to alter their brand and company name." *IYO*, 2025 WL 3501003, at *12.  The effect of the TRO still has not fully materialized.  Given that the first two *Winter* factors still tip in favor of Plaintiff and the IYO's contempt motion did not establish a cognizable hardship, the Court maintains that the balance of the equity and the public interest favors Plaintiff.

### VI.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for a Preliminary

13

Injunction against Defendants.  Defendants did not raise an argument or request a monetary amount for a Rule 65(c) bond; consequently, the Court will not require a bond in this matter.

The ADR deadline has expired. Upon request of the parties, the Court will extend the ADR deadline to two weeks beyond the close of Opening Reports.  The parties shall also advise the Court of the proposed method of mediation.

The hearing for Defendants' Motion to Strike Amended Complaint, or in the Alternative, Motion to Dismiss is set for 7/28/2026 at 2:00 PM in San Francisco, Courtroom 09, 19th Floor.

The Further Case Management Conference set for 12/17/2026 at 2:00 PM in San Francisco - Videoconference Only is maintained. Joint Case Management Statement is due by 12/10/2026.

This Order resolves ECF 110.

IT IS SO ORDERED.

Dated: April 23, 2026

_____
TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

14