

**Anthony J. Viola**
+1.212.692.6235
AJViola@mintz.com

919 Third Avenue
New York, NY  10022
212 935 3000
mintz.com

May 29, 2026

**VIA ECF**

Hon. Peter H. Kang
United States Magistrate Judge
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

**Re: *IYO, Inc. v. io Products, Inc., et al.*, Case No. 3:25-cv-4861-TLT**
**Protective Order Dispute**

Dear Judge Kang:

Plaintiff IYO, Inc. ("IYO") respectfully submits this letter to bring to the Court's attention a dispute concerning the form of protective order in this action. Although the Standing Order contemplates joint submission of discovery dispute letters, Defendants have refused to engage on this issue — including refusing to discuss the protective order during a lead-counsel meet-and-confer — making joint submission impossible at this time. IYO respectfully requests that the Court enter IYO's proposed protective order, which hews closely to the Court's model form.

**I. Background**

On January 7, 2026, IYO circulated a proposed protective order based on the Northern District of California's Model Stipulated Protective Order (Patent: Highly Sensitive). On January 30, 2026, Defendants returned a version containing significant and unusual departures from the model form. On February 16, 2026, IYO responded with revisions that returned the draft substantially to the model form, and asked Defendants to accept the draft or identify remaining disputes.

Not receiving a response, IYO's counsel followed up on April 21. On April 22 Defendants' counsel addressed only the Prosecution Bar and Acquisition Bar provisions, and explicitly stated that her "email was only intended to address the prosecution and acquisition bars, not any other provision." Despite multiple follow-up requests from IYO's counsel on April 24, and May 7, 2026, Defendants never engaged on the remaining disputed provisions.

On May 11, 2026, I as IYO's lead trial counsel requested that the protective order be discussed at the Court-ordered lead counsel meet-and-confer. Defendants refused, asserting that the Court's order did not "permit expanding the meet and confer to address other matters," and offering only to discuss the protective order on a "separate, non-lead-to-lead meet and confer." IYO disagreed, noting that the exchanges among non-lead counsel over the preceding months satisfied Section H.1 of the Standing Order, and that IYO had properly invoked the lead-counsel meet-and-confer provision of Section H.2 (which does not provide a mechanism for opposing lead counsel to refuse).  It was therefore proper for lead counsel to address the issue under Section H.2. This was especially true because Defendants have treated the protective order as a "gating issue" – meaning they refuse to produce any documents until it is resolved. Nevertheless, Defendants refused to discuss the protective order at a lead-counsel meeting.

**MINTZ**

May 29, 2026
Page 2



This dispute is now ripe for resolution. The parties have exchanged drafts and positions over a period of nearly five months, and Defendants' refusal to engage further — culminating in their refusal to discuss the matter at the lead-counsel meeting — makes clear that no negotiated resolution can be reached and should be deemed a waiver of Defendants' objections to the proposed Protective Order.

**II. The Disputes**

IYO's proposed protective order is derived from the Court's Model Stipulated Protective Order (Patent: Highly Sensitive), with minor modifications explained in the accompanying Declaration that were either requested by Defendants or made to tailor the order to this case. The following summarizes the key disputes between the parties:

**Dispute 1: Prosecution Bar and Acquisition Bar.** Defendants' draft included a Prosecution Bar barring any individual who receives highly confidential information from involvement in patent prosecution relating to artificial intelligence for one year after final termination of the action, and an Acquisition Bar barring involvement in the acquisition of AI-related patents. IYO deleted both provisions. This is not a patent case — it involves trademark infringement, trade secret misappropriation, and related claims. And even in patent cases, a prosecution bar is not the norm. *See Nat'l Prods. v. Innovative Intelligent Prods., LLC*, 2021 U.S. Dist. LEXIS 121620, at *10 (W.D. Wash. June 29, 2021) (denying request for inclusion of patent bar in patent case). Defendants created the Acquisition Bar from whole cloth; it has no basis in the model form or case law.

**Dispute 2: Definition of "Highly Confidential — Source Code" vs. "Sensitive Technical Material."** Defendants renamed the third tier of protection from "HIGHLY CONFIDENTIAL – SOURCE CODE" to "HIGHLY CONFIDENTIAL – SENSITIVE TECHNICAL MATERIAL" and expanded the definition to include "prototypes" and "the visual impression of unreleased hardware designs." The Court's model form restricts this highest tier to source code, which is not currently at issue in this case. IYO restored the model form's terminology and definition. There are already provisions in place to protect trade secret material under the "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" designation without creating an entirely new and restrictive category for hardware prototypes.

**Dispute 3: Prototype/Hardware Inspection Provisions.** Defendants inserted detailed provisions governing the physical inspection of "prototypes or hardware devices," requiring inspection at the Producing Party's counsel's office, prohibiting removal of devices from the room, prohibiting copying, photographing, video recording, or otherwise transferring any image onto any media, prohibiting disclosure of information by phone, video conference, laptop, tablet, or any other communication device, and allowing the Producing Party to visually monitor the inspection. These restrictions go far beyond anything in the model form and would impede IYO's ability to evaluate the device for purposes of establishing likelihood of confusion under the *Sleekcraft* factors. IYO's attorneys and experts need to meaningfully assess the product's form factor, functionality, and features. IYO deleted these provisions and proposes that any hardware prototypes be treated as ordinary "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" material subject to the standard protections.

**Dispute 4: $10 Million Liquidated Damages Clause.** Defendants' draft included a liquidated damages provision (their Paragraph 14) requiring payment of $10,000,000 per violation for any breach involving highly confidential material. The same $10 million penalty was incorporated into the Acknowledgment and Agreement to Be Bound (Exhibit A), requiring every individual receiving confidential information — including experts and litigation support staff — to personally agree to the penalty. There is no basis for this provision in the model form or any case law. The $10 million per-

**MINTZ**

May 29, 2026
Page 3



violation figure is designed to chill IYO's counsel and experts from accessing protected material and would make it effectively impossible for IYO to retain experts willing to review the most sensitive materials. IYO deleted this provision.

**Dispute 5: Burden of Proof on Confidentiality Challenges.** Defendants' draft placed the burden of proof on the "Challenging Party" — i.e., the party contesting a confidentiality designation must prove the designation is improper. The model protective order places the burden on the Designating Party, and IYO restored it to the standard form. The party asserting confidentiality must justify it; Defendants' proposed shift would require IYO to prove a negative.

**Dispute 6: Expert Definition.** Defendants narrowed the Expert definition to exclude any person who is "a past or current … **consultant** of a Party or of a Party's competitor," with an additional precondition that "no unresolved objections exist after proper notice has been given to all Parties." Given OpenAI's broad reach in the AI industry, this could exclude virtually every qualified expert. IYO narrowed the exclusion to officers, directors, and employees only (removing "consultant"), removed the "no unresolved objections" precondition, and clarified the temporal scope of the "anticipated to become" language.

### III. Prejudice to IYO

The delay in resolving the protective order is not merely academic. Defendants have refused to produce a single document in this case, citing among other things the absence of a protective order. IYO served its First Set of Requests for Production (Nos. 1–92) in December 2025, approximately one year prior to the fact discovery cut-off of early December 2026. But Defendants refused to produce any documents whatsoever. Defendants' intransigence on the protective order (and other issues) has consumed half of that year without Defendants having produced a single document. Clearly, Defendants are using these disputes as a tool to delay and/or avoid all discovery in this action and to jeopardize the schedule.

### IV. Relief Requested

IYO respectfully requests that the Court enter IYO's proposed protective order, which is substantially identical to the Court's model form except as described in the accompanying Declaration. IYO's proposed protective order and a redline comparison to the model form are annexed to the Declaration submitted herewith.

Respectfully submitted,

Anthony J. Viola