**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, 5th Floor, Redwood Shores, California 94065-2139 | TEL (650) 801-5000 FAX (650) 801-5100

**VIA ECF**

June 2, 2026

The Honorable Magistrate Judge Peter H. Kang.
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:    *IYO, Inc. v. IO Products, Inc. et al.*, Case No. 3:25-cv-04861-TLT (N.D. Cal.)**

Dear Judge Kang:

iyO's letter regarding the protective order (ECF 167), which it filed in flagrant violation of the Court's clear rules, contains material misstatements and omissions necessary to understand this dispute.  Those facts compel entry of the version of the protective order Defendants requested.

iyO's representation that Defendants delayed or refused to confer is incorrect.  After repeated exchanges about the protective order in January and February 2026, the parties did not communicate about the protective order between February 16 and late April 2026.  When iyO next raised the issue again, it attempted to bootstrap this issue (along with others concerning a new set of RFPs and interrogatories) onto a Court-ordered lead-to-lead meet and confer (per ECF 159) about ECF 113.  ECF 113 did not mention the protective order issue.  Injecting any new issues into that wide scope appeared inconsistent with the spirit of that order—indeed, discussing just a portion of the 72 RFPs at issue in that dispute took more than two hours.  *See* ECF 166 at 1.  Defendants explained this to iyO and offered to hold another meet and confer regarding the protective order.  Pollock Decl. ¶ 5.  During the ensuing meet and confer, iyO's counsel did not raise the protective order once. *Id.*  Defendants heard nothing further from iyO about the protective order until it unilaterally filed this letter.  *Id*. ¶ 6.  iyO's filing violated Sections H.1, H.2 and H.3 of the Court's Standing Order, demonstrating a disregard for the rules of the Court that heightens Defendants' concerns about iyO's vigilant adherence to a protective order.

The stripped down version of the protective order iyO seeks is insufficient given the extremely sensitive information iyO seeks.  Defendants' yet-to-be announced hardware devices are among the most closely guarded and anticipated products in the history of the technology industry.  Hundreds of articles have been published about every new hint, event, or rumor concerning the expected groundbreaking technology. Pollock Decl. ¶ 3. To adequately protect Defendants' trade secrets from improper use, sale, or leaks, fulsome protections must be adopted, including a definition of "sensitive material" that includes hardware designs, conditions for inspection, and a prosecution bar—all of which the model order provides.  *See* Ex. A, Sections 2.7, 2.9, 6.3, 8, 9, 10.  In addition, a liquidated damages provision is necessary to ensure that any person exposed to Defendants' trade secrets is highly incentivized to protect them and mitigate against the harm that a leak of them would entail.  *See* Ex. A, Section 14.  Requiring a liquidated damages provision is not without precedent.  *See, e.g.*, *Estate of Deri v. City of Los Angeles*, Case No. CV06-0883 (C.D. Cal.), ECF 74 at 4.  And it is warranted here, particularly given iyO's dogged pursuit of sweeping

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DUBAI | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEW YORK | PARIS | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

technical discovery in connection with a trademark dispute and vehement opposition to treating Defendants' hardware designs and prototypes as sensitive information. *See also* Pollock Decl. ¶¶ 7-8. To ensure the protective order functions as it needs to, the following provisions are also appropriate:

**Definition of Source Code/Sensitive Technical Material.**  As set forth in the Model Order, Section 2.9, extremely sensitive "Confidential Information or Items" includes "revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the … structure of … hardware designs, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means."  But iyO has made clear it will object to any designation beyond literal source code under this tier.  To avoid any ambiguity, Defendants' proposed edits tailor this provision to the facts of this case, including renaming it "Sensitive Technical Material."  This is appropriate given the highly confidential hardware designs.  *E.g., Apple Inc. v. Rivos Inc. et al.*, Case No. 5:22-CV-2637-PCP (N.D. Cal.), ECF 282 at 2.  The protections are no broader than necessary to protect Defendants' interest in their unreleased prototypes—indeed, by including the word "unreleased" devices, the provision self-executes a downgrade when devices are released.

**Inspection Provisions.**  As set forth in the Model Order, Section 9, an inspection protocol is appropriate for materials designated under this highest tier of protection, such as highly confidential prototypes.  This protocol is premised on inspection at opposing counsel's office, contemplates maintenance of a paper log (*id.* n.16), and other protections that iyO's proposal would dispense of entirely.  iyO does not offer any evidence that reviewing Defendants' core trade secret information at opposing counsel's office would be burdensome—indeed, as *Apple Inc.* reflects, these procedures are routine in trade secret actions involving confidential hardware.  iyO's proposal that the parties merely rely on AEO protections would not even require such information to be secured in locked areas, kept out of public view, or access tracked.  Defendants' proposal attempts to design a protocol that is commensurate with the confidentiality of documents relating to tangible devices and plans for them for which the appearance itself is part of the trade secret.  iyO has not made any attempt to negotiate conditions for inspection; it flat out refused to agree to a protective order that would require it.

**Expert Definition**, as set forth in Model Order, Section 2.7, with minor modifications.  iyO advocates for an order that would allow it to retain and share Defendants' confidential information with consultants from Defendants' direct competitors—experts who, iyO proposes, should be able to take Defendants' unreleased prototypes home as long as they want and then continue advising those same competitors.  Prohibition of this practice is plainly reasonable.  iyO offers no evidence that this provision would restrict its choice of experts—but the protective order includes a mechanism for iyO to obtain relief if it does.  *See* § 7.4(b)/(c).  As a further accommodation, Defendants propose to apply this term only to consultancy arrangements within the last 3 years.

**Prosecution Bar**, as set forth in the Model Order, Section 8.  iyO has requested every technical document Defendants have ever created regarding unreleased prototypes and designs, which are not yet patented.  iyO is represented by patent prosecution counsel who is involved in competitive decision-making.  *See, e.g.*, https://www.mintz.com/our-people/andrew-d-skale.  As such, this is a textbook case for the entry of both a prosecution and acquisition bar.  *E.g., In re Deutsche Bank Tr. Co. Americas*, 605 F.3d 1373, 1381 (Fed. Cir. 2010) (bar justified when "information related to new inventions and technology under development, especially those that are not already the subject of pending patent applications").  iyO cites

no authority for its position that the statutory basis of its claims, and not the nature of the requested confidential information, is controlling, and it is incorrect that prosecution bars are not entered outside of patent cases. *E.g.*, *Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, 2021 WL 10428690, at *3 (E.D. Tenn. Dec. 22, 2021) (collecting cases).

**Acquisition Bar.**  For similar reasons, an acquisition bar is necessary in this case.  "[I]t is fundamentally untenable to allow people to be in a situation in which highly confidential information known to them would be extremely useful, and then demand they act as though they don't know it." *Google LLC v. Sonos, Inc.*, 2021 WL 1621875, at *2 (N.D. Cal. Apr. 27, 2021) (granting acquisition bar).  Defendants' proposed acquisition bar mirrors the standard acquisition bar language entered by courts. *E.g.*, *Telebuyer, LLC v. Amazon.com, Inc.*, 2014 WL 5804334, at *4 (W.D. Wash. July 7, 2014).  Defendants have tailored their proposals to cover a limited scope of information and clarify that only persons who receive sensitive technical information are covered by each bar.

**Burden of Proof on Confidentiality Challenges.**  iyO has repeatedly denied the obvious confidentiality of Defendants' information and has signaled it will challenge Defendants' designation of highly confidential hardware specifications under the source code/sensitive material tier, without having any basis to do so.  It should bear the burden on any such challenges.  Contrary to iyO's unsupported assertion, shifting the burden on protective order challenges is not impermissible. *See Labbe v. Dometic Corp.*, 2021 WL 3418442, at *2 (E.D. Cal. Aug. 5, 2021) (placing burden on challenging party).

Defendants defer to the Court on what next steps would be appropriate in resolving this dispute.


Very truly yours,

*/s/ Margret M. Caruso*

Margret M. Caruso