MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
Micha Danzig (177923)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Tel.: (415) 432-6000

*Attorneys for Plaintiff IYO Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IYO, INC. | Case No. 3:25-cv-4861-TLT |
| Plaintiff, | PLAINTIFF IYO INC.'S OPPOSITION TO DEFENDANT TANG YEW TAN'S MOTION TO STRIKE OR DISMISS THE FAC |
| v. | |
| IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, OPENAI OPCO, LLC, SAM ALTMAN, SIR JONATHAN PAUL IVE, and TANG YEW TAN, | FAC Filed: March 13, 2026 |
| Defendants. | Hearing Date: July 28, 2026 |

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS

**TABLE OF CONTENTS**

Page

I.    ADOPTION AND INCORPORATION OF PRIOR OPPOSITION.................................1

II.    RESPONSE TO ARGUMENTS RAISED IN DEFENDANTS' REPLY BRIEF..............1

    A.    The FAC is the Operative Pleading ........................................................1

        1.    IYO Did Not Waive Its Right to Amend .......................................1

        2.    The Ninth Circuit's "Colorable Claim" Holding Is Precedent, Not Dicta...........................................................................................2

        3.    Defendants' Claim of Prejudice Does Not Withstand Scrutiny.................3

        4.    The State Court Action Will Not Address the Merits of This Case............3

    B.    The Court Plainly Has Jurisdiction Over the Trademark Claims ...........................3

        1.    Defendants Applied the Wrong Legal Standard .........................................3

        2.    Defendants' Abandonment of the Weynorth Trademark Applications Does Not Moot the Trademark Claims .................................4

        3.    The FAC Alleges a Valid Claim for Trademark Damages.........................5

    C.    The FAC Plausibly Alleges Tortious Interference......................................................8

        1.    The FAC Plausibly Alleges Knowledge of Specific Relationships.............8

        2.    The FAC Alleges Independently Wrongful Conduct ................................9

    D.    The FAC Plausibly Alleges Trade Secret Misappropriation ...............................9

        1.    The Incorporated Reply Continues to Use the Wrong Standard.................9

        2.    IYO's Trade Secrets Are Sufficiently Pleaded .........................................10

        3.    The FAC Plausibly Pleads Knowledge and Use.......................................12

    E.    The Colorado River Abstention Doctrine Remains Inapplicable ..........................16

        1.    The State-Court Case Does not Involve the Defendants ..........................16

        2.    Defendants' Attack on the Factors also Fails ..........................................17

III.    CONCLUSION................................................................................................18

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

i

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Beluca Ventures LLC v. Einride Aktiebolag*,
660 F. Supp. 3d 898 (N.D. Cal. 2023) ...............................................................................10, 11

*Brown v. Atchley*,
76 F.4th 862 (9th Cir. 2023) ...............................................................................................2

*CleanFish, LLC v. Sims*,
2020 WL 4732192 (N.D. Cal. Aug. 14, 2020) ..................................................................12

*Colo. River Conservation Dist. v. United States*,
424 U.S. 800 (1976).............................................................................................................17

*Colur World, LLC v. Supmedic, Inc.*,
801 F. Supp. 3d 524 (E.D. Pa. Sep. 9, 2025) ....................................................................7

*CPI Sec. Sys. v. Vivint Smart Home, Inc.*,
145 F.4th 390 (4th Cir. 2025) .............................................................................................7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000).............................................................................................................5

*Gibson Brands, Inc. v. Viacom Int'l, Inc.*,
640 F. App'x 677 (9th Cir. 2016) .......................................................................................4

*Iyo, Inc. v. Io Prods., Inc.*,
2025 WL 3471705 (9th Cir. Dec. 3, 2025) ........................................................................2, 3

*Jason Scott Collection, Inc. v. Trendily Furniture, Ltd. Liab. Co.*,
68 F.4th 1203 (9th Cir. 2023) .............................................................................................7

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ..............................................................................................4, 10

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) ..............................................................................................2, 4

*LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*,
124 F.4th 1122 (9th Cir. 2024) ...........................................................................................7

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
149 F.4th 1081 (9th Cir. 2025) ...........................................................................10, 11, 15

*Ramirez v. Cnty. of San Bernardino*,
806 F.3d 1002 (9th Cir. 2015) ............................................................................................1

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

*Schneider v. California Dep't of Corr.*,
  151 F.3d 1194 (9th Cir. 1998) ...................................................................................................9

*Seneca Ins. Co. v. Strange Land, Inc.*,
  862 F.3d 835 (9th Cir. 2017) ..............................................................................................17, 18

*Stone Brewing Co., LLC v. Molson Coors Bev. Co. USA LLC*,
  2024 WL 5244556 (9th Cir. Dec. 30, 2024) ..............................................................................7

*United States v. Brown*,
  996 F.3d 998 (9th Cir. 2021) ....................................................................................................2

*United States v. State Water Res. Control Bd.*,
  988 F.3d 1194 (9th Cir. 2021) .................................................................................................18

*Wilson Util. Constr. Co. v. Am. Zurich Ins. Co.*,
  2026 WL 465943 (C.D. Cal. Jan. 9, 2026) .............................................................................16

*Wisk Aero LLC v. Archer Aviation Inc.*
  2021 WL 8820180 (N.D. Cal. Aug. 24, 2021) ................................................................. *passim*

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

- iii -

Plaintiff IYO Inc. ("IYO") respectfully submits this Opposition to Defendant Tang Yew Tan's ("Tan") Motion to Strike (ECF 171). Because Tan has adopted both the opening motion filed by the original Defendants (ECF 128) and the Reply brief filed in support thereof (ECF 152, the "Incorporated Reply"), IYO (1) incorporates by reference its previously filed Opposition (ECF 141) and (2) responds to arguments raised in the Incorporated Reply that were not fully addressed in IYO's prior filed Opposition.

## I.    ADOPTION AND INCORPORATION OF PRIOR OPPOSITION

IYO hereby adopts and incorporates by reference, as if set forth fully herein, all arguments, authorities, and evidence set forth in Plaintiff IYO Inc.'s Memorandum of Points and Authorities in Opposition to Defendants' Motion to Strike or Dismiss (ECF 141), filed April 10, 2026. That Opposition addresses the arguments raised in Defendants' opening motion (ECF 128), which Tan has adopted in its entirety. IYO will not repeat those arguments here.

## II.    RESPONSE TO ARGUMENTS RAISED IN DEFENDANTS' REPLY BRIEF

Because Tan has adopted Defendants' Incorporated Reply (ECF 152), which raises arguments not fully addressed in IYO's prior Opposition, IYO responds to those arguments below.

### A.    The FAC is the Operative Pleading

#### 1.    IYO Did Not Waive Its Right to Amend

The Incorporated Reply argues that an "express waiver" of the Rule 15(a)(1)(A) right is not required, only a "knowing and voluntary" one. ECF 152 at 7. But this argument ignores the dispositive fact that the Court treated the FAC as the operative pleading. On March 26, 2026, the Court denied Defendants' prior motion to dismiss as moot in light of the FAC and pulled the hearing off calendar. ECF 124. That ruling dictates that the FAC was properly filed and operative. *Ramirez v. Cnty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent." (internal quotations and citation omitted)). The Incorporated Reply never addresses this ruling or explains how the Court could have treated the FAC as operative if IYO had waived its right to file it.

Moreover, even under Defendants' view of the law, a waiver must be "knowing." Here,

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW
SAN DIEGO

1

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS

IYO interpreted the scheduling order's "Last Day to Amend Pleading" as applying to Rule 16's leave-to-amend mechanism, not to the self-executing, "absolute" right under Rule 15(a)(1)(B), which operates independently and does not depend on leave of court. *Id.* at 1006–07. As such, IYO sought to extend the Rule 16 deadline in its motion, which did not address the deadline under Rule 15(a)(1)(B). Consequently, there can be no "knowing" waiver. And unsurprisingly, Defendants cite no case in which a party was found to have waived the right to amend under Rule 15(a)(1)(B).

### 2.    The Ninth Circuit's "Colorable Claim" Holding Is Precedent, Not Dicta

Defendants' Incorporated Reply devoted extensive argument to the proposition that the Ninth Circuit's finding that IYO has a "colorable claim" that the May 21, 2025 announcement was itself an infringing advertisement is dicta. ECF 152 at 9 & n.1. This characterization is merely wishful thinking by Defendants. The Ninth Circuit's statement was precisely the finding it was called upon to make: under *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.,* 762 F.3d 867, 873 (9th Cir. 2014), the existence of a colorable Lanham Act claim is dispositive of subject-matter jurisdiction. The Ninth Circuit found that IYO had stated such a claim. *Iyo, Inc. v. Io Prods., Inc.*, 2025 WL 3471705, at *1 (9th Cir. Dec. 3, 2025). That is a holding, not dicta.

Defendants point to the Ninth Circuit's subsequent statement that "[a]t a minimum, however, the case is ripe because IO's alleged infringement is sufficiently imminent" to try and argue that the colorable-claim finding was unnecessary. ECF 152 at 9 n.1. But an independent holding that precedes an alternative, narrower holding is not dicta — it is an alternative holding that is equally binding under Ninth Circuit precedent. *Brown v. Atchley*, 76 F.4th 862, 874 (9th Cir. 2023) ("[W]hen we give clear direction to the district court on how to proceed with respect to an issue raised by the parties, it is binding precedent, even if characterized as an alternative holding." (internal quotations and citation omitted)); *United States v. Brown*, 996 F.3d 998, 1010 (9th Cir. 2021) (stating that "alternative holding[s]" are "not dicta"). The Ninth Circuit's colorable-claim and ripeness findings are two independent bases for the same result, and thus, both carry precedential force. *Brown*, 996 F.3d at 1010 ("[W]here a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*." (internal quotations and citation omitted)).

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

- 2 -

The Incorporated Reply further argues that "changed circumstances" eliminate the precedential value of the Ninth Circuit's ruling because the "factual predicate" — Defendants' announced intention to use "io" as a trademark — "is no longer operative." ECF 152 at 9 n.1. But the Ninth Circuit's finding that the May 21, 2025 announcement "was itself an infringing advertisement" is a characterization of completed past conduct that no subsequent promise can undo. *Iyo*, 2025 WL 3471705, at *1 (9th Cir.). The video announcement occurred and when Defendants released it to the world it caused IYO significant, ongoing damage. The Ninth Circuit found a colorable claim that it constituted use in commerce. That legal conclusion was not contingent on Defendants' future plans. If a defendant could moot an appellate trademark ruling about completed past conduct simply by changing its conduct after the ruling, no appellate determination would carry any weight, and defendants would be free to engage in hit-and-run infringement with impunity.

### 3. Defendants' Claim of Prejudice Does Not Withstand Scrutiny

The Incorporated Reply argues that Defendants were prejudiced by the one week "delay" in filing the FAC because the Court purportedly would have dismissed the case in April and now they have to wait until the July hearing for their supposed dismissal. But given the Ninth Circuit's dispositive holding that IYO plausibly alleged trademark infringement, this prejudice argument does not make it off the runway.  Moreover, this case is not going to trial until 2028 and Defendants have not articulated how the alleged 3-month delay in hearing this motion affects them at all.

### 4. The State Court Action Will Not Address the Merits of This Case

The Incorporated Reply contends that IYO can obtain complete relief in state court, but that argument fails for several independent reasons: (1) the state court action is stayed; (2) Defendants are not parties to that action; and (3) that action alleges different claims against a different party. In short, this argument is untenable.

## B. The Court Plainly Has Jurisdiction Over the Trademark Claims

### 1. Defendants Applied the Wrong Legal Standard

The Incorporated Reply characterizes IYO's "lead argument" as being "not that its claims

are well pled" but rather "that the Court should not consider the documents that give context to its futile claims." ECF 152 at 7. This is a mischaracterization. IYO's argument (at pages 3–5 of its Opposition) was that Defendants have intentionally applied the wrong legal standard to the motion to dismiss the trademark claims so they could improperly rely on extrinsic evidence. Under *La Quinta* and *Gibson Brands*, Rule 12(b)(6), and not Rule 12(b)(1), governs Defendants' challenge to the sufficiency of the allegations concerning their use in commerce. 762 F.3d at 872–74; *Gibson Brands, Inc. v. Viacom Int'l, Inc.*, 640 F. App'x 677, 678 (9th Cir. 2016). Under the correct 12(b)(6) standard, the Court must accept IYO's well-pleaded allegations as true and may not consider extrinsic evidence such as the Welinder Declaration, the trademark abandonment filings, or media coverage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99, 1002 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6).").

Defendants' entire mootness argument depends on the Court considering evidence outside the four corners of the FAC. But under Rule 12(b)(6), that evidence is inadmissible and the FAC's well-pleaded allegations of use in commerce—which the Ninth Circuit already found plausible— must be accepted as true. Defendants' argument that these extrinsic documents do not introduce factual disputes has no merit. Indeed, contrary to Defendants' insinuation (at 7), IYO addressed the improper extrinsic evidence in its Opposition, explaining why (at pages 4–6 and 9–11) it did not support dismissal.

**2.**     **Defendants' Abandonment of the Weynorth Trademark Applications Does Not Moot the Trademark Claims**

In the Incorporated Reply, Defendants tout their abandonment of all eight "io" trademark registration applications as evidence of their commitment not to use the mark. ECF 152 at 11. Far from demonstrating genuine cessation, these abandonments were compelled by IYO's exposure of Defendants' duplicity – telling the USPTO under oath, that they fully intended to continue using the IO mark, while telling this Court the opposite. All eight applications were supported by declarations of intent to use the IO mark in commerce. Defendants also filed with the PTO a request

for an extension of time to file a statement of use as to one of those applications — swearing **under penalty of perjury** that they presently maintained a *bona fide* intent to use the mark in commerce. ECF 138-1 (requesting six-month extension of time to file Statement of Use for Serial No. 98/975,630 on March 25, 2026). They did so *after* filing in this case the Welinder Declaration, which swore, also under penalty of perjury, the exact opposite, that Defendants would not use "io" as a trademark. ECF 105-2 (filed February 9, 2026).

In other words, IYO exposed that Defendants were either committing perjury and fraud on the Court or perjury and fraud on the PTO. Defendants abandoned the applications only after IYO flagged this fraud in its Opposition. ECF 141 at 11. These facts do not demonstrate irrevocable cessation; they demonstrate that Defendants lied under oath either to this Court or to the PTO, and that Defendants chose to resolve the inconsistency only when caught.

Moreover, Defendants' abandonment of the Weynorth trademark applications is not the panacea they claim it to be because: (1) it does not eliminate all the other instrumentalities of infringement that Defendants retain (*e.g.* the corporate name "io Products, Inc.," the io.com domain, the prototype, the personnel, and the corporate infrastructure that enabled the challenged conduct), and (2) Defendants can simply refile for a confusingly similar mark — **or even for "IO" itself** — at any time. Abandonment by Weynorth (a non-defendant) does not prevent this. Moreover, Defendants still plan to release a competing product under an undisclosed name, which could be confusingly similar. The voluntary cessation doctrine exists precisely because such self-serving, unilateral, and revocable actions do not moot a case. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000).

### 3.    The FAC Alleges a Valid Claim for Trademark Damages

Defendants' argument that the FAC failed to plead cognizable past damages under the Lanham Act fundamentally mischaracterizes IYO's damages theory and ignores the cascading harm that the FAC alleges in detail. Defendants frame IYO's damages claim as resting solely on "disrupted fundraising" and argue that "lack of investor confidence . . . is not actionable under the Lanham Act." ECF 152 at 12 (citing *LegalForce RAPC Worldwide, PC v. LegalForce, Inc.*, 124

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS

F.4th 1122, 1125–26 (9th Cir. 2024)).  This argument is flawed.

First, the FAC does not allege that a loss of equity value is itself the Lanham Act injury. It alleges that consumer confusion caused by Defendants' infringing May 21, 2025 announcement destroyed IYO's ability to fund manufacturing, thereby eliminating IYO's ability to bring its IYO One product to market and damaging IYO's goodwill and competitive position. That cascading chain — rooted in marketplace confusion — states a cognizable theory of actual damages under 15 U.S.C. § 1117(a), which specifies that a plaintiff may recover "any damages sustained by" it.

Second, the FAC's allegations are far more specific than Defendants acknowledge. The FAC alleges that immediately upon the May 21 announcement, IYO's founder "began receiving an avalanche of communications" from "iyO investors, professional network, etc.," reporting confusion between the parties' marks. FAC ¶ 203. Other technology professionals "reported to IYO the confusion they were hearing and expected based on Defendants' use of IO." *Id.* ¶ 204. Investors specifically stated concerns that "the public will believe that IYO is the one stealing Defendants' brand." *Id.* ¶ 225. Others, "[e]ven [those] who understand that Defendants are in the wrong have expressed hesitancy to invest in a company facing inevitable confusion in the marketplace from one of the most well-resourced technology companies in the world." *Id.* ¶ 297. These are not conclusory assertions — they are specific factual allegations tied to market confusion.

Third, as alleged in the FAC, this confusion has had concrete downstream consequences for IYO's ability to sell goods and services. The FAC alleges that IYO's capital raise "had been going well before" the announcement but "since that time, IYO has not been able to secure any additional funding or pledges for funding due to investors' expressed concerns over the infringement." *Id.* ¶ 227. "Without the raise, IYO has been unable to fund its manufacturing efforts or the advertising needed to market its products. This in turn has impacted IYO's anticipated sales." *Id.* ¶ 228. At the time of the announcement, "IYO was in the process of manufacturing 20,000 units." *Id.* ¶ 71. Because of Defendants' conduct, "IYO has not been able to fund its manufacturing efforts," which "has impacted IYO's anticipated sales so severely that IYO is not

only at risk of losing significant market share, but also at risk of losing investors and manufacturing partners, with virtually no ability to replace them." *Id.* ¶ 74. IYO's own manufacturing partner "altered its investment in IYO" after Defendants' interference. *Id.* ¶ 298. These allegations plausibly plead that marketplace confusion caused concrete, quantifiable harm to IYO's ability to bring its goods to market — the core of Lanham Act damages.

Defendants' reliance on *LegalForce* is misplaced. There, "equity" is what was being sold. The court held that "equity" is not itself a "good" or "service" under the Lanham Act. 124 F.4th at 1125–26. Here, IYO alleges that confusion among consumers and market participants prevented it from selling its IYO One ***products*** to the general public (FAC ¶¶ 69–71) because the confusion dried up the manufacturing capital needed to produce them, destroying the value of IYO's brand and trademark. The Lanham Act has never required that recoverable damage be caused through a single, direct mechanism; it is well established that a plaintiff may recover for the "downstream deflation in brand name value" that infringement precipitates. *Colur World, LLC v. Supmedic, Inc.*, 801 F. Supp. 3d 524, 537, (E.D. Pa. Sep. 9, 2025) (explaining that remedies for infringement "have less to do with the sale of a particular infringing product but must also consider the downstream deflation in brand name value that the infringement precipitates"). Indeed, loss of goodwill, reputational harm, and damaged business relationships are all cognizable forms of Lanham Act damages. *See Stone Brewing Co., LLC v. Molson Coors Bev. Co. USA LLC*, 2024 WL 5244556, at *3 (9th Cir. Dec. 30, 2024) (affirming $56 million jury award for general damages including past lost profits, future lost profits, and corrective advertising); *Jason Scott Collection, Inc. v. Trendily Furniture, Ltd. Liab. Co.*, 68 F.4th 1203, 1221–22 (9th Cir. 2023) (upholding damages award based on lost business relationships); *CPI Sec. Sys. v. Vivint Smart Home, Inc.*, 145 F.4th 390, 402 (4th Cir. 2025) (upholding $5.4 million damages award for Lanham Act claim based on, *inter alia*, injury to plaintiff's goodwill).

Fourth, both the district court and the Ninth Circuit have already credited IYO's investor confusion as a proxy for consumer confusion in this very case. Defendants cannot simply dismiss the very evidence that two courts have already found probative of the likelihood-of-confusion

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
ATTORNEYS AT LAW

- 7 -

inquiry as irrelevant to damages.

Fifth, IYO's damages also includes, under 15 U.S.C. § 1117(a), "defendant's profits." *Id.* Defendants completely ignore the profits they made by misappropriating IYO's brand, goodwill, and trademark, including via their sale of the infringing IO brand and their sale of a product marketed under the IO brand, both of which were included in the May 2025 transaction involving Defendants.

Finally, Defendants' comparison (at 12) to *WeWork* — where "the complaint offer[ed] nothing beyond conclusions" — ignores the FAC's specificity. Unlike in *WeWork*, the FAC identifies specific communications from identified categories of market participants (investors, the professional network), specific consequences (frozen capital raise, inability to fund 20,000-unit manufacturing run, manufacturing partner altering investment), and a specific causal chain linking all of it to the May 21, 2025 infringing advertisement. These allegations satisfy the Ninth Circuit's pleading standard for Lanham Act damages. Addressing them further is inappropriate in a motion to dismiss.

## C.    The FAC Plausibly Alleges Tortious Interference

### 1.    The FAC Plausibly Alleges Knowledge of Specific Relationships

The Incorporated Reply can only argue that the FAC does not plausibly allege knowledge of specific relationships by ignoring the FAC's detailed allegations. The FAC alleges that "[t]hrough meetings in Spring 2025, Defendants had direct knowledge of IYO's ongoing capital raise, its manufacturing plans for an initial batch of 20,000 IYO ONE units, and IYO's pre-sale activities" and that "the very purpose of several of these meetings was to discuss Defendants' possible participation in IYO's capital raise." FAC ¶ 286. It alleges that "Defendants also knew of IYO's business relationships through their earlier interactions with IYO dating back to 2022." *Id.* ¶ 287. And it alleges in detail the specific meetings — in 2022 with Apollo Projects representatives (*Id.* ¶¶ 167–69), in 2022 with LoveFrom (*Id.* ¶¶ 171–72), and in Spring 2025 with Welinder and Tan (*Id.* ¶¶ 182–91) — through which that knowledge was gained, including that seven of Defendants' representatives were fitted with demo IYO ONE devices. *Id.* ¶ 187. In other words,

the FAC plausibly alleges that Defendants had knowledge of IYO's specific relationships.

The Incorporated Reply accuses IYO of "inject[ing] facts not pled in the FAC," specifically that (1) Defendants "knew who these relationships were with and why they were critical to IYO's imminent market entry" and (2) Defendants "knew [IYO's funding round] was led by IYO's manufacturer." ECF 152 at 13. The first is alleged in FAC ¶ 287 and the second is implicit in the FAC's allegations regarding IYO's investment overtures and meetings with Defendants. As such, Defendants' reliance on *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), is misplaced. To the extent the Court disagrees, IYO requests leave to replead.

### 2. The FAC Alleges Independently Wrongful Conduct

Defendants' Incorporated Reply argues (at 14) that the FAC does not plausibly allege that Defendants knew their conduct was substantially certain to disrupt IYO's expectancies at the time they engaged in it. That is false. The FAC alleges that Defendants' May 21, 2025 announcement was timed and structured to swamp IYO's market presence, derail investor confidence, and destabilize manufacturing and partner relationships essential to IYO's survival. FAC ¶¶ 26–28, 74, 288, 295–300. Defendants' disagreement with these allegations does not warrant dismissal. Indeed, "timing alone may be sufficient to prove causation. . . . [T]he real issue is whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide." Jud. Council of Cal. Civ. Jury Instrs. CACI No. 2202 (2022) (quoting *Overhill Farms, Inc. v. Lopez*, 190 Cal. App. 4th 1248, 1267 (2010)).

### D. The FAC Plausibly Alleges Trade Secret Misappropriation

### 1. The Incorporated Reply Continues to Use the Wrong Standard

Defendants' Incorporated Reply does not address or even acknowledge IYO's point that Defendants' motion improperly asks the Court to credit their preferred factual narrative – drawn from selectively chosen materials ***outside the complaint*** – over the FAC's well-pleaded allegations. Nor do Defendants address case law holding that courts may not use incorporation or judicial notice "to resolve factual disputes against the plaintiff's well-pled allegations" or to credit

a defendant's competing narrative at the pleading stage. *Khoja*, 899 F.3d at 1014–15. Indeed, these are fact-intensive inquiries that cannot be resolved on a motion to dismiss. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1087–89 (9th Cir. 2025) (trade secret identification and misappropriation are questions of fact to be resolved at summary judgment or trial); *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898, 909–11 (N.D. Cal. 2023) (rejecting defendant's attempt to litigate secrecy, public availability, and misuse of alleged trade secrets on a motion to dismiss because those are disputed factual questions).

Implicitly acknowledging these standards, Defendants revert to arguing that the FAC fails to adequately identify IYO's trade secrets or to plausibly allege knowledge and use. But their arguments amount to a disagreement with the facts pleaded, which is, again, not something that can be resolved on a motion to dismiss. In effect, Defendants ask the Court to grant them summary judgment while steadfastly refusing to produce a single document. That is not how Rule 12(b)(6) works.

### 2.    IYO's Trade Secrets Are Sufficiently Pleaded

The Incorporated Reply contends (at 16) that IYO's trade secret identification amounts to nothing more than "catchall phrases and nondescript categories" insufficient to put Defendants on notice. This mischaracterizes both the FAC and the governing law. As the Ninth Circuit held in *Quintara*, 149 F.4th at 1085, 1087–89, "[w]hether a trade secret is identified with 'sufficient particularity' is a question of fact" reserved "for summary judgment or trial," and a plaintiff is not required "to identify with particularity its alleged trade secrets from the start" because the disclosure evolves through an "iterative" discovery process. *Id.* at 1085, 1088. The basic test at the pleading stage is whether the plaintiff has alleged "something beyond general knowledge" and provided "enough specificity to put the defendant on notice regarding the nature of the trade secret." *Beluca Ventures*, 660 F. Supp. 3d at 909.

Here the FAC does much more than that. As is set forth in the Opposition, the FAC identifies and describes seven specific categories of trade secret information all tied to a single product line developed over eight years at a cost exceeding $60 million. FAC ¶¶ 19, 148, 305, 322.

These are not abstract generalities; as detailed in the Opposition, they describe specific engineering and design outputs directed at a concrete product.  Moreover, unlike the cases that Defendants cite, the FAC connects those trade secrets to a detailed factual narrative of misappropriation that further defines their boundaries. It identifies the specific individual who extracted the secrets (Sargent), the mechanism of extraction (downloading 33 files totaling 79.6 MB, exporting 17 CAD files to cross-platform Parasolid format, assigning obfuscated gibberish filenames), the time frame (June 3–6 and July 25–29, 2024), the recipient (Tan), and the circumstances of at least one disclosure (the two-hour dinner at Cotogna, during which Sargent shared physical samples, a PowerPoint, and confidential CAD drawings). FAC ¶¶ 106–119, 135–140. These allegations describing the "who, what, when, where, and how" are more than enough to put Defendants on notice regarding the nature of the trade secrets IYO contends were stolen.

Defendants' cited authorities are inapposite. In *Google LLC v. Point Financial, Inc.*, the complaint identified trade secrets in "broad, categorical terms" with no factual narrative of who took them or how. 2026 WL 579462, at *3 (N.D. Cal. Mar. 2, 2026). Indeed, the full identification was: "valuable trade secrets both as integrated in the design of the chips and as part of the development of more advanced chips and other potential uses." *Id.* That is nothing like the detail alleged here where IYO has identified specific trade secrets, a specific wrongdoer, specific files, specific dates, a specific recipient, and a specific mechanism of misappropriation.

The same is true for Defendants' citations to *National Specialty Pharmacy, LLC v. Padhye*, which predates *Quintara*, wherein the allegations were generic "catchall" categories of "vendor and partner information, proprietary formulas, business processes, pricing strategies" with no specificity as to what was stolen. 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024). Likewise, in *Synopsys, Inc. v. ATopTech, Inc.*, which also predates *Quintara*, the court found it "impossible" to determine trade secret boundaries because the plaintiff alleged only "vague references to an enormous array of potential sources." 2013 WL 5770542, at *6. Here, by contrast, IYO's trade secrets are tied to specific products, specific engineering disciplines, and a specific development history connected to a granular factual account of extraction, transfer, and use.

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS

### 3.    The FAC Plausibly Pleads Knowledge and Use

As the court held in *Wisk Aero LLC v. Archer Aviation Inc.*, a case reminiscent of this one:

[M]isappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.

2021 WL 8820180, at *10–11 (N.D. Cal. Aug. 24, 2021) (quoting *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 331 F. Supp. 3d 977, 984 (N.D. Cal. 2018)). "Circumstantial evidence is particularly appropriate in trade secret cases." *Id.* at 11 (quoting *UniRAM Tech., Inc. v. Taiwan Semiconductor Mfg. Co.*, 617 F. Supp. 2d 938, 944 (N.D. Cal. 2007)).

**Knowledge.** The Incorporated Reply argues that the FAC does not sufficiently plead knowledge because it does not plausibly exclude innocent explanations. ECF 15 at 17 (relying on *CleanFish, LLC v. Sims*, 2020 WL 4732192 (N.D. Cal. Aug. 14, 2020). That same argument was expressly rejected in *Wisk Aero LLC v. Archer Aviation Inc.* 2021 WL 8820180 (N.D. Cal. Aug. 24, 2021). There, the court held that defendant's repeated contention—based on *CleanFish* and its predecessor *Veronica Foods Co. v. Ecklin*—"that [plaintiff's] allegations must 'affirmatively exclude an innocent explanation'" misstated the law. *Id.* at *16. "[A]ll that [*Veronica Foods*] did was apply the usual *Twombly-Iqbal* standard, filtered through several Ninth Circuit cases, to say that a complaint must contain allegations that 'tend[]' to exclude an innocent explanation." *Id.* "To say that another way, the allegations must show that the claim is plausible, not just theoretically possible." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Or a third way, the complaint must not be merely consistent with the unlawful explanation." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court then held: "[Plaintiff] does not have to foreclose all other explanations at the pleading stage. It just needs to plausibly plead misappropriation. If taken as true with all reasonable inferences in its favor, its allegations tend to exclude an innocent explanation." *Id.*

Applying that standard here, IYO's allegations do far more than merely "tend to exclude" an innocent explanation — they affirmatively plead a detailed sequence of surreptitious conduct

inconsistent with any lawful exchange. The surrounding circumstances alleged in the FAC negate any inference of innocent receipt. Sargent downloaded 33 files in the days before the meeting (FAC ¶ 106), exported 17 CAD files to a cross-platform format that IYO did not use (FAC ¶¶ 112–13), gave them gibberish names such as "ergetght.x_t" to disguise their contents (FAC ¶ 111), accessed dormant IP folders for the first time in his employment history (FAC ¶ 108), conducted all obfuscated exports outside core business hours (FAC ¶ 114), and shared the resulting materials at a restaurant dinner (and possibly at other times) rather than through any normal business channel (FAC ¶ 115).

The Incorporated Reply's assertion (at 17) that the FAC does not affirmatively allege that Tan "knew of Sargent's alleged downloads of, exports of, or renaming of files," misstates what is required under the law. The law does not require IYO to plead that defendants had granular awareness of the mechanics of extraction. It requires only that IYO plausibly allege that Defendants "knew or had reason to know" that the information was acquired by improper means or derived from a person who owed a duty of confidentiality. 18 U.S.C. § 1839(5)(A); Cal. Civ. Code § 3426.1(b)(1). As *Wisk* held, "[t]he competitor's knowledge will often have to be inferred from [circumstantial] evidence at the pleading stage" because "few trade-secret plaintiffs will ever have anything but circumstantial evidence when pleading a complaint, before any discovery has occurred." 2021 WL 8820180, at *15.

The FAC alleges far more than generic suspicion. It alleges that Tan — a 24-year Apple veteran who served as Vice President of Product Design for the iPhone and Apple Watch (FAC ¶ 44) and who "understood the sensitive and proprietary nature of CAD drawings and other design documentation" (*Id.* ¶ 46) — personally initiated contact with IYO's Design and Manufacturing Lead (*Id.* ¶¶ 9, 103), arranged a meeting (*Id.* ¶¶ 11, 104), and received confidential CAD drawings, physical prototypes that could be dismantled to show their inner workings, and a PowerPoint presentation — all from a current IYO employee who was bound by a confidentiality agreement. *Id.* ¶¶ 13, 97, 115–119. Tan asked questions "nearly the entire time" during the dinner. *Id.* ¶ 129.

The Incorporated Reply's argument (at 19) that Tan could have reasonably believed that

Sargent was authorized to be sharing the information he shared based on Sargent's purported assertion that the prototype was "approved to be . . . used publicly," mischaracterizes the FAC. The FAC alleges that Sargent's claim was *false*: the IYO ONE "was not permitted to wear or use publicly" (FAC ¶ 125) and "IYO did not have any non-functional, cosmetic 'mock ups' of the IYO ONE devices" (*Id.* ¶ 121). The FAC also pleads that anyone with Tan's experience would have recognized the circumstances as improper. FAC ¶¶ 46–47, 310(a), 313, 327, 331. It also alleges that Defendants are funding Sargent's defense in a separate action IYO brought against him for trade secret misappropriation. FAC ¶¶ 158, 313(d). This allegation — which the Incorporated Reply conspicuously ignores — strongly supports an inference of knowledge: if Defendants had no involvement in or knowledge of Sargent's misconduct, why would they be paying his legal bills?

These allegations, taken together with all reasonable inferences drawn in IYO's favor, plausibly allege that Tan knew or had reason to know the information was acquired improperly. The *Wisk* court found analogous allegations sufficient, holding that "the allegations together, with all reasonable inferences drawn in [plaintiff's] favor, plausibly imply" misappropriation, and that a competitor's knowledge "will often have to be inferred" at the pleading stage. 2021 WL 8820180, at *15.

Critically, the *Wisk* court rejected the same atomizing strategy Defendants employ here — breaking the allegations into individual pieces and arguing each is insufficient standing alone — holding that "just because one piece of circumstantial evidence would be insufficient if it were all the plaintiff alleged does not mean that that piece of evidence remains worthless once refracted through the lens of other circumstantial evidence." *Id.* at *16. The proper inquiry focuses on the "whole gestalt" of the allegations woven together, "not each in isolation." *Id.* at *11.

**Use.** The Incorporated Reply argues (at 18) that a fast development timeline alone is insufficient to establish use of trade secrets and that IYO's timeline is for a "prototype, not a finished product." But *Wisk* squarely rejected the proposition that timeline evidence is categorically insufficient at the pleading stage. There, the court held that "[d]evelopment of a

product on an 'implausibly fast' timeline can be solid evidence that it was borne of misappropriation." 2021 WL 8820180, at *22 (citing *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 849 (N.D. Cal. 2019); *Ajaxo Inc. v. ETrade Grp. Inc.*, 135 Cal. App. 4th 21, 53 (2005)). As such, that court denied a motion to dismiss where the plaintiff alleged "implausibly fast development" concurrent with the influx of former employees, holding those allegations "reasonably impl[y] that [defendant] 'had reason to know' that the [product] was improperly derived in part from [plaintiff's] trade secrets." *Id.* at *15.

The FAC's allegations here are substantially stronger than those the *Wisk* court found sufficient. The FAC alleges not merely that a former employee retained files, but provides the precise mechanism of extraction (33 downloads, 17 CAD exports to cross-platform format, gibberish filenames), the precise dates (June 3–6 and July 25–29, 2024), the precise recipient (Tan), and the precise context of at least one such exchange (a dinner arranged by Tan himself). FAC ¶¶ 106–119, 135–140. The FAC then connects that extraction to io Products' development timeline: io Products was in the "early stages of ideation" in June 2024, lacked even a 3D printer as of July 2024, and announced a working prototype approximately ten months later. *Id.* ¶¶ 6–7, 132, 138, 147–149. IYO, by contrast, spent eight years and over $60 million developing comparable technology. *Id.* ¶¶ 19, 148.

The Incorporated Reply attempts to minimize the timeline by arguing (at 18) it was for a "prototype, not a finished product." But that is a factual defense. Whether 10–11 months is plausible for a prototype when a company starts from scratch without basic equipment is precisely the kind of factual question the Court cannot resolve at this stage. *See Quintara*, 149 F.4th at 1087–89. And the Incorporated Reply's citation to *GMH Capital Partners v. Fitts*, an out of circuit district court case, is unavailing. There, the plaintiff had no factual allegations as to the who, what, where, when, and how of the misappropriation. 2025 WL 950674, at *9–11 (S.D.N.Y. March 28, 2025). In such circumstances, the court found that allegation of a fast development timeline was alone insufficient. *Id.* Here, comparatively, the FAC contains detailed factual allegations of the misappropriation.

The Incorporated Reply also argues (at 18) that IYO's own allegations about Defendants' resources and expertise undercut the implausibility of the timeline. But the *Wisk* court also confronted this exact argument: the defendant there also had substantial resources, experienced engineers, and prior industry expertise — and still, the court found the allegations sufficient to survive a motion to dismiss. 2021 WL 8820180, at *15. As the court explained, a plaintiff "does not have to foreclose all other explanations at the pleading stage. It just needs to plausibly plead misappropriation." *Id.* at *16.

In sum, the FAC alleges specific trade secrets, a specific wrongdoer, a specific mechanism of extraction, a specific recipient, a specific timeline of use, and a resulting product that could not plausibly have been developed without the misappropriated information. That is more than sufficient to survive a motion to dismiss.

**E.    The Colorado River Abstention Doctrine Remains Inapplicable**

**1.    The State-Court Case Does not Involve the Defendants**

Defendants' Colorado River abstention argument collapses at the threshold because it cannot satisfy the doctrine's initial requirement that "substantially the same parties are contemporaneously litigating substantially the same issues." *Wilson Util. Constr. Co. v. Am. Zurich Ins. Co.*, 2026 WL 465943, at *3 (C.D. Cal. Jan. 9, 2026) (citation omitted).  Defendants' argument (at 19) that the trademark claims should not be considered because they are no longer justiciable, implicitly concedes that if the Court rejects that assertion (as it should), the doctrine is inapplicable.

Likewise, Defendants' attempt to unilaterally declare themselves to be the Does in the state-court case not involving them, all to manufacture parallelism, fails. The state-court Doe defendants have never been identified, served, or brought into the litigation — they are procedural placeholders under CCP § 474 who are not "contemporaneously litigating" anything. The Incorporated Reply's challenge that IYO should "commit on the record" not to substitute these Defendants for the state-court Does (ECF 152 at 20) has no basis in law. Moreover, any doubt must be resolved against application of the Doctrine, given the "strong presumption" against

abstention. *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). Indeed, as the Supreme Court held, it is "exceedingly rare" and "exceptional" for a federal court to abstain from its "virtually unflagging obligation to exercise the jurisdiction given to [it]." *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

### 2.    Defendants' Attack on the Factors also Fails

Turning to the individual factors under the Doctrine, that analysis also fails.

#### a.    Factor 3 (avoiding piecemeal litigation)

The Incorporated Reply argues (at 20) that "a finding in state court that Sargent did not misappropriate iyO's trade secrets would preclude iyO's trade secret claims here." But the state action is stayed pending appeal and cannot generate any conflicting rulings in the foreseeable future. And even if it were active, a determination about Sargent's individual liability would not resolve the trademark infringement (Counts 1–4), tortious interference (Count 7), or DTSA (Count 9) claims that are entirely absent from the state action.

Moreover, even if Sargent were found liable in the state court, Defendants would surely argue that such a finding would not automatically mean that the Defendants are also liable for trade secret misappropriation.  Unless Defendants want to admit that a finding of liability by Sargent in that case automatically results in liability against the Defendants as well, this argument fails.

#### b.    Factor 4 (which forum obtained jurisdiction first)

The Incorporated Reply argues the state court is "indisputably more advanced" by conflating proceedings against Sargent with proceedings against Defendants. Here, IYO has named, served, and been actively litigating against Defendants since 2025, with the Court issuing a TRO affirmed by the Ninth Circuit and subsequently granting a preliminary injunction. The state court has never exercised any jurisdiction over Defendants in any capacity. Defendants have never appeared, answered, or even been subject to any obligation in that forum. Under any metric, this federal proceeding is far more advanced as to the parties at issue, the Defendants.

#### c.    Factors 5 and 6 (source of law and adequacy of forum).

The Incorporated Reply argues that IYO's DTSA claim "offers no material allegations

- 17 -

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS

beyond those incorporated or duplicated from its CUTSA claim." But Defendants cite no authority for the proposition that a federal claim can be disregarded simply because a similar state claim exists. To the contrary, the Ninth Circuit has held that "[t]here is a strong presumption that the presence of an additional claim in the federal suit means that Colorado River is inapplicable." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1206 (9th Cir. 2021). Congress enacted the DTSA specifically to provide a uniform federal remedy for trade secret misappropriation; using it is the opposite of forum shopping.

### d. Factors 7 and 8 (forum shopping and resolution of all issues).

The Incorporated Reply accuses IYO of gamesmanship, claiming (at 20) that it brought this action as a result of "state court setbacks." But IYO filed this action before the state court's TRO denial, and the FAC was timely filed as of right under Rule 15(a)(1)(B) in response to Defendants' motion to dismiss. That is not forum shopping. *Seneca*, 862 F.3d at 846.

On Factor 8, the state court plainly cannot "resolve the entire case before the federal court," *State Water*, 988 F.3d at 1204, because it has no power to enter judgment against Defendants who are not parties to that action. Indeed, six of IYO's nine counts have no analogue in the state action. As such, this factor independently bars abstention.

## III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in IYO's Opposition (ECF 141), the Court should deny Tan's Motion to Strike in its entirety. In the alternative, it should grant IYO leave to amend.

Dated:  June 15, 2026

Respectfully submitted,

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.

By: *Andrew D. Skale*_____
Andrew D. Skale (211096)
Micha Danzig (177923)
Laura Franco (186765)
Anthony J. Viola (*pro hac vice*)
Kara M. Cormier (*pro hac vice*)

*Attorneys for Plaintiff IYO Inc.*

MINTZ, LEVIN, COHN,
FERRIS, GLOVSKY AND
POPEO, P.C.
ATTORNEYS AT LAW

- 18 -

607238716v.1

PLAINTIFF'S OPPOSITION TO TANG YEW TAN'S MOTION TO STRIKE OR DISMISS