MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO, P.C.
Andrew D. Skale (211096)
ADSkale@mintz.com
Mitch Danzig (177923)
MDanzig@mintz.com
Laura Franco (186765)
LFranco@mintz.com
Anthony J. Viola (*pro hac vice*)
AJViola@mintz.com
Kara M. Cormier (*pro hac vice*)
KMCormier@mintz.com
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone: 415.432.6000

*Attorneys for Plaintiff*
*IYO, INC.*

QUINN EMANUEL URQUHART
& SULLIVAN, LLP
Margret M. Caruso (Bar No. 243473)
margretcaruso@quinnemanuel.com
Sara L. Pollock (SBN 281076)
sarapollock@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

*Attorneys for Defendants io Products, Inc., OpenAI, Inc., OpenAI, LLC, OpenAI OpCo LLC, Sam Altman, and Tang Yew Tan*

JONES DAY
David Kiernan (Bar No. 215335)
dkiernan@jonesday.com
555 California Street 26th Floor
San Francisco, California 94104
Telephone: (415) 875-5745

Meredith Wilkes (admitted *pro hac vice*)
mwilkes@jonesday.com
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone (216) 586-7231

*Attorneys for Defendant Sir Jonathan Paul Ive*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

IYO, INC.

Plaintiff,

v.

IO PRODUCTS, INC., OPENAI, INC., OPENAI, LLC, OPENAI OPCO, LLC, SAM ALTMAN, SIR JONATHAN PAUL IVE, and TANG YEW TAN

Defendants.

Case No. 3:25-cv-4861-TLT

**JOINT STATUS REPORT REGARDING DISCOVERY**

Hon. Trina L. Thompson
Hon. Peter H. Kang

FAC Filed: March 13, 2026
Trial: January 10, 2028

Pursuant to the Court's June 17, 2026 Order (ECF 181), the parties provide the following joint status report regarding their progress in discovery.

## I. Mediation Scheduled

The parties have a private, in-person mediation with Tony Piazza scheduled for July 20, 2026, in San Francisco, California.

## II. Terms/ Custodians

**Plaintiff:** On June 29, 2026, IYO provided Defendants with a list of proposed search terms and key categories of documents responsive to IYO's Requests for Production. To facilitate the parties' discussions, IYO organized its proposals by subject matter and document category. IYO also made it clear that search terms alone would not satisfy Defendants' discovery obligations and that numerous categories of responsive documents (which IYO identified for Defendants) would likely require targeted collection efforts.

Defendants responded on July 8, 2026, with proposed modifications to many of IYO's search terms, along with proposed custodians for some, but not all, categories of responsive information. Defendants' response did not address how certain categories of non-custodial or organizational documents would be collected, and did not include a hit count report for the search terms IYO originally proposed.

As such, IYO responded on July 9, 2026, requesting Defendants to provide hit-count and distribution information necessary to evaluate their counter-proposal. It also requested a meet-and-confer to discuss:

- Defendants' proposed narrowing of IYO's search terms through the use of proximity restrictions and other limitations;
- Defendants' failure to identify custodians for multiple categories of responsive information identified by IYO;
- The need for information concerning Defendants' organizational structure so that IYO can evaluate whether Defendants' proposed custodians are reasonably likely to possess responsive information;
- The identification of project names, code names, internal references, and other

terminology that may be necessary to construct an effective search protocol; and

- The collection of categories of documents that are unlikely to be captured through keyword searches and therefore require targeted collection efforts.

Defendants responded on July 15, providing the hit-count report and addressing the above issues. The hit-count report itself raises many questions about how Defendants ran their searches. For example, the term [IYO One] had 124 hits, but the term IYO alone had only 112 hits. That term alone should have had 124 or *more* hits. Likewise, the term [IYO OR iyO OR Rugolo OR "Jason Rugolo"] had 119 hits, while [Rugalo] alone had 132 hits. Defendants' assertion that this is because certain terms are run across some custodians and not others raises another problem: there are clearly responsive documents that are being categorically excluded by Defendants' limited custodian collection. Contrary to Defendants' contention, Plaintiff did not ask Defendants to create such barriers. Plaintiff intends to address this issue with Defendants at their next meet and confer, which the parties have scheduled for July 23. The parties have agreed to go through the requests on an RFP-by-RFP basis at that conference.

The parties also met and conferred on July 16. Plaintiff substantively responded to Defendants' email on July 16 prior to the parties' meet and confer.

The parties' outstanding issues, as of the date of this filing, include at least:

1. **Search Terms:** Defendants have agreed to run 25 of Plaintiff's proposed search terms without modification and an additional 13 terms with proximity connectors added. Defendants have rejected all remaining terms, including technical file extension terms and several standalone terms Defendants characterize as overbroad. Defendants provided a hit report showing that certain terms generate high hit volumes, but many of the refused terms generate fewer than 1,000 hits. The parties will confer on potential narrowing based on the hit report data.

2. **Internal Code Names / Proximity Limitations:** Defendants propose limiting nearly all search terms by requiring proximity to the word "io." Plaintiff has requested that Defendants identify all internal code names or project names used for the IO Device during development, so that those terms can be added as alternatives in any proximity-

limited search. Defendants refuse to provide code names, asserting that Judge Kang's order limits relevant discovery to documents referencing the "io" brand name itself. Plaintiff disagrees and contends that documents discussing the IO Device under internal designations are plainly relevant. This issue remains unresolved. But to continue their negotiations pending a hearing with the Magistrate on this issue, the parties have agreed to use brackets for potential addition of code names in discussing search terms. For example [io /50 validation] would become [io OR **[code name 1]** OR **[codename 2]** OR etc. /50 validation].

3. **File Extension Terms:** Plaintiff proposed that Defendants search for various file extensions that might indicate that the document is a CAD file. Defendants objected, arguing they are disproportionate and irrelevant to Plaintiff's trademark claims. Plaintiff maintains that core CAD and engineering file extensions are directly relevant to product design RFPs and the trade secret claims. The parties have agreed to discuss this issue when they go through the requests RFP by RFP.

4. **Custodians**: Defendants have proposed custodians for nine categories. Plaintiff has requested that Defendants confirm whether certain key roles are covered (e.g., lead hardware engineer, manufacturing partner liaison, io.com domain acquisition lead). Plaintiff has also requested an organizational chart for the IO Products business to evaluate the sufficiency of Defendants' custodian list. Defendants have so far refused to provide an org chart, asserting it would not aid custodian identification. This issue remains unresolved, but Plaintiff anticipates further discussions on this issue at the next meet and confer.

5. **Master Agreement and IP/Goodwill Schedules:** Although Defendants have produced the Master Agreement and one IP Schedule, nothing that they produced shows the allocation of value across IO Products' assets (such as would be found in an ASC 805 form). Plaintiff requested such a form and Defendants have agreed to discuss whether they would provide this information.

**<u>Defendants</u>:** iyO's summary, though argumentative and inaccurate in many respects,

confirms the parties have made substantial progress on their discovery disputes and that no issues are currently ripe for judicial resolution. Nearly all "disputes" in iyO's statement were first raised on July 16—yesterday—just hours before iyO provided Defendants with its portion of this joint statement. Some were first raised in the statement itself. Defendants have since conferred with iyO and confirmed they will investigate these newly-raised issues.

**Status of Meet and Confer Efforts Concerning Issues Raised At The June Discovery Conference:** Defendants understood that this status update was meant to address the parties' meet-and-confer efforts on the discovery disputes discussed at the June hearing. *See* ECF 181. Since then, the parties have held two telephonic conferences and exchanged several substantive written communications; they have made substantial progress toward, if not completely resolved, these issues.

Defendants produced the io merger agreement and its IP schedule (Hearing Tr. 107:17-23), and they have begun producing documents related to (1) trademark applications filed by Weynorth Ltd. (Hearing Tr. 87:11-23); and (2) media/social media monitoring following the May 21, 2025 and July 9, 2025 Announcements (Hearing Tr. 79:3-5). Defendants have proposed custodians, and the parties have exchanged search terms. During a further scheduled conference next week, the parties are set to discuss: (1) iyO's deficient trade secret identification, which Defendants sent a detailed challenge to the sufficiency of on July 8, 2026; (2) iyO's continuing failure to produce documents supporting its allegations; and (3) any outstanding disputes relating to the parties' search term negotiation.

**Broader Search Term Effort:** Beyond the specific discovery disputes that the Court addressed in June, the parties have also been negotiating search terms that will serve as the foundation for Defendants' search efforts with respect to iyO's nearly one hundred other discovery requests. While not complete, this effort has progressed substantially, and Defendants are optimistic for successful resolution in the coming weeks.

At a June 23 meet and confer, the parties agreed that iyO would take the first pass in proposing search terms, while Defendants would propose custodians. On June 29, Plaintiff provided a list of 81 terms, nearly all of which were overbroad: only six used limiting boolean

connectors, while the rest consisted of ubiquitous standalone words (e.g. "video," "compete," and "announcement"), common file extensions (e.g., ".svg" and ".make"—which would require Defendants to review every file of a given type, regardless of its subject matter), dates (e.g., every document ever created that referenced that date, or was part of an email thread that included an email on that date), and one term ("presidiotech" OR "presidio tech" OR "presidiotech.com" OR "presidio" w/3 "tech") seemingly designed to match every single message sent to or from one of Defendants' email domains.

On July 8, Defendants proposed custodians, reported that a sample run of these terms had produced hundreds of thousands of hits, and proposed 38 terms—accepting 25 of iyO's terms as-is and modifying another 13 to add boolean limiters. Nearly all of the terms Defendants did not counter on were standalone file extensions, which Defendants viewed as disproportionate and akin to a fishing expedition. Defendants explained this in their email to Plaintiff.

iyO responded on July 9, claiming it was unable to narrow even ***one*** of its terms without seeing a full hit report. Though it appeared unlikely that iyO needed a hit report from collected data to determine that words like "video" were unsuitable as search terms, Defendants nonetheless uploaded additional ESI and provided an updated hit report on July 14, confirming the overbreadth of many of iyO's outstanding terms.[1]

On July 16, iyO finally acknowledged this overbreadth, indicating it would drop its file-extension terms and narrow others, promising counterproposals next week. Defendants are

[1] iyO's suggestion, raised for the first time in this statement, that Defendants' hit report contains inaccuracies is disingenuous. Consistent with the Court's guidance, Defendants have proposed different custodians for different categories of RFPs—for example, certain custodians have been proposed for the May 21, 2025 announcement, and other custodians have been proposed for the Weynorth trademark applications. iyO has correspondingly proposed different search terms for these different categories of discovery. While this may lead to the appearance that the term "IYO" (proposed for one set of custodians) has produced fewer hits than the narrower term "IYO One" (proposed for a different set) in reality, this is because, at iyO's direction, these terms are being run across different sets of custodians. iyO's suggestion that Defendants have somehow done something wrong by doing exactly what iyO requested is unavailing and clearly a post-hoc attempt to create an issue where none exists. If iyO expected the term "IYO" to be run across the same custodians as "IYO One," why did it propose both terms, knowing that the latter was unnecessary? In any event, to the extent iyO's gripe is that Defendants searches have been too narrow, this only shows that Defendants hit counts are an ***underestimate***, and that iyO will need to engage in even more narrowing of its proposed terms before the parties can reach agreement.

encouraged by iyO's acknowledgment of its initial terms' overbreadth, but Defendants expect that the parties will need to conduct additional exchanges before they can finalize their agreement on a full set of terms.

The parties have also resolved or are working toward resolution of iyO's remaining complaints:

- **Internal Code Names / Proximity Limitations:** iyO recently demanded that Defendants provide confidential product codenames to be used as search terms, asserting relevance to its trademark claim. Defendants explained that they did not understand why this would be productive, because the Court indicated that Defendants' past product plans were only relevant to the extent they included "plans" by Defendants "to use io branding" or trade name (Hearing Tr. 95:22-96:19; *see also* 97:11-17)—a scope that would necessarily include the word "io," and not just code names. Nevertheless, Defendants offered to evaluate iyO's request if iyO identified the specific search terms it believed would benefit from the addition of these code names and the corresponding RFPs that this discovery would be relevant to. iyO has not done so, but has promised to do so soon. Defendants will evaluate these terms in good faith when they are received.
- **Custodians:** The day before this statement was due, iyO asked certain highly specific questions regarding the custodians Defendants had identified more than a week earlier. As explained to iyO, Defendants will provide responses when available. While iyO has also asked Defendants for an org chart, Defendants have explained that, consistent with this District's Model ESI order, Plaintiff can identify the titles or responsibilities of individuals whom iyO believes have been omitted, so that Defendants can evaluate whether additional custodians are warranted. *See* Model Order § 4 (custodians can be provided by "general job titles or descriptions," such as "HR head," "scientist," or "marketing manager").
- **Merger Agreement:** The day before this statement was due, iyO asked for the first time whether an "ASC 805" post-closing merger document exists showing how the

merger price was determined. Defendants will evaluate this request as well.

**III. Document Productions**

**Plaintiff:** IYO has produced 2,787 pages across four volumes (including documents marked under the Protective Order). It is continuing to review documents and will continue to produce them on a rolling basis.

**Defendants:** As described above, Defendants have begun producing documents (including confidential documents) responsive to several categories of iyO's requests and expect to make additional productions in the coming weeks.

iyO's own productions have been minimal. To date, it has produced few confidential documents: the bulk of its production has consisted of copies of public webpages downloaded from the internet and public filings in this case, making its page counts appear to convey a more substantive production than it has actually made. The handful of internal documents iyO has produced have inaccurate metadata, making it impossible for Defendants to understand when they were created. Defendants have raised deficiencies regarding iyO's discovery responses and productions on at least February 10, May 12, July 8, and July 14, but iyO ignored this outreach. iyO has now finally agreed to confer about these deficiencies next week.

**IV. Trade Secret Disclosure**

**Plaintiff:** IYO served its Trade Secret Statement ("TSS") on June 30, 2026, identifying six trade secrets with reasonable particularity. The TSS identifies the claimed trade secrets in sufficient detail to allow Defendants to understand what is being claimed and to enable the Court to determine the appropriate scope of discovery. It also identifies the specific files that Daniel Sargent inappropriately downloaded and gave gibberish names to in the weeks leading up to his clandestine meeting with Defendants.

On July 7, 2026, Defendants sent a letter characterizing the TSS as categorically deficient. IYO disagrees. IYO's TSS does not merely identify files by name; it describes the substance of the trade secrets, including proprietary geometry, acoustic interface structures, tolerancing schemes, material design decisions, interlocking assemblies, and digital-twin representations of system architecture. IYO's physical prototypes and engineering parts kits are identified by specific serial

numbers and part kit identifiers, and the trade secrets reside in their integration, architecture, component selection, and system-level functionality. IYO's negative know-how is described in relation to specific, identified technical attributes acquired through research and development. And IYO's manufacturing process trade secret enumerates 26 specific categories of product assembly and manufacturing process information that define the metes and bounds of what is claimed.

Defendants' cases are inapposite. Unlike in *VIA Technologies*, where the trade secret disclosure merely identified titles of schematics without any description of their contents, IYO's TSS describes the substance of the trade secrets contained within the identified files. 2016 WL 5930280, at *3. And unlike in *Carl Zeiss*, IYO's TSS does not rely on open-ended references to "other documents and records" without specification. 2021 WL 5197215, at *4. Defendants' remaining objections—that certain information has been publicly disclosed or that a prototype was shared—go to the merits of IYO's trade secret claims, not the sufficiency of the TSS.

Defendants' demand that IYO produce the CAD files referenced in the TSS as a prerequisite to acknowledging its sufficiency conflates two distinct issues: the adequacy of a trade secret statement and the production of underlying source files in discovery. The adequacy of the TSS does not depend on whether referenced files have yet been produced. IYO also has concerns regarding Defendants' condition that they will only conduct trade secret-related searches if the file names are shared with Defendants beyond counsel.

IYO responded substantively to Defendants' July 7 letter on July 17, 2026 (as IYO's counsel explained, the attorney drafting the response had his own wedding to attend in the interim). IYO remains willing to meet and confer on these issues in good faith. However, IYO is fully prepared to present the sufficiency of its TSS, should Defendants elect to pursue these issues before the Court.

**Defendants:** iyO's trade secret disclosure, served on June 30, consisted of a list of more than sixty files—none of which iyO has produced—identified solely by "gibberish [and] non-descriptive" file names without any meaningful description of the subject matter disclosed in these files that supposedly constitutes a trade secret, followed by a list of extraordinarily general categories of information with generic, catch-all language that provide little more than the publicly

available complaint. *See Carl Zeiss X-Ray Microscopy, Inc. v. Sigray, Inc.*, 2021 WL 5197215, at *4 (N.D. Cal. Nov. 9, 2021) (plaintiff "may not simply refer to a document in its entirety as 'including' trade secrets, without specifying what the trade secret is"); *see also VIA Techs., Inc. (a California Corp.) v. Asus Computer Int'l*, 2016 WL 5930280, at *3 (N.D. Cal. Oct. 12, 2016) ("[T]o enable ASMedia to prepare a defense against claims that it has misappropriated trade secrets, it will need to know the *substance* of the secrets it has allegedly stolen—that is, the contents of the schematics, not just their titles").

After receiving this disclosure, on July 7, Defendants sent a detailed letter describing the deficiencies and inquiring as to whether iyO intended to serve an amended trade secret disclosure that complied with section 2019.210. Defendants also requested production of the files which were incorporated by reference in iyO disclosure, citing authority that commanded this exact result. *See, e.g.*, *VIA*, 2016 WL 5930280, at *3. Though iyO argues this demand "conflates two distinct issues," it has not specifically responded to this case law nor provided any support for its contention. Finally, consistent with the Court's guidance, Defendants agreed to proceed with certain trade secret discovery while iyO's disclosure was amended to provide the requisite specificity. Hearing Tr. 102:12-16.

On July 17, as the parties were finalizing this joint statement, iyO finally responded to Defendants' letter, stating that it did not intend to amend its disclosure. While Defendants continue to review, iyO's lead argument appears to be that its disclosure did not need to comply with 2019.210, even though the Court has already ordered that it must. Hearing Tr. 102:1-8. Further, iyO's letter does not respond to many of Defendants' detailed arguments about the sufficiency of its disclosure and appears to mischaracterize others. Nevertheless, Defendants will confer with iyO during the parties' scheduled conference next week to determine whether progress can be made without the Court's intervention.

**V. Ongoing Discovery Conferences**

**Plaintiff:** IYO accepts the Court's kind offer to conduct monthly, in-person conferences with the Court, as IYO believes these conferences would facilitate a more efficient discovery process.

**Defendants:** Defendants defer to the Court as to whether monthly discovery conferences should be held, but respectfully submit that it is not necessary to decide that at this time as there does not appear to be any ripe disputes between the parties.

Dated: July 17, 2026

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

By: */s/ Andrew D. Skale*

Andrew D. Skale (211096)
Mitch Danzig (177923)
Anthony J. Viola (pro hac vice)
Kara M. Cormier (pro hac vice)

Attorneys for Plaintiff
IYO, INC.

Dated: July 17, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Sara L. Pollock*

Margret M. Caruso
Sara L. Pollock
Victoria B. Parker
Elle X. Wang

Attorneys for Defendants
io Products, Inc., OpenAI, Inc., OpenAI, LLC and Sam Altman

Dated: July 17, 2026

JONES DAY

By: */s/ Meredith M. Wilkes*

David C. Kiernan
Meredith M. Wilkes

Attorneys for Defendant
Sir Jonathan Paul Ive

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I hereby certify that the content of this document is acceptable to Sara Pollock and Meredith Wilkes, attorneys for Defendants, and that I obtained Ms. Pollock's and Ms. Wilkes' authorization to file this document, indicated by a /s/ in lieu of signature(s) on this document.

*/s/ Andrew D. Skale*
Andrew D. Skale

608618210v.2
608618210v.5